UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BSG RESOURCES (GUINEA) LIMITED, BSG
RESOURCES (GUINEA) SÀRL, and BSG
RESOURCES LIMITED,

          Plaintiffs,

   v.

GEORGE SOROS, OPEN SOCIETY FOUNDATIONS,
OPEN SOCIETY INSTITUTE, FOUNDATION TO
PROMOTE OPEN SOCIETY, OPEN SOCIETY
FOUNDATION, INC., ALLIANCE FOR OPEN
SOCIETY INTERNATIONAL INC., OPEN SOCIETY
POLICY CENTER, and OPEN SOCIETY FUND,

         Defendants.

**No. 1:17-cv-02726 (JFK) (AJP)**

Oral Argument Requested

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
OR, IN THE ALTERNATIVE, TO STAY THE ACTION**

Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 (telephone)
(212) 728-8111 (facsimile)

*Attorneys for Defendants George Soros,
Open Society Foundations, Open Society
Institute, Foundation to Promote Open
Society, Open Society Foundation, Inc.,
Alliance for Open Society International,
Inc., Open Society Policy Center, and Open
Society Fund*

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ......................................................................................4

    A.    The Parties ..................................................................................4

    B.    BSGR's Entry into the Guinean Mining Industry and the Convention Agreement.....5

    C.    The New Guinean Government's Initiative to Reform the Guinean Mining
        Industry and Termination of the Convention Agreement ...........................................5

    D.    Defendants' Alleged Conduct Relating to BSGR....................................................7

    E.    Alleged Conduct by Others Purportedly Attributable to Defendants .........................7

    F.    Plaintiffs' Arbitration Against Guinea and Additional Legal Proceedings Around
        the World ..................................................................................9

ARGUMENT ......................................................................................................11

   I.     PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE. ...11

   II.    PLAINTIFFS' AMENDED COMPLAINT MUST BE DISMISSED FOR
        FAILURE TO STATE A CLAIM AGAINST DEFENDANTS PURSUANT TO
        FRCP 12(b)(6). ......................................................................13

    A.    Plaintiffs' Tortious Interference with Contract Claims Must Be Dismissed. ............14

       1.    Plaintiffs Fail to Allege that Defendants' Conduct Was the But For Cause of the
            Alleged Breach. ................................................................14

       2.    Plaintiffs' Tortious Interference Claims Against Newly Named Defendants Are
            Barred by the Statute of Limitations. ........................................16

    B.    Plaintiffs' Fraud Claim Against Soros Must Be Dismissed.....................................19

       1.    Plaintiffs Fail to Plead Fraudulent Statements or Omissions with Particularity. .......19

       2.    Plaintiffs Fail to Allege a Duty to Disclose...........................................20

       3.    Plaintiffs Fail to Plead Actual or Reasonable Reliance...............................21

    C.    Plaintiffs' Commercial Defamation Claim Must Be Dismissed...............................22

i

      1.   Plaintiffs' Commercial Defamation Claim is Based on Vague, Time-Barred Statements, Unattributed to Defendants. .................................................................22

      2.   Plaintiffs Fail to Adequately Plead Intent. ...............................................................23

   D.     Plaintiffs Fail to State a Claim for Conspiracy. .........................................................25

   E.     Plaintiffs Fail to State a Claim for Prima Facie Tort. ...............................................25

III.     PLAINTIFFS' CLAIMS AGAINST OSF AND OSFI MUST BE DISMISSED BECAUSE THEY ARE NOT EXISTING LEGAL ENTITIES. .................................26

IV.     PLAINTIFFS' CLAIMS AGAINST THE NEW DEFENDANTS MUST BE DISMISSED UNDER Fed. R. Civ. P. 8(a)(2). ...........................................................27

V.     IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION. ..............27

CONCLUSION .................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
    633 F. Supp. 2d 15 (S.D.N.Y. 2009)....................................................................19

*AdvanFort Co. v. Cartner*,
    No. 1:15-CV-220, 2015 WL 12516240 (E.D. Va. Oct. 30, 2015)..............................12, 13

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 402 (S.D.N.Y. 2005)................................................................24

*Alghanim v. Alghanim*,
    828 F. Supp. 2d 636 (S.D.N.Y. 2011)........................................................27, 28, 29

*Andrews v. Lasser Marshall, Inc.*,
    No. 97 Civ. 3827, 1997 WL 624986 (S.D.N.Y. Oct. 6, 1997) ..............................29

*Argus Media Ltd. v. Tradition Fin. Servs. Inc.*,
    No. 09 Civ. 7966, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009)........................29

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................14

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ..................................................................27

*Awelewa v. New York City*,
    No. 11 Civ. 778, 2012 WL 601119 (S.D.N.Y. Feb. 23, 2012) ............................10

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014).........................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007).........................................................................14

*Bezuszka v. L.A. Models, Inc.*,
    No. 04 Civ. 7703, 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006) ..........................22

*Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
    775 F. Supp. 2d 730 (S.D.N.Y. 2011).......................................................23, 28

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013).........................................................24

*Callejo v. Bancomer, S.A.*,
    764 F.2d 1101 (5th Cir. 1985) ..................................................................12

*Capital Dimensions, Inc. v. Samuel Oberman Co.*,
    478 N.Y.S.2d 950 (App. Div. 1984)...................................................................18

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
    543 F. App'x 72 (2d Cir. 2013)...................................................................24

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014)...................................................................14

*Fisher v. APP Pharm., LLC*,
    783 F. Supp. 2d 424 (S.D.N.Y. 2011)...................................................................17, 19

*Freihofer v. Hearst Corp.*,
    65 N.Y.2d 135 (1985)...................................................................25

*Galu v. SwissAir: Swiss Air Transp. Co.*,
    No. 86 Civ. 5551, 1987 WL 15580 (S.D.N.Y. Aug. 3, 1987) ..........................................12

*Gertler v. Goodgold*,
    107 A.D.2d 481 (App. Div. 1985), *aff'd*, 66 N.Y.2d 946 (1985) ....................................26

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998)...................................................................14, 16

*Harbinger Capital Partners LLC v. Deere & Co.*,
    632 F. App'x 653 (2d Cir. 2015) ...................................................................20

*Hayes v. Perotta*,
    751 F. Supp. 2d 597 (S.D.N.Y. 2010)...................................................................10

*Int'l Fire & Safety, Inc. v. HC Servs., Inc.*,
    No. Civ. A 206-CV-63, 2006 WL 2403496 (S.D. Miss. Aug. 18, 2006) ........................27

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011)...................................................................21

*Iusacell, S.A. de C.V. v. IBM Corp.*,
    No. 14 CIV. 2697, 2014 WL 6491757 (S.D.N.Y. Nov. 14, 2014) ....................................30

*Keep on Kicking Music, Ltd. v. Hibbert*,
    No. 15 CV 7464, 2016 WL 4386047 (S.D.N.Y. Aug. 17, 2016) ....................................22

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)...................................................................12

*Konowaloff v. Metro. Museum of Art*,
    702 F.3d 140 (2d Cir. 2012)...................................................................11, 12

*Kregos v. Associated Press*,
　　3 F.3d 656 (2d Cir. 1993) ............................................................................19

*Lutin v. N.J. Steel Corp.*,
　　No. 93 Civ. 6612, 1996 WL 636037 (S.D.N.Y. Nov. 1, 1996) ........................................21

*McEvaddy v. City Univ. of N.Y.*,
　　633 N.Y.S.2d 4 (App. Div. 1995) ....................................................................23

*Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.*,
　　760 F. Supp. 1036 (E.D.N.Y. 1991) ..................................................................29

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
　　16 F. Supp. 2d 355 (S.D.N.Y. 1998) ...........................................................14, 16

*Mongardi v. BJ's Wholesale Club, Inc.*,
　　45 A.D.3d 1149 (N.Y. 2007) .........................................................................18

*Montalvo v. Madjek, Inc.*,
　　15 N.Y.S.3d 471 (App. Div. 2015) ..........................................................17, 18, 19

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
　　14 F. Supp. 3d 191 (S.D.N.Y. 2014) .................................................................23

*Munno v. Town of Orangetown*,
　　391 F. Supp. 2d 263 (S.D.N.Y. 2005) ..................................................................9

*Nevin v. Citibank, N.A.*,
　　107 F. Supp. 2d 333 (S.D.N.Y. 2000) ...............................................................26

*In re Parmalat Sec. Litig.*,
　　501 F. Supp. 2d 560 (S.D.N.Y. 2007) ........................................................18, 23, 27

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
　　153 F. Supp. 3d 628 (S.D.N.Y. 2015) ...............................................................24

*Richards v. AXA Equitable Life Ins. Co.*,
　　No. 06 Civ. 3744, 2007 WL 3084968 (S.D.N.Y. Oct. 22, 2007) ....................................21

*RSM Prod. Corp. v. Fridman*,
　　643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) .................15

*Salvatore v. Kumar*,
　　845 N.Y.S.2d 384 (App. Div. 2007) .................................................................25

*Schneider v. Pearson Educ., Inc.*,
　　No. 12 Civ. 6392(JPO), 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013) .................................20

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*,
    No. CV 16-2345, 2016 WL 8648638 (C.D. Cal. Aug. 18, 2016) ............................... 12, 13

*Sevits v. McKiernan-Terry Corp. (N.J.)*,
    264 F. Supp. 810 (S.D.N.Y. 1966) .................................................................... 26, 27

*Sharma v. Skaarup Ship Mgmt. Corp.*,
    916 F.2d 820 (2d Cir. 1990) .......................................................................... 14, 16

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
    632 F.3d 938 (5th Cir. 2011) .............................................................................. 13

*Stolow v. Greg Manning Auctions Inc.*,
    258 F. Supp. 2d 236 (S.D.N.Y. 2003) .................................................................. 22

*TRG, The Repping Grp., Inc. v. Nemschoff Chairs, Inc.*,
    No. 87 CIV. 4937, 1988 WL 83370 (S.D.N.Y. Aug. 4, 1988) ........................................ 17

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
    493 U.S. 400 (1990) ...................................................................................... 13

*Xavier v. RY Mgmt. Co.*,
    846 N.Y.S.2d 227 (App. Div. 2007) ...................................................................... 18

**Other Authorities**

Fed. R. Civ. P. 8(a) .......................................................................................... 27

Fed. R. Civ. P. 9(b) .......................................................................................... 19

Fed. R. Civ. P. 12(b) ......................................................................................... 26

N.Y.C.P.L.R. 302 .............................................................................................. 26

Defendants George Soros ("Soros"), Open Society Foundations ("OSF"), Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc. ("OSFI"), Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint filed in this action by Plaintiffs BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sárl, and BSG Resources Limited (collectively "BSGR" or "Plaintiffs"), dated June 30, 2017 (the "Amended Complaint") or, in the alternative, to stay this action pending arbitration.

## PRELIMINARY STATEMENT

In 2010, after years of rule by a military dictatorship, the west-African Republic of Guinea conducted its first democratic presidential elections.  After winning the election and taking office, President Alpha Condé and the newly-elected government undertook a review of mining licenses that had been granted by the prior military regime.  That review ultimately led to a determination that BSGR, which had obtained lucrative mining rights in large parts of Guinea, had used bribery and corruption to procure those rights.  The Guinean government thereafter stripped BSGR of those rights and its ability to conduct mining operations in that country.  Since then, BSGR and its principal, billionaire Beny Steinmetz, along with various of his associates, have been the subjects of criminal investigations around the world related to corruption in Guinea.  Indeed, Israeli authorities have prohibited Steinmetz from leaving Israel due to an ongoing investigation against him there—a ban that was recently extended through July 2017.

Meanwhile, BSGR and Steinmetz have initiated an avalanche of legal actions in an effort to divert blame for the events in Guinea to other parties, with this action being just the latest example.  Here, BSGR concocts a fanciful story of extortion, vengeance, and greed out of Soros's support and assistance to Guinea's first democratically-elected president in his efforts to

1

pursue anti-corruption reform and development initiatives for the people of Guinea.  Between all of this litigation, however, BSGR is struggling to keep its story straight as key allegations in the Amended Complaint directly contradict assertions made by BSGR in other legal proceedings. For instance, Plaintiffs claim here that Soros "masterminded" a scheme to destroy BSGR's mining rights.  But Plaintiffs alleged in their arbitration against Guinea that President Condé hatched a plan to take away BSGR's rights a year before Defendants allegedly became involved in Guinea.  While alleging in the arbitration that they knew from the beginning that Guinea's review of their mining rights was a sham, here they allege to have relied on representations that the Guinean investigation would be fair and impartial.

Independent of these contradictions in Plaintiffs' story, the Amended Complaint should be dismissed in its entirety because Plaintiffs' claims are barred by the act of state doctrine, which precludes courts in the United States from adjudicating claims that would require a determination of the validity of a sovereign act by a foreign government.  The Amended Complaint asks the Court to determine that the government of Guinea entered into a legally binding contract with BSGR, later breached that contract, and did so on the basis of a sham investigation conducted by one of its agencies.  The act of state doctrine prohibits such an inquiry into the validity of Guinea's public acts.

Plaintiffs' claims fare no better on an individual basis.  *First*, Plaintiffs' tortious interference claim fails because Plaintiffs' allegations and admissions establish that Defendants were not the "but for" cause of Guinea's breach of its agreement with BSGR.  Plaintiffs assert that "Defendants were the motivating force behind Guinea's breach of the Convention," but the facts alleged by Plaintiffs show that President Condé drove the purported plan to terminate BSGR's contract and mining rights.  Indeed, Plaintiffs allege that it was President Condé who

"'requested' Soros's assistance" relating to the initiative that resulted in the termination of BSGR's rights; that it was President Condé who attempted to extort BSGR under threat of the termination of those rights in early 2011; and that "it is the President Alpha Condé that does not recognize the agreement with the negotiator . . . Steinmetz."

*Second*, Plaintiffs' allegation that Soros defrauded them regarding the nature of the investigation conducted by the Guinean government that led to the termination of BSGR's purported contract fails to plead a viable fraud claim. Plaintiffs fail to allege with particularity any misrepresentations or omissions by Soros, fail to allege any relationship between Plaintiffs and Soros that would give rise to a duty to disclose any information to BSGR, and fail to allege facts establishing that they reasonably relied upon Soros's purported misrepresentations.

*Third*, Plaintiffs' commercial defamation claim is wholly inadequate, as it is premised on stale, time-barred statements by other people or entities. Moreover, Plaintiffs fail to plead malice as required for a defamation claim involving a public figure, such as BSGR.

*Fourth,* Plaintiffs' conspiracy claims are fatally flawed because they depend on Plaintiffs' failed tortious interference and fraud claims.

*Fifth,* Plaintiffs prima facie tort claim fails because it relies on the same allegations that are insufficient to sustain Plaintiffs' other tort claims.

Finally, Plaintiffs' claims against Defendants OSF and OSFI must be dismissed because OSF and OSFI are not legal entities and, therefore, are not subject to the Court's personal jurisdiction or capable of being served with process.

In the event the Court declines to dismiss the Amended Complaint, this action still should not proceed at this time. In 2014, BSGR commenced an arbitration against Guinea based on the same underlying facts at issue here. A hearing on the merits in that arbitration concluded in early

June.  The impending arbitral decision is expected to resolve at least three issues that are determinative of Plaintiffs' claims here—whether Guinea and BSGR had a valid contract or contracts, whether Guinea breached its purported contracts with BSGR, and whether BSGR obtained its contracts through bribery and corruption.  If the ICSID arbitration is decided against BSGR, Plaintiffs' claims here fall like dominoes:  the tortious interference and prima facie tort claims depend on the existence of valid agreements and Guinea's alleged breach of those agreements and the fraud and defamation claims depend on a finding that the bribery and corruption findings reached by the Guinean investigation into BSGR's mining rights were untrue.  Judicial economy and the avoidance of potentially inconsistent rulings weigh in favor of allowing those issues to be resolved in arbitration before this action proceeds.

## STATEMENT OF FACTS

**A.      The Parties**

Plaintiffs are companies affiliated with billionaire Beny Steinmetz.  (*See* ¶ 127.)[1]  BSGR stands for Beny Steinmetz Group Resources and purports to be "an international, diversified mining group."  (¶¶ 18, 140.)  Defendant George Soros is an American businessman.  (¶ 8.) Named Defendant Open Society Foundations is alleged to be something that Plaintiffs call a "de facto corporation," but Plaintiffs do not allege that OSF is registered to do business or incorporated in New York or any other jurisdiction.  (¶ 9.)  Named Defendant Open Society Foundation, Inc. "was a not-for-profit corporation organized under the laws of the state of Delaware" that no longer exists.  (*Id.*)  Defendants Open Society Institute, Foundation to Promote Open Society, Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund, Inc. are alleged to be organized under the laws of various states, each with its principal place of business in New York.  (¶¶ 10-13.)

---

[1] Unless otherwise noted, the citations to paragraphs refer to the paragraphs in the Amended Complaint.

**B.      BSGR's Entry into the Guinean Mining Industry and the Convention Agreement**

In 2005, BSGR applied to the Guinean government for prospecting permits in the Guinean region called Simandou.  (¶ 20.)  On February 6, 2006, the Guinean Minister of Mines granted BSGR prospecting permits for areas in "Simandou South."  (¶ 22.)  BSGR thereby obtained the exclusive right to search for iron ore deposits in those areas.  (¶ 20.)  In or around December 2008, Guinea revoked the rights of another mining company, Rio Tinto, in areas known as Simandou Blocks 1 and 2, and granted exploratory rights there to BSGR.  (¶¶ 25-26.)

On December 16, 2009, BSGR and Guinea entered into the Basic Convention Agreement (the "Convention"), (¶ 30), which allegedly granted BSGR "the exclusive right to conduct commercial mining activities in [Simandou South]," (¶ 34), and provided for a potential future grant of mining rights in Simandou Blocks 1 and 2.  (*Id.*)  On March 19, 2010, Guinea's then-president, Sékouba Konaté, allegedly ratified the Convention by Presidential Decree and granted BSGR Guinea a mining concession for a deposit in Simandou South.  (¶ 36.)  In April 2010, BSGR entered into a joint venture with another mining company, Vale, related to the development and operation of BSGR's mining rights in Simandou.  (¶ 37.)

**C.      The New Guinean Government's Initiative to Reform the Guinean Mining Industry and Termination of the Convention Agreement**

In 2010, Guinea held its first democratic presidential election and elected Alpha Condé, replacing the prior military regime.  (*See* ¶¶ 44, 67.)  In January 2011, Condé began an initiative to reform Guinea's mining industry, including the enactment of a revised mining code and the examination of existing mining contracts in Guinea.  (¶¶ 67, 74.)  At the time, a Guinean government official said that "[a]ll [mining] contracts [would] be reviewed and reworked" and "[t]he government will become a minority shareholder in all mining contracts."  (¶ 83.)

The new Mining Code, enacted later in 2011 (*see* ¶ 98), established "what share of the mining operations would be taken by . . . the state owned mining company, and provided for a 'systematic review of all mining conventions.'"  (¶ 87.)  The new Mining Code allegedly provides Guinea with a 15% equity interest in all mining projects, with the potential to acquire up to a 35% interest.  (¶ 89.)  Guinea also established a National Mining Commission ("NMC"), which was "granted the power to examine the 'extension, renewal, lease and cancellation applications for mining titles on the basis of the [2011] Mining Code.'"  ((¶ 98.))  The NMC's responsibilities were divided among two subcommittees:  a Strategic Committee and a Technical Committee.  (*Id.*)  The Technical Committee was "to serve as 'the operational arm of the [NMC] concerning the overall continuation, redevelopment or withdrawal' of mining licenses."  (¶ 99.)

Plaintiffs allege that Guinea breached the Convention in 2014 by terminating BSGR's mining rights.  (¶¶ 2, 156-59.)  This process allegedly began in "early 2011," when President Condé met with two BSGR representatives and a representative of the joint venture and "demanded without justification that BSGR pay $1.25 billion to maintain its contractual mining rights," but Plaintiffs supposedly refused.  (¶¶ 58-59.)  In the fall of 2011, Guinea allegedly "challenged the validity of BSGR's joint venture with Vale" and asserted that there were "issues with BSGR's mining permits."  (¶¶ 102-03.)  On October 30, 2012, the Technical Committee sent an "Allegations Letter" to BSGR that accused "BSGR of obtaining its mining rights through bribery and corruption."  (¶ 114.)  Despite Plaintiffs' alleged explanations, on March 21, 2014, the Technical Committee "recommended that the Minister of Mines" revoke BSGR's mining rights and "cancel the Convention."  (¶ 151.)  In April 2014, following the recommendations of the Technical Committee and Strategic Committee, President Condé and the Minister of Mines terminated the Convention and BSGR's mining rights.  (¶¶ 155-59.)  Citing alleged statements

from President Condé and the Minister of Mines, Plaintiffs allege that Guinea's decision "was a *fait accompli*" and that the Technical Committee's investigation was a "farce."  (¶¶ 127, 160.)

## D.    Defendants' Alleged Conduct Relating to BSGR

BSGR's allegations that "Defendants were the motivating force behind Guinea's breach" and that Soros "puppeteered the government of Guinea" (¶¶ 3, 56) are belied by repeated allegations that it was President Condé who initiated and implemented mining reforms. Specifically, BSGR alleges that Condé approached Soros regarding an initiative to reform the Guinean mining industry, not the other way around.  (*See* ¶¶ 85, 91, 97, 102.)  President Condé, BSGR alleges, in early 2011 demanded that BSGR pay $1.25 billion or lose their contracts and mining rights at a meeting that is not alleged to involve any Defendants or their representatives. (¶ 67.)  According to BSGR, the investigations that resulted in the termination of BSGR's rights were the direct result of BSGR's failure to meet President Condé's demand.  (¶ 73.)

## E.    Alleged Conduct by Others Purportedly Attributable to Defendants

BSGR's claims also rely on allegations about the conduct of third parties, but these allegations fail to identify any tortious conduct imputable to Defendants or overcome BSGR's allegations showing that President Condé was the motivating force behind the termination of BSGR's mining rights.  BSGR, for example, relies on "a March 3, 2011 email between Chris Canavan [of] Soros Fund Management LLC" and "Vale's Deputy General Counsel."  BSGR alleges that an attached draft memorandum of understanding between OSF and the Vale-BSGR joint venture that contemplated the joint venture's pre-payment of $500 million in taxes somehow shows an attempted "shake down" of BSGR.  (¶ 61.)  But BSGR alleges no facts suggesting that the memorandum was about anything more than a potential prepayment of taxes by the joint venture.  And BSGR's careful crafting of the allegation—an "email *between* Chris Canavan" and "Vale's Deputy General Counsel" (*id.* (emphasis added))—is a clear attempt to

avoid pointing out that Vale, not Canavan, proposed the draft memorandum and that it was never executed.[2]

BSGR also alleges that Revenue Watch Institute ("RWI"), an organization allegedly hired by Guinea to assist the mining reforms, gave comments on a draft of the new Mining Code that were a "pretext for improperly expropriating mining assets." (¶¶ 67, 74, 76, 85.) BSGR does not allege, however, what were RWI's comments nor any facts supporting their conclusion. BSGR also alleges that RWI "advocated for immediate review and renegotiation of existing mining contracts," but fails to allege that RWI's recommendation targeted BSGR's contract over any others. (¶ 68.) RWI also allegedly was tasked with reviewing BSGR's mining rights before those of other companies, but BSGR does not allege who gave that direction. (¶¶ 67, 100.)

Plaintiffs also allege that Guinea and its Technical Committees hired attorney Scott Horton of DLA Piper to investigate BSGR, and that Horton hired a private investigator named Steven Fox to assist. (¶¶ 106, 109.) According to Plaintiffs, Fox and Horton each generated a report containing purportedly false allegations that BSGR used corruption to obtain the Convention and related mining rights, which was then relied on by the Technical Committee in recommending the termination of the Convention and related rights. (*See* ¶¶ 109-27.) Plaintiffs try to tie these allegations to Defendants, alleging without factual support that Horton and Fox were "agents" of Soros and that Soros "controlled" the conclusions they reached. (¶¶ 109, 115.)

Finally, Plaintiffs allege that an organization known as Global Witness, which has allegedly received funding from Defendants, made purportedly false statements in 2013, and one in 2016, that BSGR obtained its mining rights in Guinea via corruption. (¶¶ 143-148, 172.)

---

[2] Plaintiffs further allege "the involvement of . . . Chris Canavan . . . in the Technical Committee process," but fail to allege any specific conduct by Canavan. (¶ 100.) And Plaintiffs allege that Canavan participated in a meeting in New York City with President Condé, Soros, and mining executives (¶ 101), but Plaintiffs do not allege anything that Canavan said or did at the meeting.

**F.      Plaintiffs' Arbitration Against Guinea and Additional Legal Proceedings Around the World**

This action is just the latest in a series of legal actions relating to BSGR and its alleged corruption.  "BSGR has . . . challenged Guinea's conduct in an arbitration currently pending in Paris before the International Centre for Settlement of Investment Disputes [the "ICSID Arbitration"], the allegations of which are not repeated here."  (¶ 166.)  It is clear that BSGR's allegations from the ICSID Arbitration "are not repeated here" because they directly contradict Plaintiffs' allegations and claims in this action.  The gravamen of the Amended Complaint is that Defendants were the motivating force behind a scheme to harm BSGR, "***duping*** [President Condé]" to terminate the Convention and BSGR's related mining rights.  (¶ 56 (emphasis added).)  In the ICSID Arbitration, however, BSGR alleged that President Condé decided to revoke BSGR's rights before Soros is ever alleged to have become involved.  BSGR alleges that Condé made a deal "in . . . late 2009 or early 2010," by which "business interests in South Africa" would pay Condé and "ensure" his election, in return for Condé's promise to "grant the South African business interests shares in the mining assets of Guinea" that were stripped from BSGR.  (Request for Arbitration (Ex. 1) ¶ 54; *see also* Claimant's Am. Memorial (Ex. 2) ¶ 147.)[3]

BSGR's allegations in the ICSID Arbitration also contradict the allegations underlying Plaintiffs' fraud claim here—that "[i]t was never disclosed to plaintiffs" that the "[Technical] Committee's conclusion was pre-ordained by Soros" and Plaintiffs "expended significant resources and effort in reliance on the independence of the Committee."  (¶ 201.)  Plaintiffs allege in the ICSID Arbitration that "[f]rom day one, BSGR understood that the entire process

---

[3] In deciding this motion to dismiss, the Court may take judicial notice of Plaintiffs' pleadings in the ICSID Arbitration and contradictory factual allegations made in that proceeding.  *See Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (taking notice of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action").

before the Technical Committee was nothing but an attempt to justify the forthcoming

withdrawal of its mining investments."  (Request for Arbitration (Ex. 1) ¶ 64.)

    Primary issues in the ICSID Arbitration are whether Guinea breached the Convention,

whether BSGR secured the Convention and its related rights through corruption, and whether the

Convention was even a valid contract if it was obtained through BSGR's corruption.  (*See*

Claimant's Am. Memorial (Ex. 2) ¶¶ 235, 345.)  The determination of these issues directly

affects the viability of each of Plaintiffs' alleged claims here.  (*See infra* Section V.)  The hearing

in the ICSID Arbitration was completed on or about June 2, 2017.  (*See* Procedural Order No. 9

(Ex. 3) at 3 ("The Hearing is scheduled to take place from 22 May to 2 June 2017.").)

    In addition to the ICSID Arbitration, BSGR's alleged bribery and corruption has resulted

in criminal investigations "into BSGR and connected entities," (¶ 168), in several countries,

including Guinea (¶ 169), Israel (¶ 171), and the United States.  (¶ 168.)  The U.S. criminal

investigations into BSGR for corruption relating to Guinea are a matter of public record.  One

former BSGR employee, Frédéric Cilins (*see* ¶ 125), was charged with bribing "Mamadie Touré,

a former wife of Lansana Conté, deceased President of Guinea . . . to destroy documents

purportedly granting Simandou mining concessions to [BSGR]."  Mem. & Order at 1, *United

States v. Cilins*, No. 1:13-cr-00315 (S.D.N.Y. Jan. 15, 2014) (Pauley, J.) ECF No. 50 (attached as

Ex. 4).[4]  The charge against Cilins arose "out of an investigation into a scheme to bribe

government officials of the Republic of Guinea in return for valuable mining concessions in

Guinea's Simandou region," during which Touré "described several contracts she signed with

BSGR that offered her money in exchange for help in securing Simandou mining concessions."

---

[4] On a motion to dismiss, the Court may take judicial notice of the existence of criminal proceedings.  *See, e.g.*, *Awelewa v. New York City*, No. 11 Civ. 778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of . . . arrest reports, criminal complaints, indictments, and criminal disposition data."); *Hayes v. Perotta*, 751 F. Supp. 2d 597, 599 (S.D.N.Y. 2010) (taking judicial notice of criminal proceedings, including transcripts and judicial opinions).

*Id.* at 1-2.  Cilins pleaded guilty to the bribery charge on March 10, 2014.  Tr. of Proceedings at 4:7-10, *United States v. Cilins*, No. 1:13-cr-00315 (S.D.N.Y. Mar. 10, 2014) ECF No. 62 (attached as Ex. 5).  Cilins was sentenced to 24 months in prison.  Judgment, *United States v. Cilins*, No. 1:13-cr-00315 (S.D.N.Y. Jul. 29, 2014) ECF No. 71.

The investigation of BSGR was also cited in the prosecution of Mahmoud Thiam, the former Guinea Minister of Mines convicted of receiving bribes from a Chinese company after a jury trial in May 2017.  *See* Indictment at 1, *United States v. Thiam*, No. 1:17-cr-00047 (S.D.N.Y. Jan. 18, 2017) (Cote, J.) ECF No. 12 (attached as Ex. 6); Jury Verdict, *United States v. Thiam*, No. 1:17-cr-00047 (S.D.N.Y. May 3, 2017).  Government affidavits filed in that case aver that "[p]ublicly available documents state that Thiam also received bribes from BSG Resources, Ltd., and the grand jury is investigating whether BSG Resources, Ltd. . . . bribed Thiam to help it win mining rights in Guinea's Simandou region."  Exhibit A to Thiam Mot. to Dismiss at 25 (of 36) (attaching Decl. in Supp. of App. for Suspension of Running of Statute of Limitations, dated Oct. 31, 2014), *United States v. Thiam*, No. 1:17-cr-00047 (S.D.N.Y. Mar. 27, 2017) ECF No. 65-1 (attached as Ex. 7).  Thiam's sentencing is scheduled for August 25, 2017.  Order, *United States v. Thiam*, No. 1:17-cr-00047 (S.D.N.Y. Jun. 28, 2017) ECF No. 65-1.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE.

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory."  *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 143 (2d Cir. 2012).  This is true even where "defendant is a private party" and "the suit is not based specifically on a sovereign act," if deciding the claims would require the court to judge the validity of a sovereign act.  *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113 (5th Cir. 1985); *see also Galu v. SwissAir: Swiss*

*Air Transp. Co.*, No. 86 Civ. 5551, 1987 WL 15580, at *2 (S.D.N.Y. Aug. 3, 1987) (claims

against private defendant barred because they "require[d] determination of the validity of actions

of [foreign] government").  Dismissal is appropriate where the doctrine's "applicability is shown

on the face of the complaint."  *Konowaloff*, 702 F.3d at 146.

Central to Plaintiffs' claims are allegations that Guinea entered into a binding contract

with BSGR that conferred certain mining rights to BSGR, and that Guinea breached the alleged

contract and revoked BSGR's rights.  (*See, e.g.*, ¶¶ 177-80, 183-84, 188, 191, 214.)  Guinea's

entrance into these agreements, and withdrawal of BSGR's rights to Guinea's natural resources

under the agreements, are quintessential sovereign acts within the purview of the act of state

doctrine.  *See AdvanFort Co. v. Cartner*, No. 1:15-CV-220, 2015 WL 12516240, at *6 (E.D. Va.

Oct. 30, 2015) (government's suspension of plaintiff's permits "was a public act of state");

*Konowaloff*, 702 F.3d at 145 (courts "will not examine the validity of a taking of property within

its own territory by a foreign sovereign government").  Guinea's acts are also essential elements

of Plaintiffs' tortious interference claim.  (*See* ¶¶ 180, 184.)  *See Kirch v. Liberty Media Corp.*,

449 F.3d 388, 401 (2d Cir. 2006) ("elements of tortious interference with contract" include

"existence of a valid contract between the plaintiff and a third party" and "actual breach of the

contract").  To resolve Plaintiffs' tortious interference claim, the Court would have to decide the

validity of Guinea's alleged contract with BSGR and whether Guinea's actions constituted a

breach.  The act of state doctrine precludes exactly this kind of judicial determination.  *See Sea*

*Breeze Salt, Inc. v. Mitsubishi Corp.*, No. CV 16-2345, 2016 WL 8648638, at *4 (C.D. Cal. Aug.

18, 2016) (dismissal of claim for "intentional interference with contractual relations" because it

"rel[ied] on [foreign sovereign's] alleged agreement to [contract] and subsequent [breach]");

*AdvanFort Co.*, 2015 WL 12516240, at *8 (act of state doctrine barred tortious interference

claim based on foreign government's "decision . . . to deny a permit").  BSGR's claims for "conspiracy to commit tortious interference" and prima facie tort likewise fail because they depend on allegations that Guinea breached its alleged agreements with BSGR.  (¶¶ 191, 214.) [5]

Plaintiffs' fraud claim is also barred by the act of state doctrine because it requires the court to adjudicate the validity of the acts of the Technical Committee, an entity of the Guinean government.  Plaintiffs' fraud claim depends on allegations that, pursuant to a conspiracy with Soros, the Technical Committee conducted a fraudulent investigation and misrepresented the nature of the investigation for the purpose of "carrying out defendants' illegal racketeering activities" (¶ 195, 200), and reaching the "pre-ordained" "conclusion that BSGR's Convention and related agreements should be terminated and its valuable rights revoked."  (¶ 197.)   Such determinations regarding the acts of a foreign government are precluded.  *See Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 956 (5th Cir. 2011) (act of state doctrine barred claims based on allegations of a conspiracy involving foreign governments).[6]

## II.   PLAINTIFFS' AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST DEFENDANTS PURSUANT TO FRCP 12(B)(6).

Rule 12(b)(6) dismissal is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).  Courts routinely dismiss

---

[5] Dismissal under the act of state doctrine is also required under the Supreme Court's most recent decision involving the doctrine, *W.S. Kirkpatrick & Co. v. Environmental. Tectonics Corp., International*, 493 U.S. 400, 409 (1990).  In *Kirkpatrick*, the Supreme Court made clear that the doctrine applies "when the outcome of the case turns upon the effect of official action by a foreign sovereign." *Id.* at 406.  Thus, the doctrine did not bar plaintiff's claims because "neither the claim nor any asserted defense requires a determination that Nigeria's contract . . . was, or was not, effective . . . ." *Id.*  Here, in contrast, Plaintiffs' claims require a determination as to whether Guinea entered into a valid, binding contract with BSGR or breached such a contract, and whether an investigation conducted by an agency of the Guinean government was fraudulent.

[6] Further, all of Plaintiffs' claims are barred under the act of state doctrine to the extent that they seek relief in the form of "an order directing defendants to take all steps necessary to secure the return of all rights wrongfully interfered with or converted." (¶ 186 (Count 1); ¶ 193 (Count 2); ¶ 204 (Count 3); ¶ 210 (Count 4); ¶ 216 (Count 5).)  This is impermissible under the act of state doctrine because such "an order and judgment . . . would interfere with [a] sovereign nation['s] control over [its] own natural resources." *Spectrum Stores,* 632 F.3d at 943.

complaints under Rule 12(b)(6) where the complaint does not contain sufficient factual matter, acceptable as true, to state a claim of relief that is plausible on its face. *See generally, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

**A.      Plaintiffs' Tortious Interference with Contract Claims Must Be Dismissed.**

> **1.      Plaintiffs Fail to Allege that Defendants' Conduct Was the But For Cause of the Alleged Breach.**

To plead a claim for tortious interference with contract, Plaintiffs must adequately allege "that defendant's actions were the 'but for' cause of the alleged breach of contract." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 293 (S.D.N.Y. 1998).[7]  Put another way, Plaintiffs must allege that "defendants were the motivating force behind" the alleged breach. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (affirming 12(b)(6) dismissal of tortious interference claim).  Although Plaintiffs parrot these pleading requirements—alleging that "[b]ut for the intentional acts undertaken by defendants and their agents, the Convention would not have been breached" (¶ 184), and that "Defendants were the motivating force behind Guinea's breach of the Convention" (¶ 56)—these allegations are insufficient to state a claim where they are unsupported by the facts alleged. *See Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 360 (S.D.N.Y. 1998).

To the contrary, Plaintiffs' allegations establish that Defendants could not have been the "motivating force" or "but for cause" of the alleged breach because the allegations demonstrate that Guinea "was predisposed toward breaching the contract even in the absence of the alleged interference." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), *aff'd*,

---

[7] If the Amended Complaint survives Defendants' motion to dismiss, certain issues in the case may implicate or be governed by the law of Guinea.

387 F. App'x 72 (2d Cir. 2010).  *First*, Plaintiffs allege that "[i]n early 2011," two representatives of BSGR and a representative of BSGR's joint venture with Vale met with President Condé, at which time President Condé allegedly "demanded without justification that BSGR pay $1.25 billion to maintain its contractual mining rights."  (¶ 58.)  Aside from conclusory allegations that the meeting was part of Defendants' "scheme" (¶ 57), Plaintiffs allege no facts showing that Defendants were involved with or had any knowledge of President Condé's alleged demand.  Plaintiffs also allege that "subsequent investigations into BSGR by the Guinean government," which led to the alleged breach, "were a direct result of [BSGR's] refusal to pay the $1.25 billion demanded."  (¶ 60.)  These allegations alone show that Defendants could not have been a "but for" cause of Guinea's alleged breach.  *See RSM*, 643 F. Supp. 2d. at 410 ("specific allegation that the impetus for Grenada's breach was caused by [plaintiff's] refusal to furnish the bribe monies requested belies the general, conclusory allegation that . . . Defendants" caused the alleged breach); *Sharma*, 916 F.2d at 828 (allegation that breaching party was "motivated by profit—is incompatible with an allegation of 'but for' cause as to [defendants]").

*Second*, BSGR's conclusory allegations that Guinea terminated the Convention and related rights pursuant to a scheme concocted by Defendants are belied by its allegations that it was President Condé, in early 2011, who sought out Soros for assistance with Guinea's mining initiative, not the other way around.  (¶¶ 67, 73, 78, 83.)  Plaintiffs also allege that, "[w]ell before the Technical Committee had completed its review, both the Minister of Mines and President Condé had made it clear that BSGR's mining rights were going to be revoked."  (¶ 160.)

*Third*, Plaintiffs' conclusory allegation that Defendants "dup[ed]" President Condé into the alleged scheme against BSGR are directly contradicted by BSGR's factual allegations in the ICSID Arbitration.  (*See* ¶ 166.)  There, BSGR alleges that President Condé revoked BSGR's

rights because of a deal made in "late 2009 or early 2010"—well before Defendants are alleged to have become involved in Guinea—pursuant to which "business interests in South Africa . . . would provide significant funds . . . to Alpha Condé and . . . ensure that Alpha Condé was elected" in return for "shares in the mining assets of Guinea" that were held by BSGR.  (Request for Arbitration (Ex. 1) ¶ 54.)

*Fourth*, Plaintiffs' allegations that President Condé and other agents of Guinea's government conspired with Soros to revoke BSGR's rights (*see* ¶¶ 3, 107, 195, 199), preclude any claim that Defendants were the "but for" cause of the alleged breach.  *See Sharma*, 699 F. Supp. at 447 (dismissal because "allegation that . . . defendants acted in concert with [third party] implies that [third party] would have breached its obligations even without the involvement of the . . . defendants"); *Granite Partners*, 17 F. Supp. 2d at 294 (no "but for" causation because "[c]ollusion involving a party to the contract indicates as a matter of law that the party involved was predisposed to breach").

*Fifth*, Plaintiffs' failure to allege how each Defendant individually constituted a "but for" cause of the alleged breach dooms their claims.[8]  "Plaintiffs must allege 'but for' causation for each individual defendant and cannot satisfy that requirement merely by alleging that two or more defendants acted in concert to cause the breach." *Mina*, 16 F. Supp. 2d at 360.

## 2.     Plaintiffs' Tortious Interference Claims Against Newly Named Defendants Are Barred by the Statute of Limitations.

The Amended Complaint asserts, for the first time, claims for tortious interference against Defendants Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and

---

[8] *See, e.g.*, ¶ 165 ("There would not have been a breach but for the activities of defendants."); ¶ 184 ("But for the intentional acts undertaken by defendants and their agents, the Convention would not have been breached."); ¶ 191 ("But for the intentional acts undertaken by Soros and the OSF Entities and their agents and coconspirators, the Convention and related agreements would not have been breached.").

Open Society Fund (collectively, the "New Defendants").  Plaintiffs' tortious interference claims against the New Defendants are time-barred.  "Under New York law, . . . the period of limitations for tortious interference with contractual obligations is three years," and the claim "accrues when the contract is breached." *TRG, The Repping Grp., Inc. v. Nemschoff Chairs, Inc.*, No. 87 CIV. 4937, 1988 WL 83370, at *1–2 (S.D.N.Y. Aug. 4, 1988) (citing N.Y.C.P.L.R. 214(4)).  Here, Guinea's alleged breach occurred no later than April 23, 2014, when Guinea "terminated the Convention with BSGR."  (¶ 158.)  When Plaintiffs filed the Amended Complaint more than three years later, on June 30, 2017, Plaintiffs' tortious interference claims against the New Defendants were already barred.

Plaintiffs cannot revive their claims against the New Defendants through the relation-back doctrine.  Plaintiffs have the burden to prove the new claims relate back to the original complaint.  *Montalvo v. Madjek, Inc.*, 15 N.Y.S.3d 471, 472 (App. Div. 2015).  This requires Plaintiff to show that "'(1) both [the old and new] claims [arise] out of the same conduct, transaction or occurrence, (2) the new defendant is united in interest with the original defendant, and (3) the new defendant knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against him or it as well.'"  *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 430 (S.D.N.Y. 2011).

Plaintiffs cannot show that the New Defendants are "united in interest" with OSF or Soros.  "Defendants are united in interest only when their interest 'in the subject-matter [of the action] is such that [the defendants] stand or fall together and that judgment against one will similarly affect the other.'"  *Montalvo*, 15 N.Y.S.3d at 472 (citations omitted).  This "requires a showing that the new and original defendants are 'vicariously liable for the acts of the other.'"  *Mongardi v. BJ's Wholesale Club, Inc.*, 45 A.D.3d 1149, 1151 (N.Y. 2007) (citations omitted).

"[I]f the only relationship between the original parties and the parties sought to be added is that of joint tort-feasors, the parties are not united in interest . . . ." *Capital Dimensions, Inc. v. Samuel Oberman Co.*, 478 N.Y.S.2d 950, 952 (App. Div. 1984).  Further, "Defendants are not united in interest if there is a possibility that the new party could have a different defense than the original party."  *Montalvo*, 15 N.Y.S.3d at 472.

Here, Plaintiffs never allege in the Amended Complaint that the New Defendants are vicariously liable for the actions of Soros or OSF (or vice versa), or that they are agents of one another.  Rather, Plaintiffs allege only that "Soros and OSF. . . control" the New Defendants because "the OSF Entities share the same phone number and business address," "[t]heir leadership structures are similarly overlapping," and the "OSF Entities received most of their funding from Soros or Soros entities."  (¶ 52.)  These allegations do not demonstrate a relationship sufficient to establish a unity of interest.  *See Xavier v. RY Mgmt. Co.,* 846 N.Y.S.2d 227, 229 (App. Div. 2007) ("The fact that two defendants may share resources such as office space and employees is not dispositive" to establish a unity of interest); *see also In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 589 (S.D.N.Y. 2007) (financing insufficient to infer control).  Instead, Plaintiffs consistently allege that Defendants' are merely joint tortfeasors (*see, e.g.*, ¶ 15 ("Soros and OSF including the OSF Entities, their agents, and other Soros related entities identified herein acted in concert")), which is insufficient to establish unity in interest.  *See Capital Dimensions*, 478 N.Y.S.2d at 952.  Further, Plaintiffs cannot establish unity of interest because the New Defendants, with the relative dearth of factual allegations levied against them, "could have a different defense than the original part[ies]."  *Montalvo*, 15 N.Y.S.3d at 472.

Further, the Amended Complaint provides no basis to determine whether Plaintiffs' claims against the New Defendants arise from the same set of facts as the initial complaint

because Plaintiffs allege little or no facts about what any of the New Defendants did.  For the same reason, Plaintiffs cannot establish that the New Defendants "knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against him or it as well.'"  *Fisher*, 783 F. Supp. 2d at 430.  Although Plaintiffs replace the term "OSF" with the term "OSF Entities" in the Amended Complaint, the Amended Complaint does not contain specific allegations about any of the New Defendants showing that they could have known the allegations in the initial complaint were about them.

**B.     Plaintiffs' Fraud Claim Against Soros Must Be Dismissed.**

To plead fraud, BSGR must allege that: (1) Soros made a material misrepresentation of fact; (2) Soros knew the representation was false; (3) Soros intended to induce reliance by BSGR; (4) BSGR justifiably relied on the misrepresentation; and (5) injury to BSGR.  *Kregos v. Associated Press*, 3 F.3d 656, 664-65 (2d Cir. 1993).  "[T]he circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Plaintiffs' allegations do not suffice.

**1.     Plaintiffs Fail to Plead Fraudulent Statements or Omissions with Particularity.**

To adequately state a claim for fraud under Rule 9(b), BSGR must: (1) specify the alleged fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  *380544 Can., Inc. v. Aspen Tech., Inc.*, 633 F. Supp. 2d 15, 27 (S.D.N.Y. 2009).  Here, the bases of BSGR's fraud claim are the vague and conclusory allegations that "Soros conspired with/or misled members of the Technical Committee, with the intention and effect of defrauding plaintiffs" (¶ 199), and that "Soros" fraudulently induced "the Technical Committee . . . to make it appear that it was conducting an impartial and fair review when in fact it was carrying out defendants' illegal racketeering activities" (¶ 195).  These allegations fall well short of Rule 9(b)'s requirements.

BSGR's lone allegation of a specific statement made by Soros do not support a fraud claim. BSGR alleges that "Soros publically announced that 'all mining contracts' would be 're-examined and those who want to validate those claims will have to subscribe to the principles of EITI . . .'" (¶ 196.) BSGR asserts that "[t]hese statements implied a fair and impartial review of BSGR's Convention and related agreements," (¶ 196), and that "Soros knew upon making these statements that the conclusion of the Technical Committee was pre-ordained and that his statements were false or materially misleading." (¶ 197.) But this cannot be the case, because Soros's statement is alleged to have been made on March 3, 2011, more than a year before the Technical Committee is alleged to have come into existence. (¶ 98.)

Further, to the extent that BSGR seeks to plead fraudulent concealment, that claim also fails to meet the requirements of Rule 9(b). BSGR's conclusory allegation that "Defendants never disclosed their corruption of the Committee or the fact that any conclusion was foregone, having been dictated by Soros in advance" (¶ 105), is insufficient. *See Schneider v. Pearson Educ., Inc.*, No. 12 Civ. 6392(JPO), 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013) ("claim for fraudulent concealment" lacked "requisite level of particularity" where "Plaintiff merely allege[d] that Defendant 'concealed' its [wrongful conduct] from Plaintiff").

### 2. Plaintiffs Fail to Allege a Duty to Disclose.

BSGR fails to state a claim for fraudulent concealment for the independent reason that BSGR pleads no facts showing that Soros owed Plaintiffs a duty to disclose. *See Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015) (omission "actionable only if the defendant had a duty to disclose."). As set forth above (*supra* Section II.B.1), Plaintiffs fail to allege that Soros ever "made a partial or ambiguous statement" about the subject of his alleged omission—the Technical Committee's investigation. Nor does BSGR allege that Soros "stand[s] in a fiduciary or confidential relationship with" BSGR that would give

rise to such a duty.  *See id*. at 656.  And BSGR cannot plead such a duty on the basis that Soros

had "superior knowledge" and knew BSGR was "acting on the basis of mistaken knowledge,"

*id.*, because BSGR fails to allege any interactions between BSGR and Soros whatsoever.  *See id*.

at 657 (no "duty to disclose due to [defendant's] superior knowledge" because plaintiff "was not

engaged in business negotiations with . . . the defendants"); *Richards v. AXA Equitable Life Ins.

Co.*, No. 06 Civ. 3744, 2007 WL 3084968, at *5 (S.D.N.Y. Oct. 22, 2007) (no disclosure duty

absent allegations of "communication between Plaintiff and Defendant" that provided "basis for

knowledge by Defendant as to what Plaintiff believed" about subject matter of alleged omission).

### 3.    Plaintiffs Fail to Plead Actual or Reasonable Reliance.

"Reasonable, detrimental reliance upon a misrepresentation is an essential element of a

cause of action for fraud," which "must be pleaded with particularity." *Lutin v. N.J. Steel Corp.*,

No. 93 Civ. 6612, 1996 WL 636037, at *7 (S.D.N.Y. Nov. 1, 1996).  A "bare allegation, without

supporting facts, that [Plaintiffs] relied on defendants' alleged [fraud] does not suffice." *Id.*

BSGR alleges that it "expended significant resources and effort in reliance on the independence

of the Committee" (¶ 201), and "spent money on developing its mining capability and rights."

(¶ 202.)  These allegations fail to plead reliance because they offer no specifics about when or

how Plaintiffs relied on Defendants' alleged fraud.  *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,

822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (dismissal because facts alleged did not show "how

plaintiffs relied on the alleged misrepresentations"*); In re Bear Stearns Cos. Sec.*, *Derivative, &

ERISA Litig.*, 995 F. Supp. 2d 291, 309 (S.D.N.Y. 2014) (dismissal absent allegations

"identify[ing] a particular transaction that it allegedly made in reliance on the" alleged fraud).

Even if BSGR could plead actual reliance, it fails to plead facts showing such reliance

was reasonable.  *Bezuszka v. L.A. Models, Inc.*, No. 04 Civ. 7703, 2006 WL 770526, at *13

(S.D.N.Y. Mar. 24, 2006) (Rule 9(b) dismissal absent "specific allegations of why. . . reliance

21

was reasonable").  Nor could BSGR do so.  BSGR alleges that it always knew the Technical

Committee investigation was a sham.  BSGR was "concerned about procedural irregularities in

the Technical Committee proceedings" (¶ 105), and that "[w]ell before the Technical Committee

had completed its review . . . President Condé had made it clear that BSGR's mining rights"

would "be revoked."  (¶ 160.)  BSGR also fails to explain how it could have reasonably relied on

alleged misrepresentations about "the Committee process" in which President Condé "was very

closely involved" (¶ 160), even after BSGR had allegedly rejected President Condé's alleged

$1.25 billion extortion attempt.  (¶¶ 58, 60.)  And in the ICSID Arbitration BSGR has alleged

that "[f]rom day one, BSGR understood that the entire process before the Technical Committee

was nothing but an attempt to justify the . . . withdrawal of its mining investments."  (Request for

Arbitration (Ex. 1) ¶ 64.)  These allegations belie BSGR's reasonable reliance claim.  *See Stolow*

*v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003) (no reasonable

reliance because plaintiff "acknowledges . . . aware[ness] of the" allegedly undisclosed wrongful

conduct); *Keep on Kicking Music, Ltd. v. Hibbert*, No. 15 CV 7464, 2016 WL 4386047, at *5

(S.D.N.Y. Aug. 17, 2016) (no reasonable reliance where claimant's complaint in past lawsuit

showed claimant already knew alleged misrepresentation was false).

C.      **Plaintiffs' Commercial Defamation Claim Must Be Dismissed.**

1.      **Plaintiffs' Commercial Defamation Claim is Based on Vague, Time-Barred
        Statements, Unattributed to Defendants.**

BSGR's commercial defamation claim does not rely on any alleged statements by Soros

or OSF.  The claim is based on statements by Global Witness (¶¶ 143-48, 172), allegations in the

Fox and DLA Piper reports (¶¶ 118-25), and two statements made by Horton to the press.  (¶

140.)  One of the alleged statements occurred in December 2016—the rest were in 2013 or

earlier.  These allegations are insufficient for at least two reasons.  *First*, Plaintiffs' commercial

defamation claim is time-barred to the extent that the Amended Complaint, dated June 30, 2017, relies on the alleged statements made in 2013 or earlier. The limitations period for commercial defamation is one year. *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011) (citing N.Y.C.P.L.R. 215(3)).

*Second*, Plaintiffs fail to plead that Global Witness, the alleged speaker of the lone timely statement in December 2016, made the statement as an agent of Defendants. Conclusory allegations that Soros "controlled" or "used" Global Witness (¶¶ 9, 130), are insufficient to impute the statements made by Global Witness to Defendants. *See Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014) (dismissing defamation claim based on "conclusory allegation" that "statements were made by 'an agent of [defendant]'"). Also insufficient is Plaintiffs' allegation that OSF provided funding to Global Witness in 2014 and 2015. *See Parmalat*, 501 F. Supp. 2d at 589 ("allegations [of financing] by themselves do not support the inference that" alleged principal "controlled" alleged agent's "performance"); *McEvaddy v. City Univ. of N.Y.*, 633 N.Y.S.2d 4, 4 (App. Div. 1995) ("financing" from defendant to newspaper insufficient to impute defamatory statements to defendant).

## 2. Plaintiffs Fail to Adequately Plead Intent.

BSGR fails to state a defamation claim for the independent reason that it fails to meet the heightened pleading standard for such a claim against public figures. The Amended Complaint establishes that by the time of Global Witness's statement in December 2016, BSGR was at least a limited purpose public figure. As such, Plaintiffs must allege that the offending statement was made actual malice. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013).

Whether "a person or an organization is a public figure is a question of law for the court to decide," and where "the question . . . can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage." *Biro*, 963 F. Supp. 2d

23

at 270. Articles cited in the Amended Complaint[9] establish that, before the alleged defamatory statement, BSGR met all of the criteria of a limited purpose public figure by: "successfully invit[ing] public attention to [its] views in an effort to influence others" about BSGR, its dealings in Guinea, and Guinea's mining reforms; "voluntarily inject[ing] [it]self into" the "public controversy" over Guinea's mining reforms and "assum[ing] a position of prominence in the public controversy"[10]; and "maintain[ing] regular and continuing access to the media."[11] *Id.*

Thus, Plaintiffs must allege facts showing that Global Witness's defamatory statement was made with actual malice, that is, "deliberate or reckless falsification." *Id.* at 276-78. To do so, Plaintiffs must allege *facts* showing that "'defendants in fact entertained serious doubts as to the truth of [its] publication,'" *id.* at 276 (citation omitted); conclusory allegations do not suffice. *Id.* at 279-80 ("[P]leading 'actual-malice buzzwords' is simply not enough to nudge a case into discovery."). Plaintiffs fail to meet their burden, offering only a conclusory allegation that

---

[9] "When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint . . . ." *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 642 (S.D.N.Y. 2015); *see also In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) (where "Plaintiffs cited several articles . . . in the Complaint, although they did not attach those documents as exhibits to the Complaint. . . . The Court may review those documents in considering the motion to dismiss as if they had been included in the Complaint"); *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 n.3 (2d Cir. 2013) ("Because [plaintiff] incorporated this article into the complaint by reference, we may properly consider even those portions of the article not quoted in the complaint.").

[10] Guinea's reforms and the resulting disputes over BSGR's corruption and the BSGR's mining rights are public controversies because they impact the Guinean public and, through criminal investigations in several countries, the international community. (¶¶ 168-69, 171.) *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 272 (S.D.N.Y. 2013) (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980) ("[A] public controversy is a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way.")).

[11] *See, e.g.*, Patrick Radden Keefe, Buried Secrets, The New Yorker, July 8, 2013 (attached as Exhibit 8) (cited in ¶ 99) (detailing various interviews provided to the press by BSGR representatives in 2012 and 2013, including Beny Steinmetz and Dag Cramer); id. (describing a "Web site that Steinmetz recently set up [that] describes him as a 'visionary' who used a 'network of contacts on the African continent' to build 'a multi-faced empire'"); *id.* ("'We are the victims,' . . . . Steinmetz claimed that the accusations against him were the product of a concerted smear campaign, initiated by Condé and financed by George Soros."); Tom Burgin, et al., Guinea's First Freely Elected Government Reignites $2.5bn Mining Tussle, Financial Times, Nov. 2, 2012 (attached as Exhibit 9) (cited in ¶ 130) ("As ever, BSGR maintains that it is innocent of any wrongdoing and will use all legal means to protect its position in Guinea"); Bob Van Voris, Guinea Bribe-Probe Defendant Pleads Not Guilty in NYC, Bloomberg, May 16, 2013 (attached as Exhibit 10) (cited in ¶ 106) ("Steinmetz and BSGR, based in Guernsey, deny wrongdoing in Guinea and describe themselves as victims of a conspiracy by President Condé and Soros to revoke the firm's mining license. . . . BSGR 'became the victim of numerous extortion attempts by individuals who were seeking economic gains.'").

Defendants "knew or should have known" that Global Witness's statement was false.  (¶ 206.)

Although Plaintiffs allege that Global Witness's statement was "untrue and unfounded" (¶ 172),

Plaintiffs allege no facts showing that Global Witness or Defendants knew of the statement's

purported falsity or doubted its veracity.  Rather, Plaintiffs' own allegation contradicts any such

assertion.  The same article containing the alleged defamatory statement by Global Witness—

"BSGR and its affiliates engaged in a 'sophisticated corruption scheme' over Simandou"—

shows that Global Witness had every reason to believe that its statement that BSGR engaged in

corruption in Guinea was truthful.  Indeed, the subject of the article is the decision of Israeli

police to arrest Beny Steinmetz on the basis of BSGR's corruption in Guinea, and the article

details the evidence supporting the statement.  (Daniel Estrin, Israeli Police Arrest Tycoon

Suspected of Bribery in Guinea, Associated Press, Dec. 19, 2016 (Ex. 11) (cited in ¶ 172).)

**D.      Plaintiffs Fail to State a Claim for Conspiracy.**

"[C]ivil conspiracy to commit a tort" is "not recognize[d]" "as an independent [claim]."

*Salvatore v. Kumar*, 845 N.Y.S.2d 384, 388-89 (App. Div. 2007).  BSGR's claims for conspiracy

fail because Plaintiffs fail to state their underlying claims for tortious interference or fraud.  *Id.*

(conspiracy claims dismissed because "underlying causes of action were properly dismissed").

**E.      Plaintiffs Fail to State a Claim for Prima Facie Tort.**

If "relief may be afforded under traditional tort concepts, prima facie tort may not be

invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in

conventional tort."  *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985).  A prima facie tort

claim fails when it is based on "precisely the same substantive acts" that fail to state a claim for

tortious interference.  *Gertler v. Goodgold*, 107 A.D.2d 481, 490 (App. Div. 1985), *aff'd*, 66

N.Y.2d 946 (1985) (dismissing prima facie tort claim that could not "stand independently"

because it was a "restatement of" plaintiff's tortious interference claims).  Plaintiffs' prima facie

tort claim is premised on the same deficient allegations as the tortious interference with contract claim. (*See, e.g.* ¶ 214 ("The intentional acts described above, by and on behalf of Soros," caused "Guinea's breach of the Convention").) The additional allegation of malice (¶ 213) does not alter the analysis. Motive-based allegations "do not suffice to transform . . . traditional torts into a prima facie tort." *See Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000).

## III. PLAINTIFFS' CLAIMS AGAINST OSF AND OSFI MUST BE DISMISSED BECAUSE THEY ARE NOT EXISTING LEGAL ENTITIES.

Plaintiffs allege that OSF is a "de facto corporation" (¶ 9), but Plaintiffs do not—and cannot—allege that OSF is incorporated under the laws of any jurisdiction. OSF simply is not an existing legal entity. Moreover, Plaintiffs concede that OSFI does not exist. (*Id.* (alleging OSFI "filed dissolution papers on October 5, 2012").)

Plaintiffs' claims against OSF and OSFI, therefore, fail because the Court has no personal jurisdiction over a non-existent entity.[12] *See Sevits v. McKiernan-Terry Corp. (N.J.)*, 264 F. Supp. 810, 812 (S.D.N.Y. 1966) (no personal jurisdiction over non-existing entity). The non-existence of OSF and OSFI as legal entities also dictates dismissal for "insufficient process" and "insufficient service of process" under Fed. R. Civ. P. 12(b)(4) and (5). Because you cannot serve what does not exist, Plaintiffs' claims against OSF and OSFI must be dismissed. *See Sevits*, 264 F. Supp. at 812 (dismissing claims against non-existent entities under Rules 12(b)(4) and 12(b)(5)); *see also Int'l Fire & Safety, Inc. v. HC Servs., Inc.*, No. Civ. A 206-CV-63, 2006 WL 2403496, at *1 (S.D. Miss. Aug. 18, 2006) (dismissal under Rules 12(b)(4) and 12(b)(5) because "the proper relief for the legally non-existent entity . . . is dismissal of the complaint").

---

[12] Plaintiffs likewise fail to adequately allege personal jurisdiction over Open Society Policy Center ("OSPC"). OSPC is incorporated under the laws of the District of Columbia (¶ 14) and its principal place of business is Washington, D.C. (See https://opensocietypolicycenter.org/.) Plaintiffs do not allege any conduct by OSPC in New York—indeed, Plaintiffs allege no conduct by OSPC whatsoever—that could provide a basis for specific jurisdiction over an entity not domiciled here. *See* N.Y.C.P.L.R. 302.

**IV.   PLAINTIFFS' CLAIMS AGAINST THE NEW DEFENDANTS MUST BE DISMISSED UNDER FED. R. CIV. P. 8(a)(2).**

Fed. R. Civ. P. 8(a)(2) "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"   *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (citation omitted).  The Amended Complaint fails to provide such notice to the New Defendants because it is devoid of allegations of wrongful conduct by any of them.[13]  Merely lumping the New Defendants in with allegations of purportedly wrongful conduct by "Defendants" or the "OSF Entities" fails to satisfy Rule 8.  *See id.* ("complaint failed to satisfy . . . minimum standard" under Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct").

**V.   IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION.**

In the event the Court declines to dismiss the Amended Complaint, it should stay this action pending the ICSID Arbitration, which will dispose of or significantly narrow the issues here.  Within the "Court's inherent power to manage its docket" is the discretion to stay "nonarbitrable claims" in favor of a "pending arbitration," even where the parties in the litigation and the arbitration are not identical.  *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 642, 664-65 (S.D.N.Y. 2011) (granting stay where two defendants were not parties to pending arbitrations).  The movant seeking a stay pending arbitration must show "that there are issues common to the arbitration" and the litigation that "will be finally determined by arbitration." *Id*. at 664 (citations omitted).  "A stay is particularly appropriate where it promote[s] judicial economy, avoidance of confusion and possible inconsistent results." *Id.* at 665 (citations omitted).

The issues to be determined in the ICSID Arbitration are dispositive of Plaintiffs' claims

---

[13] Plaintiffs allege that New Defendant Foundation to Promote Open Society ("FPOS") provided funding to entities that allegedly assisted Guinea's mining reforms (¶¶ 71, 77, 82), but these allegations are insufficient to impute any purported wrongdoing by those entities to FPOS.  *See Parmalat*, 501 F. Supp. 2d at 589 ("allegations [of financing] by themselves do not support the inference that" alleged principal "controlled" alleged agent's "performance")

in this action for tortious interference with contract, conspiracy to commit tortious interference, and prima facie tort.  BSGR and Guinea expressly agreed to arbitrate any dispute concerning their agreement—the same agreement Plaintiffs allege in this action was tortiously interfered with by Defendants.  (¶ 166.)  The primary issues in the ICSID Arbitration are whether Plaintiffs "obtained their mining rights by corrupting Guinean officials," which "would nullify the mining titles and the mining agreement that were held by [Plaintiffs]," and whether Guinea breached its agreement with Plaintiffs.  (*See* Claimant's Am. Memorial (Ex. 2) ¶¶ 235, 345.)  These are threshold issues that will determine the viability of Plaintiffs' claims for tortious interference with contract, conspiracy, and prima facie tort, which require the existence of a valid contract between Plaintiffs and Guinea and Guinea's breach of that contract.  (*See* ¶¶ 184, 214.)

Likewise, those same corruption allegations in the ICSID Arbitration also underlie Plaintiffs' claims for fraud and commercial defamation here.  (*See, e.g.*, Claimant's Am. Memorial (Ex. 2) ¶¶ 358, 371.)  A determination in the ICSID Arbitration that BSGR procured its mining rights in Guinea through bribery or corruption would dispose of its commercial defamation claims here, which depend on the alleged falsity of statements about the same bribery and corruption by BSGR.  *See Biomed*, 775 F. Supp. 2d at 738 (elements of commercial defamation claim include "a false statement").  Such a determination would likewise eviscerate the premise underlying Plaintiffs' fraud claim—that the Technical Committee made fraudulent findings that BSGR corruptly secured the Convention.  (*See* ¶¶ 197, 201.)

If the ICSID tribunal finds that BSGR engaged in corruption, that BSGR had no valid contract with Guinea, or that Guinea did not breach any such contract, BSGR would be estopped from litigating those same issues here.  *See Alghanim*, 828 F. Supp. 2d at 665 (granting stay because defendants would "be able to defensively deploy any favorable arbitral determinations to

collaterally estop plaintiff from relitigating the same issues in this action" (citation omitted)).
Questions related to the validity of the BSGR's alleged agreement with Guinea and the alleged
breach of that agreement should occur in the forum where the parties to that agreement
determined that such claims should be adjudicated. *See Alghanim*, 828 F.Supp.2d at 665 ("[a]
stay is 'particularly appropriate' where it 'promote[s] . . . avoidance of confusion and possible
inconsistent results'") (citation omitted). Allowing this action to proceed raises the specter of
inconsistent rulings by the Court and the ICSID tribunal related to various issues that Guinea and
BSGR agreed to arbitrate. *See Andrews v. Lasser Marshall, Inc.*, No. 97 Civ. 3827, 1997 WL
624986, at *1 (S.D.N.Y. Oct. 6, 1997) (stay where plaintiff alleged tortious interference and
"arbitration will decide whether there was a breach of [contract]"); *see also Argus Media Ltd. v.
Tradition Fin. Servs. Inc.*, No. 09 Civ. 7966, 2009 WL 5125113, at *3 (S.D.N.Y. Dec. 29, 2009)
("[W]here arbitrable and non-arbitrable claims arise out of the same set of facts, a stay usually is
appropriate . . . because the arbitration may decide the same facts at issue in the litigation.").[14]

Other factors to be considered on a stay motion—whether Defendants can show that they
"'will not hinder the arbitration, that the arbitration will be resolved within a reasonable time,
and that such delay that may occur will not cause undue hardship to the non-moving parties'"—
favor a stay. *Alghanim*, 828 F. Supp. 2d at 664-65 (citation omitted). Defendants do not intend
to hinder the ICSID Arbitration and, as non-parties to the arbitration, have no ability to do so.
The arbitration will be resolved in a reasonable time and well in advance of this action (to the
extent this action is not dismissed). Whereas document discovery in this action and briefing on
the instant motion has only just begun, the ICSID Arbitration's hearing on the merits completed

---

[14] The Court should grant Defendants' motion for a stay even if it determines that only some of BSGR's claims here
are implicated by the ICSID Arbitration. *See Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.*, 760 F.
Supp. 1036, 1045 (E.D.N.Y. 1991) (granting stay where "arbitration . . . might at least partially determine issues
forming the basis of the claims asserted against the . . . defendants).

on or around June 1, 2017.  This is more than enough to show that the relative timing of the

proceedings weighs in favor of a stay.  *See Iusacell, S.A. de C.V. v. IBM Corp.*, No. 14 CIV.

2697, 2014 WL 6491757, at *5 (S.D.N.Y. Nov. 14, 2014) (stay where final arbitration hearing

was more than a year away because litigation "involving a claim for hundreds of millions of

dollars . . . would be unlikely to proceed to trial any more expeditiously").  And Plaintiffs cannot

credibly argue that a delay in this action will cause an undue hardship for them after having

waited nearly three years to bring claims against Defendants.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiffs' claims against

Defendants with prejudice or, in the alternative, stay the action pending arbitration.


Dated:      July 28, 2017                    Respectfully submitted,



                                             WILLKIE FARR & GALLAGHER, LLP

                                             /s/ Joseph T. Baio                   _____
                                             Joseph T. Baio
                                             Benjamin P. McCallen
                                             James Fitzmaurice
                                             787 Seventh Avenue
                                             New York, NY 10019
                                             Telephone: (212) 728-8000
                                             jbaio@willkie.com

                                             *Attorneys for Defendants George Soros, Open Society*
                                             *Foundations, Open Society Institute, Foundation to*
                                             *Promote Open Society, Open Society Foundation,*
                                             *Inc., Alliance for Open Society International, Inc.,*
                                             *Open Society Policy Center, and Open Society Fund*