# EXHIBIT 1

**IN THE MATTER OF AN ARBITRATION UNDER THE RULES OF ARBITRATION OF THE INTERNATIONAL CENTRE FOR THE SETTLEMENT OF INVESTMENT DISPUTES**

BSG Resources Limited
(Claimant)

vs

The Republic of Guinea
(Respondent)

**REQUEST FOR ARBITRATION**

Mishcon de Reya Solicitors
Summit House
12 Red Lion Square
WC1R 4QD
London
Tel: +44 (0) 20 7440 7060
Fax: +44 (0) 20 7831 3487

## Table of Contents

1.   INTRODUCTION .................................................................................................................. 3
2.   THE PARTIES ....................................................................................................................... 4
  2.1   The Claimant ................................................................................................................. 4
  2.2   The Respondent ............................................................................................................ 5
3.   FACTUAL BACKGROUND ................................................................................................ 6
  3.1   Simandou Zogota .......................................................................................................... 6
    3.1.1   Simandou South Permits ....................................................................................... 6
    3.1.2   Simandou North Permits ....................................................................................... 7
    3.1.3   Memorandum of Understanding ........................................................................... 8
    3.1.4   The Extended Simandou Permits .......................................................................... 9
    3.1.5   Investments in Simandou Zogota ........................................................................ 10
    3.1.6   The Zogota Mining Concession .......................................................................... 11
    3.1.7   The Zogota Mining Convention .......................................................................... 11
  3.2   Blocks 1 & 2 ................................................................................................................ 13
    3.2.1   Blocks 1 & 2 Permit ............................................................................................ 13
    3.2.2   Provisions in the Zogota Mining Convention in relation to Blocks 1 & 2 ......... 14
    3.2.3   Investments made in Blocks 1 & 2 ..................................................................... 14
  3.3   The Joint Venture with Vale ....................................................................................... 14
    3.3.1   The participation by Vale .................................................................................... 14
    3.3.2   Investments made following the participation by Vale ...................................... 15
  3.4   The Republic of Guinea's unlawful taking of BSGR's investments ........................... 16
    3.4.1   The agreement to provide funds and to rig the 2010 Presidential election in return for rights in Simandou ............................................................................. 16
    3.4.2   The unlawful taking of BSGR's investments ...................................................... 17
  3.5   The anti-corruption situation in Guinea ...................................................................... 20
  3.6   The Republic of Guinea is seeking new investors in Simandou Zogota and Blocks 1 & 2 in violation of BSGR's rights ............................................................................. 21
  3.7   Other breaches by the Republic of Guinea ................................................................. 22
4.   JURISDICTION .................................................................................................................. 23
  4.1   Jurisdiction *ratione personae* ................................................................................... 24
  4.2   The existence of a legal dispute .................................................................................. 24
  4.3   A dispute arising directly out of an investment .......................................................... 26
  4.4   Consent ........................................................................................................................ 28
5.   RELIEF SOUGHT ............................................................................................................... 29
6.   PROCEDURAL ISSUES ..................................................................................................... 30

## I. INTRODUCTION

1. BSG Resources Limited ("**BSGR**" or "**Claimant**"), a company incorporated under the laws of the Bailiwick of Guernsey ("**Guernsey**") hereby requests the institution of arbitration proceedings against the Republic of Guinea ("**Guinea**" or "**Respondent**") in accordance with Articles 25 and 36 of The Convention on the Settlement of Investment Disputes Between States and Nationals of Others States ("**ICSID Convention**") and Rules 1 and 2 of the Rules of Procedure for the Institution of Conciliation and Arbitration Proceedings ("**ICSID Institution Rules**").

2. This Request for Arbitration ("**Request**") is brought against Guinea for the unlawful taking of BSGR's mining investments in Guinea, without adequate or any compensation being provided to BSGR. This unlawful taking is the result of a politically motived, internationally concerted campaign against BSGR in order to satisfy the interests of a newly elected President, Alpha Condé, and his financiers.

3. Once President Alpha Condé was elected, he made it one of his prime goals to expel BSGR from Guinea, including by the use of unlawful means. He established a Technical Committee that concluded a seriously flawed review of *inter alia* the acquisition of BSGR's mining rights. The Technical Committee was acting in the interest of the President who did not intend it to act in an independent or impartial manner or to undertake an objective fact finding exercise. The investigation conducted by the Technical Committee was not in line with internationally recognised principles of due process. The lawfulness of the process has rightly been contested by BSGR since its very beginning, as has the ultimate unlawful taking of BSGR's mining investments in Guinea. As will be shown in detail below, BSGR acquired the mining rights by lawful means and Guinea's measures were unlawful, illegitimate and in breach of the applicable investment laws. BSGR became a victim of the President's interests and his powerful allies.

## 2. THE PARTIES

### 2.1 The Claimant

4. BSGR is a company registered under the laws of Guernsey with the registration No 46565, with its principal office in West Wing, Frances House, Sir William Place, St Peter Port, Guernsey, GY1 1GX (Exhibit C-1). BSGR was incorporated in 2003 as a limited company in Jersey and migrated in March 2007 to Guernsey.

5. BSGR is an international diversified mining company with operations in multiple countries across metals and mining operations in Africa and Eastern Europe, including ferro-nickel, diamonds, iron ore and gold. BSGR has a fifteen-year track record of providing risk capital for developing and executing mining operations in challenging environments. It employs several thousand people and has African stakeholders in South Africa, Zambia, Botswana, Tanzania, Sierra Leone, the Democratic Republic of Congo and the Republic of Guinea.

6. By 2005, when BSGR expressed its interest in exploring Guinea's iron ore deposits, BGSR had assembled a significant portfolio of mining and metal assets involving a number of commodities including diamonds, gold, iron ore and other related ferrous metals, copper, nickel, manganese, cobalt and chrome.

7. BSGR has made its investments directly and through a series of subsidiaries, including the Guernsey company BSG Resources (Guinea) Limited ("BSGR Guernsey") and the Guinean company BSG Resources (Guinea) Limited Sarl ("**BSGR Guinea**"). Up to and until 30 April 2010, BSGR held 100% of the shares in BSGR Guernsey which held, in turn, 100% of the shares in BSGR Guinea. On 30 April 2010, BSGR entered into a joint venture agreement ("Framework Agreement") and a shareholders agreement ("Shareholder Agreement") with the Brazilian company Vale S.A. ("Vale") and sold 51% of its shares in BSGR Guernsey to Vale.

8. BSGR Guinea later changed its name to VBG-Vale BSGR Guinea Sarl ("**VBG Guinea**"). BSGR Guernsey changed its name to VBG-Vale BSGR Guernsey ("**VBG Guernsey**").

9. BSGR has taken all necessary internal actions required under ICSID Institution Rule 2 to bring the present proceedings (Exhibit C-2).

10. BSGR has authorised Mishcon de Reya to institute and pursue these proceedings on its behalf (Exhibit C-2). Any communication in this matter should be directed to following counsel:

Karel Daele
James Libson
Heidrun Walsh
Mishcon de Reya Solicitors
Summit House
12 Red Lion Square
London WC1R 4QD
United Kingdom
Tel.: +44 207406 7060
Fax: +44 20 7831 3487
Email: Karel.Daele@Mishcon.com
       James.Libson@Mishcon.com
       Heidrun.Walsh@Mishcon.com

## 2.2 The Respondent

11. The Republic of Guinea is a country in West Africa.

12. To the best of Claimant's knowledge and belief, service of this Request for Arbitration shall be made on the Government of Guinea using the following contact details:

President Alpha Condé
Presidency of the Republic
Le Palais Sékhoutouréya
Conakry, Republic of Guinea

Mr Mohamed Said Fofana
Prime Minister
Cite des Nations
Conakry, Republic of Guinea

Mr Kerfalla Yansané
Minister of Mining and Geology (MMG)
Building OFAB-CBG
Almamya Kaloum
BP 295 Conakry, Republic of Guinea

Mr Mohamed Diare
Minister of Economy and Finance

Bd. du Commerce, Boulbinet, Kaloum
BP 579 Conakry, Republic of Guinea

Mr Goureissy Sow
Agent Judiciaire de l'Etat
B.P. 1005
Conakry, Republic of Guinea

The Secretariat of the Republic of Guinea
258 Belsize Road
London
NW6 4BT
United Kingdom
E-mail: ambaguilondres@mae.gov.gn

13. To the best of Claimant's knowledge and belief, Guinea is represented by Orrick Rambaud Martel. Their contact details are:

Orrick Rambaud Martel
31 Avenue Pierre 1er de Serbie
75782 Paris Cedex 16
France
Tel +33 (0) 1 53 53 75 00
Fax: +33 (0) 1 53 53 75 01

## 3.   FACTUAL BACKGROUND

### 3.1   Simandou Zogota

14. In 2005, BSGR and its BVI subsidiary BSG Resources (Guinea) Limited ("**BSGR BVI**") expressed an interest in exploring and exploiting potentially economic concentrations of iron ore in south eastern Guinea, in the region surrounding Mount Simandou. Their representatives had meetings with the Ministry of Mining and the Agency for the Promotion and Development of Mining in Guinea ("**CPDM**") and subsequently applied for a series of mining titles. All of these titles relate to areas near the village of Zogota.

#### 3.1.1   Simandou South Permits

15. On 6 February 2006, BSGR, through its subsidiary BSGR BVI, acquired four exploration permits covering an area of 2,047 square kilometres in the prefectures of Beyla, Macenta, Nzérékoré and Yomou. The permits were registered with the Register of Mining Titles under No. A/2006/023/DIGM/CPDM. In what follows, the

permits will be collectively referred to as the "Simandou South Permits". Ministerial Order No. A/2006/706/MMG/SGG granting the Simandou South Permits (Exhibit C-3) was signed by the then Minister of Mines, Dr Ahmed Tidiane Souare, who was Prime Minister of Guinea from May 2008 to December 2008 and was, as Minister of State and special counsel, a close advisor to President Alpha Condé.

16. The Simandou South Permits were valid for three years and renewable under certain conditions. Under Article 4 of the Permits, BSGR BVI was required to run an exploration programme and spend an exploration budget. If the exploration work identified economically exploitable deposits, the Government was required under Article 10 of the Permits to issue one or more exploitation permits. Pursuant to Article 11 of the Permits, BSGR, through BSGR BVI, paid handling fees, stamp duty and surface area fees to the Treasury of Guinea and other Guinean authorities to keep the Permits in place.

3.1.2 Simandou North Permits

17. On 6 February 2006, BGSR, through its subsidiary BSGR BVI, also acquired three exploration permits covering an area of 1,286 square kilometres in the prefecture of Kérouané. The permits were registered with the Register of Mining Titles under No. A/2006/024/DIGM/CPDM. In what follows, the permits will be collectively referred to as the "Simandou North Permits". Ministerial Order No. A/2006/707/MMG/SGG granting the Simandou North Permits was also signed by Dr. Ahmed Tidiane Souare (Exhibit C-4).

18. The Simandou North Permits were valid for three years and renewable under certain conditions. Under Article 4 of the Permits, BSGR BVI was required to run an exploration programme and spend an exploration budget. If the exploration work identified economically exploitable deposits, the Government was required under Article 10 of the Permits to issue one or more exploitation permits. Pursuant to Article 11 of the Permits, BSGR, through BSGR BVI, paid handling fees, stamp duty and surface area fees to the Treasury of Guinea and other Guinean authorities to keep the Permits in place.

### 3.1.3 Memorandum of Understanding

19. On 20 February 2006, BSGR, through BSGR BVI, and Guinea entered into a Memorandum of Understanding setting out the framework for BSGR's investments in the country and its partnership with the Government of Guinea ("**the Zogota MOU**") (Exhibit C-5). The preamble establishes that Guinea understood that it was entering into a partnership with the BSGR group, including BSGR and its various subsidiaries:

> "*La République de Guinée dans son désir de favoriser l'exploitation et la valorisation de ses ressources minières a décidé que de telles activités pourront être entreprises par ou avec l'aide d'investisseurs privés en vue d'accroître le développement économique et le bien-être des populations.*
>
> *Dans le cadre de cette politique la République de Guinée entend faire valoriser les importantes ressources minières de fer des Zones de Simandou par leur exploitation, leur transformation et leur commercialisation.*
>
> *BSGR, intéressée par les grandes potentialités minières de la République de Guinée s'est rapproché des autorités guinéennes en vue d'établir un partenariat pour le développement d'une partie des gisements de fer de Simandou dénommé dans le présent: Project des Mines de Fer de Simandou.*
>
> *BSGR est un groupe minier international spécialisé dans la recherche, la mise en valeur et la commercialisation des ressources minérales et dans le cadre du présent projet a délégué à sa filiale BSG Resources (Guinea) Limited la gestion du Projet des Mines de Fer de Simandou.*
>
> *BSGR est actionnaire majoritaire d'une société d'opérations minières dénommée Bateman Engineering spécialisée dans l'ingénierie, la construction et la gestion minière.*
>
> *BSGR a la volonté, les compétences techniques et la capacité financière pour collaborer avec la République de Guinée afin de prendre différentes initiatives commerciales [...]*
>
> *Pour concrétiser cette volonté de partenariat, les parties ont décidé de conclure le présent protocole d'accord pour régir leurs relations futures.*"
>
> [English translation: "*The Republic of Guinea in its desire to favour the operation and the development of its mineral resources has decided that such activities shall be carried out by or with the assistance of private investors in order to improve the economic development and the wellbeing of the population.*
>
> *Pursuant to this principle, the Republic of Guinea intends to develop the important ferrous mineral resources of the Simandou Areas through its operation, transformation and marketing.*

> *BSGR, who manifested an interest for the high mining potentials of the Republic of Guinea, initiated contacts with the Guinean authorities in order to set up a partnership for the development of a part of the Simandou Iron Deposits, hereafter called the Simandou Iron Mines Project.*
>
> *BSGR is an international mining group dedicated to the prospecting, development and trading of mineral resources, and with respect to this project, BSGR has delegated to its subsidiary BSGR Guinea the management of the Simandou Iron Mines Project.*
>
> *BSGR holds a majority interest in an engineering company named Bateman Engineering, dedicated to mining, metals and minerals engineering, construction and management.*
>
> *BSGR has the financial capacities to cooperate with the Republic of Guinea to take various commercial initiatives [...]*
>
> *To achieve this desire of partnership, the Parties have decided to enter into this Memorandum of Understanding to govern their future relations."*

20. Under Article 1 of the Zogota MOU, BSGR agreed to produce, within a period of 30 months, a feasibility study of the so-called Simandou Iron Mining Project, including an analysis of its requirements in terms of infrastructure, communication, transport and energy. In a second stage, depending on the results of the feasibility study, BSGR and Guinea would enter into a mining convention and incorporate a public mining company in which the Government was to take a 15% shareholding. The Zogota MOU was entered into for a period of 3 years (Article 5) and included an ICSID arbitration clause (Article 6.5).

### 3.1.4  The Extended Simandou Permits

21. As indicated above, the Simandou South Permits and Simandou North Permits were to expire after three years but were renewable under certain conditions.

22. On 21 January 2009, BSGR, through its subsidiary BSGR Guinea, applied for an extension for parts of the areas covered by the Simandou South Permits and the Simandou North Permits and retroceded other parts.

23. On 10 February 2009, the company BSG Guernsey was incorporated as a 100% subsidiary of BSGR. On 18 February, BSGR BVI and BSGR Guernsey entered into a Share Purchase Agreement according to which 100% of the shares of BSGR Guinea were transferred to BSGR Guernsey.

24. On 10 June 2009, BSGR, through its subsidiary BSGR Guinea, acquired four explorations permits covering an area of 1,667 square kilometres in the prefectures of Macenta, N'Zerekore and Beyla in Simadou South and Kérouané in Simandou North. The permits were registered with the Register of Mining Titles under No. A/2009/124/DIGM/CPDM. In what follows, the permits will be collectively referred to as "the Extended Simandou Permits". Ministerial Order No. A/2009/1327PR/MMEH/SGG granting the Extended Simandou Permits was signed by the then Minister of Mines and Geology, Mahmoud Thiam (Exhibit C-6).

25. The Extended Simandou Permits were valid for two years. Under Article 4 of the Permits, BSGR Guinea was required to run an exploration programme and spend an exploration budget. If the exploration work identified economically exploitable deposits, the Government was required under Article 11 of the Permits to issue one or more exploitation permits. Pursuant to Article 12 of the Permits, BSGR, through BSGR Guinea, paid handling fees, stamp duty and surface area fees to the Treasury of Guinea and other Guinean authorities to keep the Permits in place.

3.1.5 Investments in Simandou Zogota

26. Apart from the funds invested to acquire the above-mentioned mining titles, BSGR, either directly or through its subsidiaries BSGR BVI, BSGR Guernsey and BSGR Guinea, invested substantially in Simandou Zogota.

27. It constructed three base camps (in N'Zerekore, Kerouane and at the base of the Simandou mountain), drilled a total of 155 holes and 13,331 meters, took and tested over 12,000 samples and contracted several subcontractors, including Energold Drilling Corporation, Fugro Airborne Surveys, MSA Geoservices (Pty) Limited, Foraco SAS and Geoprospect Limited.

28. The work product of these investments was used to make another substantial investment, namely the drafting and submission on 16 November 2009 of the Zogota Feasibility Study (Exhibit C-7). The Zogota Feasibility Study was the work of BSGR and its subsidiaries and a series of external consultants (paid for directly or funded by BSGR), including Snowden Mining Industry Consultants, SGS South Africa, IC Exploration, SRK Consulting Engineers and Scientists, Bateman

Engineering, WSP Group, Digby Wells and Associates and ENVIRON. The completion of the Study in such a short time was a major achievement.

### 3.1.6 The Zogota Mining Concession

29. In light of the positive outcome of the Zogota Feasibility Study, BSGR, through its subsidiary BSGR Guinea, applied for a mining concession in November 2009.

30. On 19 March 2010, BSGR Guinea acquired a mining concession covering an area of 1,024 square kilometres in the prefectures of Beyla, Macenta, Nzérékoré and Yomou. The mining concession was registered with the Register of Mining Titles under No. A/2010/171/DIGM/CPDM. In what follows, this mining title is referred to as "the Zogota Mining Concession". Presidential Order No. D/2010/024/PRG/CNDD/SGG granting the Zogota Mining Concession was signed by then President at interim, General Sékouba Konate (Exhibit C-8). The Presidential Order also includes a written statement of Prime Minister JM Doré that says "Seen and approved" on each page.

31. The Zogota Mining Concession was valid for twenty-five years. Under Article 6 of the Concession, the Government was required, upon the application by BSGR Guinea, to issue one or more exploitation permits. Pursuant to Article 9 of the Concession, BSGR, through BSGR Guinea, paid handling fees, stamp duty and surface area fees to the Treasury of Guinea and other Guinean authorities to acquire and keep the Concession in place.

### 3.1.7 The Zogota Mining Convention

32. Following the filing of the Zogota Feasibility Study, the Government of Guinea set up a commission with the task of reviewing the Zogota Feasibility Study and entered into a mining convention with BSGR (Exhibit C-9). Article 1 of the Ministerial Order stated as follows:

> "Il est créé, sous l'autorité du Ministre des Mines et de l'Energie, une commission technique chargée d'examiner l'étude de faisabilité présentée par la Société BSGR et d'élaborer une convention minière entre la République de Guinée et ladite société"

> [English translation: "*Under the authority of the Ministry of Mines and Energy, a technical commission is established to examine the feasibility study presented by BSGR and agree a mining convention between the Republic of Guinea and the company.*"]

33. The Commission was composed of representatives from all relevant Government ministries, including Transportation, Development, Mines, Administration of Land, Treasury and the President's office. It comprised 20 people, whose names were recorded in the decree establishing the commission and published in the Official Journal of the Republic of Guinea.

34. On 16 December 2009, the Government of Guinea and BSGR, through its subsidiaries BSGR Guinea and BSGR Guernsey, entered into a Convention for Iron Mining at Zogota/N'Zerekore ("**the Zogota Mining Convention**") (Exhibit C-10).

35. The Zogota Mining Convention encompassed the Zogota Mining Concession, but was broader than that. The Convention not only dealt with the exploitation of the Zogota mine as such, it also dealt with the transport, export and commercialisation of the iron ore. Under the Convention, BSGR, together with its subsidiaries, undertook to invest USD 2,54 billion in the construction of: (1) an open-pit iron mine with a capacity of 30 million tonnes per annum; (2) an industrial zone in and around Zogota (including 102 kilometres of railway, offices, water treatment plant, a hospital, a power plant, living quarters and warehouses, etc) and (3) an iron ore port in Buchanan in Liberia, including warehouses, offices, living quarters (Articles 10(1) and 11)).

36. BSGR further undertook to invest an additional USD 1 billion in the refurbishment of the railway between Conakry and Kankan (Article 12). This railway was to be dedicated to the transport of people and goods in order to unlock the rural areas of Guinea and stimulate economic growth.

37. The Zogota Mining Convention came into force on 19 March 2010 by Presidential Order No. 003/PRG/CNDD/SGG/2010 of the same date, signed by then President at interim, General Sékouba Konate (Exhibit C-11). The Presidential Order also includes a written statement of Prime Minister JM Doré that says "Seen" on each page.

### 3.2  Blocks 1 & 2

#### 3.2.1  Blocks 1 & 2 Permit

38. In February 1997, Rio Tinto, through its local subsidiary Simfer SA, had acquired four exploration permits on the Simandou mountain. These permits related to four blocks, known as Blocks 1 & 2 in Simandou North and Blocks 3 & 4 in Simandou South. In July 2008, the Government of Guinea decided to withdraw Rio Tinto's and Simfer's mining rights over Simandou Blocks 1 & 2 because they had failed to comply with the applicable 1995 Mining Code. After their lawful withdrawal from Rio Tinto and Simfer, the exploration rights in Simandou Blocks 1 & 2 became available and BSGR successfully applied for them.

39. On 9 December 2008, BSGR, through BSGR BVI, acquired an exploration permit in Simandou Blocks 1 & 2 covering an area of 369 square kilometres in the prefecture of Kérouané. The permit was registered with the Register of Mining Titles under No. A/2008/132/DIGM/CPDM. In what follows, this mining title will be referred to as "the Blocks 1 & 2 Permit". Ministerial Order No. A/2008/4980/MMG/SGG granting the Blocks 1 & 2 Permit was signed by the then Minister of Mines and Geology, Louceny Nabé (Exhibit C-12). Later, President Alpha Condé appointed Mr. Louceny Nabé as head of the Guinean Central Bank.

40. The Blocks 1 & 2 Permit was valid for three years and was renewable under certain conditions. Under Article 4 of the Permit, BSGR BVI was required to run an exploration programme and spend an exploration budget. If the exploration work identified economically exploitable deposits, the Government was required under Article 10 of the Permit to issue one or more exploitation permits. Pursuant to Article 11 of the Permit, BSGR, through BSGR Guinea, paid handling fees, stamp duty and surface area fees to the Treasury of Guinea and other Guinean authorities to acquire and keep the Permit in place.

41. On 5 May 2009, the Republic of Guinea approved the transfer of the Blocks 1 & 2 Permit from BSGR BVI to BSGR Guinea (Exhibit C-13).

42. VBG Guinea further applied for a renewal of the Blocks 1 & 2 Permit and a mining concession for Blocks 1 & 2. In accordance with Article 50 of the 1995 Guinean Mining Code, an exploration permit is tacitly renewed where the Republic of

Guinea fails to decide on an application for a renewal or a concession within three months after its presentation. As the Republic of Guinea failed to make a decision on VBG Guinea's application, the Blocks 1 and 2 Permit were renewed.

3.2.2   Provisions in the Zogota Mining Convention in relation to Blocks 1 & 2

43.   The Zogota Mining Convention did not only contain provisions in relation to Simandou Zogota. Other provisions related to Blocks 1 & 2. Under Article 10(2) of the Zogota Mining Convention, BSGR and its subsidiaries undertook to invest in Blocks 1 & 2 by constructing (1) two open-pit iron mines, (2) an industrial zone in and around Kerouané, including industrial equipment and installations and living quarters and (3) an extension of the iron ore port in Buchanan in Liberia. To determine the modalities of a mining concession for Blocks 1 & 2 and the conditions for operating the two Blocks, BSGR Guernsey and BSGR Guinea further undertook to submit, within 24 months from the signing of the Zogota Mining Convention, a Blocks 1 & 2 Feasibility Study.

3.2.3   Investments made in Blocks 1 & 2

44.   Apart from the funds invested to acquire the Blocks 1 & 2 Permit, BSGR, either directly or through its subsidiaries BSGR Guernsey and BSGR Guinea, invested substantially in Blocks 1 & 2. It constructed a base camp, drilled a total of 94 holes and 15,846 meters and started to work on a feasibility study for the Blocks. The BSGR group, including BSGR Guernsey, BSGR Guinea, BSG Resources (Liberia) Limited and BSGR (Liberia) Limited, further signed a Memorandum of Understanding with the Republic of Liberia regarding the export of iron ore from Zogota and Simandou Blocks 1 & 2 through the port of Buchanan in Liberia. The parties also agreed to negotiate a commercial agreement including an infrastructure development agreement.

3.3   **The Joint Venture with Vale**

3.3.1   The participation by Vale

45.   After acquiring the Extended Simandou Permit and signing the Zogota Mining Convention, BSGR began to look for a partner to invest additional capital and