H7IAABSGC–CORRECTED          Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    BSG RESOURCES (GUINEA)
     LIMITED, ET AL.,
4
                     Plaintiffs,
5
              v.                              17 CV 2726 (AJP)
6
     GEORGE SOROS, ET AL.,
7
                     Defendants.
8
     ------------------------------x
9                                            New York, N.Y.
                                             July 18, 2017
10                                           4:00 p.m.

11   Before:

12                       HON. ANDREW J. PECK,

13                                           Magistrate Judge

14                            APPEARANCES

15   GREENBERG TRAURIG LLP
          Attorneys for Plaintiff BSG
16   BY:  MICHAEL LAZAROFF
     LOUIS M. SOLOMON
17   NICHOLAS NORDEN
     ANNE REDDY
18
     WILLKIE FARR & GALLAGHER LLP (NY)
19        Attorneys for Defendant Soros
     BY:   JOSEPH T. BAIO
20   BENJAMIN P. MCCALLEN
     JIM FITZMAURICE
21

22

23

24

25

1      (Case called)

2      THE COURT:  This is a way, there is the immortal words

3  of Yogi Bera, deja vu all over again, only because I had BSG in

4  front of me in the Rio Tinto Valley case and Mr. Soros had a

5  case or two in front of me about totally different issues.

6      So what I want to do is try to figure out what your

7  discovery deadline is for document discovery because Judge

8  Keenan's order said you all are to follow the deadlines in your

9  26F report.  But it appears there are two sets of dates in that

10  or at least the defendant's position was we're not going to do

11  anything or not going to do it until the motion is decided is

12  what I really mean to say and the plaintiff has some other

13  dates.  So let's try to figure that all out.  And also since

14  you're in a rocket docket figure out if you can be quicker on

15  any of the dates than you originally thought.

16      So look for a minute like somebody at the defense

17  table is trying to get up.  Tell me who you are and we'll go

18  from there.

19      MR. MCCALLEN:  Sure, your Honor.

20      Good afternoon, your Honor.

21      Ben McCallen, from Willkie Farr & Gallagher, on behalf

22  of the defendants.

23      On the question, your Honor, about the relevant close

24  of fact discovery I think --

25      THE COURT:  Not fact discovery.  If I said that, I

1    meant the document part of it because depositions are stayed.

2          MR. MCCALLEN:  So my reading of the proposed dates

3    that were actually submitted to the Court actually didn't have

4    from either party a proposed deadline for the completion of

5    document productions.  So I don't think that Judge Keenan's

6    order really speaks to it because he doesn't, because the

7    order, the dates the parties submitted did not deal with that.

8          From our perspective, we've given some thought to

9    dates that we think would work.  And I think from a document

10   production standpoint one thing, your Honor, is this is going

11   to be a case with significant international discovery.

12         The parties have, we've received plaintiff's initial

13   disclosures.  We've agreed to serve ours this coming Thursday.

14   I think that the vast majority, if not a sizable amount of them

15   are going to be people outside the United States and I suspect

16   that both parties might very well be coming to your Honor

17   looking for permission to be for international discovery.  So I

18   do thin that probably some time needs to be built-in for that.

19         But in terms of completion of document productions

20   what we were thinking, your Honor, would be some time in early

21   2018 and we would propose a date in the middle of February

22   which would have us substantially through the significant work

23   and discovery which is the document stuff, at least from a

24   party perspective within half a year of now which I think,

25   given the fact that, and Judge Keenan had set this for oral

1   argument in late September, would put us on a fast track.

2          And of course, your Honor, as part of that and I know

3   we are not going to get into the merits of anything here today

4   but one of the bases that we are going to be moving and have

5   moved in front of Judge Keenan is to stay the case pending an

6   arbitration that's currently pending right now.

7          THE COURT:  Is this an arbitration between BSG and

8   Soros --

9          MR. MCCALLEN:  Actually, it's not, your Honor.  Maybe

10  a little bit of context here would help.

11         So the arbitration in front of ^ics is between BSGR,

12  the plaintiffs, and Guinea.  So this case relates to and I'm

13  sure your Honor has the complaint.

14         THE COURT:  I also know the similar story from the Rio

15  Tinto against Bally case.

16         MR. MCCALLEN:  So obviously, this relates to the same

17  relationship that BSGR plaintiffs here had with Guinea.  There

18  is actually a proceeding pending in front of the International

19  Arbitration Tribunal.  That matter is between plaintiffs on the

20  one hand and Guinea on the other.  And among the primary issues

21  that are being litigated there is basically a breach of

22  contract dispute.  BSGR claims there, as it does in this case,

23  that it had a valid agreement with Guinea to mine iron ore.

24  And the parties to that agreement had contracted to say their

25  disputes would be litigated in front of IXIT in an arbitration.

1    They are now litigating the validity of those breach of

2    contract claims.  And my understanding is that the primary

3    evidence has already been fully submitted to the panel.  There

4    might be a few outstanding issues.  We're not involved in that

5    case, your Honor.

6         But for purposes of our motion -- and this is what

7    we'll be arguing in front of Judge Keenan is that the legal

8    issues that are being decided in that case are going to largely

9    if not entirely dispose of this case.

10        Primarily, as your Honor knows, there's a tortious

11   interference claim here which is the primary claim in our view

12   that's being brought by BSGR.  To the extent the IXIT panel

13   determines that there's been no breach of contract, that claim

14   goes away.  And really the issue about whether or not there is

15   a valid contract, whether or not BSGR obtained that contract

16   through bribery and corruption which is going to be one of our

17   primary defenses in this case, those issues are all before the

18   arbitration panel between the parties to the contract.  That's

19   going to be the basis for our motion to stay and we obviously

20   think that's a strong motion but that will be heard by Judge

21   Keenan in late September.

22        So in that context we were thinking that a document

23   production deadline in the middle of February gives the parties

24   an opportunity to work through, I'm sure, the issues that we're

25   going to have, raise any issues we can resolve with your Honor

1    and also gives an opportunity for us to get in front of Judge

2    Keenan and make the arguments we want to make.

3           THE COURT:  If I were to say, let's set a date for

4    completion of document production between the parties as

5    opposed to nonparty overseas discovery, what would you suggest?

6           MR. MCCALLEN:  That was our proposed date for

7    completion of party discovery, your Honor.

8           THE COURT:  So —

9           MR. MCCALLEN:  Middle of February.

10          THE COURT:  Mid February, six months as opposed and

11   assuming Judge Keenan denies your motion, then you're saying

12   after that period is when you'd start going abroad to do the

13   Hague or whatever?

14          MR. MCCALLEN:  No, no, your Honor.  I'm sorry if I was

15   unclear about that.  I think given the timing issues with

16   international discovery, we need to start those applications

17   right away.

18          THE COURT:  Maybe I now understand where you are going

19   but let me be clear.  It would seem to me — and I know it's a

20   lot easier sitting here than sitting at your two tables — but

21   you serve a document request in the next week or so.  Thirty

22   days later you get the objections and responses and some, but

23   not necessarily all of the documents.  Why isn't that completed

24   in three months at the outset?

25          MR. MCCALLEN:  As an initial matter, your Honor, I'm

1    not sure that the date we're proposing is all that far off

2    because at that point we are going to be looking at the end of

3    the year I think under the schedule that your Honor is

4    proposing.  And I think from our perspective, given that -- so

5    Judge Keenan has stayed depositions but even assume that on

6    September 26 he says denying the motions and depositions can go

7    forward, I think given the amount of documents that are abroad

8    in this case, I just think it's going to be really hard for the

9    parties to start depositions seriously until substantial

10   document production has been complete from international

11   discovery as well.  I guess from our perspective, your Honor,

12   cause I know in part, your Honor, once the date gets set, it

13   gets set and so from our perspective --

14          THE COURT:  On the other hand, the longer out a date

15   is parties never finish before a date.  It's like

16   unconstitutional for lawyers to do anything before the

17   deadline.

18          All right.  Let me hear from plaintiff's side

19          MR. SOLOMON:  Thank you, your Honor.  I want to thank

20   the Court for seeing us so quickly.

21          We're very far apart I'm afraid.  We brought this suit

22   really the first moment that we could when BSGR was out from

23   under some terrible clouds that were placed on them by

24   Mr. Soros.  We have a very detailed, I thought we had a very

25   detailed complaint.  The other side made a motion to dismiss.

1   We have a very detailed amended complaint.  We have a lot of

2   evidence.  We'd like to get the rest of the discovery so that

3   we can go to trial.

4          Mr. Soros is 86 years old.  We have it on authority

5   from one of BSGR's counsel overseas that he is now, although,

6   the other side told Judge Keenan that he is in very good health

7   and I trust the representation of counsel, he is apparently now

8   speaking or breathing with an assisted device and we want to

9   get this case to trial as quickly as possible.

10          There are three clusters of discovery and I would like

11   to be clear.  I don't think there was any uncertainty about

12   what Judge Keenan was talking about.  When he said document

13   discovery and interrogatories shall proceed according to the

14   deadlines listed in the Rule 26 Joint Discovery Statement, your

15   Honor, we were the only ones who had deadlines.  The other side

16   didn't have any deadlines.  And we had everything concluding

17   all fact discovery including depositions other than experts by

18   December 15.  So we can beat that by a fur piece if we're just

19   talking about documents.

20          Now even we in our Rule 26 proposal to the judge did

21   say that the parties could extend by written consent or by

22   order of the Court for international discovery.  We took that

23   in account also as paragraph 15 of our proposal and if that's

24   what we want to work into this, I think that's fine.  We don't

25   all of the discovery before we can start the depositions and

1    before we can know what the defendant's have.

2          We've already served our initial disclosure.  The

3    defendant decided not to.  We did it last month.  We've served

4    our document requests.  The defendant has decided not to.  We

5    served them on --

6          THE COURT:  When did you serve your document requests?

7          MR. SOLOMON:  The parties documents we served a week

8    ago, judge, and they're due on the 8th.  Yeah, on the 8th of

9    August.  We had to join some additional OSF entities.  Some of

10   these controlled non government organizations that Mr. Soros

11   controlled there.  We served them as well.  So we've served all

12   eight.  Theirs is due on the 11th of August.  We served the

13   son's --

14         THE COURT:  If you just served them, I'm not sure even

15   under the new rules whether their response could actually be

16   due that soon.

17         MR. SOLOMON:  I do appreciate that.  It was, however,

18   before Judge Keenan that Judge Keenan said their motion to

19   dismiss on the new entities is due on the 28th of July that led

20   me to believe that we were OK in serving them.  If they need a

21   few days, a short extension time, we grant courtesies.  We

22   understand that it's August but we can't do the whole case over

23   for any reason.

24         There are also some third parties we're already

25   served.  We have served the sons of Mr. Soros as the complaint

H7IAABSGC-CORRECTED          Conference

1    alleges.  We have direct evidence of bribes from Mr. Soros

2    through his sons to Guinean officials.  And we have a witness

3    to that effect and we have sworn statements to that effect and

4    I want the documents.  These aren't hard to find because it's

5    very hard to manipulate swift and other baking records.  These

6    are not going to be very difficult to show.  I think if they

7    don't have them, then we'll go get them from the banks but I

8    think we ought to have them.  We have the e-mails and so that's

9    not going to be hard.  We've already served the subpoenas on

10   the sons.  We've also served three others of the non parties.

11   So we have been doing everything we can to keep this moving.  I

12   think the --

13          THE COURT:  Let me ask you what foreign discovery, if

14   any, whether Hague or otherwise, is your side going to need?

15          MR. SOLOMON:  We are going to need some.  I see this

16   as sort of clusters.  The first clusters is Mr. Soros and NGOs

17   that he controls and I think they're here and we've already

18   gotten that document request.  We've gotten those out.

19          There's a second broader group of agents.  They number

20   five to ten, not ten to 20.  But these are agents who are

21   carrying out, who are being project managers to destroy BSGR

22   that are being directed by Mr. Soros.  I want to alert the

23   Court to the fact that some of these agents are lawyers and we

24   are serving them to look for their non privileged documents.

25   Our complaint I think is fairly detailed by the role that the

1      lawyers are playing.  And they're not always acting in a

2      capacity as counsel.  They are talking to the press.  They are

3      feeding information to the press.  And we want those.  In that

4      second cluster I think it's fairly straightforward because

5      they're either here, your Honor, or they could be served

6      through the Hague.  Then the third cluster --

7              THE COURT:  Slow down on that.  Where are they?

8      Because if it's anywhere other than the UK my experience is

9      lots of luck on the Hague.

10             MR. SOLOMON:  I tell your Honor -- well, in my

11     experience that's often the case and it depends where.  We have

12     had some success in India.  We are going to need some in France

13     and the rest are in the UK.  Those are companies that --

14             THE COURT:  The UK is very or relatively easy and

15     relatively fast.  France, with their blocking statute, as well

16     as privacy, good luck.  But anything you want with --

17             MR. SOLOMON:  Our job's going to be to bring your

18     Honor and we plan to do that in the next two weeks to get

19     everything in front of your Honor so your Honor will see it.

20     But that's a general number.

21             The third cluster is there are some Guineans who are

22     recipients of the bribes and we think that they have documents.

23     Guinea is not a signatory to the Hague.  We are going to use

24     letters rogatory and I appreciate that there may come a time in

25     a few months when we don't get that discovery.  We're not going

1    to hold up the trial so that he can get discovery of what I

2    think are tertiary people.

3          Those that we can serve in the United States by the

4    way, your Honor, we are.  My colleague reminds me that we have

5    a party in Canada but I think we're serving them through an

6    office here.  And so to answer the Court's first question Judge

7    Keenan was not deciding anything on the motions.  But

8    everything your Honor heard about the stay was made to him.

9    Those arguments were made to him about the ^exit matter -- and

10   by the way that's pending in Paris.  It's not pending in the

11   United Kingdom, but I think that matters not.

12         But he heard all of those arguments.  Judge Keenan

13   without deciding anything, a couple of times in the conference

14   said, you know just reading the complaint it looks like there

15   are going to be claims that are going to survive.  So let's get

16   started here.

17         THE COURT:  What are you suggesting?

18         MR. SOLOMON:  I think that all documents should be

19   exchanged.  Search terms should be done.  Documents should be

20   exchanged.  We'll bring the matter before your Honor.  We're

21   familiar with the rocket docket and we applaud it.  We'll live

22   by it.  But all of that should be done by November 1st.  If and

23   to the extent that there is still some hanging third parties,

24   then the parties should be responsible for calling to your

25   Honor's attention what effort they have made so that nobody

1    slows this case down on either side.  But we would like

2    document discovery across the board finished November 1.  The

3    only, exception being -- to though turn your Honor that we've

4    made efforts and we haven't been able get through the Hague

5    process in one place or another.

6              THE COURT:  All right.

7              MR. SOLOMON:  Thank you, judge.

8              THE COURT:  Let me briefly hear from you,

9    Mr. McCallen, as why that doesn't make sense.

10             MR. MCCALLEN:  Sure, your Honor.  May I just address

11   some of the other issues that were raised in Mr. Solomon's --

12             THE COURT:  You can.  Although you're both arguing

13   merits or stay issues that are not before me and that by the

14   time they come before me in any other formal or informal

15   hallway you'll probably all want to say it again.  I gave you

16   the ability to do that when you were first up and therefore, I

17   gave plaintiff's counsel a similar ability.  I would suggest to

18   both of you, you keep it to a minimum.

19             MR. MCCALLEN:  OK.

20             THE COURT:  If not, abandon it entirely.

21             MR. MCCALLEN:  With that helpful instruction your

22   Honor, with respect to the discovery requests that have been

23   served, plaintiffs have served eight different defendants, each

24   with about a 105 document requests I think.  Granted, there is

25   overlap but there is a lot of requests in there and there's a

1    lot of --

2              THE COURT:  You're recommending all of those folks?

3              MR. MCCALLEN:  Yes, sir, all of the defendants, your

4    Honor.

5         In addition to that, as Mr. Solomon alluded to,

6    plaintiffs have gone out and served some nonparty discovery.

7    Some of those are including Mr. Soros' three sons based on

8    these allegations that they were bribing people in Guinea.  In

9    any event, we'll put the merits of the claim aside.  There is

10   quite a lot to go through and there's quite a lot to respond

11   so.  Obviously, we need to do that with the precision required

12   under the new federal rules.

13        So as an initial matter talking about dates for

14   initial response, Mr. Solomon and I started this conversation

15   outside in the hallway.  We weren't able to reach resolution.

16   I'm hopeful that we can get some more time.  Obviously, I think

17   I would like some more time than he would refer to give me.  I

18   think at the of the day with the summer holidays, I'm dealing

19   with a variety of different clients with eight different legal

20   entities on the defense side.  There's a little more time

21   there.

22        And then with respect to the actual production dates,

23   your Honor, I have been litigating these discovery issues and

24   doing EDiscovery and search terms and that stuff for a long

25   time.  Two months is a really tight schedule.

1    THE COURT:  You shouldn't be using search terms any

2    more but I think you expected me to say that.

3    MR. MCCALLEN:  Your Honor, two months which is what

4    plaintiffs are proposing, I just don't think is realistic here

5    and that's going to have to obviously be a two-way street and

6    we are going to need to have a thorough meet and confer

7    process.

8    Early November I think, your Honor, is just simply

9    unrealistic when we're talking about -- plaintiffs are suing

10   defendants.  Here I think they've claimed something upwards of

11   seven or eight billion dollars.

12   THE COURT:  -- proportionality argument easier.

13   MR. MCCALLEN:  Your Honor, appreciate the need for the

14   rocket docket and we intend to move quickly and efficiently.

15   But at the same time we need an opportunity to defend against

16   these claims which are serious.

17   THE COURT:  Understood.  Here is where I'm coming out.

18   I'm inclined to give you a December 1 date but if you want to

19   save your associates' Thanksgiving weekend, I would be willing

20   to make it November 23 so it doesn't destroy your Thanksgiving.

21   You lose a week but you'll also get -- sorry November 22 or 23

22   is Thanksgiving.  But I'm perfectly happy to have you all work

23   through it, may be appropriate.  So you only get votes

24   occasionally, December 1 or November 22.  And obviously, if the

25   parties move forward with good faith and appropriate rocket

1    docket speed and there has to be an extension in part or in

2    full for one reason or another, I would consider extending it

3    to the end of the year even into 2018.  But I think the longer

4    out the date is, the less likely, particularly -- and with no

5    disrespect to you or your firm -- with hopes of a stay in your

6    mind that tends to slow things down.

7             So with that, and I'll give you the first vote on it,

8    November 22 or December 1?

9             MR. MCCALLEN:  December 1, your Honor.

10            THE COURT:  Any disagreement on that from the

11   plaintiff?

12            MR. SOLOMON:  We prefer November 22 for just the

13   reason your Honor said but we can accommodate that.

14            THE COURT:  December 1, it is.

15            And as far as I'm concerned, the sooner on the defense

16   side you get your requests out, the better position you'll be

17   in if you say you need more time.  In other words, I appreciate

18   all the requests that have been served on your clients or

19   related entity and you're going to be dealing with that but you

20   have to be able to walk and chew gum at the same time.  So you

21   need to serve whatever discovery requests on BSG or nonparties

22   that you'd want in order to get this moving.

23            To the extent going forward you all can coordinate and

24   cooperate on nonparty subpoenas, I would rather a single

25   subpoena with both side requests to not burden the nonparties

1    rather than plaintiff serving one request and defendant

2    following up thereafter and saying, well, if that's what's

3    happening we want the following as well.

4            In addition, on any Hague or letters rogatory request

5    without losing time, I would want you to try to negotiate them.

6    And one of the things we did and BSG was a more nominal player

7    in the Rio Tinto case, one of the things that we did that

8    worked very, very well was one of the parties was arguing you

9    don't have jurisdiction over me here, judge, and that was still

10   hanging out there.  We're in London.  We're not here.  But what

11   the parties agree on including with that party, I don't think

12   it was BSGR -- but frankly, I don't know who it was -- was that

13   all the U.S. lawyers agreed on what their document request in

14   the Hague request would be and put in the request that had been

15   negotiated by the parties was agreed to by the entity that

16   would have to respond to it in the UK and that that made the UK

17   process much smoother.

18           If you all can do that, obviously, that's in everybody

19   interests in moving things forward.  If you can't, you can't.

20   And if I have to serve, sign two different requests, one to the

21   same entity, one from the plaintiff and one from the defendant,

22   so be it.  And I'll let my counterpart master over there figure

23   out what to do with it.  But I'd like you all if you really are

24   going to be cooperating to try to do that together.

25           As I say, beyond the UK I'm not overly hopeful that by

1    December 1 or mid February you're going to the get responses.

2    But get it served and we'll see how that all plays out.

3            On the ESI, I'm not going to say you can't use key

4    words and have to user -- you'll figure out what you going to

5    do.  This is not quite as transparent.  Cooperate as much as

6    you can.  Read my opinion in the William A Gross case.  Read my

7    decision in which you probably have the Silvermore and Rio

8    Tinto and Kiley against City of New York, my trilogy on a/k/a

9    Tar.  Make sure you've read my discovery decisions in fisher

10   against Forrest from February of this year, as well as the

11   substantive two decisions in that case.  That was my wake-up

12   call to the bar in this district that the amendment to Rule 34

13   even as they say.  And again fair warning, I said in there if I

14   find the old fashioned nonsensical boilerplate objections that

15   is -- of all objections as to privilege -- So make sure your

16   objections are done appropriately and then make sure you talk

17   to each other.

18           It might be advisable.  I'm not ordering it but I'm

19   suggesting that you may want to once you've gotten the request

20   and have some idea what of what your clients have not to wait

21   for 30 days and then object and say I don't want understand

22   this request.  This way talk them through and that would save

23   time, save your clients money and perhaps get fact document

24   requests sooner.

25           What else from the 26F report or anything else you

1     want me to rule on or even as I've just done, give my thoughts

2     on which are different than a rule?

3             MR. SOLOMON:  There are two things, your Honor.  The

4     first is that under Local Civil Rule 26.1 there happens to be a

5     rule that there is some debate about information about another

6     party that if the party's a natural person and you make this

7     request, then the rule wants the party's residence, domicile

8     and state of corporation.  If the party is not an incorporated

9     association --

10            THE COURT:  I've got that rule.

11            MR. SOLOMON:  So there was a party that the second

12    named defendant, OSF, that the other side had suggested wasn't

13    a proper party.  I don't think the grounds were jurisdictional

14    but I'm not certain they did move to dismiss for that party.

15    We served the local civil rule.  And the response that we got

16    was that this is all jurisdictional.  The party doesn't exist.

17    So they weren't going to answer the subparts that were required

18    to be answered.  So we would like an answer if they are going

19    to make that motion again --

20            THE COURT:  If open society foundation exists, the

21    issue that there is no such entity or what?

22            MR. MCCALLEN:  That's precisely right, your Honor.  It

23    doesn't exist.

24            THE COURT:  Did it ever?  Is it a foundation or

25    whatever that has since been dissolved?  They got the name

1   wrong and it never existed?

2         MR. MCCALLEN:  My understanding, your Honor, is it

3   never existed.  It's a network of other legal entities.  Before

4   the Rule 26.1s request was served on us we've informed

5   plaintiffs, they tried to get us to accept service and we said

6   we can't accept service for something that doesn't exit.  There

7   is no personal jurisdictional and we can't accept service.  At

8   that point they sent us a letter saying, well, tell us the

9   right entity who we should serve and we had some back and forth

10  on that.

11        Ultimately, your Honor we told them without conceding

12  that anybody did any of the things they said, we gave them the

13  name of the entity within the OSF network that they could

14  serve, and that responded to their question.  So in addition

15  when they served us with the 26.1 requests which is clearly

16  designed to get issues of related entities, we objected to it

17  because we frankly gave them what they wanted.

18        THE COURT:  There are at least two Open Society

19  Foundations and the --

20        MR. MCCALLEN:  We are talking about the second

21  defendant, Open Society Foundation.

22        THE COURT:  As opposed to Open Society Foundation

23  incorporated?

24        MR. MCCALLEN:  That's correct, your Honor.

25        Frankly, the request that Mr. Solomon was talking

1    about was served, it had to be a month and a half ago and he

2    served our response and --

3            THE COURT:  This is the first perhaps discovery

4    conference it's in.  But in any event, what makes you believe

5    that this is an entity as opposed to --

6            MR. SOLOMON:  Your Honor, there was no intent to

7    spring this on counsel.  We have a schedule.  We can submit

8    letters, your Honor.  They have a website.  They copyright

9    things.  They have a budget that they announce to the world.

10   Then they use to pay people including NGO around the world

11   exfoliate and lambaste and denigrate my client.  That's what

12   we're relying on.  And 261 is not the best vehicle to get this.

13   there was an entity with an identical name it either had an "S"

14   or it didn't have an "S".  We want the right people, judge, we

15   don't want to waste time with the wrong defendants.

16           MR. MCCALLEN:  As Mr. Solomon has said, he's plead his

17   fact around who he thinks these entities are.  Judge Keenan has

18   given us a deadline of July 28 to make our motion to dismiss.

19   The arguments he's making here are about having a less --

20   point.  These are arguments that he can make in opposition to

21   our motion to dismiss.

22           THE COURT:  How are you moving to dismiss for an

23   entity that doesn't exist that you are not representing?  I

24   mean, seriously, if you are representing them there must be

25   some information that you can give plaintiff's counsel.  It may

1    not be a corporate entity or what ever.  It may be an

2    organization.

3          MR. MCCALLEN:  We have done that.  So Open Society

4    foundation it's a network.  There is other legal entities

5    within it and there are employees that work in those entities.

6    When plaintiffs served us with their complaint we came to them

7    and said Open Society Foundation doesn't exist.  But they asked

8    us, well, tell us who provided other things they were most

9    interested in funding to certain organizations or associations,

10   agencies related to them.  So we gave them the name of a legal

11   entity in New York who was subject to service and we said this

12   is an entity that provided funding during the relevant time

13   period.

14         THE COURT:  Is that one of the existing defendants?

15         MR. MCCALLEN:  It is.

16         MR. SOLOMON:  That is the foundation to promote an

17   Open Society, your Honor.

18         THE COURT:  All right.  I'm sort of at a loss.  And it

19   may be that we wait and see what happens in ten days when a

20   notion to dismiss comes and we go from there.  Otherwise, this

21   is obviously something that can be explored in depositions but,

22   obviously, we're not at depositions yet.  But I can lift the

23   stay of depositions for the limited purpose of getting to the

24   bottom of what is this foundation or Open Society Foundation

25   with an "S"?  That is a network without being an entity.  So I

1    suggest you all cooperate.  I'm not going to rule on it now.

2    We'll see what happens.  Whether the motion has enough

3    information or not and you will renew at our next conference.

4              MR. SOLOMON:  Your Honor, we like it here.  We want to

5    come back.  December just feels like a long way away.

6              THE COURT:  I'm going to get to that but let me just

7    see if the defense has any immediate issues other than the next

8    conference date.

9              MR. MCCALLEN:  Nothing further from us, your Honor.

10             THE COURT:  All right.  When do you all think you'd

11   like to come back since we're all having so much fun?

12             MR. SOLOMON:  Your Honor, we'd like to come back, I

13   thought the parties should take a few days after their

14   responses to try to work things out but I didn't want to let a

15   lot of grass grow under that.  I was thinking the second week

16   of August.  I appreciate that counsel did ask for an extension

17   of four or five weeks to try to put things off.

18             THE COURT:  Without further speechifying, what's your

19   all of your availability for the week of August 21?  Whether

20   it's to say we're done with certain things or just to just say

21   we're making progress.  That seems like an odd time to bring

22   you back.

23             MR. SOLOMON:  Fine, judge.  Thank you.

24             THE COURT:  So if you have a preference of a day of

25   the week, I am open that whole week.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          MR. SOLOMON:  Monday would be fine, judge.

2          THE COURT:  All right.  I'm giving you a few choices.

3     Wednesday, Thursday or Friday, so let's aim for that.

4          MR. SOLOMON:  Wednesday would be preferred from my

5     perspective.

6          MR. MCCALLEN:  Thursday is fine if we could,

7     November 22.

8          THE COURT:  All right.  Comedy, I got it.  Things are

9     less funny at 4:45 in the evening.  August 24, at 9:30 a.m.

10    Obviously, you have read or you will read my rules.  If you

11    have significant problems before then, you don't have to wait.

12    Truth be told, I'm pretty booked with a trial but they tell me

13    they're not settling.

14         Earlier in August which is part of the reason I'm

15    pushing you to this week, but you know if you've got a problem,

16    write in on ECF and I will try to get you in.  Conversely, if

17    you get to August 226 conference and have no problems and are

18    not behind on meeting the December 1 cut off goal, et cetera,

19    if both sides agree you can ask to put the conference on and

20    other then for personal reasons if one side asks to postpone

21    the conference and it doesn't say the other side agrees, I

22    assume that that's the party who defaulted and is looking to

23    buy time and I will deny that request.  If you're both saying

24    you're happy to put things off, I'm generally nine times out of

25    ten to grant that request but nothing gets canceled until --

H7IAABSGC-CORRECTED            Conference

1       I am sure there is usually a question but I'll ask it

2    anyway.  Is there anything the Court can do to help you with,

3    whether that is the Southern District mediation program or

4    conference with you.  I figured I should ask.

5       MR. SOLOMON:  Thank you, your Honor.

6       I don't think it makes sense, your Honor, short of

7    having plaintiffs dismiss their claims.

8       THE COURT:  That doesn't usually happen any more than

9    the defendants try to get -- at trial.  Keep an open mind as to

10   whether you want to settlement conference.  If and when you are

11   serious let me know and I'll letter wheel it.  General rule at

12   these conferences whatever rulings that I make that I might or

13   might not make an entry on the docket.

14      But this is certainly a case where no party is going

15   to say my client can't afford to buy the transcript.  So my

16   both sides should buy this transcript and that gets you the

17   50/50 split of it.

18      In the event, unlikely I'm sure, that you would ever

19   want to file objections to one of my rulings with Judge Keenan,

20   the rule is 14 days from the conference, not 14 days from when

21   you get the transcript ordered delivered.

22      I think that covers all of the usual warnings.  So

23   with that, enjoy the rest of this month and three quarters in

24   August and I'll see you at the end of August.

25                          (Adjourned)