# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited, | ) ) ) ) |
| Plaintiffs, | ) ) No. 1:17-cv-02726 (JFK) (AJP) |
| -against- | ) ) ) |
| George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**[PROPOSED] STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND OTHER MATERIALS**

WHEREAS, Plaintiffs BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited, and Defendants George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund, (collectively, the "Parties"), when engaged in discovery proceedings in this action, may undertake, among other things, the searching for and production of electronically stored information;

WHEREAS, one or more of the Parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests;

WHEREAS, the Parties agree that this Stipulated Order Regarding the Production of Electronically Stored Information and other Materials (hereinafter, the "Order"), and any subsequent Orders, shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action and will enable pre-trial discovery to proceed in a more efficient manner;

WHEREAS, the Parties recognize that this Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that

1

additions and modifications to the Order may become necessary as more information becomes known to the parties;

IT IS, therefore, hereby STIPULATED AND AGREED, by and between the Parties through their respective counsel of record, as follows:

**A.     DEFINITIONS**

1.      "Litigation" means the case captioned *BSG Resources (Guinea) Limited, et al. v. George Soros, et al.*, Civil Action No. 17cv-2726 (JFK)(AJP)(S.D.N.Y.).

2.      "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001 and includes information or data that is generated, received, processed, or recorded by computers or other electronic devices, including, without limitation, system metadata (e.g., author, recipient, CC, BCC, custodian, source, file creation date, file modification date, sent date, subject, extracted text or OCR where extracted text is unavailable, file name, and attachments) and user-generated metadata (e.g., spreadsheet formulas).  The terms "Electronically Stored Information" or "ESI" further include, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) messages from AOL Instant Messenger, Twitter, Google Chat/Gchat, Facebook, Skype, MySpace, LinkedIn, and all similar programs and social media sites, (iv) audio and video files, (v) internal (intranet) or external websites, (vi) activity listings of electronic mail receipts and/or transmittals, and (vii) internet browser history.  The term "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) in an active file on a computer network or individual computer hard drive, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, (v) on a smartphone, tablet, or personal digital assistant, and (vi) on a home or personal device.  The terms "Electronically Stored Information" or "ESI" also include documents, containers, and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

3.      "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

4.      "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Paper Discovery.

5.      "E-mail" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

6.      "Format" means the internal structure of a file, which defines the way it is stored and used.

7.      "Native Format" means the format of ESI in the application in which such ESI was originally created.

      8.      "Party" or "Parties" means Plaintiffs BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited, and Defendants George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund.

      9.      "Defendants" means George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund.

      10.      "Producing Party" means a Party that produces documents.

      11.      "Receiving Party" means a Party to whom documents are produced.

      12.      "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

      13.      "Production Volume" means a unique alpha-numeric volume name representing a range of Documents (*i.e.*, batch) sent to the Receiving Party by the Producing Party. The Production Volume is named consecutively beginning with "[Party Name]001" and continuing sequentially until all documents have been produced.

**B.**      **SCOPE**

      1.      The procedures and protocols set forth in this Order shall govern the production of Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied by written agreement of the Parties. By agreeing to this protocol, the parties do not admit that the production of ESI is necessary or appropriate for any given document request, to the extent that document requests are served. The parties reserve all rights to make objections when responding to document requests.

      2.      Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation.

      3.      The Parties reserve the right to object to discovery proceeding under the Federal Rules of Civil Procedure in this Litigation.

      4.      The Parties reserve the right to request the production of documents from sources or individuals that were not identified pursuant to Paragraph G and that the requesting Party has a good faith belief possess relevant Documents.

      5.      Nothing in this Order precludes or limits the ability of any Participant to serve subpoenas on any non-Parties as may be permitted by the Federal Rules of Civil Procedure.

      6.      The Parties shall meet and confer to resolve any disputes that arise under this Document Production Protocol. In the event the Parties cannot reach agreement on a disputed matter, the Parties may submit the matter to the Court.

**C.     PRODUCTION FORMAT**

   1.     **ESI Production Format**:  The production data will be exchanged between counsel in encrypted form.  Each production shall be provided in the following folder structure:

   a. **IMAGES**:  This folder will contain multiple sub-folders with ONLY TIFF files in them.  No other type of file should reside in the "IMAGES" folder.  Except as provided in Paragraph C.7, ESI shall be produced electronically, as single page, uniquely and sequentially numbered Group IV TIFF files not less than 300 dpi resolution.  Each file will be assigned a control number which will be the Bates number of the document.  Sub-folders shall not contain more than 1000 images per folder.

   b. **TEXT**:  The producing party will provide an extracted text file, in UTF format where appropriate, for each electronic document and an Optical Character Recognition ("OCR") text file for each imaged paper document, unless the document has been redacted.  The text file shall be named after the bates number of the first page of the document and shall be placed in a "TEXT" folder.  For documents that contain redactions, the producing party will provide an OCR text file made from the redacted images.  All searchable text including extracted text and OCR is to be provided as multi-page searchable text (.TXT) files.

   c. **DATA**:  Documents produced to each party shall include load files and file structures compatible with Concordance version 8.5 or above and Opticon.

   Specifically, the images shall be accompanied by an image cross-reference load file, including an Opticon OPT file compatible with Concordance version 8.5 or above providing the beginning and ending endorsed number of each document and the number of pages it comprises.  The load file shall have the standard delimiters:

   Comma (020),
   Quote (254),
   Newline (174)

   Example:

   þBEGDOCþþENDDOCþ
   þMSC000001þþMSC000003þ
   þMSC000004þþMSC000005þ

   And shall contain the following information:

   ALIAS,VOLUME,PATH,DOC_BREAK,FOLDER_BREAK,BOX_BREAK,PAGES

   Example:

4

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,
```

The Producing Party shall also provide a data load file ("Data Load File" or "DAT") corresponding to the TIFF files and Native files that shall contain the metadata, as reasonably available, associated with each Production Field specified in Schedule A. For the avoidance of any doubt, there is no obligation from anywhere in this Agreement on the Producing Party to create metadata where none exists or is not reasonably available, provided however that nothing herein limits a Party's obligation to preserve potentially relevant metadata.

d. **NATIVES**: This folder will contain only native files subject to Paragraphs C.7.

2. **Production of Paper Discovery**: Paper Discovery shall be produced in electronic form, in the same folder structure stated in Paragraph C.1. The data load file stated in Paragraph C.1.c shall contain the metadata associated with each Production Field specified in Schedule B. Upon a reasonable request by the Receiving Party and for good cause (*e.g.*, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place.

3. **Appearance and Content**: Subject to any necessary redaction, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Paragraph D. The Producing Party has no obligation to investigate whether documents it is producing present imaging or formatting problems prior to the production of the documents.

4. **Document Unitization**: If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. The Producing Party should determine logical Document breaks, and attachments shall be preserved. Physical bindings, such as staples and clips, should be considered but should not be used exclusively for determining Document boundaries and attachments. If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked.

5. **Color**: Documents containing color may be produced in grayscale. Upon reasonable request by the Receiving Party and for good cause, Documents containing color shall be produced in color, in JPEG (.jpg) format.

6. **Document Numbering and Confidentiality Designation for TIFF Images**: Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier ("Document Number"; a/k/a Bates number) not less than six (6) digits electronically

"burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "RTP0000000"). The Parties agree that the Document Number shall not contain any space, hyphen, or underscore. The confidentiality designation should also be electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document.

    7.  **Production of ESI in Native Format**: In the event a Producing Party produces video, animation or audio files, such documents shall be produced in their Native Format. All Microsoft Excel files will be produced in Native Format. To the extent reasonably feasible, PowerPoint files shall be produced in accordance with Paragraph C.1 where the PowerPoint slides are readable. PowerPoint slides should be produced in slideshow horizontal view. Upon reasonable request by the Receiving Party and for good cause, other documents shall be produced in their Native Format. In the event that a Receiving Party requests production of other documents in Native Format, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production. No document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the document as it existed prior to its collection.

    8.  **De-duplication**: To the extent identical copies of documents (*i.e.*, documents with identical hash values) appear in the files designated and agreed-upon under Paragraph G, the Producing Party need only produce only one such identical copy. If a document and its exact duplicates are associated with different custodians or sources, the Producing Party shall provide metadata fields for the produced document indicating the custodians or sources for which duplicates were withheld.

    9.  **Production Media**: The Producing Party shall produce document images, load files and metadata on hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media, the Production Volume, and the Document Number ranges of the documents in that production (*e.g.*, "BSGR Resources (Guinea) Limited Production August 30, 2014, RTP0000123 - RTP0000456"). The Volume Number shall be a unique alpha-numeric set representing the batch of Document Number ranges sent to the Receiving Party. To the extent that the Production Media includes any information designated as confidential under any Protective Order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Document Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media shall be encrypted, with the decryption key provided with production. If any piece of Production Media is known to have any physical defect, electronic defect or damaged data or is infected with any virus or other harmful software of any kind, it shall be clearly labeled so that appropriate care may be taken during its examination. Alternatively, a Party may remove any virus or defect before production, but must inform any Receiving Party of any such efforts.

10. **Original Documents**:  Nothing in this Order shall eliminate or alter any Party's obligation to retain:  (1) documents in Native Format, including associated metadata, of all ESI produced in the Litigation pursuant to Paragraph C.7; and (2) original hard copy documents for all Paper Discovery produced in the Litigation pursuant to Paragraph C.2.

11. **Third-Party Software**:  To the extent that documents produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

**D.  PROCESSING SPECIFICATIONS**

The Producing Party shall collect and process documents using forensically sound methods that avoid spoliation of data.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

1. To the extent reasonably feasible, documents produced in Group IV TIFF format shall be produced such that comments, notes, speaker notes, track changes, hidden rows, hidden columns, and any other hidden or invisible text are displayed.  Pursuant to Paragraph C.7, a party may request production in Native Format;

2. OLE Embedded files need not be extracted as separate documents;

3. To the extent reasonably feasible, auto-populated fields shall be replaced with text indicating the field name.  For example, auto-populating "date" fields shall be replaced with the text "DATE"; and

4. To the extent documents in a foreign language are produced consistent with Paragraph E.1, processing of such documents shall be unicode-compliant.

**E.  ADDITIONAL ISSUES**

1. **English Language**:  Documents existing in more than one language shall be produced in any and all languages in which they exist.  If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of that document.

2. **Cost Shifting**:  All costs associated with production of documents pursuant to this Order shall be borne by the Producing Party unless otherwise agreed to by the Parties or ordered by the Court.

3. **Protective Order**:  A separate Protective Order has been or will be entered into between the Parties or will be issued by the Court.  Nothing in this Order is intended to waive or modify any right or obligation under the Protective Order.  Any terms of the Protective Order governing the inadvertent production of privileged information also govern all production pursuant to this Document Production Protocol.

**F.     PRIVILEGE LOG AND PRIVILEGED MATERIAL**

      1.     Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), a Party withholding any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log containing the information described in Paragraph F.2 ("Privilege Log"), except that the Parties shall not be required to provide a Privilege Log for any withheld privileged communications or work product involving the Party and outside counsel of record in this Litigation on or after April 14, 2017.

      2.     Privilege Logs will classify categories or groups of withheld documents. For each category of withheld documents, the Privilege Log shall contain information sufficient to allow the Receiving Party to evaluate the claim of privilege, including: (i) the date range of the documents; (ii) the document type; (iii) the identity of all persons who authored, sent, received or otherwise maintained the documents, including whether such persons are attorneys; (iv) the subject matter of the documents and/or the legal advice requested or provided; (v) the type or nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.); and (vii) the range of index numbers corresponding to the documents in the category.

      3.     Redacted documents need not be logged, but any redactions applied to documents shall contain text indicating the basis for redaction (*e.g.*, "A/C Privilege"). Upon reasonable request and for good cause, a Producing Party shall provide additional information sufficient to allow the Receiving Party to evaluate the claim of privilege over the information redacted.

      4.     Pursuant to Fed. R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to enter into a 502(d) Order, the provisions of which are set forth in a separate document and presented to the Court for its consideration.

**G.     TIMING AND SEQUENCING OF ELECTRONIC DISCOVERY**

      All documents shall be produced pursuant to the Federal Rules of Civil Procedure or any agreement between the parties or any schedule set forth by the Court.

      Additionally, the Parties shall disclose and meet and confer in good faith to reach agreement regarding the following on or before a mutually agreed upon date :

      1.     Methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. The Parties agree to consider various approaches including: the use and exchange of keyword search lists, "hit reports" and/or responsiveness rates; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling.

      2.     A list of all relevant custodians that may have Responsive Documents and information in their possession, custody and control related to the claims and defenses in this case and a brief description of each source from which the disclosing Party agrees to search for Responsive Documents; and

      3.      Any search terms, date filters, or other culling criteria or methods each Party proposes to use in searching for Responsive Documents from the identified sources, including the use of predictive coding or other types of technology-assisted review.  All searches will be constructed in good faith by the Parties or their respective technical vendors in such a way to ensure that the search will capture both plural and singular form, present tense and past tense, gerunds and similar relevant word variations.  The parties should consider and discuss use of predictive coding (and TAR) instead of search terms.

DATED:  August 23, 2017

| GREENBERG TRAURIG, LLP | WILLKIE FARR & GALLAGHER LLP |
|---|---|
| /s/ Louis M. Solomon<br>Louis M. Solomon, Esq.<br>Greenberg Traurig, LLP<br>200 Park Avenue<br>New York, New York 10166<br>(212) 801-9200<br><br>*Attorneys for Plaintiffs* | /s/ Elizabeth J. Bower<br>Joseph T. Baio, Esq.<br>Benjamin P. McCallen, Esq.<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>(212) 728-8000<br><br>Elizabeth J. Bower<br>1875 K Street, N.W.<br>Washington, D.C. 20006<br>(202) 303-1000<br>ebower@willkie.com<br><br>*Attorneys for Defendants* |

SO ORDERED THIS ___ day of August, 2017

_____
THE HONORABLE JUDGE PECK
UNITED STATES MAGISTRATE JUDGE

### Schedule A:  Production Fields for ESI

| Field Name | Description |
|---|---|
| **Volume** | The Production Volume as defined in Section A.14. |
| **Beg Bates** | Number endorsed on first page of document. |
| **End Bates** | Number endorsed on last page of document. |
| **Page Count** | Total number of pages in document. |
| **Beg Attach** | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| **End Attach** | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| **Attach Count** | If the document has an attachment, this field will contain the number of attachments to the document. |
| **Confidential Designation** | The confidential designation endorsed on the document.  If no designation is present, a default value of "None" will be coded. |
| **Redaction** | For documents containing redactions, the basis for such redactions. |
| **Custodian / Source** | Name of the person who had custody or control over the documents at the time of collection.  If not from a custodian, the field should indicate the non-custodial source of the documents (*e.g.*, "Simandou Data Room"). |
| **To** | If the document is an email, the person to whom an email is addressed.  The information in this field is collected when the metadata from an email is processed.  The information in this field will be added to the recipients field. |
| **From** | Author of an email.  The information in this field is collected when the metadata from an email is processed.  The information in this field will be added to the author field. |
| **CC** | Person(s) who were copied in an email.  The information in this field is collected when the metadata from an email is processed.  The information in this field will be added to the recipients field. |
| **BCC** | Person(s) who were blind copied in an email.  The information in this field is collected when the metadata from an email is processed.  The information in this field will be added to the recipients field. |

| Field Name | Description |
|---|---|
| **Title / Subject** | If available, verbatim subject or re: line, or discernible document title appearing on the document's first page. |
| **Document Date** | If available, the date of the document. |
| **Parent Date** | If the document is an email, both the email and attachment should bear the date the email was sent in this field to allow chronological sorting while maintaining family relationships. |
| **Sent On Date** | Date the email was sent. This field will only be populated for email messages that were sent. |
| **Last Modified Date** | Date the document was last modified. |
| **Time Zone for Dates** | Selected time zone for all dates displayed in the database. |
| **File Name** | Original file name. |
| **Author** | If the document is not an email, the author of the document. |
| **Document Type** | The file extension describing the type of document (*e.g.*, Microsoft Word document). |
| **Record Type** | Populated with Email, Attachment, or Loose File |
| **MD5 Hash Value** | The MD5 hash of the native file, not the produced TIFF files. |

### Schedule B:  Production Fields for Paper Discovery

| Field Name | Description |
| --- | --- |
| **Volume** | The Production Volume as defined in Paragraph A.13. |
| **Beg Bates** | Number endorsed on first page of document. |
| **End Bates** | Number endorsed on last page of document. |
| **Page Count** | Total number of pages in document. |
| **Beg Attach** | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| **End Attach** | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| **Confidential Designation** | The confidential designation endorsed on the document.  If no designation is present, a default value of "None" will be coded. |
| **Redaction** | For documents containing redactions, the basis for such redactions. |
| **Custodian / Source** | Name of the person who had custody or control over the documents at the time of collection.  If not from a custodian, the field should indicate the non-custodial source of the documents (*e.g.*, "Simandou Central Files"). |
| **All Custodians** | Populated with names of all custodians for whom the document was processed whether or not the file was removed upon deduplication |