# WILLKIE FARR & GALLAGHER LLP

1875 K St., N.W.
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000

August 31, 2017

Honorable Andrew J. Peck
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   *BSG Resources (Guinea) Limited, et al. v. Soros, et al.*, No. 1:17-cv-02726 (JFK) (AJP)

Dear Judge Peck,

We write on behalf of Defendants in the above-referenced case in advance of the scheduled conference on September 1, 2017 at 10:30 a.m. The parties have met and conferred and identified certain discovery issues ripe for the Court's assistance. The parties agreed each side would limit their pre-conference submissions to affirmative issues.

The government of Guinea cancelled Plaintiffs iron ore mining rights in that country after determining that Plaintiffs obtained those rights through bribery and corruption. Since that time, various individuals associated with Plaintiffs have been arrested by Israeli authorities for, among other things, bribery in connection with the acquisition of mining rights in Guinea. At the same time, two additional individuals with ties to Plaintiffs have faced criminal charges in this Court – one of whom pled guilty for attempting to destroy evidence that BSGR bribed the wife of the former President of Guinea to obtain the same mining rights that are at issue in this case.

Through this action, Plaintiffs seek to shift the blame for the loss of their mining rights to Defendants. Plaintiffs' claims against Defendants will fail for a variety of reasons, regardless of whether Plaintiffs actually bribed Guinean officials; however, evidence of such bribery and corruption would provide yet another basis for Defendants to defeat each of Plaintiffs' claims. Accordingly, Defendants are entitled to obtain all such evidence and to understand all of Plaintiffs' conduct that resulted in them obtaining mining rights, and ultimately having been stripped of those mining rights by the Guinean government. Each of the four issues that Defendants intend to raise at tomorrow's conference relates to efforts to

obtain evidence of Plaintiffs' illegal conduct, or to rebut the allegation that individuals or entities affiliated with Defendants sought to interfere with Plaintiffs' purported rights. Those issues are set forth below.

### 1. Declaration of the Alleged Intermediary.

Since the August 24 conference, Plaintiffs have provided the name of an individual from whom they received a declaration that they contend supports allegations in the Amended Complaint concerning Defendants' purported manipulation of the independent review of mining contracts undertaken by the Guinean government, which ultimately led to the termination of Plaintiffs iron ore mining rights in Guinea. Defendants asked Plaintiffs to produce the declaration. Plaintiffs have refused to produce the declaration on two grounds: (1) they do not intend to use the declaration as evidence, but rather to show they had a good faith basis to make the allegations in the Amended Complaint; and (2) the declaration is protected from disclosure on work product grounds. Defendants contend disclosure is warranted in these circumstances.

First, contrary to Plaintiffs' claims, the purported declaration is clearly relevant evidence. Either the declaration contains statements that support the allegations against Defendants, in which case the declaration is relevant and Defendants are entitled to have it; or the declaration does not support the claims Plaintiffs have asserted, in which those claims are baseless and Defendants are entitled to test the good faith basis for Plaintiffs' allegations. In either event, Plaintiffs have put the declaration at issue by pressing a theory of Defendants' interference with the process by which the Guinean government reviewed Plaintiffs' mining rights, and relying on this declaration to support that theory.

Moreover, Plaintiffs have confirmed that they intend to seek testimony from the declarant in this this litigation. (Tr. of Conference on Aug. 24, 2017, at 18:23-24 ("We expect that this person will in the fullness of time be deposed.") (attached as Exhibit 1).) Defendants therefore are entitled to a copy of the declaration to prepare for that deposition and to cross-examine the witness.

Second, Plaintiffs have provided an insufficient factual basis to support a claim of work product over a declaration obtained from a third party who has no connection to Plaintiffs and is not represented by their counsel. Even assuming that work product protection exists, it is overcome here as Defendants have a "substantial need" for the declaration to prepare their case and "cannot, without undue hardship," obtain the substantial equivalent of the declaration by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiffs told Defendants that the declarant resides in Malawi, but they have no contact information for this person (other than an address in Malawi) and cannot even confirm the spelling of the declarant's name. To our knowledge, there is no other evidence supporting these allegations. Nor can Defendants compel the declarant to appear for a deposition or other testimony because this person apparently resides in Malawi, rendering the declarant unavailable. "Unavailability of a witness is a ground for setting aside the work product immunity." *A.F.L. Falck v. E.A. Karay Co., Inc.*, 131 F.R.D. 46, 49 (S.D.N.Y 1990); *see also Vazquez v. City of New York,* 2014 WL 6356941, at *2 (S.D.N.Y. Nov. 14, 2014) (ordering disclosure of witness statements over work product assertion based on substantial need where requesting party had limited access to witnesses whose statements were significant to the case).

## 2. Entity and Individuals Associated with Plaintiffs and Mr. Beny Steinmetz.

Defendants also believe that Plaintiffs are withholding evidence central to the question of whether they obtained their mining rights in Guinea through corruption and bribery by refusing to produce documents in the possession of an entity – Pentler Holdings – that public sources indicate (a) is under Plaintiffs' control and (b) was instrumental in the effecting the bribery, which has led to multiple criminal convictions, including in this Court.

Pentler Holdings was incorporated by Onyx Financial Advisors Limited ("Onyx"). Onyx is Plaintiffs' financial and administration services company. *See* Plaintiff's [sic] Responses and Objections to Defendants' First Request for the Production of Documents, General Objection No. 6, Aug. 23, 2017 (attached as Exhibit 2). Thereafter, Pentler Holdings was sold to various individuals, including Frederic Cilins. *Id.* During at least some portion of the relevant time frame, Pentler Holdings was a BSGR shareholder with a stake in Plaintiffs' operations in Guinea. *See* Panama Papers, *Steinmetz's Guinea Iron Ore Mining Deal Prised Open* ("[L]eaked documents . . . identify a timeline indicating the inherent improbability of Pentler being independent and separate from BSGR, as was claimed by the company.") (attached as Exhibit 3).

Pentler Holdings and Mr. Cilins have been linked to Plaintiffs' corruption and bribery scheme in Guinea. Mr. Cilins has been described as a representative or intermediary for BSGR in Guinea. James Wilson and Cynthia O'Murchu, *Swiss Police Seize BSGR Documents from Onyx*, Financial Times, Aug. 31, 2013 (attached as Exhibit 4); Patrick Radden Keefe, *Buried Secrets*, The New Yorker, July 8, 2013 (attached as Exhibit 5). Indeed, Mr. Cilins pled guilty, in the Southern District of New York, to obstructing a criminal investigation by attempting to destroy contracts signed by BSGR and Pentler purportedly memorializing bribes to Mamadie Toure, a wife of the former Guinean president. *See* Mem. & Order at 1, *United States v. Cilins*, No. 1:13-cr-00315 (S.D.N.Y. Jan. 15, 2014) (Pauley, J.) ECF No. 50 ("Cilins attempted to bribe [Mamadie] Touré to destroy documents purportedly granting Simandou mining concessions to Beny Steinmetz Group Resources ('BSGR').") (attached as Exhibit 6); Judgment, *United States v. Cilins*, No. 1:13-cr-00315 (S.D.N.Y. Jul. 29, 2014) ECF No. 71.

Plaintiffs claim they do not control and have no authority to produce documents from Pentler Holdings or any of its principals, and refuse to accept service of subpoenas for these individuals, but have provided no information to support this position. Plaintiff's [sic] Responses and Objections to Defendants' First Request for the Production of Documents, General Objection No. 6, Aug. 23, 2017 (attached as Exhibit 2); Letter from L. Solomon to E. Bower, Aug. 21, 2017 (attached as Exhibit 7). Pentler Holdings and its principals, are not only closely affiliated with Plaintiffs, but are intricately intertwined with the events underlying Plaintiffs' claims and, Defendants believe, possess information relevant to their defenses. The Court should overrule Plaintiffs' objection and order them to produce Pentler Holdings' documents, or, order Plaintiffs to produce documents showing why they do not control Pentler Holdings.

This need is particularly compelling here for three reasons: First, Plaintiffs contend that they have no documents or communications concerning payments, gifts, or bribes to obtain their mining rights in Guinea, despite Mr. Cilins's conviction to the contrary. *See, e.g.*, Plaintiff's [sic] Responses and

August 31, 2017
Page 4

Objections to Defendants' First Request for the Production of Documents, Responses to Request No. 18-19, 22, Aug. 23, 2017 (attached as Exhibit 2). Second, Plaintiffs concede that they have in their possession responsive documents obtained from Pentler Holdings from other related litigation, but are precluded from producing them based on confidentiality orders in those proceedings. *Id.* at Responses to Request Nos. 15, 21, 39, Aug. 23, 2017 (attached as Exhibit 2). Defendants have not seen the relevant confidentiality orders and, thus, cannot fully assess the impact they may have on Plaintiffs' production in this case. Plaintiffs should produce the relevant confidentiality orders to allow the Defendants and the Court to assess the basis for withholding the documents and seek relief from the restriction on disclosure. Third, Defendants only other recourse is to try to obtain this information through international discovery, which is time consuming, expensive, and often unsuccessful. Defendants should not be put to this burden when documents admittedly are within Plaintiffs' control.

### 3. Mr. Steinmetz's Data.

According to Plaintiffs, Defendants were motivated to interfere with Plaintiffs' iron ore mining contracts in Guinea because of a purported vendetta against Beny Steinmetz. Defendants were, therefore, surprised to see in Plaintiffs' discovery responses that Mr. Steinmetz is "not a principal of Plaintiffs," even though "BSG" stands for "Beny Steinmetz Group." Plaintiff's [sic] Responses and Objections to Defendants' First Request for the Production of Documents, General Objection No. 6, Aug. 23, 2017 (attached as Exhibit 2). Although Plaintiffs have identified Mr. Steinmetz as a custodian and indicated they will produce his documents, the scope of that production remains unclear. Plaintiffs have represented that to the extent "Mr. Steinmetz has possession, custody or control of documents/devices used for these business purposes, e.g., his phone, such documents/device [sic] will be subject to search (this excludes documents/devices seized from him by law enforcement that are no longer in his possession, custody or control)." Letter from L. Solomon to WFG, Aug. 30, 2017 (attached as Exhibit 8).

Plaintiffs' representation raises many questions and answers few. We have asked Plaintiffs what they mean by "documents/devices used for these business purposes." Combined with their statements that Mr. Steinmetz is not a principal of Plaintiffs and that Plaintiffs do not have authority to produce Pentler Holdings documents, for example, we do not know what they mean by "these business purposes." Defendants believe any documents concerning the issues raised in the Amended Complaint located anywhere within Mr. Steinmetz's control should be subject to search.

Further, Plaintiffs still have not addressed several of Defendants' specific questions concerning the universe of Mr. Steinmetz's data, including (1) what data sources will be included in the search for his files, (2) whether he maintained an email account with Plaintiffs, (3) what email addresses he has used, and (4) whether he held any position with Plaintiffs at any point in time between January 1, 2005, through the present. Letter from E. Bower to L. Solomon, Aug. 26, 2017 (attached as Exhibit 9) Letter from E. Bower to L. Solomon, Aug. 27, 2017 (attached as Exhibit 10).

### 4. Scope of Productions from Prior Litigations.

Defendants requested that Plaintiffs produce documents from other related litigation and arbitral proceedings, as well as documents they provided to law enforcement, regulators, or investigators

relating to their mining rights in Guinea. Plaintiff's [sic] Responses and Objections to Defendants' First Request for the Production of Documents, Responses to Request Nos. 48-55, Aug. 23, 2017 (attached as Exhibit 2). Plaintiffs agreed to produce to Defendants some materials that they produced in these other related proceedings, but only those documents that are "otherwise responsive" to Defendants' Requests for Production. *Id.* at Responses to Request Nos. 48, 50, 54-55. Plaintiffs should produce the entirety of their productions in these cases. Underlying these other proceedings are Plaintiffs' iron ore mining rights in Guinea and whether they procured those rights through bribery. That the precise claims may be different is of no moment.

Respectfully Submitted,

*/s/ Elizabeth J. Bower*

Elizabeth J. Bower

cc: All counsel of record via ECF