

Michael S. Lazaroff
Tel 212.801.3154
Fax 212.805.5529
lazaroffm@gtlaw.com


August 31, 2017


Honorable Andrew J. Peck
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312


Re:     *BSGR v. Soros, et al., Civil Action No. 1:17-cv-02726 (JFK) (AJP)*

Dear Judge Peck:

We are counsel for Plaintiffs in the above-referenced action (the "Action"). The parties have met and conferred concerning many discovery issues. In addition to the nearly two hours on August 24, the parties had hours-long conference calls on August 28 and August 29 and have exchanged correspondence relating to various issues. The parties agreed on many issues, and are continuing to meet and confer on other issues. Plaintiffs and Defendants each believe there are a few issues that should be raised with Your Honor at this time while reserving all rights to raise any other issues at a later date as the meet and confer process continues. The parties agreed that each side would submit only one letter, limited to the offensive issues they wanted to raise, with no written responses for either side. Plaintiffs' issues are discussed below.

Plaintiffs' raise three issues herein, all related in some way to Defendants' attempt to artificially restrict the universe of responsive documents. Each issue relates to multiple requests that are detailed and copied herein:

1.   The first issue relates to certain Requests where Defendants want to limit their response to documents related to "iron ore mining activities in Guinea". That group includes, inter alia, Requests going to structure/control of Defendants over other organizations named in the Amended Complaint, and Requests involving Defendants' interactions with Guinean individuals and entities.

2.   The second issue concerns certain Requests where Defendants want to limit their production "Plaintiffs'" iron ore mining activities in Guinea.

3.   The third issue involves certain requests seeking documents concerning mining generally in Guinea that Defendants seek to restrict to "iron ore" mining.

There are two sets of Defendants' responses and objections at issue: [OSF] Defendants' Responses and Objections to Plaintiffs' First Requests for Production of Documents ("OSF"), attached as Exhibit 1; and Soros's Responses and Objections to Plaintiffs' First Requests for

*NY 246737327v6*

August 31, 2017
Page 2

Production of Documents ("Soros"), attached as Exhibit 2.  However, other than OSF Requests 1 & 2, the Soros requests are substantively identical to the OSF Requests, as are Defendants' responses to each – thus OSF Request 3 is Soros Request 1; OSF 4 is Soros 2; and so on.  For simplicity, the discussion herein will refer only to the OSF Request numbers and Defendants' response to those requests, although the relief sought is against both sets of responses.  The Amended Complaint is attached as Exhibit 3.

**Plaintiffs' Issue #1: Defendants' "Iron Ore Mining" Limitations**

Defendants have put forth a general objection stating "Defendants object to each Request to the extent it is not relevant to the claims or defenses of any party and/or not proportional to the needs of this case, and, thus, will not aid in resolving the issues in this case and/or the burden or expense of the proposed discovery outweighs its likely benefit. Unless otherwise specified, Defendants will search for and produce any responsive, non-privileged documents relating to iron ore mining activities in Guinea" (General Objection No. 1).

Defendants later clarified that they "are not intending to withhold any documents on the basis of General Objection No. 1 unless otherwise stated in our specific Responses and Objections, except for OSF Request Nos. 44 and 97 and Soros Request Nos. 42 and 95"; and that "Defendants agree not to limit documents concerning Plaintiffs or Beny Steinmetz to iron ore mining activities in Guinea", consistent with Plaintiffs' agreement not to so limit documents concerning Defendants (Exhibit 4, 8/30/17 WFG Letter at 1, 3).

Plaintiffs here raise only those responses that contain this specific objection limiting production to documents solely "relating to" or "in connection with iron ore mining activities in Guinea" that we believe improperly narrow the scope of responsive documents.  With regard to these requests, we are only hereby raising the issue of the limitation to iron ore mining and reserve the right to raise other issues as the meet and confers proceed.  The requests for this issue are grouped into the following categories (a) structure/control; (b) payments to, documents and communications with, Guinean (and related) Individuals/Entities; (c) documents concerning President Condé; and (d) other miscellaneous requests.

A.  Structure/Control

The requests in this section (listed below) all deal with Defendants' control over entities involved in this Action who Plaintiffs allege aided Defendants in the actions described in the Amended Complaint.  Specifically, these requests try to show the control and relationship among Defendants by seeking documents related to strategic coordination and/or funding between Defendants and (a)  Revenue Watch Institute ("RWI") (now called Natural Resource Governance Institute ("NRGI"), which is named in numerous allegations of the Amended Complaint (e.g., AC ¶¶ 9, 49, 51, 53, 67-68, 72, 76-77, 80, 84, 85, 89, etc.); (b) Global Witness, which is named in AC ¶¶ 9, 11, 49-51, 79-80, 130, 141-48, 172; (c) the International Senior Lawyering Project, which  is named in AC ¶¶ 71, 74, 82; and (d) EITI, Extractive Industries Transparency Initiative, which is named in AC ¶¶ 74, 75, 77-80, 82, 171, 196.

August 31, 2017
Page 3

Defendants have argued that they do not control and did not direct or influence the actions of these entities as alleged in the Amended Complaint.  E.g., Dkt 56, Memorandum of Law in Support of Defendants' Motion to Dismiss at 7-8 ("Alleged Conduct by Others Purportedly Attributable to Defendants").  Accordingly, the information sought in these requests is highly relevant to Plaintiffs' claims and should not be limited to iron ore mining in Guinea.  For example, if there are documents showing that Soros did direct the activities or funding of these entities in other areas, that would be relevant information to support Plaintiffs' allegation.  As another example, if Defendants provided 100% of the funding for any of these entities, but only a small fraction of those funds concerned iron ore mining in Guinea and that small fraction was all that was disclosed to Plaintiffs, Plaintiffs would not have the information necessary to address Defendants' defense.

Similarly, if Defendants engaged in "strategic coordination" with these entities on a regular basis and directed what these entities should generally do, that would also be highly relevant (*see* Request 32; AC ¶ 80 ("Internal OSF documents further explain that NRGI and Global Witness 'have seats on the EITI board' and attend 'strategic retreats' organized by OSF for the purpose of sustaining the 'strategic coordination' that is necessary to achieve 'unity' in carrying out defendants' agenda.")).

The relevant requests are set forth below.  In each case, among many other objections, Defendants limited their production to "iron ore mining activities in Guinea" (see Exhibit 1).

> 32.    All Documents and Communications concerning any strategic coordination between You, OSF or George Soros and (i) RWI; (ii) NRGI; or (iii) Global Witness.

> 33.    All Documents and Communications concerning the funding, directly or indirectly, of Global Witness by (i) You; (ii) OSF; (iii) George Soros; or (iv) any person associated with You, OSF or George Soros.

> 34.    All Documents and Communications concerning the funding, directly or indirectly, of the Natural Resource Governance Institute by (i) You; (ii) OSF; (iii) George Soros; or (iv) any person associated with You, OSF or George Soros.

> 35.    All Documents and Communications concerning the funding, directly or indirectly, of International Senior Lawyering Project by (i) You; (ii) OSF; (iii) George Soros; or (iv) any person associated with You, OSF or George Soros.

> 37.    All Documents and Communications concerning the funding, directly or indirectly, of Revenue Watch Institute by (i) You; (ii) OSF; (iii) George Soros; or (iv) any person associated with You, OSF or George Soros.

August 31, 2017
Page 4

B.  Payments to, Documents and Communications With, Guinean (and Related)
    Individuals/Entities

The requests in this section (listed below) seek documents concerning Defendants' interactions with individuals and entities they are alleged in the Amended Complaint to have, at the least, influenced or controlled or in some instances, paid or corrupted.  For example, Mamadie Touré is named at AC ¶¶ 119, 151-53, 161; Lounceny Nabé is named at AC ¶ 119; Nava Touré, the head of the Technical Committee, is named at AC ¶¶ 99, 162, 198; Mamoudou Kouyaté is named at AC ¶¶ 74, 152-53; and Yansane Kerfalla, a member of the Strategic Committee, is named at AC ¶¶ 163, 198.  Moreover, the Amended Complaint alleges that Defendants attempted to influence the Technical and Strategic Committees (e.g., AC ¶¶ 162-63, 198).

If Defendants had dealings – financial or otherwise – with these individuals/officials/entities, that information is relevant to Plaintiffs' claims, whether or not those dealings related to iron ore mining in Guinea.  If Soros gave one of those persons, for example, a house for his/her birthday, that is something Plaintiffs are entitled to know given the allegations in the Amended Complaint.

The relevant requests are set forth below.  In each case, among many other objections, Defendants limited their production to "iron ore mining activities in Guinea" (see Exhibit 1).

> 8.      All Documents and Communications concerning Mamadie Touré, including any payments made, directly or indirectly, by You, OSF, George Soros or any other person to Mamadie Touré.

> 82.      All Documents and Communications concerning Mamadie Touré, including any payments made to Mamadie Touré or any person associated with Mamadie Touré, by (i) George Soros; (ii) You; (iii) OSF; (iv) the Republic of Guinea; or (v) any other person.

> 54.      All Documents and Communications concerning any Communications with the Technical Committee or the Strategic Committee by (i) You; (ii) OSF; (iii) George Soros; or (iv) any person acting on Your, OSF's or George Soros's behalf.

> 79.      All Documents and Communications concerning the funding of, directly or indirectly, the Technical Committee, including any Documents and Communications concerning payments made, directly or indirectly, to members of the Technical Committee or the Strategic Committee, and including any payments made by You, OSF or George Soros or any member of his family, directly or indirectly, to the Technical Committee or the Strategic Committee.

> 80.      All Documents and Communications concerning any payments You, OSF, George Soros, or any member of George Soros's family made, directly or indirectly, to the Guinean government or to officials of the Guinean government, including any Documents and Communications concerning payments made, directly or indirectly, to members of the Technical Committee or any other senior officials within the Guinean government.

August 31, 2017
Page 5

83.    All Documents and Communications concerning Lounceny Nabé, including any payments made, directly or indirectly, to Lounceny Nabé by (i) George Soros; (ii) You; (iii) OSF; (iv) the Republic of Guinea; or (v) any other person.

84.    All Documents and Communications concerning Nava Touré, including any payments made, directly or indirectly, to Nava Touré by (i) George Soros; (ii) You; (iii) OSF; (iv) the Republic of Guinea; or (v) any other person.

85.    All Documents and Communications concerning Communications that concern You, George Soros or OSF on the one hand, and any person that served as an official in the Guinean government during the Relevant Period on the other hand, including any Documents concerning Communications with Mamoudou Kouyaté, or any members of the Technical Committee or Strategic Committee.

87.    All Documents and Communications concerning Yansane Kerfalla, including any Documents and Communications concerning payments made, directly or indirectly, to Yansane Kerfalla, by (i) George Soros or a member of his family; (ii) You; (iii) OSF; (iv) the Republic of Guinea; or (v) any other person.

## C. Documents concerning President Condé

These requests relate to the allegations that Soros was involved with and had influence over Guinean president Alpha Condé – and not just concerning iron ore mining (e.g., AC ¶¶ 44, 54, 60, 67, 72-74, 83, 101, 136).  Plaintiffs do not know the full extent of Soros' relationship with Condé.  Defendants have argued in their motion to dismiss that Guinea was predisposed to breach its contract with Guinea, citing Condé's actions.  While Plaintiffs believe they have alleged sufficient facts to defeat the motion to dismiss on this ground, they will be prejudiced in addressing this issue substantively unless Plaintiffs obtain full discovery of Defendants' relationship with Condé, including any involvement in the 2010 election, without any limitation as to iron ore mining.

The relevant requests are set forth below.  In each case, among many other objections, Defendants limited their production to "iron ore mining activities in Guinea" (see Exhibit 1).

18.    All Documents and Communications concerning Alpha Condé.

19.    All Documents and Communications concerning Mohamed Alpha Condé.

20.    All Documents and Communications concerning the 2010 Guinean Presidential election.

## D. Other Miscellaneous Requests

There are three relevant requests in this section, set forth below.  In each case, among many other objections, Defendants limited their production to "iron ore mining activities in Guinea" (see Exhibit 1).  We deal with each one independently.

August 31, 2017
Page 6

7.      All Documents and Communications collected for production or produced or otherwise made available to, or received by or from, any governmental agency investigating any of the issues or matters alleged or referred to in the Amended Complaint.

> The Amended Complaint refers to more investigations than those limited to "iron ore mining activities in Guinea".  For example, the Amended Complaint alleges that as part of the scheme to harm Plaintiffs, Soros and OSF provoked "the unjustified opening of criminal investigations" against Plaintiffs and Steinmetz (e.g., AC ¶¶ 167-171). Defendants should produce documents responsive to this request.

41.      Documents and Communications sufficient to show the basis for the statement of OSF that EITI "has not translated into positive change in the lives of citizens, or into improved development outcomes for the countries populations".

> The Amended Complaint alleges:  "Defendants controlled the manner and substance of their agents' performance.  In documents recently available online, OSF internally recognized that EITI 'has not translated into positive change in the lives of citizens, or into improved development outcomes for the countries' populations'. Yet Soros and OSF nonetheless utilized the vehicle of EITI to force breach of the BSGR contract because, as OSF internally admitted, defendants could … exercise control over Soros-funded members subscribing to EITI (including NRGI and Global Witness) through 'board participation,' 'softer influence of governing board members and the secretariat leadership,' by convening calls and meetings 'to convince' Soros-funded entities to 'forge a united position' on their activities, and by 'direct advocacy and public outreach by George Soros personally'" (AC ¶ 79; EITI is named in AC ¶¶ 74, 75, 77-80, 82, 171, 196).  Given the context, responsive documents should not be limited to iron ore mining activities in Guinea.

44.      All Documents and Communications concerning (i) the March 2011 Fifth Conference of EITI in Paris; and/or (ii) any other EITI event that also concerned BSGR, Steinmetz or iron ore mining in Guinea.

> With respect to provision (i), Amended Complaint ¶ 78 specifically references the fifth EITI conference in Paris as part of the alleged wrongdoing.  The passages quoted from Soros's speech there make no mention of "iron ore mining activities".  Thus, the response should not be so limited.

> With respect to provision (ii), there is no dispute – Defendants have represented that they will search for documents concerning BSGR or Steinmetz without the "iron ore mining" limitation.

**Plaintiffs' Issue #2: Defendants' Limitation to "Plaintiffs'" iron ore mining**

The requests below seek documents related concerning "(i) BSGR; (ii) Steinmetz; or (iii) iron ore mining in the Republic of Guinea.".  Defendants have agreed to search/produce responsive

August 31, 2017
Page 7

documents concerning BSGR or Steinmetz but have sought to limit the third category to
"Plaintiffs'" iron ore mining activities in Guinea.

These requests all relate to allegations concerning Defendants' interference with Plaintiffs'
contract with FTI, its public relations firm (see AC ¶¶ 134-39).  Limiting documents to
Plaintiffs' iron ore mining in Guinea would improperly limit the scope of relevant responsive
documents.  For example, if Defendants told FTI, for example, "we're supporting Rio Tinto's
claims in Guinea" or "do everything you can to make sure Rio Tinto gets the mining rights in
Guinea", such a document should be produced, even though it does not reference Plaintiffs'
mining activities but rather that of its competitor, Rio Tinto.

The relevant requests are set forth below.  In each case, among many other objections,
Defendants limited their production to "Plaintiffs' iron ore mining activities in Guinea" (see
Exhibit 1).

> 22.    All Documents and Communications concerning FTI concerning (i) BSGR; (ii)
> Steinmetz; or (iii) iron ore mining in the Republic of Guinea.

> 67.    All Documents and Communications concerning Ben Brewerton of FTI that
> concern (i) BSGR; (ii) Steinmetz; or (iii) mining in the Republic of Guinea.

> 68.    All Documents and Communications concerning Lord Malloch Brown of FTI that
> concern (i) BSGR; (ii) Steinmetz; or (iii) mining in the Republic of Guinea.

**Plaintiffs' Issue #3: Defendants' Limitation of "mining" to "iron ore" mining**

The following requests expressly seek information concerning mining in Guinea.  Defendants,
however, have stated they will further limit their production to include only documents relating
to "iron ore" mining activities in Guinea.

The allegations in the Amended Complaint include that Defendants were involved in Guinea's
mining industry, and the actions in Guinea concerning its mining industry – with no limitation to
iron ore mining (e.g., AC ¶¶ 54, 57, 62, 67, 68, 72-78, etc.).  Plaintiffs limited many of their
requests to iron ore mining activities in Guinea.  These few are broader, and responsive
documents should be produced.

The relevant requests are set forth.  In each case, among many other objections, Defendants
limited their production to "iron ore mining activities in Guinea" (see Exhibit 1).  With respect to
Request 23, they further limited production to "iron ore mining activities from iron ore mining
companies" (*id*. at 21).

> 23.    All Documents and Communications concerning any payments solicited or
> received from mining companies or their principals by the Republic of Guinea.

> 27.    All Documents and Communications concerning any assistance with respect to
> the Guinean mining industry, including Alpha Condé's invitation(s) or request(s) re the

August 31, 2017
Page 8

same, provided by, or to, (i) You; (ii) OSF; (iii) George Soros; or (iv) any person associated with You, OSF, or George Soros, including any Documents concerning Communications with Patrick Heller, Paul Collier, Jeffrey Sachs, Columbia Center for Sustainable Development, Karin Lissakers, RWI or NRGI.

30.     All Documents and Communications concerning the legality of Guinea revoking mining concession contracts.

31.     All Documents and Communications concerning the "enlist[ment]" of RWI by George Soros, as reported in the article "Buried Secrets", published in the July 8, 2013 edition of The New Yorker.

> Note that the article (cited at AC ¶ 99) states:  "When President Condé set out to clean up Guinea's mining industry, he discovered a generous ally in George Soros. 'I was aware of the magnitude of the problem in Guinea,' Soros told me. 'I was eager to help.' He enlisted Revenue Watch to provide technical support in revising the mining code".

42.     All Documents and Communications concerning the New Mining Code, including all Documents and Communications concerning SOGUIPAMI.

43.     All Documents and Communications concerning any grants or other financial support provided directly or indirectly by You, OSF or George Soros to the Republic of Guinea to support the mining contract review process or the New Mining Code.

55.     All Documents and Communications concerning any meetings held with mining company executives with interests in the Republic of Guinea that You, OSF or George Soros attended, including the meeting held in September of 2011 at George Soros's residence in New York.

75.     All Documents and Communications concerning EITI that concern (i) BSGR; (ii) Steinmetz; or (iii) mining in the Republic of Guinea.

88.     All Documents and Communications concerning Barrick Gold that concern mining in Guinea.

Plaintiffs look forward to discussing these matters with the Court tomorrow.

Respectfully,

Michael S. Lazaroff
cc.  Counsel of Record (via ECF)
Attachments