# EXHIBIT 9



Michael S. Lazaroff
Tel 212.801.3154
Fax 212.805.5529
lazaroffm@gtlaw.com

August 23, 2017

Honorable Andrew J. Peck
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *BSGR v. Soros, et al., Civil Action No. 1:17-cv-02726 (JFK) (AJP)*

Dear Judge Peck:

We are counsel for Plaintiffs in the above-referenced action (the "Action"). We are writing this letter jointly with counsel for Defendants. The parties have met and conferred concerning (a) a proposed ESI stipulation; (b) a proposed 502(d) order; and (c) a proposed protective order. The parties have reached agreement on the (a) proposed ESI stipulation; and (b) proposed 502(d) order. Copies of those are attached to this letter for the Court to consider (see Exhibits A and B).

The parties have agreed on most of the protective order. There remains one substantive issue on which the parties did not agree and would like the Court to resolve, namely, whether there should be any protection for non-confidential discovery materials exchanged in the Action. Defendants believe that all discovery material should be limited in use to the Action and destroyed at the end of the Action. Plaintiffs believe that non-confidential documents should not be limited at all.

**Plaintiffs' Position:** Plaintiffs have agreed that documents that meet certain appropriate specifications should be marked confidential or attorneys eyes only and provided certain protection (Ex. C, I.2, I.8). Specifically, the proposed protective order explains that:

> The term "CONFIDENTIAL," as used in this Order, means "trade secret or other confidential research, development, or commercial information," as those terms are construed within the meaning of Federal Rule of Civil Procedure 26(c)(i)(G), and includes information which the disclosing Party believes in good faith contains, constitutes or reveals confidential design, engineering, business or development information, confidential commercial information, non-public financial information, trade secrets, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), information implicating an individual's legitimate expectation of privacy, or other information of a confidential, proprietary, private or personal nature.
>
> The term "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," as used in this Order, means extremely sensitive "CONFIDENTIAL" information disclosure of which to

August 23, 2017
Page 2

>another Party or Non-Party would create a substantial risk of serious harm (such as trade secrets, financial data, personal information, or competitively-sensitive information about future business plans and strategies) that could not be avoided by less restrictive means.

Plaintiffs believe that discovery documents that do not meet these criteria should not receive any protection at all. Public disclosure in court proceedings is the general rule, not the exception. Even confidential information must meet certain criteria to receive any protection. Here, where there are various parties involved in related litigations/proceedings, it makes no sense to try to limit information or documents in this way. *See, e.g., Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 407 (S.D.N.Y. 2016) (rejecting attempt to prohibit "the use of non-confidential discovery materials for purposes other than 'the prosecution or the defense of this Action'" and ordering modification of protective order to "put an end to litigation sideshows" concerning non-confidential discovery material). This approach was also used in the protective order Your Honor entered in the *Rio Tinto* case in 2014.

Defendants argue that every scrap of discovery produced by any party or non-party should be protected and limited to the case in which it was produced. This is not the law. The cases defendants do cite certainly do not support this proposition. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), the Court did not grant protection to any and all documents produced in discovery. In fact, in that case, the leader of the religious organization at issue had sought a protective order preventing the dissemination of "any" information gained through discovery. *Id*. at 25. The lower court, however, did not grant that request but granted an order protecting only financial and membership information of the religious organization, on evidence that members had been subject to "attacks, threats, and assaults". *Id*. at 26. It was that more limited order that the Supreme Court upheld as non-violative of the First Amendment rights of the defendant newspaper. *Id.* at 37. Here, there is no newspaper; there are no attacks and assaults. A second case, *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995), does not even involve a protective order, but rather the inapposite discussion of whether a newspaper can have access to information involving a third party, not a prohibition on party use of discovery material. Finally, *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220 (S.D.N.Y. 2006), was a case that was "far from normal" – a multi-district litigation that was "one of the largest privates lawsuits in United States history", where "[m]ost, if not all, of the numerous defendants to these consolidated actions are accused of either committing the terrorist acts of September 11, 2001 or providing material support to those who did". *Id.* at 223. The present case is not comparable.

Defendants claim they are concerned about the disclosure of "private" information. If that private information is confidential, then it will be protected under Plaintiffs' proposed order. If it is not confidential, then there is no basis for such protection. It is particularly incongruous and telling that Defendants cite to the grant-making functions of the Open Society defendants (who purport to be proponents of transparency) as an example of "private" information since these entities have public reporting requirements. Also, the "private functions in Mr. Soros personal residence" sometimes have cameras present (see for example - https://www.youtube.com/watch?v=dxUKVF4GTIk (meeting with Guinean President Alpha Condé)).

August 23, 2017
Page 3

Defendants' approach would also lead to unworkable results. For example, Defendants would permit the parties to file non-confidential documents in court that would then become public. But while the rest of the world could then use those documents for any purpose, according to Defendants, the parties to this litigation could not do so. This makes no sense. Also, according to Defendants, if a non-confidential document supported a claim either party had against each other or some third party, they could not use that document to vindicate their rights. This too makes no sense and has no basis in the law.

Defendants claim that the Whereas clauses in the proposed order recognize the Court's "discretion to grant or deny access to discovery information filed with the Court" (*see infra*, Defendants' Position). But, that proposed Whereas clause only deals with confidential documents. In addition, Defendants propose to delete the Whereas clause proposed by Plaintiffs that makes clear that the protective order only deal deals with "items that are entitled to confidential treatment" (Ex. C at 2).

Finally, Defendants' claim that someone who purportedly controls plaintiffs was arrested is irrelevant to the issue of the protective order being sought by Plaintiffs (who are all entities). This bears no relevance to the protective order issue being raised here. The fact that Defendants raise that issue here in this context does evidence Defendants' pattern of trying to raise these accusations at every turn.

**Defendants' Position:**

Defendants have requested a reasonable limitation on discovery on this matter: whatever materials the parties produce to each other will be used solely for adjudicating the parties' claims and defenses in this action. Plaintiffs have offered no reason why they would need to use this discovery for anything other than this case. The fact that Plaintiffs will not agree to this provision proves that Defendants' fears are well-founded – Plaintiffs apparently intend to use the documents they obtain in this action in other pending proceedings they have initiated, for public relations purposes, or additional uses that have nothing to this with case. The claims Plaintiffs have asserted in this action are false and Defendants will prove they are false during the course of this action. In the meantime, Plaintiffs – who are controlled by an individual who has been arrested twice by Israeli authorities in nine months, including for falsifying public records, and indicted in Romania for a real estate deal that allegedly funded his bribery scheme in Guinea – should not be permitted to abuse the discovery provided by this Court for other purposes.

Plaintiffs incorrectly attempt to characterize the issue as whether "[p]ublic disclosure in court proceedings is the general rule." This misses the point. The parties have agreed that the Court retains discretion to grant or deny public access to discovery information filed with the Court. (*See* Ex. C, second Whereas clause.) The sole question here is whether the parties can freely disseminate otherwise private information that they will receive only because Plaintiffs filed the Action. They should not be permitted to do so, and Plaintiffs cite no authority to the contrary.

As the Court is no doubt aware, it is well-settled that there is no right of public access to information exchanged by private litigants in discovery. *Seattle Times Co. v. Rhinehart*, 467

August 23, 2017
Page 4

U.S. 20, 33 (1984); *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions.") This basic premise is embodied in the Court's Local Rules prohibiting the filing of discovery materials that are not "necessary to the decisional process" of the Court. S.D.N.Y. L.R. Civ. P. 5.1, Committee Note.

Good cause exists to limit the use of all discovery material to the Action to protect private information and prevent further prejudice to Defendants. Discovery will encompass a significant amount of private information about Defendants and third parties, including the sovereign state of Guinea. For example, Plaintiffs are seeking discovery concerning grant-making practices of the Open Society entities (non-profit, charitable organizations), private functions in Mr. Soros's personal residence, Mr. Soros's financial contributions, and deliberations of Guinean governmental officials concerning its lawmaking functions and contractual arrangements. That some of the information sought may be available through alternative means does not lessen the impact on Defendants' legitimate privacy concerns to non-public information. Moreover, the proposed protective order does not apply to information that is already in the public domain or is properly submitted to the Court, as in the examples identified by Plaintiffs above. Specifically, the proposed protective order states:

> "However, the protections afforded by this Order do not cover the following: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of a publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise . . . ."

(Ex. D, §II. SCOPE.) Plaintiffs have offered no reason – nor could they – why they should be permitted to share this information with anyone else. Defendants should not have their personal and private commercial dealings opened up for Plaintiffs to do with them as they please solely because they have made baseless accusations of wrongdoing.

Plaintiffs' reliance on other litigation and proceedings to justify unbridled use of the discovery material underscores the risk of harm to Mr. Soros and the OSF entities. None of the Defendants are parties to any of the so-called "related litigations/proceedings" and therefore have no way of protecting their information from misuse in those proceedings or by the parties involved in those proceedings. Moreover, some of those proceedings have different discovery rules. Plaintiffs should not be permitted to use discovery tools here to circumvent procedures in other proceedings. *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*, 192 F. Supp. 3d 400 (S.D.N.Y. 2016), cited by Plaintiffs, is inapposite. *Royal Park* involved two lawsuits filed by the same plaintiff in the same court against defendants represented by the same counsel. *Royal Park*, 192 F. Supp. 3d at 406. There is no doubt the parties and the court in that case could monitor and prevent any discovery abuses. Given Defendants' legitimate privacy and prejudice concerns, the Court should enter Defendants' proposed protective order in the form as attached at Exhibit E. *See In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 224

August 23, 2017
Page 5

(S.D.N.Y. 2006) (granting protective order limiting use of discovery material to the pending action where discovery involved sovereign states, government institutions, private individuals, and charitable organizations, among others, and defendants were accused of committing or assisting terrorist acts).

**Joint Request.** This fundamental difference results in the parties disagreeing about certain language in (a) one Whereas clause; (b) Section II; (c) Section IV.1; (d) Section VI; (e) Section IX; and (f) Section XII. We are attaching to this letter as Exhibits C, D, and E (a) a comparison between Plaintiffs' and Defendants' version so the Court can see the differences; (b) a clean copy of Plaintiffs' proposed protective order; and (c) a clean copy of Defendants' proposed protective order.

The Parties respectfully ask the Court to consider and enter the signed proposed ESI stipulation (Exhibit A) and proposed 502(d) order (Exhibit B); and to consider and issue a ruling with respect to the outstanding issue with the proposed protective order. The Parties are available to discuss these matters with the Court.

Respectfully,

*[signature]*

Michael S. Lazaroff

cc. Counsel of Record (via ECF)
Attachments