# EXHIBIT 11

H8OHBSGC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    BSG RESOURCES (GUINEA)
     LIMITED, et al.,
4
                    Plaintiffs,
5
               v.                          17 Civ. 2726 (JFK)(AJP)
6

7    GEORGE SOROS, et al.,
                                           Conference
8
                    Defendants.
9
     ------------------------------x
10                                         New York, N.Y.
                                           August 24, 2017
11                                         9:35 a.m.

12   Before:

13                       HON. ANDREW J. PECK,

14                                         Magistrate Judge

15                       APPEARANCES

16   GREENBERG TRAURIG, LLP
          Attorneys for Plaintiffs
17   BY:  LOUIS M. SOLOMON
          NANCY L. SAVITT
18        MICHAEL LAZAROFF

19   WILLKIE FARR & GALLAGHER LLP
          Attorneys for Defendants
20   BY:  ELIZABETH J. BOWER
          BENJAMIN P. McCALLEN
21        JIM FITZMAURICE

22

23

24

25
```

H8OHBSGC

1        (Case called)

2        THE COURT:  All right.  I have just entered your

3   proposed 502(d) order and your ESI stip protocol.  You will,

4   obviously, see those via ECF when you get back to your offices.

5   With respect to conflicting proposed confidentiality orders, my

6   inclination, subject to hearing from all of you, is to go with

7   plaintiffs' version, meaning, the usual court procedures are

8   that unless something is deserving of confidentiality

9   protection, parties are free to use it however they wish.

10        Any discussion on that from the defense?

11        MS. BOWER:  Yes, your Honor.  Respectfully, we think

12   that this case is one in which we should have broader

13   protection generally on discovery materials.  Plaintiffs have

14   indicated a preference for possibility of using documents from

15   this case in other proceedings to which defendants are not a

16   party and will have no control over the use of that material.

17        THE COURT:  If it's not confidential, what issue is

18   there?

19        MS. BOWER:  Well, it's the defendants' private

20   information there would otherwise be no purpose in the

21   plaintiffs' possessing.  So --

22        THE COURT:  If it's not relevant to the litigation,

23   you're not going to have to produce it.  If it's relevant and

24   really affects serious privacy interest, Mr. Soros' tax

25   returns, or something like that, then I don't see why it

H8OHBSGC

```
 1   wouldn't be designated confidential.  But if it is something
 2   that is produced that is, you know, mildly private but not
 3   sufficient to be designated confidential under Rule 26(c) of
 4   the case law, it is what it is.
 5        MS. BOWER:  We appreciate that, your Honor.  As I
 6   think has been indicated in this case in the past, we do feel
 7   strongly that this is not -- there is no merit to these claims.
 8   At the same time, we appreciate we have to proceed --
 9        THE COURT:  What a shock that a defendant finds the
10   claims not to have merit.  I've never heard that argument from
11   a defendant before.
12        MS. BOWER:  I like to be unique, your Honor.
13        At the same time, we obviously appreciate that we need
14   to move forward with discovery as ordered by the Court, but we
15   do believe that this should not open the door to Mr. Soros' or
16   OSF entities' private commercial personal information.  It is
17   also interesting to note, your Honor, we received last evening
18   plaintiffs' responses and objections to the defendants' RFPs in
19   which they include an objection to producing to us material
20   from other cases on the basis that those cases involve other
21   parties, other claims, and other issues.  So while they intend
22   to seemingly use material from this case in those proceedings,
23   they're intending to block our access to those documents.
24        THE COURT:  We'll get to that if the material is
25   relevant.  And it's their information, not someone else's,
```

H8OHBSGC

1    you're entitled to it.  If it's somebody else's information

2    subject to a confidentiality order from some other litigation,

3    then I'll have to see whether I can obviate that protective

4    order or whether one or the other side has to go back to the

5    Court that issued the order.

6            All right.  Anything further?

7            MS. BOWER:  No, your Honor.

8            THE COURT:  Then I'm going to enter, what is it, D?

9    Is the one that is -- is it C or D that is a clean version of

10   plaintiffs' --

11           MR. SOLOMON:  It's D, your Honor.

12           THE COURT:  All right.  Then that will be issued.

13           Now we go to discovery disputes.  I have no papers on

14   that, so why don't you begin.

15           MR. SOLOMON:  Thank you, your Honor.  Louis Solomon.

16   With apologies in general, I don't think it's been our finest

17   moment in sending letters to the Court.  We will all do better

18   going forward.  There is an issue that we raised with the Court

19   the last time we were here, and that relates to OSF, and we

20   have --

21           THE COURT:  That's the entity that defendants say

22   doesn't exist?

23           MR. SOLOMON:  Correct, Judge, even though it seems to

24   copyright books and websites, including the philanthropy of

25   George Soros, it has a copyright on it; even though it issues

1    an annual budget of $940 million; and even though it has board

2    material and says it operates as a 501(c)(3) organization; even

3    though it sent us a letter wanting a contract with us.  It

4    seems to have a board.  It had a previous existence as a

5    corporation when we were here the last time.  At the end of the

6    day, I hope this is all going to be a distraction.

7            Your Honor said, well, perhaps parties should think

8    about lifting the stay of depositions, take a quick 30(b)(6)

9    deposition to show that all these are overlaps.  I had a

10   discussion with counsel after your Honor's suggestion walking

11   out of the courtroom, and it seemed to me, unless I got it

12   wrong, that this issue was going to go away.  It has not gone

13   away.  They have asserted it again in their motion to dismiss

14   the amended complaint.  I don't want this to distract this

15   Court or Judge Keenan.  We would like the stay lifted for the

16   limited purpose of seeking a 30(b)(6) deposition, see who this

17   entity is and its relationship to entities that they admit are

18   juridical entities.

19           THE COURT:  It's Ms. Bower; right?

20           MS. BOWER:  Yes, it is, your Honor.

21           THE COURT:  Go ahead.

22           MS. BOWER:  I'm not sure to what Mr. Solomon is

23   referring in terms of this issue going away.  I will say we,

24   obviously, have moved to dismiss the two entities that do not

25   exist.  To the extent that there is a need for discovery on

H8OHBSGC

1    this issue, the OSF entities are bound by the Court's orders

2    and are producing documents responsive to the

3    plaintiffs' document request.  Plaintiffs have served --

4           THE COURT:  Let me ask you to step back a little from

5    that, which is to the extent the argument appears to be OSF has

6    not been served and is not before the Court because it doesn't

7    exist, unless I'm missing something or Mr. Solomon is missing

8    something because maybe OSF is not a juridical entity but

9    somehow exists, whatever, I'd like to get you all to figure out

10   does it exist, doesn't it.  Mr. Solomon didn't hand me anything

11   but just read that OSF has copyrights and directors, etc.,

12   etc., and yet you said last time, and appear to still be

13   saying, OSF doesn't exist.

14          MS. BOWER:  That argument is fleshed out in the

15   parties' motion to dismiss and opposition.  Mr. Solomon was

16   certainly aware of defendants' position with respect to OSF

17   when he received the initial motion to dismiss, but certainly

18   again in mid-July when he received our renewed motion to

19   dismiss on the amended complaint.  He waited until the day he

20   served his opposition to ask us about lifting the stay, and at

21   no point in his opposition to the motion to dismiss did he

22   suggest or his clients suggest that they were lacking

23   information in order to oppose that motion.  So at this stage

24   there is --

25          THE COURT:  Help me out, because I have not read the

H8OHBSGC

1    motion to dismiss or, if I did, I just don't remember what you

2    all said.  Is your motion as to OSF based on its nonexistence

3    or is it based on the same merits-based arguments that apply to

4    the defendants that do exist?

5           MS. BOWER:  It is both, your Honor.

6           THE COURT:  Tell me what you said in your papers in

7    very short summary as to the nonexistence of OSF.

8           MS. BOWER:  We said it does not exist as a legal

9    entity.  With respect to OSFI we mentioned, as plaintiffs

10   allege in the complaint, that it is now a defunct entity as of

11   2012.

12          THE COURT:  As to OSF itself, is that the one you're

13   talking about, Mr. Solomon?

14          MR. SOLOMON:  Ms. Bower was not here the last time.

15   The comment that I made was accurate.  As we were walking out

16   of the court, Ms. Bower's colleague said to me that I think we

17   can take care of this because they heard --

18          THE COURT:  That wasn't my question.  My question is

19   apparently there's OSF, which is a confusion, and OSFI which

20   once was a corporation but, according to Ms. Bower, is now

21   dissolved or nonexistent.  Which are you talking about needing

22   more information about?

23          MR. SOLOMON:  Well, I'm now talking about both of

24   them, Judge.

25          THE COURT:  OK.

1              MR. SOLOMON:  The reason I'm talking about both of

2     them is that, in accordance with what I thought was the

3     Southern District rules, on June 5 we sent a letter pursuant to

4     Rule 26.1 because they said it didn't exist.  26.1 says that if

5     claim not to exist or claim not to be here, give the

6     information about, and it goes through if you're a natural

7     person, give your residence, give your domicile; if you're

8     something other, and there is an other, an unincorporated

9     association, give the like information for all partners and

10    members as well as state and other jurisdictions.  They refused

11    to answer that, and that's why we raised it with your Honor

12    when we were here the last time.

13             The information I was reading to your Honor is in the

14    papers that we have filed, and we did give your Honor courtesy

15    copies of that, in opposition to the motion to dismiss, and we

16    represent what we have found about the OSF entity.  There's

17    also an OSF Inc. that they claim not to exist, and they claim

18    that that is defunct and, therefore, not a juridical entity and

19    not capable of being sued.  We don't agree with that.  At a

20    minimum, we think that there's de facto continued existence

21    because of the confusion that I think they are causing.  This

22    is a defendant that's got assets.  I don't want this to be any

23    more of this case.  There is a very simple way for them to take

24    care of this, and they refuse to do that.  So I'd like to get

25    the discovery I need so I can oppose the motion.

1            Now, the suggestion that we waited, your Honor, we

2       raised this with you when we were here the last time.  We

3       shouldn't be here at all at this time.

4            MS. BOWER:  Your Honor, we did respond to

5       plaintiffs' request for additional information and provided the

6       name of an entity that did provide funding for activities

7       relating to Guinea and that organization was named as a

8       defendant in plaintiffs' amended complaint.  That is an

9       organization, I believe the acronym is FOPS, so that is a named

10      defendant in this case.

11           In addition, your Honor, the plaintiffs' discovery

12      request specifically asked us to identify -- to produce

13      documents that support our claim that the entity no longer

14      exists, and we've agreed to produce those documents.  So there

15      is a way, under Judge Keenan's current ruling, for plaintiffs

16      to obtain the information that they claim they need to obtain.

17           THE COURT:  All right.  I'm going to defer until the

18      document production occurs, but if there is still unclarity,

19      real unclarity, as to the existence or nonexistence of OSF and

20      OSFI, I am likely to do a limited lift of Judge Keenan's "let's

21      hold off on depositions" for, in essence, a 30(b)(6) deposition

22      that would allow the plaintiffs to figure out the existence or

23      nonexistence of those two entities.  If that's answered by the

24      document request and responses, we won't need to go there, but

25      there is the possibility that, if it isn't, then we will go

H8OHBSGC

1   there sooner rather than later.

2          With that, what's the next issue, Mr. Solomon?

3          MR. SOLOMON:  Two items of clarification that I hope

4   will be brief, Judge.  The first is that the time frame covered

5   by the requests, their request to us, is from 2005 forward.

6   Our requests to them are from 2005 forward.  They have objected

7   and said that they're only going to produce from 2010 forward.

8   Discovery being a two-way street, I simply would like a

9   clarification.  They haven't identified documents that they

10  have not produced because of the date constraint, but I think

11  the parties should be looking from 2005 or identify what

12  they're not producing because of the date limitation.

13         THE COURT:  That hardly seems worth it.  Either the

14  date limitation applies or it doesn't.  I don't know enough

15  about this.  If you both agree on 2005, then it's 2005.  You

16  both want to agree on 2010, so be it.  Have you had enough time

17  to discuss this?

18         MS. BOWER:  We have not discussed this, your Honor.

19         THE COURT:  What's defendants' position?

20         MS. BOWER:  The date range that he's referring to

21  applies in two sets of documents, third-party discovery

22  responses as well as the parties' discovery responses.  We

23  apply the date range of 2010 through the filing of the

24  complaint because defendants were not involved in activities in

25  Guinea prior to 2010, as plaintiffs acknowledge and allege in

1   their complaint in paragraph 54.  Mr. Soros' alleged

2   involvement in Guinea began around March of 2010.  By contrast,

3   plaintiffs have put at issue in this case their application for

4   and procurement of mining rights in Guinea which began in 2005.

5   Obviously, a defense to their tortious inference with contract

6   claim is the existence of a valid contract, thereby putting

7   documents from the 2005 forward range in plaintiffs' possession

8   clearly relevant to these claims.

9            THE COURT:  It sounds like this is going to have to be

10  teased out on a document-by-document request basis.  So I don't

11  think I can give you any further ruling on that now.

12           MR. SOLOMON:  Thank you, your Honor.  We're happy with

13  a two-way street, either one or the other.

14           THE COURT:  But that doesn't work if the factual

15  allegations are different.

16           MR. SOLOMON:  But the allegations in our complaint

17  start well before 2005, Judge, concerning Mr. Soros' hatred for

18  BSGR's principal.  We can do this on a document-by-document

19  basis.

20           THE COURT:  I can't do this on a global basis.  When

21  you've shown me a request, a response that takes a cutoff date,

22  an allegation in the complaint that says something else, then I

23  can deal with it.  Just abstract, I can't deal with it.

24           MR. SOLOMON:  That may be the answer to my next and

25  last point of clarification that I wanted to seek, but I think

H8OHBSGC

```
 1    I can -- I'll do it very briefly, Judge.  For many of the
 2    requests we've tried to limit the scope of search on both sides
 3    to iron ore mining in Guinea.  That's where it all started.
 4    For some requests, it doesn't apply.  Mr. Soros' vendetta
 5    against BSGR as alleged by us is broader than iron ore mining
 6    in Guinea.  And with respect to his relationship with other of
 7    the entities that we claim he controls, a reference to Benny
 8    Steinmetz and getting Benny Steinmetz should be covered and is
 9    covered by our request.  But given their objections that
10    everything is going to be limited to iron ore mining in Guinea,
11    we wouldn't be getting those.
12         The clarification that we are seeking is if we're
13    talking about how are we going to describe what's happened in
14    Guinea, that's one thing, but we're talking about the
15    relationship among the entities.  When it doesn't apply, like
16    Steinmetz -- just like if they want Soros, OK, it doesn't make
17    sense to have that kind of limitation, and we would like an
18    understanding that they're not applying that.  And if they are
19    applying it, we would like your Honor to rule on it.
20         THE COURT:  Ms. Bower.
21         MS. BOWER:  Thank you, your Honor.  We do believe that
22    it is proper to limit the scope of discovery in this case to
23    iron ore mining activities in Guinea.  All of plaintiffs'
24    claims are premised exclusively on iron ore mining.  Count One,
25    which is the tortious interference with contract claim, the
```

1    contract at issue is BSGR's iron ore mining rights in Guinea.

2           Count Two, the conspiracy to commit tortious

3    interference with contract and other illegal acts, the

4    conspiracy and "other illegal acts" relate to the convention

5    and related agreements, that is, plaintiffs' iron ore mining

6    rights in Guinea.

7           Count Three, the fraud and misrepresentation claim

8    against defendant Soros, the allegations relate to Mr. Soros'

9    allegedly fraudulent statements concerning Guinea's

10   reexamination of its mining contract and the review by the

11   technical committee of those contracts.

12          Count Four, commercial defamation, the allegations

13   that are purportedly defamatory relate to statements by

14   defendants "about BSGR's alleged corruption."  The only

15   references to BSGR's "alleged corruption" relate to BSGR's

16   efforts to procure and retain mining rights in Guinea.

17          Count Five, the *prima facie* tort claim also against

18   defendant Soros, the alleged wrongdoing caused, that is -- I

19   think the word there was, was a proximate cause -- but caused

20   Guinea's breach of the convention and related agreements.  The

21   fact that plaintiffs incorporate by reference extraneous

22   allegations does not turn this case into a worldwide

23   examination of any relationship between Mr. Soros or

24   nonexistence of a relationship between Mr. Soros and

25   Mr. Steinmetz.  Indeed, plaintiffs have taken the position in

H8OHBSGC

1    this case that Mr. Steinmetz is not even a principal of the

2    plaintiffs.  Therefore, if this case is really about some

3    purported vendetta between Mr. Soros and Mr. Steinmetz, then do

4    we even have the right plaintiffs here?

5         To the extent that there are specific requests that

6    plaintiffs feel should be broader than iron ore mining

7    activities in Guinea, we're happy to engage in a discussion

8    with them about those limited responses.

9         THE COURT:  It sounds like the one that they

10   immediately mentioned is the Soros-Steinmetz relationship, for

11   lack of a better word.  What's your position on that?

12        MS. BOWER:  We can look at the documents, frankly, and

13   see what impact that would have, but the issue here is

14   Mr. Soros' actions toward the plaintiffs in Guinea and the

15   impact that had on their business.

16        THE COURT:  I'm not sure that intent would not be

17   relevant.  So if their argument is Soros and Steinmetz hate

18   each other and that's why Soros did X, Y, or Z to tortiously

19   interfere, etc., etc., that may be relevant.  So I would

20   suggest on the Soros-Steinmetz relationship or hatred, or

21   whatever the right term is, that you reconsider your position.

22   This is not a ruling but advice.  In order for me to rule on

23   anything specific, I will need to see what the request is, what

24   the response is, what paragraphs of the complaint tie into all

25   of it, etc.

```
 1            MS. BOWER:  For clarity, your Honor, we would like
 2    guidance on whether that is a two-way street such that any
 3    documents of Mr. Steinmetz, regardless of whether those are
 4    Steinmetz documents in the possession of the plaintiff --
 5            THE COURT:  That's going to be another whole separate
 6    issue.  So we'll get to that when we get to that.
 7            MR. SOLOMON:  Your Honor, we allege a relationship
 8    between Mr. Soros and his nongovernmental entities that he
 9    controls.  To be able to prove that, we're not going to be able
10    to be limited to iron ore mining in Guinea.  But we're taking
11    what your Honor said, not to be the exclusive suggestion that
12    your Honor is making, if we have something specific, we will
13    bring it to the Court's attention.  Thank you.
14            THE COURT:  And first, obviously, bring it to
15    Ms. Bower's attention.
16            MR. SOLOMON:  Yes.
17            THE COURT:  All right.  What's next?
18            MR. SOLOMON:  I think the rest is and should be
19    covered by meet and confers that we have not yet had an
20    opportunity to do with the other side.
21            THE COURT:  All right.  We're getting -- the
22    circularity here, frankly, is annoying.  Not only did I get, I
23    don't know, half a dozen or more letters where none of you
24    thought to speak to each other and come up with a concrete date
25    proposal to be verified with my secretary as to what would
```

H8OHBSGC

1    work, so you wanted next week; I gave you next week.  That

2    didn't work for somebody, and so the suggestion was hold

3    everything off until October.  And plaintiffs had a fit about

4    that, so I brought you in today.  I don't know when we're going

5    to do this.  My September is highly booked.  The dates you had

6    suggested at one point of mid-September, I'm booked.  And

7    whoever it was, might have been Ms. Bower, whoever said I'm on

8    trial elsewhere, it's a big firm you got there.  So we're not

9    putting this case to sleep for an entire month.

10           To the extent I'm now, I guess, besides just venting

11   annoyance, ready to deal with whatever specific issues

12   Ms. Bower has and then at the end of this, we'll figure out

13   when you're all coming back, but there are only certain hoops

14   the Court can jump through.  You're not our only case.

15           Ms. Bower, what issues do you have?

16           MS. BOWER:  Well, first, your Honor, just for

17   clarification, it was Mr. Solomon's trial in September.

18           THE COURT:  Sorry.  Thank you.

19           MS. BOWER:  Thank you.

20           Your Honor, as Mr. Solomon indicated, we have not had

21   an opportunity to meet and confer.  We had proposed putting

22   this off until we did have an opportunity to meet and confer

23   both on our issues with their discovery responses inclusive of

24   their initial disclosures and their issues with our discovery

25   responses, and that was rejected.  So we share the venting.

H8OHBSGC

1          But with respect to the initial disclosures, there are

2     two issues that I do think require the Court's attention.

3          THE COURT:  Hand them up, please.

4          MS. BOWER:  It's in our August 10 letter.  Plaintiffs

5     have alleged --

6          THE COURT:  Hold on.  Which of your 25 letters is it?

7          MS. BOWER:  I'm sorry.  We're trying to get a copy of

8     that.  I believe it was the --

9          THE COURT:  If you have the ECF docket number, that

10    will help.

11         Let me note one other thing while you're doing that,

12    and that is with respect to your notice of intent to file a

13    motion to redact the transcript document No. 77, I don't redact

14    transcripts generally if you haven't alerted me at the time of

15    the conference that you think something needs to be off the

16    record.  So I'm not saying you can't file the motion --

17    obviously, you can file whatever motion you like -- but if this

18    is just that they called Mr. Soros bad names, or whatever,

19    don't waste your breath.  If there's something very specific,

20    so be it, I'll deal with it.

21         But, generally, transcripts will not be sealed.  It's

22    happening in open court, and if something is being said that

23    shouldn't be said -- and I assume you're arguing that

24    plaintiffs' side said something on the transcript -- you might

25    want to think about whether it's worth your clients' money to

1    file an application that most likely is going to be rejected.

2          All right.  Which of your letters supposedly has

3    the --

4          MS. BOWER:  Your Honor, I don't have that right at my

5    fingertips, but it was attached to our submission in response

6    to plaintiffs' August 8 submission to your Honor.

7          THE COURT:  By now August 8 is probably in the backup

8    file because of all the other stuff you've filed.  So if you

9    have a copy to hand me from whatever source, hand it to me;

10   otherwise, we can't do anything about it.

11         MS. BOWER:  Well, the primary issue, your Honor, is

12   plaintiffs allege in the complaint that there's an unnamed

13   source from whom they've received a declaration, and they've

14   refused to produce that to us.  We feel that both the

15   intermediary's name should have been disclosed in plaintiffs'

16   initial disclosures and it was not, they refused to respond to

17   our request to do that, and the declaration should have been

18   produced without awaiting a discovery request.

19         THE COURT:  Mr. Solomon, is the declaration something

20   that is not going to be used in this litigation but was merely

21   being referred to to show you had good faith to bring certain

22   allegations in the complaint?

23         MR. SOLOMON:  Correct, your Honor, correct.  We expect

24   that this person will in the fullness of time be deposed.

25   There's an important top list of things we also want from the

H8OHBSGC

1   other side and --

2            THE COURT:  OK.  But you waived that, so to speak, by

3   saying you're not ready to do anything else.  Apparently

4   Ms. Bower is ready on this, unless you're suggesting that there

5   hasn't been a good faith meet and confer on this and that it

6   has to await, in which case one or the other of you are likely

7   going to lose vacation, trial, or whatever time because I'm

8   going to set a date for our next conference with whatever

9   limited input you have on your schedules as we do it today, and

10  I'm not going to go through 20 letters of varying conflicts.

11           MR. SOLOMON:  Your Honor, the reason I had stopped was

12  because I thought the parties should be meeting and conferring.

13  I apologized at the beginning.  I reiterate my apology.  The

14  Court has had too many letters.

15           THE COURT:  You all said you desperately needed the

16  Court to rule and then you didn't do a meet and confer.  You're

17  all here.  I've got a 10:30.  I've got some telephone

18  conferences.  You want to use the jury room and meet and

19  confer, you want to all go away and come back next week, you

20  know --

21           MR. SOLOMON:  Your Honor, we'll do either of those.

22  We asked for a meet and confer.  We gave plenty of dates for

23  meet and confer.  The defendant refused to meet and confer

24  because they hadn't responded -- we hadn't responded to their

25  requests yet, and they were waiting for that.  I think that's

H8OHBSGC

1    an unnecessary delay.  Your Honor is available.  We thought we

2    could deal with our things because we served a month earlier

3    than they did.  They didn't serve theirs.  We didn't get to

4    them when --

5        THE COURT:  When is it you all want to come back,

6    because I'm getting fed up with you today?

7        MR. SOLOMON:  Next week, other than Monday is

8    available -- other than Monday and Friday.

9        THE COURT:  Unfortunately, that's the old joke, but

10   the only days I have are Monday and Friday.  I don't want to

11   interfere with your daughter and school.

12       MR. SOLOMON:  Would Monday afternoon -- we have a

13   pretrial conference in this matter Monday morning in New

14   Jersey.  Would Monday afternoon be available to the Court,

15   sometime after 2:30?

16       THE COURT:  At 4:00 o'clock in the afternoon on

17   Monday, but are you all going to meet and confer between now

18   and then?

19       MR. SOLOMON:  Yes, Judge.

20       MS. BOWER:  That's the point, your Honor.  We didn't

21   refuse to meet and confer, as we've said.

22       THE COURT:  Folks, folks.

23       MS. BOWER:  We tried to have this discussion in a

24   reasonable, timely fashion so that discovery was, in fact, a

25   two-way street.  We think it makes sense if we're coming back

H8OHBSGC

1    next week.  Unfortunately, it doesn't look like that's going to

2    work for your Honor.  We're going to have to do it the

3    following week because we do need time to sit down and hash out

4    all those issues.  We just got plaintiffs' discovery responses

5    last night after 7:00 o'clock, and we need time to talk about

6    this.

7         MR. SOLOMON:  Your Honor, we're available at

8    4:00 o'clock, and we're available today and tomorrow and over

9    the weekend to meet and confer so we don't have to delay this.

10   I think we've imposed on your Honor enough.

11        THE COURT:  Here's what we're going to do.  I would

12   expect better from both of your firms than this.  You're going

13   to go in the jury room and meet and confer and do as much as

14   you can there, and I'll see if I've got any time to fit you in

15   later today.  I may have a little time between 12:15 and 1:00

16   and otherwise at about 3:30.

17        So, you know, kindergarten here.  Go do your meet and

18   confer.  Now that you've got everything you've got, make as

19   much progress as you can.  It may not be complete.  Because,

20   quite frankly, other than next Monday and Friday, just so you

21   know, I'm on criminal duty the week of Labor Day, the week of

22   September 4, which means the only civil cases I do are at 9:30

23   in the morning for half an hour.  Somehow I suspect I'm going

24   to need more than a half an hour with all of you.

25        I'm out of town the week of September 11.  So the next

H8OHBSGC

1    time I have a little time is the week of September 18th, which,

2    of course, the Thursday and Friday of that week are Rosh

3    Hashanah.  So the amount of time I can give you is limited.

4    You've wasted it today.  So go meet and confer.  When you think

5    you have enough done that you want to talk to me, call my

6    chambers.  If you have your cell phone, use it.  If you don't,

7    you can use the phone on the deputy's desk and dial 0036.  Do

8    not leave here today until I've seen you, and we'll see where

9    it goes from there.

10           MR. SOLOMON:  Thank you, Judge.

11           MS. BOWER:  Thank you, your Honor.

12           (Recess)

13           THE COURT:  All right.  It's noon.  The parties have

14   finished their meet and confer, at least this aspect of it.  As

15   I understand it, they've sort of moved things into three

16   buckets:  Things they've agreed on, which is great; things that

17   they may or may not be able to agree on after consultation with

18   clients; and the third bucket being one that will probably need

19   judicial intervention unless the ESI protocol or something else

20   gets that off the table.

21           They have requested a September 1 conference date

22   which they will cancel if through some miracle they have

23   resolved everything or at least pushed it further down the road

24   for potential continuing resolution.  So our next conference

25   will be September 1 at 10:30, and the parties need to,

H8OHBSGC

1   obviously, continue the good work they just did in the last

2   hour and a half, two hours, whatever it was in the Court's

3   robing room, and -- sorry, jury room.  And I will see you on

4   the 1st.

5           Good luck to your daughter or son, Mr. Solomon.

6           MR. SOLOMON:  My daughter, Judge.  Thank you.

7           THE COURT:  With that, we are adjourned.  Both sides

8   are required to purchase the transcript, so make your

9   arrangements with the reporter.

10          MR. SOLOMON:  Thank you, your Honor.

11          (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25