UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BSG RESOURCES (GUINEA) LIMITED, BSG
RESOURCES (GUINEA) SÀRL, and BSG
RESOURCES LIMITED,

               Plaintiffs,

      v.

GEORGE SOROS, OPEN SOCIETY FOUNDATIONS,
OPEN SOCIETY INSTITUTE, FOUNDATION TO
PROMOTE OPEN SOCIETY, OPEN SOCIETY
FOUNDATION, INC., ALLIANCE FOR OPEN
SOCIETY INTERNATIONAL INC., OPEN SOCIETY
POLICY CENTER, and OPEN SOCIETY FUND,

               Defendants.

**No. 1:17-cv-02726 (JFK) (AJP)**

Oral Argument Requested

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THE ACTION

Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 (telephone)

1875 K Street, NW
Washington, DC 20006
(202) 303-1000 (telephone)

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

I.      PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE. .....2

II.     ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION. .......................6

III.    EACH OF PLAINTIFFS' CLAIMS INDEPENDENTLY FAILS................................8

  A.   Plaintiffs Fail to State a Claim For Tortious Interference............................................8

    1.   Plaintiffs fail to allege that Defendants' conduct was the but for cause of the alleged breach. ....................................................................................................................8

    2.   Plaintiffs' tortious interference claims against the New Defendants are barred by the statute of limitations. ..........................................................................................10

  B.   Plaintiffs Fail to State a Fraud Claim Against Soros. ................................................11

  C.   Plaintiffs Fail to State a Commercial Defamation Claim against Defendants...........13

IV.     PLAINTIFFS' CLAIMS AGAINST OSF AND OSFI MUST BE DISMISSED BECAUSE THEY ARE NOT EXISTING LEGAL ENTITIES. .................................14

V.      PLAINTIFFS' CLAIMS AGAINST THE NEW DEFENDANTS MUST BE DISMISSED UNDER Fed. R. Civ. P. 8(a)(2)............................................................14

CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alghanim v. Alghanim,*
   828 F. Supp. 2d 636 (S.D.N.Y. 2011)......................................................7

*Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett,*
   No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)...........................12

*Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.,*
   100 F. Supp. 2d 178 (S.D.N.Y. 2000).....................................................10

*Anwar v. Fairfield Greenwich Ltd.,*
   728 F. Supp. 2d 372 (S.D.N.Y. 2010)..............................................14, 15

*Argus Media Ltd. v. Tradition Fin. Servs. Inc.,*
   No. 09 Civ. 7966, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009)...........................7

*Andrews v. Lasser Marshall, Inc.,*
   No. 97 Civ. 3827, 1997 WL 624986 (S.D.N.Y. Oct. 6, 1997) ...............................7

*Baylis v. Marriott Corp.,*
   906 F.2d 874 (2d Cir. 1990).................................................................4

*Catskill Dev., LLC v. Park Place Entm't Corp.,*
   144 F. Supp. 2d 215 (S.D.N.Y. 2001) *vacated in part on reconsideration on other grounds,*
   154 F. Supp. 2d 696 (S.D.N.Y. 2001).......................................................5

*Clayco Petroleum Corp. v. Occidental Petroleum Corp.,*
   712 F.2d 404 (9th Cir. 1983) ...............................................................5

*Compania de Gas de Nuevo Laredo, S. A. v. Entex, Inc.,*
   686 F.2d 322 (5th Cir. 1982) ...............................................................6

*Concord Assoc., L.P. v. Entm't Props. Trust,*
   817 F. 3d 46 (2d Cir. 2016).................................................................9

*Dominicus Americana Bohio v. Gulf & W. Indus., Inc.,*
   473 F. Supp. 680 (S.D.N.Y. 1979)..........................................................6

*Donjon Marine Co. v. Water Quality Ins. Syndicate,*
   523 F. App'x 738 (2d Cir. 2013) ...........................................................8

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.,*
   809 F.3d 737 (2d Cir. 2016).................................................................5

*Galu v. Swissair: Swiss Air Transp. Co.*,
   734 F. Supp. 129 (S.D.N.Y.), *aff'd sub nom.*, *Galu v. Swissair*, 923 F.2d 842
   (2d Cir. 1990) ........................................................................................................................5, 6

*Glatt v. Mariner Partners, Inc.*,
   63 A.D.3d 428 (App. Div. 2009) ..................................................................................11

*Glen v. Club Mediterranee S.A.*,
   365 F. Supp. 2d 1263 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006) ......................5

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016) ..........................................................................................9

*Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*,
   958 F. Supp. 2d 507 (S.D.N.Y. 2013) ............................................................................8

*IKB Int'l S.A. v. Bank of Am. Corp.*,
   584 F. App'x 26 (2d Cir. 2014) ....................................................................................12

*Johnson v. Formula 1 Imports*,
   No. 11-CV-1720, 2012 WL 628520 (E.D.N.Y. Feb. 24, 2012) ............................................12

*Katel Ltd. Liab. Co. v. AT & T Corp.*,
   607 F.3d 60 (2d Cir. 2010) ............................................................................................4

*Konowaloff v. Metro. Museum of Art.*,
   702 F.3d 140 (2d Cir. 2012) ......................................................................................3, 5

*Kronos, Inc. v. AVX Corp.*,
   81 N.Y.2d 90 (1993) ....................................................................................................6

*Lama Holding Co. v. Smith Barney Inc.*,
   88 N.Y.2d 413 (1996) ..................................................................................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MDL 2262, 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ........................................13

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ............................................................................9

*Munno v. Town of Orangetown*,
   391 F. Supp. 2d 263 (S.D.N.Y. 2005) ............................................................................9

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*,
   87 N.Y.2d 614 (1996) ..................................................................................................5

*Oceanic Expl. Co. v. ConocoPhillips, Inc.*,
   No. Civ A 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006) ..........................................6

iii

*Pasternack v. Lab. Corp. of Am. Holdings*,
    59 N.E.3d 485 (N.Y. 2016).................................................................................13

*Pennsylvania Ave. Funds v. Inyx Inc.*,
    No. 08 Civ. 6857, 2010 WL 743562 (S.D.N.Y. Mar. 1, 2010) ...............................13

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)..................9, 10

*Samsung Display Co. v. Acacia Research Corp.*,
    No. 14 CV 1353 JPO, 2014 WL 6791603 (S.D.N.Y. Dec. 3, 2014) .......................4

*Schwab v. E*TRADE Fin. Corp.*,
    No. 16-CV-05891 (JGK), 2017 WL 2929501 (S.D.N.Y. July 10, 2017) ...............12

*Sea Breeze Inc. v. Mitsubishi Corp.*,
    No. CV 16-2345, 2016 WL 8648638 (C.D. Cal. Aug. 18, 2016) ............................5

*Sharma v. Skaarup Ship Mgmt. Corp.*,
    916 F.2d 820 (2d Cir. 1990).................................................................................10

*Shelton v. Sethna*,
    No. 10 Civ. 4128, 2012 WL 1022895 (S.D.N.Y. Mar. 26, 2012) ..........................11

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
    632 F.3d 938 (5th Cir. 2011) .................................................................................3

*United States v. California*,
    332 U.S. 19 (1947)...............................................................................................3

*Woori Bank v. Citigroup Inc.*,
    No. 12 Civ. 3868, 2013 WL 1235648 (S.D.N.Y. Mar. 27, 2013) ..........................12

*World Wide Minerals Ltd. v. Republic of Kazakhstahn*,
    116 F. Supp. 2d 98 (D.D.C. 2000) .......................................................................5

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp. Int'l*,
    493 U.S. 400 (1990)...........................................................................................3, 4

**Statutes & Rules**

Fed. R. Civ. P. 8(a)(2)................................................................................................14

**Other Sources**

ICSID, BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea)
SÁRL v. Republic of Guinea (ICSID Case No. ARB/14/22) Procedural Details,
https://icsid.worldbank.org/en/Pages/cases/casedetail.aspx?CaseNo=ARB/14/22 .......................7

Defendants[1] respectfully submit this reply memorandum of law in support of their motion to dismiss the Amended Complaint or, in the alternative, to stay this action pending arbitration.

## PRELIMINARY STATEMENT

In 2014, the Republic of Guinea terminated the rights held by BSGR (an acronym for Beny Steinmetz Group Resources) to conduct iron mining operations in that country after a government investigation that found that BSGR procured its rights through corruption and bribery.  Since then, after years of criminal investigations in the United States, Israel and other countries, various individuals associated with BSGR have been arrested or convicted or pled guilty to crimes related to bribery and corruption.  Those criminal proceedings were described in Defendants' opening brief and will not be repeated here.  Evidence of BSGR's corruption, however, has continued to mount:  on August 14, 2017, Mr. Steinmetz was arrested (again) in Israel on suspicion of money laundering, fraud, bribery, and obstruction of justice in connection with a scheme relating to BSGR's corruption in Guinea.[2]  Four of Mr. Steinmetz's associates were also arrested, including Asher Avidan, the former president of BSGR.

In an effort to deflect blame for its misconduct, BSGR brought this action, accusing Mr. Soros of masterminding a plot to deprive BSGR of its mining rights.  BSGR cites no motive other than Mr. Soros's purported anti-Semitism and hatred of Israel and Mr. Steinmetz.  (Mr. Soros is himself Jewish.)  Even giving BSGR the benefit of the doubt of this fantastical story, its claims cannot proceed because BSGR's allegations unambiguously put at issue official acts of a foreign sovereign—Guinea—performed within its own territory.  Specifically, BSGR's claims

---

[1]     Unless otherwise noted, capitalized terms shall have the same definitions ascribed to them in the Memorandum Of Law In Support Of Defendants' Motion To Dismiss Plaintiffs' Amended Complaint Or, In The Alternative, To Stay The Action, dated July 28, 2017, ECF No. 56.

[2]     *See* Udi Shaham, *Israeli Billionaire Arrested In International Money Laundering Probe*, The Jerusalem Post, Aug. 14, 2017 (attached as Exhibit 1); Eli Senyor, *Billionaire Steinmetz Suspected Of A 6-Million Euro Bribery Cache*, Ynetnews, Aug. 23, 2017, www.ynetnews.com/articles/O, 7340,L-5006758,00.html (attached as Exhibit 2).

raise the question of the validity of Guinea's cancellation of BSGR's mining rights.  BSGR alleges that the Guinean government cancelled those rights because of undue influence by Mr. Soros and OSF, while Defendants dispute those allegations.  But it does not matter which party is right; the mere asking of the question requires that the case be dismissed under the act of state doctrine.  As described in Defendants' opening brief, this doctrine precludes a court in the United States from declaring invalid the official act of a foreign sovereign performed within its own territory.  This is exactly what BSGR asks the Court to do here via an order that Defendants "take all steps necessary to secure the return of all rights" terminated by Guinea.  (*See, e.g.*, ¶ 186.)[3]  The act of state doctrine bars such interference with the acts of a foreign sovereign.

Plaintiffs have and are pursuing other remedies to their allegedly being wronged:  BSGR and Guinea are litigating the termination of BSGR's mining rights in the arbitral forum that they contractually agreed upon, the International Centre for the Settlement of Investment Disputes ("ICSID Arbitration").  The ICSID Arbitration was filed in 2014 and the merits hearing concluded in June 2017.  The arbitration will decide whether (1) BSGR procured its contract and mining rights through corruption and fraud, (2) Guinea breached the contract, and (3) the contract and mining rights are enforceable.  At the very least, those issues – which are central to this case as well – should be litigated to judgment in that action before this case proceeds.

Should the Court choose not to stay this action at this phase and reach the merits of this motion, various reasons (in addition to the act of state doctrine) require dismissal of this action.

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE.

In the ICSID Arbitration BSGR seeks to reverse Guinea's termination of BSGR's alleged

---

[3]     Unless otherwise noted, the citations to paragraphs refer to the paragraphs in the Amended Complaint.

mining rights.  Here, each of BSGR's claims similarly seeks the reversal of Guinea's sovereign acts via "an order directing defendants to take all steps necessary to secure the return of all rights" terminated by Guinea.  (¶¶ 186, 193, 204, 210, 216.)  This is precisely what the act of state doctrine precludes – United States courts examining another sovereign's purely domestic actions.  *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 143 (2d Cir. 2012) (citation omitted) (doctrine "precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory").  This case especially implicates the doctrine because "the exploitation of natural resources is an inherently sovereign function."  *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 954 (5th Cir. 2011) (citing *United States v. California*, 332 U.S. 19, 38-39 (1947)).

Adjudicating Plaintiffs' claims also requires the Court to determine the validity of Guinea's acts.  BSGR's tortious interference and prima facie tort claims require the Court to decide whether Guinea entered into a valid contract with BSGR and whether Guinea breached that alleged contract.  (*See* ¶¶ 180, 184, 214.)  And the falsity of the alleged misrepresentation underlying BSGR's fraud claim depends on a determination that BSGR's rights were terminated through a fraudulent investigation conducted by Guinea.  (*See* ¶¶ 114-115, 127, 196-197, 201.)  Where the very elements of a claim, such as these, turn on a determination of the validity of a foreign sovereign's acts, the claim is barred by the act of state doctrine.  (*See* Op. Br. at 12-13 (citing cases dismissing tortious interference claims against private parties under act of state doctrine).)

BSGR's main response is that application of the act of state doctrine here is barred by *W.S. Kirkpatrick & Co. v. Environmental. Tectonics Corp. International*, 493 U.S. 400 (1990). To the contrary, *Kirkpatrick* stands for the very proposition that demands application of the

3

doctrine here:  "the act of state doctrine [is] applicable" where "the relief sought or the defense interposed . . . require[s] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory."  *Id.* at 405.  In *Kirkpatrick*, plaintiff was an unsuccessful bidder for a construction contract with the government of Nigeria.  *Id.* at 402. Defendants included the company that procured the contract and its CEO.  *Id.* at 401.  After losing the contract, the unsuccessful bidder sued the defendants for RICO violations, alleging that defendants improperly procured the contract by paying bribes to Nigerian government officials.  *Id.* at 402.   Defendants argued that the act of state doctrine barred plaintiff's claims because "the facts necessary to establish" the claims—defendants' bribery of Nigerian officials—would "also establish that the contract" procured by the bribes "was unlawful."  *Id.* at 406.  The Supreme Court disagreed, finding the legality of the Nigerian contract ancillary to the claims between competitors.  *Id.* ("Regardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires.").

There is a fundamental difference between the claims in *Kirkpatrick* and BSGR's claims here.  In *Kirkpatrick*, the racketeering claims did not require the court to decide whether Nigeria's conduct was lawful.  By contrast, BSGR's tortious interference claim *requires* the Court to determine whether BSGR's contract with Guinea was valid and whether Guinea breached the contract when it terminated BSGR's mining rights.[4]   *See Samsung Display Co. v. Acacia Research Corp.*, No. 14 CV 1353, 2014 WL 6791603, at *4 (S.D.N.Y. Dec. 3, 2014)

---

[4]     Plaintiffs' contention that a tortious interference claim without an actual breach of contract "is directly at odds with controlling law."  *Samsung Display Co. v. Acacia Research Corp.*, No. 14 CV 1353, 2014 WL 6791603, at *4 (S.D.N.Y. Dec. 3, 2014) (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996); *Baylis v. Marriott Corp.*, 906 F. 2d 874, 877 (2d Cir. 1990)); *see also Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010) ("for tortious interference with contractual relations, a plaintiff must establish . . . the actual breach").

("New York law is clear:  nothing short of actual breach gives rise to a claim for tortious

interference with contractual relations.") (citation omitted); *Catskill Dev., LLC v. Park Place*

*Entm't Corp.*, 144 F. Supp. 2d 215, 232 (S.D.N.Y. 2001), *vacated in part on reconsideration on*

*other grounds*, 154 F. Supp. 2d 696 (S.D.N.Y. 2001) ("the New York Court of Appeals has made

clear than an essential element of a claim for tortious interference of contract is the existence of

an enforceable contract") (citing *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d

614, 621 (1996).  The act of state doctrine bars any such determination by this Court.[5]

BSGR's remaining arguments also fail.  (*See* Opp'n at 13-14.)  Contrary to BSGR's

contention, courts routinely apply the doctrine in cases where the only defendant is a private

party seeking money damages.[6]  Even so, BSGR is not just asking for money damages—they

seek an order directing Defendants to facilitate the reinstatement of their mining rights.  (*See,*

*e.g.*, ¶¶ 186, 193.)  Nor are there so-called "corruption and commercial activity exceptions" to

the doctrine.  *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 744

(2d Cir. 2016) ("neither the Supreme Court nor this Circuit has ever concluded that there is a

commercial exception to the doctrine of act of state");[7] *Galu v. Swissair: Swiss Air Transp. Co.*,

734 F. Supp. 129, 132 n.6 (S.D.N.Y.), *aff'd sub nom.*, *Galu v. Swissair*, 923 F.2d 842 (2d Cir.

1990) (act of state doctrine applied despite allegations "of corruption in the Swiss government");

*Sea Breeze Inc. v. Mitsubishi Corp.*, No. CV 16-2345, 2016 WL 8648638, at *4 (C.D. Cal. Aug.

---

[5]     None of the additional cases cited by BSGR (Opp'n at 12-13) required the court to determine the validity of the act of a foreign sovereign before it could decide plaintiffs' claims.  *World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, 104 (D.D.C. 2000), cited by BSGR, highlights the application of the doctrine here, as it involved a contract between private parties, not a contract with a foreign government  *Id. at* 105.

[6]     *See, e.g.*, *Glen v. Club Méditerranée S.A.*, 365 F. Supp. 2d 1263, 1266 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006) (doctrine barred claims against corporation for money damages); *Konowaloff*, 702 F.3d at 143 (dismissal of claims for both money damages and injunctive relief under act of state doctrine).

[7]     Even if a commercial exception exists, it does not apply here because granting or withdrawing "a concession to exploit natural resources entails an exercise of powers peculiar to a sovereign."  *Clayco Petroleum Corp. v. Occidental Petroleum Corp.*, 712 F.2d 404, 408 (9th Cir. 1983) (a commercial exception would not apply when "the governmental action . . . could not have been taken by a private citizen").

18, 2018) (act of state doctrine applied despite allegations that defendant was "actively corrupting" "Mexican government officials").[8]

In short, there is no path to resolution of BSGR's claims that does not require this Court to question the acts of the Guinean government in connection with its granting, evaluating, and ultimately terminating concessions to mine Guinea's largest natural resources reserve. Such an undertaking is prohibited under the principles of international comity embodied in the act of state doctrine. BSGR's claims should, therefore, be dismissed.

## II.   ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION.

At a minimum, the overlap between the ICSID Arbitration and BSGR's claims against Defendants warrants staying this case. There is no real dispute that BSGR and Guinea are litigating in the ICSID Arbitration the same issues essential to adjudication of this action. The issues to be decided in the ICSID Arbitration—whether BSGR and Guinea had an enforceable contract, whether BSGR procured the contract through bribery and corruption, and whether Guinea breached the alleged contract (*see* Op. Br. at 28)— *must* also be decided to adjudicate BSGR's claims here. For instance, BSGR cannot—as a matter of law—sustain a claim for tortious interference with its alleged contract with Guinea if Guinea did not breach that contract.[9] Nor can BSGR sustain the claim if no enforceable contract existed in the first place. (*See id.*) And BSGR's defamation claim necessarily fails upon a finding in the ICSID Arbitration that

---

[8]       BSGR's reliance on *Dominicus Americana Bohio v. Gulf & W. Indus., Inc.*, 473 F. Supp. 680, 690 (S.D.N.Y. 1979) for a purported corruption exception is misplaced because subsequent cases have confirmed that it was without basis in law. *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, No. Civ A 04-332, 2006 WL 2711527, at *8 (D.D.C. Sept. 21, 2006) (noting *Dominicus* relied on a case that did not address the exception); *see also Compania de Gas de Nuevo Laredo, S. A. v. Entex, Inc.*, 686 F.2d 322, 326 (5th Cir. 1982) (same). Moreover, the Second Circuit has affirmed dismissals where the district court rejected a corruption exception to the doctrine. *See Galu*, 734 F. Supp. at 132 n.6, *aff'd sub nom., Galu v. Swissair*, 923 F.2d 842 (2d Cir. 1990) (act of state doctrine applied despite allegations "of corruption in the Swiss government").

[9]       Plaintiffs erroneously contend that "New York law does not require that Plaintiffs show a breached contract to prove unlawful interference," citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90 (1993). (Opp'n at 29.) *Kronos* has been consistently rejected by the New York Court of Appeals, the Second Circuit, and courts in this district. *See supra* note 4 and accompanying text.

BSGR procured its mining rights by bribery and corruption.  These dispositive issues should be decided in the proceeding where BSGR and Guinea agreed they would be decided and where they have already been litigated to virtual completion—the ICSID Arbitration.  (¶ 166.)

Thus, judicial economy dictates the Court stay this action pending the ICSID Arbitration. *See Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09 Civ. 7966, 2009 WL 5125113, at *3 (S.D.N.Y. Dec. 29, 2009) ("where arbitrable and non-arbitrable claims arise out of the same set of facts, a stay usually is appropriate in the interest of judicial efficiency, because the arbitration may decide the same facts at issue in the litigation"); *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011) (staying related claims pending foreign arbitration).

BSGR ignores the standard governing the evaluation of a stay request, instead citing to inapposite cases about the standard for collateral estoppel.[10]  BSGR is incorrect that a stay is precluded because "the elements of the claims" and "[t]he causes of action are not the same." (Opp'n at 29.)  Courts routinely grant stays pending arbitration where the claims in the two proceedings are not identical.  *See, e.g., Andrews v. Lasser Marshall, Inc.*, No. 97 Civ. 3827, 1997 WL 624986, at *1 (S.D.N.Y. Oct. 6, 1997) (staying plaintiff's action for tortious interference pending arbitration of plaintiff's claim for breach of the underlying contract against non-parties to litigation).

Finally, a stay pending the ICSID Arbitration—where BSGR agreed to have its rights in Guinea decided—will not prejudice BSGR.  The ICSID Arbitration's hearing on the merits finished in June.[11]  BSGR's declarant conceded that "the closing of the evidentiary phase . . . will

---

[10]     None of BSGR's collateral estoppel cases, cited in the Opposition at 29-30, involved a stay pending arbitration.

[11]     *See* ICSID, BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SÁRL v. Republic of Guinea (ICSID Case No. ARB/14/22) Procedural Details, https://icsid.worldbank.org/en/Pages/cases/casedetail.aspx?CaseNo=ARB/14/22 ("The Tribunal h[eld] a hearing on jurisdiction and the merits in Paris" on "May 22, 2017 - June 1, 2017").

take place . . . in the foreseeable future." (Decl. of J. Libson, ¶¶ 9-11, Aug. 17, 2017, ECF No. 70.) Here, document discovery has just begun and depositions will not begin (if at all) until the Court decides this motion. (*See* Order, July 7, 2017, ECF No. 30.) After that, the parties would need to complete fact and expert discovery and summary judgment motions before the action could even approach trial. This is more than enough to show that the relative timing of the two proceedings weighs in favor of a stay. (*See* Op. Br. at 30.)[12]

## III.   EACH OF PLAINTIFFS' CLAIMS INDEPENDENTLY FAILS.

If the Court reaches these issues, each of BSGR's claims fail for additional and independent reasons.

### A.   Plaintiffs Fail to State a Claim For Tortious Interference.

#### 1.   Plaintiffs fail to allege that Defendants' conduct was the but for cause of the alleged breach.

BSGR attempts to minimize Defendants' challenge to their tortious interference claim by suggesting that this challenge is based on the premise that "Guinea was involved in the acts at issue." (Opp'n at 16.) This is not accurate. BSGR's claims fail not because Guinea was "involved," but because the Amended Complaint establishes that the government of Guinea was the "motivating force behind" the termination of BSGR's mining rights and the mining reforms that led to the termination. (*See* Op. Br. at 14 (citing cases).) According to BSGR:

- Guinea initiated the mining reforms that led to the termination because Guinea wanted to more than double its stake in the mining projects in the country (¶ 73);

- It was the President of Guinea's "plan to re-examine existing mining contracts" (¶ 189);

- "Prior to even the commencement of the review, it is obvious that Guinea viewed

---

[12]      BSGR's cases are inapposite. *See Donjon Marine Co. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 741 (2d Cir. 2013) (affirming denial of stay where, unlike here, the arbitration hearing had not begun); *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 958 F. Supp. 2d 507, 521 (S.D.N.Y. 2013) (stay denied where movant was obstructing the arbitral process).

the removal of BSGR's contractual rights as a foregone conclusion" (¶ 160);

- Guinea sought out Soros for assistance with the mining reforms that resulted in the termination, not the other way around (¶¶ 67, 73, 78, 83); and

- The President of Guinea "demanded without justification that BSGR pay $1.25 billion to maintain its contractual mining rights" (¶ 58), and "subsequent investigations into BSGR by the Guinean government," which resulted in the termination of BSGR's mining rights, "were a direct result of [BSGR's] refusal to pay the $1.25 billion demanded" by the President of Guinea. (¶ 60.)

Unfortunately for BSGR, these allegations show that Guinea was pre-disposed to review and cancel BSGR's mining licenses. Guinea's pre-disposition is only underscored by BSGR's own allegations in the ICSID Arbitration, which show that the President of Guinea was the driving force behind the termination. (*Id.*)[13]

The allegations that Defendants prompted Guinea's pursuit of the termination are wholly conclusory. (*See, e.g.*, Opp'n at 17 ("Soros and OSF masterminded and orchestrated the attempted extortion of BSGR") (citing ¶ 61).) The only allegation relied on by BSGR that comes close to alleging facts—Defendants' purported secret negotiations with Vale—occurred "after" Guinea's "failed attempt to shake down BSGR." (Opp'n at 17.) And BSGR's allegation that Soros assisted Condé before he was elected says nothing about assistance relating to mining or BSGR. (*See* ¶ 54 ("Condé turned to him in March 2010 'to ask for help in meeting his electoral pledges'").) BSGR's specific allegations of Guinea's predisposition and financial motivation to breach, coupled with BSGR's bare, conclusory allegations that Defendants initiated the alleged

---

[13]   Contrary to BSGR's contention, the Court may and should consider contrary statements from the ICSID Arbitration. *See Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (citation omitted) (taking notice of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action"). Plaintiffs did not "exclude" the ICSID proceeding from their allegations, they expressly cite the case number and refer the Court to the allegations in the proceeding. (¶ 166.) BSGR's cases are inapposite. Unlike here, neither *Goel v. Bunge, Ltd*., 820 F.3d 554, 560 (2d Cir. 2016), nor *Concord Associates, L.P. v. Entertainment Properties Trust*, 817 F. 3d 46, 51 n.2 (2d Cir. 2016), involved the same Plaintiffs making directly contradictory allegations about the same transaction in separate proceedings. Further, BSGR's resort to "alternative pleading" to justify the blatant contradictions is unavailing. Rule 8 authorizes allegations of contradictory claims, not contradictory facts. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 406-407 (S.D.N.Y. 2001).

scheme, do not allege but-for causation.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990).

BSGR's reliance on *Antonios A. Alevizopoulos & Associates v. Comcast International Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000) is misplaced.  Unlike here, *Antonios* involved no allegations that the breaching party pursued a breach independent of the defendants' involvement,[14] nor allegations of specific financial benefits to the breaching party beyond the economic self-interest inherent in the breach itself.  *Id.* at 186-87.  Rather, the allegations showed that the defendant initiated and created an opportunity to breach that otherwise could not occur. *Id.* at 187.  There is no allegation here that the alleged termination, accomplished by orders of President Condé and Guinea's Minister of Mines (¶¶ 156-158), *required* Defendants' involvement.

## 2. Plaintiffs' tortious interference claims against the New Defendants are barred by the statute of limitations.

BSGR concedes that the tortious interference claim against the New Defendants is time-barred unless they relate back to the initial complaint.  (*See* Opp'n at 27-28.)  To satisfy its burden, BSGR must establish that, among other things, "the new defendant[s] [are] united in interest with the original defendant[s]."  (Op. Br. at 17 (citing cases).)  BSGR ignores its burden, stating only that the new entities have similar names and belong to the same family of entities as the original defendants.  (Opp'n at 28.)  This is not enough.  BSGR must show that the new and old defendants "stand or fall together and that judgment against one will similarly affect the other,'" which "requires a showing that the new and original defendants are 'vicariously liable for the acts of the other.'"  (Op. Br. at 17-18 (citing cases).)  BSGR makes no such showing.

---

[14]     The other cases cited by BSGR (*see* Opp'n at 16) are inapposite for the same reason.

Thus, BSGR's tortious interference claims against the New Defendants should be dismissed.[15]

**B.      Plaintiffs Fail to State a Fraud Claim Against Soros.**

BSGR alleges that on March 3, 2011, Soros announced at a conference "that 'all mining contracts' would be 're-examined and those who want to validate those claims will have to subscribe to the principles of EITI.'"  (¶¶ 78, 196.)  BSGR does not allege that the statement was false.  Rather, BSGR alleges that it "*implied* a fair and impartial review of BSGR's Convention and related agreements" by the Technical Committee.  (¶ 196 (emphasis added).)  This admission is fatal to BSGR's fraud claim.  New York does not recognize a fraud claim premised "upon a message implied" by the actual statements uttered.  *See Shelton v. Sethna*, No. 10 Civ. 4128, 2012 WL 1022895, at *6 (S.D.N.Y. Mar. 26, 2012) ("[t]his sort of subjective inference cannot give rise to fraud liability."); *see also Glatt v. Mariner Partners, Inc.*, 63 A.D.3d 428, 429 (App. Div. 2009) ("the relied-upon implicit statement cannot serve as a misrepresentation upon which a claim of fraud may properly be based").

Even if Soros's alleged statement constituted an actionable misrepresentation or omission, which it does not, BSGR fails to plead actual or reasonable reliance on the alleged statement.   BSGR cites only to allegations that BSGR provided Guinea with purportedly "exculpatory" documents in connection with the Guinean government's investigation.  (Opp'n at 23; ¶¶ 103-105, 150.)  The Amended Complaint offers no facts showing that BSGR provided the documents – which submissions occurred 8 and 18 months later –  in reliance on Soros's

---

[15]      To support its relation back theory, Plaintiffs contend that "Defendants have disputed that OSF is the proper party, but have not identified a replacement."  (Opp. at 28.)  This is both wrong and irrelevant.  As the correspondence attached by Plaintiffs shows, Defendants did identify entities that might be named in lieu of OSF.  (Exhibit 7 to Decl. of Louis M. Solomon, Aug. 18, 2017 ("Solomon Decl."), ECF No. 69-7 (Letter from L. Solomon to J. Fitzmaurice, dated May 18, 2017 ("Ben apparently told my colleague, Nancy Savitt, that you were taking the position that OSF is not a juridical entity, and you mentioned the Open Society Institute as the party that we might have meant to sue.")); Exhibit 10 to Solomon Decl. (ECF No. 69-10) (Letter from B. McCallen to L. Solomon, dated June 19, 2017 ("Foundation to Promote Open Society . . . provided such funding during the time period of the allegations in the complaint")).)  In any event, BSGR's inability to timely name the New Defendants was a problem of their own making, waiting to file the original complaint until just days before the limitations period expired.

purported misrepresentation or omission.  Indeed, BSGR does not even allege that it was aware of Soros's statement at the time of the productions or that it would have refrained from producing documents if it were aware of Soros's purported bias.  *See Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, No. 05 CIV. 8988, 2007 WL 1732427, at *10 (S.D.N.Y. June 14, 2007) (dismissal where plaintiff "conspicuously fail[ed] to allege that plaintiffs read the allegedly misleading . . . statements, or even that they knew of their existence"); *Schwab v. E*TRADE Fin. Corp.*, No. 16-CV-05891, 2017 WL 2929501, at *7 (S.D.N.Y. July 10, 2017) (dismissal where plaintiff "fail[ed] to show with any sort of particularity that the plaintiff was aware—whether by reading, hearing, or otherwise—of any of the challenged misstatements"); *Johnson v. Formula 1 Imports*, No. 11-CV-1720, 2012 WL 628520, at *2 (E.D.N.Y. Feb. 24, 2012) (no reasonable reliance pled absent allegations that plaintiff would have refrained from transaction if plaintiff knew truth about alleged misrepresentation).  Further, BSGR's own allegations contradict any assertion of reasonable reliance.  It is implausible that BSGR relied on a purported representation about the fairness of a review based on "the principles of EITI" (¶ 196), when, according to BSGR, the contract "did not comply with . . . EITI, and any attempt to force BSGR to adhere to these principles was wrongful interference."  (¶ 75.)

BSGR's purported reliance on alleged misstatements by Veracity and DLA Piper *to the Technical Committee* about BSGR's bribery and corruption also fails for two reasons.  *First*, BSGR fails to "proffer specific factual allegations demonstrating [the] falsity" of the "allegedly fraudulent statements" about BSGR's corruption.  *See Woori Bank v. Citigroup Inc.*, No. 12 Civ. 3868, 2013 WL 1235648, at *4 (S.D.N.Y. Mar. 27, 2013).  Although BSGR talks around the bribery allegations, claiming they were based on "hearsay" and "unreliable" sources (*see* ¶¶ 106-127), BSGR never alleges any *facts* showing that the bribery allegations were actually *false*.

12

This pleading failure dooms their fraud claim.  *See IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) ("particularity pleading requirements of [Rule] 9(b)," require "that the plaintiff . . . explain why the statements (or omissions) are fraudulent."); *Pennsylvania Ave. Funds v. Inyx Inc.*, No. 08 Civ. 6857, 2010 WL 743562, at *7 (S.D.N.Y. Mar. 1, 2010) ("conclusory allegations of falsity do not satisfy Rule 9(b)[] . . . because they do not set forth any facts showing why or how the statements were false.").

*Second*, New York does not recognize fraud claims based on third-party reliance, that is, where plaintiff's alleged injury resulted from a third party's reliance on misrepresentations made by the defendant.  *See Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 492 (N.Y. 2016).  Here, Plaintiffs allege reliance by the Technical Committee on the statements of Veracity and DLA Piper, but not by Plaintiffs.  (Opp'n at 23.)

**C.    Plaintiffs Fail to State a Commercial Defamation Claim against Defendants.**

BSGR concedes that the only timely alleged defamatory statement was made by Global Witness.  (Opp'n at 25.)  This statement is not imputable to Defendants because BSGR's allegations of "board participation" and "funding" (Opp'n at 25), are insufficient to establish that Defendants exercised control over the alleged statement.  *See* Op. Br. at 23 (citing cases); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 6696407, at *21 (S.D.N.Y. Nov. 3, 2015) ("General allegations of . . . shared board membership . . . are insufficient to establish a principal-agent relationship").

Contrary to BSGR's contentions, documents cited in Amended Complaint show that "BSGR 'invited public attention to its views in an effort to influence others'" and "'voluntarily injected [it]self' into a controversy" independent of any response to the alleged defamatory statements, which allegedly began in 2013:

13

> Steinmetz was proud of the [Guinea] transaction. 'People don't like
> success,' [Mr. Steinmetz] told the Financial Times, in a rare
> interview, in 2012. 'It's disturbing to people that the small David
> can disturb the big Goliath.' He said that it was B.S.G.R.'s strategy
> to pursue 'opportunities in an aggressive way,' adding, 'You have
> to get your hands dirty.'[16]

Given BSGR's status as a limited purpose public figure, BSGR must adequately allege

facts—not conclusory allegations—showing that Defendants made the alleged statements with

knowledge of or disregard for their alleged falsity.  (Op. Br. 23-24.)  BSGR has made no such

allegations.  Moreover, the very article BSGR relies on sets forth in detail Global Witness's good

faith basis for its belief in the truth of the alleged statement.  (*See* Op. Br. at 23-24.) [17]

## IV.   PLAINTIFFS' CLAIMS AGAINST OSF AND OSFI MUST BE DISMISSED BECAUSE THEY ARE NOT EXISTING LEGAL ENTITIES.

As public records show, "Open Society Foundations" is a wordmark registered to Open

Society Institute.  (*See* Ex. 3 (printout of United States Patent and Trademark website record of

"Open Society Foundations" wordmark).)  It is not a juridical entity.  Moreover, BSGR concedes

that OSFI does not exist (*see* Opp'n at 26).  These claims must be dismissed.

## V.   PLAINTIFFS' CLAIMS AGAINST THE NEW DEFENDANTS MUST BE DISMISSED UNDER FED. R. CIV. P. 8(A)(2).

The Amended Complaint fails to meet the requirements of notice pleading under Fed. R.

Civ. P. 8(a)(2), because it is devoid of allegations of wrongful conduct by any of the New

Defendants.  (*See* Op. Br at 27 (citing authorities).)  BSGR's citation to *Anwar v. Fairfield*

*Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010), is inapposite.  There, the court held that

---

[16]   Patrick Radden Keefe, *Buried Secrets*, The New Yorker, July 8, 2013 (Exhibit 8 to Decl. of James Fitzmaurice, July 28, 2017, ECF No. 57-9) (cited in ¶ 99) (detailing various interviews provided to the press by BSGR representatives in 2012 and 2013, including Beny Steinmetz and Dag Cramer); *id.* (describing a "Web site that Steinmetz recently set up [that] describes him as a 'visionary' who used a 'network of contacts on the African continent' to build 'a multi-faced empire'").)

[17]   BSGR also fails to state claims for conspiracy and prima facie tort for the same reasons explained in Defendants' opening brief at pages 25 and 26.

plaintiff satisfied Rule 8 because, although "Plaintiffs [made] certain allegations against the Citco Defendants as a whole," plaintiffs also "distinguish[ed] the conduct of each of the Citco Defendants." *Id.* at 422.  BSGR has made no such individualized allegations here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiffs' claims against Defendants with prejudice or, in the alternative, stay the action pending arbitration.

Dated: September 8, 2017            Respectfully submitted,
       New York, New York

WILLKIE FARR & GALLAGHER LLP

By:  _s/ Joseph T. Baio_____
     Joseph T. Baio
     Benjamin P. McCallen
     James Fitzmaurice

787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
jbaio@willkie.com

     Elizabeth J. Bower

1875 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
ebower@willkie.com

*Attorneys for Defendants*