UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited, | ) ) ) ) ) | No. 1:17-cv-02726 (JFK) (AJP) |
| Plaintiffs, | ) ) |  |
| -against- | ) ) |  |
| George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund, | ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' OBJECTION TO JUDGE PECK'S ENTRY OF PROTECTIVE ORDER**

Louis M. Solomon
Michael S. Lazaroff
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
*Attorneys for Plaintiffs BSG Resources
(Guinea) Limited, BSG Resources
(Guinea) Sàrl, and BSG Resources
Limited*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

PROCEDURAL BACKGROUND .................................................................................................... 2

ARGUMENT ....................................................................................................................................... 5

I.   JUDGE PECK'S ORDER SHOULD BE UPHELD ......................................................... 5

CONCLUSION .................................................................................................................................... 7

i

# **TABLE OF AUTHORITIES**

**Cases**

*In re Terrorist Attacks on Sept. 11, 2001*,
  454 F. Supp. 2d 220 (S.D.N.Y. 2006)..........................................................................................6

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co Sys. v. Woori Bank*,
  192 F. Supp. 3d 400 (S.D.N.Y. 2016).........................................................................................6

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984).......................................................................................................................5

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995)........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 72(a) ...................................................................................................................2, 4, 5

Plaintiffs (collectively "BSGR") respectfully submit this memorandum in opposition to Defendants' objection to Judge Peck's entry of a standard protective order in this case.

## PRELIMINARY STATEMENT

Judge Peck entered a standard protective order in this case. That protective order, largely agreed upon by the parties, provides protection to Confidential and Highly Confidential information. Defendants, however, argued with no basis that even non-confidential documents should be granted protection. After giving due consideration to Defendants' argument, Judge Peck entered the protective order proposed by Plaintiffs. Defendants do not even attach the protective order Judge Peck actually issued, nor discuss his reasoning beyond citing a snippet of a sentence, in a transcript they do their best to obscure (Obj. at 5, Def. Ex. 11). We rectify those flaws (see *infra* & exhibits A-C attached to the accompanying Declaration of Michael S. Lazaroff ("Lazaroff Decl.")).

It is telling that Defendants waited until the evening of the fourteenth day after Judge Peck issued his order to file their objection – the very day they had represented they would begin producing documents. Needless to say, Defendants have not produced any documents (Lazaroff Decl. ¶¶ 3-5). Moreover, Defendants' puppet, NRGI (mentioned throughout the Amended Complaint by its former name, Revenue Watch Institute), refused to produce subpoenaed documents the following day, based on the pendency of this objection (*see id.* ¶ 6). Not incidentally, NRGI apparently learned of the objection directly from Defendants, as NRGI's copy of the objection did not contain an ECF header (*id.*).

The purpose of this baseless objection is clear – to delay and obstruct discovery, while taking yet another opportunity to smear BSGR. Of the 14 exhibits Defendants lard into their motion papers, only five are arguably pertinent here: Defendants' proposed protective order

(Def. Ex. 1); the parties' joint letter to Judge Peck (which they attach without exhibits) (Def. Ex. 9); an email exchange between counsel (Def. Ex. 10); the August 24 transcript (Def. Ex. 11); and finally the comparison showing the difference between what Judge Peck entered as compared to Defendants' proposal (Def. Ex. 14). The rest are newspapers articles Defendants apparently intend to submit at every turn – not only are they attached here, many are attached to their reply papers on their motion to dismiss and in prior correspondence with Judge Peck. They are irrelevant to the issues presented on this objection, but Defendants apparently cannot help themselves. And yet it is they who want to restrain BSGR's use of discovery material. Indeed, in a final smear, Defendants claim that "Plaintiffs and their principals, employees, or agents have a well-publicized history of misusing documents" (Obj. at 8). The sole support for this sweeping accusation are two articles discussing the actions of a man who is not so associated with Plaintiffs; and Defendants' input regarding one of those articles is even part of the subject of the Amended Complaint (*e.g.,* AC ¶¶ 140, 149). It is disappointing, but not surprising, that even on a procedural motion such as this, Defendants cannot refrain from their smear campaign against Plaintiffs.

Having cited the "clearly erroneous or contrary to law" standard (Obj. at 5; *see also* Fed. R. Civ. P. 72(a)), Defendants then make no effort between their smears to meet that standard. Judge Peck's order should be upheld.

## PROCEDURAL BACKGROUND

The parties negotiated a protective order that contained protections for documents that meet certain appropriate specifications. Specifically, the Protective Order (Ex. A, §§ I.2, I.8), provides as follows:

> The term "CONFIDENTIAL," as used in this Order, means "trade secret or other confidential research, development, or commercial information," as those terms are

construed within the meaning of Federal Rule of Civil Procedure 26(c)(i)(G), and includes information which the disclosing Party believes in good faith contains, constitutes or reveals confidential design, engineering, business or development information, confidential commercial information, non-public financial information, trade secrets, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), information implicating an individual's legitimate expectation of privacy, or other information of a confidential, proprietary, private or personal nature.

The term "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," as used in this Order, means extremely sensitive "CONFIDENTIAL" information disclosure of which to another Party or Non-Party would create a substantial risk of serious harm (such as trade secrets, financial data, personal information, or competitively-sensitive information about future business plans and strategies) that could not be avoided by less restrictive means.

Defendants, however, proposed a third category, one covering all "Discovery Materials".

The changes they sought in the protective order are set out in a blackline comparing the entered Protective Order to Defendants' proposed order (Ex. B; *see also* Def. Ex. 14). Yet they had great difficulty explaining to Judge Peck why this case merited an additional standard whereby non-confidential material would be subject to protection:

> THE COURT: . . . With respect to conflicting proposed confidentiality orders, my inclination, subject to hearing from all of you, is to go with plaintiffs' version, meaning, the usual court procedures are that unless something is deserving of confidentiality protection, parties are free to use it however they wish.
>
> Any discussion on that from the defense?
>
> MS. BOWER: Yes, your Honor. Respectfully, we think that this case is one in which we should have broader protection generally on discovery materials. Plaintiffs have indicated a preference for possibility of using documents from this case in other proceedings to which defendants are not a party and will have no control over the use of that material.
>
> THE COURT: If it's not confidential, what issue is there?
>
> MS. BOWER: Well, it's the defendants' private information there would otherwise be no purpose in the plaintiffs' possessing. So --
>
> THE COURT: If it's not relevant to the litigation, you're not going to have to produce it. If it's relevant and really affects serious privacy interest, Mr. Soros' tax returns, or something like that, then I don't see why it wouldn't be designated confidential. But if

>it is something that is produced that is, you know, mildly private but not sufficient to be designated confidential under Rule 26(c) o[r] the case law, it is what it is.
>
>MS. BOWER: We appreciate that, your Honor. As I think has been indicated in this case in the past, we do feel strongly that this is not -- there is no merit to these claims. At the same time, we appreciate we have to proceed --
>
>THE COURT: What a shock that a defendant finds the claims not to have merit. I've never heard that argument from a defendant before.
>
>MS. BOWER: I like to be unique, your Honor.
>
>At the same time, we obviously appreciate that we need to move forward with discovery as ordered by the Court, but we do believe that this should not open the door to Mr. Soros' or OSF entities' private commercial personal information. It is also interesting to note, your Honor, we received last evening plaintiffs' responses and objections to the defendants' RFPs in which they include an objection to producing to us material from other cases on the basis that those cases involve other parties, other claims, and other issues. So while they intend to seemingly use material from this case in those proceedings, they're intending to block our access to those documents.
>
>THE COURT: We'll get to that if the material is relevant. And it's their information, not someone else's, you're entitled to it. If it's somebody else's information subject to a confidentiality order from some other litigation, then I'll have to see whether I can obviate that protective order or whether one or the other side has to go back to the Court that issued the order.
>
>All right. Anything further?
>
>MS. BOWER: No, your Honor.
>
>THE COURT: Then I'm going to enter, what is it, D? Is the one that is -- is it C or D that is a clean version of plaintiffs' --
>
>MR. SOLOMON: It's D, your Honor.
>
>THE COURT: All right. Then that will be issued.

(Ex. C, 8/24/17 Tr. at 2:2-4:12.)  Defendants never explain how this order is flawed, let alone how it meets the high standard set forth in Fed. R. Civ. P. 72(a).  Their objection should be rejected.

4

**ARGUMENT**

**I.     JUDGE PECK'S ORDER SHOULD BE UPHELD**

As Judge Peck noted, the Protective Order in this action complies with "the usual court procedures" (Ex. C at 2:7). Judge Peck's order was neither clearly erroneous nor contrary to law. Fed. R. Civ. P. 72(a).

Defendants argue that every scrap of discovery produced by any party or non-party should be protected and limited to the case in which it was produced. This is not the law. The cases Defendants cite certainly do not support this proposition. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (Obj. at 6), the Court did not grant protection to any and all documents produced in discovery. In fact, in that case, the leader of the religious organization at issue had sought a protective order preventing the dissemination of "any" information gained through discovery. *Id*. at 25. The lower court, however, did not grant that request but granted an order protecting only financial and membership information of the religious organization, on evidence that members had been subject to "attacks, threats, and assaults". *Id*. at 26. It was that more limited order that the Supreme Court upheld as non-violative of the First Amendment rights of the defendant newspaper. *Id.* at 37. Here, there is no newspaper; there are no attacks and assaults. A second case, *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) (Obj. at 6), does not even involve a protective order or a prohibition on party use of discovery material, but rather the inapposite discussion of whether a newspaper can have access to information involving a third party.

Defendants then point to two cases where this Court entered a protective order purportedly containing restrictions similar to those Defendants seek here (Obj. at 6-7). However, a review of the dockets in those cases reveals no evidence of any dispute between the parties, nor any indication that the provisions at issue were even brought to the Court's attention.

5

Finally, Defendants point to a case where such a dispute was litigated: *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220 (S.D.N.Y. 2006) (Obj. at 7).  That case, needless to say, was one that was "far from normal" – a multi-district litigation that was "one of the largest privates lawsuits in United States history", where "[m]ost, if not all, of the numerous defendants to these consolidated actions are accused of either committing the terrorist acts of September 11, 2001 or providing material support to those who did". *Id.* at 223.  While the allegations of the Amended Complaint do not paint Defendants in a flattering light, they are not at all comparable to the terrorism allegations in the 9/11 case.

Instead, this case is the "usual" one where discovery documents that do not meet the criteria of "confidential" documents should not receive any protection at all.  Even confidential information must meet certain criteria to receive any protection.  Here, where there are various parties involved in related litigations/proceedings, it makes no sense to try to limit information or documents in this way.  *See, e.g., Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 407 (S.D.N.Y. 2016) (rejecting attempt to prohibit "the use of non-confidential discovery materials for purposes other than 'the prosecution or the defense of this Action'" and ordering modification of protective order to "put an end to litigation sideshows" concerning non-confidential discovery material).  Defendants have already laid the groundwork for such "litigation sideshows" in this case:  Every time Plaintiffs attach non-confidential discovery to a filing, Defendants will claim that it was not "properly" made public or was made public for the purpose of using it in anther proceeding (*see* Obj. at 6); or whenever Plaintiffs proffer an exhibit in another litigation, Defendants will claim before this Court that it improperly came from this proceeding, and will force Plaintiffs to show that they procured it or could have procured it from other sources.

6

Defendants claim they are concerned about the disclosure of "private" information (Obj. at 1, 6).  As Judge Peck noted, if that private information is confidential, then it will be protected under the Protective Order.  If it is not confidential, then there is no basis for such protection.  It is particularly incongruous and telling that Defendants cite to the grant-making functions of the Open Society defendants (who purport to be proponents of transparency) as an example of "private" information (Obj. at 7), since these entities have public reporting requirements.  Also, the reference to "private functions" (*id.*) relates to Defendants' more fulsome description before Judge Peck, *i.e.*, "private functions in Mr. Soros personal residence" (Def. Ex. 9 at 4) – presumably Defendants made their reference here more oblique because those functions sometimes have cameras present (e.g., https://www.youtube.com/watch?v=dxUKVF4GTIk (Soros meeting with Guinean President Alpha Condé)).

Defendants also assert a privacy interest in the "deliberations of Guinean governmental officials" (Obj. at 7), without explaining why they have standing to raise such concerns.  We also note that in a case raising related issues, Judge Peck entered a protective order that did not have the special layer of protection Defendants seek here (*see* Ex. D, *Rio Tinto plc v. Vale SA., et al.,* No. 14-cv-3042 (RMB) (AJP) protective order).

In short, nothing in Defendants' papers support a finding that Judge Peck's entry of the Protective Order was clearly erroneous or contrary to law.

## CONCLUSION

The Court should deny Defendants' motion in its entirety, and uphold the Protective Order entered by Judge Peck.

Dated: New York, New York
      September 15, 2017

Respectfully submitted,

GREENBERG TRAURIG, LLP
By: /s/ Louis M. Solomon
     Louis M. Solomon
     Michael S. Lazaroff
200 Park Avenue
New York, New York 10166
(212) 801-6500
*Attorneys for Plaintiffs BSGR*