# EXHIBIT 2

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   BSG RESOURCES (GUINEA)
     LIMITED, et al.,
 4
                  Plaintiffs,
 5
            v.                                17 Civ. 2726 (JFK)(AJP)
 6

 7   GEORGE SOROS, et al.,
                                              Conference
 8
                  Defendants.
 9
     ------------------------------x
10                                            New York, N.Y.
                                              September 1, 2017
11                                            10:30 a.m.

12   Before:

13                      HON. ANDREW J. PECK,

14                                      Magistrate Judge

15                            APPEARANCES

16   GREENBERG TRAURIG, LLP
          Attorneys for Plaintiffs
17   BY:  MICHAEL LAZAROFF
          NANCY L. SAVITT
18        ANNE C. REDDY

19   WILLKIE FARR & GALLAGHER LLP
          Attorneys for Defendants
20   BY:  ELIZABETH J. BOWER
          BENJAMIN P. McCALLEN
21        JIM FITZMAURICE

22

23

24

25
```

1        (Case called)

2        THE COURT:  All right.  Let's start with Willkie's

3   letter, both because it came in on ECF first and because they

4   were nice enough to now give me a copy with all the exhibits

5   and tabs and all that fun stuff.  First --

6        MR. LAZAROFF:  We'll still let them go first, your

7   Honor, but if your Honor would like a copy, here you go.

8        THE COURT:  Excellent.  I'm regretting more and more

9   the 150 pages I printed this morning of the exhibits that

10  seemed relevant.

11       All right.  With respect to the declaration, the first

12  issue, my inclination is that you need to produce it.

13       MR. LAZAROFF:  Your Honor, I believe when we were here

14  last time your Honor had pointed out that the reason we put

15  forth the declaration was simply to show there's a good faith

16  basis for the allegations.  It's not our intention to use that

17  document.  It's not our intention to rely on it, file it.  We

18  intend to try to depose the witness jointly, if defendants want

19  to do that, and try to call them for trial, or if we're unable

20  to do that, to get the evidence that defendants or third

21  parties have that would show those types of things.  In those

22  circumstances, I believe there's a case from the Southern

23  District which is *Institute for Development of Earth Awareness*

24  *v. People for Ethical Treatment of Animals,* 272 F.R.D 124.

25       THE COURT:  Why don't you hand a copy of it up.

1     MR. LAZAROFF: Yes. Which says that the executed --
2     THE COURT: Hang on.
3     MR. LAZAROFF: Sure.
4     THE COURT: Let me read it.
5     MR. LAZAROFF: Sure, page 125 is the quote. It's not
6  particularly long.
7     THE COURT: All right. But most of this seems to deal
8  drafts, not the final affidavit.
9     MR. LAZAROFF: Correct. If you look at on page 125
10 the sentence it says: "The executed affidavits of nonparty
11 witnesses remained work product until the lawyer elected to
12 serve and file them." That is the line that we were focused
13 on. That's one case. And then a second case for your Honor is
14 *Stokes* v. City of New York, 2006 WL 2061976, Eastern District
15 of New York.
16     THE COURT: OK.
17     MR. LAZAROFF: In that case, your Honor, defendants
18 had obtained the affidavit of the nonparty deponent prior to
19 the deposition. Plaintiff sought a copy prior to deposing the
20 witness. The court denied plaintiff's request, finding the
21 affidavit was "protectable work product," and said "if and when
22 the affidavit is filed in this action or otherwise publicly
23 disclosed, then work product protection clearly will be
24 waived."
25     This is different, your Honor, than in the cases that

1    the defendants cited.  There they cited *A.F.L. Falck v. E.A.*

2    *Karay Co*.  In that case it was already at the summary judgment.

3    Evidently they had -- it was much further along in the

4    discovery process, and the only way to get at the particular

5    factual confirmation of the -- was from the father.  There was

6    no other way.  Here, discovery, we believe, will show the

7    documents that will sustain what is in the complaint based on

8    the declarations that we don't intend to use it, to rely upon

9    it.  And in the *Vazquez* case --

10           THE COURT:  Why did you get it?

11           MR. LAZAROFF:  As your Honor had noted and as

12   Mr. Solomon said when we were here last time, because the

13   allegations were such that we felt we needed to have a good

14   faith basis for doing that.  We've given the name of the

15   intermediary to defendants, as it's in the declaration as well

16   as the address that's in the declaration.  Given that we're

17   just at the beginning of discovery, your Honor, we feel at this

18   point it would be not within the rules to go ahead and order it

19   produced.

20           THE COURT:  One, I don't want to be devious on

21   defendants' behalf, but if they file a Rule 11 motion against

22   you, you would then file this affidavit saying it's your good

23   faith basis or among other good faith bases, and then they'd

24   withdraw their Rule 11 motion.

25           MR. LAZAROFF:  We would probably ask in that context,

1   your Honor, for it to be shown in camera to the judge.

2             THE COURT:  I guess on all of this my question is if
3   this were somebody in the United States who, once they have the
4   name and address they could easily depose, that's one thing.  I
5   can't say I'm up to speed on Malawi law, but somehow I doubt
6   that a deposition of this person is likely to happen.

7             MR. LAZAROFF:  It is our understanding that he is not
8   opposed to that.  Obviously, not going to -- can't confirm and
9   affirm that.  That's why we asked to get A declaration as sort
10  of an indication that a person would be willing to testify.
11  And I would respectfully submit that maybe we should try the
12  process and see if we are able to get him to be deposed, and
13  if, in fact, it turns out we've given the information that
14  should permit that, we're happy to work with defendants to try
15  to get such a deposition.  We would like it also, and then if
16  that fails, we can at that point revisit the issue.

17            THE COURT:  Isn't this just a timing question?  If the
18  witness is deposed, presumably one side or the other is going
19  to want the affidavit.

20            MR. LAZAROFF:  Well, as --

21            THE COURT:  One of the -- look, I mean --

22            MR. LAZAROFF:  That's the *Stokes* case, in the *Stokes*
23  case, there was the affidavit prior to the deposition, and the
24  Court denied that because it is work product and you're going
25  to depose them.  That's why I believe at this point, given that

1    we just gave them the name at the meet and confer when they
2    requested -- initially we had called the name confidential.
3    They asked us to reconsider that, and we did.  And they asked
4    for the address, and we gave them what we have, at least we can
5    only give them what we know, obviously.
6             THE COURT:  What's the work product here?  You're
7    going in circles.
8             MR. LAZAROFF:  The work product, your Honor, was that
9    in order to help us develop the allegations and make sure there
10   was a basis, we had reached out to try to make sure there was
11   some basis for it, and we got something that we felt gave us
12   that good faith basis but not something we intended to use.
13            THE COURT:  That's fact information; right?
14            MR. LAZAROFF:  It was -- we were also involved in the
15   process of, you know, making sure because the process was one
16   we wanted to make sure that we had what we were --
17            THE COURT:  Is there any opinion work product in it?
18            MR. LAZAROFF:  From the perspective, your Honor, of
19   this, that we wanted to make sure that the types of allegations
20   that we were being told had a basis.  And just to make sure, we
21   had that and --
22            THE COURT:  But that's not opinion work product.
23            MR. LAZAROFF:  Yeah.
24            THE COURT:  That's protecting yourself from --
25            MR. LAZAROFF:  Very least ask your Honor if we could

1  show it to your Honor in camera, and then if your Honor's
2  inclined in that direction --
3          THE COURT:  Do you have it here?
4          MR. LAZAROFF:  We don't have it here, your Honor.
5  We'd be happy to submit it just as soon as your Honor would
6  want it, if that's your Honor's inclination.
7          THE COURT:  Submit it, but unless there is something
8  in your cover letter -- obviously, they don't get a copy of the
9  affidavit -- but your cover letter should point out to me what
10 it is that is opinion work product, because otherwise, I think
11 even if getting the affidavit is work product, the facts in it,
12 in light of the fact that the witness is in Malawi and may or
13 may not be deposed voluntarily or otherwise, I think there is a
14 good faith and a good basis, substantial need under the case
15 law for them to see what this person told you.
16         MR. LAZAROFF:  Of course we'll do what your Honor
17 directs.  We do disagree in terms of the fact that they haven't
18 attempted to get the deposition yet.  If they had, then
19 their -- you might be right.  It might be a timing issue, but
20 it may be that he would be deposed, and then *Stokes* would rule.
21         THE COURT:  Well, the reason lawyers get affidavits,
22 generally -- I've not forgotten what it was like to be on your
23 side of the bench -- is so that if the witness says something
24 different later, they can be impeached.  So the fact that you
25 went the affidavit route instead of an interview with the

1    witness and notes may have been for that reason.

2            MR. LAZAROFF:  Your Honor, it's not our intention to
3    get it in that capacity.

4            THE COURT:  All right.  Understood.  I'm happy to look
5    at it in camera to give you -- because it is a privilege,
6    albeit work product, issue, I'm willing to give you the benefit
7    of the doubt.  But unless there is something in there that
8    clearly shows your opinion work product, I'm going to order it
9    produced.

10           MR. LAZAROFF:  OK, your Honor.

11           THE COURT:  All right.  Second -- oh, I had said
12   previously we would do one and one in fairness.  Also, so you
13   know the schedule here, I've got an 11:00 o'clock conference
14   call preparing for a new discovery program I'm going to be
15   doing, and I plan to break from this to do that and bring you
16   back at 11:15 or 11:30 when I finish that call, to the extent
17   we're not done before then, and I think at the rate we're
18   going, we won't be done.

19           MR. LAZAROFF:  Your Honor, just one thing.
20   Defendants' counsel had conferred with us prior to your coming
21   in this morning, and on our 1B, they've withdrawn their
22   objections to limiting the production to iron ore mining.

23           Is that correct?

24           MS. BOWER:  Yes, with respect to the --

25           MR. LAZAROFF:  1B.