# EXHIBIT A



**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020
www.dlapiper.com

John Vukelj
john.vukelj@dlapiper.com
**T**   212.335.4502
**F**   212.884.8702

October 11, 2017

*VIA EMAIL*

Anne C. Reddy, Esq.
Greenberg Traurig LLP
MetLife Building
200 Park Avenue
New York, NY  10166

    Re:    *BSGR v. Soros, et al.*, No. 17 Civ. 02726 (S.D.N.Y.)

Dear Anne:

    We write in response to your September 20, 2017 letter, concerning the Responses and Objections of Nonparty Scott Horton to Plaintiffs' Subpoena for Production of Documents, dated September 8, 2017 (the "Responses"), and the subpoena served on Mr. Horton, dated July 17, 2017 (the "Subpoena").

    During our meet and confer discussion on September 13, you asked us to explain Mr. Horton's objections based on sovereign immunity, as well as his objections based on other privileges and immunities applicable to foreign and domestic actors that he asserted in the Responses. We offered an initial response during our conversation and write now to further explain the basis for Mr. Horton's objections, and to respond to your letter.

    **A.**  **The Subpoena Seeks Documents Subject to Protection Under the Republic of Guinea's Sovereign Immunity**

    The Subpoena seeks documents subject to the Republic of Guinea's common law conduct-based sovereign immunity, and therefore immune from production. As a foreign state, the Republic of Guinea enjoys sovereign immunity with respect to its internal and foreign affairs.

    Common law conduct-based immunity "extends beyond current and former government officials to individuals acting as an agent for the government," and "[i]t is 'well settled law that contractors and common law agents acting within the scope of their employment . . . have derivative sovereign immunity.'" *Moriah v. Bank of China, Ltd.*, 107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015) (granting conduct-based immunity from deposition subpoena to outside advisor to government of Israel); *see Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (recognizing "courts have extended derivative immunity to private contractors, 'particularly in light of the government's unquestioned need to delegate governmental functions'" (citation omitted)).

    In or about March 2011, the Republic of Guinea engaged DLA Piper LLP UK to assist

the Republic of Guinea with an investigation and related work concerning the Simandou concession, and Mr. Horton provided counsel to the Republic of Guinea as part of this engagement. As applied here, prevailing case law mandates that Mr. Horton is entitled to sovereign immunity because the Republic of Guinea delegated to him responsibilities within the Republic of Guinea's governmental functions – such as the investigation into the issues surrounding the Simandou concession. Accordingly, Mr. Horton cannot be compelled to make any response to the Subpoena to the extent that the Subpoena seeks documents or communications concerning acts performed within the scope of his investigatory function on behalf of the Republic of Guinea.

### B. Request No. 1

Request No. 1 seeks "[a]ll documents and communications" concerning (i) mining in Guinea and George Soros or OSF; or (ii) Your Communications with George Soros or OSF concerning the same . . . " This request essentially seeks any materials that relate to mining in Guinea and George Soros or OSF. While Mr. Horton objects to the breadth of this request, and we stated in the Responses that Mr. Horton would only produce non-privileged responsive documents that also relate to Steinmetz or BSGR, we agreed during the meet and confer to search for documents responsive to this Request regardless of whether the materials relate to Steinmetz or BSGR. Note, however, that both the Republic of Guinea and Mr. Soros are DLA Piper clients, and the Request, as worded, seeks privileged communications that create a burden in logging communications that would otherwise be subject to the attorney-client privilege. We propose, therefore, that Request No. 1 be limited to <u>non-privileged</u> documents and communications, similar to the limitations placed on Request Nos. 2 and 3, for which Mr. Horton has agreed to produce responsive materials that are not subject to an applicable privilege or immunity.

### C. Requests Nos. 5-8, 11

These Requests seek documents and communications shared with law enforcement agencies such as the Federal Bureau of Investigation, the United States Department of Justice, any "agency, part, or instrumentality of the United States government," or any "governmental agency investigating any of the issues or matters alleged or referred to in the Amended Complaint." As discussed above, Mr. Horton performed an investigative function on behalf of the Republic of Guinea, and to the extent that Mr. Horton exchanged documents or communications with government agencies he did so on behalf of, and at the direction of, the Republic of Guinea. Such communications, therefore, are entitled to common law sovereign immunity as discussed above. *See, e.g.*, *Moriah*, 225 F.3d at 277.

In addition, the requested documents are protected from disclosure based on the law



Anne C. Reddy, Esq.<br>
October 11, 2017<br>
Page Three

enforcement investigative privilege. That privilege prevents public disclosure of investigatory files and serves to preserve the integrity of law enforcement techniques and confidential sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals under investigation, and to prevent interference with the investigation. *See In re City of New York*, 607 F.3d 923, 948 (2d Cir. 2010). To the extent documents or communications were shared with government agencies, therefore, these materials were shared in furtherance of the law enforcement investigative privilege and are protected from disclosure.

Plaintiffs' attempt to seek discovery from Mr. Horton appears to be designed to circumvent privileges or immunities that may be directly asserted by governmental agencies. To our knowledge, Plaintiffs have not attempted to obtain materials directly from any of the government agencies identified in the Subpoena. We expect that the relevant U.S. governmental bodies would view the materials requested under these requests as protected from disclosure pursuant to the law enforcement investigative privilege and, accordingly, would object to their disclosure in this matter.

### D. Request No. 9

Request No. 9 seeks "Documents and Communications sufficient to identify any firms You or DLA Piper have engaged to assist in any investigation of BSGR or Steinmetz, including any private investigations or public relations firms." In response, Mr. Horton has stated that he "has not engaged any firm to assist in an investigation of BSGR or Steinmetz," and he objected to producing documents concerning DLA Piper's engagement of any such firms.

As noted in the Responses, and as we further explained during our call, Mr. Horton objects to the Subpoena in its entirety to the extent it also seeks materials from DLA Piper.[1] BSGR's demands on Mr. Horton are particularly objectionable in this regard considering the fact that BSGR has served a virtually identical subpoena on DLA Piper LLP (US), thereby rendering BSGR's demands that Mr. Horton identify, search, and produce the firm's documents duplicative, superfluous, and harassing. We recommend that BSGR table Request No. 9. To the extent that BSGR continues to insist that it is entitled to pursue full productions of DLA Piper's documents through Mr. Horton, particularly in light of the similar subpoena that you have served on DLA Piper LLP (US) directly, we would appreciate your providing us with legal authority to support its position.

---

[1] The Subpoena defines "DLA Piper" as "the international law firm DLA Piper, inclusive of DLA Piper International LLP and DLA Piper LLP, each of its divisions, subsidiaries, affiliates, controlled entities, joint ventures, related companies, predecessors, successors and assigns; and present and former officers, directors, partners, employees, agents, attorneys, accountants, and representatives of any of the entities listed above, and any other person who currently or formerly acted or purported to act on its behalf, or who is or has been subject to the direction or control of, any of the entities listed above." Mr. Horton objects to this broad definition of DLA Piper.



E. <u>Request No. 13</u>

Request No. 13 seeks "Documents and Communications sufficient to show the basis for" six statements attributed to Mr. Horton in various media publications. As we explained during the meet and confer, the selected quotations lack any context, and, in some cases, are derived from French-language publications.

Mr. Horton maintains his objection to producing documents responsive to Request No. 13 as you have constructed it. The various quotations lack context, and it is not clear whether the purported excerpts from assorted media reports are accurate quotations of Mr. Horton's words, or even whether the quotations are properly attributed to Mr. Horton. Further, the demand that Mr. Horton produce documents "to show the basis for" those purported statements is vague, overly broad, and places an undue burden on Mr. Horton.

Nevertheless, Mr. Horton has agreed to search for and produce non-privileged documents responsive to Request No. 10, which seeks "all Documents and Communications concerning Communications You have had with the press related to (i) BSGR; (ii) Beny Steinmetz; or (iii) Mining in Guinea . . ." Because each of the purported quotations attributed to Mr. Horton in Request No. 13 "concerns" either (i) BSGR, (ii) Beny Steinmetz or (iii) mining in Guinea, the materials sought in Request No. 13 would be responsive to Request No. 10. Mr. Horton also has agreed to search for and produce non-privileged documents and communications concerning: (i) George Soros and mining in Guinea (Request No. 1); (ii) BSGR and Steinmetz (Request No. 2); and (iii) mining in Guinea (Request No. 3). These requests appear to cover the documents sought by Request No. 13.

F. <u>Request No. 14</u>

Request No. 14 demands production of "All Documents and Communications concerning any funding, payments, reimbursement or other financial assistance or items of value You or DLA Piper have received or been promised concerning legal costs and fees in connection with Your or DLA Piper's representation of the Republic of Guinea . . . ." During the meet and confer, you explained that this request is related to Plaintiffs' position that Mr. Horton or DLA Piper are "agents" of George Soros, and you stated that this request does not seek privileged information, but rather factual information concerning payments to Mr. Horton or DLA Piper for legal costs and fees in connection with their representation of the Republic of Guinea from George Soros, the Open Society Foundation OSF, ALSF, or the International Senior Lawyering Project.

We have considered your Request further and will not agree to produce documents responsive to this Request. Mr. Horton has not received any funding, payments, reimbursements



Anne C. Reddy, Esq.<br>
October 11, 2017<br>
Page Five

or other financial assistance or items of value from Mr. Soros or OSF in connection with his representation of the Republic of Guinea. To the extent the Subpoena seeks to use Mr. Horton to access information belonging to DLA Piper or the Republic of Guinea, this request is inappropriate. As discussed above, Plaintiffs have served a virtually identical document demand upon DLA Piper LLP (US), rendering the duplicative request to Mr. Horton to identify, review, and produce documents on behalf of DLA Piper LLP (US) duplicative, superfluous, and harassing. Mr. Horton will not produce such information in response to the Subpoena.

Plaintiffs' efforts to use Mr. Horton to obtain DLA Piper's records are objectionable for the additional reason that BSGR is, in effect, subpoenaing opposing counsel. Although Mr. Horton and DLA Piper, as defined in the Subpoena, are not parties in this litigation, Plaintiffs' complaint lobs critical (but unfounded) accusations at them relating to their service as counsel for the Republic of Guinea or Mr. Soros. In addition, as you know, BSGR and the Republic of Guinea are parties to a pending arbitration proceeding relating to the Simandou concession, meaning Plaintiffs are in fact seeking documents from the law firm representing an adverse party. In the Second Circuit, seeking discovery from opposing counsel is disfavored. *See U.S. v. Yonkers Bd. of Educ.,* 946 F.2d 180, 185 (2d Cir. 1991). Mr. Horton objects to the extent that the Subpoena seeks to disrupt the attorney-client relationship between DLA Piper and its clients, or to impede its clients' ability to defend themselves.

### G. Date Range

The Subpoena demands documents dated between January 1, 2005 and the present. In his written responses and objections, Mr. Horton objected to that overly broad date range and agreed to produce responsive non-privileged documents dated between March 1, 2011, and April 14, 2017, which covers from the date shortly before the Republic of Guinea engaged DLA Piper LLP UK in connection with Simandou, until the date that Plaintiffs filed their complaint in this action. During our meet and confer discussion and in your follow-up letter, you requested that Mr. Horton reconsider and search for documents dating back to January 1, 2005, as demanded in the Subpoena. You represented that Defendants in this litigation have agreed to that date range for their review and production of documents. We have considered your request further and maintain that the date range in the Responses is appropriate. We are aware of no reasonable basis to believe that Mr. Horton will have relevant material from the six years preceding DLA Piper LLP UK's engagement by the Republic of Guinea, and the process of further identifying, gathering, processing, and searching for data preceding March 1, 2011, will cause unnecessary burden and expense.

### H. Privilege Log

During the meet and confer discussion, you demanded that Mr. Horton produce a



Anne C. Reddy, Esq.<br>October 11, 2017<br>Page Six

privilege log reflecting all documents withheld on the basis of any privilege or immunity.  In response, we suggested that a categorical privilege log would be a more appropriate approach in this case.  You stated that a categorical privilege log might be acceptable, and your September 20, 2017 letter states that you are willing to "alleviate" Mr. Horton's burden with regards to the preparation of a privilege log.  To the extent documents are produced in connection with the Subpoena, and given that Mr. Horton is an attorney and many of the requests seek documents that would implicate privileged communications with clients or other attorneys, we propose that Mr. Horton provide a categorical privilege log that identifies documents withheld on the basis of the law enforcement investigative privilege or any applicable immunity.

We believe that this limitation is consistent with your representation during our meet and confer that you are not seeking Mr. Horton's privileged communications, or seeking to require a law firm to log all of Mr. Horton's communications with its clients.  We do not believe, however, that the Subpoena, as served, is consistent with the spirit of your representation.  Only two of the fifteen requests are specifically limited to "non-privileged" communications, and the Subpoena seeks work files from Mr. Horton and the law firm he is associated with.  In any event, we appreciate that you view the Subpoena as not demanding privileged materials, and accordingly we will not be identifying materials withheld on the basis of the attorney-client privilege or work product doctrine, as those documents are non-responsive.

\*     \*     \*

Mr. Horton expressly preserves all objections and reserves all rights with respect to the Subpoena.  In particular, Mr. Horton continues to object to the Subpoena as overbroad and unduly burdensome to him, and to the extent it seeks documents that are not relevant to Plaintiffs' claims in this litigation.  Mr. Horton also maintains his objections that the Subpoena seeks information that is more appropriately sought or obtained from the parties to the litigation or from other sources, rather than from an attorney and the law firm he is associated with.  We have endeavored to work in good faith to respond to the Subpoena and will continue to do so, and we expect Plaintiffs to proceed in a manner that limits the burden on Mr. Horton.  In addition, we expect that Plaintiffs will shoulder this burden by contributing to the compliance costs of the Subpoena.  We are available to discuss any of the foregoing.

Sincerely,

John Vukelj