# EXHIBIT B



Anne Reddy
Tel 212.801.9211
Fax 212.309.9500
reddya@gtlaw.com

November 17, 2017

John Vukelj, Esq.
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020

Re:   *BSGR v. Soros, et al.*, Civil Action No. 1:17-cv-02726 (JFK) (AJP)

Dear John:

We write in further response to your letter of October 11, 2017 and Neal Kronley's email of November 3, 2017 concerning certain objections you have raised to the subpoenas issued to Scott Horton ("Horton"), dated July 17, 2017, and to DLA Piper LLP ("DLA Piper"), dated August 8, 2017 (together the "Document Subpoenas"). This letter shall not operate to waive any objection or to indicate acceptance of any limitation contained in your responses not addressed below. Plaintiffs reserve all their rights.

After reviewing your letter and the authorities cited therein, we fail to see the basis for the sovereign immunity or law enforcement privileges you purport to claim. In addition, we have reviewed DLA Piper's production of documents dated November 6, and note that even considering your objections, the production does not contain documents that would be non-privileged even were your assertions of privilege valid. Unless these issues are resolved, we intend to raise them at the next status conference before Magistrate Judge Peck, scheduled for November 27, 2017 at 2 pm, and we intend that this letter serve as notice of such.

### A. Foreign Sovereign Immunity is Not Implicated by the Document Subpoena

Your letter claims the "Republic of Guinea's common law conduct-based sovereign immunity" extends to the Document Subpoenas. There is no basis for applying that immunity to production of documents in response to a subpoena as you are trying to do here. In fact, your letter does not cite a single authority that supports application of common law sovereign immunity to a document subpoena issued to a non-party. *Moriah v. Bank of China, Ltd.*, 107 F. Supp. 3d 272 (S.D.N.Y. 2015), applied common law sovereign immunity in the context of efforts to compel *testimony* from an agent of a foreign state. Even farther afield, *Butters v. Vance Int'l, Inc.*, 225 F.3d 462 (4th Cir. 2000), applied the FSIA to a *lawsuit* brought directly against an agent of the American government. Neither case has anything to do with a third party document subpoena, nor

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN¬
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SEOUL∞
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TOKYO¤
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

¬ OPERATES AS
   GREENBERG TRAURIG GERMANY, LLP
* OPERATES AS A
   SEPARATE UK REGISTERED LEGAL ENTITY
+ OPERATES AS
   GREENBERG TRAURIG, S.C.
∞ STRATEGIC ALLIANCE
~ OPERATES AS
   GREENBERG TRAURIG LLP
   FOREIGN LEGAL CONSULTANT OFFICE
^ A BRANCH OF
   GREENBERG TRAURIG, P.A.,
   FLORIDA, USA
¤ OPERATES AS
   GT TOKYO HORITSU JIMUSHO
- OPERATES AS
   GREENBERG TRAURIG GRZESIAK SP.K.

November 17, 2017
Page 2

have we located a single case applying common law foreign sovereign immunity to a third party document subpoena.

Additionally, in the domestic context, many courts have explicitly rejected invitations to apply sovereign immunity to non-party document subpoenas. *See Velasco v. Indonesia*, 370 F.3d 392, 398–99 (4th Cir. 2004) ("[derivative] foreign sovereign immunity models federal common law relating to derivative U.S. sovereign immunity"). For example, in *U.S. v. Juvenile Male 1*, the court noted that "it can hardly be contended that federal or state sovereign immunity from suit has any application to the enforcement of a federal subpoena." 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006). The court added further: "[f]ederal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity." *Id.* Indeed, "[e]ven the President of the United States must comply with a federal subpoena." *Id.* (citing *U.S. v. Nixon*, 418 U.S. 683, 713 (1974)); *see also Grand Canyon Skywalk Dev., LLC v. Cieslak*, 2016 WL 890921, at *1 (D. Nev. Mar. 7, 2016) (rejecting objections from tribal officer to document subpoena based on tribal immunity).

### B. Even if Common Law Foreign Sovereign Immunity Applied to a Document Subpoena, Neither Horton Nor DLA Piper are Eligible for Any Immunity

As *Moriah* and the cases it relies on make clear, any foreign immunity the Republic of Guinea or its agencies or instrumentalities enjoy is governed by the Foreign Sovereign Immunities Act ("FSIA"), which applies only to the sovereign and not to foreign officials or—even more removed—their agents or contractors. *See* 28 U.S.C. §§ 1603-1604; *Samantar v. Yousuf*, 560 U.S. 305, 313 (2010) (clarifying scope of FSIA as superseding common law immunity for claims against foreign states). To the extent DLA Piper or Horton relies on the common law of foreign sovereign immunity, courts apply a two step procedure to assess such a claim. *See Moriah,* 107 F. Supp. 3d at 276. The first step requires that the foreign official obtain a "suggestion of immunity" from the State Department. DLA Piper does not contend that it—or a Guinean official on its behalf—has contacted the State Department.

Where the first step is not met, the second step requires the court to assess whether, absent a response from the State Department, "the ground of immunity is one which it is the established policy of the State Department to recognize." *Moriah*, 107 F. Supp. 3d at 276. DLA Piper and Horton rely on a derivative of the sovereign immunity privilege for agents and contractors of foreign officials acting at the direction of the sovereign. Not only does this assertion require DLA Piper and Horton to meet their initial burden of demonstrating that they are agents of Guinea; it also requires DLA Piper and Horton to show that they did not exercise any discretion in carrying out any acts they claim fall under this privilege.

Derivative sovereign immunity is a "narrow, judicially-created expansion of foreign sovereign immunity." *See Velasco*, 370 F.3d at 398-99. It was first delineated in the context of the domestic government contractor defense by the Supreme Court in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940). There, "[t]he Court limited the applicability of the defense to principal-agent relationships where the agent had no discretion." *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008) (summarizing *Yearsley*); *accord Boyle v. United Techs. Corp.*, 487 U.S. 500, 525 (1988) (Brennan, J., dissenting) ("*Yearsley* [] has never

November 17, 2017
Page 3

been read to immunize the discretionary acts of those who perform service contracts for the Government"). More recently, in *Bixby v. KBR, Inc.*, the district court found that if the agent "***is allowed to exercise discretion in determining how the task should be accomplished . . . the contractor is not entitled to derivative sovereign immunity***, because the harm can be traced, not to the government's actions or decisions, but to the contractor's independent decision." 748 F. Supp. 2d 1224, 1242 (D. Or. 2010) (emphasis added).

The factors that led to the application of derivative immunity in the lone two cases cited in your letter, *Butters* and *Moriah*, did not involve such discretion. Rather, both of these cases involved single, discrete, actions taken by an agent at the direct request of a sovereign. In *Moriah*, the specific act at issue, a phone call, was performed "solely because the National Security Officer made a request" that the call be made. 107 F. Supp. 3d at 278. In *Butters*, the 4th Circuit affirmed the district court's finding of derivative sovereign immunity where the agent was "acting under the direct military orders of Colonel Mohammed" in terminating an employee. 225 F. 3d at 465. Notably, the *Butters* court, in response to the argument from the Plaintiff that "Vance, not Saudi Arabia, actually made the decision not to promote Butters" noted that "if this were the case, Vance would not be entitled to derivative sovereign immunity under the FSIA." 225 F. 3d 462 at 466.

Thus, even if DLA Piper and Horton could meet their initial burden of demonstrating that they are agents of Guinea – they cannot – the conduct of DLA Piper and Horton goes far beyond dutifully carrying out non-discretionary orders upon request from Guinea. In fact, the conduct alleged in the Amended Complaint was not requested by Guinea at all, but instead requested by the *Defendants* and/or performed by Horton and DLA Piper at their own behest in order to harm Plaintiffs. For instance, the Amended Complaint, attached as Exhibit A to the Document Subpoenas, alleges:

> DLA Piper was both the author of the report and advising the Technical Committee in its investigatory role that resulted in the Allegations Letter. In other words, it wrote the report and then controlled how the conclusions in that report would be used by the Technical Committee in the Allegations Letter. Pursuant to defendants' scheme, DLA Piper thus had control over both sides of the "investigation."

Dkt. No. 22 ¶ 116. To the extent DLA Piper or Horton's conduct was bounded at all, it was only bounded by the Defendants, not Guinea. Indeed, Guinean officials have admitted that they had no ability to supervise or oversee the work of Horton or DLA Piper. *See id.* ¶ 99. Thus, the harm to the Plaintiffs "can be traced not to the [Guinean government]'s actions or decisions, but to [Horton's and DLA Piper's] independent decision[s]." *Bixby*, 748 F. Supp. 2d at 1243. Moreover, any supposed derivative sovereign immunity cannot immunize DLA Piper and Horton for their own tortious conduct as is alleged in the Amended Complaint (AC ¶¶ 79, 106, 108, 140). *See Cabalce v. VSE Corp.*, 922 F. Supp.2d 1113 (2013), *citing City of Worcester v. HCA Mgmt. Co.*, 753 F. Supp. 31, 38-39 (D. Mass. 1990) (reiterating that *Yearsley* does not apply "when a private corporation who performs governmental duties pursuant to contractual authority from the government is sued for negligence in the performance of these duties" … or where "the harm was caused by the private party's own tortious conduct."). Accordingly, even if common

November 17, 2017
Page 4

law foreign sovereign immunity applied to the Document Subpoenas, there would still be no basis to apply derivative foreign sovereign immunity to DLA Piper or Horton.

### C. The Law Enforcement Investigatory Privilege Does Not Apply

Your letter also claims that the "law enforcement investigative privilege" shields many of the documents from disclosure. Even to the extent such a privilege exists, neither Horton nor DLA Piper has the right to assert the law enforcement investigatory privilege because they are not the affected governmental body. Rather, in order to properly assert the privilege, "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988); *see also DGM Investments, Inc. v. New York Futures Exch., Inc.*, 224 F.R.D. 133, 139-40 (S.D.N.Y. 2004). To support an objection to a discovery request based on this privilege, the governmental body asserting the privilege must further provide a declaration or affidavit from a responsible official within the affected agency who has personal knowledge of the matters to which he or she is attesting. *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987). Significantly, any affidavit that Horton or DLA Piper might seek to submit in lieu of the required governmental affidavit would be ineffectual here as it "***is essential that the affidavit come from an official in the affected agency***." *Id.* (emphasis added).

Your letter makes no reference to any such declaration or affidavit from the FBI, DOJ or any applicable agency. Your speculation as to how the governmental bodies might react to the disclosure of such information (*see* Letter at 3) is insufficient. Rather, the affected governmental body must actually assert the privilege. Accordingly, your assertion of the privilege on behalf of either Horton or DLA Piper is improper and invalid.

Plaintiffs additionally reserve their rights with respect to whether DLA Piper or Horton, Guinea, or any other entity, has waived any privilege or immunity that they might purport to claim, including with respect to materials provided to Guinea that were incorporated or otherwise relied on in taking official action to Plaintiffs' detriment.

### D. DLA Piper's Document Production Is Deficient

DLA Piper held back its document production until November 6, based on Defendants' objection to the scope of the Protective Order entered by Judge Peck on August 24. Although given this additional time to gather and prepare responsive documents for production, DLA Piper's production does not appear to contain documents responsive to the following requests, which were designed to avoid attorney client privileged communications and do not directly implicate the sovereign immunity or investigative privileges discussed above (even if they applied, and to the extent not waived):

- Documents and Communications concerning (i) mining in Guinea and George Soros or OSF; or (ii) Your Communications with George Soros or OSF concerning the same, including all Documents and Communications sufficient to show the basis for George

November 17, 2017
Page 5

       Soros and Open Society Foundations' statement that You and Scott Horton were not "'agents' of Soros" during the Relevant Period (Req. 1);

- All Documents and Communications concerning any payments made, directly or indirectly, to Mamadie Touré or any person associated with Mamadie Touré, including Matinda (Req. 4);

- Documents and Communications sufficient to identify any firms You or Scott Horton have engaged to assist in any investigation of BSGR or Steinmetz, including any private investigations or public relations firms (Req. 9);

- Documents and Communications sufficient to show Your prior engagements performed for, in conjunction with, on behalf of, or paid for by Soros or OSF (Req. 12);

- All Documents and Communications concerning exporting of ore from Guinea through Liberia, including Documents and Communications concerning Scott Horton's statement (informally translated from French) to Alpha Mohammed Conde that "it is extremely important that this story does not come out" (*see Jeune Afrique*, "Titan Iron Arms Around a Giant Mine") (Req. 13);

- Documents and Communications sufficient to show the basis for statements Scott Horton has made about BSGR or that have been attributed to Scott Horton in numerous international communications (Req. 14).

Please produce these documents immediately.

Finally, we have not been able to locate within the production a copy of DLA Piper's or Horton's engagement letter(s) with Guinea or with anyone else (including Veracity) related to this matter. Please produce copies immediately or direct us to where they have been produced.

Very truly yours,

*Anne C. Reddy*