# EXHIBIT 1

INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

**BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL**

v.

**Republic of Guinea**

**(ICSID Case No. ARB/14/22)**

---

**PROCEDURAL ORDER No. 14**

**Document Inspection**

Professor Gabrielle Kaufmann-Kohler, President of the Tribunal
Professor Albert Jan van den Berg, Arbitrator
Professor Pierre Mayer, Arbitrator

*Secretary of the Tribunal*
Mr. Benjamin Garel

*Assistant to the Tribunal*
Dr. Magnus Jesko Langer

---

28 August 2017

Case 1:17-cv-02726-JFK-OTW   Document 148-1   Filed 06/15/18   Page 3 of 13

*BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL*
*v. Republic of Guinea (ICSID Case No. ARB/14/22)*
Procedural Order No. 14

**I.     Procedural background**

1. In their written submissions and during the hearing held in Paris between 22 May and 1 June 2017, the Claimants have alleged that the following documents are forgeries:[1]

**Table 1**

| Document | Date | Exhibit |
|---|---|---|
| (i)     BSGR Guinea/Matinda Protocol | 20 June 2007 | Exh. R-27 |
| (ii)    BSGR Guinea/Matinda Protocol | 27 February 2008 | Exh. R-28 |
| (iii)   BSGR Guinea/Matinda Protocol | 28 February 2008 | Exh. R-29 |
| (iv)   « Attestation de cession d'actions de Mme Touré à BSGR » | 2 August 2009 | Exh. R-269 |
| (v)    Payment Letter Pentler/Ms. Touré | 8 July 2010 | Exh. R-30 |

2. During the hearing, the Claimants further alleged that the authenticity of the following documents is doubtful:

---

[1] By letter of 26 June 2017, the Claimants took issue with the Tribunal's description in paragraph 2 of Procedural Order No. 11 (PO11) that the Claimants alleged that all 11 documents listed there were forgeries. According to the Claimants, they only alleged that documents (iv) to (viii) listed in paragraph 2 of PO11 were forgeries. With respect to the remaining documents, the Claimants stated that "the matters raised during the hearing as to the provenance and custody of these contracts, and the cross-examination of Mr Tinkiano, have raised much doubt in relation to these contracts as well, such that (as agreed by the Tribunal) a forensic review of these contracts is likely to be of immense evidentiary value" (Claimants' letter of 26 June 2007, pp. 1-2). This distinction is now reproduced in tables 1 and 2 of this Order.

Case 1:17-cv-02726-JFK-OTW   Document 148-1   Filed 06/15/18   Page 4 of 13

*BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL*
*v. Republic of Guinea (ICSID Case No. ARB/14/22)*
Procedural Order No. 14

**Table 2**

| Document | Date | Exhibit |
|---|---|---|
| (vi)    Pentler/Ms. Touré Protocol | 20 February 2006 | Exh. R-24 |
| (vii)   Engagement Letter N° 1 Pentler/ Ms. Touré | undated, legalized 21 July 2006 | Exh. R-25 |
| (viii)  Engagement Letter N° 2 Pentler/ Ms. Touré | undated, legalized 21 July 2006 | Exh. R-26 |
| (ix)    Pentler/Matinda Contract | 3 August 2010 | Exh. R-31 |
| (x)     Pentler/Matinda/Ms. Touré Contract | undated | Exh. R-32 |
| (xi)    Pentler/Matinda Contract | 3 August 2010 | Exh. R-346 |

3.  At the end of the hearing, the Tribunal advised the Parties that it intended to appoint an expert to conduct a forensic inspection of the 11 documents listed in Tables 1 and 2 above (the "Disputed Documents").

4.  On 7 June 2017, the Tribunal issued Procedural Order No. 11 setting up the first procedural steps to put in place the document inspection, including information related to the chain of custody, the identification of a Tribunal-appointed expert and the preparation of the expert's draft Terms of Reference.

5.  On 12 June 2017, the Respondent informed the Tribunal and the Claimants that the FBI would in principle accept to make the Disputed Documents in its possession accessible for document inspection, subject to the following conditions:

    (i)   That access by a Tribunal-appointed expert to FBI premises would be more easily granted if the request were submitted in the framework of inter-State cooperation;

    (ii)  That the request for access designate the Tribunal-appointed expert, as well as any third parties attending the document inspection, such as Tribunal members,

Case 1:17-cv-02726-JFK-OTW   Document 148-1   Filed 06/15/18   Page 5 of 13

*BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL
v. Republic of Guinea (ICSID Case No. ARB/14/22)*
Procedural Order No. 14

the Secretary or the Assistant, Party representatives, counsel and Party-appointed experts;

(iii) That the Tribunal-appointed expert be a U.S. citizen and have previous and verifiable experience and expertise in procedures before US federal jurisdictions; and

(iv) That the inspection be undertaken on FBI premises, that it be in principle non-invasive and non-destructive, and that it be subject to prior approval of method required to accomplish the expert's mission.[2]

6. In Procedural Order No. 12 dated 14 July 2017, the Tribunal took note that the Claimants did not object to the Respondent's proposed course of action and stated that it would revert to the Parties with directions in due course. At the same time, the Tribunal instructed the Parties that communications, if any, with the US authorities in respect of the inspection of the Disputed Documents should be subject to prior leave of the Tribunal, unless circumstances were to make prior leave impossible or impractical.

7. Considering the Parties' representations that (allegedly) original versions of all documents listed in Tables 1 and 2 above were in the custody of the FBI, except for exhibits R-30 and R-346, the Tribunal requested in Procedural Order No. 12 that the Parties clarify if best available copies of exhibits R-30 and R-346 were available for inspection. On 31 July 2017, the Parties informed the Tribunal that they were not in possession of or otherwise have any information in relation to the original versions of these exhibits, nor that they were in possession of best available copies.

8. On 26 June 2017, the Centre contacted a number of forensic document examination experts to ascertain their qualifications and availability, as well as the existence of potential conflicts of interest. On 20 July 2017, after having thoroughly reviewed the various candidates, the Tribunal proposed Messrs. Todd Welch and Gerald LaPorte from Riley, Welch, LaPorte and Associates Forensic Laboratories as independent forensics experts to the Parties, attaching their *curricula vitae* and schedule of fees.

---

[2] See letter of 12 June 2017 from the Respondent to the Tribunal.

Case 1:17-cv-02726-JFK-OTW   Document 148-1   Filed 06/15/18   Page 6 of 13

*BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL*
*v. Republic of Guinea (ICSID Case No. ARB/14/22)*
Procedural Order No. 14

Although the Parties had an opportunity to comment by 28 July 2017, no comments were received, which the Tribunal understood as meaning that the Parties have no objections to the appointment of the experts proposed.

9. Accordingly, on 1 August 2017, the Tribunal appointed Messrs. Welch and LaPorte as experts (the "Experts").

10. On 21 August 2017, the Tribunal held an initial telephone conference with the Experts to inquire about the modalities of performance of the Experts' mandate and to prepare draft Terms of Reference ("ToR").

11. These draft ToR are transmitted to the Parties as Annex 1 to this Procedural Order No. 14. The Parties are invited to submit their observations, if any, on these draft ToR by **5 September 2017**.

12. Once finalized, the ToR will be signed by the Experts and transmitted in final form to the Parties.

## II. The Experts' mandate

13. The Experts' mandate is described in the draft ToR, which are attached as Annex 1.

## III. Document Inspection

### 1. Additional information on the Disputed Documents

14. By **5 September 2017**, the Parties shall identify:

   (i) the persons, other than Mamadie Touré, whose signatures appear on exhibits R-30 to R-32 and R-346;

   (ii) the documents in the record which bear signatures of the individuals whose signatures appear on the Disputed Documents.

Case 1:17-cv-02726-JFK-OTW   Document 148-1   Filed 06/15/18   Page 7 of 13

*BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL*
*v. Republic of Guinea (ICSID Case No. ARB/14/22)*
Procedural Order No. 14

15. By **18 September 2017**, the Parties shall file:

    (i) originals, if possible, or best available copies of the documents mentioned in paragraph 14(ii) above;

    (ii) originals, if possible, or best available copies of documents not currently in the record, containing contemporaneous (i.e. +/- 6 months) signatures of the individuals whose signatures appear on the Disputed Documents;

    (iii) the original stamps, if possible, used on the Disputed Documents, except for the stamps of the Court of Conakry, which, in the Tribunal's understanding, are not challenged.

   **2. Logistics of the document inspection**

16. The Respondent is invited to request the US authorities to approve the conduct of the document inspection on the FBI premises on the basis of the conditions set out in paragraph 5 above. The Respondent shall copy its correspondence to ICSID and the Claimants and shall report on the status of its request by **18 September 2017**.

17. By **18 September 2017**, the Parties are invited to state whether they intend to retain party-appointed forensic experts, and if so, if they wish them to attend the inspection or only to comment on the Tribunal Experts' report.

18. The logistics of the document inspection (including date, place, attendance and modalities of the inspection) will be addressed in a separate procedural order.

**IV. Fees and expenses of the Experts**

19. To cover the expected fees and expenses of the Experts, the Centre shall call for an initial advance of USD 40,000 and shall later pay the Experts upon presentation of invoices in due form.

20. The fees and expenses of the Experts will be considered part of the costs of the arbitration.

Case 1:17-cv-02726-JFK-OTW   Document 148-1   Filed 06/15/18   Page 8 of 13

*BSG Resources Limited, BSG Resources (Guinea) Limited and BSG Resources (Guinea) SARL*
*v. Republic of Guinea (ICSID Case No. ARB/14/22)*
Procedural Order No. 14

On behalf of the Tribunal

[SIGNED]

_____
Gabrielle Kaufmann-Kohler
President of the Tribunal

ANNEX 1

DRAFT TERMS OF REFERENCE FOR TRIBUNAL-APPOINTED FORENSIC EXPERTS

I.    **Procedural Background**

1.   Pursuant to Article 43(b) *in fine* of the ICSID Convention, Article 34(2)(b) *in fine* of the ICSID Arbitration Rules, paragraph 25 of Procedural Order No. 1 in combination with Article 6(1) of the IBA Rules on the Taking of Evidence (2010), and paragraph 17 of Procedural Order No. 11, the Tribunal issues these Terms of Reference.

2.   On 1 August 2017, the Tribunal has appointed Messrs. Todd Welch and Gerald LaPorte, who have accepted on the same day, to act as Experts on document authenticity in ICSID Arbitration ARB/14/22.

II.   **Responsibilities of the Experts**

3.   The Experts' mandate is to assist the Tribunal in ascertaining the authenticity of the Disputed Documents in the table below (the "Table"):

| Document | Date | Exhibit |
|---|---|---|
| (i)    Pentler/Ms. Touré Protocol | 20 February 2006 | Exh. R-24 |
| (ii)   Engagement Letter N° 1 Pentler/ Ms. Touré | undated, legalized 21 July 2006 | Exh. R-25 |
| (iii)  Engagement Letter N° 2 Pentler/ Ms. Touré | undated, legalized 21 July 2006 | Exh. R-26 |
| (iv)   BSGR Guinea/Matinda Protocol | 20 June 2007 | Exh. R-27 |
| (v)    BSGR Guinea/Matinda Protocol | 27 February 2008 | Exh. R-28 |
| (vi)   BSGR Guinea/Matinda Protocol | 28 February 2008 | Exh. R-29 |

| | | |
|---|---|---|
| (vii)   « Attestation de cession d'actions de Mme Touré à BSGR » | 2 August 2009 | Exh. R-269 |
| (viii)  Payment Letter Pentler/Ms. Touré | 8 July 2010 | Exh. R-30 |
| (ix)    Pentler/Matinda Contract | 3 August 2010 | Exh. R-31 |
| (x)     Pentler/Matinda/Ms. Touré Contract | undated | Exh. R-32 |
| (xi)    Pentler/Matinda Contract | 3 August 2010 | Exh. R-346 |

4. The Experts shall undertake a full forensic analysis of the Disputed Documents.

5. The Experts shall inspect the original versions, where available, of the Disputed Documents in a dedicated room (the "Inspection Room") at a time, date and location which the Tribunal will specify in due course.

### III. Guidance and instructions

6. The Experts shall discharge their mandate under the guidance of and instructions from the Tribunal.

7. The Experts may at any time request clarifications from the Tribunal on any matter relating to the Experts' mandate and Terms of Reference and the Tribunal may at any time communicate with the Experts to obtain clarifications or updates on their mandate.

8. Subject to leave from the Tribunal, the Experts are entitled to request from the Parties any other information necessary to conduct the document inspection.

### IV. Documents available to the Experts

9. The Experts shall have access to the following documents and material:

    a. Original versions of the Disputed Documents, wherever available;

    b. Copies of the Disputed Documents;

      c. To the extent possible, original versions, or else best available copies of comparator documents; and

      d. To the extent possible, the original stamps used on the Disputed Documents (except for the stamps of the Court of Conakry used by Mr. Tinkiano).

10. The Experts and the Parties may request that other materials on record be submitted to the Experts. In case of disagreement, the Tribunal will decide in its discretion whether to grant such request, it being understood that this phase is limited to a forensic analysis of the Disputed Documents.

## V. Inspection techniques

11. The Experts will use inspection techniques in accordance with accepted industry practice.

12. In principle, the inspection techniques shall be non-invasive and non-destructive. That said, any ink testing procedure will require a minimally invasive examination, which will not jeopardize the integrity or legibility of the documents.

13. The Experts shall bring all the necessary equipment to the inspection allowing them to perform the forensic analysis of the Disputed Documents.

14. When conducting the inspection on the FBI premises, the Experts shall conform to the instructions given by the FBI agent(s) in charge.

## VI. Communications

15. The Experts shall have no *ex parte* communication with the Parties. Outside of the document inspection, the Experts shall communicate in writing, with copies to the Parties and the Centre.

16. During the document inspection, the Experts shall communicate with the representative of the Tribunal. If it becomes necessary for the Experts to communicate with the Parties, they shall do so through the intermediary of the Tribunal representative. In no event shall the Experts communicate their opinion or findings resulting from the forensic analysis to the Parties.

### VII.   Report

17. The Experts shall submit a preliminary version of their Report to the Tribunal within 45 days of the document inspection (the "Preliminary Report"). This period may be extended by the Tribunal upon a reasoned request of the Experts.

18. The Experts shall set out their methodology and findings and provide reasons for their findings enabling the Tribunal to understand the grounds on which the Experts base their conclusions.

19. After reviewing the Preliminary Report and asking and receiving further clarifications, if any, the Tribunal will give the Parties an opportunity for written comments within 15 days.

20. The Experts shall consider the Parties' comments, if any, and submit a final version of the Report (the "Final Report") to the Tribunal within 15 days, which the Tribunal shall then forward to the Parties.

21. The Parties may then file written comments on the Final Report within 30 days.

### VIII.   Authenticity Hearing

22. In consultation with the Parties, the Tribunal will decide in due course whether to hold a hearing to address the authenticity of the Disputed Documents and examine the Experts and, possibly, any Party-appointed expert (the "Authenticity Hearing").

### IX.   Independence of the Experts

23. The Experts hereby confirm that they are independent of the Parties to the arbitration. They also confirm that they will refrain from involvement in other proceedings relating to the subject matter of the present arbitration and, for the duration of these proceedings, in proceedings involving the Parties.

### X.   Confidentiality

24. The Experts shall keep confidential all information to which they become privy in the course of their mandate.

**XI.    Fees and expenses**

25.  The Experts shall be compensated at an hourly rate of USD 450 (plus VAT, if applicable). They expect to be able to inspect the 11 Disputed Documents (comprising 20 pages) in the course of a maximum of 4 days, including half a day to set up and half a day to disassemble equipment. Following the inspection, the Experts will provide an estimate of hours needed for their report (without time required for the Authenticity Hearing, if any).

26.  The Experts shall be reimbursed for all reasonable out of pocket expenses, including for accommodation and travel to and from the document inspection and the Authenticity Hearing.

**XII.   Amendment of Terms of Reference for Experts**

27.  These ToR may be amended or supplemented at a later time upon agreement of the Parties or by an order by the Tribunal after consultation with the Parties, including on the request of the Experts.

[DATE]

On behalf of the Tribunal

_____<br>Gabrielle Kaufmann-Kohler<br>President of the Tribunal

Accepted:                               The Experts

[DATE]

_____    _____
       Todd Welch                           Gerald LaPorte