

**Louis M. Solomon**
Direct Phone:  +1 212 549 0400
Email:  Lsolomon@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
Tel +1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

July 21, 2020

Honorable John F. Keenan
United States District Court
Southern District of New York
500 Pearl Street, Room 1930
New York, New York 10007-1312

> BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and
> BSG Resources Limited (in administration) v. Soros, et al.,
> Civil Action No. 1:17-cv-02726

Dear Judge Keenan:

On behalf of Plaintiffs in this action, we write pursuant to the Court's order of May 27, 2020 (Dkt. 163) and in response to Defendants' letter of July 14, 2020.  We respectfully believe that the Court should lift the stay that has stayed all aspects of this litigation for over 30 months.  However, our client has told us, in the past 48 hours, that certain issues have arisen concerning the financing of this litigation by the BSGR entity currently in administration and that as a result they believe they need another 90 days in order to proceed with the case.  Accordingly, despite our belief that the stay should be lifted immediately, we respectfully request that the Court lift the stay with an effective date 90 days from today, October 19, 2020.  This will allow some more time to satisfy the concerns expressed by Defendants (assuming arguendo that after 30 months those concerns are legitimate) and will allow our client the appropriate time to either resolve the issues concerning financing or to find alternative sources of financing.  We explain below the reasons why we believe the stay should be lifted and why there is no basis for any of Defendants' arguments.

We understand the Court's reasons for granting the stay in 2017, and, given the Court's stay, Plaintiffs have at times in the past 30+ months consented to its continuance.  But as we feared, staying the case to await the results of an international arbitration had the effect of subjecting this case to the vagaries of that other proceeding.  Any arguable reason to wait has now passed.  Indeed, the passage of time, as well as an event that Defendants have not called to Your Honor's attention (discussed in Second, p. 2 *infra*), have underscored the compelling reasons to move this case to and through discovery and to trial as expeditiously as the Court can accommodate.  Plaintiffs are now entitled to the benefit of this Court's "unflagging obligation" to proceed with this case absent the most extenuating circumstances, which do not exist.  There are quite compelling reasons to lift the stay.

On November 29, 2017, the Court stayed this action "pending the outcome of the Arbitration between Plaintiffs and Guinea" (the "ICSID Arbitration") (Dkt. 136 at 14).  In granting the stay, the Court believed that the ICSID Arbitration would "proceed in a reasonable time" (*id.* at 13).  The Court directed a report by June 15, 2018 "or when there has been a decision in the Arbitration, whichever is earlier" (*id.* at 14).  The contemplation at the time was that the ICSID Arbitration would be resolved in a matter of 6-7 months.

Hon. John F. Keenan
July 21, 2020
Page 2

More than 30 months have now passed; the ICSID Arbitration has not been resolved; witnesses are getting older; memories are fading. Mr. Soros, the principal defendant here, is approaching ninety years old. As Defendants' letter describes, there are numerous other proceedings related (more or less) that have continued; this is the only one that has been stayed.

**<u>The Court Should Lift the Stay for All Purposes</u>**

There are at least four compelling reasons why a stay is no longer even arguably in the interests of justice:

First, the Court's stay order indicated a belief that the ICSID Arbitration was soon to be decided and could resolve important issues here. Since that time, the parties to the ICSID Arbitration reached a provisional settlement, in March 2019. It is contemplated, as a result, that the very predicate of the stay order in this action is not only absent but that waiting for the ICSID Arbitration is like Waiting for Godot. Defendants point out that the ICSID settlement has not been finalized. That is correct – but it is no reason to wait. The settlement between Guinea and certain BSGR entities involves a business deal for which extensive mining and site analysis in Guinea has been required. That analysis is taking the time it is taking – and the COVID-19 pandemic with attendant severe restrictions on travel have only slowed things further. If, as the parties to that proceeding contemplate and are working towards, the ICSID Arbitration finally settles, that litigation will not provide any "determination of key issues in the Arbitration" (*id.* at 11). The whole basis for the stay – the imminent issuance of a decision on related issues – has disappeared. Defendants concede as much and raise different issues in their letter, which we address below. Defendants cannot carry their "'heavy burden'" of establishing that continued delay "'will not work undue hardship.'" *Donjon Marine Co. v. Water Quality Ins. Syndicate*, 523 Fed. App'x 738, 740 (2d Cir. 2013) (denying stay).

Second, even if the ICSID Arbitration does not ultimately settle, it remains more likely than not that that arbitration will not provide any determinations dispositive of the issues in this case, which involves a wholly different, unrelated defendant. This is so, not just for the reasons we have previously argued in our original 2017 opposition to Defendants' motion (Dkt. 68 at 29-30, *i.e.*, the causes of action are not the same, elements of the claims are not the same, there is no necessary factual identity, no showing that the legal standards, evidentiary and procedural rules are the same). But, also, since the time the Court entered the stay, there has been an important event in another proceeding that bears directly on whether any assumed outcome in the ICSID Arbitration would ever be found to be preclusive of issues here. On March 30, 2020, the Guinean government dropped criminal charges against six individuals (Mamadie Touré, Ibrahima Sory Touré, Issiaga Bangoura, Mahmoud Thiam, Aboubacar Bah and Ismaël Daou) who had previously been charged with corruption related to BSGR's obtaining its mining rights in Guinea (Exhibit 1 is a copy of a French article found at http://mosaiqueguinee.com/affaire-bsgr-ist-mamadie-toure-issiaga-bangoura-et-cie-disculpes-par-le-tpi-de-kaloum/ together with a Google translation of the same article). As a result, the Conakry Court of Appeal in Guinea found that "this withdrawal implies that, following the investigations into the case brought before the court, the Public Prosecutor's Office *has no evidence that could lead the court to convict the defendants*"; as a result, in the Guinea court, the defendants were found to be "not guilty" (Exhibit 2, a copy the judgment from the court in Guinea together with a translation of that judgment, at 4) (emphasis added). This determination has dispositive significance not only to the application to stay but to Defendants' motion to dismiss. The

Hon. John F. Keenan
July 21, 2020
Page 3

upshot of the dropping of the charges in Guinea can be only one of three things: 1) even if the settlement of the ICSID Arbitration is not finalized, Guinea will nonetheless abandon its claims against BSGR as it did against these six defendants; or 2) Guinea will lose the ICSID Arbitration since there is no evidence of the very bribery that Defendants here claim is at the heart of that arbitration; or 3) even if Guinea miraculously prevails in the ICSID Arbitration, the existence of such radically inconsistent findings between the results reached by the court in Guinea and the ICSID Arbitration will be a weighty factor in denying any preclusive effect to that arbitration. *See* Restatement (Second) of Judgments § 29(4), cmt. f. ("Giving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct. Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted."). In any of the three outcomes there is no longer any basis to believe that staying this action for the ICSID Arbitration makes sense or is in the interests of justice.

Third, there has been another proceeding that renders it much less likely that this Court will deny BSGR its day in Court because of an imagined ICSID Arbitration award. That relates to the decision in the LCIA proceeding from which Defendants selectively quote a few paragraphs – from a decision consisting of over 1,000 paragraphs and over 280 pages ("LCIA Award", *Vale, S.A. v. BSG Resources Ltd.,* No. 19-cv-3619-VSB (S.D.N.Y) Dkt 4-1). We address Defendants' contention regarding that decision below. Here it suffices to observe that the decision in the LCIA proceeding included findings completely at odds with many of Defendants' position here, including findings that Vale had not proven its allegations of corruption and bribery against BSGR concerning Mohammed Thiam (LCIA Award ¶ 667), President Conté (LCIA Award ¶ 675), and five alleged episodes of bribery with Mamadie Touré (LCIA Award ¶¶ 593-601, 605-625). As a result, the existence of the LCIA decision is another reason *not to* accord any inconsistent imagined determination in the ICSID Arbitration any preclusive effect.

Finally, we appeal to the Court's sense of appropriateness in making the discretionary balance inherent in a stay. On the one hand we have the *possibility* that if we wait long enough something *might* happen in the ICSID Arbitration that *might* later be found to preclude *some* of the claims here. On the other hand, we have clear and present, severe prejudice to Plaintiffs who have been damaged and harmed by Defendants, and who have the right to proceed with a case now stayed for more than 30 months. The longer the stay, the more damage occurs and the harder it will be to gather necessary evidence. *See, e.g., Chang v. Lin,* 824 F.2d 219, 222 (2d Cir. 1987) (hardship includes danger that evidence may grow stale or become unavailable). Surely the strong presumption that a litigant in this Court is entitled to the just, speedy, and inexpensive determination of its action (FRCP 1) strongly outweighs the remote and contingent possibility presented by the ICSID Arbitration, even assuming it is not settled.

### **Defendants' Position Is Without Merit**

Defendants argue that three "developments" warrant continuation of the stay. The one thing they do not and cannot argue is that there is still any likely imminent decision from the ICSID panel that will determine the key issues in this litigation. Since that was the sole ground articulated by the Court for granting the stay 30+ months ago, the stay should be lifted. In all events each of Defendants' reasons actually point in favor of lifting the stay.

Hon. John F. Keenan
July 21, 2020
Page 4

        1.       ICSID Arbitration

Defendants point to the fact that it has taken a long time to finalize the settlement of the ICSID Arbitration. We addressed this above. There are many complicated issues necessary to reach final resolution with many different parties; that process is still ongoing. We do not know when it may be finalized. But, one thing is clear: If there is a settlement, the ICSID Arbitration panel will not be deciding any issues that may impact this litigation. Thus, ICSID is no longer any basis for a stay.

Defendants argue that public reports state that the settlement provides for Beny Steinmetz, a nonparty here, "to gain rights to certain mining deposits that Plaintiffs claim they were deprived, and which form the basis for their claimed damages in this action". Defendants' Letter p. 2. Even if true, this does not support any stay of discovery. In fact, it supports prompt discovery to clarify what damages Soros caused Plaintiffs. Moreover, contrary to Defendants' claim, Beny Steinmetz is not "the principal of Plaintiffs" (*id*.) (especially now that one of the Plaintiffs, BSG Resources Limited, is in administration and is run by administrators). Nor is he one of the Plaintiffs in this litigation (despite Defendants' obsessive focus on him). Furthermore, even the article cited by Defendants does not say that BSGR or any of the Plaintiffs will receive any mining deposits – and even if they do why is that a basis for a stay? Even if all the mining rights were returned to Plaintiffs exactly as they were in 2011 (and there is no evidence that that is contemplated), Plaintiffs here would still have significant damages for the many years that Defendants deprived them of their assets through Defendants' improper acts. Defendants found an undated article in French that Defendants say indicates some commitment by Mr. Steinmetz, a nonparty to this case, to withdraw the claims in this litigation. We are unaware of any such commitment on the part of our clients. To the contrary, they have directed us to seek the lifting of the stay here (as we are doing) and to proceed to discovery and trial.

        2.       LCIA Arbitration

Defendants next try to argue that a decision by a Tribunal of the LCIA or the decision of an English court may be an additional basis to dismiss this litigation. We think that's wrong, but the LCIA decision is certainly no reason to keep the stay in place in this action. Technically, the LCIA decision cannot even be brought to the attention of the Court without lifting the stay. Defendants argue that the Court should lift the stay solely for additional briefing on the motion to dismiss. But, a motion to dismiss is not generally a reason for staying discovery in federal court. Defendants provide no additional basis to do so here. Even in these proceedings, this Court refused to stay document discovery pending Defendants' original motion to dismiss (Dkt. 30).

Should the Court lift the stay, and should Defendants wish to make a new motion to dismiss, they can seek leave to do so. We will oppose, for when the issue is fully and fairly presented to the Court, the Court will see that there is no preclusive effect whatsoever from the LCIA decision for a number of reasons, some of which we will preview here. First, that arbitration was between different parties (Vale and BSGR) with different claims (i.e., fraudulent misrepresentations to Vale/breach of certain contractual warranties). Importantly, the LCIA tribunal itself addressed the very ICSID Arbitration that Defendants claim is similar to this litigation. The LCIA tribunal found that there was ***no*** "risk of conflicting decisions [between the LCIA proceeding and the ICSID Arbitration] based on rules of claim or issue preclusion" (LCIA Award ¶ 1001). Second, the findings that Defendants highlight in their letter

Hon. John F. Keenan
July 21, 2020
Page 5

are not preclusive here or to any United States litigation because they are dicta (in fact, they are likely not even admissible). The LCIA Tribunal expressly stated that its decision against BSGR could be made "without making inquiries and findings on bribery" (LCIA Award ¶ 1002). The LCIA Tribunal further explained that "the Tribunal has found multiple misrepresentations by BSGR during the pre-contractual due diligence process, ***other than*** the misrepresentation as to the absence of corruption" (LCIA Award ¶ 169) (emphasis added). Statements that are not necessary to the findings cannot be the basis for estoppel. *See, e.g., CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) (estoppel only when '"the resolution of the issue was necessary to support a valid and final judgment on the merits'"); *Postlewaite v. McGraw-Hill, Inc.,* 333 F.3d 42, 49, 51 (2d Cir. 2003) ("if the arbitrators made both findings, either of which would have been a colorable basis for the award, neither finding may properly be said to have been essential to the award"). Defendants did not disclose to Your Honor that the citations in its letter from the LCIA Award concerning corruption were explicitly dicta and expressly not necessary to the judgment by the LCIA Tribunal.

Defendants also did not explain to the Court that the LCIA also found that Vale had not proven its other corruption and bribery claims described above. Nor did Defendants tell the Court that the LCIA only found sufficient evidence to support one early and irrelevant episode of bribery with regard to Mamadie Touré (out of the six episodes alleged by Vale). BSGR believes that the LCIA erred in its decision, and even this one episode is unfounded. However, the LCIA found that this one episode related to purportedly influencing President Conté in actions he took to help BSGR in 2008 (LCIA Award ¶¶ 631, 642)). President Conté died at the end of 2008 (Amended Complaint, Dkt. 22 ¶ 27; LCIA Award ¶ 243). The allegations in the Amended Complaint here are that the permit his government granted was "confirmed after a thorough examination by the Minister of Mines in the successor government and the Interim President, Moussa Dadis Camara" (Amended Complaint ¶ 27). The Basic Convention Agreement was then executed with this new government in December 2009 (*id.* ¶¶ 29-30; LCIA Award ¶¶ 265-66). This agreement was then ratified by yet a different government in March 2010 (Amended Complaint ¶ 36; LCIA Award ¶¶ 271, 243). Even if the Court accepted the LCIA finding concerning the 2008 bribery allegations concerning Mamadie Touré, this is irrelevant, factually and legally, to the claims here.

        3.        Chapter 15 Proceedings

The final "development" raised by Defendants is the Chapter 15 proceedings that have been brought to the Court's attention in prior correspondence (and to which Soros/OSF are not a party). Defendants do not explain why the Chapter 15 proceedings with regard to one of three Plaintiffs in this litigation supports staying discovery as to all. Instead, they quote, snippets, out of context, to certain documents from that proceeding to try to create an impression that the funder will somehow lose the ability to "control this action", supposedly leading to this action being dismissed. But nothing to which they cite supports such a conclusion. On June 20, 2019, we sent a letter to the Court explaining the need for an additional adjournment of the then scheduled hearing. One of the two reasons we mentioned was the initiation of the Chapter 15 proceedings, which we explained "could have a material bearing on whether and how this case proceeds with respect to Plaintiff BSG Resources Limited (including which counsel will be representing that Plaintiff)" (Dkt. 153). We did not indicate in that letter that the entire case would be dismissed. Defendants also cite to paragraphs 48 and 49 of the initial application for a

temporary restraining order in the Chapter 15 Proceedings as if they support that conclusion. But, the statement by BSGR there was:

> 48. . . . The Debtor's viability as a business depends, in large part, upon its ability to prosecute without interference the Soros Claim and to recover the proceeds therefrom. As explained above . . ., any third-party attempt to encumber or interfere with the Soros Claim will severely impair the Debtor's reorganization efforts.
>
> 49. If the Debtor is unable to protect and preserve its interests in the Soros Claim, it certainly will not be able to undergo a successful restructuring, thereby thwarting the purpose of the Guernsey Administration and Chapter 15 of the Bankruptcy Code to the detriment of all of the Debtor's stakeholders. Accordingly, provisional relief is required and justified to prevent such irreparable harm.

*BSG Resources Ltd.,* No. 19-11845, Dkt. 7. There is nothing in the statement that asserts that the Chapter 15 proceedings will lead to a dismissal of this litigation. On the contrary, the point raised in the Chapter 15 underscores the crucial importance of getting this case unstayed and to trial.

Although not germane to the issue of the stay here (or actually to anything else in this case), Defendants twist the words from a court order in the Chapter 15 case to suggest that the discovery issues in that proceeding are all the fault of BSGR. The full quote from the court order there is, "Mindful of the woeful lack of progress as to discovery in this case, the Court reserves its authority to sanction a party for failure to act in good faith in discovery" (*BSG Resources Limited*, No. 19-11845, Dkt. 69 at ¶ 11). In fact, Vale has sought very extensive and broad discovery in that proceeding and has consistently challenged confidentiality and privilege designations. This has been part of the reason for the protracted discovery in that action.

Finally, Defendants throw in a drive-by reference to an indictment of Mr. Steinmetz in Switzerland. This is irrelevant to any issue before this Court. But, we note again (as we have done in the past), that in all the criminal investigations Soros instigated, not a single finding of wrongdoing has issued against Plaintiffs or Beny Steinmetz.

### **Recent Caselaw Supports BSGR's Opposition to the Motion to Dismiss**

We urge the Court to lift the stay for all purposes. The Court should not be tempted to stay discovery while the motion to dismiss is further litigated. There have been cases decided in the last 30+ months that give significant additional support for denying the motion to dismiss. For example, both the Second and Seventh Circuits have issued decisions on the Act of State defense that bear on issues here. The Second Circuit's decision in *Petersen Energía Inversora S.A.U. v. Argentine Republic,* 895 F.3d 194 (2d Cir. 2018), supports Plaintiffs' argument that it is premature to decide the Act of State issue on a motion to dismiss. In *Petersen,* the Court of Appeals explained that since the complaint "makes clear that it is not challenging Argentina's official acts", the act of state determination is "a merits determination that turns on the facts". *Id.* at 212. Here, too, the amended complaint does not on its face require the Court to issue an order that any of the government of Guinea's official acts (the government of Guinea is not even a party) were invalid. *Petersen* is thus compelling controlling authority that any motion to dismiss should be denied.

Hon. John F. Keenan
July 21, 2020
Page 7


Another Court of Appeals decision is persuasive. *Mt. Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 937 F.3d 1067 (7th Cir. 2019). There, the Seventh Circuit vacated a decision dismissing an action on Act of State grounds. This decision further supports Plaintiffs' argument that the act of state doctrine does not apply based on the Supreme Court decision in *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,* 493 U.S. 400, 405, 409-10 (1990). Indeed, the Seventh Circuit explained:

> Mountain Crest sets forth facts that, if accepted by a trier of fact, might demonstrate that the defendants took concerted action to bring about the Ontario legislation. Holding Anheuser-Busch and Molson Coors liable for their antecedent and allegedly deliberate acts to bring about the [regulation at issue] and requiring them to pay damages to Mountain Crest would not, on its face, invalidate Ontario's chosen regulatory scheme.

937 F.3d at 1086; *see also id.* at 1082. Here, too, BSGR is trying to hold Soros/OSF liable for their antecedent and deliberate acts bringing about the governmental behavior of terminating the BSGR mining rights. An order by the court requiring Soros/OSF to pay damages would not on its face, invalidate the governmental action of terminating the contract and, hence, there is no grounds to apply the Act of State defense to this case.

### Conclusion

There is no further basis for the stay of any part of this action. Even Defendants no longer claim that there is an imminent decision from ICSID. None of the other reasons put forth by Defendants meets the heavy burden required by Defendants to justify a stay. Plaintiffs deserve to have their claims heard and to get the discovery to confirm their claims. We respectfully request that the Court lift the stay for all purposes effective October 19, 2020 as explained above.

Respectfully,

Louis M. Solomon


cc: Counsel of Record (via ECF)