UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BSG RESOURCES (GUINEA) LIMITED, BSG
RESOURCES (GUINEA) SÀRL, and BSG
RESOURCES LIMITED,

     Plaintiffs,

  v.

GEORGE SOROS, OPEN SOCIETY FOUNDATIONS,
OPEN SOCIETY INSTITUTE, FOUNDATION TO
PROMOTE OPEN SOCIETY, OPEN SOCIETY
FOUNDATION, INC., ALLIANCE FOR OPEN
SOCIETY INTERNATIONAL INC., OPEN SOCIETY
POLICY CENTER, and OPEN SOCIETY FUND,

     Defendants.

**No. 1:17-cv-02726 (JFK) (OTW)**

Oral Argument Requested

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................4

    A.    The Parties .......................................................................................................4

    B.    BSGR's Entry into the Guinean Mining Industry and the Convention Agreement.....5

    C.    The New Guinean Government's Initiative to Reform the Guinean Mining Industry and Termination of the Convention Agreement .............................................5

    D.    Defendants' Alleged Conduct Relating to BSGR....................................................7

    E.    Plaintiffs' Arbitration Against Guinea .................................................................7

    F.    Vale's Arbitration Against BSG Resources Limited .................................................8

ARGUMENT ...........................................................................................................10

    I.    PLAINTIFFS ARE COLLATERALLY ESTOPPED BY THE LCIA AWARD. ......10

    II.    THE ACT OF STATE DOCTRINE BARS THE CLAIMS ASSERTED IN THIS ACTION. ....................................................................................................14

    III.    PLAINTIFFS' AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST DEFENDANTS PURSUANT TO FRCP 12(b)(6). .........................................................................................17

    A.    Plaintiffs' Tortious Interference with Contract Claims Must Be Dismissed. ............18

        1.    Plaintiffs Fail to Allege that Defendants' Conduct Was the But For Cause of the Alleged Breach. ................................................................................18

        2.    Plaintiffs' Tortious Interference Claims Against Newly Named Defendants Are Barred by the Statute of Limitations. ..........................................................20

    B.    Plaintiffs' Fraud Claim Against Mr. Soros Must Be Dismissed................................22

        1.    Plaintiffs Fail to Plead Fraudulent Statements with Particularity. .............................22

        2.    Plaintiffs Fail to Allege a Duty to Disclose....................................................23

        3.    Plaintiffs Fail to Plead Actual or Reasonable Reliance.............................................24

    C.    Plaintiffs' Commercial Defamation Claim Must Be Dismissed................................25

        1.    Plaintiffs' Commercial Defamation Claim is Based on Vague, Time-Barred Statements, Unattributed to Defendants.....................................................25

        2.    Plaintiffs Fail to Adequately Plead Intent. .................................................26

i

D. Plaintiffs Fail to State a Claim for Conspiracy or Prima Facie Tort. ........................28

IV. PLAINTIFFS' CLAIMS AGAINST OSF AND OSFI MUST BE DISMISSED BECAUSE THEY ARE NOT EXISTING LEGAL ENTITIES. .................................29

V. PLAINTIFFS' CLAIMS AGAINST THE NEW DEFENDANTS MUST BE DISMISSED UNDER Fed. R. Civ. P. 8(a)(2). ..............................................................29

CONCLUSION ................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
   633 F. Supp. 2d 15 (S.D.N.Y. 2009)...................................................................................22

*AdvanFort Co. v. Cartner*,
   No. 1:15-CV-220, 2015 WL 12516240 (E.D. Va. Oct. 30, 2015)....................................14, 15

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d 402 (S.D.N.Y. 2005).................................................................................27

*Andrews v. Lasser Marshall, Inc.*,
   No. 97-cv-3827, 1997 WL 624986 (S.D.N.Y. Oct. 6, 1997)..................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................................17

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ................................................................................................30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................17

*Bezuszka v. L.A. Models, Inc.*,
   No. 04-cv-7703, 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006)..............................................24

*Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
   775 F. Supp. 2d 730 (S.D.N.Y. 2011)..................................................................................26

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013)..............................................................................26, 27

*BSG Res. (Guinea) Ltd. v. Soros*,
   No. 17-cv-02726, 2017 WL 5897450 (S.D.N.Y. Nov. 29, 2017)..........................11, 14, 15, 17

*Callejo v. Bancomer, S.A.*,
   764 F.2d 1101 (5th Cir. 1985) ..............................................................................................14

*Capital Dimensions, Inc. v. Samuel Oberman Co.*,
   478 N.Y.S.2d 950 (2d Dep't 1984).......................................................................................21

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
   543 F. App'x 72 (2d Cir. 2013) ............................................................................................27

*D'Arata v. New York Cent. Mut. Fire Ins. Co.*,
   76 N.Y.2d 659 (1990) ...........................................................................................................10

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ................................................................................................17

*Fisher v. APP Pharm., LLC*,
    783 F. Supp. 2d 424 (S.D.N.Y. 2011) ...............................................................20, 22

*Flair Broad. Corp. v. Powers*,
    No. 89-cv-2528, 1998 WL 247521 (S.D.N.Y. May 15, 1998), *clarified on
    denial of reconsideration*, No. 89-cv-2528, 1999 WL 6363 (S.D.N.Y. Jan. 7,
    1999) (Keenan, J.) .............................................................................................10, 13

*Freihofer v. Hearst Corp.*,
    65 N.Y.2d 135 (1985) ...........................................................................................28

*Gertler v. Goodgold*,
    107 A.D.2d 481 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 946 (1985) ..........................28

*Gherardi v. New York*,
    161 F. App'x 60 (2d Cir. 2005) ............................................................................13

*Glatt v. Mariner Partners, Inc.*,
    63 A.D.3d 428 (1st Dep't 2009) ...........................................................................23

*Glen v. Club Méditerranée S.A.*,
    365 F. Supp. 2d 1263 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006) .......14

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) ....................................................................18

*Harbinger Capital Partners LLC v. Deere & Co.*,
    632 F. App'x 653 (2d Cir. 2015) .....................................................................23, 24

*Int'l Fire & Safety, Inc. v. HC Servs., Inc.*,
    No. 206-cv-63, 2006 WL 2403496 (S.D. Miss. Aug. 18, 2006) ...........................29

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011) ..................................................................24

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) .................................................................................15

*Konowaloff v. Metro. Museum of Art*,
    702 F.3d 140 (2d Cir. 2012) ............................................................................14, 15

*Kregos v. Associated Press*,
    3 F.3d 656 (2d Cir. 1993) .....................................................................................22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-mdl-2262, 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ...........................................26

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) .........................................................................................8

*Lutin v. N.J. Steel Corp.*,
   No. 93-cv-6612, 1996 WL 636037 (S.D.N.Y. Nov. 1, 1996) .....................................................24

*McEvaddy v. City Univ. of N.Y.*,
   633 N.Y.S.2d 4 (1st Dep't 1995) ...............................................................................................26

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
   16 F. Supp. 2d 355 (S.D.N.Y. 1998) ....................................................................................18, 20

*Mongardi v. BJ's Wholesale Club, Inc.*,
   846 N.Y.S.2d 441 (3d Dep't 2007) ...........................................................................................21

*Montalvo v. Madjek, Inc.*,
   15 N.Y.S.3d 471 (2d Dep't 2015) ..............................................................................................21

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
   14 F. Supp. 3d 191 (S.D.N.Y. 2014) ..........................................................................................26

*Munno v. Town of Orangetown*,
   391 F. Supp. 2d 263 (S.D.N.Y. 2005) ..........................................................................................8

*Nevin v. Citibank, N.A.*,
   107 F. Supp. 2d 333 (S.D.N.Y. 2000) ........................................................................................29

*In re Parmalat Sec. Litig.*,
   501 F. Supp. 2d 560 (S.D.N.Y. 2007) ............................................................................21, 26, 30

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
   153 F. Supp. 3d 628 (S.D.N.Y. 2015) .........................................................................................27

*Richards v. AXA Equitable Life Ins. Co.*,
   No. 06-cv-3744, 2007 WL 3084968 (S.D.N.Y. Oct. 22, 2007).................................................24

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).................18, 19

*Ryan v. New York Tel. Co.*,
   62 N.Y.2d 494 (1984) .................................................................................................................10

*S.T. Grand, Inc. v. City of New York*,
   32 N.Y.2d 300 (1973) .................................................................................................................12

*Salvatore v. Kumar,*
    845 N.Y.S.2d 384 (2d Dep't 2007)..................................................................28

*Schneider v. Pearson Educ., Inc.,*
    No. 12-cv-6392, 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013) ..................................23

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.,*
    899 F.3d 1064 (9th Cir. 2018) ..................................................................15

*Sevits v. McKiernan-Terry Corp. (N.J.),*
    264 F. Supp. 810 (S.D.N.Y. 1966)..................................................................29

*Sharma v. Skaarup Ship Mgmt. Corp.,*
    916 F.2d 820 (2d Cir. 1990)..................................................................18, 19

*Shelton v. Sethna,*
    No. 10-cv-4128, 2012 WL 1022895 (S.D.N.Y. Mar. 26, 2012)............................23

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.,*
    632 F.3d 938 (5th Cir. 2011) ..................................................................15, 16

*Stolow v. Greg Manning Auctions Inc.,*
    258 F. Supp. 2d 236 (S.D.N.Y. 2003)..................................................................25

*TRG, The Repping Grp., Inc. v. Nemschoff Chairs, Inc.,*
    No. 87-cv-4937, 1988 WL 83370 (S.D.N.Y. Aug. 4, 1988)..................................20

*Vale S.A. v. BSG Res. Ltd.,*
    No. 19-cv-3619 (S.D.N.Y. Aug. 10, 2020)..................................................................3

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp. Int'l,*
    493 U.S. 400 (1990)..................................................................16, 17

*Weizmann Inst. of Sci. v. Neschis,*
    421 F. Supp. 2d 654 (S.D.N.Y. 2005)..................................................................10

*Wright v. Coughlin,*
    No. 85-cv-0624, 1987 WL 19633 (S.D.N.Y. Nov. 5, 1987), *aff'd*, 868 F.2d
    1268 (2d Cir. 1988)..................................................................10

*Xavier v. RY Mgmt. Co.,*
    846 N.Y.S.2d 227 (2d Dep't 2007)..................................................................21

**Statutes & Rules**

Fed. R. Civ. P. 8(a)(2)..................................................................29

Fed. R. Civ. P. 12(b)(4)..................................................................29

Fed. R. Civ. P. 12(b)(5)................................................................................................29

Fed. R. Civ. P. 12(b)(6)................................................................................................17

Fed. R. Civ. P. 9(b) ........................................................................................22, 23, 24

N.Y.C.P.L.R. 302..........................................................................................................29

Defendants George Soros ("Mr. Soros"), Open Society Foundations ("OSF"), Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc. ("OSFI"), Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund (collectively "Defendants") respectfully submit this memorandum of law in support of their renewed motion to dismiss the amended complaint filed in this action by Plaintiffs BSG Resources (Guinea) Limited ("BSGRL") , BSG Resources (Guinea) Sárl, and BSG Resources Limited (collectively "BSGR" or "Plaintiffs"), dated June 30, 2017 (the "Amended Complaint").

## PRELIMINARY STATEMENT

Through this action, Plaintiffs seek to hold George Soros and certain non-profit organizations liable for an official action by the government of the Republic of Guinea.  That action – to strip Plaintiffs of mining rights which had been granted to them by a prior military regime – occurred after a review of mining licenses led Guinea's public officials to conclude that Plaintiffs had initially procured those rights through bribery and corruption.

Since that time, Plaintiffs and their affiliates have been embroiled in a series of legal actions stemming from their misconduct.  Of most relevance to this motion, BSGRL was sued by Brazilian-based mining company, Vale, S.A. ("Vale").  In 2009, Vale and BSGRL entered into a joint venture agreement for the purpose of exploiting the Guinean mining rights.  In order to induce Vale into that agreement, BSGRL apparently made various warranties regarding how it obtained those rights, including that "[n]o corrupt payment was made to a Government Official." After Guinea terminated BSGR's mining rights in 2014, Vale initiated an arbitration before the London Court of International Arbitration (the "LCIA Arbitration").  In April 2019, that tribunal found BSGRL liable for fraudulent misrepresentation and breaches of warranty based on a finding that BSGRL procured its mining rights through bribery and corruption, and awarded

1

Vale $1.246 billion in damages, plus pre- and post-award interest, costs, and attorneys' fees, which now totals more than $2 billion (the "LCIA Award").

Plaintiffs have since employed every device imaginable in an effort to forestall reckoning with their misconduct and the LCIA Award.  Before the LCIA could issue its award, BSGRL entered administration proceedings in Guernsey—the equivalent of bankruptcy in the United States—and administrators were appointed to manage BSGRL's affairs.  Once the LCIA issued its award and Vale filed a petition for recognition and enforcement of that award, on June 3, 2019, BSGRL's administrators filed a Chapter 15 petition in the Bankruptcy Court for the Southern District of New York, seeking recognition of the Guernsey administration proceedings, and protection of any U.S.-based assets, including BSGRL's interest in this action.  The Chapter 15 proceedings remain mired in discovery.

At the same time, BSGR agreed to stay its arbitration against Guinea[1] – the appropriate forum for litigation of whether Guinea breached its contractual obligations to BSGR – on the basis of a purported settlement agreement in principle.  In its letter to this Court dated July 21, 2020, Plaintiffs blamed the delay in finalizing that agreement on "extensive mining and site analysis in Guinea" that was reportedly required.  (Dkt. No. 165.)  But while Plaintiffs were making these statements to this Court, the administrators of BSGRL were telling a court in Guernsey that they "are now minded to abandon" the previously reported "nonbinding settlement" of the ICSID Arbitration and "allow the arbitration to be decided by the [ICSID] tribunal."  (Affidavit of Malcolm Cohen in Support of the Joint Administrators' Application

---

[1] In August 2014, Plaintiffs commenced an arbitration against Guinea in Paris before the International Centre for Settlement of Investment Disputes (the "ICSID Arbitration") alleging, among other things, that the termination of Plaintiffs' mining rights by the government of Guinea was an unlawful taking without compensation.  *See BSG Res. Ltd., et al. v. Republic of Guinea*, ICSID Case No. ARB/14/22, https://icsid.worldbank.org/cases/case-database/case-detail?CaseNo=ARB/14/22.

Dated 23 July 2020 ¶ 43, *Vale S.A. v. BSG Res. Ltd.*, No. 19-cv-3619 (S.D.N.Y. Aug. 10, 2020), Dkt. No. 52.)

BSGR has for years employed a strategy that mixes obfuscation, misdirection and foot-dragging in an effort to avoid responsibility for its actions.  That strategy has included filing this action, which is simply an attempt to misdirect judicial resources and blame Defendants for the conduct of other parties, including the Guinean government and Plaintiffs themselves.  The time has come to dismiss those baseless claims, and applicable law offers multiple bases to do so.

*First,* each of Plaintiffs' claims asserted in this action fails if it is shown that Plaintiffs' mining rights were indeed procured by bribery or corruption.  That question need not be adjudicated in this Court, however, because BSGRL (one of the Plaintiffs here, and the parent of the other two Plaintiffs) already had a full and fair opportunity to litigate this issue in the LCIA Arbitration, and lost.  The LCIA Tribunal found that BSGRL obtained Plaintiffs' mining rights in Guinea by bribing Mamadie Touré, the fourth wife of the former President Lansana Conté.  Plaintiffs should not be given a second opportunity to litigate this same issue in this forum, and instead this Court can and should conclude now that Plaintiffs are collaterally estopped from pursuing their claims in this action.  Indeed, in staying this proceeding, the Court previously acknowledged that "the doctrine of collateral estoppel has long been applied to arbitrator's decisions" and a determination that "the Convention and BSGR's mining rights were procured through corruption" would be determinative of Plaintiffs' claims here.  At the time Defendants moved to stay this action, the LCIA Arbitration was confidential, but those findings have now been made public.  The same principles that would have supported a finding of collateral estoppel after an award of the ICSID panel apply equally to the findings of the LCIA panel.

*Second,* Plaintiffs' claims are barred by the act of state doctrine, which precludes this Court from adjudicating Plaintiffs' claims because they require determinations of the validity of the sovereign acts of Guinea's government—namely, the validity of both Guinea's termination of BSGR's mining rights and the process by which that decision was made.

*Third*, BSGR's claims that Mr. Soros "masterminded" a scheme to destroy BSGR's mining rights are contradicted by BSGR's allegations elsewhere in the Amended Complaint (and antecedent assertions in the ICSID Arbitration) that President Condé planned the termination of BSGR's rights before Defendants ever became involved in Guinea and that BSGR always knew Guinea's review of their mining rights was a sham.  In the end, Plaintiffs' own allegations and admissions establish that Defendants were not the "but for" cause of Guinea's breach of its agreement with BSGR and BSGR's tortious interference claim must therefore fail.

In addition to the foregoing, various additional pleading deficiencies as set forth below render Plaintiffs' remaining claims also subject to dismissal.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiffs are companies affiliated with Beny Steinmetz.  (*See* ¶ 127.)[2]  BSGR stands for Beny Steinmetz Group Resources and purports to be "an international, diversified mining group."  (¶¶ 18, 140.)  Defendant George Soros is an American businessman.  (¶ 8.)  Named Defendant Open Society Foundations is alleged to be something that Plaintiffs call a "de facto corporation," but Plaintiffs do not allege that OSF is registered to do business or incorporated in New York or any other jurisdiction, and as discussed below it is not.  (¶ 9.)  Named Defendant Open Society Foundation, Inc. "was a not-for-profit corporation organized under the laws of the

---

[2] Unless otherwise noted, the citations to paragraphs refer to the paragraphs in the Amended Complaint.

state of Delaware" that no longer exists.  (*Id.*)  Defendants Open Society Institute, Foundation to Promote Open Society, Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund, Inc. are alleged to be organized under the laws of various states, each with its principal place of business in New York.  (¶¶ 10-13.)

**B.**      **BSGR's Entry into the Guinean Mining Industry and the Convention Agreement**

In 2005, BSGR applied to the Guinean government for prospecting permits for iron ore in the Guinean region called Simandou.  (¶ 20.)  On February 6, 2006, the Guinean Minister of Mines granted BSGR prospecting permits for areas in "Simandou South."  (¶ 22.)  On December 9, 2008, BSGR was likewise granted prospecting permits for Simandou Blocks 1 and 2 after they were retroceded by the Guinean government from another mining company, Rio Tinto.  (¶¶ 25-26.)  On December 16, 2009, BSGR and Guinea entered into the Basic Convention Agreement (the "Convention"), (¶ 30), which allegedly granted BSGR "the exclusive right to conduct commercial mining activities in [Simandou South]," (¶ 34), and provided for a potential future grant of mining rights in Simandou Blocks 1 and 2.  (*Id.*)  On March 19, 2010, Guinea's then-president, Sékouba Konaté, allegedly ratified the Convention by Presidential Decree and granted BSGR Guinea a mining concession for a deposit in Simandou South.  (¶ 36.)  In April 2010, BSGR entered into a joint venture with another mining company, Vale S.A. ("Vale"), related to the development and operation of BSGR's mining rights in Simandou.  (¶ 37.)

**C.**      **The New Guinean Government's Initiative to Reform the Guinean Mining Industry and Termination of the Convention Agreement**

In 2010, Guinea held its first democratic presidential election and elected Alpha Condé, replacing the prior military regime.  (*See* ¶¶ 44, 67.)  In January 2011, Condé began an initiative to reform Guinea's mining industry, including the enactment of a revised mining code and the examination of existing mining contracts in Guinea.  (¶¶ 67, 74.)  At the time, a Guinean

government official said that "[a]ll [mining] contracts [would] be reviewed and reworked" and "[t]he government will become a minority shareholder in all mining contracts."  (¶ 83.)

The new Mining Code, enacted later in 2011 (¶ 98), "provided for a 'systematic review of all mining conventions.'"  (¶ 87.)  Guinea also established a National Mining Commission ("NMC"), which was "granted the power to examine the 'extension, renewal, lease and cancellation applications for mining titles on the basis of the [2011] Mining Code.'"  (¶ 98.)  The NMC's responsibilities were divided between a Strategic Committee and a Technical Committee.  (*Id.*)  The Technical Committee was "to serve as 'the operational arm of the [NMC] concerning the overall continuation, redevelopment or withdrawal' of mining licenses."  (¶ 99.)

Plaintiffs allege that Guinea breached the Convention in 2014 by terminating BSGR's mining rights.  (¶¶ 2, 156-59.)  This process allegedly began in "early 2011," when President Condé met with two BSGR representatives and a representative of the joint venture and "demanded without justification that BSGR pay $1.25 billion to maintain its contractual mining rights," but Plaintiffs supposedly refused.  (¶¶ 58-59.)  In the fall of 2011, Guinea allegedly "challenged the validity of BSGR's joint venture with Vale," asserting there were "issues with BSGR's mining permits."  (¶¶ 102-03.)  On October 30, 2012, the Technical Committee accused "BSGR of obtaining its mining rights through bribery and corruption."  (¶ 114.)  On March 21, 2014, the Technical Committee "recommended that the Minister of Mines" revoke BSGR's mining rights and "cancel the Convention."  (¶ 151.)  In April 2014, following recommendations of the Technical and Strategic Committees, President Condé and the Minister of Mines terminated the Convention and BSGR's mining rights.  (¶¶ 155-59.)  Citing alleged statements from President Condé and the Minister of Mines, Plaintiffs allege Guinea's decision "was a *fait accompli*" and that the Technical Committee's investigation was a "farce."  (¶¶ 127, 160.)

**D.      Defendants' Alleged Conduct Relating to BSGR**

BSGR's allegations that "Defendants were the motivating force behind Guinea's breach" and that Mr. Soros "puppeteered the government of Guinea" (¶¶ 3, 56) are belied by repeated allegations that it was President Condé who initiated and implemented mining reforms.  BSGR alleges that Condé approached Mr. Soros regarding an initiative to reform the Guinean mining industry, not the other way around.  (*See* ¶¶ 85, 91, 97, 102.)  President Condé, BSGR alleges, demanded in early 2011 that BSGR pay $1.25 billion or lose their contracts and mining rights. (¶ 67.)  According to BSGR, the investigations that resulted in the termination of BSGR's rights were the direct result of BSGR's failure to meet President Condé's demand.  (¶ 73.)

**E.      Plaintiffs' Arbitration Against Guinea**

This action is just the latest in a series of legal maneuvers by BSGR to obfuscate their bribery and corruption in Guinea.  "BSGR has . . . challenged Guinea's conduct in an arbitration currently pending in Paris before the International Centre for Settlement of Investment Disputes[.]"  (¶ 166.)  Upon review, however, BSGR's allegations and claims in the ICSID Arbitration directly contradict their allegations and claims in this action.  The gravamen of the Amended Complaint is that Defendants were the motivating force behind a scheme to harm BSGR, "***duping*** [President Condé]" to terminate the Convention and BSGR's related mining rights.  (¶ 56 (emphasis added).)  In the ICSID Arbitration, however, BSGR alleged that President Condé decided to revoke BSGR's rights before Mr. Soros is ever alleged to have become involved.  BSGR alleges that Condé made a deal "in . . . late 2009 or early 2010," by which "business interests in South Africa" would pay Condé and "ensure" his election, in return for Condé's promise to "grant the South African business interests shares in the mining assets of

Guinea" that were stripped from BSGR.  (Request for Arbitration (Ex. 1) ¶ 54.)[3]

BSGR's allegations in the ICSID Arbitration also contradict the allegations underlying Plaintiffs' purported fraud claim here—specifically, that "[i]t was never disclosed to plaintiffs" that the "[Technical] Committee's conclusion was pre-ordained by Soros" and Plaintiffs "expended significant resources and effort in reliance on the independence of the Committee." (¶ 201.)  Plaintiffs allege in the ICSID Arbitration that "[f]rom day one, BSGR understood that the entire process before the Technical Committee was nothing but an attempt to justify the forthcoming withdrawal of its mining investments."  (Request for Arbitration (Ex. 1) ¶ 64.)

## F.    Vale's Arbitration Against BSG Resources Limited

After Guinea terminated BSGR's mining rights, in April 2014, Vale commenced an arbitration against Plaintiff BSG Resources Limited ("BSGRL") before the London Court of International Arbitration seeking damages arising out of BSGRL's bribery, corruption, and fraud in Guinea.  Vale alleged, among other things, that BSGRL fraudulently induced Vale to enter into the joint venture and breached certain warranties in the joint venture agreements by falsely warranting that that it did not engage in bribery or corruption in obtaining its mining rights in Guinea.  (*See* Ex. 2 (LCIA Award) ¶¶ 7-11, 23, 294, 314, 370, 637, 773.)  Because the question of whether BSGRL engaged in bribery and corruption was central to both Vale's claims and BSGRL's defenses, the Tribunal concluded that the issue "needed to be addressed" in the LCIA Award "in order to give justice to the case."  (*Id.* ¶ 1002.)

---

[3] On a motion to dismiss, the Court may take judicial notice of Plaintiffs' pleadings in the ICSID Arbitration and the contradictory factual allegations therein.  *See Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (taking notice of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").

8

On April 4, 2019, the Tribunal unanimously issued a 281-page final award (the "LCIA Award"), holding BSGRL had induced Vale to enter into the joint venture through false statements, representations, and warranties that BSGRL procured Plaintiffs' mining rights legitimately.  (*Id.* ¶ 846.)  The Tribunal addressed at length the evidence that BSGRL engaged in bribery and corruption and concluded that BSGRL had obtained its mining rights by bribing Mamadie Touré, the fourth wife of the former President Lansana Conté, including through an intermediary, Pentler Holdings Limited ("Pentler"), an affiliate of BSGRL, and Frédéric Cilins, a principal of Pentler.  (*See* LCIA Award (Ex. 2) ¶¶ 642, 676.10.)[4]  The Tribunal concluded that BSGRL bribed Mme. Touré to influence President Conté to revoke Rio Tinto's rights over the Simandou iron ore mine and grant those rights to BSGRL instead.  (*Id.*)  Specifically, the Tribunal found that:

- BSGRL obtained its mining rights "corruptly" by "engag[ing] in bribery or corruption in relation to benefits granted to Mme. Touré."  (*Id.* ¶¶ 642, 676.10.)

- BSGRL "interposed an intermediary (Pentler) between itself and Mme. Touré so that Pentler could be used to grant shares in [BSG Resources (Guinea) Limited] to Mme. Touré" through a memorandum of understanding "executed to secure Mme. Touré's assistance in influencing President Conté," the President of Guinea at the time that BSGRL procured the mining rights.  (*Id.* ¶¶ 595, 635.)

- "Mme. Touré did in fact exercise influence on President Conté in his decision-making in relation to Simandou," (*id.* ¶ 634), as she assisted in influencing President Conté's decision to revoke Rio Tinto's [mining] rights and give them to [BSGRL]," (*id.* ¶ 631); and

- "[BSGRL] knew that the offer of shares [to Mme. Touré] . . . was for the purpose of securing [her] assistance in influencing President Conté."  (*Id.* ¶ 637.)

---

[4] Vale had identified six "episodes" of bribery involving Mme. Touré.  (*Id.* ¶¶ 593-99.)  While the Court did not find in Vale's favor on the other five "episodes," two of them relate to BSGRL's procurement of bauxite and uranium permits, and are thus completely irrelevant (*id.* ¶¶ 596-97, 600.2), and the other three are tangential to BSGR's procurement of its mining rights, such as how Touré was introduced to BSGR's agent (*id.* ¶ 594), subsequent changes to the financial arrangements with Touré and Pentler (*id.* ¶ 598), and bribery contracts executed after BSGR's Convention was signed and ratified. (*Id.* ¶ 599.)  In contrast to these peripheral claims, the episode of bribery that the Tribunal found occurred goes to the heart of the Plaintiffs' claim here—*i.e.*, the mining rights that were initially stripped from Rio Tinto and given to Plaintiffs were obtained by bribery.  (Am. Compl. ¶¶ 25-26.)

Based on its findings, the Tribunal held that BSGRL was liable for fraudulent misrepresentation and breaches of warranty, and awarded Vale over $1.24 billion in damages, plus pre- and post-award interest and costs now totaling more than $2 billion.  (*See id.* ¶¶ 742, 773.)

## ARGUMENT

## I.    PLAINTIFFS ARE COLLATERALLY ESTOPPED BY THE LCIA AWARD.

Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity."  *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984).[5]  Collateral estoppel will apply where the issue to be precluded is (1) identical to an issue necessarily decided in the first action and is decisive in the present action, and (2) the party to be precluded had full and fair opportunity to litigate the issue in the first action.  *Id.*; *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 664 (1990) ("The burden is on the party attempting to defeat the application of collateral estoppel to establish the absence of a full and fair opportunity to litigate.").  To meet the first requirement, the question "must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding."  *D'Arata*, 62 N.Y.2d at 667.

Plaintiffs are collaterally estopped by the LCIA Award's determination that BSGRL engaged in bribery and corruption because it "conclusively resolve[s] the same set of facts" at issue in this action.  *Wright v. Coughlin*, No. 85-cv-0624, 1987 WL 19633, at *2 (S.D.N.Y. Nov. 5, 1987), *aff'd*, 868 F.2d 1268 (2d Cir. 1988).  The central question underlying Vale's claims was whether BSGRL engaged in bribery and/or corruption.  Vale presented the Tribunal with a

---

[5] *See Weizmann Inst. of Sci. v. Neschis*, 421 F. Supp. 2d 654, 675 (S.D.N.Y. 2005) (citing *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986), *superseded on other grounds by rule*) (concluding in case regarding preclusive effect of a foreign arbitration award that "New York law determines the applicability of the doctrine of collateral estoppel in [a] diversity action"); *Flair Broad. Corp. v. Powers*, No. 89-cv-2528, 1998 WL 247521, at *5 (S.D.N.Y. May 15, 1998), *clarified on denial of reconsideration*, No. 89-cv-2528, 1999 WL 6363 (S.D.N.Y. Jan. 7, 1999) (Keenan, J.) ("[T]he principles of collateral estoppel are the same whether federal or New York law applies.").

"narrative of an innocent party induced by its partner to invest large amounts of money when its partner had bribed local officials in Guinea and hidden these corrupt practices through obscure intermediaries and opaque BSG Group business structures." (LCIA Award (Ex. 2) ¶ 1002.) Likewise, BSGRL's defense relied on its argument that it had not used bribery to procure its mining rights. (*Id.*) The LCIA Tribunal concluded it "needed" to address this central question and explicitly found, based on a thorough examination of the evidence, that BSGRL obtained its mining rights "corruptly" by, among other things, "engag[ing] in bribery or corruption in relation to benefits granted to Mme. Touré." (*Id.* ¶¶ 642, 676.10.)[6] The finding that BSGRL engaged in bribery and corruption was essential to the Tribunal's holding that BSGRL fraudulently induced Vale to enter into the joint venture and that BSGRL breached its warranties under the joint venture agreements. (*Id.* ¶¶ 676, 676.10, 742, 773 (holding BSGRL liable for fraudulent misrepresentation and breach of warranty based on, among other things, its "representation that it had not engaged in bribery or corruption in relation to benefits granted to Mme. Touré"). Moreover, the Tribunal concluded that each of the false statements alleged by Vale, "individually or in any event in aggregate establish a pattern of conduct designed to hide the roles that Pentler and Mme. Touré played in the procurement of the mining rights." (*Id.* ¶ 695.)

The issue is also identical to and decisive of the core issue underlying Plaintiffs' claims in this action: "whether the Convention and BSGR's mining rights were procured through corruption." *BSG Res. (Guinea) Ltd. v. Soros*, No. 17-cv-02726, 2017 WL 5897450, at *4 (S.D.N.Y. Nov. 29, 2017). Plaintiffs' claims in this action rely on the premise that Guinea, at the

---

[6] In their July 21, 2020 letter to this Court, Plaintiffs contend that this finding "is irrelevant, factually and legally, to the claims here." (Dkt. No. 165 at 5.) This is wrong. Plaintiffs' claims depend on their allegation that they procured their mining rights legitimately. Plaintiffs allege that this process began in 2008, when Guinea revoked Rio Tinto's rights to Simandou Blocks 1 and 2 and granted BSGR prospecting permits over the same areas. (¶¶ 25-26.) These are exactly the events that the LCIA Tribunal determined that BSGRL achieved by bribing Mamadie Touré to influence President Conté. This establishes that Plaintiffs procured their mining rights corruptly and thus defeats their claims here.

direction of Defendants, made false findings that Plaintiffs corruptly secured their mining rights.

As a result, Plaintiffs' claims in this action require a finding directly inconsistent with that of the

LCIA Tribunal.[7]

Plaintiffs' tortious interference claim requires the existence of a valid contract between

BSGR and Guinea.  However, the Tribunal's finding that BSGRL procured its rights through

bribery and corruption defeats the existence of a valid contract.  *See S.T. Grand, Inc. v. City of*

*New York*, 32 N.Y.2d 300 (1973) (reasoning that "conclusive proof of [the plaintiff's] bribery"

established "as a matter of law" the "illegality of the . . . contract").  In addition, the finding of

corruption shows that Defendants could not have been the "but for" cause of Guinea's alleged

breach of contract.  (*See* infra, § III.A.1.)  Plaintiffs' claim here is based on the specious

allegation that Defendants caused Guinea's termination of BSGR's mining rights by concocting

"false corruption allegations . . . fabricated and circulated to provide justification for removing

BSGR from Guinea."  (¶ 108; *see also* ¶¶ 3, 109, 151, 183-184.)  But this very allegation is

contradicted by the LCIA Tribunal's finding that BSGR in fact did engage in corruption in

Guinea.  Plaintiffs' claims for "conspiracy to commit tortious interference" and *prima facie* tort

also fail because they depend on the same flawed allegations as Plaintiffs' tortious interference

claim.

Similarly, Plaintiffs' fraud claim relies on allegations that Defendants rigged the

Technical Committee's investigation to conclude that BSGR corruptly secured its mining rights.

(¶¶ 84, 107-109, 115-118, 127-129, 151, 160, 195-97.)  The Tribunal's finding that BSGRL

---

[7] Plaintiffs also argue in their July 21, 2020 letter that "[t]he LCIA tribunal found that there was *no* 'risk of conflicting decisions [between the LCIA proceeding and the ICSID Arbitration] based on rules of claim or issue preclusion.'"  (Dkt. No. 165 at 4.)  This single clause taken from a single sentence in the 280-page decision is pure dicta and, in any event, irrelevant.  The LCIA Tribunal was not presented with the question of what the implications of its decision would be on the state law claims pled in this Court under New York law, which is the question before this Court.  At most, it seems that the LCIA Tribunal concluded that there was no risk of conflicting decisions between that proceeding and the ICSID Arbitration, but that conclusion is irrelevant to the issues presented here.

engaged "in bribery and corruption in relation to benefits granted to Mme. Touré" establishes the validity of the Technical Committee's findings and therefore dooms Plaintiffs' fraud claim.

Plaintiffs' only timely allegation of defamation also fails on collateral estoppel grounds. Plaintiffs allege that Global Witness made the "untrue and unfounded allegation[]" that "BSGR and its affiliates engaged in a 'sophisticated corruption scheme' over Simandou cloaking their activities through secretive companies in the British Island." (¶ 172.) But the truth of this statement is established by the Tribunal's finding that BSGRL "engaged in bribery or corruption in relation to benefits granted to Mme. Touré," (*see* LCIA Award ¶ 676.10), and that BSGRL "intentionally procured the sale of Pentler . . . to set up an intermediary to effect bribery payments to Mme. Touré in accordance with [BSGRL]'s wishes." (*See id.* ¶¶ 595, 602-04.)

As this Court has held, the fact that the Tribunal also found in favor of Vale on additional grounds independent of bribery and corruption is irrelevant. "'The general rule in this Circuit is that 'if a court decides a case on two grounds, each is a good estoppel.'" *Flair Broad. Corp*, No. 89-cv-2528, 1998 WL 247521, at *5 (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986)); *see also Gherardi v. New York*, 161 F. App'x 60, 61 (2d Cir. 2005) ("An alternative holding may be considered conclusive in a subsequent proceeding where, as here, the litigants had the incentive and opportunity to address the issue, and the issue was carefully considered by the court.") (citing *Malloy v. Trombley*, 50 N.Y.2d 46, 52-53 (1980)).[8] Moreover, this Court has already acknowledged that "the doctrine of collateral estoppel has long been applied to arbitrator's decisions," and rejected Plaintiffs' argument that an arbitration does not have "a preclusive effect here" because the parties and "the causes of action and the elements of the

---

[8] It is similarly irrelevant that the LCIA Tribunal did not find sufficient evidence for every incident of bribery and corruption alleged by Vale. Plaintiffs' claims depend on their contention that they procured their mining rights without any use of bribery or corruption. Thus, "[t]he Tribunal's finding that [BSGRL] obtained those rights corruptly" is sufficient to preclude Plaintiffs' claims here. (LCIA Award (Ex. 2) ¶ 642.)

claims are not the same." *BSG Res.,* 2017 WL 5897450, at *4; *see also Andrews v. Lasser Marshall, Inc.*, No. 97-cv-3827, 1997 WL 624986, at *1 (S.D.N.Y. Oct. 6, 1997) (an arbitration involving different claims and parties "may substantially resolve issues in this case").

## II.    THE ACT OF STATE DOCTRINE BARS THE CLAIMS ASSERTED IN THIS ACTION.

The act of state doctrine precludes U.S. courts "from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory." *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 143 (2d Cir. 2012).  This is true even where "defendant is a private party" and "the suit is not based specifically on a sovereign act," if deciding the claims would require the court to judge the validity of a sovereign act.  *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113 (5th Cir. 1985).  Courts routinely apply the doctrine in cases where the only defendant is a private party seeking money damages.  *See, e.g.*, *Glen v. Club Méditerranée S.A.*, 365 F. Supp. 2d 1263, 1266 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006) (doctrine barred claims against corporation for money damages); *Konowaloff*, 702 F.3d at 143 (dismissal of claims for both money damages and injunctive relief under act of state doctrine).  Dismissal is appropriate where the doctrine's "applicability is shown on the face of the complaint." *Konowaloff*, 702 F.3d at 146.

Central to Plaintiffs' claims are allegations that Guinea entered into a binding contract with BSGR that conferred certain mining rights to BSGR, and that Guinea breached the alleged contract by revoking BSGR's rights.  (*See, e.g.*, ¶¶ 177-80, 183-84, 188, 191, 214.)  Guinea's entrance into these agreements, and withdrawal of BSGR's rights to Guinea's natural resources under the agreements, are quintessential sovereign acts within the purview of the act of state doctrine.  *See AdvanFort Co. v. Cartner*, No. 1:15-CV-220, 2015 WL 12516240, at *6 (E.D. Va. Oct. 30, 2015) (government's suspension of plaintiff's permits "was a public act of state");

14

*Konowaloff*, 702 F.3d at 145 (courts "will not examine the validity of a taking of property within its own territory by a foreign sovereign government"); *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 954 (5th Cir. 2011) (applying act of state doctrine because "the exploitation of natural resources is an inherently sovereign function") (citing *United States v. California*, 332 U.S. 19, 38-39 (1947)).[9]

Guinea's official acts are also essential elements of Plaintiffs' tortious interference claim. (*See* ¶¶ 180, 184.)  To resolve Plaintiffs' tortious interference claim, the Court would have to decide the validity of Guinea's alleged contract with BSGR and whether Guinea's actions constituted a breach.  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("elements of tortious interference with contract" include "existence of a valid contract between the plaintiff and a third party" and "actual breach of the contract"); *see also BSG Res.*, 2017 WL 5897450, at *4 ("To prove their claims for tortious interference and conspiracy to commit tortious interference, Plaintiffs must show that there was a breach of contract.") (citing *Samsung Display Co. v. Acacia Research Corp.*, No. 14-CV-1353, 2014 WL 6791603, at *4 (S.D.N.Y. Dec. 3, 2014).).  The act of state doctrine precludes exactly this kind of judicial determination. *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064 (9th Cir. 2018) (dismissing claim for "intentional interference with contractual relations" where defendant "essentially co-opted an instrumentality of the Mexican government" and compelled it to breach its contracts, and it "could be fairly regarded as a demeaning affront to Mexico's sovereign control over its own institutions"); *AdvanFort Co.*, 2015 WL 12516240, at *8 (doctrine barred tortious interference

---

[9] For that reason, all of Plaintiffs' claims are barred under the act of state doctrine to the extent that they seek relief in the form of "an order directing defendants to take all steps necessary to secure the return of all rights wrongfully interfered with or converted."  (¶ 186 (Count 1); ¶ 193 (Count 2); ¶ 204 (Count 3); ¶ 210 (Count 4); ¶ 216 (Count 5).)  This is impermissible under the act of state doctrine because such "an order and judgment . . . would interfere with [a] sovereign nation['s] control over [its] own natural resources."  *Spectrum Stores*, 632 F.3d at 943.

claim based on foreign government's "decision . . . to deny a permit").

Plaintiffs' fraud claim is also barred because it requires the Court to adjudicate the validity of acts of the Technical Committee, a Guinean government entity.  Plaintiffs' fraud claim depends on allegations that, in a conspiracy with Mr. Soros, the Technical Committee conducted a fraudulent investigation and misrepresented the nature of the investigation to "carry[] out defendants' illegal racketeering activities" (¶ 195, 200), and reached a "pre-ordained" "conclusion that BSGR's Convention and related agreements should be terminated and its valuable rights revoked."  (¶ 197.)  Such determinations regarding the acts of a foreign government are precluded.  *See Spectrum Stores*, 632 F.3d at 956.

Plaintiffs have previously pointed this Court to the Supreme Court's decision in *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp. Int'l*, 493 U.S. 400 (1990), but that case provides no support for their position.  In fact, it stands for the very proposition that demands application of the doctrine here:  "the act of state doctrine [is] applicable" where "the relief sought or the defense interposed . . . require[s] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory."  *Id.* at 405.  In *Kirkpatrick*, plaintiff was an unsuccessful bidder for a construction contract with the government of Nigeria.  *Id.* at 402. Among the defendants were the company that procured the contract and its CEO.  *Id.* at 401. After losing the contract, the unsuccessful bidder sued defendants for RICO violations, alleging that defendants improperly procured the contract by paying bribes to Nigerian government officials.  *Id.* at 402.  Defendants argued that the act of state doctrine barred plaintiff's claims because "the facts necessary to establish" the claims—defendants' bribery of Nigerian officials—would "also establish that the contract" procured by the bribes "was unlawful."  *Id.* at 406.  The Supreme Court disagreed, finding the legality of the Nigerian contract ancillary to the

RICO claims alleged between competitors. *Id.* ("Regardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires.").

Thus, in *Kirkpatrick*, while the racketeering claims may have required the court to decide whether defendants engaged in illegal conduct that involved Nigeria, they did not require it to decide the legality of Nigeria's conduct.  By contrast, BSGR's tortious interference claim *requires* the Court to determine whether BSGR's contract with Guinea was valid and whether Guinea breached the contract when it terminated BSGR's mining rights.  *See BSG Res.*, 2017 WL 5897450, at *4.  BSGR's fraud and defamation claims similarly depend on a determination that the Guinean government conducted a fraudulent investigation and that the Guinean government's finding that BSGR obtained its mining rights bribery and corruption is untrue.  *Id.* at *11-12.  Plaintiffs' claims for "conspiracy to commit tortious interference" and prima facie tort likewise fail because they depend on allegations that Guinea breached its alleged agreements with BSGR.  (¶¶ 191, 214.)  The act of state doctrine bars any such determinations by this Court.

## III.   PLAINTIFFS' AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST DEFENDANTS PURSUANT TO FRCP 12(B)(6).

Rule 12(b)(6) dismissal is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  Courts routinely dismiss complaints under Rule 12(b)(6) where the complaint does not contain sufficient allegations to state a claim that is plausible on its face.  *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal citation omitted).

A.      **Plaintiffs' Tortious Interference with Contract Claims Must Be Dismissed.**

1.      **Plaintiffs Fail to Allege that Defendants' Conduct Was the But For Cause of the Alleged Breach.**

To plead tortious interference with contract, Plaintiffs must adequately allege "that defendant's actions were the 'but for' cause of the alleged breach of contract." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 293 (S.D.N.Y. 1998).[10]  Put another way, Plaintiffs must allege that "defendants were the motivating force behind" the alleged breach. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990).  Plaintiffs parrot these elements—alleging that "[b]ut for the intentional acts undertaken by defendants and their agents, the Convention would not have been breached" (¶ 184), and that "Defendants were the motivating force behind Guinea's breach of the Convention" (¶ 56)—but this is insufficient to state a claim that is unsupported by the facts alleged.  *See Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 360 (S.D.N.Y. 1998).

Defendants could not have been the "motivating force" or "but for cause" of the alleged breach where Plaintiffs' own allegations show that Guinea "was predisposed toward breaching the contract even in the absence of the alleged interference." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).  According to the Complaint:

- Guinea initiated the mining reforms that led to the termination because Guinea wanted to more than double its stake in the mining projects in the country (¶ 73);

- It was President Condé's "plan to re-examine existing mining contracts" (¶ 189);

- "Prior to even the commencement of the review, it is obvious that Guinea viewed the removal of BSGR's contractual rights as a foregone conclusion" (¶ 160);

- Guinea sought out Mr. Soros for assistance with the mining reforms that resulted in

---

[10] If Plaintiffs' claims survive this motion to dismiss, certain issues may implicate or be governed by the law of Guinea.

the termination, not the other way around (¶¶ 67, 73, 78, 83); and

- President Condé "demanded without justification that BSGR pay $1.25 billion to maintain its contractual mining rights" (¶ 58), and "subsequent investigations into BSGR by the Guinean government," which resulted in the termination of BSGR's mining rights, "were a direct result of [BSGR's] refusal to pay the $1.25 billion demanded" by the President of Guinea. (¶ 60.)

These allegations show that Guinea was pre-disposed to review and cancel BSGR's mining licenses. *See RSM*, 643 F. Supp. 2d at 410 ("specific allegation that the impetus for Grenada's breach was caused by [plaintiff's] refusal to furnish the bribe monies requested belies the general, conclusory allegation that . . . Defendants" caused the alleged breach); *Sharma*, 916 F.2d at 828 (allegation that breaching party was "motivated by profit—is incompatible with an allegation of 'but for' cause as to [defendants]"). BSGR's allegations in the ICSID Arbitration drive home the point that the President of Guinea was the driving force behind the termination. There, BSGR alleges that President Condé revoked BSGR's rights because of a deal made in "late 2009 or early 2010"—well before Defendants are alleged to have become involved in Guinea—pursuant to which "business interests in South Africa . . . would provide significant funds . . . to Alpha Condé and . . . ensure that Alpha Condé was elected" in return for "shares in the mining assets of Guinea" that were held by BSGR. (Request for Arbitration (Ex. 1) ¶ 54.)

Similarly, allegations that President Condé and agents of Guinea's government conspired with Mr. Soros to revoke BSGR's rights (¶¶ 3, 107, 195, 199) preclude the claim that Defendants were the "but for" cause of the alleged breach. *See Sharma*, 699 F. Supp. at 447 (dismissal because "allegation that . . . defendants acted in concert with [third party] implies that [third party] would have breached its obligations even without the involvement of . . . defendants").

Finally, Plaintiffs' failure to allege how each Defendant individually constituted a "but for" cause of the alleged breach dooms their claims. *See, e.g.*, ¶ 165 ("There would not have been a breach but for the activities of defendants."); ¶ 184 ("But for the intentional acts

19

undertaken by defendants and their agents, the Convention would not have been breached."). "Plaintiffs must allege 'but for' causation for each individual defendant and cannot satisfy that requirement merely by alleging that two or more defendants acted in concert to cause the breach." *Mina*, 16 F. Supp. 2d at 360.

### 2. Plaintiffs' Tortious Interference Claims Against Newly Named Defendants Are Barred by the Statute of Limitations.

Unlike their initial pleading, Plaintiffs' Amended Complaint asserts tortious interference claims against Defendants Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund (collectively, the "New Defendants"). These claims are time-barred. "[T]he period of limitations for tortious interference with contractual obligations is three years," and the claim "accrues when the contract is breached." *TRG, The Repping Grp., Inc. v. Nemschoff Chairs, Inc.*, No. 87-cv-4937, 1988 WL 83370, at *1–2 (S.D.N.Y. Aug. 4, 1988) (citing N.Y.C.P.L.R. 214(4)). Guinea's alleged breach occurred no later than April 23, 2014, when Guinea "terminated the Convention with BSGR." (¶ 158.) Plaintiffs' claims against the New Defendants are barred because the Amended Complaint was filed more than three years later, on June 30, 2017.

Plaintiffs have conceded that these claims are time-barred unless they establish that the claims relate back to the initial complaint. (Dkt. No. 68, at 27-28.) This requires Plaintiff to show that "'(1) both [the old and new] claims [arise] out of the same conduct, transaction or occurrence, (2) the new defendant is united in interest with the original defendant, and (3) the new defendant knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against him or it as well.'" *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 430 (S.D.N.Y. 2011).

Plaintiffs cannot show that the New Defendants are "united in interest" with OSF or Mr. Soros. "Defendants are united in interest only when their interest 'in the subject-matter [of the action] is such that [the defendants] stand or fall together and that judgment against one will similarly affect the other.'" *Montalvo v. Madjek, Inc.*, 15 N.Y.S.3d 471, 472 (2d Dep't 2015) (citations omitted). This "requires a showing that the new and original defendants are 'vicariously liable for the acts of the other.'" *Mongardi v. BJ's Wholesale Club, Inc.*, 846 N.Y.S.2d 441, 443 (3d Dep't 2007) (citations omitted). A joint tortfeasor relationship is not sufficient to show the parties are united in interest. *Capital Dimensions, Inc. v. Samuel Oberman Co.*, 478 N.Y.S.2d 950, 952 (2d Dep't 1984).

Here, Plaintiffs never allege in the Amended Complaint that the New Defendants are vicariously liable for the actions of Mr. Soros or OSF (or vice versa), or that they are agents of one another. Rather, Plaintiffs allege only that "Soros and OSF. . . control" the New Defendants because "the OSF Entities share the same phone number and business address," "[t]heir leadership structures are similarly overlapping," and the "OSF Entities received most of their funding from Soros or Soros entities." (¶ 52.) These allegations do not show a relationship sufficient to establish a unity of interest. *See Xavier v. RY Mgmt. Co.*, 846 N.Y.S.2d 227, 229 (2d Dep't 2007) ("The fact that two defendants may share resources such as office space and employees is not dispositive" to establish a unity of interest); *see also In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 589 (S.D.N.Y. 2007) (financing insufficient to infer control). Instead, Plaintiffs consistently allege that Defendants' are merely joint tortfeasors (*see, e.g.*, ¶ 15), which is insufficient to establish unity in interest. *See Capital Dimensions*, 478 N.Y.S.2d at 952.

Further, the Amended Complaint provides no basis to determine whether Plaintiffs' claims against the New Defendants arise from the same set of facts as the initial complaint

because Plaintiffs allege little or no facts about what any of the New Defendants did.  For the

same reason, Plaintiffs cannot establish that the New Defendants "knew or should have known

that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would

have been brought against him or it as well.'"  *Fisher*, 783 F. Supp. 2d at 430.

**B.      Plaintiffs' Fraud Claim Against Mr. Soros Must Be Dismissed.**

To plead fraud, BSGR must allege that: (1) Mr. Soros made a material misrepresentation

of fact; (2) Mr. Soros knew the representation was false; (3) Mr. Soros intended to induce

reliance by BSGR; (4) BSGR justifiably relied on the misrepresentation; and (5) injury to BSGR.

*Kregos v. Associated Press*, 3 F.3d 656, 664-65 (2d Cir. 1993).  "[T]he circumstances

constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Plaintiffs'

allegations do not suffice.

**1.      Plaintiffs Fail to Plead Fraudulent Statements with Particularity.**

To adequately state a claim for fraud under Rule 9(b), BSGR must: (1) specify the

alleged fraudulent statements, (2) identify the speaker, (3) state where and when the statements

were made, and (4) explain why the statements were fraudulent.  *380544 Can., Inc. v. Aspen

Tech., Inc.*, 633 F. Supp. 2d 15, 27 (S.D.N.Y. 2009).  Here, the bases of BSGR's fraud claim are

the vague and conclusory allegations that "Soros conspired with/or misled members of the

Technical Committee, with the intention and effect of defrauding plaintiffs" (¶ 199), and that

"Soros" fraudulently induced "the Technical Committee . . . to make it appear that it was

conducting an impartial and fair review when in fact it was carrying out defendants' illegal

racketeering activities." ¶¶ 195.)  These allegations fall well short of Rule 9(b)'s requirements.

BSGR's lone allegation of a specific statement by Mr. Soros does not support a fraud

claim.  Allegedly, "Soros publically announced that 'all mining contracts' would be 're-

examined and those who want to validate those claims will have to subscribe to the principles of

22

EITI.'" (¶ 196.)  BSGR does not allege that the statement was false.  Rather, BSGR alleges that it "*implied* a fair and impartial review of BSGR's Convention and related agreements" by the Technical Committee.  (¶ 196 (emphasis added).)  This admission is fatal to BSGR's fraud claim.  Even if the alleged implication of Mr. Soros's statement was false, New York does not recognize a fraud claim premised "upon a message implied" by the actual statements uttered.  *See Shelton v. Sethna*, No. 10-cv-4128, 2012 WL 1022895, at *6 (S.D.N.Y. Mar. 26, 2012) ("[t]his sort of subjective inference cannot give rise to fraud liability."); *see also Glatt v. Mariner Partners, Inc.*, 63 A.D.3d 428, 429 (1st Dep't 2009) ("the relied-upon implicit statement cannot serve as a misrepresentation upon which a claim of fraud may properly be based").  BSGR alleges that "Soros knew upon making these statements that the conclusion of the Technical Committee was pre-ordained and that his statements were false or materially misleading," (¶ 197), but this cannot be true because the alleged date of Mr. Soros's statement is more than a year before the alleged creation of the Technical Committee.  (¶ 98.)

Moreover, to the extent that BSGR seeks to plead fraudulent concealment, that claim also fails to meet the requirements of Rule 9(b).  BSGR's conclusory allegation that "Defendants never disclosed their corruption of the Committee or the fact that any conclusion was foregone, having been dictated by Soros in advance" (¶ 105), is insufficient.  *See Schneider v. Pearson Educ., Inc.*, No. 12-cv-6392, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013) ("claim for fraudulent concealment" lacked "requisite level of particularity" where "Plaintiff merely allege[d] that Defendant 'concealed' its [wrongful conduct] from Plaintiff").

### 2.  Plaintiffs Fail to Allege a Duty to Disclose.

BSGR fails to state a claim for fraudulent concealment for the independent reason that BSGR pleads no facts showing that Mr. Soros owed Plaintiffs a duty to disclose.  *See Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015) (omission

23

"actionable only if the defendant had a duty to disclose."). As set forth above (*supra* Section II.B.1), Plaintiffs fail to allege that Mr. Soros ever "made a partial or ambiguous statement" about the subject of his alleged omission—the Technical Committee's investigation. Nor does BSGR allege that Mr. Soros "stand[s] in a fiduciary or confidential relationship with" BSGR that would give rise to such a duty. *See id*. at 656. And BSGR cannot plead such a duty on the basis that Mr. Soros had "superior knowledge" and knew BSGR was "acting on the basis of mistaken knowledge," *id.*, because BSGR fails to allege any interactions between BSGR and Mr. Soros whatsoever. *See id.* at 657; *Richards v. AXA Equitable Life Ins. Co.*, No. 06-cv-3744, 2007 WL 3084968, at *5 (S.D.N.Y. Oct. 22, 2007) (no disclosure duty absent allegations of "communication between Plaintiff and Defendant" that provided "basis for knowledge by Defendant as to what Plaintiff believed" about subject matter of alleged omission).

### 3.   Plaintiffs Fail to Plead Actual or Reasonable Reliance.

"Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud," which "must be pleaded with particularity." *Lutin v. N.J. Steel Corp.*, No. 93-cv-6612, 1996 WL 636037, at *7 (S.D.N.Y. Nov. 1, 1996). A "bare allegation, without supporting facts, that [Plaintiffs] relied on defendants' alleged [fraud] does not suffice." *Id.* BSGR alleges that it "expended significant resources and effort in reliance on the independence of the Committee" (¶ 201), and "spent money on developing its mining capability and rights." (¶ 202.) These allegations fail to plead reliance because they offer no specifics about when or how Plaintiffs relied on Defendants' alleged fraud. *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (dismissal because facts alleged did not show "how plaintiffs relied on the alleged misrepresentations"*)*.

Even if BSGR could plead actual reliance, it fails to plead facts showing such reliance was reasonable. *Bezuszka v. L.A. Models, Inc.*, No. 04-cv-7703, 2006 WL 770526, at *13

(S.D.N.Y. Mar. 24, 2006) (Rule 9(b) dismissal absent "specific allegations of why. . . reliance

was reasonable").  Nor could BSGR do so.  BSGR alleges that it always knew the Technical

Committee investigation was a sham.  BSGR was "concerned about procedural irregularities in

the Technical Committee proceedings" (¶ 105), and that "[w]ell before the Technical Committee

had completed its review . . . President Condé had made it clear that BSGR's mining rights"

would "be revoked."  (¶ 160.)  BSGR also fails to explain how it could have reasonably relied on

alleged misrepresentations about "the Committee process" in which President Condé "was very

closely involved" (¶ 160), even after BSGR had allegedly rejected President Condé's alleged

$1.25 billion extortion attempt.  (¶¶ 58, 60.)  And in the ICSID Arbitration BSGR has alleged

that "[f]rom day one, BSGR understood that the entire process before the Technical Committee

was nothing but an attempt to justify the . . . withdrawal of its mining investments."  (Request for

Arbitration (Ex. 1) ¶ 64.)  These allegations belie BSGR's reasonable reliance claim.  *See Stolow*

*v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003) (no reasonable

reliance because plaintiff "acknowledges . . . aware[ness] of the" allegedly undisclosed wrongful

conduct).

**C.    Plaintiffs' Commercial Defamation Claim Must Be Dismissed.**

    **1.    Plaintiffs' Commercial Defamation Claim is Based on Vague, Time-Barred Statements, Unattributed to Defendants.**

BSGR's commercial defamation claim does not rely on any alleged statements by

Mr. Soros or OSF.  The claim is based on statements by Global Witness (¶¶ 143-48, 172),

allegations in the Fox and DLA Piper reports (¶¶ 118-25), and two statements made by Scott

Horton to the press.  (¶ 140.)  One of the alleged statements occurred in December 2016—the

rest were in 2013 or earlier.  These allegations are insufficient for at least two reasons.  *First*,

Plaintiffs' commercial defamation claim is time-barred to the extent that the Amended

Complaint, dated June 30, 2017, relies on the alleged statements made in 2013 or earlier.  The

limitations period for commercial defamation is one year.  *Biomed Pharm., Inc. v. Oxford Health*

*Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011) (citing 10 F. App'x 33 (3)).

     *Second*, Plaintiffs fail to plead that Global Witness, the alleged speaker of the lone timely

statement in December 2016, made the statement as an agent of Defendants.  Conclusory

allegations that Mr. Soros "controlled" or "used" Global Witness (¶¶ 9, 130), are insufficient to

impute the statements made by Global Witness to Defendants.  *See Mosdos Chofetz Chaim, Inc.*

*v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014) (dismissing defamation claim

based on "conclusory allegation" that "statements were made by 'an agent of [defendant]'").

Also insufficient are Plaintiffs' general allegations of "board participation" and that OSF

provided funding to Global Witness in 2014 and 2015.  *See In re LIBOR-Based Fin. Instruments*

*Antitrust Litig.*, No. 11-mdl-2262, 2015 WL 6696407, at *21 (S.D.N.Y. Nov. 3, 2015) ("General

allegations of . . . shared board membership . . . are insufficient to establish a principal-agent

relationship"); *Parmalat*, 501 F. Supp. 2d at 589 (allegations of financing do not support

inference of control); *McEvaddy v. City Univ. of N.Y.*, 633 N.Y.S.2d 4, 4 (1st Dep't 1995)

(financing of newspaper insufficient to impute defamatory statements to defendant).

     **2.**      **Plaintiffs Fail to Adequately Plead Intent.**

     BSGR fails to state a defamation claim for the independent reason that it fails to meet the

heightened pleading standard for such a claim against public figures.  The Amended Complaint

establishes that by the time of Global Witness's statement in December 2016, BSGR was at least

a limited purpose public figure.  As such, Plaintiffs must allege that the offending statement was

made with actual malice.  *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013).

     Whether "a person or an organization is a public figure is a question of law for the court

to decide," and where "the question . . . can be determined based upon the pleadings alone, the

Court may deem a plaintiff a public figure at the motion to dismiss stage." *Biro*, 963 F. Supp. 2d at 270. Articles cited in the Amended Complaint[11] establish that, before the alleged defamatory statement, BSGR met all of the criteria of a limited purpose public figure by: "successfully invit[ing] public attention to [its] views in an effort to influence others" about BSGR, its dealings in Guinea, and Guinea's mining reforms; "voluntarily inject[ing] [it]self into" the "public controversy" over Guinea's mining reforms and "assum[ing] a position of prominence in the public controversy;"[12] and "maintain[ing] regular and continuing access to the media."[13]  *Id.*

Thus, Plaintiffs must allege facts showing that Global Witness's defamatory statement was made with actual malice, that is, "deliberate or reckless falsification." *Id.* at 276-78. To do so, Plaintiffs must allege *facts* showing that "'defendants in fact entertained serious doubts as to the truth of [its] publication,'" *id.* at 276 (citation omitted); conclusory allegations do not suffice. *Id.* at 279-80 ("[P]leading 'actual-malice buzzwords' is simply not enough to nudge a case into discovery."). Plaintiffs fail to meet their burden, offering only a conclusory allegation that Defendants "knew or should have known" that Global Witness's statement was false. (¶ 206.)

---

[11] On a motion to dismiss, the Court may consider documents that are referenced in the complaint. *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 642 (S.D.N.Y. 2015); *see also In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) (where plaintiffs cited several articles in complaint but did not attach them as exhibits, "The Court may review those documents in considering the motion to dismiss as if they had been included in the Complaint"); *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 n.3 (2d Cir. 2013).

[12] Guinea's reforms and disputes over BSGR's corruption and mining rights are public controversies because they impact the Guinean public and, through criminal investigations in several countries, the international community. (¶¶ 168-69, 171.) *See Biro*, 963 F. Supp. 2d at 272 (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980) ("[A] public controversy is a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way.")).

[13] *See, e.g.*, Patrick Radden Keefe, Buried Secrets, The New Yorker, July 8, 2013 (cited in ¶ 99) (detailing various interviews provided to the press by BSGR representatives, including Beny Steinmetz); *id.* ("'We are the victims,' . . . . Steinmetz claimed that the accusations against him were the product of a concerted smear campaign, initiated by Condé and financed by George Soros."); Tom Burgin, *et al.*, Guinea's First Freely Elected Government Reignites $2.5bn Mining Tussle, Financial Times, Nov. 2, 2012 (cited in ¶ 130) ("As ever, BSGR maintains that it is innocent of any wrongdoing and will use all legal means to protect its position in Guinea"); Bob Van Voris, Guinea Bribe-Probe Defendant Pleads Not Guilty in NYC, Bloomberg, May 16, 2013 (cited in ¶ 106) ("Steinmetz and BSGR, based in Guernsey, deny wrongdoing in Guinea and describe themselves as victims of a conspiracy by President Condé and Soros to revoke the firm's mining license. . . . BSGR 'became the victim of numerous extortion attempts by individuals who were seeking economic gains.'").

Although Plaintiffs allege that Global Witness's statement was "untrue and unfounded" (¶ 172), Plaintiffs allege no facts showing that Global Witness or Defendants knew of the statement's purported falsity or doubted its veracity.  Rather, Plaintiffs' own allegation contradicts any such assertion.  The same article containing the alleged defamatory statement by Global Witness— "BSGR and its affiliates engaged in a 'sophisticated corruption scheme' over Simandou"— shows that Global Witness had every reason to believe that its statement that BSGR engaged in corruption in Guinea was truthful:  the subject of the article is the decision of Israeli police to arrest Beny Steinmetz on the basis of BSGR's corruption in Guinea, and the article details the evidence supporting the statement.  (Daniel Estrin, Israeli Police Arrest Tycoon Suspected of Bribery in Guinea, Associated Press, Dec. 19, 2016 (cited in ¶ 172).)

### D.      Plaintiffs Fail to State a Claim for Conspiracy or Prima Facie Tort.

"[C]ivil conspiracy to commit a tort" is "not recognize[d]" "as an independent [claim]." *Salvatore v. Kumar*, 845 N.Y.S.2d 384, 388-89 (2d Dep't 2007).  BSGR's claims for conspiracy fail because Plaintiffs fail to state their underlying claims for tortious interference or fraud.  *Id.* (conspiracy claims dismissed because "underlying causes of action were properly dismissed").

If "relief may be afforded under traditional tort concepts, prima facie tort may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort."  *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985).  A prima facie tort claim fails when it is based on "precisely the same substantive acts" that fail to state a claim for tortious interference.  *Gertler v. Goodgold*, 107 A.D.2d 481, 490 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 946 (1985) (dismissing prima facie tort claim that could not "stand independently" because it was a "restatement of" plaintiff's tortious interference claims).  Plaintiffs' prima facie tort claim is premised on the same deficient allegations as the tortious interference with contract claim.  (*See, e.g.*, ¶ 214 ("The intentional acts described above, by and on behalf of Soros,"

28

caused "Guinea's breach of the Convention").)  The additional allegation of malice (¶ 213) does

not alter the analysis.  Motive-based allegations "do not suffice to transform . . . traditional torts

into a prima facie tort."  *See Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000).

## IV.   PLAINTIFFS' CLAIMS AGAINST OSF AND OSFI MUST BE DISMISSED BECAUSE THEY ARE NOT EXISTING LEGAL ENTITIES.

Plaintiffs allege that OSF is a "de facto corporation" (¶ 9), but Plaintiffs do not—and

cannot—allege that OSF is incorporated under the laws of any jurisdiction.  As public records

show, "Open Society Foundations" is a wordmark registered to Open Society Institute.  (*See* Ex.

3 (printout of United States Patent and Trademark website record of "Open Society Foundations"

wordmark).)  OSF is not an existing legal entity.  Plaintiffs also concede that OSFI does not

exist.  (*Id.* (alleging OSFI "filed dissolution papers on October 5, 2012").)  Plaintiffs' claims

against OSF and OSFI fail because the Court has no personal jurisdiction over a non-existent

entity.[14]  *See Sevits v. McKiernan-Terry Corp. (N.J.)*, 264 F. Supp. 810, 812 (S.D.N.Y. 1966).

The non-existence of OSF and OSFI also dictates dismissal for "insufficient process" and

"insufficient service of process" under Fed. R. Civ. P. 12(b)(4) and (5).  *See Sevits*, 264 F. Supp.

at 812 (dismissing claims against non-existent entities under Rules 12(b)(4) and 12(b)(5)); *see*

*also Int'l Fire & Safety, Inc. v. HC Servs., Inc.*, No. 206-cv-63, 2006 WL 2403496, at *1 (S.D.

Miss. Aug. 18, 2006) (dismissal under Rules 12(b)(4) and 12(b)(5) because "the proper relief for

the legally non-existent entity . . . is dismissal of the complaint").

## V.    PLAINTIFFS' CLAIMS AGAINST THE NEW DEFENDANTS MUST BE DISMISSED UNDER FED. R. CIV. P. 8(A)(2).

Fed. R. Civ. P. 8(a)(2) "requires, at a minimum, that a complaint give each defendant

---

[14] Plaintiffs likewise fail to adequately allege personal jurisdiction over Open Society Policy Center ("OSPC"). OSPC is incorporated under the laws of the District of Columbia (¶ 14) and its principal place of business is Washington, D.C.  (*See* https://opensocietypolicycenter.org/.)  Plaintiffs do not allege any conduct by non-resident OSPC in New York—indeed, Plaintiffs allege no conduct by OSPC whatsoever.  *See* N.Y.C.P.L.R. 302.

'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (citation omitted).  The Amended Complaint fails to provide such notice to the New Defendants because it is devoid of allegations of wrongful conduct by any of them.[15]  Merely lumping the New Defendants in with allegations of purportedly wrongful conduct by "Defendants" or the "OSF Entities" fails to satisfy Rule 8.  *See id.* ("complaint failed to satisfy . . . minimum standard" under Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct").

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiffs' claims against Defendants with prejudice.

Dated: August 28, 2020
New York, New York

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By:   /s/ Benjamin P. McCallen
    Joseph T. Baio
    Benjamin P. McCallen
    James Fitzmaurice

787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
jbaio@willkie.com

    Elizabeth J. Bower

1875 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
ebower@willkie.com

*Attorneys for Defendants*

---

[15] Plaintiffs allege that New Defendant Foundation to Promote Open Society ("FPOS") provided funding to entities that allegedly assisted Guinea's mining reforms (¶¶ 71, 77, 82), but these allegations are insufficient to impute any purported wrongdoing by those entities to FPOS.  *See Parmalat*, 501 F. Supp. 2d at 589 ("allegations [of financing] by themselves do not support the inference that" alleged principal "controlled" alleged agent's "performance")

30