UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BSG RESOURCES (GUINEA) LIMITED, BSG RESOURCES (GUINEA) SÀRL, and BSG RESOURCES LIMITED,<br><br>                Plaintiffs,<br><br>      v.<br><br>GEORGE SOROS, OPEN SOCIETY FOUNDATIONS, OPEN SOCIETY INSTITUTE, FOUNDATION TO PROMOTE OPEN SOCIETY, OPEN SOCIETY FOUNDATION, INC., ALLIANCE FOR OPEN SOCIETY INTERNATIONAL INC., OPEN SOCIETY POLICY CENTER, and OPEN SOCIETY FUND,<br><br>                Defendants. | **No. 1:17-cv-02726 (JFK) (AJP)**<br><br>Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000 (telephone)

1875 K Street, NW
Washington, DC 20006
(202) 303-1000 (telephone)

*Attorneys for Defendants*

# TABLE OF CONTENTS

I.      THE LCIA AWARD PRECLUDES PLAINTIFFS' CLAIMS.......................................... 1

II.     PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE.......... 6

III.    EACH OF PLAINTIFFS' CLAIMS FAILS FOR ADDITIONAL REASONS.............. 9

        A.      Plaintiffs Fail to State a Claim For Tortious Interference. ......................... 9

        B.      Plaintiffs Fail to State a Fraud Claim Against Mr. Soros........................ 11

        C.      Plaintiffs Fail to State a Claim for Conspiracy or Prima Facie Tort. ...................... 13

        D.      Plaintiffs Fail to State a Commercial Defamation Claim against Defendants. ....... 13

IV.     PLAINTIFFS' CLAIMS AGAINST THE OSF ENTITIES MUST BE DISMISSED. ... 14

CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Ali v. Ashcroft,*
　　350 F. Supp. 2d 28 (D.D.C. 2004) ...........................................................................8

*Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett,*
　　No. 05-cv-8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007) ..............................13

*Antonios A. Alevizopoulos & Associates v. Comcast International Holdings, Inc.,*
　　100 F. Supp. 2d 178 (S.D.N.Y. 2000)...............................................................10, 11

*Anwar v. Fairfield Greenwich Ltd.,*
　　728 F. Supp. 2d 372 (S.D.N.Y. 2010) ....................................................................14

*Bd. of Managers of Charles House Condo. v. Infinity Corp.,*
　　825 F. Supp. 597 (S.D.N.Y. 1993), aff'd, 21 F.3d 528 (2d Cir. 1994) ....................5

*Bifolck v. Philip Morris USA Inc.,*
　　936 F.3d 74 (2d Cir. 2019)........................................................................................2

*C.D.S., Inc. v. Zetler,*
　　288 F. Supp. 3d 551 (S.D.N.Y. 2017)......................................................................4

*Clayco Petroleum Corp. v. Occidental Petroleum Corp.,*
　　712 F.2d 404 (9th Cir. 1983) ....................................................................................8

*Compania de Gas de Nuevo Laredo, S. A. v. Entex, Inc.,*
　　686 F.2d 322 (5th Cir. 1982) ....................................................................................8

*Concord Associates, L.P. v. Entertainment Properties Trust,*
　　817 F.3d 46 (2d Cir. 2016)......................................................................................10

*Dominicus Americana Bohio v. Gulf & W. Indus., Inc.,*
　　473 F. Supp. 680 (S.D.N.Y. 1979)...........................................................................8

*Domino Window Cleaning, Inc. v. Acting Sec'y of Lab.,*
　　536 F. App'x 96 (2d Cir. 2013) ................................................................................3

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.,*
　　809 F.3d 737 (2d Cir. 2016)......................................................................................8

*Feldman-Boland v. Stanley,*
　　No. 15-cv-6698, 2016 WL 3826285 (S.D.N.Y. July 13, 2016)................................2

*Flair Broad. Corp. v. Powers*,
   No. 89-cv-2528, 1998 WL 247521 (Keenan, J.)....................................................................3

*Galu v. Swissair: Swiss Air Transp. Co.*,
   734 F. Supp. 129 (S.D.N.Y. 1990), *aff'd sub nom.*, *Galu v. Swissair*, 923 F.2d
   842 (2d Cir. 1990)................................................................................................................8

*Gherardi v. New York*,
   161 F. App'x 60 (2d Cir. 2005) ..........................................................................................3

*Glen v. Club Méditerranée S.A.*,
   365 F. Supp. 2d 1263 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006) ......................7

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016)..............................................................................................10

*Heineman v. S & S Mach. Corp.*,
   750 F. Supp. 1179 (E.D.N.Y. 1990) ..................................................................................12

*Johnson v. Formula 1 Imports*,
   No. 11-cv-1720, 2012 WL 628520 (E.D.N.Y. Feb. 24, 2012) .................................................13

*Konowaloff v. Metro. Museum of Art*,
   702 F.3d 140 (2d Cir. 2012).............................................................................................6, 7

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................................10

*Lufti v. Dow Jones*,
   No. 95-cv-8775, 1996 WL 343065 (S.D.N.Y. June 20, 1996), *aff'd*, 107 F.3d
   3 (2d Cir. 1997)................................................................................................................5, 6

*McCord v. Agard (In re Bean)*,
   252 F.3d 113 (2d Cir. 2001)................................................................................................3

*Motrade v. Rizkozaan, Inc.*,
   No. 95-cv-6545, 1998 WL 108013 (S.D.N.Y. Mar. 11, 1998)..................................................4

*Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*,
   937 F.3d 1067 (7th Cir. 2019) ............................................................................................7

*Nat'l Fin. Partners Corp. v. USA Tax & Ins. Servs., Inc.*,
   145 A.D.3d 440 (1st Dep't 2016) ......................................................................................10

*New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*,
   No. 07-cv-8304, 2009 WL 1515696 (S.D.N.Y. 2009) (Keenan, J.)........................................10

*Norris v. Grosvenor Mktg. Ltd.*,
    803 F.2d 1281 (2d Cir. 1986), *superseded on other grounds by rule* .......................................2

*Oceanic Expl. Co. v. ConocoPhillips, Inc.*,
    No. 04-cv-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006) .................................................8, 9

*Pasternack v. Lab. Corp. of Am. Holdings*,
    59 N.E.3d 485 (N.Y. 2016) ........................................................................................12

*Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
    895 F.3d 194 (2d Cir. 2018) ........................................................................................6

*Postlewaite v. McGraw-Hill*,
    333 F.3d 42 (2d Cir. 2003) ..........................................................................................3

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) .......................10

*Sea Breeze Salt Inc. v. Mitsubishi Corp.*,
    No. 16-cv-2345, 2016 WL 8648638 (C.D. Cal. Aug. 18, 2018) ...........................................8

*Sharon v. Time, Inc.*,
    599 F. Supp. 538 (S.D.N.Y. 1984) ...............................................................................9

*Shelton v. Sethna*,
    No. 10-cv-4128, 2012 WL 1022895 (S.D.N.Y. Mar. 26, 2012) ..........................................12

*United States v. Real Property located at 4866 Yacht Basin Drive, et al.*, No.
    3:14-cv-01428 (M.D. Fla. Feb. 1, 2016), ECF No. 36 ........................................................5

*United States v. Real Property located at 4866 Yacht Basin Drive, et al.*, No.
    3:14-cv-01428 (M.D. Fla. Mar. 18, 2015), ECF No. 26 ......................................................5

*United States v. Thiam*,
    No. 1:17-cr-00047 (S.D.N.Y. May 3, 2017), ECF No. 136 .................................................5

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
    No. 12-cv-00196, 2018 WL 1737623 (N.D.N.Y. Mar. 20, 2018) ..........................................3

*Veleron Holding, B.V. v. Stanley*,
    No. 12-cv-5966, 2014 WL 1569610 (S.D.N.Y. Apr. 2, 2014) ..............................................3

*W.S. Kirkpatrick & Co. v. Environmental. Tectonics Corp., International*,
    493 U.S. 400 (1990) ..................................................................................................7

*Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*,
    965 F.2d 1375 (5th Cir. 1992) .....................................................................................9

*World Wide Minerals Ltd. v. Republic of Kazakhstan*,
  116 F. Supp. 2d 98 (D.D.C. 2000) ............................................................................8

**Other Authorities**

Patrick Radden Keefe, *Buried Secrets*, The New Yorker, July 8, 2013 .........................................14

Defendants respectfully submit this reply memorandum of law in support of their renewed motion to dismiss the Amended Complaint.

## I.     THE LCIA AWARD PRECLUDES PLAINTIFFS' CLAIMS.

One of the core findings of the LCIA Tribunal was that BSGRL procured its mining rights in Guinea by bribing Mamadie Touré, the wife of former Guinean President Lansana Conté, to influence her husband to revoke Rio Tinto's rights to the Simandou iron ore mine, and grant those rights to BSGRL instead.  (*See* Mot. at 9-10; Ex. 2 to Decl. of B. McCallen, ECF No. 172-2 (LCIA Award) ¶¶ 642, 676.10.)  Plaintiffs cannot prove any of their claims in this action if they procured their mining rights through bribery and corruption (Mot. at 12-13), and they are now estopped from arguing against the existence of such misconduct in light of the LCIA Award.  Plaintiffs' arguments to the contrary are unavailing.

*First*, BSGR argues that collateral estoppel does not bar BSGR's claims because the LCIA Tribunal only found that BSGR used bribery to obtain the Simandou Blocks 1 and 2 Permit in 2008, but did not make any finding that BSGR used bribery to procure subsequent related agreements governing BSGR's exploitation of the same mining deposits, including the 2009 Basic Convention Agreement.  (Opp. at 10-11.)  In other words, even though there has been a finding that BSGR bribed the wife of the former Guinean president to strip the mining rights from Rio Tinto and give them to BSGR, there was no finding that BSGR subsequently bribed additional Guinean officials over the next two years as the approval process made its way through the government, so BSGR argues its claims should proceed.  That argument defies common sense.  It asks this Court to accept the premise that the Guinean government, upon a finding that BSGR used bribery to acquire the initial permit over some of the nation's most valuable resources, would only revoke the initial permit, but allow BSGR to keep subsequent related agreements governing exploitation of the same mining deposits.

1

That argument is also directly contradicted by BSGR's own allegations.  The Amended Complaint makes clear that the initial granting of the mining rights in 2008 and the Basic Convention Agreement executed in 2009 were interrelated agreements that governed the exact same mining rights.  (¶¶ 20-34.)[1]  Indeed, the Amended Complaint defines the initial Blocks 1 and 2 Permit and the subsequent Basic Convention Agreement as being part of a single "Convention" that governed BSGR's mining rights.  (¶ 30.)  The Amended Complaint also alleges that Guinea terminated all of BSGR's mining rights based on the conclusion that "BSGR had obtained its rights through bribery and corruption." (¶ 109; *see also* ¶¶ 114, 151-159.)  And, even though BSGR misrepresents that "Mamadie Touré [is] not mentioned in the Complaint here," (Opp. at 11), the Amended Complaint explicitly states that the Guinean government relied on an affidavit from Mamadie Touré and an investigative report that concluded that Ms. Touré took bribes in exchange for influencing the government to transfer the Blocks 1 and 2 Permit to BSGR.  (¶ 112, 119, 126, 151.)  This is *exactly* the bribery found by the LCIA Award.

*Second*, that the LCIA Arbitration involved different parties, claims, and legal standards is irrelevant.  (Mot. at 13-14 (citing cases).)  *Feldman-Boland v. Stanley*, No. 15-cv-6698, 2016 WL 3826285, at *3 (S.D.N.Y. July 13, 2016) ("The underlying claims need not be identical for collateral estoppel to apply."); *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986), *superseded on other grounds by rule* ("the parties need not be identical in both actions").  The identicality requirement "is concerned not with claims or . . . causes of action . . ., but with *issues*[.]." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 81 (2d Cir. 2019).

*Third*, Plaintiffs contend that the LCIA Tribunal's finding is not preclusive because it is *dicta*.  (Opp. at 12-14.)  But it is not *dicta*.  Rather, it is one of multiple separate, independent

---

[1] Unless otherwise noted, the citations to paragraphs refer to the paragraphs in the Amended Complaint.

grounds for the LCIA Award.  The existence of alternative grounds for the LCIA Award does not

blunt the preclusive effect of the bribery finding.  Defendants' opening brief established that "[a]n

alternative holding may be considered conclusive in a subsequent proceeding where, as here, the

litigants had the incentive and opportunity to address the issue, and the issue was carefully

considered by the court."  *Gherardi v. New York*, 161 F. App'x 60, 61 (2d Cir. 2005); *see also*

*Flair Broad. Corp. v. Powers*, No. 89-cv-2528, 1998 WL 247521, at *5 ("'The general rule in this

Circuit is that 'if a court decides a case on two grounds, each is a good estoppel.'") (Keenan, J.)

(quoting *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38 (2d Cir. 1986)).[2]

The cases cited by BSGR are not to the contrary.  In *Postlewaite v. McGraw-Hill*, 333 F.3d

42 (2d Cir. 2003) and *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 12-cv-00196,

2018 WL 1737623 (N.D.N.Y. Mar. 20, 2018), there was no issue preclusion because, unlike here,

the prior adjudicators provided no rationale for their decisions, making it impossible to discern

whether they relied on a determinative issue in the litigation.  In *Veleron Holding, B.V. v. Stanley*,

No. 12-cv-5966, 2014 WL 1569610 (S.D.N.Y. Apr. 2, 2014), the defendant argued for collateral

estoppel based on "a fair implication" of the arbitrator's award, not an explicit factual finding like

the bribery finding in the LCIA Award.  In BSGR's remaining cases, the prior findings were not

preclusive because, unlike the bribery finding in the LCIA Award, they could not independently

support the underlying judgment on the merits.  *McCord v. Agard (In re Bean)*, 252 F.3d 113, 118

(2d Cir. 2001) ("The *sua sponte* finding . . . was not necessary to decide the issue . . . ."); *Domino*

*Window Cleaning, Inc. v. Acting Sec'y of Lab.*, 536 F. App'x 96, 97 (2d Cir. 2013) (finding of rule

---

[2] BSGR tries to distinguish *Flair* and *Gherardi* based on the LCIA Tribunal's statements that its award could be made "without making inquiries and findings on bribery" and that "even absent a finding of corruption," it would find BSGRL liable.  This does not negate the LCIA Tribunal's conclusion, based on extensive evidence, that bribery occurred and was independently sufficient to justify the LCIA Award. (LCIA Award ¶¶ 169, 1002.)  Like in *Flair* and *Gherardi*, the LCIA Tribunal's statements merely indicate that alternative grounds existed to support the award.

violation was dictum because the adjudicator "did not purport to impose a penalty for violation of that rule or even suggest that [it] had authority to do so"); *C.D.S., Inc. v. Zetler*, 288 F. Supp. 3d 551, 559 (S.D.N.Y. 2017) (factual finding was "mere *dicta*" because it "was not 'necessary to support a valid and final judgment on the merits'").

*Fourth*, Plaintiffs argue that the LCIA Award does not preclude its claims because the LCIA Tribunal stated, in deciding whether to admit evidence from the ICSID Arbitration, there was "no risk of conflicting decisions" between the LCIA Arbitration and the ICSID Arbitration. (Opp. at 12 (citing LCIA Award ¶ 1001).)  This passing remark actually is *dicta*.  The LCIA Tribunal was not presented with, and did not consider, the claims asserted in this case.  Even if it had, the impact of the LCIA Award on this case is a question for this Court to consider under the law governing this case, not a question for that arbitration panel.

*Fifth*, BSGR contends that the Guinean government's decision to dismiss criminal charges against individuals involved in BSGR's bribery scheme negates the preclusive effect of the LCIA Award.  (Opp. at 15.)  This is wrong.  The LCIA Award includes extensive findings of fact sufficient to determine that the bribery issue there is the same as in this action.  Unlike the LCIA Award, the Guinean order merely gives effect to the prosecutor's decision to drop the criminal charges, is not an adjudication by a fact finder nor does it provide reliable evidence of the basis for the prosecutor's decision.  (Ex. 13 to Decl. of L. Solomon at 5, ECF No. 182-13 (concluding the withdrawal of charges "*implies* that, following the investigations into the case brought before the court, the Public Prosecutor has no evidence that could lead the court to convict the defendants") (emphasis added).  *See Motrade v. Rizkozaan, Inc.*, No. 95-cv-6545, 1998 WL 108013, at *5 (S.D.N.Y. Mar. 11, 1998) ("To have a preclusive effect on specific issues or facts, however, a voluntary dismissal also must be accompanied by specific findings sufficient for a

subsequent court to conclude that certain matters were actually decided."). There are any number of reasons the prosecution did not go forward, including the difficulty of prosecuting individuals who do not reside in Guinea. (*Id.* at 1-2, 5 (noting that none of the defendants appeared in court, that defendants Mamadie Touré and Mahmoud Thiam[3] reside in the United States and that two other defendants are fugitives).

BSGR's reliance on the Guinean prosecutor's decision also ignores that Mamadie Touré, the very same person that the LCIA Tribunal determined accepted bribes from BSGRL, has repeatedly admitted to taking those bribes. In 2016, Mamadie Touré reached a settlement with the Department of Justice that included her forfeiture of properties and her acknowledgment that those properties were derived from the bribes she received from BSGR. *See* Amended Verified Complaint for Forfeiture in Rem, *United States v. Real Property located at 4866 Yacht Basin Drive, et al.* ¶¶ 15-23, No. 3:14-cv-01428 (M.D. Fla. Mar. 18, 2015), ECF No. 26 (alleging that Touré engaged in the same bribery scheme); Stipulated Settlement Between United States and Mamadie Touré at 1, *United States v. Real Property located at 4866 Yacht Basin Drive, et al.*, No. 3:14-cv-01428 (M.D. Fla. Feb. 1, 2016) ), ECF No. 36 ("Touré agrees that each of the Defendant Properties is traceable to the criminal conduct alleged in the Verified Complaint in Rem.").

*Finally*, estoppel of all defendants, including those which were not parties to the LCIA Arbitration, is appropriate because collateral estoppel prevents parties *or their privies* (including subsidiaries) from relitigating the same issues. *See Bd. of Managers of Charles House Condo. v. Infinity Corp.*, 825 F. Supp. 597, 608 (S.D.N.Y. 1993), *aff'd*, 21 F.3d 528 (2d Cir. 1994); *Lufti v.*

---

[3] Mahmoud Thiam, former Minister of Mines in Guinea, was convicted in this Court of accepting bribes from a Chinese company and is serving a seven-year prison sentence. *See* Judgment, *United States v. Thiam*, No. 1:17-cr-00047 (S.D.N.Y. May 3, 2017), ECF No. 136. Government affidavits filed in that case aver "[p]ublicly available documents state that Thiam also received bribes from BSG Resources, Ltd., and the grand jury is investigating whether BSG Resources, Ltd....bribed Thiam to help it win mining rights in Guinea's Simandou region." Exhibit A to Thiam Mot. to Dismiss at 25 (of 36) (attaching Decl. in Supp. of App. for Suspension of Running of Statute of Limitations, dated Oct. 31, 2014), ECF No. 65-1.

*Dow Jones*, No. 95-cv-8775, 1996 WL 343065, at *2 (S.D.N.Y. June 20, 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1997) ("A corporate parent is deemed to be in 'privity' with its subsidiary when it sufficiently represents that subsidiary's interests.").

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE.

The act of state doctrine requires the Court to answer a single question:  is it possible to adjudicate BSGR's claims without ruling on the validity of the official act of the Guinean government to revoke BSGR's mining rights?  Because the answer is "no," the Court should dismiss those claims now.

A claim for tortious interference requires a breach of the underlying contract.  Thus, the Court cannot adjudicate that claim without deciding whether Guinea entered into a valid contract with BSGR and whether Guinea's revocation of BSGR's mining rights was a breach.  (*See* ¶¶ 180, 184, 214.)  Likewise, the alleged misrepresentation underlying BSGR's fraud claim—that the Technical Committee would conduct a fair and impartial investigation—requires the Court to determine that the Technical Committee's investigation improperly determined that BSGR obtained its mining rights through bribery and corruption.  (*See* ¶¶ 114-115, 127, 196-197, 201.)  No evidence obtained during discovery will change those facts, and thus dismissal on a motion to dismiss is appropriate.  *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012) ("[A] court may properly grant a motion to dismiss on the basis of [the act of state] doctrine when its applicability is shown on the face of the complaint.").[4]

---

[4] *Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 212 (2d Cir. 2018), cited by BSGR, is not to the contrary.  In *Petersen*, the court declined to apply the act of state doctrine because "the face of Petersen's complaint makes clear that it is not challenging Argentina's official acts—the expropriation of property." *Id*. at 212.  That is exactly the opposite of the situation here, where BSGR makes clear on the face of the Amended Complaint that it is asserting that Guinea's expropriation of BSGR's mining rights constituted a breach of Guinea's legal obligation.  (¶ 165 ("The terminations of BSGR's agreements with the government of Guinea breached BSGR's contractual rights and harmed BSGR.").)

BSGR relies on *W.S. Kirkpatrick & Co. v. Environmental. Tectonics Corp., International*, 493 U.S. 400 (1990) and *Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 937 F.3d 1067 (7th Cir. 2019), but those decisions actually support application of the act of state doctrine here.  Like the Supreme Court in *Kirkpatrick* (which was discussed extensively by Defendants at pages 16-17 of their Motion), the Seventh Circuit declined to apply the act of state doctrine in *Mountain Crest* because the claims at issue did not require the court to decide the validity of a foreign government's official acts.  In *Mountain Crest*, plaintiff brought claims for state and federal antitrust violations based on allegations that defendants engaged in a conspiracy that caused the Ontario government to pass a regulation that limited the amount of beer that plaintiff could sell at a discount.  *Id.* at 1077.  The Seventh Circuit held that certain claims were not barred by the act of state doctrine because, like the racketeering claims in *Kirkpatrick*, the legal elements of the claims did not require the court to determine the validity of any act by the Ontario government. *Id.* at 1085-86.  Rather, the claims permitted the court to determine whether defendants engaged in anticompetitive activity regardless of the validity of any resulting action taken by the Ontario government.  Here, it is impossible for the Court to adjudicate Plaintiffs' claims because their very elements require the Court to determine whether Guinea entered into a valid contract with BSGR (or whether it was voided by bribery), whether Guinea's termination of the mining rights constituted a breach of contract, and whether the Technical Committee conducted a fraudulent investigation into BSGR's mining rights.  (¶¶ 165, 195, 198.)

Further, courts routinely apply the doctrine in cases where the only defendant is a private party and money damages are sought.  *See, e.g.*, *Glen v. Club Méditerranée S.A.*, 365 F. Supp. 2d 1263, 1266 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006) (doctrine barred claims against corporation for money damages); *Konowaloff*, 702 F.3d at 143 (dismissal of claims for both money

damages and injunctive relief under act of state doctrine).  Nor are there so-called "corruption and commercial activity exceptions" to the doctrine.  *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 744 (2d Cir. 2016) ("neither the Supreme Court nor this Circuit has ever concluded that there is a commercial exception to the doctrine of act of state");[5] *Galu v. Swissair: Swiss Air Transp. Co.*, 734 F. Supp. 129, 132 n.6 (S.D.N.Y. 1990), *aff'd sub nom.*, *Galu v. Swissair*, 923 F.2d 842 (2d Cir. 1990) (doctrine applied despite allegations "of corruption in the Swiss government"); *Sea Breeze Salt Inc. v. Mitsubishi Corp.*, No. 16-cv-2345, 2016 WL 8648638, at *4 (C.D. Cal. Aug. 18, 2018) (doctrine applied despite allegations that defendant was "actively corrupting" "Mexican government officials").[6]

None of the other act of state doctrine cases cited by BSGR is inconsistent with application of the doctrine here.  In *World Wide Minerals Ltd. v. Republic of Kazakhstan*, 116 F. Supp. 2d 98 (D.D.C. 2000), the court merely noted in *dicta* that the act of state doctrine would not apply to claims against a private defendant arising out of a breach of contract between other private parties, not a breach of contract by a foreign sovereign.  *Id.* at 105; *see* Amended Complaint at Count VIII, *World Wide Minerals Ltd. v. Republic of Kazakhstan*, 116 F. Supp. 2d 98 (D.D.C. 2000), ECF No. 19 (claim for tortious interference with contract between plaintiff corporations and defendant corporations); *see also Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (D.D.C. 2004) (habeas corpus petition alleging that U.S. enlisted Saudi Arabia to detain petitioner required only determination

---

[5] Even if a commercial exception exists, it does not apply here because granting or withdrawing "a concession to exploit natural resources entails an exercise of powers peculiar to a sovereign."  *Clayco Petroleum Corp. v. Occidental Petroleum Corp.*, 712 F.2d 404, 408 (9th Cir. 1983) (a commercial exception would not apply when "the governmental action . . . could not have been taken by a private citizen").

[6] BSGR's reliance on *Dominicus Americana Bohio v. Gulf & W. Indus., Inc.*, 473 F. Supp. 680 (S.D.N.Y. 1979) for a corruption exception is misplaced because subsequent cases have confirmed that it was without basis in law. *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, No. 04-cv-332, 2006 WL 2711527, at *8 (D.D.C. Sept. 21, 2006) (noting *Dominicus* relied on a case that did not address the exception); *Compania de Gas de Nuevo Laredo, S. A. v. Entex, Inc.*, 686 F.2d 322, 326 (5th Cir. 1982) (same).  *Galu*, 734 F. Supp. at 132 n.6, *aff'd sub nom.*, *Galu v. Swissair*, 923 F.2d 842 (2d Cir. 1990) (doctrine applied despite allegations "of corruption in the Swiss government").

of validity of U.S. acts, not those of Saudi Arabia); *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375, 1388 (5th Cir. 1992) ("all of the public acts" of the Philippines had "nothing to do with" commercial entity's "contract breach"); *Sharon v. Time, Inc.*, 599 F. Supp. 538 (S.D.N.Y. 1984) (doctrine did not apply because validity of Israel's acts were not at issue where "[a]ll agree" that defense minister's alleged role in a massacre, "if [it] occurred, would be illegal and abhorrent"); *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, No. 04-cv-332, 2006 WL 2711527, *15 (D.D.C. Sept. 21, 2006) (doctrine did not bar plaintiffs' claims because they did not require court to decide that contracts between defendant and government agency were ineffective).

## III.   EACH OF PLAINTIFFS' CLAIMS FAILS FOR ADDITIONAL REASONS.

### A.   Plaintiffs Fail to State a Claim For Tortious Interference.

To state a claim for tortious interference, Plaintiffs must allege that Defendants were the "but for" cause of the alleged breach of the agreement.  The question posed is whether, based on the face of the Amended Complaint, Guinea was the "motivating force behind" the termination of BSGR's mining rights and the mining reforms that led to the termination.  The Amended Complaint is clear that it was President Condé's "plan to re-examine existing mining contracts," (¶ 189), it was President Condé who "had decided that BSGR's mining rights should be removed," (¶ 160), and it was President Condé who "demanded without justification that BSGR pay $1.25 billion to maintain its contractual mining rights."  (¶ 58.)  Guinea's pre-disposition to breach is underscored by BSGR's own allegations in the ICSID Arbitration and the LCIA Arbitration that President Condé revoked BSGR's mining rights as part of a deal made with unrelated parties well before Defendants are alleged to have become involved in Guinea.  (Mot. at 19; *see also* LCIA Award ¶¶ 11, 289, 321, 639.)[7]

---

[7] Contrary to BSGR's argument, the Court may and should consider contrary statements from the ICSID Arbitration and LCIA Arbitration.  BSGR did not "exclude" the ICSID Arbitration from its allegations, they expressly cite the

The allegations that Defendants prompted Guinea's pursuit of the termination are wholly conclusory. (*See, e.g.*, Opp. at 24 ("Soros and OSF masterminded and orchestrated the attempted extortion of BSGR") (citing ¶ 61).) The only allegation relied on by BSGR that comes close to alleging facts—Defendants' purported secret negotiations with Vale—occurred "after" Guinea's "failed attempt to shake down BSGR." (Opp. at 24.) And BSGR's allegation that Mr. Soros assisted Condé before he was elected has nothing to do with mining or BSGR. (*See* ¶ 54 ("Condé turned to him in March 2010 'to ask for help in meeting his electoral pledges'").) BSGR's specific allegations of Guinea's predisposition and financial motivation to breach, coupled with BSGR's bare, conclusory allegations that Defendants initiated the alleged scheme, fail to meet the but-for causation requirement. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ("If a defendant can demonstrate that the third-party was predisposed toward breaching the contract even in the absence of the alleged interference, a plaintiff cannot establish "but for" causation.").

The primary case relied upon by Plaintiffs, *Antonios A. Alevizopoulos & Associates v. Comcast International Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000), is inapposite. Unlike here, *Antonios* involved no allegations that the breaching party pursued a breach independent of the defendants' involvement,[8] nor allegations of specific financial benefits to the breaching party beyond the economic self-interest inherent in the breach itself. *Id.* at 186-87.

---

case number and refer the Court to the allegations in the proceeding. (¶ 166.) BSGR's cases are inapposite. Unlike here, neither *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016), nor *Concord Associates, L.P. v. Entertainment Properties Trust*, 817 F.3d 46, 51 n.2 (2d Cir. 2016), involved the same Plaintiffs making contradictory factual allegations about the same transaction in separate proceedings. Further, BSGR's resort to "alternative pleading" to justify blatant contradictions is unavailing. Rule 8 authorizes allegations of contradictory claims, not contradictory facts. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 406-407 (S.D.N.Y. 2001).

[8] The additional cases cited by BSGR, *Nat'l Fin. Partners Corp. v. USA Tax & Ins. Servs., Inc.*, 145 A.D.3d 440 (1st Dep't 2016) and *New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*, No. 07-cv-8304, 2009 WL 1515696 (S.D.N.Y. 2009) (Keenan, J.) are inapposite for the same reason. (*See* Opp. at 23.)

Rather, the allegations showed that the defendant initiated and created an opportunity to breach that otherwise could not occur. *Id.* at 187. There is no allegation here that the alleged termination, accomplished by orders of President Condé and Guinea's Minister of Mines (¶¶ 156-158), *required* Defendants' involvement.

The tortious interference claim against the New Defendants is also barred by the statute of limitations. To be timely, BSGR must to establish that "the new defendant[s] [are] united in interest with the original defendant[s]." (Mot. at 20 (citing *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 430 (S.D.N.Y. 2011)).) BSGR makes no attempt to do so, arguing only that the new entities have similar names and belong to the same family of entities as the original defendants. (Opp. at 32-33.) This is not enough. BSGR must allege facts sufficient to show that the new and old defendants are 'vicariously liable for the acts of the other.'" (Mot. at 17-18 (citing cases).) BSGR does not (and cannot) do so.[9]

### B.   Plaintiffs Fail to State a Fraud Claim Against Mr. Soros.

BSGR's fraud claim is based on a collection of disconnected statements that do not support a claim. Plaintiffs first base their fraud claim on statements made *to the Technical Committee* by Veracity, Steven Fox and DLA Piper – alleged agents of Mr. Soros – that BSGR engaged in bribery and corruption. (¶¶ 106-117; *see also* Opp at 27-28.) Even if these parties were agents of Mr. Soros (which is not adequately alleged), it makes no sense that statements to the Technical

---

[9] To support its relation back theory, Plaintiffs contend that "Defendants have disputed that OSF is the proper party, but have not identified a replacement." (Opp. at 32.) This is both wrong and irrelevant. As the correspondence attached by Plaintiffs shows, Defendants did identify entities that might be named in lieu of OSF. (Ex. 7 to Decl. of L. Solomon, ECF No. 182-7 (Letter from L. Solomon to J. Fitzmaurice, dated May 18, 2017 ("Ben apparently told my colleague, Nancy Savitt, that you were taking the position that OSF is not a juridical entity, and you mentioned the Open Society Institute as the party that we might have meant to sue.")); Ex. 10 to Decl. of L. Solomon, ECF No. 182-10 (Letter from B. McCallen to L. Solomon, dated June 19, 2017 ("Foundation to Promote Open Society . . . provided such funding during the time period of the allegations in the complaint.")).) In any event, BSGR's inability to timely name the New Defendants was a problem of their own making, waiting to file the original complaint until just days before the limitations period expired.

Committee could form the basis for a fraud claim by BSGR.  Not surprisingly, New York does not recognize fraud claims based on third-party reliance, *i.e.*, where plaintiff's alleged injury resulted from a third party's reliance on misrepresentations by a defendant.  *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 492 (N.Y. 2016).  Here, Plaintiffs allege reliance by the Technical Committee on the statements of Veracity, Fox and DLA Piper, but not by Plaintiffs.  (Opp. at 23.)

BSGR also cites alleged statements by Mr. Soros that all "existing mining contracts" would be re-examined (¶ 74), and that "'those who want to validate those [mining contracts] will have to subscribe to the principles of'" the Extractive Industries Transparency Initiative (EITI).  (¶¶ 78, 196.)  BSGR alleges that Mr. Soros's statements implied a fair and impartial review, but BSGR cannot maintain a fraud claim where Mr. Soros said nothing about the fairness or impartiality of a review, and where that was merely BSGR's subjective inference from Mr. Soros' statements.  (*See* Mot. at 23.)  *Shelton v. Sethna*, No. 10-cv-4128, 2012 WL 1022895, at *6 (S.D.N.Y. Mar. 26, 2012) ("subjective inference cannot give rise to fraud liability").  Nor does BSGR explain how Mr. Soros could have knowingly implied anything about a review conducted by the Technical Committee a year before it was created.  *See Heineman v. S & S Mach. Corp.*, 750 F. Supp. 1179, 1183 (E.D.N.Y. 1990) (citing *Roney v. Janis*, 77 A.D.2d 555 (1st Dep't 1980)) ("[A] failure to perform promises of future acts is not fraud unless there exists an intent not to comply with the promise at the time it is made. . . . [F]raud cannot be based upon a statement of future intentions, promises or expectations which were speculative or an expression of hope . . . when made.").

Even if Mr. Soros's alleged statements constituted an actionable misrepresentation or omission, which they do not, BSGR fails to plead actual or reasonable reliance.  BSGR cites only to allegations that BSGR provided Guinea with purportedly "exculpatory" documents in connection with the Guinean government's investigation.  (Opp. at 29; ¶¶ 103-105, 150.)  The

Amended Complaint alleges no facts showing that BSGR provided the documents – which submissions occurred 8 and 18 months later – in reliance on Mr. Soros's purported misrepresentation or omission.  Indeed, BSGR does not even allege that it was aware of Mr. Soros's statement at the time of the productions or that it would have refrained from producing documents if it had known.  *See Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, No. 05-cv-8988, 2007 WL 1732427, at *10 (S.D.N.Y. June 14, 2007) (dismissal where plaintiff "conspicuously fail[ed] to allege that plaintiffs read the allegedly misleading . . . statements, or even that they knew of their existence"); *Johnson v. Formula 1 Imports*, No. 11-cv-1720, 2012 WL 628520, at *2 (E.D.N.Y. Feb. 24, 2012).  Further, as shown in the opening brief, BSGR's own allegations show that it could not have reasonably relied on Mr. Soros' alleged statement.  (Mot. at 25.)  For example, it is implausible that BSGR relied on a purported representation about the fairness of a review based on "the principles of EITI" (¶ 196), when, according to BSGR's own allegations, the contract "did not comply with . . . EITI, and any attempt to force BSGR to adhere to these principles was wrongful interference."  (¶ 75.)

### C.    Plaintiffs Fail to State a Claim for Conspiracy or Prima Facie Tort.

Plaintiffs implicitly concede that if this Court dismisses BSGR's other tort claims, there is no basis to maintain the claims for conspiracy and prima facie tort. (Opp. ¶ 30.)  Because Plaintiffs' additional tort claims fail, as discussed above, those two claims fail as well.

### D.    Plaintiffs Fail to State a Commercial Defamation Claim against Defendants.

BSGR does not dispute that Global Witness made the only timely alleged defamatory statement.  (Opp. at 30.)  In response to the arrest of Beny Steinmetz, Global Witness allegedly stated that "BSGR and its affiliates engaged in a 'sophisticated corruption scheme' over Simandou."  (¶ 172.)  This statement does not support a claim for commercial defamation for at least three reasons.  *First*, the LCIA Tribunal's finding that BSGR procured its rights corruptly

established the truth of this statement.  (*See* Section I *supra*.)  *Second*, this statement was not made by any of the Defendants and it is not imputable to them because allegations of "board participation" and "funding" (Opp. at 30), are insufficient to establish that Defendants exercised control over the alleged statement.  (*See* Mot. at 25-26 (citing cases).)  *Third*, BSGR is clearly a limited purpose public figure.  Documents cited in the Amended Complaint show that BSGR 'invited public attention to its views in an effort to influence others'" and "'voluntarily injected [it]self' into a controversy" independent of any response to the alleged defamatory statements, which allegedly began in 2013.[10]  BSGR has not alleged facts that Defendants (through Global Witness) made the alleged statements with knowledge of or disregard for their alleged falsity. (Mot. at 26-27.)  Indeed, the very article that contains the allegedly defamatory statement also cites a joint bribery investigation by the United States, Switzerland, and Guinea which led to the house arrest of Beny Steinmetz, thus providing a good faith belief for the statement.  (*See* Mot. at 28.)

## IV.    PLAINTIFFS' CLAIMS AGAINST THE OSF ENTITIES MUST BE DISMISSED.

"Open Society Foundations" is a wordmark registered to Open Society Institute, not a juridical entity.  (*See* Ex. 3 to Decl. of B. McCallen, ECF No. 172-3 (printout of United States Patent and Trademark website record of "Open Society Foundations" wordmark).)  And, as BSGR concedes, OSFI does not exist (*see* Opp. at 31).  Therefore, the claims against OSF and OSFI must be dismissed.

BSGR also fails to meet basic notice pleading requirements because it fails to allege wrongful conduct by any of the New Defendants.  (*See* Mot. at 30 (citing authorities).)  The court in *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010), cited by BSGR, held

---

[10] Patrick Radden Keefe, *Buried Secrets*, The New Yorker, July 8, 2013 (cited in ¶ 99) (detailing interviews provided to the press by BSGR in 2012 and 2013, including Beny Steinmetz); *id.* (describing a "Web site that Steinmetz recently set up [that] describes…a 'network of contacts…[used] to build 'a multi-faced empire'").)

that plaintiff satisfied Rule 8 because, although "Plaintiffs [made] certain allegations against the []

Defendants as a whole," plaintiffs also "distinguish[ed] the conduct of each of the [] Defendants."

*Id.* at 422.  BSGR has made no such individualized allegations here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiffs' claims against

Defendants with prejudice.


Dated: November 9, 2020
New York, New York

                              Respectfully submitted,


                              WILLKIE FARR & GALLAGHER LLP

                              By:  /s/ Benjamin P. McCallen   ___
                                  Joseph T. Baio
                                  Benjamin P. McCallen
                                  James Fitzmaurice

                              787 Seventh Avenue
                              New York, NY 10019
                              Telephone: (212) 728-8000
                              jbaio@willkie.com

                                  Elizabeth J. Bower

                              1875 K Street, N.W.
                              Washington, D.C. 20006
                              Telephone: (202) 303-1000
                              ebower@willkie.com

                              *Attorneys for Defendants*