# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

**VIA ECF**

April 14, 2021

Honorable Ona T. Wang
United States Magistrate Judge
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     *BSG Resources Guinea Limited et al. v. George Soros et al.*, No. 1:17-cv-02726 (JFK) (OTW)

Dear Judge Wang:

The parties met and conferred on April 9, 2021 by telephone.  Below are their positions on certain discovery issues, all of which have been or may still be amicably resolved.

## Issue 1:  Depositions of Beny Steinmetz and Dag Cramer

After offering to do so at the parties' April 9 meet and confer, Plaintiffs contacted Mr. Steinmetz and Mr. Cramer (either directly or through their counsel) to request that they voluntarily agree to be deposed in this action.  To the extent they do not agree to do so, Defendants request the opportunity to present the Court with legal authority and argument on why Rule 30(b)(1) requires Plaintiffs to produce these witnesses, and the consequences of their failure to produce witnesses.  Plaintiffs maintain their position that Mr. Steinmetz and Mr. Cramer are not subject to deposition under Rule 30(b)(1) and will oppose any such authority and arguments presented by Defendants.

## Issue 2:  Confidentiality Orders

**Defendants' Position**:  Plaintiffs have identified confidentiality orders from the LCIA and ICSID actions that govern certain information from those proceedings.  (*See* Ex. 1 (LCIA Procedural Order No. 2); Exs. 2-11 (ICSID Procedural Orders).)  These documents include certain witness statements – *which this Court ordered produced on April 8, and which Plaintiffs failed to produce, citing those same restrictions* – and, with respect to the LCIA arbitration, all documents submitted to the tribunal and documents produced by other parties.  Not only have Plaintiffs been aware of their impending discovery obligations for months, but this issue was raised with Judge Peck in 2017 and he ordered Plaintiffs to find out whether they could seek a "waiver of that confidentiality or whatever would be the procedural way to go about this before the [LCIA] arbitration."  (ECF No. 97 at 23:21-24-2.)  During the parties' April 9 meet and confer, Plaintiffs agreed to contact their adversaries in those actions (Vale and Guinea, respectively), and then to seek leave from both tribunals to produce all responsive materials.  Plaintiffs should have done so long before now, and should be ordered to do so immediately to the extent they have not already (Plaintiffs represent to have contacted Vale, but not Guinea).  The LCIA and ICSID arbitrations are not mere "secondary or tertiary" proceedings, as Plaintiffs contend; those proceedings dealt with the same core issue of Plaintiffs' bribery of Mamadie Touré, and many of the documents there are likely responsive here.  Moreover, any responsive documents considered by the LCIA tribunal bear on collateral estoppel.  In addition, Plaintiffs contend that certain materials that relate to criminal proceedings in Guinea and Switzerland are barred from

Honorable Ona T. Wang
April 14, 2021
Page 2

production by applicable laws, but they have not identified what they will withhold (nor could they, since they apparently are still collecting and reviewing materials). Defendants should not have to guess what they are not receiving – particularly given the ongoing uncertainty (discussed below) regarding what information Plaintiffs do and do not have in their possession. Once Plaintiffs complete their collection, review and production and contact the tribunals, perhaps they can produce everything responsive. But if they withhold documents, Plaintiffs should have to log them.

**Plaintiffs' Position**: Evidence from other proceedings is secondary or tertiary at best. Nonetheless, in accordance with the Court's directive, Plaintiffs complied and produced around 900 pages including 22 witness statements, various ICSID and LCIA procedural orders and other relevant rules and orders. As Defendants concede, the ICSID/LCIA orders (Exs. 1-11) directed confidentiality over certain material, which included certain witness statements and portions of other documents. The witness statements we produced were those submitted on behalf of parties that were not covered by a confidentiality order. In accordance with Issue 6 from the April 7 order (ECF 209), we met and conferred about confidentiality. Defendants do not accurately describe our meet and confer and Plaintiffs' statements on this issue. Plaintiffs expressly explained that (a) BSGR will ***not withhold*** its own documents in its possession that it produced in any arbitration or action because of any protective order, rule, or law (including the LCIA); and (b) BSGR would *only* withhold from ICSID/LCIA those other relevant/responsive documents that were covered by confidentiality orders from ICSID/LCIA. BSGR explained to Defendants that LCIA Procedural Order No. 2 makes the entire LCIA "arbitration proceedings" confidential "subject to any Party applying for an exception and the Tribunal granting such application" (Ex. 1 at 7; BSGRSOR00017930). This clearly includes witness statements, briefs, exhibits, etc. No LCIA waiver was obtained in 2017 prior to the stay being ordered (while LCIA was actively being arbitrated). Now, Vale has agreed that their LCIA documents can be produced. Approval is still needed from the LCIA. BSGR has contacted the LCIA to determine the process necessary to apply for an exception. BSGR will make that application as soon as possible once it learns the required process. As we discussed at the meet and confer, ICSID is more complicated because it is formally stayed and still ongoing; BSGR is exploring its options for ICSID. Thus, BSGR is already doing what Defendants ask the Court to order them to do; there is no need for an order. Also, Defendants need not "guess what they are not receiving"; there is no need for a log, which would be punitive and wholly disproportionate especially given that Defendants are producing nothing at all in discovery. There are several Procedural Orders from ICSID that limit production of various material (for example, Nos. 4, 6, 8, 10, 12, 13; Exs. 3, 4, 6-9). These orders specifically explain and identify the type of material being withheld and the basis for it being withheld. For example, ICSID Procedural Order No. 4 restricts "nine exhibits containing copies of witness interrogations in the course of Swiss criminal proceedings and references to these exhibits" and explains the basis for these restrictions (Ex. 3 at 4; BSGRSOR00017695). It also restricts "14 exhibits containing copies of witness statements made in Guinean criminal proceedings" and references thereto (Ex. 3 at 3; BSGRSOR00017694). These documents clearly identify the Swiss/Guinean criminal proceedings material they are protecting.

## Issue 3:  Plaintiffs' Document Collection

**Defendants' Position**: Along with their April 8 production ordered by this Court, Plaintiffs sent Defendants a letter opaquely stating that BSGR "faced a series of challenges getting access to documents and information for production" and Plaintiffs will supplement their production "if and when" they receive additional documents. (Ex. 12.) During the parties' April 9 meet and confer,

Honorable Ona T. Wang
April 14, 2021
Page 3

counsel to the new joint administrators stated that there are approximately 24,000 documents that have not been turned over by the prior joint administrators, which may include documents collected in 2017 for production in this action prior to Judge Keenan issuing the stay.  Plaintiffs have not stated what documents they are missing nor could they tell Defendants when they will receive them.  In addition, Plaintiffs were unable to answer the most basic questions, such as whether they have in their possession all of the documents produced in the LCIA and ICSID arbitrations, the name of the third party vendor hosting documents collected in 2017 that apparently is now refusing Plaintiffs access to such documents, and the basis for that refusal.  (In the course of exchanging drafts of this joint letter, Plaintiffs now represent that they in fact have access to all documents previously collected in 2017.)  To better understand Plaintiffs' collection and assess any deficiencies in it or future productions, on April 12, Defendants sent Plaintiffs a letter seeking answers to a number of fundamental questions.  (Ex. 13.)  Given that the Court is considering issues related to scheduling, Defendants wanted to alert the Court to this issue promptly.  Plaintiffs have agreed to respond to this letter by April 20.  The parties can then meet and confer, and raise any issues with the Court via joint letter by a date of the Court's choosing.

**Plaintiffs' Position**:  Defendants' description of the meet and confer is inaccurate. For example, BSGR does have access to the documents previously collected in 2017 for production; we did not say otherwise at the meet and confer.  Moreover, Plaintiffs explained to Defendants at our meet and confer that the main reason for our mentioning the challenges in our production cover letter (Ex. 12) was a good faith attempt to highlight what is most likely an issue of timing.  We explained that it was our expectation that almost all of the challenges/issues would likely be resolved soon.  The main issue was that BSGR's production would be more limited initially and BSGR may need a few weeks longer for substantial completion of production.  We have been using Defendants' proposed discovery dates (from the February 11 proposed case management plan, ECF 202) in communications and told Defendants via email that Defendants' proposed discovery dates are generally acceptable although we *may* need an additional few weeks for substantial completion of production (through mid-June) as a result of the challenges faced as a result of the Guernsey Court-ordered change of administrators.  At the time we submitted our proposed schedule (February 11), these issues were not yet fully evident.  While we do not think that our attempt to alert Defendants to potential timing issues concerning production warrants the type of letter sent to us on April 12, we have in good faith agreed to respond by Tuesday April 20 and to meet and confer about those responses thereafter.

<u>**Issue 4:  Letters Rogatory**</u>

The parties have met and conferred regarding the scope of the proposed letters rogatory in light of this Court's prior order and exchanged drafts of the same.  The parties have resolved their disputes and Defendants will file final versions of the letters rogatory today, which Defendants request that the Court so-order.  The deadline for the completion of the requested depositions has been left blank.  So the parties have agreed that the deadline to complete international third party depositions should be two weeks prior to the deadline to complete depositions, or a date of the Court's choosing.

Respectfully,

/s/ Benjamin P. McCallen

Benjamin P. McCallen