UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BSG RESOURCES (GUINEA) LIMITED, BSG RESOURCES (GUINEA) SÀRL, and BSG RESOURCES LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGE SOROS, OPEN SOCIETY FOUNDATIONS, OPEN SOCIETY INSTITUTE, FOUNDATION TO PROMOTE OPEN SOCIETY, OPEN SOCIETY FOUNDATION, INC., ALLIANCE FOR OPEN SOCIETY INTERNATIONAL INC., OPEN SOCIETY POLICY CENTER, and OPEN SOCIETY FUND,<br><br>Defendants. | No. 1:17-cv-02726 (JFK) (OTW) |

**APPLICATION FOR THE ISSUANCE OF A REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) TO THE REPUBLIC OF GUINEA**

Defendants George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund (collectively, "Defendants"), respectfully apply pursuant to Title 28 of the United States Code, Section 1781 and Federal Rule of Civil Procedure 28(b) for the issuance of an Order by the Court (attached as Exhibit A) for a letter rogatory requesting assistance from the appropriate judicial authority of the Republic of Guinea ("Guinea") in the form attached as Exhibit B (the "Letter Rogatory").

In support of this application, Defendants respectfully represent as follows:

## BACKGROUND

1. In 2010, after years of rule by a military dictatorship, the west-African Republic of Guinea conducted its first democratic presidential elections. Defendants contend that

after winning the election and taking office, President Alpha Condé and the newly-elected government undertook a review of mining licenses that had been granted by the prior military regime. As part of this process, Guinea enacted a revised mining code and established a National Mining Commission ("NMC") which was "granted the power to examine the 'extension, renewal, lease and cancellation applications for mining titles on the basis of the [2011] Mining Code.'" (ECF No. 22 ¶ 98.)[1] The NMC's responsibilities were divided among two subcommittees: a Strategic Committee and a Technical Committee. (*Id.*) The Technical Committee was "to serve as 'the operational arm of the [NMC] concerning the overall continuation, redevelopment or withdrawal' of mining licenses." (*Id.* ¶ 99). Plaintiffs contend that the aforementioned actions were carried out in accordance with Defendants' strategy and financed by Defendants as set forth in the Amended Complaint. (*See, e.g.*, ¶¶ 98-99).

        2.        The Technical Committee was responsible for reviewing mining contracts with various companies, including Plaintiffs, which had obtained lucrative mining rights in the Simandou region of Guinea. Defendants contend that after a lengthy investigation during which Plaintiffs had the opportunity to present exculpatory material, the Technical Committee concluded that Plaintiffs had used bribery and corruption to procure their mining rights. (¶ 114.) Specifically, the Technical Committee found that Plaintiffs procured their mining rights by bribing Mamadie Touré, the fourth wife of former President Lansana Conté, to influence him to strip the rights from another company and award them to Plaintiffs instead. (¶ 151.) On March 21, 2014, the Technical Committee issued a report (the "Technical Committee Report"), which recommended that Plaintiffs' mining rights be terminated by the Minister of Mines and Geology and President Condé. (¶ 151.) In making its decision, the Technical Committee relied on, among other things, an

---

[1] Unless otherwise noted, the citations to paragraphs refer to the paragraphs in the Amended Complaint.

affidavit by Mamadie Touré admitting to accepting bribes from Plaintiffs and agreements between Ms. Touré and Plaintiffs or their associates related to those bribes.  On April 2, 2014, the Strategic Committee issued an opinion to President Condé and the Minister of Mines and Geology agreeing with the Technical Committee's report and recommendation.  (¶ 155.)  Thereafter, President Condé and the Minister of Mines and Geology terminated Plaintiffs' mining rights.  (¶¶ 155-59). Plaintiffs dispute any and all allegations relating to bribery and corruption and dispute the validity of the alleged documents referenced herein.

3.     Following termination of their mining rights, in August 2014, Plaintiffs initiated an arbitration against Guinea before the International Centre for the Settlement of Investment Disputes in Paris (the "ICSID Arbitration"), alleging, among other things, that the termination of Plaintiffs mining rights by the government of Guinea was an unlawful taking without compensation which constituted breaches of Guinean and International law.  (¶ 166.)  By July 9, 2018, all argument and evidence was submitted in the ICSID Arbitration, and all that remained was for the tribunal to issue an award.  Before it could do so, the proceedings were stayed by consent of the parties therein pending settlement discussions.

4.     On June 30, 2017, Plaintiffs filed an amended complaint in this Court (the "Amended Complaint") against the Defendants, alleging, among other things, that Defendants caused the termination of Plaintiffs' iron ore mining rights in the Republic of Guinea ("Guinea") on the basis of allegedly false allegations that Plaintiffs engaged in bribery and corruption to procure those rights.  (*See, e.g.*, ¶¶ 84, 181-184.)  Plaintiffs have asserted claims against all of the Defendants for tortious interference with contract, conspiracy to commit tortious interference with contract, and commercial defamation, as well as claims for fraud, conspiracy to commit fraud, and prima facie tort against Mr. Soros.  (*Id.*)

3

5. On July 28, 2017, Defendants filed a motion to dismiss the Amended Complaint or, in the alternative, to stay the Action in favor of a pending arbitration between Guinea and Plaintiffs before the International Centre for the Settlement of Investment Disputes (the "Motion"). (ECF No. 56.) On November 29, 2017, the Court granted Defendants' alternate request for a stay pending the outcome of the ICSID Arbitration. *See BSG Res. (Guinea) Ltd. V. Soros*, No. 17 Civ. 2726 (JFK), 2017 WL 5897450, at *5 (S.D.N.Y. Nov. 29, 2017).

6. While the stay was pending, on April 4, 2019, the London Court of Arbitration ("LCIA") issued an award in an arbitration between Plaintiff BSG Resources Limited ("BSGRL") and its former business partner, Vale S.A. ("Vale"), which unanimously found BSGRL liable for fraudulent misrepresentation and breaches of warranty, that included a finding that BSGRL procured mining rights through bribery and corruption, and awarded Vale over $2 billion in damages, interest, and costs (the "LCIA Award"). Specifically, the tribunal found, among other findings, that BSGRL obtained ' mining rights in connection with bribing Mamadie Touré (who is alleged to have been the fourth wife of the former President Lansana Conté) both directly and through intermediaries, including Pentler Holdings Limited ("Pentler"). (*See* ECF No. 172 (LCIA Award) ¶¶ 642, 676.10.). Plaintiffs maintain that the entire LCIA finding was mistaken and dispute any and all of Defendants' allegations concerning bribery and corruption.

7. On August 28, 2020, Defendants filed a renewed motion to dismiss the Amended Complaint arguing, among other things, that Plaintiffs are collaterally estopped from pursuing their claims by the LCIA Award's finding that BSGRL procured mining rights in connection with bribery of Mamadie Touré. (ECF No. 171.) On October 26, 2020, Plaintiffs opposed the motion, including Defendants' characterization of the LCIA's findings and the application of collateral estoppel. (ECF. No. 181.) Oral argument on the motion was held on

November 24, 2020.

8. On January 25, 2021, the Court issued an order lifting the stay to allow the parties to conduct limited discovery into three issues: (1) whether Plaintiffs bribed Mamadie Touré; (2) whether that bribery was connected to Plaintiffs' acquisition of mining rights included in the Convention; and (3) whether the Guinean government was permitted to, and did, terminate Plaintiffs' mining rights because of Plaintiffs' bribery of Mamadie Touré. (ECF No. 193)

9. Defendants now seek documents from the government of Guinea and testimony from certain former or current members of the Guinean government. Based on the foregoing, Defendants believe that Guinea possesses information critical to all three issues identified in Judge Keenan's January 25, 2021 order. Defendants' need for this information to be produced by Guinea is particularly compelling here for at least three reasons.

10. *First*, information related to issue (3)—whether the Guinean government terminated Plaintiffs' mining rights because of Plaintiffs' alleged bribery of Mamadie Touré—is uniquely in the possession of the Guinean government. While Defendants believe the Technical Committee Report directly addresses this issue, Defendants believe that Guinea possesses additional information regarding its decision to terminate Plaintiffs' mining rights based on its finding that Plaintiffs' obtained their rights by bribing Mamadie Touré.

11. *Second*, Plaintiffs' alleged bribery of Mamadie Touré and Guinea's corresponding termination of Plaintiffs' mining rights have been extensively litigated in the ICSID Arbitration, to which Guinea is a party. Defendants believe that documents produced or submitted in that proceeding, or otherwise in the possession of Guinea, are therefore highly relevant.

12. *Third*, there are at least two issues that implicate Guinean law: (i) the authority of the Guinean government to terminate Plaintiffs' mining rights (in response to issue #3

in Judge Keenan's order) and (ii) the effect under Guinean law of the Guinean prosecutor's decision to withdraw criminal charges against individuals accused of participating in Plaintiffs' alleged bribery scheme in Guinea. While these issues may necessitate expert testimony, additional factual information from Guinea is necessary to develop these issues.

13. Therefore, Defendants request that the Court issue the attached Letter Rogatory seeking the assistance of the appropriate judicial authority of the Republic of Guinea in collecting documents located in Guinea as set forth in Schedule A of the Letter Rogatory that are in the possession, custody or control of Guinea, and that can only be obtained through a request for international judicial assistance.

14. The parties have conferred and Defendants have agreed that any documents produced in response hereto will be produced to all parties to the litigation. Plaintiffs take no position with regard to the allegations in this request, other than to deny the allegations concerning any supposed corruption and bribery relating to Plaintiffs or to BSGR's procurement of its mining rights.

**RELIEF REQUESTED**

15. Accordingly, Defendants respectfully request, for the purpose of justice and due determination of the matters in dispute between the parties, this Court's assistance in collecting documents located in Guinea as set forth in Schedule A of the Letter Rogatory for use at trial in the above-captioned action.

16. The person from whom evidence is sought by the Letter Rogatory is the government of the Republic of Guinea.

17. The documents sought are material to Defendants' defenses.

18. Defendants have considered the requirements of the appropriate judicial

authority of Guinea with respect to Letters Rogatory, including the form in which the Letter Rogatory should be presented to the Guinean judicial authority and its permissible content. Defendants believe that this Letter Rogatory is consistent with those requirements.

WHEREFORE, Defendants respectfully request that the Court enter the attached form of order (i) providing for this Court to sign the Letter Rogatory attached to the Application as Exhibit B and affix the seal of the United States District Court for the Southern District of New York over said signature in the Letter Rogatory; (ii) directing that the Clerk of the Court return the original, signed Letter Rogatory to counsel for Defendants, so that said documents may be transmitted to the United States Department of State; (iii) directing counsel for Defendants to cause the transmittal of the original, signed Letter Rogatory to the United States Department of State; and (iv) granting such other relief as the Court deems just and proper.

Dated: April 14, 2021  
New York, New York

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: /s/ Benjamin P. McCallen
   Joseph T. Baio
   Benjamin P. McCallen
   James Fitzmaurice

787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
bmccallen@willkie.com

   Elizabeth J. Bower

1875 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
ebower@willkie.com

*Attorneys for Defendants*