UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

BSG Resources (Guinea) Limited, BSG
Resources (Guinea) Sàrl, and BSG Resources
Limited,

                Plaintiffs,

                -against-

George Soros, Open Society Foundations,
Open Society Institute, Foundation to
Promote Open Society, Open Society
Foundation, Inc., Alliance for Open Society
International, Inc., Open Society Policy
Center, and Open Society Fund,

                Defendants.

_____

No. 1:17-cv-02726 (JFK) (OTW)


**PLAINTIFFS' RESPONSE TO THE COURT'S *SUA SPONTE* APRIL 22, 2021 ORDER
TO SHOW CAUSE AND OPPOSITION TO ANY IMPOSITION OF SANCTIONS**

Louis M. Solomon
Michael S. Lazaroff
REED SMITH, LLP
599 Lexington Avenue
New York, New York 10022
(212) 549-0400
*Attorneys for Plaintiffs BSG Resources
(Guinea) Limited, BSG Resources
(Guinea) Sàrl, and BSG Resources
Limited*

April 26, 2021

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

PERTINENT FACTS ....................................................................................................2

     A.     SEPTEMBER 1, 2017 DISCOVERY CONFERENCE ........................................2

     B.     STEPS TAKEN BY PLAINTIFFS TO COMPLY WITH THEIR
             UNDERTAKING TO JUDGE PECK ...................................................................5

     C.     THE COURT'S 2017 STAY ORDER....................................................................8

     D.     PARTIAL LIFTING OF THE STAY ON DISCOVERY IN 2021 ......................9

     E.     STEPS TAKEN BY PLAINTIFFS AFTER THE DISCOVERY STAY
             WAS PARTIALLY LIFTED................................................................................10

ARGUMENT ..............................................................................................................13

I.       SANCTIONS ARE NOT WARRANTED ......................................................13

     A.     No Sanctions are Warranted Under Federal Rule 16............................................15

     B.     No Sanctions are Warranted Under Federal Rule 37(a)(5)(A)-(C) .......................18

     C.     No Sanctions are Warranted Under 28 U.S.C. § 1927..........................................20

     D.     No Sanctions are Warranted Under the Inherent Power of the Court...................21

II.     THE SCOPE AND VOLUME OF THE LCIA DOCUMENTS ......................22

CONCLUSION............................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Act Now To Stop War & End Racism Coal. v. District of Columbia*,
    846 F.3d 391 (D.C. Cir. 2017) ................................................................ 16

*Ashlodge, Ltd. v. Hauser*,
    163 F.3d 681 (2d Cir. 1998) .................................................................. 16

*Brown v. City of Syracuse*,
    623 F.Supp.2d 272 (N.D.N.Y. 2009) .................................................... 17

*BSG Res. (Guinea) Ltd. v. Soros Ltd. v. Soros*,
    2021 U.S. Dist. LEXIS 13367 (S.D.N.Y. 2021) ............................... 9, 14

*BSG Res. (Guinea) Ltd. v. Soros Ltd. v. Soros,*
    2017 U.S. Dist. LEXIS 196141 (S.D.N.Y. 2017) .................................. 8

*Canon Solutions Am. v. Gungap*,
    2016 U.S. Dist. LEXIS 190647 (C.D. Cal. Feb. 8, 2016) .................... 16

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
    2017 U.S. Dist. LEXIS 127255 (S.D.N.Y. July 26, 2017) ............... 13-14

*Church of Scientology Int'l v. Time Warner*,
    1994 U.S. Dist. LEXIS 1095 (S.D.N.Y. Feb. 3, 1994) ......................... 21

*Comprehensive Habilitation Servs. v. Commerce Funding Corp.*,
    240 F.R.D. 78 (S.D.N.Y. 2006) ............................................................ 20

*El-Massri v. New Haven Corr. Ctr.,*
    2021 U.S. Dist. LEXIS 8952 (D. Conn. 2021) ..................................... 18

*Klein v. Torrey Point Group, LLC*,
    979 F.Supp.2d 417 (S.D.N.Y. 2013) ................................................ 19-20

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986) ............................................................... 22

*Pac. Elec. Wire & Cable Co. v. Set Top Int'l, Inc.,*
    2005 U.S. Dist. LEXIS 17977 (S.D.N.Y. Aug. 23, 2005) .................... 20

*Robinson Steel Co. v. Caterpillar, Inc.,*
    2012 U.S. Dist. LEXIS 166889 (N.D. Ind. Nov. 21, 2012) ................................................... 19

*Rosenblum v. Blackstone,*
    2020 U.S. Dist. LEXIS 250839 (C.D. Cal. Feb. 28, 2020) ................................................... 19

*Salahuddin v. Harris*,
    782 F.2d 1127 (2d Cir. 1986) ............................................................................................. 16

*U.S. v. Int'l B'hd of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991) ............................................................................................. 21

*Wilson v. Pasquale's DaMarino's, Inc.,*
    2013 U.S. Dist. LEXIS 41733 (S.D.N.Y. Mar. 24, 2013) ................................................... 17

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,
    811 F.3d 584 (2d Cir. 2016) ......................................................................................... 20-21

**Statutes and Rules**

28 U.S.C. § 1927 ................................................................................................. 20, 21, 22

Fed. R. Civ. P. 16 .................................................................................................. 15, 16, 17

Fed. R. Civ. P. 37 .................................................................................................. 17, 18, 19

Plaintiffs (collectively "BSGR") respectfully submit this response to the Court's April 22, 2021 Order to Show Cause requiring Plaintiffs to show cause in writing "why they should not be sanctioned for failure to timely comply with Judge Peck's September 1, 2017 order" to "find out whether they could seek a 'waiver of [LCIA] confidentiality or whatever would be the procedural way to go about this before the [LCIA] arbitration.' (ECF 97 23:21-24-2)."  See ECF 220.  Sanctions are not appropriate.  Plaintiffs fully complied with the discussion before Judge Peck, which at the time involved finding out about seeking discovery from an ongoing confidential international arbitration.  Furthermore, once the 3+ year stay issued by Judge Keenan (ECF 136 at 14) was partially lifted earlier this year, Plaintiffs also fully complied with any even arguable obligation to seek disclosure of documents in the now-closed but still confidential international arbitration.

Plaintiffs set out in detail below the steps they have taken in an attempt to provide as complete a record as they can, given the time this Court has given them to comply with the Court's *sua sponte* Order to Show Cause.  As the Court further directed, Plaintiffs also explain the scope and volume of the documents covered by the confidentiality order of LCIA procedural order number 2.

## PRELIMINARY STATEMENT

Plaintiffs respectfully and earnestly respond below to the Court's *sua sponte* Order to Show Cause.  The Order to Show Cause gave our client slightly more than one business day to respond to a directive, which Plaintiffs did not have any notice would be forthcoming, to supply information that is three and a half years old.  Since the Order to Show Cause was entered, counsel has spent as much time as possible, including at nights and over the weekend, to answer the Court's questions.  It is of critical importance for this Court to understand that since 2017 our

client has entered judicially supervised administration in Guernsey.  That makes instantaneous

reaction hard if not impossible.  Further, the judicially appointed new administrators (who were

not the administrators in 2017 and were not the administrators until September 2020) and

counsel from the LCIA are overseas.  So are the vendors who have control over various of the

documents being sought – vendors with respect to whom new agreements and payment

schedules needed to be negotiated this year in order to obtain any records.  Furthermore, to our

knowledge, virtually everyone is working remotely because of the COVID-19 pandemic (as

counsel are, here in the New York area).  As hard as the administrators are working, these and

other factors have increased the challenges to instantaneous response to the Court's Order to

Show Cause.  Plaintiffs – the client via the administrator, and the undersigned as counsel – fully

respect this Court's processes but believe the Court has been given a misimpression of the facts,

which Plaintiffs hope to correct below.

  For example, Plaintiffs began producing documents they had produced in the LCIA

proceeding before this action was stayed in 2017, and they will be producing the remainder of

such documents responsive to the current limited issues herein.  The discussion with Judge Peck

that this Court made the subject of the Order to Show Cause involved not BSGR's own

documents, but rather a small number of documents that a third party had provided under the

LCIA's confidentiality provisions.  Plaintiffs undertook to inquire into the salient order, and in

fact did so.  There has been no sanctionable conduct.  The facts herein are supported by the

attached declaration of Louis M. Solomon ("Solomon Decl.").

## **PERTINENT FACTS**

### A. **SEPTEMBER 1, 2017 DISCOVERY CONFERENCE**

The initial issue is the scope and context of what the Order to Show Cause describes as

"Judge Peck's September 1 order". At the September 1, 2017, conference, Judge Peck

considered various discovery issues raised by both parties that had been set forth in letters prior

to the conference. Judge Peck listened to argument on each issue one at a time. One issue raised

by Defendants was the production of documents from a nonparty entity called Pentler and an

individual related to it, Frédéric Cilins. Plaintiffs did not control this entity or Mr. Cilins. Judge

Peck directed Defendants to seek Cilins' documents through a subpoena on Frédéric Cilins (ECF

97, Solomon Decl. Ex. 1, at 20:21-21:3). Judge Peck explained that "there are relationships and

there are legal issues. Mr. Cilins may well have been an associate of Mr. Steinmetz. That

doesn't mean, as a matter of law, that Mr. Steinmetz has control over Mr. Cilins' documents."

(*id.* at 21:12-15). Similarly, with Pentler, Judge Peck directed Defendants to go through the

Hague Convention (*id.* at 23:2-11). Then, Judge Peck turned to a small subset of Pentler

documents (approximately 49 documents, *see infra* Section II) that had been produced in the

LCIA under express rules of confidentiality and were protected by the confidentiality order in

place there. Judge Peck said "[t]hen, you know, query whether you have the right to intervene in

the London arbitration for purposes of getting that material. My guess is there's no way to do

that. Where is Pentler located?" (*Id.* at 22:15-16). After the Hague Convention discussion, the

following colloquy took place concerning the LCIA confidentiality order as it related to the small

number of Pentler documents that had been produced in the LCIA proceedings:

> MS. BOWER: Thank you, your Honor. With respect to the confidentiality order, may
> we ask whether there is a provision in that order allowing for documents to be
> produced pursuant to an order of the court?
>
> MR. LAZAROFF: Your Honor, I have not seen the confidentiality order. I'm not sure
> I'm allowed to. I haven't seen it.
>
> THE COURT: Well, BSGR is in that proceeding?
>
> MR. LAZAROFF: I can inquire.

> THE COURT: Inquire. And if there is a way -- I mean, if it says, for example, you may not produce it unless ordered by a court of competent jurisdiction, that's a different situation.  So find that out, find out if it allows you to move on behalf of Mr. Soros for a waiver of that confidentiality or whatever would be the procedural way to go about this before the arbitration.

> MR. LAZAROFF: Will do so, your Honor.

Solomon Decl., Ex. 1 (ECF 97, 23:12-24:3).

What this Court included in its *sua sponte* Order to Show Cause, then, arose from a request for a subset of documents originating from a third party.  BSGR undertook to inquire about the LCIA order, exactly as Judge Peck asked.  Judge Peck confirmed that BSGR should inquire about whether the order permitted the Pentler documents to be produced if "ordered by a court of competent jurisdiction" or if the order allowed for BSGR to move for a waiver.  Judge Peck did not provide any timeframe or deadline for his request or follow-up mechanism.  Nevertheless, as detailed below (Fact Section B), Plaintiffs immediately set about complying with their undertaking.

Later in the same conference, Judge Peck considered more broadly the issue of the documents from the LCIA proceeding (and other related proceedings), which was referred to at the conference as "issue 4".  Plaintiffs here set this out in detail because it bears importantly on their undertaking concerning the Pentler documents and on the extensive evidence of their compliance.  Judge Peck stated:

> THE COURT: All right. As to that arbitration [LCIA], anything you have produced there that is relevant to any of the requests here need to be produced.  No disagreement on that; right?

> MR. LAZAROFF: No disagreement, your Honor.

Solomon Decl., Ex. 1 (ECF 97 at 30:2-6).

A little later, Judge Peck continued:

THE COURT: All right. Does that finish the issue of No. 4 from both sides' points of view?

MS. BOWER: Well, our request with respect to four, your Honor, is that we receive *whatever plaintiffs produced*. *We weren't trying to pry behind productions by other parties*, just --

THE COURT: Then that's even easier.

MS. BOWER: Just for clarity. But they have told us that they're only going to produce what is otherwise responsive to our other requests, and our request was produce what you've provided in these proceedings.

(*Id.* 31:8-18) (emphasis added).  Thus, Defendants made clear that what they were looking for were the documents produced by BSGR in the other proceedings (including the LCIA).  Shortly thereafter, and as a result, Judge Peck said "[t]he London arbitration. You will produce what you produced there that is otherwise relevant to their discovery".  Judge Peck did not repeat the issue related to the Pentler documents (*id.* at 31:19-21).  And Plaintiffs agreed to the requested production as to their documents, assuming there was no bar to that production by reason of the orders entered in other litigation.

## B.   STEPS TAKEN BY PLAINTIFFS TO COMPLY WITH THEIR UNDERTAKING TO JUDGE PECK

In the recitation that follows, Plaintiffs do not intend to and do not waive any privileges or immunities, which they have no authority to do.  Plaintiffs immediately took steps to comply with their undertaking to make inquiries into how Plaintiffs could produce more LCIA documents notwithstanding the confidentiality order.  Immediately after the conference, on September 1, 2017, Plaintiffs' counsel reported the substance of the discussion before Judge Peck, including specifically Judge Peck's statements about the LCIA inquiry, to BSGR and to BSGR's then-counsel in the London LCIA proceeding.  That Plaintiffs' counsel communicated about this issue on the very day of the conference highlights the diligence Plaintiffs exercised in attempting to respond to Judge Peck's statement.  Plaintiffs' counsel sent them the transcript

when it became available, on September 7, 2017.  On numerous occasions thereafter, including

on September 14 and 18, 2017, counsel for BSGR in this action discussed or communicated

about the LCIA documents with both client, other counsel for the client, and/or London LCIA

counsel for BSGR.  At the time, the LCIA proceeding was ongoing.

Again without waiving any privilege or immunity, counsel for BSGR in this proceeding

understood from counsel for BSGR in the LCIA proceeding that LCIA counsel believed that the

rules of the LCIA required that confidentiality needed to be maintained with respect to certain of

the documents created in and for the LCIA proceedings.  Confidentiality orders from other

proceedings (including arbitral tribunals) need to be respected and treated with care.  Counsel for

BSGR was working through those issues concerning the documents such confidentiality would

apply to, which did not include the BSGR documents and did not, it turns out, include the Vale

documents – which were the vast preponderance of the documents – until this action was stayed.

At the same time, discovery was proceeding on all fronts, and Plaintiffs could not know

that a stay would be entered on November 29, 2017, less than three months after the September

1, 2017 conference with Judge Peck.

As part of the ongoing discovery, BSGR's own documents, which were the first-order

documents – rather than hearsay third party witness statements from another proceeding – were

being reviewed for relevance and privilege.  As Judge Peck requested and BSGR agreed, BSGR

began producing relevant, responsive documents from its LCIA production as part of its

productions in this litigation.  Those included productions on September 6, 2017, October 27,

2017, and November 24, 2017, totaling 2611 pages.  Those documents were produced pursuant

to the confidentiality order in this action as a means of respecting the LCIA process and of

complying with any arguable undertaking to Judge Peck.

BSGR took additional steps to comply with the discussion before Judge Peck.  In November 2017, counsel for Vale agreed to produce the documents it produced in the LCIA. There were then negotiations about whether all such documents should be produced or just responsive, relevant documents.  These negotiations did not conclude prior to the issuance of the stay in this action.

Further evidence of compliance occurred.  For example, in November 2017, counsel for BSGR in this action and counsel for Defendants in this action met and conferred about many issues, including LCIA documents.  This meet and confer occurred on November 17, 2017. Thereafter, there were additional communications.  On the morning of November 29, 2017, as a result of the meet and confer, Plaintiffs agreed to provide Defendants with the relevant LCIA procedural order.

Between September and November 2017, the parties in this case were engaged in good faith discovery efforts.  Those included communicating with and meeting and conferring with defendants, production of documents, negotiating search terms including reviewing search results, service of subpoenas, negotiation of production with numerous third parties, responding to interrogatories, and negotiating and agreeing to letters rogatory.  They also included BSGR beginning to produce its own LCIA documents, working through the production of the Vale LCIA documents, and doing factual and legal research into the production of the few third party LCIA documents as to which LCIA counsel for BSGR raised a concern.

As of the time of the stay of discovery less than 90 days after the September 1, 2017 conference with Judge Peck, Defendants in this action had not filed any motion or objection to Plaintiffs' compliance with their undertaking to Judge Peck.  The parties had not appeared again before Judge Peck.  Nor did Plaintiffs believe that their compliance was in any respect deficient.

The beginning of production of BSGR's LCIA documents (given the explicit order of confidentiality), consulting extensively with LCIA counsel, and negotiating LCIA issues with Vale and Defendants show that BSGR was complying with Judge Peck's statement from the September 1 conference prior to the issuance of the stay.  BSGR in good faith believes it was fully complying with the discussion before Judge Peck.

### C.    THE COURT'S 2017 STAY ORDER

On November 29, 2017, Judge Keenan stayed the entire action pending the outcome of the ICSID arbitration.  *BSG Res. (Guinea) Ltd. v. Soros,* 2017 U.S. Dist. LEXIS 196141, *15 (S.D.N.Y. 2017), ECF 136 at 14 ("Defendants' motion to stay this action pending the outcome of the Arbitration between Plaintiffs and Guinea is GRANTED").  This order "stay[ed] this action," and included a termination of Defendants' then pending motion to dismiss (*id*.).  Other than applications concerning already issued letters rogatory (*see* ECF 137-143, 146), there is no question that the action was stayed in its entirety.  As mentioned, at no point prior to the issuance of the stay did Defendants again raise LCIA documents with Judge Peck.  Once the stay was issued, efforts to effectuate discovery from LCIA would have been a violation of the stay. Whatever orders that existed relating to requests for production were suspended.

BSG Resources Limited entered administration in Guernsey in March 2018 with the Guernsey court appointing an administrator. The LCIA arbitration tribunal issued its judgment in the *Vale v. BSGR* matter on April 4, 2019.

On July 28, 2020, Judge Keenan partially lifted the stay of the action, solely to permit Defendants to make a new motion to dismiss (Dkt, 7/31/2020 Minute Entry).  The case otherwise remained stayed.

In September 2020, the Guernsey court appointed a new administrator to replace the initial administrator.

The stay of discovery in this action remained fully in effect until January 25, 2021 or for 1,153 days – more than 87% of the 1,321 days mentioned in this Court's Order to Show Cause. Even then, the stay was lifted for only a limited set of issues.

### D.   PARTIAL LIFTING OF THE STAY ON DISCOVERY IN 2021

On January 25, 2021, Judge Keenan ordered that "the stay on discovery is LIFTED on the limited questions of [three issues] . . . .   The parties are to proceed to such limited discovery under the supervision of Magistrate Judge Ona T. Wang". *BSG Res. (Guinea) Ltd. v. Soros*, 2021 U.S. Dist. LEXIS 13367, *28 (S.D.N.Y. 2021).

The Court's decision did not discuss the impact of existing discovery orders, if any. Judge Keenan's order established a new limited proceeding that did not necessarily resuscitate the prior one or any orders from the earlier, broader discovery period.  On January 26, 2021, Judge Keenan issued an amended order referring the case to Magistrate Judge Wang for general pretrial issues (ECF 194) despite the fact that the case had previously been referred to Magistrate Judge Wang for pretrial issues on March 5, 2018.

There was no reason to believe that the earlier document requests or orders or undertakings related to them would be or were resurrected.  Indeed, at the February 5, 2021 conference, Judge Wang considered the issue of continuity and instead directed:

> I am going to have you propound new discovery requests on, party discovery requests, because I don't want to be reworking what my predecessor did with your prior discovery requests that were much broader.  Let's have you focus on propounding new written discovery, setting a timeline for that, limited to these three issues that Judge Keenan articulated.

Solomon Decl, Ex. 2, ECF 197, 2/5/2021 Tr. at 28:12-17.  As a result of the post-lifting of the stay proceedings, Plaintiffs reasonably understood that Defendants would serve additional discovery requests for discovery they wished to propound in this new phase of the case.  It was not immediately apparent that Defendants would seek LCIA documents other than those

produced by BSGR (the relevant/responsive ones of those BSGR has agreed to produce and began to produce in 2017) and Vale, who were the parties to that proceeding.

### E.   STEPS TAKEN BY PLAINTIFFS AFTER THE DISCOVERY STAY WAS PARTIALLY LIFTED

The parties discussed LCIA documents in the February 3, 2021 joint letter to this Court (ECF 196), and Defendants served Plaintiffs with new requests for production on February 17, 2021. Those requests included a request for all documents and communications from the LCIA arbitration.

Again without waiving any privilege or immunity, as soon as counsel for BSGR in this action learned that Defendants were seeking documents from the now-closed LCIA proceeding in addition to the documents of the parties in that proceeding, counsel for BSGR communicated with the administrators of BSGR. This administrator was not on the scene in 2017 and thus knew nothing of the events then (in fact the current court-ordered administrator replaced a prior administrator in September 2020). Counsel for BSGR in the LCIA was also, to Plaintiffs' counsel's knowledge, no longer engaged. And the repository of any LCIA documents, two or possibly three document management services, were not active. Independent communications and fee arrangements would need to be negotiated and agreed to between the administrators and those entities. Additionally, Plaintiffs' counsel spoke with Israeli counsel including about LCIA issues a number of times, including on February 4, February 7, and February 18.

Over the month since then, counsel for BSGR and the administrators have been extensively engaged in trying to secure production of additional LCIA documents. These efforts include those below:

- The parties discussed LCIA documents in the February 3, 2021 joint letter to this Court (ECF 196), and Defendants served Plaintiffs with new requests for

production on February 17, 2021.  Those requests included a request for all documents and communications from the LCIA arbitration.

- Counsel for BSGR communicated with the administrator concerning obtaining access to and subsequent production of the LCIA documents including on March 5, 2021, March 15, 2021, and March 17, 2021.

- The administrator was engaged in this process through March and early April when access to LCIA documents was obtained. This process included BSGR negotiating interim agreements with at least one of the document repository companies to secure access to certain of the other LCIA documents and other BSGR documents.  Plaintiffs' counsel understands that this too took time and multiple communications both by the administrator and by counsel.  These documents need to be reviewed for responsiveness, relevance and privilege. These documents are also in some cases covered by the still-extant LCIA and ICSID confidentiality orders.  Plaintiffs' counsel are still processing and reviewing the material.

- Counsel for BSGR commenced review of the BSGR LCIA documents.  These documents need to be reviewed for responsiveness (and privilege), among other things.  Documents relevant to the three issues from these LCIA productions (BSGR and Vale) will be produced pursuant to the confidentiality order in this action.  There are in excess of approximately 83,000 pages of BSGR's LCIA documents.

- Counsel for BSGR has negotiated and secured permission to produce all the Vale LCIA documents.  This process mainly occurred during the period between

11

March 22-April 13, 2021.  There are in excess of approximately 53,000 pages of these documents.

- It bears important noting that now (unlike in 2017), the LCIA proceeding is completed and closed.  The Tribunal is disbanded.

- Counsel for BSGR also communicated with former counsel for BSGR in the LCIA proceeding to help secure production of the remaining LCIA materials. These communications occurred on April 12, 13, 15, 19, and 22, 2021.

- Counsel for BSGR has also conferred directly the LCIA by phone and in writing to see if there was a process by which to seek permission to produce the remaining LCIA documents.  These occurred on April 12 and 13, 2021.  That led to additional oral and written communications, including on April 15, 2021. Based on Plaintiffs' counsel's efforts, Plaintiffs' counsel then received information about contacting the President of the Tribunal at the time of the LCIA decision (2019) asking him about a process for permitting disclosure.  Counsel for BSGR reached out to that person as well, as soon as they received that information from the LCIA.

It is Plaintiffs' counsel's understanding that the LCIA documents at issue with regard to confidentiality are not the BSGR documents and not the Vale documents but rather are (a) approximately 49 Pentler documents that were at issue before Judge Peck; and now, in addition, (b) LCIA witness statements; (c) transcripts of hearings; (d) parts of various submissions to the Panel and orders (as described *infra* Section II); and (e) certain exhibits (approximately 26) proffered in the LCIA that were granted confidentiality by ICSID procedural orders (*e* g., ICSID procedural order number 4).  Counsel for BSGR will continue to exert maximum effort to secure

permission for the release of those documents for production here, if feasible.  Since BSGR does

not control the proceeding or those documents, there is nothing preventing Defendants in this

action from taking whatever steps they feel appropriate to obtain discovery of those documents.

It is important to remember that witness statements of third parties and hearing transcripts are not

themselves admissible evidence in this action without more (unlike the documents that were

produced and, if relevant, will be produced).

BSGR believes in good faith that it has complied with the discussion before Judge Peck

and taken every reasonable step to assist Defendants to secure as many relevant LCIA documents

as possible.

**ARGUMENT**

## I.    SANCTIONS ARE NOT WARRANTED

In its *sua sponte* Order to Show Cause, this Court twice questioned whether Plaintiffs had

failed to comply with Judge Peck's order for "**1,321** days" (Court's emphasis), or "nearly four

years" (ECF 220 at 1 & n.1).  Plaintiffs have set forth above the steps they took to comply with

their undertaking before Judge Peck, and do not believe they failed to comply.  Even if there was

some failure – which Plaintiffs adamantly dispute – the time frame assumed in the Court's *sua*

*sponte* order to show cause does not account for the stay issued by Judge Keenan.  As shown

above, fewer than three months (89 days) passed between BSGR's undertaking before Judge

Peck and the imposition of the complete stay of this action.  During that time, Plaintiffs did take

many steps to address Judge Peck's statement, but those steps were still in process at the time of

the stay for the small subset of documents that, at most, were at issue.

During the 87+% of the time when this action (including discovery) was stayed, any

order was obviously stayed.  *See, e.g., Church & Dwight Co. v. SPD Swiss Precision*

13

*Diagnostics, GmbH*, 2017 U.S. Dist. LEXIS 127255, at *15 (S.D.N.Y. July 26, 2017) (denying contempt sanctions for actions taken purportedly in violation of injunction during stay, finding that injunction was in effect for only a "very brief period between the Injunction's issuance and entry of the Court of Appeals' stay").  Indeed, had Plaintiffs unilaterally pursued steps to secure discovery for this action (again, at issue are third party documents produced pursuant to promises of confidentiality in the international arbitration), they may well have themselves been accused of violating the stay, which was the operative order in effect after November 29, 2017.

Moreover, when Judge Keenan ordered on January 26, 2021, that "the **stay on discovery is LIFTED**" *BSG Res. (Guinea) Ltd. v. Soros*, U.S. Dist. LEXIS 13367 at *28 (emphasis added), it was expressly for very narrow discovery purposes.  The parties generally started party discovery anew.  At the initial conference with this Court on February 5, 2021, this Court stated:

> I am going to have you propound new discovery requests on, party discovery requests, because I don't want to be reworking what my predecessor did with your prior discovery requests that were much broader. Let's have you focus on propounding new written discovery, setting a timeline for that, limited to these three issues that Judge Keenan articulated.

Solomon Decl., Ex. 2, ECF 197, 2/5/2021 Tr. at 28:12-17.  Thus, Plaintiffs reasonably believed there was a clean slate with regard to party discovery.  Notwithstanding that fact, Plaintiffs have taken repeated, continuous, and extensive steps to make sure they have access to LCIA documents, to obtain permission from Vale to produce Vale documents, and to find out how to deal with the confidentiality of the remaining documents – steps that Defendants are free to take.

While BSGR took good faith steps to deal with the LCIA issues, as noted above, the request to clarify the LCIA inquiry discussed by Judge Peck was solely in the context of a small subset of LCIA documents produced by Pentler.  At the same September 1, 2017 conference, Defendants said they were only interested in BSGR's documents in LCIA and not third party documents.  The Court then clarified that BSGR had agreed to produce the responsive set of

those documents.  It is therefore not at all clear that even in 2017, there was an actual order

concerning any third party documents.

    This Court directed Plaintiffs to show cause why sanctions should not be assessed under

each of four possible sources.  Plaintiffs respectfully believe, given the facts above, there can be

no basis for any sanctions under any standard.  Plaintiffs acted reasonably and complied with

their undertaking to Judge Peck.  Thus, the gating factor under all four sanction sources – that

there be non-compliant behavior – is lacking.  Even were there a finding of non-compliance,

none of the four sanction sources would apply here.

    **A.    No Sanctions are Warranted Under Federal Rule 16**

    Sanctions under Federal Rule of Civil Procedure 16 are prescribed by Rule 16(f) which

states:

> (1) In General. On motion or on its own, the court may issue any just orders, including
> those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:
>
>> (A) fails to appear at a scheduling or other pretrial conference;
>>
>> (B) is substantially unprepared to participate—or does not participate in good
>> faith—in the conference; or
>>
>> (C) fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f).

    Thus, sanctions under Rule 16(f) are limited to three specific circumstances.  There can

be no claim that BSGR came within Rule 16(f)(1)(A) or (B).  Rule 16(f)(1)(C) is limited to

failing to obey "a scheduling order or other pretrial order".  Rule 16(d) defines the term pretrial

order in the context of Rule 16 as follows: "d) Pretrial Orders.  After any conference under this

rule, the court should issue an order reciting the action taken.  This order controls the course of

the action unless the court modifies it."  Fed. R. Civ. P. 16(d).  Rule 16(e) involves pretrial

orders issued after a final pretrial conference.  Fed. R. Civ. P. 16(e).  The September 1, 2017

conference was not under Rule 16 and the Court issued no order after the conference. *See, e.g., Canon Solutions Am. v. Gungap*, 2016 U.S. Dist. LEXIS 190647, at *11 (C.D. Cal. Feb. 8, 2016) ("[a] pretrial order [for purposes of Rule 16] is not any order issued by the Court before trial; it is a specific type of order 'entered at the close of the pretrial conference'").

Even if "pretrial order" is read more broadly, sanctions still are not warranted under Rule 16(f).  The Second Circuit has explained that "[t]o sustain sanctions under Rule 16(f), an order must be unambiguous".  *Ashlodge, Ltd. v. Hauser,* 163 F.3d 681, 684 (2d Cir. 1998) (per curiam) ("use of the word 'should' in this context created ambiguity sufficient to justify vacating the sanctions"), *abrogated on other grounds by Cunningham v. Hamilton Cty.*, 527 U.S. 198, 210 (1999); *Act Now To Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 414-15 (D.C. Cir. 2017) ("a court may award sanctions under Rule 16(f) only where a party violates an unambiguous order … . The order that the [defendant] allegedly violated here was ambiguous"); *Salahuddin v. Harris*, 782 F.2d 1127, 1133 (2d Cir. 1986) (no Rule 16(f) sanctions for breach of an "implied" order noting that "[t]he Advisory Committee on Federal Civil Rules noted that the Rule was intended 'to encourage forceful judicial management,' … but the Rule did not loose a strange and capricious new beast"); *Brown v. City of Syracuse*, 623 F.Supp.2d 272, 275-77 (N.D.N.Y. 2009) (no sanctions even though litigant "violated the spirit of" the order, because the order was ambiguous).  Here, Judge Peck's request that Plaintiffs "inquire" into the terms of the LCIA confidentiality order with respect to third party documents – which, as noted above, Plaintiffs in fact did – was not stated as a mandatory order; the Court did not direct that Plaintiffs "shall" make the inquiry, nor did the Court impose any deadline.  Further, Plaintiffs' undertaking arose in the context of Defendants' request for third party documents, which request Plaintiffs' counsel understood was then withdrawn towards the end of conference when

16

Defendants stated that they were only seeking Plaintiffs' LCIA documents (*see supra* Fact Section A).  Thus, Plaintiffs did not disobey any unambiguous order.

"The Second Circuit has identified a number of factors that courts should consider in imposing sanctions under the Federal Rules [including 16(f)].  'These include: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'"  *Wilson v. Pasquale's DaMarino's, Inc.,* 2013 U.S. Dist. LEXIS 41733, at *15 (S.D.N.Y. Mar. 24, 2013) (quoting *Agiwal v. Mid Is. Mortg. Corp.,* 555 F.3d 298, 302-03 (2d Cir. 2009)).

Here, as explained above, BSGR complied with and took steps to meet its commitments to the Court in good faith.  It certainly believed itself to be doing so.  To the extent the Court feels this is not the case, the period of non-compliance is not over 1300 days but, at most, 89 days in 2017 – during which time Plaintiffs in fact took multiple steps to comply.  To the extent Judge Peck's order reactivated on its own on January 25, 2021 – notwithstanding the new limitation on discovery expressed in Judge Keenan's order and Plaintiffs' understanding from this Court's February 5, 2021 directive that party discovery would take place without reference to prior court orders – there were at most another 87 days in 2021, during which time Plaintiffs again took repeated, concrete, and in part successful steps regarding the LCIA documents, and produced the subject confidentiality order to Defendants.  Prior to this Court's *sua sponte* order to show cause on April 22, 2021, Plaintiffs had no warning of the consequence of any alleged non-compliance with Judge Peck's September 1, 2017 statement.

Finally, courts have stated that "whether considered under Rule 37 of the Federal Rules of Civil Procedure for failure to comply with a discovery order, under Rule 16(f) for failure to

comply with a pretrial order, or under the Court's inherent power to control litigation, sanctions are a drastic penalty reserved in general for egregious conduct, such as willful and conscious disregard of a court order." *El-Massri v. New Haven Corr. Ctr.,* 2021 U.S. Dist. LEXIS 8952, at *6-7 (D. Conn. 2021).  Given that Plaintiffs believed that they had complied with their undertaking to the date of the stay, that they reasonably believed that prior discovery orders had not been revived after the stay, and that they have since the discovery stay was lifted acted to obtain and provide without violating the confidentiality order the remaining small percentage of documents and information (from the total volume of LCIA documents) concerning the LCIA proceeding, there can be no showing that Plaintiffs acted in "willful and conscious disregard of a court order".

### B.      No Sanctions are Warranted Under Federal Rule 37(a)(5)(A)-(C)

Rule 37 governs motions to compel, and Rule 37(a)(5) specifically concerns payment of expenses on a motion to compel.  Rule 37(a)(5)(A) provides:

> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A); *cf. id*. (5)(B) (applies where motion to compel is denied), (5)(C) (applies where motion to compel is granted in part and denied in part, and authorizes apportionment of reasonable expenses after notice).

By its terms, Rule 37(a)(5) requires that a party have made a successful motion for an order compelling disclosure or discovery.  *See also* Fed. R. Civ. P. 37(a)(1) ("On notice to other parties . . ., a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the disclosure or discovery in an effort to obtain it without court action.").

Here, the April 14, 2021 joint status letter from the parties that the Court referenced in its *sua sponte* Order to Show Cause is the antithesis of a motion to compel (ECF 220 ("In a letter submitted on April 14, 2021, . . . Plaintiffs indicated that they have not yet 'determine[d] the process necessary to apply for an exception' from the LCIA")).  That status letter expressly states that "all" the issues discussed therein "have been or may still be amicably resolved" (ECF 210 at 1).  This is not a motion to compel and certainly not a successful one.  Thus, Rule 37(a)(5)(A) is not applicable here at all.  *See, e.g., Rosenblum v. Blackstone*, 2020 U.S. Dist. LEXIS 250839, at *4 (C.D. Cal. Feb. 28, 2020) (Court could not award fees under Rule 37(a)(5) because "[t]he present Motion is not a motion for an order compelling a discovery response under Rule 37(a), so sanctions under Rule 37(a)(5) are not implicated."); *Robinson Steel Co. v. Caterpillar, Inc.*, 2012 U.S. Dist. LEXIS 166889, at *10 (N.D. Ind. Nov. 21, 2012) (fee award under Rule 37(a)(5) was not available in part because "this was not a motion to compel brought under Rule 37, but rather a motion to limit discovery under Rule 26").

Even if Court somehow treats the April 14 status letter as a successful motion to compel, Plaintiffs' position that they have sought to determine the LCIA confidentiality issues – particularly in the changed circumstance of a closed LCIA matter – is "substantially justified". *See, e.g., Klein v. Torrey Point Group, LLC,* 979 F.Supp.2d 417, 442 (S.D.N.Y. 2013) (denying

fees and costs because "there was a genuine dispute or . . . reasonable people could differ as to the appropriateness of the contested action") (citations omitted); *Comprehensive Habilitation Servs. v. Commerce Funding Corp.,* 240 F.R.D. 78, 87 (S.D.N.Y. 2006) ("opposition is substantially justified unless it involves an unreasonable, frivolous or completely unsupportable reading of the law") (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 265 (S.D.N.Y. 1995)).

The standard for determining "substantial justification" is if there was an objectively "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the contested action.  *See, e.g., Comprehensive Habilitation Servs. v. Commerce Funding Corp.,* 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying sanctions motion where opposing party raised valid relevancy objections to document requests).  Here, when Plaintiffs are in the process of obtaining and providing the remaining information concerning the LCIA proceedings, and no party has made a motion to compel, Plaintiffs' actions are at the least substantially justified.

### C.    No Sanctions are Warranted Under 28 U.S.C. § 1927

28 U.S.C. § 1927 is not applicable to this situation.  That statute provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"In this circuit, the Court may impose § 1927 or inherent-power sanctions only if there is 'clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay.'"  *Pac. Elec. Wire & Cable Co. v. Set Top Int'l, Inc.,* 2005 U.S. Dist. LEXIS 17977, at *13-14 (S.D.N.Y. Aug. 23, 2005) (Keenan, J.) (quoting *Eisemann v. Greene,* 204 F.3d 393, 396 (2d Cir. 2000)) (both prongs are required); *see also Zurich Am. Ins. Co. v. Team Tankers A.S.,*

811 F.3d 584, 591 (2d Cir. 2016) (reversing sanctions since no bad faith; argument was "not on its face absurd" – "The attorney's actions must be 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.").

Here, there is no colorable claim of bad faith. BSGR and its attorneys have engaged in extensive and successful efforts to determine the LCIA process throughout the period this case has been active. They did so even though it was not clear there was an order – let alone an unambiguous order – requiring them to do so. Counsel acted, as officers of the Court, on their undertaking to make an inquiry, and there is no indication of any bad faith in their efforts to do so. For all the reasons set forth herein, there is more than a colorable basis for counsel's actions and understandings of the September 1, 2017 conference.

### D.    No Sanctions are Warranted Under the Inherent Power of the Court

"The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'"  *U.S. v. Int'l B'hd of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991)).  The Second Circuit has "made clear" that it "has always required a particularized showing of bad faith to justify the use of the court's inherent power."  *Id.* at 1345; *see also Church of Scientology Int'l v. Time Warner*, 1994 U.S. Dist. LEXIS 1095, at *10-12 (S.D.N.Y. Feb. 3, 1994) (declining to award sanctions under the Court's inherent power because the movant had not made the requisite particularized showing of bad faith).

The standard, and the required basis, for a sanctions award under the court's inherent power has been called identical to that of 28 U.S.C. § 1927.  "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an

attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

There is no basis for sanctions under the Court's inherent authority for the same reasons there is no basis for sanctions under 28 U.S.C. § 1927, including Plaintiffs' lack of bad faith (*see supra* I.C).

## II.     THE SCOPE AND VOLUME OF THE LCIA DOCUMENTS

The Court's Order to Show Cause also directed BSGR to address the "scope and volume" of the LCIA documents covered by the confidentiality order and the steps taken to make that determination.  The LCIA "documents" in BSGR's files can be generally divided into the following categories (a) documents produced by BSGR (83,000+ pages); (b) document produced by Pentler through BSGR (approximately 49 documents); (c) documents produced by Vale (53,000+ pages); (d) pleadings and submissions to the Tribunal (27 documents); (e) witness statements and expert reports (56 documents); (f) procedural and discovery orders (44 documents); (g) hearing transcripts (16 documents); (h) fact exhibits (2616 documents); (i) legal authorities (356 documents); (k) correspondence with the Tribunal (971 documents); and (l) correspondence between the parties (875 documents).  Not all of these documents are related to the three discovery issues.

As previously noted, LCIA Procedural Order number 2 formally makes the entire proceedings confidential (subject to the ability to apply for an exception).  From the outset, and as Plaintiffs told Judge Peck on September 1, 2017, BSGR agreed to produce relevant, responsive documents from its LCIA production (subject to the confidentiality order in this action).  Between discussions in 2017 and again in 2021, Vale has agreed that its production can be produced (subject to the confidentiality order in this action).  Thus, BSGR will be making production from these two sets of core evidentiary documents.  Plaintiffs believe there are still

existing confidentiality concerns that they are trying to overcome.  Plaintiffs solicit any ideas

from Defendants and from this Court for effectively overcoming these concerns.  The documents

affected by these remaining concerns are (a) the approximately 49 Pentler documents that were

produced on condition that their confidentiality be maintained; (b) the witness statements

(including 4 Pentler witness statements); (c) the hearing transcripts; (d) certain exhibits

(approximately 26) proffered in the LCIA that were granted confidentiality by ICSID procedural

orders (*e.g.,* ICSID procedural order number 4); and (e) the submissions to the Panel to the

extent they reference the material in categories (a)-(d).  There may also be some limited privilege

issues with some documents.

In 2017, during the midst of the LCIA arbitration, BSGR had access to the LCIA

documents that were then in existence.  Counsel here consulted with counsel for BSGR in the

LCIA litigation who advised that all the documents other than BSGR's own documents were

confidential.  In November 2017, there were discussions with counsel for Vale about Vale's

documents.  During the course of the stay, the LCIA issued an award and the arbitration was

completed.  When the new administrators took over from the old ones in September 2020, there

was a period of time where Plaintiffs did not have access to the LCIA documents.  Through

extensive efforts, BSGR was able to get access to the documents only relatively recently.  In

addition to the steps discussed above, Plaintiffs also have been reviewing the LCIA documents to

help assess what may or may not be covered.

BSGR wishes to repeat that it has no objection to any effort Defendants wish to take to

secure production of the remaining LCIA documents subject to the confidentiality order in place

in this action.

23

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court not impose

sanctions on them.

Dated:  New York, New York
        April 26, 2021                          Respectfully submitted,

                                                REED SMITH, LLP
                                                By: <u>/s/ Louis M. Solomon</u>
                                                        Louis M. Solomon
                                                        Michael S. Lazaroff
                                                599 Lexington Avenue
                                                New York, New York 10022
                                                (212) 549-0400
                                                *Attorneys for Plaintiffs BSG Resources*
                                                *(Guinea) Limited, BSG Resources (Guinea)*
                                                *Sàrl, and BSG Resources Limited*