UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BSG RESOURCES (GUINEA) LIMITED, BSG
RESOURCES (GUINEA) SÀRL, and BSG
RESOURCES LIMITED,

                Plaintiffs,

      v.

GEORGE SOROS, OPEN SOCIETY FOUNDATIONS,
OPEN SOCIETY INSTITUTE, FOUNDATION TO
PROMOTE OPEN SOCIETY, OPEN SOCIETY
FOUNDATION, INC., ALLIANCE FOR OPEN
SOCIETY INTERNATIONAL INC., OPEN SOCIETY
POLICY CENTER, and OPEN SOCIETY FUND,

                Defendants.

No. 1:17-cv-02726 (JFK) (OTW)

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO THE COURT'S
ORDER TO SHOW CAUSE AND OPPOSITION TO ANY IMPOSITION OF
SANCTIONS**

Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000 (telephone)

1875 K Street, NW
Washington, DC 20006
(202) 303-1000 (telephone)

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND.......................................................................................... 3

    A.    Defendants' 2017 Discovery Requests to Plaintiffs Sought the LCIA Documents. .... 3

    B.    Judge Peck's September 1, 2017 Order......................................................... 5

    C.    Plaintiffs' Failure to Comply With Judge Peck's Order and Interference with Vale's Waiver of Confidentiality over Its LCIA Materials. ....................................... 7

    D.    During the Stay, BSGRL Continued to Shirk Its Discovery Obligations. .................. 8

    E.    Since the Stay was Partially Lifted, Plaintiffs Continue to Obfuscate and Delay Discovery............................................................................................... 10

ARGUMENT ......................................................................................................... 16

  I.    The Court Has the Legal Authority to Sanction Plaintiffs. ................................. 16

    A.    Federal Rule of Civil Procedure 16(f) ...................................................... 16

    B.    Federal Rule of Civil Procedure 37 ......................................................... 17

    C.    28 U.S. Code § 1927 and the Inherent Power of the Court ........................... 18

  II.  Nothing in Plaintiffs' Response Justifies Their Failure to Comply Timely with Judge Peck's Order.......................................................................................... 18

    A.    Judge Peck's Order Was Neither Advisory Nor Ambiguous. ................................ 19

    B.    The LCIA Confidentiality Order Allows Plaintiffs to Request Relief from the Confidentiality Restrictions. .................................................................. 19

    C.    Plaintiffs' Efforts *Around* the LCIA Does Not Excuse Its Failure to *Go To* the LCIA. ................................................................................................ 20

    D.    Plaintiffs' Unfulfilled Agreement to Provide Defendants With the LCIA Confidentiality Order in 2017 Highlights Not Absolves Their Non-compliance...... 21

    E.    Plaintiffs' Attempt to Blame Defendants for Their Non-compliance Fails............... 23

    F.    Plaintiffs' Recent Challenges Procuring the LCIA Materials Reveal the Prejudice Caused by Their Failure to Comply Timely with Judge Peck's Order..................... 24

CONCLUSION....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of Baker*,
   744 F.2d 1438 (10th Cir. 1984) ....................................................................16, 17

*In re BSG Resources Limited*,
   No. 19-11845-SHL, ECF No. 5 ................................................................................9

*Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*,
   425 F. Supp. 234 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1977) ...............17

*DLC Mgmt. Corp. v. Town of Hyde Park*,
   163 F.3d 124 (2d Cir. 1998)....................................................................................18

*Goforth v. Owens*,
   766 F.2d 1533 (11th Cir. 1985) ..............................................................................16

*MA Salazar, Inc. v. Inc. Vill. of Atlantic Beach*,
   499 B.R. 268 (E.D.N.Y. 2013) ...............................................................................18

*Penta v. Costco Wholesale Corp.*,
   14-cv-3587, 2016 WL 1171612 (E.D.N.Y. Mar. 25, 2016) ...................................17

*Walpert v. Jaffrey*,
   127 F. Supp. 3d 105 (S.D.N.Y. 2015)......................................................................18

*Wine Mkts. Int'l, Inc. v. Bass*,
   977 F. Supp. 601 (E.D.N.Y. 1997) ..........................................................................18

**Other Authorities**

Fed. R. Civ. P. 16(f).......................................................................................................16

Fed. R. Civ. P. 37.....................................................................................................16, 17

28 U.S.C. § 1927............................................................................................................18

Defendants respectfully submit this memorandum in response to Plaintiffs' Response to the Court's Order to Show Cause and Opposition to the Imposition of Any Sanctions (the "Response").

## PRELIMINARY STATEMENT

Plaintiffs are playing a shell game with the Court. The Court issued an order to show cause why Plaintiffs should not be sanctioned for failing to comply with Magistrate Judge Peck's September 1, 2017 order directing them to find out whether they could seek a "waiver of [LCIA] confidentiality or whatever would be the procedural way to go about this before the [LCIA] arbitration," (ECF No. 97 at 23:21-24-2), after Plaintiffs represented to the Court on April 14, 2021 that they have not yet "determine[d] the process necessary to apply for an exception" from the LCIA, (ECF No. 210 at 2). (ECF No. 220 at 1.) In response, Plaintiffs' primarily attempted to minimize the import of Judge Peck's Order, sprinkled with steps they allegedly took to produce certain documents from the LCIA arbitration. Plaintiffs then conclude that they "fully complied with the discussion before Judge Peck." (Response at 1.) But Plaintiffs cannot both still be in the process of determining how to seek an exception to confidentiality from the LCIA as represented on April 14, 2021, and have "fully complied" with Judge Peck's Order directing them to determine that process more than four years ago.

Plaintiffs attempt to justify their noncompliance with Judge Peck's Order by arguing it was somehow not an order of the Court or was ambiguous cannot withstand scrutiny. Contrary to Plaintiffs' characterization, Judge Peck did not casually "request" that they find out how to apply for a waiver of confidentiality from the LCIA. He was the federal Magistrate Judge presiding over a discovery dispute between the parties, and in an effort to resolve that dispute he required the Plaintiffs to seek that relief. That is an order of the Court. Nor can they credibly claim any ambiguity. Judge Peck said: "find out if [the LCIA confidentiality order]

1

allows you to move on behalf of Mr. Soros for a waiver of that confidentiality or whatever would be the procedural way to go about this before the arbitration." (ECF No. 97 at 23:24-24:2.) Plaintiffs admittedly did not do that until April 12, 2021.

       The record also belies Plaintiffs' characterization of their efforts to comply with Judge Peck's Order. While Plaintiffs purport to have taken "good faith steps to deal with the LCIA issues," (Response at 14), they never disclosed any of those steps to Defendants or the Court, despite Defendants repeated requests regarding the LCIA documents. Nor did those steps bring them any closer to obtaining a waiver of the LCIA's confidentiality requirement. Over the course of six pages, Plaintiffs purport to describe the steps taken to comply with Judge Peck's Order (*see* Response at 5-7, 10-12); yet none of those steps involved actually contacting the LCIA until April 12, 2021, ***by which time the tribunal was disbanded, having issued its award two years earlier***. Plaintiffs then use the closed status of the LCIA proceeding as a justification for their continued delay in obtaining relief from the confidentiality requirements. This only highlights the harm caused by their inexcusable delay in the immediate aftermath of Judge Peck's Order when the LCIA tribunal was still presiding over that matter. In another misstep, Plaintiffs attempt to minimize the effect of their delay tactics by suggesting that *they* obtained an agreement from their counterparty in the LCIA arbitration, Vale S.A. ("Vale"), to produce its documents. (Response at 7.) But it was *Defendants* who negotiated an agreement with Vale in 2017, which Plaintiffs actively opposed. (Ex. A (November 17-27, 2017 Emails between E. Bower and L. Solomon).)[1]

       Not only did Plaintiffs not take steps to obtain relief from the LCIA confidentiality order, we now know that they tried to ***preserve*** confidentiality over LCIA

---

[1]    References to "Ex. __" are to the exhibits attached to the Declaration of Benjamin P. McCallen, dated April 30, 2021, filed herewith.

materials precisely because they would be harmful to their claims in this litigation.  In Plaintiff

BSG Resources Limited's ("BSGRL") Chapter 15 proceeding before Judge Lane in the

Bankruptcy Court for the Southern District of New York, a dispute arose over BSGRL's

designation of certain LCIA documents as confidential.  In support of maintaining the

confidentiality of the documents, BSGRL filed an email from their counsel at Reed Smith

advising the former Joint Administrators that certain of the documents "would clearly be harmful

. . . to the Soros Litigation."  (Ex. B.)  Plaintiffs do not want these materials to see the light of

day because they know – as admitted by their counsel – that they will reveal the sham nature of

their claims.  All of the foregoing demonstrates a concerted, multi-year effort by Plaintiffs to

resist producing documents in multiple courts where they voluntarily sought affirmative relief.

This has caused Defendants and the Court to expend significant resources to obtain discovery

that is indisputably central to the claims at issue, and which should have been produced

immediately.  Defendants respectfully submit that the Court is well within its discretion to

sanction this obfuscatory and wasteful behavior.

## FACTUAL BACKGROUND

**A.    Defendants' 2017 Discovery Requests to Plaintiffs Sought the LCIA Documents.**

On July 24, 2017, Defendants served their first requests for production to

Plaintiffs, which sought, in relevant part, all documents produced to or by Plaintiffs in the LCIA

and ICSID proceedings.  (Ex. C at Request Nos. 48, 55.)  Plaintiffs objected to these requests,

and others, "to the extent [they] seek[] information that is protected from disclosure by a

confidentiality or non-disclosure agreement with a third party and/or by a court order, or

precluded from disclosure pursuant to other legal obligations, including U.S. or foreign privacy

or secrecy laws," (Ex. D at Response to Request Nos. 48-55), and specifically refused to produce

any documents that were produced to Plaintiffs in the LCIA arbitration based on the LCIA's confidentiality rules and a Procedural Order by the tribunal.  (*Id.* at Response to Request No. 55.)

Additionally, with respect to documents produced by Plaintiffs in those proceedings, Plaintiffs agreed only to produce documents "that are responsive to another Request" – meaning they would not agree to produce all documents from those proceedings, but only documents that Plaintiffs believed were also relevant to this proceeding.  (*Id.* at Response to Request Nos. 48, 55.)  However, the LCIA and ICSID proceedings involved substantially overlapping issues with this proceeding – namely, the validity of Plaintiffs' iron ore mining rights in Guinea, including whether those rights were procured through bribery.  Thus, at the time, Defendants took the position that Plaintiffs should be required to produce the entirety of their productions in those proceedings.

Defendants also sought documents from certain individuals and entities that Defendants believed were affiliated with and under the control of Plaintiffs, including Pentler Holdings Ltd. ("Pentler") and its principals.  Defendants believed (and still do) based on public sources that Pentler was created by an affiliate of Plaintiffs and was instrumental in effecting Plaintiffs' bribery of Mamadie Touré.  (ECF No. 82 at 3-4.)  Moreover, because Pentler is registered in the British Virgin Islands, Defendants only recourse to obtain the documents was to pursue lengthy and expensive international discovery.  (*Id.*)  Plaintiffs objected on the grounds that Pentler is an independent entity and stated that Pentler "has not agreed that Plaintiffs may search for and produce information within [Pentler's] legal custody and control."  (Ex. D ¶ 6.) Despite this objection, Plaintiffs admitted that they had documents from Pentler in their possession "that they [we]re prohibited from disclosing pursuant to Procedural Order No. 2, ¶ 15 in the LCIA Arbitration."  (*Id.* ¶ 4; *see also id.* at Responses to Request Nos. 15 and 21.)

4

On August 24, August 28, and August 29, 2017, the parties met and conferred by phone regarding various discovery issues, including Plaintiffs' confidentiality objections, their objection to producing all documents produced by them in the LCIA and ICSID proceedings, and their objection to producing Pentler's documents.  Defendants requested – and on August 29, 2017, Plaintiffs agreed to provide – copies of any confidentiality agreements or orders and legal citations to laws that they alleged precluded their production of responsive information.  (Ex. E (November 9, 2017 Letter from E. Bower to M. Solomon).)

The parties were unable to resolve their disputes with respect to Plaintiffs' objections to producing (1) the Pentler documents or (2) their entire LCIA and ICSID productions.  The parties submitted this discovery dispute to Judge Peck for consideration, which he heard at the September 1, 2017, status conference.

**B.  Judge Peck's September 1, 2017 Order**

In advance of the September 1, 2017, status conference before Judge Peck, both parties filed letters raising various discovery disputes.  Defendants raised four issues in their letter, two of which are relevant here: (1) Plaintiffs' refusal to produce responsive information from Pentler and its principals, despite admitting to having such documents in its possession; and (2) Plaintiffs' refusal to produce their entire productions from the LCIA and ICSID proceedings.[2]  (ECF No. 82.)

During the status conference, while discussing Plaintiffs' refusal to produce documents from Pentler that were in their possession, Plaintiffs represented that documents produced by other parties, including Pentler, in the LCIA arbitration are protected by a confidentiality order and the LCIA confidentiality rules.  (ECF No. 97 at 19:18-22 ("there were

---

[2]    As Plaintiffs have indicated, this was referred to during the conference as "issue 4."  (Response at 4.)

documents, and if they're a third party, produced by and in the LCIA where there, both by rules of LCIA as well as by a confidential confidentiality order, we're not allowed to produce, and they've objected in the past to that production").  Shortly after, Judge Peck asked Defendants whether there was "anything you want to argue about the confidentiality with respect to the London arbitration." (*Id.* at 21:21-23.)  Defendants noted it was "a little difficult to argue when we don't know the confidentiality provision," but requested that Defendants be permitted to seek relief from the confidentiality order, to the extent it permitted them to do so.  Judge Peck expressed skepticism that the order would allow Defendants to seek relief from the LCIA and encouraged Defendants to seek international discovery, which prompted the following exchange:

> MS. BOWER: Thank you, your Honor. With respect to the confidentiality order, may we ask whether there is a provision in that order allowing for documents to be produced pursuant to an order of the court?

> MR. LAZAROFF: Your Honor, I have not seen the confidentiality order. I'm not sure I'm allowed to. I haven't seen it.

> THE COURT: Well, BSGR is in that proceeding?

> MR. LAZAROFF: I can inquire.

> THE COURT: Inquire. And if there is a way -- I mean, if it says, for example, you may not produce it unless ordered by a court of competent jurisdiction, that's a different situation. So find that out, find out if it allows you to move on behalf of Mr. Soros for a waiver of that confidentiality or whatever would be the procedural way to go about this before the arbitration.

> MR. LAZAROFF: Will do so, your Honor.

(ECF No. 97 at 23:12-24:3).  Nothing in Judge Peck's Order limited the LCIA confidentiality inquiry to Pentler-related documents.  Nor is there any ambiguity as to his instruction – Plaintiffs were directed to "find out" the procedural mechanism for obtaining relief from the LCIA confidentiality order; precisely what Plaintiffs admitted as of April 14, 2021, they had not yet done.

**C.    Plaintiffs' Failure to Comply With Judge Peck's Order and Interference with Vale's Waiver of Confidentiality over Its LCIA Materials.**

After Judge Peck's Order, Plaintiffs provided Defendants with no information regarding any confidentiality agreements or orders preventing them from producing documents, including the LCIA confidentiality order.  On November 9, 2017, Defendants sent Plaintiffs a letter requesting a meet and confer regarding, among other issues, their failure to produce the governing confidentiality order precluding production of LCIA materials or to provide any information regarding the process for seeking a waiver of the confidentiality requirements.  (Ex. E.)  The parties met and conferred on November 17, 2017, at which time Plaintiffs informed Defendants that they had obtained the LCIA confidentiality order, but were unable to produce it or share its contents because they were still evaluating whether they were permitted to produce it.

Based on Plaintiffs' refusal to produce documents in their possession, and following Judge Peck's directive, Defendants applied for letters rogatory to seek discovery directly from Vale S.A. ("Vale") and Pentler – both parties that, to Defendants' knowledge, produced documents in the LCIA arbitration, which were in BSGR's possession.  Defendants invited Plaintiffs to join in these requests.  Plaintiffs declined to join and raised no objections to Defendants' applications.  Judge Peck granted those applications.  (ECF Nos. 120 and 121.)

At the time of the stay, Defendants had transmitted the letter rogatory concerning Pentler to the British Virgin Islands for enforcement and Defendants were in negotiations with Vale to resolve the letter rogatory directed to it.  The letter rogatory to Vale sought, among other things, "All Documents or Communications produced by Vale in the LCIA Arbitration."  (ECF No. 121.)  After several weeks of negotiation, Vale agreed to produce all of the documents it produced in the LCIA arbitration and to consent to Plaintiffs' production of any pleadings, briefing, and witness statements submitted by Vale – *i.e.*, the exact same documents that

Plaintiffs today claim are governed by the LCIA confidentiality order.  Vale's agreement was contingent on all three parties – Defendants, Plaintiffs, and Vale – signing a stipulation pursuant to which Vale's materials would be deemed confidential under the protective order in this action and restricted to use in this action.  (Ex. A at November 17, 2017 Email from E. Bower to L. Solomon.)  Plaintiffs refused to agree to this proposal, objecting, among other reasons, to Vale producing all documents from the LCIA arbitration – despite not objecting to the scope of the request when Defendants sought issuance of the letter rogatory.  (*Id.* at November 20, 2017 Email from L. Solomon to E. Bower.)

The parties had not resolved this disagreement at the time of the stay on November 29, 2017.  Contrary to Plaintiffs' representation in their Response, (Response at 6), at no time prior to the issuance of the stay did Plaintiffs inform Defendants that documents produced by Vale were not covered by the confidentiality order or that they intended to produce any such documents.  Nor does it seem likely that Plaintiffs resolved its objection in the two days between the parties' last correspondence on the topic, *i.e.*, November 27 (*see* Ex. E) and issuance of the stay on November 29, 2017.

### D.     During the Stay, BSGRL Continued to Shirk Its Discovery Obligations.

On April 4, 2019, the LCIA tribunal found BSGRL liable for fraudulent misrepresentation and breaches of warranty based on a finding that BSGRL procured its mining rights through bribery and corruption, and awarded Vale $1.246 billion in damages, plus pre- and post-award interest, costs, and attorneys' fees, which now totals more than $2 billion ("LCIA Award").  On June 3, 2019, in an attempt to forestall Vale's enforcement of the LCIA Award, BSGRL, which had previously entered into administration in Guernsey, filed a Chapter 15 petition in the Bankruptcy Court for the Southern District of New York seeking recognition of the Guernsey administration proceedings and protection of BSGRL's interest in this action,

purportedly its only U.S.-based asset.  (*See* Verified Chapter 15 Petition ¶¶ 1, 24, *In re BSG Resources Limited*, No. 19-11845-SHL, ECF No. 5.)  Vale, BSGRL's largest creditor, served the joint administrators with discovery requests in June, and filed an initial objection to the Chapter 15 petition for recognition on July 10, 2019.  (Ex. F.)

   Throughout the Chapter 15 proceedings, the former joint administrators' primary strategy was to obfuscate and delay.  (*See id.* ("[A]fter more than a month the Joint Administrators have failed to make available documents foundational to the issues before this Court, including certain materials underlying both the Guernsey application and the Guernsey Court Order.  The Joint Administrators' failure to provide even that basic level of information calls into question their motivation for initiating these proceedings.").  After four months of discovery, Judge Lane remarked that he had "never seen a case with these kind of discovery problems in my nine years plus on the bench. . . . it boggles the mind."  (Ex. G (Oct. 3, 2019 Hr'g Tr. at 6:22-7:1).)  He went on to admonish the former joint administrators of BSGRL for taking "a series of positions . . . that basically really don't seem to have a whole lot of merit to slow discovery down."  (*Id.* at 21:14-21.)  A month later, when the former joint administrators were still not making progress, Judge Lane noted that "[t]here are sort of discovery equivalents of the Allen charge in a criminal case to get people to really pay attention. That's sanctions, and I'm -- you know, again, it is what it is. So I just throw it out there just because I don't see this ending particularly well. Again, it's sort of inconsistent with the notion in the statute about the need to promptly address the Chapter 15 request for relief."  (Ex. H (Nov. 4, 2019 Hr'g Tr. 7:5-14).)

   Moreover, when the former joint administrators finally did produce documents to Vale, they mis-designated the vast majority of their production as confidential, including

9

documents that were publicly available.  To support their improper designations, the former joint administrators filed a motion to, among other things, affirm their confidentiality designations.  In that motion, they relied on an email from counsel for Plaintiffs in this case advising the former joint administrators not to de-designate confidential LCIA documents because to do so "would clearly be harmful . . . to the Soros Litigation."  (Ex. B.)  This email is significant for at least two reasons.  First, Plaintiffs' counsel specifically identifies the process for obtaining consent to use confidential documents in other proceedings:  "Vale would need to petition the LCIA to remove the confidentiality from any proceeding document."  (*Id.*)  Second, Plaintiffs' counsel states that the main reason for maintaining the confidentiality of certain documents, including the Award issued by the LCIA tribunal, is because they "would clearly be harmful . . . to the Soros Litigation."  (*Id.*)  The Award that Plaintiffs were trying to keep confidential appears to be the Award issued by the LCIA tribunal – which was publicly filed that same day by Vale in its enforcement proceeding in the Southern District of New York – that led to Defendants' renewed motion to dismiss and these current proceedings.

     **E.**     **Since the Stay was Partially Lifted, Plaintiffs Continue to Obfuscate and Delay Discovery.**

     On January 25, 2021, Judge Keenan issued an order converting Defendants' motion to a motion for summary judgment on the issue of whether Plaintiffs were collaterally estopped from arguing that they did not procure the Guinean mining rights through bribery based on the LCIA award.  Judge Keenan partially lifted the stay to allow for "limited discovery" into three issues (the "Three Issues") relating to such collateral estoppel.  Two days later, this Court directed the parties to submit a joint status letter regarding discovery by February 3, 2021, and to appear for a status conference on February 5, 2021.  (ECF No. 195.)

The parties met and conferred on February 1, 2021, during which they discussed the scope and timing of discovery.  Plaintiffs proposed completing all document productions within 30 to 60 days and all discovery within three or four months.  Defendants disagreed that such a short timeline would be feasible in this case, but asked Plaintiffs to produce promptly all documents from the LCIA arbitration, the ICSID arbitration, and Swiss criminal proceedings without awaiting new document requests given that the Three Issues were clearly subsumed within those proceedings, and those documents should be easy for Plaintiffs to produce quickly.  Plaintiffs refused to begin producing those documents absent an agreement that discovery would be bilateral.

In the parties' February 3, 2021, joint status letter, Plaintiffs sought an expedited discovery schedule of no more than four months – knowing full well that they had not taken the necessary steps to obtain a waiver of the LCIA confidentiality order (or any other relief from purported confidentiality concerns).  Defendants disagreed given the need for, among other things, multiple experts and extensive international discovery.  However, Defendants repeated to the Court the position they had taken days before in the meet and confer with Plaintiffs:  "most of the documents relevant to issues (1) and (2) have been produced or submitted in the LCIA Arbitration, the ICSID Arbitration and the Swiss criminal prosecution of Beny Steinmetz.  Plaintiffs should be able to easily produce all of the documents produced in those proceedings, including all declarations, transcripts, depositions and expert reports."  (ECF No. 196 at 4.)  At no time during these discussions did Plaintiffs reveal that (a) Vale had consented to the production of its LCIA materials, subject to application of the protective order in this case, or (b) it was seeking relief from the confidentiality requirements in any of these proceedings, as Plaintiffs contend in the Response.  (Response at 6-7.)

11

At this Court's direction, on February 11, 2021, the parties filed a joint case management plan and proposed schedule, in which Plaintiffs proposed a deadline of May 3, 2021, for "substantial completion of undisputed document productions" and a deadline of June 25, 2021 for completion of both non-expert document discovery and depositions.  (ECF No. 202.)  Given Plaintiffs' position on discovery issues to that point, Defendants were concerned with the expedited schedule proposed by Plaintiffs:  all of the relevant documents were in BSGR's possession; BSGR (and not Defendants) had been litigating these bribery issues in multiple fora for years; and Plaintiffs were not agreeing to commence production of obviously responsive documents in their possession until Defendants commenced production of documents that, in the view of Defendants, had no bearing on the Three Issues.  It seemed obvious that Plaintiffs were attempting to jam Defendants by delaying production while expediting adjudication of the issues Judge Keenan instructed.

Nevertheless, Defendants attempted to move discovery forward promptly, both by proposing a schedule that would have all fact discovery completed by September 9, 2021 (only two and a half months later than the date proposed by Plaintiffs), and by promptly serving discovery.  On February 17, 2021, prior to the deadline ordered by the Court, Defendants served their Third Request for Production of Documents to Plaintiffs ("Defendants' RFPs"), which formally sought production of the documents produced by and to Plaintiffs in the LCIA and ICSID arbitrations.  On February 23, 2021, Defendants again asked Plaintiffs when they intended to begin production of documents produced in the ICSID and LCIA arbitrations given that these clearly relevant documents should be easy to produce.  (Ex. I.)  Plaintiffs again dragged their feet, refusing to provide a timeline for their production and stating "[p]er the proposed schedules

and Judge Wang's order, we are focused now on responding to the requests for production and documents.  We will respond/produce in the agreed upon and/or ordered time frame."  (*Id.*)

When they did finally serve formal responses, on March 15, 2021, Plaintiffs objected to each request on confidentiality grounds and stated that they will "withhold requested discovery to the extent such production is barred by any applicable order or law or rule."  (Ex. J ¶ 4.)  Again, nowhere in their responses did Plaintiffs reveal that Vale had consented to the production of its LCIA materials, subject to application of the protective order in this case. (Response at 6-7.)

On March 18, 2021, the parties met and conferred regarding, among other things, Plaintiffs' document collection efforts and Plaintiffs objections to Defendants' RFPs.  When asked whether Plaintiffs intended to withhold documents based on their confidentiality objection, Plaintiffs said that they would produce their own documents, but that they were "still investigating" whether responsive material was subject to a confidentiality order.  Defendants again requested a copy of any orders or agreements that Plaintiffs alleged precluded production, and a log of any documents withheld on this basis.  Despite agreeing to provide copies of any applicable confidentiality orders or agreements in August 2017 (Ex. E), Plaintiffs did not immediately agree to produce them.  On March 22, 2021, Defendants sent a letter to Plaintiffs reiterating their request for copies of any orders or agreements precluding Plaintiffs' production, something that Defendants have repeatedly asked for since August 2017.  (*See id.*)  On March 23, 2017, Plaintiffs finally agreed to produce them.  (Ex. K.)  However, no orders from LCIA (or ICSID) were produced to Defendants at that point, and Plaintiffs objected to providing any log of documents – further frustrating Defendants efforts to understand what, exactly, Plaintiffs were withholding.  (*Id.*)

On April 2, 2021, the parties filed another joint status letter in which Defendants alerted the Court to the LCIA confidentiality issue, and requested that Plaintiffs be required to produce a log of documents withheld on the basis of confidentiality.  Given Plaintiffs' refusal to provide Defendants with any information regarding the LCIA confidentiality order, while this application was pending before the Court, Defendants served a subpoena on Vale on April 7, 2021, seeking all documents produced by Vale in the LCIA arbitration.  Although Defendants notified Plaintiffs of the Vale subpoena, Plaintiffs again did not inform Defendants that this discovery effort was unnecessary because Vale purportedly had already agreed to make their documents available in this case.

On April 7, 2021, the Court ordered Plaintiffs, by April 8, 2021, "to produce or identify to Defendants any orders, agreements, or laws purportedly barring Plaintiffs from producing documents."  (ECF No. 209.)  These were the same orders that Plaintiffs had agreed to provide to Defendants two weeks earlier, on March 23, but had never done so.  Now subject to a Court order, Plaintiffs produced the orders a day later.

At the same time, Plaintiffs sent a letter informing Defendants for the first time that they "faced a series of challenges getting access to documents and information for production" and Plaintiffs will supplement their production "if and when" they receive additional documents.  (Ex. L (April 8, 2021 Letter from L. Solomon).)  At this point, more than two months had passed since Judge Keenan had issued his order requiring discovery of documents in Plaintiffs possession.  During the entirety of this time, Plaintiffs never indicated that they were unable to access their own documents.

During a meet and confer the next day, on April 9, 2021, counsel to the new joint administrators stated that there are approximately 24,000 documents that have not been turned

over to the present joint administrators by the former joint administrators.[3]  Plaintiffs were

unable to say what categories of documents they were missing or when they anticipated

receiving them.  Plaintiffs were similarly unable or unwilling to answer basic questions regarding

the scope of the documents in their possession.  (*See* ECF No. 210 at 3.)

On April 14, 2021, the parties filed the joint status letter that prompted the Court

to issue the order to show cause.  (ECF No. 210.)  Specifically, Defendants raised the challenges

they were facing in trying to get information from Plaintiffs about their document collection

efforts and Plaintiffs' failure to take adequate steps to obtain a waiver of the confidentiality

requirements in the LCIA and ICSID proceedings.  (*Id.* at 1-2.)  Plaintiffs represented that they

contacted their adversaries, but had not yet "determine[d] the process necessary to apply for an

exception" from the LCIA confidentiality requirements.  (*Id.* at 2.)  In response, on April 22,

2021, this Court ordered Plaintiffs to show cause in writing why they should not be sanctioned

for failure to timely comply with Judge Peck's Order.

On April 21, 2021, Plaintiffs made their first production since the stay was lifted,

containing 1,233 documents.  Notably, every document in Plaintiffs' first production is publicly

available on the ICSID website, and Defendants have had all of them for years.  There is no

reason Plaintiffs could not have produced these documents at any time over the past three

months.  Instead, Plaintiffs have had a single-minded focus on obtaining discovery from

---

[3]      In what may be a remarkable coincidence, a dispute between the former and present joint administrators of
BSGRL concerning "approximately 24,000 documents" was addressed in BSGRL's Chapter 15 proceedings
last fall before Judge Lane.  During a November 12, 2020 hearing, the former joint administrators indicated that
they had produced 20,890 of the 24,000 documents to the current joint administrators on November 11, 2020,
and that they anticipated producing the remaining documents by December 10, 2020.  (Ex. M (Nov. 12, 2020
Hr'g Tr. at 10:12-18, 14:9-21).)  If these are the same documents referred to by Plaintiffs here, the dispute
appears to have been largely resolved well before the Court ordered discovery in this action.  Defendants do not
know whether these are the same documents, or whether the documents in fact were turned over to the new joint
administrators.  Defendants reference this statement to highlight the ongoing struggle to understand the true
state of Plaintiffs' collection, review, and production.  Plaintiffs failure to provide sufficient explanations seems
designed to prevent Defendants from obtaining documents.

Defendants to support their conspiratorial allegations – documents that this Court and

Judge Keenan have repeatedly said they are not entitled to – while ignoring their own discovery

obligations, including their obligation to comply with Judge Peck's Order.

## ARGUMENT

**I.      The Court Has the Legal Authority to Sanction Plaintiffs.**

The Court has broad authority and multiple ways to sanction Plaintiffs for failing

to comply timely with Judge Peck's Order.  Whichever standard the Court applies, the core

question, as Plaintiffs concede, is whether there has been non-compliant behavior.  (*See*

Response at 15.)  Defendants respectfully submit that the Court could conclude that Plaintiffs'

behavior was non-complaint based on this record.

### A.      Federal Rule of Civil Procedure 16(f)

Under Federal Rule of Civil Procedure 16(f)(1)(c), "the court may issue any just

orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails

to obey a scheduling or other pretrial order."  The purpose of Rule 16(f) sanctions is "to punish

lawyers and parties for conduct which unreasonably delays or otherwise interferes with the

expeditious management of trial preparation."  *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir.

1985); *see also Matter of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) ("subsection (f) . . .

indicates the intent to give courts very broad discretion to use sanctions where necessary to

insure not only that lawyers and parties refrain from contumacious behavior, already punishable

under the various other rules and statutes, but that they fulfill their high duty to insure the

expeditious and sound management of the preparation of cases for trial").

Plaintiffs argue that sanctions under Rule 16(f) are inappropriate because

Judge Peck's Order was not a "pretrial order" under Rule 16.  (Response at 15-16.)  Regardless

of whether the order was formally a pretrial order under Rule 16, the Court may still impose

sanctions under the broad authority provided by Rule 16(f).  *See Matter of Baker*, 744 F.2d 1438,

1440–41 (10th Cir. 1984) ("It is not necessary that the party or the party's lawyer be in violation

of a court order as required for the application of Rule 37(b)(1), Federal Rules of Civil

Procedure.").  Instead, it is sufficient that Plaintiffs' conduct has delayed discovery in this action,

inconvenienced the Court, and imposed inconvenience and expense on Defendants.  *Id.* at 1440

("While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and

planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts

to actively manage the preparation of cases for trial.").

   **B.**      **Federal Rule of Civil Procedure 37**

            Federal Rule of Civil Procedure 37 provides that, if a motion to compel is granted,

"the court must, after giving an opportunity to be heard, require the party or deponent whose

conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the

movant's reasonable expenses incurred in making the motion, including attorneys' fees."  Fed.

R. Civ. P. 37(a)(5)(A).  Plaintiffs argue that sanctions are not appropriate under Rule 37(a)(5)

because the April 14, 2021, joint status letter from the parties, which prompted the Court's order

to show cause, "is the antithesis of a motion to compel" as the letter states "all" the issues

discussed therein "have been or may still be amicably resolved."  (Response at 19.)  However,

courts issue sanctions under Rule 37 even when no formal motion to compel has been filed.  *See*

*Penta v. Costco Wholesale Corp.*, 14-cv-3587, 2016 WL 1171612 (E.D.N.Y. Mar. 25, 2016)

("[a]ttorneys' fees for these discovery-related disputes are appropriate under Rule 37(a)(5)(A), as

Defendants' letters and motions to the Court, filed after good-faith attempts to obtain the

discovery, resulted in the Court compelling Plaintiff to produce discovery"); *see also Chesa Int'l,*

*Ltd. v. Fashion Assocs., Inc.*, 425 F. Supp. 234 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir.

1977) (imposing sanctions under Rule 37 because of the "defendants' foot-dragging and evasive attitude on discovery").

     **C.**     **28 U.S. Code § 1927 and the Inherent Power of the Court**

     Under Section 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Similarly, the Court has the inherent power "to sanction parties and attorneys who have 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)); *see also Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 122–23 (S.D.N.Y. 2015) ("Courts' inherent powers include the power to [impose sanctions] for failure to obey court orders.").  Sanctions are appropriate under both section 1927 and the Court's inherent power where the court determines that the party or its counsel acted in bad faith.  *See Wine Mkts. Int'l, Inc. v. Bass*, 977 F. Supp. 601 (E.D.N.Y. 1997); *MA Salazar, Inc. v. Inc. Vill. of Atlantic Beach*, 499 B.R. 268, 274 (E.D.N.Y. 2013).  "A court may infer bad faith where the action was so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *MA Salazar, Inc.*, 499 B.R. at 274 (internal quotations omitted).

**II.**     **Nothing in Plaintiffs' Response Justifies Their Failure to Comply Timely with Judge Peck's Order.**

     On September 1, 2017, Judge Peck ordered Plaintiffs to determine the process by which they could obtain a waiver of the LCIA's confidentiality requirements.  In the approximately six months that this action has not been subject to the Court's stay, Plaintiffs inexplicably failed to do so.  None of the purported efforts detailed in Plaintiffs' Response justify

their failure to contact the LCIA.  Plaintiffs claim to have made efforts in the months following

Judge Peck's order, but those efforts amount only to counsel notifying Plaintiffs and Plaintiffs'

other counsel to the existence of Judge Peck's Order.  (Response at 5-6.)  Having promptly been

informed of the order, Plaintiffs offer no evidence that they sought to comply with it.  Plaintiffs'

attempts to justify their conduct mischaracterize Judge Peck's Order and the record, and make

clear that, despite all of the discussions they purportedly had on the subject, they never did the

one thing that would allow them to produce the protected documents – contact the LCIA

tribunal.

> **A.  Judge Peck's Order Was Neither Advisory Nor Ambiguous.**

Plaintiffs' attempt to justify their non-compliance by arguing that Judge Peck's

Order was "not a pretrial order" or was somehow "ambiguous."  (Response at 16-17.)  They

attempt to recast the Order as a mere "discussion" with, a "statement" by, or a "request" of Judge

Peck.  (Response at 4-5.)  This argument is specious.  The parties were not attending a social

event with Judge Peck; they were appearing in court before the federal Magistrate Judge

presiding over their discovery disputes.  Plaintiffs suggest that the Order is not enforceable

because it did not tell them exactly what to do and how to do it.  Plaintiffs should not need paint-

by-number instructions for how to speak to the tribunal overseeing an arbitration in which one of

them was a party.

> **B.  The LCIA Confidentiality Order Allows Plaintiffs to Request Relief from the Confidentiality Restrictions.**

Plaintiffs claim that between September 1 and November 29, 2017, "[c]ounsel for

BSGR was working through those issues concerning the documents such confidentiality would

apply to," (Response at 6), but they did not then and do not now inform Defendants or the Court

what issues they were "working through" or of the results of those efforts.  Based on the LCIA

19

Procedural Order No. 2, which Plaintiffs produced on April 8, 2021, only after being explicitly ordered by this Court to do so, all Plaintiffs had to do was ask the LCIA for permission to produce the materials covered by the order in this action pursuant to the same confidentiality restrictions.  (ECF No. 210-1 (LCIA Procedural Order No. 2.).)  Yet, Plaintiffs failed to do so apparently until April 12, 2021 – four days after this Court ordered them to produce the confidentiality order to Defendants and years after Judge Peck's Order.  Plaintiffs offer no explanation for why they could not have done this immediately following Judge Peck's Order or, at the very least, in the three months since the stay was lifted.

This delay has made obtaining any waiver even more difficult because the proceeding has been closed for two years.  The LCIA issued its award on April 4, 2019 and the proceedings were closed.  Plaintiff BSGRL was well within its rights to seek relief from the confidentiality requirements as a party to the LCIA proceeding while it was pending (*see id.*); it is simply inexcusable that they did not even try.

## C.  Plaintiffs' Efforts *Around* the LCIA Does Not Excuse Its Failure to *Go To* the LCIA.

Plaintiffs rely on work they were doing to produce some LCIA-related documents between September and November 2017, as somehow representative of their efforts to comply with Judge Peck's Order.  (Response at 6-7.)  Specifically, Plaintiffs say that during the time after Judge Peck issued his Order, "BSGR [was] beginning to produce its own LCIA documents, working through the production of the Vale LCIA documents, and doing factual and legal research into the production of the few third party LCIA documents as to which LCIA counsel for BSGR raised a concern."  (Response at 7.)  None of this work addresses Judge Peck's direction that Plaintiffs inquire about relief from any confidentiality orders in the LCIA proceeding.

Moreover, at the time of the stay, Plaintiffs had only produced a small subset of the LCIA documents.  Nor, as Plaintiffs' admit, have they produced any of the documents produced by Vale in that proceeding as of Monday, April 26, 2021.[4]  Plaintiffs now suggest that the confidentiality requirements of the LCIA do not apply to documents produced by Vale and that Plaintiffs came to that conclusion in 2017.  (Response at 6).  This admission is remarkable considering Plaintiffs blocked Defendants' efforts to obtain Vale's LCIA materials from Vale on the basis of the confidentiality order (*see* Fact Section C *supra*) and never informed Defendants of this conclusion, either in 2017 or since discovery commenced in January, despite knowing that Defendants were actively pursuing production of documents from Vale, both in 2017 and now. Indeed, Defendants informed Plaintiffs that they had served Vale with a subpoena for the production of documents on April 7, 2021, but Plaintiffs never informed Defendants that they had apparently been negotiating with Vale to produce the same documents since March 22, 2021. (Response at 11-12.)

In any event, these purported steps are nothing more than an effort by Plaintiffs to shift focus from the question raised by the Court – what did you do to seek relief from the LCIA confidentiality order; the answer to that question is nothing.

**D.      Plaintiffs' Unfulfilled Agreement to Provide Defendants With the LCIA Confidentiality Order in 2017 Highlights Not Absolves Their Non-compliance.**

In another apparent attempt to show compliance with Judge Peck's Order, Plaintiffs assert that they agreed to provide Defendants with the relevant LCIA procedural order on the morning the stay was granted.  (Response at 7.)  Whether they "agreed to" provide it or not, they did not provide it in 2017 and did not provide it to Defendants in 2021 until expressly

---

[4]    At 7:30 pm on April 29, 2021, Plaintiffs made another production.  Defendants do not yet know whether this production contains any documents from the LCIA arbitration.

ordered to do so by the Court.  Plaintiffs offer no explanation for why they could not produce this Procedural Order as soon as they received it in 2017 (or sooner), after the Court lifted the stay for discovery on the Three Issues in January 2021, in response to Defendants' repeated requests for it in February and March 2021, or any other time before the Court was compelled to order them to do so.  Nor could they.  Plaintiff BSGRL was the respondent in the LCIA arbitration and thus had this order in its possession when this action was filed and, therefore, was aware that it allowed the parties to the arbitration to request relief from the confidentiality requirements.  Now it may be too late given the closed status of that proceeding.

In any event, whether they "agreed to" give the confidentiality order to Defendants did not fulfill Judge Peck's Order – they were ordered to find out how to get relief from the confidentiality order.  Plaintiffs did not do so.  On the contrary, we now know that Plaintiffs have been actively trying to preserve, not lift, the confidentiality order in the LCIA proceeding precisely to avoid production of those documents in this case.  In its dispute with Vale over improper confidentiality designations described above, BSGRL argued that certain LCIA documents "directly concern [] nearly the same or similar matters at issue in the Soros litigation which remains pending before the District Court.  As set out in the Callewaert Declaration, public disclosure of these documents could seriously undermine the Joint Administrators' chances of success in the Soros litigation."  (Ex. N ¶ 23.)  In an email filed as a supporting exhibit to the Callewaert Declaration, counsel for Plaintiffs in this case advised the former joint administrators not to de-designate confidential LCIA documents because to do so "would clearly be harmful . . . to the Soros Litigation."  (Ex. B.)  Plaintiffs have not complied with nor have they tried to comply with Judge Peck's Order because it is not in their interest to

do so – they know that if these documents from the LCIA proceeding are produced in this case their claims will be dismissed.

Plaintiffs discovery games over these confidentiality and other issues also raised the ire of Judge Lane, who on more than one occasion admonished Plaintiff BSGRL for its discovery abuses.  (*See* Ex. G (Oct. 3, 2019 Hr'g Tr. at 21:14-21 (finding Plaintiff asserted "a series of positions . . . that basically really don't seem to have a whole lot of merit to slow discovery down"); Ex. H (Nov. 4, 2019 Hr'g Tr. at 7:5-14) ("There are sort of discovery equivalents of the Allen charge in a criminal case to get people to really pay attention. That's sanctions, and I'm -- you know, again, it is what it is. So I just throw it out there just because I don't see this ending particularly well.").)[5]

### E.    Plaintiffs' Attempt to Blame Defendants for Their Non-compliance Fails.

Plaintiffs claim their actions were sufficient because "Defendants in this action had not filed any motion or objection to Plaintiffs' compliance with their undertaking to Judge Peck" and because "[t]he parties had not appeared again before Judge Peck."  (Response at 7.) Plaintiffs' compliance with Judge Peck's Order is not dependent on ***Defendants'*** enforcement of the order.  It was an Order of the Court directed at Plaintiffs.  It was their obligation to comply. In any event, Plaintiffs were well aware that Defendants believed their efforts were insufficient to meet their discovery obligations.  On November 9, 2017, Defendants sent Plaintiffs a letter in which they raised, among other deficiencies, Plaintiffs failure to "(a) provide the governing confidentiality agreement precluding production of LCIA materials; (b) answer the question

---

[5]    Plaintiffs engaged in similarly obstructionist behavior in the LCIA proceeding (*see, e.g.*, LCIA Award, ECF No. 172-2 ¶¶ 48, 50, 51, 54, 55, 69, 73-76 (describing repeated delays in BSGRL's compliance with document production and other discovery orders), and in various proceedings in England, (*see, e.g.*, Ex. O (English High Court Judgment) ¶ 63 (noting that Dag Cramer spent more than £254,465 attempting to avoid an order requiring he be deposed in his capacity as an officer of BSGR by Vale, which the court described as "a routine procedure which [Vale] was entitled to follow and to which he could not reasonably object.")).

whether the agreement includes a provision allowing the arbitration panel to set aside the confidentiality to allow production of documents in this case; or (c) inform us or the court whether you have made any such inquiry or motion to the arbitral panel." (Ex. E at 1-2.)  The letter also complained that Plaintiffs had not produced the LCIA confidentiality order, even though, "[d]uring the parties' meet and confer on August 29, 2017, Plaintiffs agreed to provide such confidentiality agreements or court orders and the relevant legal citations." (*Id.* at 2.)  The issue was still not resolved as of the parties' November 17, 2017, meet and confer during which Plaintiffs continued to make excuses for not producing the confidentiality agreement or revealing the procedures to obtain relief from it.  As if this were not enough, in the first discussion between the parties after Judge Keenan lifted the stay, Defendants again pressed Plaintiffs to produce the materials from the LCIA and ICSID proceedings, among others, and demanded the production of the basis for Plaintiffs' continued withholding of these materials.  Any suggestion that Defendants sat on their hands over this material is baseless.

**F.  Plaintiffs' Recent Challenges Procuring the LCIA Materials Reveal the Prejudice Caused by Their Failure to Comply Timely with Judge Peck's Order.**

In a last ditch effort to justify their dilatoriness, Plaintiffs claim that their efforts to produce the LCIA documents were hampered by issues obtaining access to the documents. (Response at 10.)  Plaintiffs state that "the repository of any LCIA documents, two or possibly three document management services, were not active" and that new fee arrangements needed to be negotiated to gain access to the documents. (*Id.* at 10-11.)  Defendants are unclear why such efforts would be necessary.  Plaintiffs had these documents in their possession in 2017 and had a duty to preserve the documents during the stay.  Additionally, even though Plaintiffs were aware that this Court commenced discovery on January 25, 2021, it appears that Plaintiffs did not begin the process of obtaining these documents until March.  Plaintiffs' contention that "[i]t was not

immediately apparent that Defendants would seek LCIA documents other than those produced by BSGR . . . and Vale . . ." (Response at 9-10) is not credible.  The Court explicitly lifted the stay for discovery into the collateral estoppel effect of the LCIA proceeding on Plaintiffs' claims here.  They may have hoped that Defendants would limit their requests, but it is not plausible that they did not anticipate the need to go back to the LCIA on these issues.

*      *      *

Not only did Plaintiffs' unjustifiably fail to comply with Judge Peck's Order, but their conduct has unreasonably delayed discovery and wasted the Court's resources.  Because of Plaintiffs' constant foot-dragging with respect to the confidentiality issue, Defendants were forced to pursue international discovery from two parties – Pentler and Vale – and to engage in what, Plaintiffs now suggest, were unnecessary negotiations with Vale to obtain its documents. Since the stay was lifted, Plaintiffs have continued to delay the discovery process by waiting three months to seek the LCIA's consent to produce confidential documents, and consistently refusing to provide Defendants with any information regarding its collection, review, and production.  This has forced Defendants to once again pursue international discovery requests and to seek the Court's interference to force Plaintiffs to comply with their obligations.

## CONCLUSION

For the foregoing reasons, the Court is within its discretion to impose sanctions on Plaintiffs for failing to timely comply with Judge Peck's September 1, 2017, Order.

Dated: April 30, 2021
New York, New York

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By:  /s/ Benjamin P. McCallen_____
    Joseph T. Baio
    Benjamin P. McCallen

787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
jbaio@willkie.com

    Elizabeth J. Bower

1875 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
ebower@willkie.com

*Attorneys for Defendants*