# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BSG RESOURCES (GUINEA) LIMITED, BSG RESOURCES (GUINEA) SÀRL, and BSG RESOURCES LIMITED,<br><br>              Plaintiffs,<br><br>       v.<br><br>GEORGE SOROS, OPEN SOCIETY FOUNDATIONS, OPEN SOCIETY INSTITUTE, FOUNDATION TO PROMOTE OPEN SOCIETY, OPEN SOCIETY FOUNDATION, INC., ALLIANCE FOR OPEN SOCIETY INTERNATIONAL, INC., OPEN SOCIETY POLICY CENTER, and OPEN SOCIETY FUND,<br><br>              Defendants. | No. 1:17-cv-02726 (JFK) (AJP) |

## DEFENDANTS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO PLAINTIFFS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund (collectively, "Defendants") hereby request (the "Request") that Plaintiffs BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited (collectively, "Plaintiffs"), produce the documents requested below for inspection and copying at the offices of Willkie Farr & Gallagher LLP, c/o Joseph T. Baio, Esq., 787 Seventh Avenue, New York, New York 10019, within 30 days from the date hereof.

## INSTRUCTIONS

1. Produce all responsive documents under your control.

2. Produce all documents as they are kept in the normal course of business.

3. Each document request requires you to produce all responsive documents in their entirety, including all attachments and documents affixed thereto, without abbreviation or expurgation. If no documents responsive to a particular request exist or are within your control, the response should so state. In the event that you are able to provide only a portion of the document(s) called for in any particular document request, provide all document(s) that you are able to provide, and (i) identify the remaining documents and (ii) state the reason why you are unable to produce the remaining documents.

4. To the extent you refuse to respond to any document request, in whole or in part, on grounds of privilege or attorney work-product, you shall comply with and provide the information required by Local Civil Rule 26.2. Any redactions to documents shall be prominently identified with a mark indicating the location and size of the redacted area.

5. These discovery requests are continuing. Supplement your responses promptly if and when you obtain or locate additional responsive documents.

6. In the event that any document called for by the requests for production has been destroyed, lost, or otherwise discarded, identify the document request(s) to which that document was responsive and identify such document or documents as completely as possible, including, without limitation, the following information: the substance of the document or documents; last known custodian(s); date and method of disposal; person authorizing or directing the disposal; person disposing of the document or documents; reason(s) for the disposal; and whether any copy(ies) of the document or documents exist.

2

7.     Produce, without redaction, the entirety of any document that contains responsive, non-privileged information.

8.     The scope of your search for electronic data that is responsive to any request shall include all forms of electronic data collection, preservation, transmission, communication, and storage, including but not limited to:

a.     All data generated and maintained in the ordinary course of business, including data stored on mainframe computers, with third parties, or on local and network computers and storage devices;

b.     Distributed, removable, or portable data, i.e., information which resides on portable media and non-local devices, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, solid-state and flash memory drives, cloud storage or other internet repositories (including e-mail hosted by web services such as Gmail), and handheld storage devices such as smart phones, tablets, and iPads;

c.     Forensic copy or backup data, including archive and backup data tapes and discs;

d.     Network data, including voicemail systems, e-mail servers, file and print servers, and fax servers;

e.     Legacy data, i.e., retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

f.     Metadata, i.e., information regarding a particular data set which

describes how, when, and by whom it was collected, created,

accessed, and modified and how it is formatted; and

g.      Residual or deleted data, i.e., data that is not active on a computer

system, including data found on media free space, data found on

media slack space, and data within files that have been functionally

deleted.

9.      All relevant, responsive and non-privileged documents shall be

produced as follows:

a.      To the extent you produce one form of a document, it need not be

produced in another form; however, Defendants reserve the right to

request native files for any document that is unreadable or has

limited accessibility in the Group IV TIF format (e.g., MS Excel,

PowerPoint, color documents, or databases).  Produce audio,

audiovisual, and video files in their native formats.  To the extent

any specialized software is required to allow a document to be

read, interpreted, or translated into usable form, such software shall

also be produced or such documents shall be converted into

reasonably usable forms for production.

b.      Non-electronic documents shall be scanned into a static-image

format with searchable text as specified herein.

c.      Images shall be produced as single-page CCITT Group IV TIFF

files in 300 dpi with an IPRO .LFP reference file containing

document (D) and child (C) identifiers.  Each TIFF image shall

have a unique, sequential identifying number which is the Bates number of the page.

d.   A standard Concordance .DAT load file shall be provided containing all metadata fields specified below.  The Concordance data files shall be delimited by the Concordance default format delimiters, e.g., ASCII 020 (for comma), 254 (þ for quote), and 174 (® for newline).

e.   Document text shall be provided in a multipage .TXT file for each document, using extracted text for electronic data and OCR for scanned, non-electronic documents.  Each .TXT file shall be named per the ProdBeg value for each document and delivered in a folder named Text.

f.   Native files shall be named per the ProdBeg value for each document and delivered in a folder named Natives.

g.   In the event a document is encrypted, password-protected, or otherwise protected from third-party access, you shall, to the fullest extent possible, decrypt or unlock such documents.

h.   In producing documents, if an identical document appears in more than one person's files, you must either (1) produce each copy of the document or (2) provide the names of each custodian delimited by commas in either the "Custodian" field or in an additional metadata field within the Concordance load file.

i.   Produce full families for all ESI.

j.      The following metadata fields shall be provided as applicable for

each document type:

| *METADATA FIELDS FOR <u>ALL</u> ELECTRONIC DOCUMENTS* | |
|---|---|
| **ProdBeg** | First bates number of email or document |
| **ProdEnd** | Last bates number of email or document |
| **ProdBegAttach** | First bates number of attachment(s) |
| **ProdEndAttach** | Last bates number of attachment(s) |
| **Custodian** | |
| **All Custodians** | Populated with names of all custodians for whom the document was processed whether or not the file was removed upon deduplication |
| **Flie_Extension** | |
| **MD5Hash** | |
| **FilePath** | Staring with container name (PST or NSF) through mailbox folder name - format example: Outlook PST\Inbox\Important |
| **Record Type** | Populated with Email, Attachment, or Loose File |
| **NativePath** | Relative path to native file if provided in production |
| **TextPath** | Relative path to document text/OCR file if provided in production |

| ADDITIONAL METADATA FIELDS FOR EMAIL | |
|---|---|
| **SentDate** | Format yyyymmdd |
| **SentTime** | Format hh:mm:ss |
| **ReceivedDate** | Format yyyymmdd |
| **ReceivedTime** | Format hh:mm:ss |
| **From** | |
| **To** | |
| **CC** | |
| **BCC** | |
| **Subject** | |
| **ThreadID** | Email thread identification value (ConversationIndex or other identifier) |
| **Attachment Names** | File names of attached documents |
| **Num_Attachments** | Number of attached documents |

| ADDITIONAL METADATA FIELDS FOR ALL ELECTRONIC DOCUMENTS OTHER THAN EMAIL | |
|---|---|
| **Author** | |
| **CreateDate** | Format yyyymmdd |
| **CreateTime** | Format hh:mm:ss |
| **ModDate** | Format yyyymmdd |
| **ModTime** | Format hh:mm:ss |
| **DocTitle** | |
| **FileName** | |
| **FileSize** | |

| METADATA FIELDS FOR SCANNED PAPER DOCUMENTS | |
|---|---|
| **ProdBeg** | First bates number of document |
| **ProdEnd** | Last bates number of document |
| **ProdBegAttach** | First bates number of attachment(s) |
| **ProdEndAttach** | Last bates number of attachment(s) |
| **Custodian** | |

10.     Defendants expressly reserve the right to supplement these requests and to propound new requests, to the extent permitted by applicable law and rules.

11.     Unless otherwise indicated, the time period covered by these discovery requests is from January 1, 2005 through to the present.  You must produce all documents and/or communications that relate to this time period, even if they were prepared or published outside the period.

## DEFINITIONS

1.     The definitions and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Rules for the United States District Court for the Southern District of New York (the "Local Rules") shall apply to these Requests. All terms not otherwise defined shall have their ordinary and common meanings.

2.     "Action" shall mean and refer to the above-captioned action, proceeding number 1:17-cv-02726 (JFK), currently pending in the United States District Court for the Southern District of New York.

3.     "Agreements" shall mean and refer to (i) BSGR's prospecting permits in the Guinean regions of Beyla, Macenta, Nzérékoré, and Yomou ("Simandou South") and the Guinean region of Kérouané ("Simandou North"), referenced in paragraph 22 of the Amended Complaint; (ii) BSGR's memorandum of understanding with Guinea, referenced in paragraph 23 of the Amended Complaint; (iii) BSGR's prospecting permits in Simandou Blocks 1 and 2, referenced in paragraph 26 of the Amended Complaint; (iv) the Basic Convention Agreement, referenced in paragraph 30 of the Amended Complaint; (v) BSGR's mining concession for the Zogota deposit in Simandou South, referenced in paragraph 36 of the Amended Complaint; or (vi) any other documents evidencing BSGR's mining rights in Guinea.

4.     "Amended Complaint" shall mean the first amended complaint, dated June 30, 2017, or any amendments thereto, filed in this Action.

5.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6.     The terms "any" and "all" shall be construed so as to include both "all" and "any" and to include the terms "each" and "every."

7.     "BSGR," "You," or "Your" shall mean and refer to BSG Resources (Guinea) Limited (including, but not limited to, any existing or defunct entity by that name that is or was registered or organized under the laws of Guernsey or the British Virgin Islands), BSG Resources (Guinea) Sàrl, BSG Resources Limited, BSGR Guinea BVI, as well as each of their principals (including Beny Steinmetz), parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities, including Onyx Financial Advisers, Margali Management Corp., and Pentler Holdings.

8.     "Communication" means the transmittal of information by any means, including, but not limited to, transmittal by electronic means such as electronic mail, including via both Bloomberg and personal email accounts, text messaging, instant messaging, online chat platforms, recordings, or postings on social media sites as described in Definition No. 12 herein.

9.     "Concern" or "concerning" shall mean relating to, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed, in whole or part, directly or indirectly.

9

10.     "Control" means possession, custody, or control, and includes constructive possession, provided that You, Your attorneys, agents, or representatives have a right to compel production of the document or communication from a source with possession thereof.

11.     The term "document" is to be interpreted in the broadest possible sense consistent with the Federal Rules of Civil Procedure and the Local Rules and includes, without limitation, all writings or other records of information or images.  Any draft, non-identical copy, translation, copy bearing any notations or marks not found on the original, or identical copy residing in a separate location is a separate "document."  The term "document" includes ESI (as defined below), and specifically includes, without limitation, electronic mail, documents created utilizing word processing programs (*e.g.*, Microsoft Word), documents created utilizing spreadsheet programs (*e.g.*, Microsoft Excel), database files, documents created utilizing presentation programs (*e.g.*, Microsoft PowerPoint), and documents created using accounting and financial analysis software.  The term "document" further specifically includes communications.

12.     "ESI" (Electronically Stored Information) shall mean information or data that is generated, received, processed, or recorded by computers or other electronic devices, and includes, without limitation, system metadata (*e.g.*, author, recipient, CC, BCC, custodian, source, file creation date, file modification date, sent date, subject, extracted text or OCR where extracted text is unavailable, file name, and attachments) and user-generated metadata (*e.g.*, spreadsheet formulas).  The term "ESI" further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) messages from AOL Instant Messenger, Twitter, Google Chat/Gchat, Facebook, Skype, MySpace, LinkedIn,

and all similar programs and social media sites, (iv) audio and video files, (v) internal (intranet) or external websites, (vi) activity listings of electronic mail receipts and/or transmittals, and (vii) internet browser history.  The term "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) in an active file on a computer network or individual computer hard drive, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, (v) on a smartphone, tablet, or personal digital assistant, and (vi) on a home or personal device.  The term "ESI" also includes documents, containers, and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

13.     "Guinea" shall mean and refer to the country in West Africa with the capital city of Conakry and, for the purposes of these Requests, shall also mean and refer to the country's government, officials, committees, commissions, affiliates, divisions, agents, members, employees, attorneys, consultants, and representatives, past, present, or future, in their individual or representative capacities.

14.     "ICSID Arbitration" shall mean and refer to the arbitration before the International Centre for Settlement of Investment Disputes, captioned *BSG Resources Limited et al. v. Republic of Guinea*, Case No. ARB/14/22.

15.     "Joint Venture" shall mean and refer to BSGR's joint venture with Vale S.A. as described in paragraphs 37 through 43 of the Amended Complaint.

16.     "Pentler Holdings" shall mean and refer to the company established by Mossack Fonseca for Onyx Financial Advisors, which Onyx Financial Advisors later sold to Frédéric Cilins, Michael Noy, and Avhraham Lev Ran.

17.     "Person" means a natural person or any entity, including, without limitation, a corporation, partnership, firm, sole proprietorship, association, joint venture, unincorporated association, trust, or any other entity of any type or description whatsoever, whether formed for business or other purposes.

18.     The use of the singular form of any word includes the plural and vice versa.

19.     All terms defined herein shall have the meanings set forth in Definition Nos. 1 through 18 above, whether such terms are capitalized in these Requests or not.

## **REQUESTS FOR PRODUCTION**

1.     All Documents or Communications concerning the allegations or claims in the Amended Complaint.

2.     All Documents or Communications referenced, cited, or quoted in the Amended Complaint.

3.     All Documents or Communications concerning any Documents or Communications referenced, cited, or quoted in the Amended Complaint.

4.     Documents sufficient to demonstrate the corporate structure of BSGR and its principals, parents, subsidiaries, partners, and affiliates, including any organizational charts.

5.     All Documents or Communications concerning the Agreements, including, but not limited to, the Agreements, any amendments to the Agreements, any applications to Guinea submitted by BSGR concerning the Agreements, any Documents or Communications concerning the negotiation or procurement of the Agreements, and any Documents or Communications created or transmitted by BSGR pursuant to the terms of the Agreements.

6.      All Documents or Communications concerning Defendants' alleged interference with the Agreements.

7.      All Documents or Communications concerning the financial interests of Guinea or President Condé in the Agreements or the modification or termination of the Agreements.

8.      All Documents or Communications concerning any work undertaken by BSGR in Guinea pursuant to the agreements.

9.      All Documents or Communications concerning Guinea's examination, confirmation, ratification, review, or termination of the Agreements.

10.      All Communications or Documents concerning Communications or meetings between or among BSGR and Guinea.

11.      All Documents or Communications concerning the formation of the Joint Venture.

12.      All Documents or Communications concerning the termination of the Joint Venture or the investigation by Guinean or other authorities of the Joint Venture.

13.      All Communications or Documents concerning Communications or meetings between or among the Joint Venture, on the one hand, and Guinea or any of the Defendants, on the other.

14.      All Communications or Documents concerning Communications or meetings between or among George Soros and President Condé.

15.      All Documents or Communications concerning Pentler Holdings, including, but not limited to, Documents or Communications concerning the creation of Pentler Holdings, services provided by Pentler Holdings related to Guinea or BSGR, and any payments

made to, by, or through Pentler Holdings, directly or indirectly, related to the Agreements or BSGR's dealings in Guinea.

16.    All Documents or Communications concerning (i) Dag Lars Cramer, (ii) Frédéric Cilins, (iii) Michael Noy, (iv) Avhraham Lev Ran, or (v) Roy Oron, including but not limited to, the services they provided concerning BSGR or Guinea or any payments BSGR provided to them, either directly or indirectly.

17.    All Documents or Communications concerning (i) Ibrahima Sory Touré, (ii) Ibrahima Fofana Kassory, (iii) Adama Sidibe, (iv) Aboubacar Bah, (v) Ismaila Daou, (vi) Samuel Mebiame, (vii) Lounceny Nabé, or (viii) Ghasson Boutros.

18.    All Documents or Communications concerning acts or allegations of corruption or bribery by BSGR in Guinea, including, but not limited to, any payments or gifts made to (i) secure meetings with Guinea, (ii) procure the Agreements, (iii) obtain mining rights in Guinea, and (iv) cause the destruction of evidence relevant to allegations that BSGR engaged in corruption or bribery in Guinea.

19.    All Documents or Communications concerning any payments, gifts, or bribes made, transmitted, or offered by BSGR, either directly or indirectly, to Guinea, Mahmoud Thiam, or, Mamadie Touré.

20.    All Documents or Communications concerning any company that contains "Matinda" in its name, including, but not limited to, Matinda Partners and Co. Ltd., Matinda and Co. Ltd. Sàrl, and Matinda & Co. Ltd.

21.    All Documents or Communications concerning any contract or agreement (whether written or oral) entered into or allegedly entered into between BSGR or Pentler Holdings, on the one hand, and (i) Mamadie Touré, (ii) Ibrahima Sory Touré, (iii) Ibrahima

Fofana Kassory, (iv) Adama Sidibe, (v) Aboubacar Bah, (vi) Ismaila Daou, or (viii) Samuel

Mebiame, on the other hand, including, but not limited to, the contracts referenced in paragraph

2 of Procedural Order No. 11 in the ICSID Arbitration.

        22.    All Documents or Communications concerning any payments, gifts, or

bribes made, transmitted, or offered by BSGR, either directly or indirectly, to any entity or

individual in connection with the Agreements or BSGR's dealings in Guinea.

        23.    All Documents or Communications concerning Barrick Gold Corporation

or its Chief Operating Officer, Richard Williams.

        24.    All Documents or Communications concerning any alleged meetings or

Communications between or among Defendants and Guinea.

        25.    All Documents or Communications concerning President Condé's alleged

demand "that BSGR pay $1.25 billion to maintain its contractual mining rights" or BSGR's

alleged "refusal to pay the $1.25 billion demanded" referenced in paragraphs 58 and 60 of the

Amended Complaint.

        26.    All Documents or Communications concerning the allegation in paragraph

61 of the Amended Complaint that "[George] Soros and OSF engaged in secret negotiations with

Vale seeking payment of $500 million," including, but not limited to, the documents referenced

in paragraphs 61 through 65 of the Amended Complaint.

        27.    All Documents or Communications concerning BSGR's contention or

allegations that Revenue Watch Institute, Global Witness, DLA Piper, Scott Horton, Veracity

Worldwide, or Steven Fox are or were the agents of, under the control of, or funded by any of the

Defendants.

28.     All Documents or Communications concerning Guinea's Mining Code, including, but not limited to, any drafts of and amendments to the Mining Code.

29.     All Documents or Communications concerning the investigation conducted by the law firm Heenan Blaikie referenced in paragraphs 93 and 106 of the Amended Complaint, including, but not limited to, Documents or Communications concerning the results of that investigation, the identity or qualifications of any Person who performed, engaged in, contributed to, or otherwise affected the investigation, and any reports, conclusions, summaries, or other documents evidencing the findings of the investigation.

30.     All Documents or Communications concerning law firms other than Heenan Blaikie that had investigated or were otherwise involved in reviewing the "Basic Convention and related mining contracts" to support BSGR's allegation in paragraph 3 of the Amended Complaint that "reputable law firms" (plural) had "confirmed" the validity of the "Basic Convention and related mining contracts."

31.     All Documents or Communications concerning Veracity Worldwide, Steven Fox, DLA Piper, or Scott Horton, including, but not limited to, Documents or Communications concerning any investigations conducted or reports created by any of those entities, and Documents or Communications provided to or relied on by those entities in connection with any such reports or investigations.

32.     All Documents or Communications demonstrating how BSGR obtained a copy of DLA Piper's draft and/or final report, referenced, among other places, in paragraph 111 of the Amended Complaint.

33.     All Documents or Communications concerning George Soros or Chris Canavan.

34.     All Documents or Communications concerning FTI Consulting, including, but not limited to, Documents or Communications concerning any contracts between FTI Consulting and BSGR, Defendants' alleged interference in any such contracts, and the alleged statement of John Waples of FTI Consulting that "Mr. Soros had a personal obsession about BSGR and is determined to ensure that VBG's mining license is withdrawn/cancelled," referenced in paragraph 48 of the Amended Complaint.

35.     All Documents or Communications concerning the National Mining Commission, Technical Committee, or Strategic Committee, including Documents provided to or Communications with each of them.

36.     All Documents exchanged between or among the Technical Committee or Guinea, on the one hand, and BSGR on the other hand, including, but not limited to, the Allegations Letter referenced in paragraph 114 of the Amended Complaint, the Allegations Letter referenced in paragraph 150 of the Amended Complaint, and the alleged "exculpatory material" and "evidence" referenced in paragraph 150 of the Amended Complaint.

37.     All Documents or Communications concerning the Allegations Letter referenced in paragraph 114 of the Amended Complaint, including, but not limited to, Documents or Communications concerning the substance of the letter, the alleged leak of the letter to the press, as described in paragraph 130 of the Amended Complaint, and the consequences of the letter, including the alleged consequence described in paragraph 131 of the Amended Complaint.

38.     All Documents or Communications relating to the investigation or review of the Agreements undertaken by the Technical Committee, including, but not limited to, any Documents or Communications concerning BSGR's allegations that the result of the Technical

Committee's review was pre-ordained and that "[George] Soros conspired with members of the Technical Committee (or alternatively duped them) to perpetrate the fraud of appearing to conduct an impartial and fair investigative process."

39.     All Documents or Communications concerning BSGR's destruction of, or attempt to destroy, evidence relating to any contract or agreement (whether written or oral) entered into or allegedly entered into by BSGR or Pentler Holdings, on the one hand, and (i) Mamadie Touré, (ii) Ibrahima Sory Touré, (iii) Ibrahima Fofana Kassory, (iv) Adama Sidibe, (v) Aboubacar Bah, (vi) Ismaila Daou, (vii) Samuel Mebiame, (viii) Lounceny Nabé, and/or (ix) Ghasson Boutros on the other hand, including, but not limited to, the contracts referenced in paragraph 2 of Procedural Order No. 11 in the ICSID Arbitration.

40.     All Documents or Communications concerning any alleged statements made by Defendants, Scott Horton, Global Witness, or any alleged agent of Defendants concerning BSGR and/or the mining industry in Guinea.

41.     All Documents or Communications concerning the allegation that Mamadie Touré received payments from Mamoudou Kouyaté and from "an agent or associate of [George] Soros" in paragraph 152 of the Amended Complaint.

42.     All Documents or Communications concerning the allegation that DLA Piper was "in the chain of custody concerning the [forged] contracts" referenced in paragraph 151 of the Amended Complaint.

43.     All Documents or Communications concerning the alleged payments referenced in paragraphs 161 through 164 of the Amended Complaint, including, but not limited to, the "duly executed declaration of an intermediary" referenced in paragraph 161 of the Amended Complaint (the "Intermediary Declaration"), and all Documents or Communications

concerning the Intermediary Declaration and its contents, including any drafts of and amendments to the Intermediary Declaration.

44.    All Documents or Communications concerning any monetary or reputational damages or the calculation of such damages that BSGR is alleged to have suffered in the Amended Complaint, including, but not limited to, any alleged investment or expenditure by BSGR in Guinea, BSGR's alleged lost "business opportunities" referenced in paragraphs 173 and 174 of the Amended Complaint, and BSGR's alleged damages set forth in paragraph 217 of the Amended Complaint.

45.    All Documents or Communications concerning alleged acts or transactions undertaken by BSGR in reliance on Defendants' alleged misrepresentations or omissions regarding the impartiality of the Technical Committee's review of the Agreements.

46.    All Documents or Communications concerning whether Guinea has considered restoring, has restored, or will restore the Agreements.

47.    All Documents or Communications concerning the tender of BSGR's alleged mining rights pursuant to the Agreements to a third party.

48.    All Documents concerning the ICSID Arbitration, including, but not limited to, (i) any Documents produced to or by BSGR in the ICSID Arbitration; (ii) copies of all videos and/or transcripts of any testimony and/or proceedings in the ICSID Arbitration; and (iii) any motion papers or pleadings submitted by BSGR in the ICSID Arbitration.

49.    All Documents or Communications concerning BSGR's allegations in the ICSID Arbitration that:

      a.    "From day one, BSGR understood that the entire process before the Technical Committee was nothing but an attempt to justify the

forthcoming withdrawal of its mining investments."

    b.    "Unknown to BSGR, in around late 2009 or early 2010, Alpha
Condé (then a Presidential candidate for the forthcoming elections
in March 2010 in Guinea), made a deal with business interests in
South Africa according to which: (1) they would provide
significant funds, believed to be USD 50 million, to Alpha Condé
and assist in rigging the forthcoming Presidential election in
Guinea to ensure that Alpha Condé was elected; and (2) in return,
Alpha Condé agreed that he would, when he became President,
grant the South African business interests shares in the mining
assets of Guinea, including in particular Simandou where BSGR
had its mining titles, and make payments in the amount of USD 14
million."

50.    All Documents or Communications produced to or by BSGR in
connection with any governmental or non-governmental investigation of BSGR's conduct in
Guinea, including, but not limited to, investigations by authorities in Guinea, Switzerland, Israel,
and the United States.

51.    All Documents or Communications concerning any governmental or non-
governmental investigation of BSGR's conduct or business in Guinea, including, but not limited
to, investigations by authorities in Guinea, Switzerland, Israel, and the United States.

52.    All Documents or Communications produced to and by BSGR in any
grand jury or other investigation by the United States government relating to BSGR, including,
but not limited to, investigations of Beny Steinmetz, Frédéric Cilins, and Mahmoud Thiam.

53.     All Documents or Communications concerning any grand jury or other investigation by the United States government relating to BSGR, including, but not limited to, investigations of Beny Steinmetz, Frédéric Cilins, and Mahmoud Thiam.

54.     All Documents or Communications produced to and by BSGR in *Rio Tinto PLC v. Vale S.A., et al.*, No. 14-CV-03042 (S.D.N.Y.).

55.     All Documents or Communications produced to and by BSGR in the *Vale v. BSGR* arbitration, LCIA Arb. No. 142683.

56.     All Documents or Communications concerning the "evidence [that] was given by several Guinean officials in various of the proceedings that George Soros has caused to be initiated against BSGR" referenced in paragraph 133 of the Amended Complaint.

57.     All Documents or Communications concerning the copying, distribution, damage, destruction, deletion, or erasure of any Document requested in these Requests.

58.     All Documents on which You intend to rely at a trial of this Action.

Dated: New York, New York                WILLKIE FARR & GALLAGHER LLP
July 24, 2017

                                                /s/ Joseph T. Baio
                                                Joseph T. Baio
                                                Benjamin P. McCallen
                                                James Fitzmaurice
                                                787 Seventh Avenue
                                                New York, New York 10019
                                                (212) 728-8000
                                                jbaio@willkie.com
                                                bmccallen@willkie.com
                                                jfitzmaurice@willkie.com

*Attorneys for Defendants George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund*