# EXHIBIT F

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jonathan I. Blackman
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Vale S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BSG RESOURCES LIMITED (in administration),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 19-11845 (SHL) |

**VALE S.A.'S INITIAL OBJECTION TO THE JOINT ADMINISTRATORS'**
**VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDINGS**
**UNDER CHAPTER 15 OF THE UNITED STATES BANKRUPTCY CODE**

# TABLE OF CONTENTS

|  | **Page** |
|---|---|
| PRELIMINARY STATEMENT ........................................................................................ | 1 |
| BACKGROUND ............................................................................................................... | 2 |
| ARGUMENT..................................................................................................................... | 6 |
| CONCLUSION.................................................................................................................. | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

11 U.S.C. § 362................................................................................................................ 7, 9

11 U.S.C. § 1506.............................................................................................................. 10

11 U.S.C. § 1507.............................................................................................................. 1

11 U.S.C. § 1515.............................................................................................................. 1, 7

11 U.S.C. § 1517.............................................................................................................. 1, 7, 10

11 U.S.C. § 1520.............................................................................................................. 1, 7

11 U.S.C. § 1521..............................................................................................................1, 7, 10

**Cases**

*In re Bear Stearns High-Grade Structure Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (S.D.N.Y. 2008)......................................................................................... 7

*In re Creative Fin. Ltd.*,
543 B.R. 498 (Bankr. S.D.N.Y. 2016)..............................................................................7, 9, 10

*In re Fairfield Sentry Ltd.*,
714 F.3d 127 (2d Cir. 2013)............................................................................................. 7

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011)................................................................................ 7

*In re Serviços de Petróleo Constellation S.A.*,
600 B.R. 237 (S.D.N.Y. 2019).......................................................................................... 7-8

*In re SPhinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006).............................................................................. 7

*In re Suntech Power Holdings Co.*,
520 B.R. 399 (Bankr. S.D.N.Y. 2014).............................................................................. 7

**Page(s)**

**Other Authorities**

Barbara Lewis, *Administrators Seek to Return Steinmetz's Mining Firm BSGR to Solvency*, Reuters (Mar. 7, 2018), https://www.reuters.com/article/us-bsgr-lawsuit-administration/beny-steinmetzs-mining-firm-bsgr-enters-administration-to-protect-itself-iduskcn1gj2pt ................................................................................................................ 6

*BSG Resources Ltd. v Vale SA and Ors* [2017] EWHC 760 (Comm) (Eng.) ........................ 4

Global Witness, *Secret Dealings Tying UK Conservatives' CEO to Bribery Scandal Billionaire* (May 3, 2019), https://www.globalwitness.org/en/campaigns/corruption-and-money-laundering/secret-dealings-tying-uk-conservatives-ceo-bribery-scandal-billionaire/ ................................................................................................................................ 4

Thomas Biesheuvel, *Beny Steinmetz Puts Mining Company BSGR into Administration*, Bloomberg (Mar. 7, 2018) ............................................................................................... 4, 6

Vale S.A. ("Vale") hereby submits this initial objection (the "Objection") to the *Verified Chapter 15 Petition for Recognition of Foreign Main Proceeding and Related Relief*, ECF No. 5 (the "Petition") filed on June 3, 2019 by the Joint Administrators[1] in their capacity as court-appointed representatives for BSGR in the Guernsey Administration. The Objection is consistent with the objections to the Petition that Vale raised at the June 4, 2019 First Day Chapter 15 Hearing, *In re BSG Res. Ltd.*, No. 19-11845-SRL (Bankr. S.D.N.Y.), June 4, 2019 Tr. at 38:16-40:18, 94:12-15, and that Vale has reiterated throughout the contested nature of this Chapter 15 proceeding in subsequent hearings before this Court and at conferences between the parties. In support of the Objection, Vale respectfully states as follows:

## PRELIMINARY STATEMENT

1. Vale objects to the requests set out by the Joint Administrators in their Petition, namely: (a) that the Guernsey Administration be recognized as a foreign main proceeding, as that term is defined in Sections 1515, 1517 and 1520 of the Bankruptcy Code, and that the Court grant the automatic relief accompanying such recognition; (b) that, in the alternative, the Court grant the Joint Administrators discretionary relief under Sections 1507 and 1521 of the Bankruptcy Code as a foreign non-main proceeding; and (c) that the Court recognize the March 21, 2018 order issued in connection with the Guernsey Administration (the "Guernsey Court Order"). Vale objects to the granting of such relief on various grounds, including that the Joint Administrators have not demonstrated and cannot demonstrate that BSGR's center of main interest ("COMI") is in Guernsey, and that they are not entitled to additional relief and protection from this Court, either on an automatic or discretionary basis, as they have not made the requisite showings that would

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Vale's *Opposition to Joint Administrators' Motion Pursuant to 11 U.S.C. §§ 107(b) and Fed. R. Bankr. P. 9018 for Authority to File and Maintain Confidential Information Under Seal*, ECF No. 20.

entitle them to such relief, and that BSGR's bad faith in the conduct of its business and in pursuing recognition warrants the denial of such relief. Vale reserves its right to supplement this Objection, including based on additional facts obtained through discovery.

## BACKGROUND

2.      Since defrauding Vale out of a half billion dollars in 2010 (and causing Vale to incur expenses of an even greater amount), BSGR has a long history of using dilatory and obstructive tactics to evade responsibility, including its obligations owed to Vale as BSGR's largest creditor.

3.      In 2008, BSGR obtained rights to an iron ore mining concession from the Guinean government. In April 2010, after receiving assurances, representations, and warranties that BSGR had followed proper procedures in obtaining its mining rights and had engaged in no unlawful conduct to do so, Vale entered into a joint venture with BSGR to develop the concession (the "VBG Joint Venture"), paid $500 million directly to BSGR and invested approximately $750 million more in the development of the joint venture. In 2014, after the Guinean government found evidence of corruption in the way that BSGR initially had obtained the mining rights and stripped the company of its concession, Vale initiated arbitral proceedings in accordance with the arbitration clause in the agreements governing the VBG Joint Venture claiming fraudulent misrepresentation, breach of warranty and frustration of contract (the "LCIA Arbitration"). Throughout the ensuing LCIA Arbitration, BSGR's primary strategy was to delay and frustrate the proceedings as long as possible by employing numerous bad faith tactics, including the following:

- Four separate stay applications, all of which the arbitral tribunal denied, *see* Pet. Ex. C, LCIA Award ¶¶ 29-30, 36-38, 100, 156, ECF No. 5-3;

- Protracted delays in, and refusals to comply with, orders of document production that necessitated four separate orders from the arbitral tribunal directing BSGR to produce documents, as well as a requirement that BSGR's lawyers provide a personal

2

> certification regarding BSGR's production efforts, given its repeated failures to comply with the arbitral tribunal's orders, *id.* at ¶¶ 45-48, 50-51, 54-55, 62-64, 70;

- Multiple failed attempts to remove members of the arbitral panel, *id.* at ¶¶ 65-67, 82, 100, 112, 120, 133;

- Refusing to lodge its share of the administrative payments required by the LCIA, *id.* at ¶ 144; and

- Refusing to attend the hearings set by the arbitral tribunal and to produce any of its witnesses for cross-examination at the arbitral merits hearing, *id.* at ¶¶ 103-07, 130, 132, 139-40.

These tactics succeeded in delaying the disclosure phase of the LCIA Arbitration by more than a year, and in impeding the merits hearing for nearly six months, which hearing BSGR ultimately refused to even attend.

4. BSGR's efforts to delay and disrupt are particularly troubling when considered in the context of the substantial evidence of BSGR's historic misuse of the corporate form, illegitimate financial dealings and disobedience of court orders. For example, during the due diligence process surrounding the formation of the VBG Joint Venture, BSGR covertly restructured its corporate holdings in order to avoid key contractual disclosure obligations and deliberately concealed the existence of affiliate shareholders that would have been "red flags" alerting Vale to the corruption that had in fact occurred. BSGR then used a carefully crafted web of shell companies to up-stream and dissipate the $500 million initial payment made by Vale for its share in the VBG Joint Venture.² BSGR has also consistently refused to abide by court orders, including the English High Court's February 9, 2017 decision requiring it to pay Vale £180,000 in legal fees. This was not for lack of resources: the English High Court order came down over a

---

² At least $350 million of that investment was covertly transferred to Nysco Management Corp. ("Nysco"), the parent company of BSGR and a company owned by the Balda Foundation, whose sole beneficiary is Beny Steinmetz (the namesake of *BS*GR) and his family. Nysco has been identified by the Joint Administrators as the sole source of BSGR's funding for this and other related litigations. Pet. Ex. E, Joint Administrators' Second Progress Report § 7.2, ECF No. 5-7 ("Second Progress Report").

3

year before BSGR put itself into administration, and in the intervening period it vigorously pursued an arbitration against the Republic of Guinea, and continued to make filings in the LCIA Arbitration, including bringing a challenge to the arbitrators in the LCIA Arbitration that the English High Court found to be "totally without merit."[3]

5. Similarly questionable financial and legal dealings have been the hallmark of the Guernsey Administration, which a BSGR director characterized as an attempt at "drawing up the drawbridge, filling up the moat, [and] putting some sharks in the moat, to make sure [BSGR] can stay the distance . . . even if there are adverse awards" against it. Thomas Biesheuvel, *Beny Steinmetz Puts Mining Company BSGR into Administration*, Bloomberg (Mar. 7, 2018). Most notably, BSGR submitted with its initial administration application an affidavit from one of its directors, Peter Harold Driver, that reportedly indicated that the company's assets totaled approximately $132 million.[4] But today, the Joint Administrators claim that the company has no cash. Second Progress Report § 7.2.

6. Indeed, in the more than two years since filing for administration in Guernsey, BSGR and the Joint Administrators have taken no discernible steps towards reorganization. Rather, the Petition appears to be nothing more than an attempt to undermine Vale's ability to enforce the LCIA Award and collect on the more than $2 billion it is owed, while allowing BSGR to pursue its own litigation strategies. To be sure, the Petition itself states that the Joint Administrators commenced these proceedings "to allow [BSGR] to . . . appropriately prosecute

---

[3] *See BSG Resources Ltd. v Vale SA and Ors* [2017] EWHC 760 [2], [7] (Comm) (Eng.) (noting that BSGR's application "mischaracterised the nature of some of the underlying proceedings in a way which was seriously misleading").

[4] The affidavit in question reportedly stated that an adverse decision in BSGR's LCIA arbitration with Vale – which Driver estimated at $500 million – "would leave BSGR with a deficiency of assets of at least $368 million." Global Witness, *Secret Dealings Tying UK Conservatives' CEO to Bribery Scandal Billionaire* (May 3, 2019), https://www.globalwitness.org/en/campaigns/corruption-and-money-laundering/secret-dealings-tying-uk-conservatives-ceo-bribery-scandal-billionaire/.

4

without interference" its $10 billion claim against George Soros and the Open Society Foundation ("OSF"). *Mem. of Law in Supp. of Verified Chapter 15 Pet. for Recognition of Foreign Main Proceeding and Related Relief* ¶ 6, ECF No. 6. But that claim is premised on the fanciful allegation that Mr. Soros and the OSF are somehow responsible for the Republic of Guinea's revocation of BSGR's mining rights, *see* Am. Compl., *BSG Res. (Guinea) Ltd. v. Soros*, No. 17-cv-2726-JFK-OTW (S.D.N.Y. June 30, 2017), ECF No. 22, and has been stayed for over a year, Op. & Order, *BSG Res. (Guinea) Ltd. v. Soros*, No. 17-cv-2726-JFK-OTW (S.D.N.Y. Nov. 29, 2017), ECF No. 136.

7. Furthermore, while the Joint Administrators assert that it is "readily ascertainable by parties dealing with the Debtor that its COMI is in Guernsey," Am. Cohen Decl. ¶ 49, ECF No. 24, the papers submitted by the Joint Administrators in support of the Petition on their face raise serious questions about BSGR's COMI. According to the Joint Administrators' own representations to this Court, BSGR is still engaged in "the exploration, development, extraction, refinement and marketing of natural resource products" worldwide, *id.* ¶ 8, including through its direct subsidiaries Octea Limited – a "holding company for a group of companies engaged in diamond mining, extraction and refinement *based in Sierra Leone*," *id.* ¶ 9(a) (emphasis added)[5] – and West African Power Limited – whose main asset appears to be "a power station *located in Geregu, Nigeria*," *id.* ¶ 9(b) (emphasis added). BSGR has further represented that it expects to share in the revenues of a major mining concession in *Guinea* in the near future, *id.* ¶¶ 8, 22, as a result of a settlement of a claim by BSGR against the Republic of Guinea that was initiated by Beny Steinmetz on behalf of BSGR, without any involvement or even prior knowledge of the Joint

---

[5] Octea Limited – the holding company for the group of companies operating in Sierra Leone – was registered in the British Virgin Islands until January 2, 2019, nearly one year after the Guernsey Administration was commenced, when for yet unknown reasons its country of incorporation was "migrated from the British Virgin Islands to Guernsey." Am. Cohen Decl. ¶ 9(a), ECF. No. 24.

5

Administrators who are supposedly supervising BSGR's business.

8. The Joint Administrators have moreover represented that they are continuing to "work[] closely with the Debtor's management and advisors," *id.* ¶ 44, and indeed, immediately upon its decision to enter into administration, BSGR's own director, Dag Cramer, told Bloomberg: "We're not in liquidation, no one is forcing this upon us," *see* Thomas Biesheuvel, *Beny Steinmetz Puts Mining Company BSGR into Administration*, Bloomberg (Mar. 7, 2018), and similarly told Reuters that he would be "sta[ying] on as director" and that this "*technical procedure* would not affect daily operations of subsidiaries," *see* Barbara Lewis, *Administrators Seek to Return Steinmetz's Mining Firm BSGR to Solvency*, Reuters (Mar. 7, 2018) (emphasis added), https://www.reuters.com/article/us-bsgr-lawsuit-administration/beny-steinmetzs-mining-firm-bsgr-enters-administration-to-protect-itself-iduskcn1gj2pt. While the Joint Administrators have thus far failed to disclose the exact identity and location of the "management and advisors," other than Mr. Cramer, they would unquestionably include BSGR's namesake, Beny Steinmetz, who maintains residences in Switzerland and Israel. Indeed, the Joint Administrators have made clear that BSGR's administration is funded by BSGR's parent company, Nysco Management Corp., a BVI corporation, which is in turn wholly owned by the Balda Foundation, an irrevocable trust established in the Principality of Liechtenstein whose sole beneficiary is the family of Beny Steinmetz. *See* Am. Cohen Decl. Ex. 1, ECF No. 24-1; Second Progress Report § 7.2. None of these persons or entities has any connection with Guernsey.

## ARGUMENT

9. Vale makes this initial objection to the Petition on three main grounds: (1) BSGR has not offered sufficient evidence that Guernsey is its center of main interest; (2) even if the Court finds that Guernsey is BSGR's COMI, the company's bad faith behavior warrants relief from the

6

automatic stay requirement set out in 11 U.S.C. § 362 and the granting of other similar relief; and (3) given that the Joint Administrators alternatively seek a discretionary stay and other relief pursuant to 11 U.S.C. § 1521, BSGR is not entitled to such relief.

10. *First*, the Joint Administrators have failed to provide evidence in support of their claim that Guernsey is BSGR's COMI and, accordingly, Vale objects to recognition on the ground that the Guernsey Administration cannot be recognized as a foreign main proceeding under Sections 1515, 1517 and 1520 of the Bankruptcy Code.

11. Courts in the Second Circuit may recognize "any relevant activities" of the debtor in performing a COMI analysis. *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 130, 137 (2d Cir. 2013) (explaining that "the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties"). For example, courts have previously considered, *inter alia*, (1) the location of the debtor's nerve center, "including from where the debtor's activities are directed and controlled," *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation omitted); (2) the day-to-day management of investments and business operations, *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 77 (Bankr. S.D.N.Y. 2011); (3) the location of the debtor's board meetings, *In re SPhinX, Ltd.*, 351 B.R. 103, 108 (Bankr. S.D.N.Y. 2006); (4) the activities of the foreign representative liquidator, including whether the representative did "any more than the statutory minimum" and ascertained the location of the debtor's assets, *In re Creative Fin. Ltd.*, 543 B.R. 498, 502 (Bankr. S.D.N.Y. 2016); (5) the location of the debtor's investment property and liquid assets, *Millennium Glob.*, 458 B.R. at 77; (6) the location of employees and managers, *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 337 (S.D.N.Y. 2008); and (7) the expectations of creditors with regard to the location of a debtor's COMI, *In re Serviços de Petróleo Constellation*

7

*S.A.*, 600 B.R. 237, 272-77 (S.D.N.Y. 2019).

12. To date, neither BSGR nor the Joint Administrators have offered evidence sufficient to identify the individuals and/or entities currently managing the company, to locate the nerve center of either BSGR or any of its managing individuals/entities, or to reveal how BSGR's investments are managed and its business operations conducted on a daily basis. BSGR and the Joint Administrators have also failed to provide proof of the location of BSGR's investment properties and primary assets, or to offer any reliable assurances that those assets have been secured. While the Joint Administrators appear to desire to hide behind a cloak of secrecy, those considerations are fundamental to a determination of COMI, and underscore Vale's need for unobstructed discovery in the present matter. This need is further underscored by the Joint Administrators own representations that they are continuing to "work[] closely with the Debtor's management and advisors," Am. Cohen Decl. ¶ 44, ECF No. 24, and that the administration itself is funded through BSGR's parent company, a BVI corporation, which is turn wholly owned by a Liechtenstein trust, the Balda Foundation, whose sole beneficiary is the family of its namesake, Beny Steinmetz, Am. Cohen Decl. Ex. 1, ECF No. 24-1; Second Progress Report § 7.2. Moreover, while the Joint Administrators do not appear to have taken any discernible steps towards reorganization in the more than two years since filing for administration in Guernsey, they have represented that the company is still engaged in "the exploration, development, extraction, refinement and marketing of natural resource products" worldwide through its non-Guernsey subsidiaries. Am. Cohen Decl. ¶¶ 8-9, 22, ECF No. 24.

13. *Second*, even if this Court were to find that BSGR's COMI is Guernsey, relief from an automatic stay following recognition as a foreign main proceeding would be warranted here by reason of the debtor's bad faith throughout the history of its purported restructuring and its business

8

dealings generally. *Creative Fin.*, 543 B.R. at 522-24; *see also* 11 U.S.C. § 362(d)(1) (authorizing relief "for cause" from the automatic stay codified in 11 U.S.C. § 362(a)).

14. "U.S. bankruptcy courts are not helpless in the face of bad faith filing." *Creative Fin.*, 543 B.R. at 522. Indeed, the Bankruptcy Code specifically contemplates relief in response to a debtor's bad faith actions, which could "without limitation" be evidenced by any of the following behaviors: (a) the redistribution of assets "in the face of an imminent adverse ruling;" (b) attempts at controlling a foreign representative or other independent fiduciary; (c) behavior resulting in the deprivation of the resources needed for a foreign representative to fulfill his/her duties; and/or (d) the "orchestrati[on of a] chapter 15 case to deprive . . . [a] creditor of much or all of the fruits of its judgments." *Id.* at 513. As set forth above, BSGR's history of dishonest and evasive litigation strategies implicates each of those *Creative Finance* factors, and Vale may probe whether BSGR is pursuing its administration in good faith.

15. Moreover, the Joint Administrators' and BSGR's actions in connection with both the Guernsey Administration and the Chapter 15 Petition raise serious concerns that they are proceeding in bad faith, that the controlling members of BSGR and its affiliates are still actively involved in the company and that the Petition constitutes yet another delay tactic aimed at avoiding BSGR's financial and legal obligations. In fact, one of BSGR's directors specifically claimed in 2018 that BSGR initiated the Guernsey Administration as part of a deliberate scheme to frustrate and evade enforcement of Vale's arbitral award, and not to further a legitimate restructuring. *See supra* ¶ 5. And the few facts revealed by the Joint Administrators to date support that characterization – after sixteen months, the Joint Administrators, in their fiduciary capacity, still appear to have failed (1) to take any steps to investigate BSGR's transactions with its direct and indirect shareholders or former management personnel; (2) to confirm that BSGR's current

9

managers have been faithfully executing their duties under the law; (3) to recover any funds for the benefit of BSGR's creditors; or (4) to attempt to locate the $500 million paid by Vale and dissipated by BSGR to Nysco, among others. *See supra* ¶ 4. Indeed, since March 2018, the Joint Administrators have incurred substantial debt that appears to have been provided by insiders and affiliates but have yet to undertake any serious reorganization or restructuring efforts whatsoever, leading to the conclusion that the Guernsey Administration – funded by "loan facilities" from its parent Nysco – is simply another effort to forestall Vale's ability to enforce its arbitral award. *See* Second Progress Report § 7.2. Many of the factors that appear to be present here parallel the conduct that led Judge Gerber to call the debtor's actions in *Creative Finance* "the most blatant effort to hinder, delay and defraud a creditor this Court has ever seen." *Id.* 543 B.R. at 502.

16. These dilatory tactics have persisted with the Chapter 15 proceedings – after more than a month, the Joint Administrators have failed to make available documents foundational to the issues before this Court, including certain materials underlying both the Guernsey application and the Guernsey Court Order. The Joint Administrators' failure to provide even that basic level of information calls into question their motivation for initiating these proceedings and clearly implicates the *Creative Finance* standards for whether the Debtor's COMI truly moved to a "letterbox jurisdiction" such as Guernsey.[6] *Id.* at 501.

17. *Third*, given that the Joint Administrators alternatively seek to have this action recognized as a non-main proceeding within the meaning of Section 1517 of the Bankruptcy Code and thereby request a discretionary stay pursuant to Section 1521, Vale intends to contest the legitimacy of such recognition based on the reasons set forth above, particularly where the Joint

---

[6] Separately, the facts set forth above call into question whether 11 U.S.C. § 1506 – which codifies a public policy exception to Section 1517 of the Bankruptcy Code – is implicated by the Petition, since recognition of the Guernsey Administration would appear to facilitate BSGR's furtherance of a fraud under the guise of a legitimate restructuring.

Administrators have not made any showing that would entitle them to such relief.

18. Further discovery is necessary to ascertain the full scope of the issues underlying each of Vale's three objections and to assist the Court in resolving them. Vale will therefore continue to seek discovery on all matters relevant to this dispute, and expects to file a more fulsome objection once that process is complete.

## CONCLUSION

For the foregoing reasons, Vale respectfully requests that this Court deny the Petition and grant such other relief as the Court deems just and proper.

Dated: New York, New York
July 10, 2019

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


*/s/ Lisa M. Schweitzer*
Lisa M. Schweitzer
Jonathan I. Blackman
Jeffrey A. Rosenthal
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for Vale S.A*

11