# EXHIBIT H

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5

6    BSG RESOURCES LIMITED (IN

7    ADMINISTRATION) AND WILLIAM

8    CALLEWAERT AND MALCOLM

9    COHEN, AS JOINT ADMINISTRATORS,    Case No. 19-11845-shl

10

11            Debtors.

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13

14                   U.S. Bankruptcy Court

15                   One Bowling Green

16                   New York, New York 10004-1408

17

18                   November 4, 2019

19                   11:29 AM

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25



1    Hearing re:  Status conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Jamie Gallagher and William Garling

Page 3

```
 1    A P P E A R A N C E S :

 2    DUANE MORRIS LLP

 3         Attorneys for Joint Administrators

 4         222 Delaware Avenue

 5         Suite 1600

 6         Wilmington, DE 19801

 7

 8    BY:   MICHAEL LASTOWSKI, ESQ.

 9         JARRET P. HITCHINGS, ESQ.

10

11    DUANE MORRIS LLP

12         Attorneys for Joint Administrators

13         1540 Broadway

14         New York, NY 11036

15

16    BY:   FREDERICK D. HYMAN, ESQ.

17

18    CLEARY GOTTLIEB STEEN & HAMILTON, LLP

19         Attorneys for Vale

20         One Liberty Plaza

21         New York, NY 10006

22

23    BY:   JEFFREY A. ROSENTHAL, ESQ.

24         LISA M. SCHWEITZER, ESQ.

25
```

```
 1                    P R O C E E D I N G S
 2              THE COURT:  All right.  The next case is BSG
 3    Resources Limited, Chapter 15 case.  Let me get appearances,
 4    starting with folks on this side of the room and working our
 5    way across.
 6              MR. LASTOWSKI:  Good morning, Your Honor.  Michael
 7    Lastowksi of Duane Morris LLP, here today for the joint
 8    administrators of BSGR.  With me is my partner, Rick Hyman,
 9    and my colleague, Jarret Hitchings, together with a
10    representative of BDO, Mr. Steven Peters.  I think you've
11    met him before.
12              THE COURT:  All right.  Thank you.
13              MS. SCHWEITZER:  Good morning, Your Honor.  Lisa
14    Schweitzer from Cleary Gottlieb for Vale, with my partner,
15    Jeff Rosenthal.
16              MR. ROSENTHAL:  Good morning.
17              THE COURT:  Good morning.  All right.  While I was
18    not surprised overly to receive multiple, single space,
19    extensive letters before today's hearing, I will say I can't
20    keep doing this.  This is just not a productive exercise and
21    I have other things to do.  I'm sure you do as well.
22              So if people can't get this straightened out, I'm
23    going to require the appointment of the special master to
24    supervise discovery, because this is, again, every hearing
25    there's two letters, three letters, four letters.  And I --
```

Page 5

```
 1    looking at them, there are some legitimate issues that have
 2    been raised.  So I know, looking at the response, there's
 3    two letters of Duane Morris in response to the letter that
 4    was filed by Cleary on the 30th.  So I think we're looking
 5    at dockets number 71, 72, and 73.  But, you know, there's a
 6    line in there about how much money people have spent on
 7    attorney's fees.
 8          Well, much of the wound appears to be self-
 9    inflicted from where I sit.  I don't know that I've ever had
10    a Chapter 15 case where a party has proceeded in such sort
11    of a -- in this fashion, let me put it this way.  I think
12    it's pretty well understood what's supposed to happen.  So
13    I'm open to suggestions.  And I can make another set of
14    rulings dealing with all of the issues that have come up,
15    but I have no doubt that this will not be the last set of
16    rulings, and then there'll be another hearing, and there'll
17    be another five letters.  And I have a day job, just as you
18    all do, but I don't get -- again, it's just not a productive
19    way to go about things.
20          So I'm happy to hear any thoughts about that.  In
21    the meantime, once more into the breach, I suppose, on
22    discovery.  So --
23          MR. LASTOWSKI:  Michael Lastowski, Your Honor.  We
24    had discussed prior to today having a special master, that
25    we had discussed some variations on that because clearly the
```

```
 1    Court doesn't have the resources or time to monitor what's
 2    been going on in this case.  I'll just pose to the Court
 3    this question.  What would the procedure be for appointing
 4    one?
 5             THE COURT:  I don't know.  I know Judge -- I
 6    remember hearing Judge Lifland in his infinite creativity
 7    talking about one in context.  I guess -- I'm very loathe to
 8    do it because, obviously, I'm very steeped in what's
 9    happened thus far.  I have notes upon notes.  So it's just
10    that I -- this kind of thing, if you were in District Court,
11    they would (indiscern.) magistrate, and the magistrate, that
12    would be their laser like focus.
13             And normally in Bankruptcy Court, for whatever
14    reason, we don't have as many of these kind of discovery
15    fights that are knockdown, drag out fights to the death.
16    And when we do -- I mean, even in large 11 cases, we don't -
17    - you know, people tend to fight about a couple things and
18    then the dust clears, and they go about their merry way.
19    But this is -- and certain things, observations I have about
20    issues that have been raised should be very -- I mean, you
21    all could probably write before I actually utter them
22    because you, I think, have a pretty good idea of where I am.
23             So I don't know.  I'd be happy to have the parties
24    talk about it.  It's an additional cost, but at this point,
25    I don't see the current procedure being overly cost-
```

1   efficient either.  So if I thought that was the case, I

2   would be -- I would not even throw it out there.  But it

3   doesn't seem to be -- this doesn't seem to be working

4   particularly well.

5           I don't know if I've considered other options in

6   my toolbox to try to push things along.  I think I've used a

7   lot of them.  I haven't used all of them.  There are sort of

8   discovery equivalents of the Allen charge in a criminal case

9   to get people to really pay attention.  That's sanctions,

10  and I'm -- you know, again, it is what it is.

11          So I just throw it out there just because I don't

12  see this ending particularly well.  Again, it's sort of

13  inconsistent with the notion in the statute about the need

14  to promptly address the Chapter 15 request for relief.  I've

15  had some interesting Chapter 15 cases, but I've never had

16  one that has been this slow developing.

17          So I don't know.  I don't have a particular idea,

18  but I throw the idea out to the extent that I can't see

19  another process being any less productive or efficient than

20  what we've been doing.

21          MR. LASTOWSKI:  Well, we endorse that idea, Your

22  Honor.  And personally, I think it would be best if you

23  designated someone who could serve as a special master, or

24  however that person would be designated, subject to a

25  confidence check.

Page 8

```
 1              I know in a lot of times in this context, each

 2     party nominates a group of people and then they select a

 3     third one.  I think that could be too time consuming.

 4     There's too many opportunities in that context for disputes.

 5     I think if we're very straightforward about it --

 6              THE COURT:  Well, I don't --

 7              MR. LASTOWSKI:  -- it can be done timely and --

 8              THE COURT:  Yeah, I mean, normally I try to get a

 9     list from people and then I pick from the list.  That's what

10     I normally do, just so that people aren't making the

11     decision themselves if there's a lot of acrimony.  But at

12     the same time, you know, there are plenty of very good folks

13     out there who people can agree don't really have an axe to

14     grind, other than, you know, just being -- they don't have

15     an axe to grind and they're just competent professionals.

16              So -- all right.  Anything else on this particular

17     issue?

18              MR. LASTOWSKI:  On this particular issue, no.  We

19     have more to talk about --

20              THE COURT:  Yeah.

21              MR. LASTOWSKI:  -- if Your Honor wants to hear it

22     today --

23              THE COURT:  No, let me --

24              MR. LASTOWSKI:  -- but on this issue --

25              THE COURT:  Let me hear from the other side on
```

Page 9

| | |
|---|---|
| 1 | this particular question and then we'll see where we are. |
| 2 | MS. SCHWEITZER: Thank you, Your Honor. Lisa |
| 3 | Schweitzer for the record. We welcome all constructive |
| 4 | approaches, and this is certainly a constructive approach |
| 5 | that we could have someone -- if we are burdening you, this |
| 6 | more readily accessible and can get into the weeds. |
| 7 | I think that we're happy to provide a list of |
| 8 | suggested names, and I'm sure we can all be creative in |
| 9 | finding an appropriate person and procedures to make it |
| 10 | work. Obviously, we're still here to talk today, is our |
| 11 | only concern is just that it moves things forward rather |
| 12 | than -- |
| 13 | THE COURT: No, I totally get that. I thought the |
| 14 | fact that there's some discussion about completing certain |
| 15 | things by November 8th. I don't know if that's going to |
| 16 | happen or not. It's unclear to me. Today is what? |
| 17 | November 3rd. |
| 18 | MS. SCHWEITZER: My understanding is in the letter |
| 19 | that was filed over the weekend, November 8th slipped to |
| 20 | early December. I don't have the exact date. So I don't |
| 21 | believe there's a -- they can speak. But I think we're |
| 22 | still in the slip slope, so -- |
| 23 | THE COURT: Yeah. So that's fine. I'm happy to |
| 24 | talk about some issues. Again, what I want to do is I |
| 25 | recognize that, having been on the other side of this, is |

| 1 | that people are loathe to tell judges when they have bad |
| 2 | ideas.  And I appreciate it's a hazard of the job, but it |
| 3 | can also mean that sometimes people are too kind about |
| 4 | agreeing to an idea, and then later you say, oh, that's a |
| 5 | terrible idea.  And sometimes you don't, you know -- you |
| 6 | might not have good news.  You might say, "Judge, we know |
| 7 | that this has been time consuming, but we think that these |
| 8 | things are ultimately going to percolate to you anyway," and |
| 9 | whatever. |
| 10 | So I appreciate folks' comments, but I also want |
| 11 | to make sure I haven't sort of sprung this on you, that you |
| 12 | get a chance to think about it and talk about it.  So -- |
| 13 | because also there's a devil in the details in terms of |
| 14 | discovery rulings and what -- how a process would work.  And |
| 15 | I think that, again, you can sort of borrow from this sort |
| 16 | of magistrate and a District Court judge kind of paradigm in |
| 17 | the sense that these are -- somebody's empowered to do this. |
| 18 | And if there's something that somebody needs to go to the |
| 19 | mat on, you can -- that's part of the case, you come here. |
| 20 | And -- but obviously, you -- not everything in the |
| 21 | first -- things in the first instance wouldn't.  But -- so |
| 22 | what I'd like to do is maybe give you a chance to think |
| 23 | about it for a few minutes, and then maybe even talk to one |
| 24 | another about how you think it would work, because I realize |
| 25 | the devil is in the details, just like it is in discovery |

Page 11

1  generally.  So I don't want to be -- I promised myself if I

2  became a judge, I wouldn't become blissfully ignorant that

3  that sounds like a great idea, and then exit stage right,

4  your arms in the air, thinking this is all fantastic, and

5  leaving the parties with a big mess.  I don't want to do

6  that.

7          Again, if I think we weren't spending so much time

8  and money here in the process that we're involved in, I

9  wouldn't suggest this at all.  But I -- at this point, it

10  might be more efficient to have somebody.

11          So here's what -- I understand we have some issues

12  we need to talk about today to continue to move forward.  So

13  I'm not -- we'll get to those.  But what I thought I might

14  do is give you a couple minutes to talk amongst yourselves

15  and then talk with each other about what something would

16  look like.  Because it could be that your -- that this idea

17  actually does really -- when you think about it a little bit

18  more carefully, it does actually work.  It could be that it

19  has some snags and you say, "Well, we can already see we

20  have some problems."  So I'd like to get your thoughts on

21  that.

22          I mean, the other possible way to do is to just

23  throw it out, have you think about it, and have a follow up

24  conference.  My thought is it's not that complicated.  So

25  since we're here, in the interest of moving things forward,

1    that it's worth at least a conversation, if that makes

2    sense, unless somebody has a better suggestion.

3          MS. SCHWEITZER:  Sure.  We're happy to take a

4    break and then we can certainly do it.  I think to address

5    your idea of being in the loop or in the know --

6          THE COURT:  Right.

7          MS. SCHWEITZER:  -- or not being out of the know,

8    I think that the progress reports have been very helpful, if

9    not to bring final clarity, at least to provide information

10    so people have a baseline of what it is, so --

11          THE COURT:  No, I think -- this is what you have

12    to do.  Discovery disputes are very labor intensive, but

13    there's a reason they are, because it's the right way to do

14    it, to tee things up, and to make a record.  And no, this is

15    -- again, I know every judge has a different view about

16    these things, but having been involved in civil litigation,

17    this is what's required when you have certain circumstances.

18          So I have no illusions that -- about you needing

19    the attention, and about the issues being important.  That's

20    -- it is what it is, even though judges are never excited to

21    have discovery disputes, they are very important.  They are

22    how you -- how the case -- it's the first part of making the

23    record that ultimately appear in front of the Court.

24          So I agree with you.  And so when I mentioned the

25    letters, it's just a reflection of how complicated and

1    protracted the discovery disputes are in this case.  And so

2    thinking about that is sort of what's led me to think about

3    maybe there's a -- maybe having somebody who's essentially a

4    more hand on referee to deal with things on a more day to

5    day problem, rather than save them up, may be helpful.

6            So let me give you a few moments to chat, and then

7    just -- I'd say knock on chamber's door and I'll come back

8    out.

9            MS. SCHWEITZER:  Great.  Thank you, Your Honor.

10           THE COURT:  Thank you.

11       (Recessed at 11:42 a.m.; reconvened at 12:25 p.m.)

12           THE CLERK:  All rise.

13           THE COURT:  Please be seated.  So we're back on --

14   excuse me, on the record for BSG Resources Limited, Chapter

15   15 case, after giving the parties a brief opportunity to

16   chat about discovery and the big picture of how best to move

17   that forward, including the possibility of appointing

18   somebody to serve as a kind of special master.

19           So what can you tell me about where you are?

20           MR. LASTOWSKI:  There's been an agreement on a

21   process.  I may have the numbers wrong, and I'm sure I'll be

22   corrected, but by Thursday, midday, the parties are going to

23   exchange names of potential -- are we calling this a special

24   master?  A special master.

25           THE COURT:  Well, I'll leave it to you to come up

Page 14

```
 1     with an appropriate title --

 2              MR. LASTOWSKI:  Appropriate.

 3              THE COURT:  -- but I would certainly think that

 4     that's one way to look at it.  There may be others.

 5              MR. LASTOWSKI:  Yeah.  We'll exchange names.

 6     People can object, and ultimately on Friday, we'll get you a

 7     list of names and it will be a blind list.  You won't know

 8     which party --

 9              THE COURT:  Whose is whose and I'll just pick one.

10              MR. LASTOWSKI:  Exactly.  And you can designate

11     someone.

12              THE COURT:  All right.

13              MR. LASTOWSKI:  Then subject to a conflicts check,

14     that that person could be appointed by Your Honor.  I had

15     requested, and Vale's counsel agreed, I'd like whoever is

16     elected to make a disclosure as to any connections that

17     person may have with either the clients in the case or with

18     the law firms.

19              THE COURT:  All right.  That makes sense.  Do you

20     want me to appoint a -- instead of one and a backup, just in

21     case somebody does have a conflicts check?

22              MR. LASTOWSKI:  I think so.

23              THE COURT:  Conflicts -- issue that arises --

24              MR. LASTOWSKI:  That would be prudent.  I will --

25              THE COURT:  -- so we don't have to do this all
```

Page 15

1    again.  All right.

2          MR. LASTOWSKI:  I will say, a theme among us when

3    we were discussing this is dispatch.  We really do want to

4    move this along.  So a backup is a good idea --

5          THE COURT:  All right.  Yeah.  So we'll --

6          MR. LASTOWSKI:  -- rather than starting the

7    process --

8          THE COURT:  -- consider it sort of like a backup.

9    You know, we do that all the time.  Stalking horse bidder

10   and then you have a backup just in case something doesn't

11   pan out.

12         MR. LASTOWSKI:  Exactly.

13         THE COURT:  So --

14         MR. LASTOWSKI:  The other issue that came up is

15   the scope of what could be presented to the special master.

16   And Vale had requested that the only things that would be

17   presented to the special master would be things that have

18   already been before the Court and as to which there's an

19   existing order.  So, for example, Your Honor had ordered

20   certain discovery and the scope of discovery, et cetera, et

21   cetera.  And to the extent there were issues under that

22   umbrella, they would be addressed at the special master.

23         So for example, assertions of privilege arguments

24   as to proportionality, the appropriateness of search terms.

25   What Vale did not want the special master to address was new

Page 16

```
 1    issues.  And they gave us examples -- for example, if we

 2    wanted them to answer contention interrogatories earlier

 3    than 30 days before the end of the close of discovery,

 4    that's something we would have to present to you.

 5            Suddenly, we learned that was a new privilege we

 6    would have to assert.  That would come before Your Honor.

 7    The examples they gave were very narrow ones.  So I'm

 8    confident that if anything came before you, it would be more

 9    like the two hearings prior to ours today --

10            THE COURT:  Right.

11            MR. LASTOWSKI:  -- than we're conducting right

12    now.

13            The next thing that came up in terms of procedure

14    is how would the special master present his findings and

15    conclusions.  And we agreed that that person would prepare a

16    report and a supporting order to present to Your Honor, but

17    it would be circulated -- well, I assume it would be filed.

18    But the parties would have a set period of time, perhaps

19    three days, to file an objection that Your Honor would

20    ultimately here.

21            THE COURT:  So, essentially borrowing a bit from

22    this magistrate procedure, meaning that if there's a report

23    and recommendation by a magistrate --

24            MR. LASTOWSKI:  Yes.

25            THE COURT:  -- there's a procedure to file an
```

```
 1    objection.  Although, this would be shorter, because it's in

 2    the context of --

 3              MR. LASTOWSKI:  Yeah.

 4              THE COURT:  -- discovery.

 5              MR. LASTOWSKI:  If we were to follow a magistrate

 6    procedure, it would prolong things.  And again, the theme in

 7    our conversations was let's move with dispatch and try to

 8    move this along.

 9              In conjunction with proceeding towards appointment

10    of a special master, we had offered to Vale, and they

11    agreed, that we would have a face to face confer with them

12    before our first meeting with the special master.  My idea

13    was, and it's not a very original one, it's an obvious one,

14    is that we could just sit down.  We have a spreadsheet that

15    identifies their document requests.  There has been some

16    progress in the document production.  Maybe we can make some

17    progress in terms of an agreement as to what's been

18    satisfied, what remains to be done.  But then we could

19    present the special master was a point counterpoint.  This

20    is their position.  This is our position.  Which would make

21    it much more efficient for the special master to review the

22    issues.

23              I may be naïve, but I think the --

24              THE COURT:  Well, you're sorting through and sort

25    of giving an update, right?
```

Page 18

```
 1              MR. LASTOWSKI:  Yeah.
 2              THE COURT:  So I just got a case transferred to me
 3      from another judge and there were a bunch of motions, things
 4      that hung around for a while, and essentially what sort of
 5      happened was a refresh, which is, well, where are we now?
 6      There was an amended complaint.  So you're essentially
 7      trying to bring the disputes current so that you don't fight
 8      about things that are unnecessary.
 9              MR. LASTOWSKI:  Correct.  And Vale had a concern
10      that, oh, well, we're going to proceed before this special
11      master, this should not delay your production.  And we said
12      with emphasis, "By all means, no.  There will be no
13      interference."  We're presenting on a dual track.  We have
14      multiple motives to get this production done, not the least
15      of which is we -- you know, we want to get it done so that
16      we can present it to the special master or to Your Honor,
17      saying, "Look, with regard to this request, we produce
18      this."  And, you know, it's really not cost effective.  It's
19      not proportional to proceed any further.
20              We have strong motives to proceed with dispatch.
21              THE COURT:  Well, yeah, I think that the rulings
22      that have been made, and the hearings that we've had are all
23      the background that -- that's where we are, right?  That's -
24      - so we're not -- we're moving forward, not moving
25      backwards, and that you'll -- you're continuing to work on
```

Page 19

1    the issues that have been discussed, which are everything

2    from the scope of production, the timing of production, the

3    search terms.  Privilege logs haven't been a point of focus,

4    but I imagine they might be, and other things that we've

5    discussed.

6              MR. LASTOWSKI:  A third production.

7              THE COURT:  And third party issues as well.  So I

8    think that that's right.  Anything else?  I had one comment

9    that I'll -- but let me wait until I hear anything else from

10   you.

11             MR. LASTOWSKI:  If I may, Your Honor.  There's a

12   mild caveat from my side and that is that we've employed

13   certain search terms, which -- which has been the subject of

14   some dispute.

15             THE COURT:  Right.

16             MR. LASTOWSKI:  But we believe in good faith that

17   they're sufficient.  If the special master were to suddenly

18   expand those, that would necessarily create some delay

19   because we'd have to do searches and review new documents.

20             THE COURT:  Well, I mean, that's --

21             MR. LASTOWSKI:  Yeah.

22             THE COURT:  -- the search terms debate is what it

23   is.

24             MR. LASTOWSKI:  Yeah.

25             THE COURT:  And it would have ramifications in a

Page 20

```
 1     lot of ways.

 2              MS. SCHWEITZER:  Did Your Honor want to add

 3     something in --

 4              THE COURT:  Well, let me hear from you and then

 5     I'll -- well, I can remove the suspense because it's not

 6     particularly worthy of suspense.  So one is I assume parties

 7     could share cost.  And the second is we're talking about new

 8     things.  I guess my question -- so discovery things can be

 9     compartmentalized and they can be new, but they're always in

10     context.

11              So if, in fact, there are decisions and

12     conclusions reached by the special master, people can either

13     live with them, they can take a run and say, "Well, we want

14     to file an objection."  My question is I don't want to get

15     bogged down in the idea of what's new and what's not new.

16     And so if somebody has a -- things may be related but may be

17     sort of a new permutation of a related idea.  So I guess my

18     thought would be that in the -- I'm wondering whether it

19     makes more sense in the first instance to have the special -

20     - you tee something up with the special master.

21              If you both agree that it's something that

22     shouldn't be there, I suppose then you could send it on to

23     me.  But you could also get the wisdom of the special

24     master, who's at that point, I would assume he or she has

25     gotten some context.  Because if you have a right to come to
```

Page 21

1    me anyway, that would be the main concern, right?

2            So you have a right to file an objection, which

3    means that I look at it.  So that was my question of how

4    that works, if there's that procedural protection of whether

5    it makes sense to delineate a new category or whether that's

6    going to be a flash point that -- for debate that you don't

7    want to really get into.

8            MS. SCHWEITZER:  So it's a great point, Your

9    Honor.  I actually wanted to address this new versus

10   existing, to step back and -- associates hard at work, who

11   are already texting that apparently sometimes these are

12   called examiners in Bankruptcy Courts instead of special

13   masters.  We'll spend time figuring --

14           THE COURT:  Yeah.  We can figure out what the

15   appropriate authority is, right.

16           MS. SCHWEITZER:  Exactly.

17           THE COURT:  But I think that that's right.

18           MS. SCHWEITZER:  But the one idea is that

19   apparently that the idea of the parties consent to this,

20   which we all do support this, but the idea of being that the

21   Court is the ultimate arbiter --

22           THE COURT:  I think that has to be that way.

23           MS. SCHWEITZER:  All right.

24           THE COURT:  I think that's right.  But what I want

25   to do -- one thing that is -- concerns me is there seems to

Page 22

```
 1    be two ways to deal with this.  One is to start having you

 2    come in every week.  The other is to -- because I'm afraid

 3    that the -- a month long delay, while it's a prompt

 4    detention from the Court's point of view, it's a problem

 5    from your all point of view, because you're trying to do

 6    things in real time.

 7              MS. SCHWEITZER:  Right.

 8              THE COURT:  So -- but I do think it doesn't change

 9    the fact that it has to be -- and that's why I -- I'm trying

10    to take some of the concern out of the new concept to say if

11    you have a right to come here, you have a right to come

12    here.  And so that sort of should allow people to not feel

13    like they're giving their -- in an appropriate way, giving

14    their rights away to be heard.

15              MS. SCHWEITZER:  Right.  And the way we had

16    discussed it isn't necessarily new versus old, but we have

17    document requests that have been made, and there have been

18    objections, and Your Honor has entered rulings about what is

19    the proper scope of the document request to be responded to.

20    There are issues that have already been teed up and dealt

21    with by Your Honor.  And so the way we would think of this

22    special master is Your Honor has ruled on the parameters.

23    Your Honor has made definitive rulings about scope, and

24    what's responsive, and the parties' duties.

25              Other issues are whose documents are in their
```

1    control; documents can't be redacted for commercially

2    sensitive.  The purpose of the special master is -- or

3    examiner, or whatever it is, is not to relitigate questions

4    that Your Honor has decided.  It's that Your Honor has given

5    guidance and actually given orders defining relevant scope,

6    duties, and that the special master in our mind implements

7    those.

8              So if they say --

9              THE COURT:  Yes.  Although the special master is

10   going to have to decide in the context of those what's come

11   before, what's going to happen with new flash points in

12   discovery, because that's the wonder of discovery, right?

13   You have issues that are similar, but different because they

14   come up in different contexts.  There may be different

15   issues about cost benefit analysis.  There may be other

16   things.

17             So, for example, I saw -- there was a discussion

18   in the letter about, well, we're talking about search terms.

19   We could solve this whole problem by looking at -- just get

20   this domain of e-mails.  And so I have no doubt that there

21   would be permutations that are -- whether you call them new

22   or new enough, that are going to have to be dealt with.  And

23   just part of the benefit is if you're going to have somebody

24   who does this, they get steeped in the facts and, therefore,

25   can make intelligent decisions.  And it's almost like AI,

1    where the more decisions and calculations you make, the

2    better your decision making capacity is.

3            So but again, I think it's got to be crystal clear

4    that people have a right to be here and that you -- this way

5    you can get a more prompt response in more real time on

6    dealing with issues, and sort of to drill down on the

7    particulars of certain things.  But if you want to come here

8    -- now, if everything ends up here, then this process will

9    be a failure.

10           MS. SCHWEITZER:  Right.

11           THE COURT:  My thought is that if you get somebody

12   who's respective, who's a third party, that that won't be

13   the case, and that the benefits of the more real time

14   examination will outweigh any potential duplication.  That's

15   my hope.  And I'm getting the sense that's your hope as

16   well.

17           MS. SCHWEITZER:  Yeah.  I think that's shared hope

18   by all parties.  And certainly, we -- we're happy to hear

19   that the STR is willing to meet and confer.  What we said is

20   they can confer today, tomorrow, next week.  This should not

21   hold up.  We should not use things to hold up the next

22   process.  I assume that's not what they were suggesting,

23   that it's again to --

24           THE COURT:  No, I think -- again, the rulings and

25   hearings that we've already had passed is all -- it is what

Page 25

1   it is.  And so I don't think any of this changes it, it just

2   gives us a more -- hopefully a more -- a process that is

3   nimble enough to adapt in real time to issues and get you

4   the answers you need quickly.

5          MS. SCHWEITZER:  Yeah.  And I think on cost --

6   just to address it, I think that we're fine splitting the

7   cost.  We obviously have had concerns all along about

8   discovery, so we would reserve our right to seek relief

9   later on.  But it's (indiscernible), certainly we're

10  prepared to split the cost of the special master.

11         He has one more thing to add.

12         THE COURT:  Sure.

13         MR. ROSENTHAL:  I was just going to say, Your

14  Honor, I think the way we see it in terms of what the scope

15  of the special master appointment is is on the July hearing,

16  we were before the Court with respect to our document

17  requests.  And the Court's made in July through October a

18  number of rulings with respect to that in terms of

19  sustaining -- you know, those that you sustained, possession

20  of custody and control, those issues.

21         And the way we see it now is the implementation of

22  that, which does require kind of nuts and bolts detail, such

23  as search terms, that can all go to the special master.

24         THE COURT:  Well, the search terms are not --

25  search terms are huge, right?  So --

Page 26

1          MR. ROSENTHAL:  Of course.

2          THE COURT:  -- the search terms are a big deal.

3    And again, all of these things impact all of these other

4    things in the sense that search terms are a bit like whack a

5    mole.  So you think about as an intellectual matter what the

6    right search terms are, and then the issue might pop up and

7    the issue of proportionality later.  So that's why these

8    things -- that's why I'm -- the only thing I'm hesitant

9    about anything that I've heard is the notion of new.

10          Again, my thought is that if folks have a right to

11   be heard in a court, which I think is crucial and makes

12   perfect sense, then I think that distinction becomes less

13   important.

14          MR. ROSENTHAL:  So we have what I think is a

15   pretty clear and easy definition of new, and that's why I

16   just wanted to explain to the Court what our thinking is.

17   The way we see it is Your Honor has kind of built the

18   umbrella, which is with regard to our document requests,

19   you've made a number of rulings that we think really kind of

20   build that framework and now it's a matter of getting that

21   all implemented, and there are other disputes as we've just

22   discussed with respect to that.

23          And we agree that getting the special master's

24   insights in the first instance, hopefully, is also the last

25   instance because, you know, if it's somebody respected, we

Page 27

```
 1    don't bother the Court.  What we're thinking of is if it's
 2    things that don't even fall within the umbrella of our
 3    document requests at all.
 4            THE COURT:  So, yeah, I think maybe what we could
 5    is say this is --
 6            MR. ROSENTHAL:  Well, for the document requests
 7    that have already been teed up with the Court, because, for
 8    example, if there are future document requests that, you
 9    know, they want to pursue motion practice with regard to
10    document requests that they will want Vale, we just get, at
11    least for something like that, in the first instance, we
12    ought to get some basic guidance from the Court.
13            Now, maybe there'll be an issue that we all say,
14    You know what?  We have a special master in place.  We all
15    respect the special master.  Let's go there.
16            But absent consent, I think for something that is
17    outside the umbrella that you've built --
18            THE COURT:  So let me see if I can be practical
19    about this.  I think this is for anything that is currently
20    in front of me when people say, Well, this is what we've
21    been fighting about.  We have other things that need to be
22    addressed.
23            Again, my backdrop to all of this is, is as long
24    as people can be heard in court, and so like many times in
25    litigation, there's always a discovery funnel.  So, this is
```

Page 28

```
1    almost kind of a funnel to try to identify the kinds of

2    things that need to be addressed here.

3              And so, nothing changes that right.  And so, I can

4    certainly understand if parties say, Well, we're going to

5    tee up another issue.  We just want to let you know what's

6    coming.  We think this -- we think the guidance from the

7    Court in the first instance, since it hasn't been addressed,

8    is in similar -- I'm fine with that.

9              And if possible, then I might say, Well, what --

10   have you been looking at what's happened with the special

11   master/examiner/whatever appropriate title.  This seems to

12   be somewhat similar and it might be helpful to get that

13   guidance in the first instance with you reserving your

14   right.

15             So, why don't we see how that plays out, but you

16   reserve all your rights to say, No, it's got to be here in

17   the first instance.  I don't have a problem with that.

18             MR. ROSENTHAL:  Okay.  I think that's fine with us

19   then, Your Honor.  Thank you.

20             THE COURT:  That's fine.  Because, again, I think

21   it's -- I sympathize and it's very hard to know if conflicts

22   are going to come up.  So we'll try to be practical about

23   it, and my intent is not -- my intent is, whenever I see

24   these things, I know that people have spent a month working

25   very hard on things and you get to a certain point and then
```

Page 29

```
1    you say, Well, we need some guidance, and, in fact, the
2    guidance is really 30 days too late, because we've been
3    working under various assumptions where we don't agree, and
4    that's where my concern is about.
5            I didn't want to impose this burden, in terms of
6    cost on folks, except now, I think at this point, your -- my
7    bandwidth to give you the kind of more immediate response is
8    -- that's why I'm concerned about that.
9            MR. ROSENTHAL:  One point, Your Honor, on the
10   comment you just made, and it actually picks up on something
11   that Mr. Lastowski just said, which is that, you know, they
12   may make an argument to the special master that, well,
13   they've already done these searches and they've already kind
14   of produced this and now that should be enough.
15           One thing that we're all clear on -- and I want it
16   on the record -- but when we were talking out in the hallway
17   is that anything that they're doing now is kind of at their
18   own risk.  And I think Your Honor used a similar phrase
19   previously, which is, we think they're doing things wrong
20   and they think they're doing things right.  And if they
21   utility can establish on the merits that their way is right,
22   that's one thing, but to say a month from now --
23           THE COURT:  Well, again, rulings are rulings and
24   they mean what they mean.  I know the devil is in the
25   details and people -- this wouldn't be the first or the last
```

1    when people have different views about when a Court gives

2    you a discovery ruling and what it means.

3            But, yeah, I mean, it is what it is, so there's

4    nothing about this process that would change the rulings

5    that have been made.  I think that that is -- that would

6    give the person coming in, he or she, a really totally

7    untenable job, and you might find -- have trouble finding

8    somebody who'd be willing to take it under those

9    circumstances, because then everything is a free-for-all.

10   So, that's not the intent.

11           This is supposed to make things more efficient,

12   rather than less efficient.  So -- all right.  So, I --

13   so -- but let me make it clear, again, I think it's clear

14   that the conclusion to the special master on particular

15   discovery issues are you'll work out, essentially, an

16   objection process.  If there's an objection, then come to

17   me, and you can also figure out, to the extent that

18   something may end up in front of me, that there may be a

19   process whereby I get copied on -- I get -- you'll decide at

20   certain points at things that the special master makes sure

21   that I get copies of them anyway, even if they're not

22   subject to objection, just to keep myself up to speed, but

23   there may be things where that's not a good idea if you're

24   having some can't conversations, and I'll leave it to you

25   all to figure that out.  But I would imagine if the

Page 31

```
 1    individual who's appointed is making decisions and they

 2    aren't objected, it's probably worthwhile and if those are

 3    memorialized, there's no additional work to send me a copy,

 4    then it'll be the way that I keep myself up to speed for any

 5    issues that might eventually come up here.

 6              And so, you'll give me a number of names.  You

 7    won't tell me whose names they are.  I'll pick a name and a

 8    backup.  I would assume that you will have these people's

 9    CVs attached and that will give me some basis -- I'm sure

10    they'll all be really qualified folks -- and I'll just do my

11    best to pick somebody who I think is most suitable among,

12    I'm sure, all very suitable candidates.

13              And I would imagine, then, we'll need an order for

14    this, and I appreciate your flexibility.  And, again, if

15    people can think of ways to improve the process -- I'm

16    trying not to stand on ceremony; I'm just trying to be as

17    efficient as possible -- and I think the order would have to

18    reflect that all parties consent and that, again, comes back

19    to the notion that if there's an objection to a decision of

20    the, what we're calling the "special master" that that comes

21    here and that will be heard de novo, not with any sort of

22    deferential standard, and it'll have to stand on its own and

23    that's that.

24              Is there anything else that we should talk about

25    in connection with this process?
```

1          MS. SCHWEITZER:  No, Your Honor.  We can work up

2     an order that we can work consensually with and submit that

3     on Friday, along with the proposed names, just because you

4     would need that to appoint the person anyway.

5          THE COURT:  Right.  And I would imagine that order

6     would also have (indiscernible) discuss sort of initial

7     meet-and-confer as to what -- where things stand so you

8     can -- and I'll leave it to you, if you want to put in the

9     order how you sort of want to have sort of an initial first

10     contact with the person who's appointed, whether it's

11     written submissions, whether it's a get-together, how you

12     want to do it, whether it's a binder of some of the orders

13     and letters.  That may be the first thing before you have a

14     conversation.

15          As a matter of fact, I think that's probably a

16     very necessary things for whoever's coming in.  So, with

17     that, any other thoughts or comments?

18          (No verbal response)

19          THE COURT:  So, the question, in light of all this

20     is, what is a meaningful -- what can be meaningfully -- can

21     we and should we meaningfully turn our attention to today,

22     in terms of the issues that are raised by the letter --

23     letters, I should say.

24          MR. LASTOWSKI:  Your Honor, I'd like to address

25     what's a very simple issue, but it's one that I'm happy that

Page 33

1    I have to offer to the Court, and that is the fact that we

2    had a deadline of October 26th and we didn't make it.

3            When our case was called, I felt like I do in a

4    dentist's waiting room when the nurse comes out and says,

5    Mr. Lastowski, it's your turn, because it's not something

6    that I -- I don't know if I'd ever done it before, and it's

7    something that makes me very uncomfortable.

8            That deadline was set, and we took it seriously.

9    At the time that that deadline was made, we believed in good

10   faith that we could meet it, but as is sometimes the case,

11   you don't know what you don't know, and it's what Donald

12   Rumsfeld would call the "unknown unknown" that led us to be

13   overoptimistic.

14           I will say that the backdrop was that we had an

15   October 31 deadline for the voluntary standstill that was

16   agreed to by Vale.  In our own minds, we had really hoped we

17   could get everything done before that date and that they

18   might extend that date.

19           We didn't make that deadline and they haven't

20   extended their deadline, but we've learned, as we've gone

21   along, this was a process that was, you know, very difficult

22   for us and you do learn by doing.  For example, when you

23   have an estimated number of documents you have to review, in

24   the abstract, you can say, Okay, we're going to review these

25   and produce them in three weeks.

```
 1              But experience tells you that, you know, there's a
 2      thousand documents.  Well, how many pages are in each
 3      document?  What type of documents are they?  Is it 100
 4      invoices or is it a 100-page contract, which has to be
 5      reviewed for key terms?
 6              We simply underestimated the amount of time that
 7      it was going to take us to do this.
 8              THE COURT:  I did see in the two letters, there
 9      were some updates of various numbers, and so I was just
10      trying to get a sense of what the status is.
11              So, let me find the right letter here.  So, I
12      think it's Docket Number 73.  I think it's the second letter
13      of November 2nd and it has a production -- so, I'm trying to
14      figure out how many pages have been produced thus far.  I
15      didn't get my calculator out to sort of add that all up.  I
16      mean, twenty-something, I guess, in the low twenties?
17              MR. LASTOWSKI:  I was told it's 24,000 pages.
18              THE COURT:  Twenty-four thousand, all right.
19              And what do you understand to be sort of -- I did
20      see there was a reference to how many things are still being
21      reviewed for relevance with zero.  So, I'm wondering how
22      many things are still in the queue and what the immediate
23      plans are.
24              MR. LASTOWSKI:  We have produced 4,000 documents
25      and there are 8,000 yet to be produced.  The ones yet to be
```

Page 35

1    produced, though, are relatively far down the pipeline.

2              I think Your Honor was told what the review

3    process was and there's multiple steps.  The penultimate

4    step is Duane Morris review for, you know, for applicable

5    privilege, non-GDPR privilege, and then the documents are

6    returned to BDO for what they call a "senior final review"

7    to make sure -- just to double-check.

8              So, 4,000 have been produced.  Eight thousand are

9    in the pipeline, but with Duane Morris right now and after

10   we review those, we send them to BDO for a final senior

11   review and then they're produced to Vale.

12             THE COURT:  And is that being done on a rolling

13   basis or is that sort of going to be done as a larger --

14             MR. LASTOWSKI:  Everything is done on a rolling

15   basis.

16             If I may, Your Honor?

17             THE COURT:  Sure.

18             MR. LASTOWSKI:  Mr. Hitchings has been more

19   involved with this than I have, so --

20             THE COURT:  Yeah.  No, I'd be happy to hear.

21             MR. LASTOWSKI:  I'm repeating his numbers, you may

22   as well hear it from him.

23             THE COURT:  All right.

24             MR. HITCHINGS:  Good afternoon, Your Honor.

25   Jarret Hitchings at Duane Morris.

Page 36

1               So, just to clarify, there are 800 documents --

2       I'm sorry -- 8,000 documents, as we say, in the pipeline

3       that's in various different rolling stages.  Some of those

4       documents have been fully reviewed for privilege and

5       everything else and they're just in the process of being

6       packaged for delivery.  That's not as simple as copy, paste,

7       print.  It involves just some technical procedures, so there

8       is a little bit of a delay there.

9               Some of those documents have been -- of those

10      8,000 have been fully reviewed for privilege, but are in the

11      process of being, as we call them "QCed," because you have

12      10 reviewers, you need to make sure that they're being

13      reviewed in a consistent and conformed fashion.  And so,

14      that's not to say that we have 8,000 documents -- we've

15      produced 4,000 -- there's going to be another four, eight,

16      twelve weeks for production.  Those are very far along and

17      we do anticipate that of those 8,000 there should not be an

18      issue with reaching the target deadline of December 2.

19              THE COURT:  All right.

20              MR. HITCHINGS:  And it's also important to know

21      what those documents do not include.  They do not include

22      documents that are being received from third parties, to the

23      extent those documents are received at any point.  They

24      don't include documents that are outside of the data sources

25      that were not identified in our August 27 letter.

```
 1              We've kind of looked at this as phases.  If you
 2     recall, there were about six or eight data sources that we
 3     identified.  That makes up the set of the 3.7 or 1.2 million
 4     documents that have been in the universe and from their
 5     report down, the pipeline is getting much, much shorter, and
 6     that's where we are.
 7              But to the extent that we receive further
 8     documents, to the extent that there are other data sources
 9     that are searched, those would fall outside of the timeline
10     that we've been discussing.
11              THE COURT:  All right.  And so one of the things
12     that was mentioned was sort of what Vale, I think, called
13     "low-hanging documents," which are things that were in the
14     Gurnsey (phonetic) proceeding, and I assume that those
15     documents are all part of this universe, right; they're part
16     of the data sources?
17              MR. HITCHINGS:  Correct.
18              THE COURT:  All right.
19              MR. HITCHINGS:  And to the extent the documents
20     had not been in our possession because they were either
21     maintained by the Gurnsey Court, I do understand that we now
22     do have authority from the Gurnsey Court that those
23     materials can be provided.  So, we're in the process of
24     gathering those and those will certainly be produced, I
25     hope, on an expedited basis; if not, as part of the rolling
```

Page 38

1    production.

2              THE COURT:  All right.  So, let me hear from

3    Vale's counsel about this.  And so, my question is, in

4    discovery, it's like an aquatic creature; it's always

5    important to move forward, lest you sink to the bottom and

6    perish.  So, I understand there certainly are things that

7    could be said about the past, so my question is, what's your

8    take on the future?

9              I certainly understand what's in your letter.

10             MS. SCHWEITZER:  Thank you, Your Honor.

11             And you have spared the motion of re-hashing some

12   of the things that we've seen.  So, I don't need to put a

13   further marker down on our feelings of prejudice --

14             THE COURT:  No.

15             MS. SCHWEITZER:  -- and where we've been at.

16             I think that it's helpful for the administrator

17   to, again, confirm where they're at.  In truth, we've had --

18   the progress reports have been helpful, but the numbers are

19   hard to reconcile.  So, we have new numbers down.

20             I think that it's helpful, also, that the joint

21   administrators have confirmed that they expect to hit a

22   December 2nd deadline, because we've been very concerned

23   about, not just extensions, but extensions without

24   understanding, so that they expect that they will be held to

25   hitting that deadline.

1                THE COURT:  Well, let me just sort of -- I --

2       we're going to treat that as a deadline the same way that

3       you should treat any deadline; it's by court order, meaning,

4       if that's not going to be met, then in advance of that

5       deadline, a letter needs to be submitted saying, Here's the

6       problem.

7                Now, it could be that you had those conversations

8       in the first instance with whoever's appointed, but I think,

9       as it's a court deadline, that would need to come here to

10      get an extension.  I'm certainly -- I don't think that sort

11      of global issue, I think I've got a pretty good grasp on

12      that, so I think that's right.  So, we'll treat December 2nd

13      as the modified deadline, all right.

14               MS. SCHWEITZER:  Thank you, Your Honor.

15               What they refer to as the "third-party documents"

16      that they say are -- we would call up the documents that

17      Your Honor has found are under your control, that I

18      understand that they're still in the process of collecting

19      them, but --

20               THE COURT:  Well, this an awkward, right.  So,

21      possession, custody, or control, there's a footnote in the

22      order that says -- that explains very clearly what the state

23      of the law is on that, and it's the ability to get them.

24               I did see that -- I tweaked one of the orders to

25      the extent that it found that they had them, it said to the

```
1    extent you have possession, custody, or control, you have to
2    produce them.  So, that's really -- I wasn't trying to give
3    anybody a "get out of jail free" card, but at the same time,
4    I don't have a specific -- there was one party where there
5    was a request for me to make findings and I did make
6    findings as to that party.
7           But as to the other parties, sort of the legal
8    standard that you were referencing in your papers, I
9    adopted, but I didn't make factual findings just because we
10   didn't -- that's not where we ended up.  So, it's
11   complicated, but I think everybody knows where we are.
12          MS. SCHWEITZER:  Right.  And the good news on that
13   is, apparently, once the letters were sent and the requests
14   were actually made, people responded, and the progress
15   report indicates they actually have documents that they
16   already have received.  So, I hear them saying that those
17   are not part of the December 2nd production, but to the
18   extent that they're in hand, we would expect a report on
19   that, as well, in terms of volume and when those would be
20   produced.
21          THE COURT:  Yeah.
22          MS. SCHWEITZER:  Because, depending on volume,
23   maybe they should come quickly, as well.
24          And then we have, just for the record, we have
25   asked for them for copies of the correspondence with third
```

1    parties so that we (indiscernible) with these other folks

2    that they've reached out to for documents just so that we

3    understand what the situation is and if anyone is putting up

4    objections or is keeping documents, we know what that is --

5    not for Your Honor today.

6              The one comment they made right now, which I'm not

7    actually quite sure what it means -- it would be helpful to

8    get clarity on -- is Mr. Hitchings said that this one

9    million, sometimes there's three million documents they

10   search and intend to produce by December 2nd, are the -- the

11   sources that they've identified, but there are other

12   documents outside of those data sources that they're not

13   holding themselves to.  And I'm not quite sure what universe

14   of documents we haven't even begun to scrape the surface on,

15   other than the ones covered by Your Honor's order.  So, I

16   don't want to find out there's things that are left behind.

17             THE COURT:  Let me hear from the other side.

18             I have thought about it, but it's much better to

19   hear your thought than my less --

20             MR. HITCHINGS:  Your Honor, the comment was only

21   to suggest that if the special master, through that process,

22   if there are broadened categories of documents or other

23   databases uncovered or determined, that those would be

24   included.

25             My point was just that we had identified the set

1     of documents that were within the target for December 2.

2             THE COURT:  All right.  So, my understanding --

3     what I'm not quite sure is it's often common that folks say,

4     I'm producing documents.  I've identified the sources where

5     I think such responsive documents would be and here, they

6     are.  And that's one potential meaning for what you just

7     said.

8             Another is to say, Well, we've identified these

9     sources as places.  There may be others, or we're sort of

10    holding off on others, but we've identified these.  So, I'm

11    not sure if you can give me any wisdom.

12            MR. HITCHINGS:  I think, for example, we've

13    identified and said we would be searching certain mailboxes

14    from the joint administrators, but, for instance, we're not

15    searching every employee at BDO that's working on the

16    matter.

17            If for some reason and there was a special master,

18    Your Honor determined that those mailboxes needed to be

19    searched for whatever reason, my point is only that that is

20    not included in the universe of documents currently under

21    review.  Not that it should be --

22            THE COURT:  Right.

23            MR. HITCHINGS:  -- but it's just not.  And for

24    purposes of December 2, anything outside of that universe is

25    not included in that timeline.

1           THE COURT:  And that universe is reflected in --

2      and I know you mentioned the bit of correspondence.

3           MR. HITCHINGS:  It's in the August 27 letter to

4      Your Honor and we identified the various data sources.

5           THE COURT:  And my understanding, if I remember

6      that letter correctly was, this is after, consistent with

7      their professional obligations, we believe these are the

8      sources that are appropriate to search for to provide

9      responsive documents.

10           MR. HITCHINGS:  Correct.

11           THE COURT:  All right.

12           MS. SCHWEITZER:  Thank you, Your Honor.

13           They addressed another one that was on our list

14      was to get confirmation of the status of getting the Gurnsey

15      documents.  So, we're pleased to learn those are coming to

16      us and will be produced to us, that there's not an issue

17      there.

18           And then I think that was certainly not every last

19      thing, but we'll save some for the special master.  I think

20      that the only other thing and recognizing where we're at, is

21      do we put another placeholder hearing in front of Your

22      Honor?

23           THE COURT:  I have no problem doing that just so

24      you don't have to scramble for time.  My only -- and I maybe

25      should just keep my yap shut -- but the only thing I will

Page 44

1    say is, in conversations about search terms, search terms

2    can be very, very tricky and transparency always -- well,

3    it's messy in the beginning and always pays off in the long

4    run.

5            Obviously, the law is what it is.  You have on the

6    one hand what's responsive and what's -- you know, so there

7    was a debate in the letters about certain terms and the

8    inclusion of certain things, whether it's company or the

9    name of an individual, and on the other hand, there was sort

10   of a different part of the same conversation will say, well,

11   here's the yield we're getting and we're concerned about the

12   size of the yield in terms of proportionality.

13           So, there are lots of ways to address that.  Some

14   of it is to think outside the box.  That once you get

15   things, responsive documents and you're able to sort of get

16   a more informed factual thing, then you might say, Well,

17   we're going to put a pin in this for now and try to identify

18   more particularly what we think we want to make sure we've

19   covered, whether it's particular email boxes, whether it's

20   particular date ranges, or other things.

21           Again, I say this to somebody who's not steeped as

22   steeped as you are in the discussion, but just trying to

23   think of practical ways to address the problem, because,

24   right, the rules sort of encompass a lot of different

25   concepts -- responsiveness, burden, all sorts of things.

1           So, that's one way to think about it, and that's

2     one of the things that the sooner the documents are produced

3     the better, because then they can look at them and say,

4     Well, here's what we're most concerned about.  Here's the

5     date range we're most concerned about.  Here's the

6     individuals -- we feel like there's likely to be other

7     emails from these people to these other people.

8           So, I'm just throwing that out as ways to think

9     about it.  I'm sure that you've already been doing that, and

10    I may be giving you, you know, ideas that you already have.

11    But just that if you battle in the absolute of the perfect

12    search term versus the yield, it's often a conversation of

13    two ships passing in the night.  So, I just throw that out

14    to the extent that as we get documents and begin to review

15    documents, that there may be some practical ways to try to

16    address those issues.

17           MS. SCHWEITZER:  Thank you, Your Honor.  That's

18    helpful guidance.

19           And I think, quite frankly, that there's different

20    levels to it.  In their letter, they had sort of said

21    (indiscernible) factors, here's the list of what we think

22    are relevant.  Certainly, that's previously been considered

23    and decided by Your Honor in terms of the requests are much

24    broader than that.  So, I think we have some mismatched,

25    likely --

Page 46

1           THE COURT:  Right.  No, the rulings are what they

2      are, right.

3           MS. SCHWEITZER:  -- in terms of what scope and

4      then how to get to that scope.

5           THE COURT:  Right.

6           MS. SCHWEITZER:  But we completely hear you, and

7      in that effort, tried to meet-and-confer and we'll continue

8      to do so to get the right documents.

9           THE COURT:  Well, you also need the more documents

10     you have, the more intelligent decision you can make about

11     what the scope is of what additional things you might want

12     to pursue.

13          MS. SCHWEITZER:  Yes.

14          THE COURT:  It's very, as you all know in spending

15     enough time in this court, the more things are theoretical

16     issues, then the more people are sort of duty-bound to sort

17     of announce their presence with authority on sort of a much

18     broader scale.  So, the additional productions through

19     December will be very helpful, I think, hopefully, on that

20     score.

21          All right.  So, we need a date.  So today is the

22     4th.  Do you want to make it December 4th or do you want

23     it -- how about we do this, I'll give you December 4th and

24     if you think that your focus is on other things in light of

25     where we are, then we can push it off a couple of weeks with

```
 1    the idea that we would still meet before the new year, but

 2    we might push it out, say two weeks or so, if that option is

 3    useful.

 4              MS. SCHWEITZER:  The 4th works for us.

 5              Does that work?

 6              MR. LASTOWSKI:  It does, Your Honor.

 7              THE COURT:  Do you prefer morning or afternoon?

 8    Anybody have a --

 9              MS. SCHWEITZER:  Either is fine for us.

10              MR. LASTOWSKI:  Mr. Peters wasn't allowed to bring

11    his phone, so he doesn't have his calendar.

12              THE COURT:  All right.  So, we'll put it in.  And

13    so -- and we'll make it -- once you check, just let me know

14    for morning or afternoon.  Right now, I'm fine either way.

15              And I'm also happy if he wants to participate by

16    phone for some of these things so that he doesn't have to

17    make the trip and can sort of stay updated on this.

18              MR. LASTOWSKI:  I'm hopeful his participation

19    won't be necessary, but we'll see.

20              THE COURT:  All right.  But to the extent that he

21    feels like, well, you never know, so I'm open to that.

22              My, as you know doubt have heard from other

23    judges, is that if somebody is actually going to provide

24    evidence and testify, then they need to be here in person.

25    But if it's status, I'm fine with people participating by
```

Page 48

1    phone.

2              MR. LASTOWSKI:  All right.

3              MS. SCHWEITZER:  Should we put the morning as a

4    holder and then --

5              THE COURT:  Okay.  So, let's say December 4 at

6    11:00.

7              MS. SCHWEITZER:  Sure.

8              THE COURT:  And I'll put in a backup date of

9    December 17th, which is a Tuesday, also at 11:00, just in

10   case you think you can slide another couple of weeks.

11   Because if you're -- speaking of bandwidth -- if you're busy

12   getting the party who's been appointed up to speed and

13   having conversations with them, I don't want this to

14   distract from those efforts.  So, you'll let me know.

15             MR. LASTOWSKI:  Thank you.

16             MR. HYMAN:  Just to bring you up to speed, Your

17   Honor, as it relates to the District Court proceeding --

18             THE COURT:  All right.

19             MR. HYMAN:  -- one further comment, and, again, I

20   think this is for the special master, but in arriving at the

21   search terms that were used, it was an (indiscernible) word

22   process.  It wasn't just pulling process out of --

23             THE COURT:  All right.  Well, we're going to stay

24   away from that because I think once those -- those are still

25   waters, but they run deep, so we'll avoid that for right

```
 1      now.
 2                  MR. HYMAN:  We understand that, Your Honor.
 3                  I think we mentioned last time we were before you,
 4      the next filing with Judge Broderick in the District Court
 5      was going to be a filing from the joint administrators
 6      explaining why they thought it was important that Judge
 7      Broderick continue to withhold a decision, pending a hearing
 8      on the challenge of the application, which is scheduled for
 9      the end of November.
10                  We included in that a reference to a request for
11      some guidance from Judge Broderick on to the extent that we
12      need some additional injunctive relief, where we should go
13      to request that relief.
14                  THE COURT:  All right.
15                  MR. HYMAN:  And there are a series of hearings, so
16      it's difficult to know however long to get a response back
17      Vale's counsel filed a response a week later on
18      October 25th.
19                  I understand they had indicated to Judge Broderick
20      that they didn't think the timing was ripe to determine
21      whether their -- or the right venue for seeking injunctive
22      relief.  I think the argument that they made was that if
23      there is an argument -- if there is a determination by Judge
24      Broderick that he should recognize the arbitration award and
25      give the effect of a judgment to the United States, that
```

1    there's a 30-day stay in place.

2            We'll take them at their word in that pleading and

3    hold them to that 30-day stay.  At that point --

4            THE COURT:  Well, I'll let that all play out in

5    front of Judge Broderick.

6            MR. HYMAN:  At that point, if we haven't heard

7    before, we'll scramble and determine what Court we need to

8    run to.

9            THE COURT:  Well, you're keeping him informed so

10   he can -- and it sounds like everybody is being very

11   solicitous and courteous about that, so that Judge Broderick

12   doesn't feel like he's had a (indiscernible) with the

13   (indiscernible) handed to him.  So, he knows sort of how

14   things are sequencing.

15           And my intent in being deferential to those

16   proceedings is also not to push any problems on him, but

17   just to be understanding of sort of a relationship between

18   the two.  And I know in speaking to other judges, as I told

19   you before, that we occasionally -- not often -- but

20   occasionally in this court have this kind of an issue come

21   up where the actual underlying lawsuit is pending up the

22   street and we have the bankruptcy and there's a question

23   about where injunctive relief should -- that request should

24   go.

25           And I think I've seen other judges, essentially,

Page 51

1   in light of Bankruptcy Court jurisdiction and the fact that

2   the underlying merits are up the street to defer to the

3   District Court, unless they would like our assistance.  So,

4   that's fine.

5            MR. HYMAN:  That's helpful, Your Honor.

6            And we included a copy of the transcript from the

7   last hearing with our filing in front of Judge Broderick.

8            THE COURT:  All right.

9            MR. ROSENTHAL:  All I would say, Your Honor, is

10  just, you know, our letter to Judge Broderick says what it

11  said.  The law is what it is.

12           THE COURT:  Right.

13           MR. ROSENTHAL:  And Mr. Hyman can research the law

14  himself in terms of, you know, what any deadlines may be.

15           And, you know, to the extent that he wants to hold

16  us to something, the law is what it is.

17           THE COURT:  Well, that's in front of Judge

18  Broderick --

19           MR. ROSENTHAL:  Exactly.

20           THE COURT:  -- and you'll all let me know what --

21  if and when it's necessary for me to weigh in on those

22  questions.

23           All right.  But, again, I appreciate you keeping

24  him informed because that's obviously, I would think, very

25  helpful, and we'll just -- that's the other reason why I

Page 52

1    think December 4th makes sense, given the other things that

2    are floating around, it gives us a useful opportunity to

3    touch base.

4              All right.  With that said, thank you very much.

5    As you work your way through these issues that we were

6    discussing, particularly, the order, if there's anything

7    that would -- you think is necessary to have further

8    discussion, you can just contact chambers and we can set up

9    a CourtCall.

10             All right.  Thank you.

11             COUNSEL:  Thank you, Your Honor.

12             (Proceedings concluded at 1:15 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 53

1          C E R T I F I C A T I O N

2

3    We, Jamie Gallagher and William Garling, certify that the

4    foregoing transcript is a true and accurate record of the

5    proceedings.

6    Jamie Gallagher       Digitally signed by Jamie Gallagher
                           DN: cn=Jamie Gallagher, o, ou,
                           email=digital@veritext.com, c=US
7    _____      Date: 2019.11.06 15:55:18 -05'00'

8    Jamie Gallagher

9    William Joshua        Digitally signed by William Joshua Garling
                           DN: cn=William Joshua Garling, o, ou,
                           email=digtial@veritext.com, c=US
     Garling               Date: 2019.11.06 15:55:33 -05'00'
10   _____

11   William Garling

12

13

14

15   Date:   November 6, 2019

16

17

18

19

20

21   Veritext Legal Solutions

22   330 Old Country Road

23   Suite 300

24   Mineola, NY 11501

25

[& - attorneys]

**&**

**&** 3:18

**1**

**1.2** 37:3
**10** 36:12
**100** 34:3,4
**10004-1408** 1:16
**10006** 3:21
**11** 6:16
**11036** 3:14
**11501** 53:24
**11:00** 48:6,9
**11:29** 1:19
**11:42** 13:11
**12:25** 13:11
**15** 4:3 5:10 7:14
   7:15 13:15
**1540** 3:13
**1600** 3:5
**17th** 48:9
**19-11845** 1:9
**19801** 3:6
**1:15** 52:12

**2**

**2** 36:18 42:1,24
**2019** 1:18 53:15
**222** 3:4
**24,000** 34:17
**25th** 49:18
**26th** 33:2
**27** 36:25 43:3
**2nd** 34:13 38:22
   39:12 40:17 41:10

**3**

**3.7** 37:3
**30** 16:3 29:2 50:1
   50:3
**300** 53:23
**30th** 5:4
**31** 33:15
**330** 53:22

**3rd** 9:17

**4**

**4** 1:18 48:5
**4,000** 34:24 35:8
   36:15
**4th** 46:22,22,23
   47:4 52:1

**6**

**6** 53:15

**7**

**71** 5:5
**72** 5:5
**73** 5:5 34:12

**8**

**8,000** 34:25 36:2
   36:10,14,17
**800** 36:1
**8th** 9:15,19

**a**

**a.m.** 13:11
**ability** 39:23
**able** 44:15
**absent** 27:16
**absolute** 45:11
**abstract** 33:24
**accessible** 9:6
**accurate** 53:4
**acrimony** 8:11
**actual** 50:21
**adapt** 25:3
**add** 20:2 25:11
   34:15
**additional** 6:24
   31:3 46:11,18
   49:12
**address** 7:14 12:4
   15:25 21:9 25:6
   32:24 44:13,23
   45:16
**addressed** 15:22
   27:22 28:2,7

43:13
**administration**
   1:7
**administrator**
   38:16
**administrators**
   1:9 3:3,12 4:8
   38:21 42:14 49:5
**adopted** 40:9
**advance** 39:4
**afraid** 22:2
**afternoon** 35:24
   47:7,14
**agree** 8:13 12:24
   20:21 26:23 29:3
**agreed** 14:15
   16:15 17:11 33:16
**agreeing** 10:4
**agreement** 13:20
   17:17
**ai** 23:25
**air** 11:4
**allen** 7:8
**allow** 22:12
**allowed** 47:10
**amended** 18:6
**amount** 34:6
**analysis** 23:15
**announce** 46:17
**answer** 16:2
**answers** 25:4
**anticipate** 36:17
**anybody** 40:3
   47:8
**anyway** 10:8 21:1
   30:21 32:4
**apparently** 21:11
   21:19 40:13
**appear** 12:23
**appearances** 4:3
**appears** 5:8
**applicable** 35:4

**application** 49:8
**appoint** 14:20
   32:4
**appointed** 14:14
   31:1 32:10 39:8
   48:12
**appointing** 6:3
   13:17
**appointment** 4:23
   17:9 25:15
**appreciate** 10:2
   10:10 31:14 51:23
**approach** 9:4
**approaches** 9:4
**appropriate** 9:9
   14:1,2 21:15
   22:13 28:11 43:8
**appropriateness**
   15:24
**aquatic** 38:4
**arbiter** 21:21
**arbitration** 49:24
**argument** 29:12
   49:22,23
**arguments** 15:23
**arises** 14:23
**arms** 11:4
**arriving** 48:20
**asked** 40:25
**assert** 16:6
**assertions** 15:23
**assistance** 51:3
**associates** 21:10
**assume** 16:17
   20:6,24 24:22
   31:8 37:14
**assumptions** 29:3
**attached** 31:9
**attention** 7:9
   12:19 32:21
**attorney's** 5:7
**attorneys** 3:3,12
   3:19

**august** 36:25 43:3
**authority** 21:15
  37:22 46:17
**avenue** 3:4
**avoid** 48:25
**award** 49:24
**awkward** 39:20
**axe** 8:13,15

**b**

**b** 1:21
**back** 13:7,13
  21:10 31:18 49:16
**backdrop** 27:23
  33:14
**background**
  18:23
**backup** 14:20
  15:4,8,10 31:8
  48:8
**backwards** 18:25
**bad** 10:1
**bandwidth** 29:7
  48:11
**bankruptcy** 1:1
  1:14,23 6:13
  21:12 50:22 51:1
**base** 52:3
**baseline** 12:10
**basic** 27:12
**basis** 31:9 35:13
  35:15 37:25
**battle** 45:11
**bdo** 4:10 35:6,10
  42:15
**beginning** 44:3
**begun** 41:14
**believe** 9:21 19:16
  43:7
**believed** 33:9
**benefit** 23:15,23
**benefits** 24:13
**best** 7:22 13:16
  31:11

**better** 12:2 24:2
  41:18 45:3
**bidder** 15:9
**big** 11:5 13:16
  26:2
**binder** 32:12
**bit** 11:17 16:21
  26:4 36:8 43:2
**blind** 14:7
**blissfully** 11:2
**bogged** 20:15
**bolts** 25:22
**borrow** 10:15
**borrowing** 16:21
**bother** 27:1
**bottom** 38:5
**bound** 46:16
**bowling** 1:15
**box** 44:14
**boxes** 44:19
**breach** 5:21
**break** 12:4
**brief** 13:15
**bring** 12:9 18:7
  47:10 48:16
**broadened** 41:22
**broader** 45:24
  46:18
**broadway** 3:13
**broderick** 49:4,7
  49:11,19,24 50:5
  50:11 51:7,10,18
**bsg** 1:6 4:2 13:14
**bsgr** 4:8
**build** 26:20
**built** 26:17 27:17
**bunch** 18:3
**burden** 29:5
  44:25
**burdening** 9:5
**busy** 48:11

**c**

**c** 3:1 4:1 53:1,1
**calculations** 24:1
**calculator** 34:15
**calendar** 47:11
**call** 23:21 33:12
  35:6 36:11 39:16
**called** 21:12 33:3
  37:12
**callewaert** 1:8
**calling** 13:23
  31:20
**candidates** 31:12
**capacity** 24:2
**card** 40:3
**carefully** 11:18
**case** 1:9 4:2,3 5:10
  6:2 7:1,8 10:19
  12:22 13:1,15
  14:17,21 15:10
  18:2 24:13 33:3
  33:10 48:10
**cases** 6:16 7:15
**categories** 41:22
**category** 21:5
**caveat** 19:12
**ceremony** 31:16
**certain** 6:19 9:14
  12:17 15:20 19:13
  24:7 28:25 30:20
  42:13 44:7,8
**certainly** 9:4 12:4
  14:3 24:18 25:9
  28:4 37:24 38:6,9
  39:10 43:18 45:22
**certify** 53:3
**cetera** 15:20,21
**challenge** 49:8
**chamber's** 13:7
**chambers** 52:8
**chance** 10:12,22
**change** 22:8 30:4

**changes** 25:1 28:3
**chapter** 4:3 5:10
  7:14,15 13:14
**charge** 7:8
**chat** 13:6,16
**check** 7:25 14:13
  14:21 35:7 47:13
**circulated** 16:17
**circumstances**
  12:17 30:9
**civil** 12:16
**clarify** 36:1
**clarity** 12:9 41:8
**clear** 24:3 26:15
  29:15 30:13,13
**clearly** 5:25 39:22
**clears** 6:18
**cleary** 3:18 4:14
  5:4
**clerk** 13:12
**clients** 14:17
**close** 16:3
**cohen** 1:9
**colleague** 4:9
**collecting** 39:18
**come** 5:14 10:19
  13:7,25 16:6
  20:25 22:2,11,11
  23:10,14 24:7
  28:22 30:16 31:5
  39:9 40:23 50:20
**comes** 31:18,20
  33:4
**coming** 28:6 30:6
  32:16 43:15
**comment** 19:8
  29:10 41:6,20
  48:19
**comments** 10:10
  32:17
**commercially**
  23:1

**common** 42:3
**company** 44:8
**compartmentali...** 20:9
**competent** 8:15
**complaint** 18:6
**completely** 46:6
**completing** 9:14
**complicated** 11:24 12:25 40:11
**concept** 22:10
**concepts** 44:25
**concern** 9:11 18:9 21:1 22:10 29:4
**concerned** 29:8 38:22 44:11 45:4 45:5
**concerns** 21:25 25:7
**concluded** 52:12
**conclusion** 30:14
**conclusions** 16:15 20:12
**conducting** 16:11
**confer** 17:11 24:19,20 32:7 46:7
**conference** 2:1 11:24
**confidence** 7:25
**confident** 16:8
**confirm** 38:17
**confirmation** 43:14
**confirmed** 38:21
**conflicts** 14:13,21 14:23 28:21
**conformed** 36:13
**conjunction** 17:9
**connection** 31:25
**connections** 14:16
**consensually** 32:2

**consent** 21:19 27:16 31:18
**consider** 15:8
**considered** 7:5 45:22
**consistent** 36:13 43:6
**constructive** 9:3,4
**consuming** 8:3 10:7
**contact** 32:10 52:8
**contention** 16:2
**context** 6:7 8:1,4 17:2 20:10,25 23:10
**contexts** 23:14
**continue** 11:12 46:7 49:7
**continuing** 18:25
**contract** 34:4
**control** 23:1 25:20 39:17,21 40:1
**conversation** 12:1 32:14 44:10 45:12
**conversations** 17:7 30:24 39:7 44:1 48:13
**copied** 30:19
**copies** 30:21 40:25
**copy** 31:3 36:6 51:6
**correct** 18:9 37:17 43:10
**corrected** 13:22
**correctly** 43:6
**correspondence** 40:25 43:2
**cost** 6:24,25 18:18 20:7 23:15 25:5,7 25:10 29:6

**counsel** 14:15 38:3 49:17 52:11
**counterpoint** 17:19
**country** 53:22
**couple** 6:17 11:14 46:25 48:10
**course** 26:1
**court** 1:1,14 4:2 4:12,17 6:1,2,5,10 6:13 8:6,8,20,23 8:25 9:13,23 10:16 12:6,11,23 13:10,13,25 14:3 14:9,12,19,23,25 15:5,8,13,18 16:10,21,25 17:4 17:24 18:2,21 19:7,15,20,22,25 20:4 21:14,17,21 21:22,24 22:8 23:9 24:11,24 25:12,16,24 26:2 26:11,16 27:1,4,7 27:12,18,24 28:7 28:20 29:23 30:1 32:5,19 33:1 34:8 34:18 35:12,17,20 35:23 36:19 37:11 37:18,21,22 38:2 38:14 39:1,3,9,20 40:21 41:17 42:2 42:22 43:1,5,11 43:23 46:1,5,9,14 46:15 47:7,12,20 48:5,8,17,18,23 49:4,14 50:4,7,9 50:20 51:1,3,8,12 51:17,20
**court's** 22:4 25:17
**courtcall** 52:9
**courteous** 50:11

**courts** 21:12
**covered** 41:15 44:19
**create** 19:18
**creative** 9:8
**creativity** 6:6
**creature** 38:4
**criminal** 7:8
**crucial** 26:11
**crystal** 24:3
**current** 6:25 18:7
**currently** 27:19 42:20
**custody** 25:20 39:21 40:1
**cvs** 31:9

### d

**d** 3:16 4:1
**data** 36:24 37:2,8 37:16 41:12 43:4
**databases** 41:23
**date** 9:20 33:17 33:18 44:20 45:5 46:21 48:8 53:15
**day** 5:17 13:4,5 50:1,3
**days** 16:3,19 29:2
**de** 3:6 31:21
**deadline** 33:2,8,9 33:15,19,20 36:18 38:22,25 39:2,3,5 39:9,13
**deadlines** 51:14
**deal** 13:4 22:1 26:2
**dealing** 5:14 24:6
**dealt** 22:20 23:22
**death** 6:15
**debate** 19:22 21:6 44:7
**debtors** 1:11
**december** 9:20 36:18 38:22 39:12

19-1845-cv Document 75-1 Filed 08/09/19 Page 58 of 68
19-1845-cv Doc 75 Filed 11/06/19 Entered 11/08/19 04:28:33 Main Document

Pg 57 of 67

[december - existing]                                                                                                    Page 4

40:17 41:10 42:1
42:24 46:19,22,23
48:5,9 52:1
**decide** 23:10
30:19
**decided** 23:4
45:23
**decision** 8:11 24:2
31:19 46:10 49:7
**decisions** 20:11
23:25 24:1 31:1
**deep** 48:25
**defer** 51:2
**deferential** 31:22
50:15
**defining** 23:5
**definition** 26:15
**definitive** 22:23
**delaware** 3:4
**delay** 18:11 19:18
22:3 36:8
**delineate** 21:5
**delivery** 36:6
**dentist's** 33:4
**depending** 40:22
**designate** 14:10
**designated** 7:23
7:24
**detail** 25:22
**details** 10:13,25
29:25
**detention** 22:4
**determination**
49:23
**determine** 49:20
50:7
**determined** 41:23
42:18
**developing** 7:16
**devil** 10:13,25
29:24
**different** 12:15
23:13,14,14 30:1

**difficult** 33:21
49:16
**disclosure** 14:16
**discovery** 4:24
5:22 6:14 7:8
10:14,25 12:12,21
13:1,16 15:20,20
16:3 17:4 20:8
23:12,12 25:8
27:25 30:2,15
38:4
**discuss** 32:6
**discussed** 5:24,25
19:1,5 22:16
26:22
**discussing** 15:3
37:10 52:6
**discussion** 9:14
23:17 44:22 52:8
**dispatch** 15:3
17:7 18:20
**dispute** 19:14
**disputes** 8:4 12:12
12:21 13:1 18:7
26:21
**distinction** 26:12
**distract** 48:14
**district** 1:2 6:10
10:16 48:17 49:4
51:3
**docket** 34:12
**dockets** 5:5
**document** 17:15
17:16 22:17,19
25:16 26:18 27:3
27:6,8,10 34:3
**documents** 19:19
22:25 23:1 33:23
34:2,3,24 35:5
36:1,2,4,9,14,21
36:22,23,24 37:4

37:8,13,15,19
39:15,16 40:15
41:2,4,9,12,14,22
42:1,4,5,20 43:9
43:15 44:15 45:2
45:14,15 46:8,9
**doing** 4:20 7:20
29:17,19,20 33:22
43:23 45:9
**domain** 23:20
**donald** 33:11
**door** 13:7
**double** 35:7
**doubt** 5:15 23:20
47:22
**drag** 6:15
**drill** 24:6
**dual** 18:13
**duane** 3:2,11 4:7
5:3 35:4,9,25
**duplication** 24:14
**dust** 6:18
**duties** 22:24 23:6
**duty** 46:16

**e**

**e** 1:21,21 3:1,1 4:1
4:1 23:20 53:1
**earlier** 16:2
**early** 9:20
**easy** 26:15
**effect** 49:25
**effective** 18:18
**efficient** 7:1,19
11:10 17:21 30:11
30:12 31:17
**effort** 46:7
**efforts** 48:14
**eight** 35:8 36:15
37:2
**either** 7:1 14:17
20:12 37:20 47:9
47:14

**elected** 14:16
**email** 44:19
**emails** 45:7
**emphasis** 18:12
**employed** 19:12
**employee** 42:15
**empowered** 10:17
**encompass** 44:24
**ended** 40:10
**endorse** 7:21
**ends** 24:8
**entered** 22:18
**equivalents** 7:8
**esq** 3:8,9,16,23,24
**essentially** 13:3
16:21 18:4,6
30:15 50:25
**establish** 29:21
**estimated** 33:23
**et** 15:20,20
**eventually** 31:5
**everybody** 40:11
50:10
**evidence** 47:24
**exact** 9:20
**exactly** 14:10
15:12 21:16 51:19
**examination**
24:14
**examiner** 23:3
28:11
**examiners** 21:12
**example** 15:19,23
16:1 23:17 27:8
33:22 42:12
**examples** 16:1,7
**exchange** 13:23
14:5
**excited** 12:20
**excuse** 13:14
**exercise** 4:20
**existing** 15:19
21:10

**exit** 11:3
**expand** 19:18
**expect** 38:21,24
  40:18
**expedited** 37:25
**experience** 34:1
**explain** 26:16
**explaining** 49:6
**explains** 39:22
**extend** 33:18
**extended** 33:20
**extension** 39:10
**extensions** 38:23
  38:23
**extensive** 4:19
**extent** 7:18 15:21
  30:17 36:23 37:7
  37:8,19 39:25
  40:1,18 45:14
  47:20 49:11 51:15

**f**

**f** 1:21 53:1
**face** 17:11,11
**fact** 9:14 20:11
  22:9 29:1 32:15
  33:1 51:1
**factors** 45:21
**facts** 23:24
**factual** 40:9 44:16
**failure** 24:9
**faith** 19:16 33:10
**fall** 27:2 37:9
**fantastic** 11:4
**far** 6:9 34:14 35:1
  36:16
**fashion** 5:11
  36:13
**feel** 22:12 45:6
  50:12
**feelings** 38:13
**feels** 47:21
**fees** 5:7

**felt** 33:3
**fight** 6:17 18:7
**fighting** 27:21
**fights** 6:15,15
**figure** 21:14 30:17
  30:25 34:14
**figuring** 21:13
**file** 16:19,25
  20:14 21:2
**filed** 5:4 9:19
  16:17 49:17
**filing** 49:4,5 51:7
**final** 12:9 35:6,10
**find** 30:7 34:11
  41:16
**finding** 9:9 30:7
**findings** 16:14
  40:5,6,9
**fine** 9:23 25:6
  28:8,18,20 47:9
  47:14,25 51:4
**firms** 14:18
**first** 10:21,21
  12:22 17:12 20:19
  26:24 27:11 28:7
  28:13,17 29:25
  32:9,13 39:8
**five** 5:17
**flash** 21:6 23:11
**flexibility** 31:14
**floating** 52:2
**focus** 6:12 19:3
  46:24
**folks** 4:4 8:12
  10:10 26:10 29:6
  31:10 41:1 42:3
**follow** 11:23 17:5
**footnote** 39:21
**foregoing** 53:4
**forward** 9:11
  11:12,25 13:17
  18:24 38:5

**found** 39:17,25
**four** 4:25 34:18
  36:15
**framework** 26:20
**frankly** 45:19
**frederick** 3:16
**free** 30:9 40:3
**friday** 14:6 32:3
**front** 12:23 27:20
  30:18 43:21 50:5
  51:7,17
**fully** 36:4,10
**funnel** 27:25 28:1
**further** 18:19
  37:7 38:13 48:19
  52:7
**future** 27:8 38:8

**g**

**g** 4:1
**gallagher** 2:25
  53:3,8
**garling** 2:25 53:3
  53:11
**gathering** 37:24
**gdpr** 35:5
**generally** 11:1
**getting** 24:15
  26:20,23 37:5
  43:14 44:11 48:12
**give** 10:22 11:14
  13:6 29:7 30:6
  31:6,9 40:2 42:11
  46:23 49:25
**given** 23:4,5 52:1
**gives** 25:2 30:1
  52:2
**giving** 13:15
  17:25 22:13,13
  45:10
**global** 39:11
**go** 5:19 6:18 10:18
  25:23 27:15 49:12
  50:24

**going** 4:23 6:2
  9:15 10:8 13:22
  18:10 21:6 23:10
  23:11,22,23 25:13
  28:4,22 33:24
  34:7 35:13 36:15
  39:2,4 44:17
  47:23 48:23 49:5
**good** 4:6,13,16,17
  6:22 8:12 10:6
  15:4 19:16 30:23
  33:9 35:24 39:11
  40:12
**gotten** 20:25
**gottlieb** 3:18 4:14
**grasp** 39:11
**great** 11:3 13:9
  21:8
**green** 1:15
**grind** 8:14,15
**group** 8:2
**guess** 6:7 20:8,17
  34:16
**guidance** 23:5
  27:12 28:6,13
  29:1,2 45:18
  49:11
**gurnsey** 37:14,21
  37:22 43:14

**h**

**h** 1:22
**hallway** 29:16
**hamilton** 3:18
**hand** 13:4 40:18
  44:6,9
**handed** 50:13
**hanging** 37:13
**happen** 5:12 9:16
  23:11
**happened** 6:9
  18:5 28:10
**happy** 5:20 6:23
  9:7,23 12:3 24:18

[happy - judge]                                                                                    Page 6

32:25 35:20 47:15
**hard** 21:10 28:21
  28:25 38:19
**hashing** 38:11
**hazard** 10:2
**hear** 5:20 8:21,25
  19:9 20:4 24:18
  35:20,22 38:2
  40:16 41:17,19
  46:6
**heard** 22:14 26:9
  26:11 27:24 31:21
  47:22 50:6
**hearing** 2:1 4:19
  4:24 5:16 6:6
  25:15 43:21 49:7
  51:7
**hearings** 16:9
  18:22 24:25 49:15
**held** 38:24
**helpful** 12:8 13:5
  28:12 38:16,18,20
  41:7 45:18 46:19
  51:5,25
**hesitant** 26:8
**hit** 38:21
**hitchings** 3:9 4:9
  35:18,24,25 36:20
  37:17,19 41:8,20
  42:12,23 43:3,10
**hitting** 38:25
**hold** 24:21,21
  50:3 51:15
**holder** 48:4
**holding** 41:13
  42:10
**hon** 1:22
**honor** 4:6,13 5:23
  7:22 8:21 9:2 13:9
  14:14 15:19 16:6
  16:16,19 18:16
  19:11 20:2 21:9
  22:18,21,22,23

23:4,4 25:14
26:17 28:19 29:9
29:18 32:1,24
35:2,16,24 38:10
39:14,17 41:5,20
42:18 43:4,12,22
45:17,23 47:6
48:17 49:2 51:5,9
52:11
**honor's** 41:15
**hope** 24:15,15,17
  37:25
**hoped** 33:16
**hopeful** 47:18
**hopefully** 25:2
  26:24 46:19
**horse** 15:9
**huge** 25:25
**hung** 18:4
**hyman** 3:16 4:8
  48:16,19 49:2,15
  50:6 51:5,13

## i

**idea** 6:22 7:17,18
  7:21 10:4,5 11:3
  11:16 12:5 15:4
  17:12 20:15,17
  21:18,19,20 30:23
  47:1
**ideas** 10:2 45:10
**identified** 36:25
  37:3 41:11,25
  42:4,8,10,13 43:4
**identifies** 17:15
**identify** 28:1
  44:17
**ignorant** 11:2
**illusions** 12:18
**imagine** 19:4
  30:25 31:13 32:5
**immediate** 29:7
  34:22

**impact** 26:3
**implementation**
  25:21
**implemented**
  26:21
**implements** 23:6
**important** 12:19
  12:21 26:13 36:20
  38:5 49:6
**impose** 29:5
**improve** 31:15
**include** 36:21,21
  36:24
**included** 41:24
  42:20,25 49:10
  51:6
**including** 13:17
**inclusion** 44:8
**inconsistent** 7:13
**indicated** 49:19
**indicates** 40:15
**indiscern** 6:11
**indiscernible** 25:9
  32:6 41:1 45:21
  48:21 50:12,13
**individual** 31:1
  44:9
**individuals** 45:6
**infinite** 6:6
**inflicted** 5:9
**information** 12:9
**informed** 44:16
  50:9 51:24
**initial** 32:6,9
**injunctive** 49:12
  49:21 50:23
**insights** 26:24
**instance** 10:21
  20:19 26:24,25
  27:11 28:7,13,17
  39:8 42:14
**intellectual** 26:5

**intelligent** 23:25
  46:10
**intend** 41:10
**intensive** 12:12
**intent** 28:23,23
  30:10 50:15
**interest** 11:25
**interesting** 7:15
**interference**
  18:13
**interrogatories**
  16:2
**invoices** 34:4
**involved** 11:8
  12:16 35:19
**involves** 36:7
**issue** 8:17,18,24
  14:23 15:14 26:6
  26:7 27:13 28:5
  32:25 36:18 39:11
  43:16 50:20
**issues** 5:1,14 6:20
  9:24 11:11 12:19
  15:21 16:1 17:22
  19:1,7 22:20,25
  23:13,15 24:6
  25:3,20 30:15
  31:5 32:22 45:16
  46:16 52:5
**it'll** 31:4,22

## j

**jail** 40:3
**jamie** 2:25 53:3,8
**jarret** 3:9 4:9
  35:25
**jeff** 4:15
**jeffrey** 3:23
**job** 5:17 10:2 30:7
**joint** 1:9 3:3,12
  4:7 38:20 42:14
  49:5
**judge** 1:23 6:5,6
  10:6,16 11:2

[judge - michael]                                                                 Page 7

12:15 18:3 49:4,6
49:11,19,23 50:5
50:11 51:7,10,17
**judges** 10:1 12:20
47:23 50:18,25
**judgment** 49:25
**july** 25:15,17
**jurisdiction** 51:1

### k

**keep** 4:20 30:22
31:4 43:25
**keeping** 41:4 50:9
51:23
**key** 34:5
**kind** 6:10,14 10:3
10:16 13:18 25:22
26:17,19 28:1
29:7,13,17 37:1
50:20
**kinds** 28:1
**knock** 13:7
**knockdown** 6:15
**know** 5:2,5,9 6:5
6:5,17,23 7:5,10
7:17 8:1,12,14
9:15 10:5,6 12:5,7
12:15 14:7 15:9
18:15,18 25:19
26:25 27:9,14
28:5,21,24 29:11
29:24 33:6,11,11
33:21 34:1 35:4
36:20 41:4 43:2
44:6 45:10 46:14
47:13,21,22 48:14
49:16 50:18 51:10
51:14,15,20
**knows** 40:11
50:13

### l

**labor** 12:12
**lane** 1:22

**large** 6:16
**larger** 35:13
**laser** 6:12
**lastowksi** 4:7
**lastowski** 3:8 4:6
5:23,23 7:21 8:7
8:18,21,24 13:20
14:2,5,10,13,22
14:24 15:2,6,12
15:14 16:11,24
17:3,5 18:1,9 19:6
19:11,16,21,24
29:11 32:24 33:5
34:17,24 35:14,18
35:21 47:6,10,18
48:2,15
**late** 29:2
**law** 14:18 39:23
44:5 51:11,13,16
**lawsuit** 50:21
**learn** 33:22 43:15
**learned** 16:5
33:20
**leave** 13:25 30:24
32:8
**leaving** 11:5
**led** 13:2 33:12
**left** 41:16
**legal** 40:7 53:21
**legitimate** 5:1
**lest** 38:5
**letter** 5:3 9:18
23:18 32:22 34:11
34:12 36:25 38:9
39:5 43:3,6 45:20
51:10
**letters** 4:19,25,25
4:25 5:3,17 12:25
32:13,23 34:8
40:13 44:7
**levels** 45:20
**liberty** 3:20

**lifland** 6:6
**light** 32:19 46:24
51:1
**limited** 1:6 4:3
13:14
**line** 5:6
**lisa** 3:24 4:13 9:2
**list** 8:9,9 9:7 14:7
14:7 43:13 45:21
**litigation** 12:16
27:25
**little** 11:17 36:8
**live** 20:13
**llp** 3:2,11,18 4:7
**loathe** 6:7 10:1
**logs** 19:3
**long** 22:3 27:23
44:3 49:16
**look** 11:16 14:4
18:17 21:3 45:3
**looked** 37:1
**looking** 5:1,2,4
23:19 28:10
**loop** 12:5
**lot** 7:7 8:1,11 20:1
44:24
**lots** 44:13
**low** 34:16 37:13

### m

**m** 3:24
**magistrate** 6:11
6:11 10:16 16:22
16:23 17:5
**mailboxes** 42:13
42:18
**mails** 23:20
**main** 21:1
**maintained** 37:21
**making** 8:10
12:22 24:2 31:1
**malcolm** 1:8
**marker** 38:13

**master** 4:23 5:24
7:23 13:18,24,24
15:15,17,22,25
16:14 17:10,12,19
17:21 18:11,16
19:17 20:12,20,24
22:22 23:2,6,9
25:10,15,23 27:14
27:15 28:11 29:12
30:14,20 31:20
41:21 42:17 43:19
48:20
**master's** 26:23
**masters** 21:13
**mat** 10:19
**materials** 37:23
**matter** 1:4 26:5
26:20 32:15 42:16
**mean** 6:16,20 8:8
10:3 11:22 19:20
29:24,24 30:3
34:16
**meaning** 16:22
39:3 42:6
**meaningful** 32:20
**meaningfully**
32:20,21
**means** 18:12 21:3
30:2 41:7
**meet** 24:19 32:7
33:10 46:7 47:1
**meeting** 17:12
**memorialized**
31:3
**mentioned** 12:24
37:12 43:2 49:3
**merits** 29:21 51:2
**merry** 6:18
**mess** 11:5
**messy** 44:3
**met** 4:11 39:4
**michael** 3:8 4:6
5:23

**midday** 13:22
**mild** 19:12
**million** 37:3 41:9
  41:9
**mind** 23:6
**minds** 33:16
**mineola** 53:24
**minutes** 10:23
  11:14
**mismatched**
  45:24
**modified** 39:13
**mole** 26:5
**moments** 13:6
**money** 5:6 11:8
**monitor** 6:1
**month** 22:3 28:24
  29:22
**morning** 4:6,13
  4:16,17 47:7,14
  48:3
**morris** 3:2,11 4:7
  5:3 35:4,9,25
**motion** 27:9 38:11
**motions** 18:3
**motives** 18:14,20
**move** 11:12 13:16
  15:4 17:7,8 38:5
**moves** 9:11
**moving** 11:25
  18:24,24
**multiple** 4:18
  18:14 35:3

**n**

**n** 3:1 4:1 53:1
**name** 31:7 44:9
**names** 9:8 13:23
  14:5,7 31:6,7 32:3
**narrow** 16:7
**naïve** 17:23
**necessarily** 19:18
  22:16

**necessary** 32:16
  47:19 51:21 52:7
**need** 7:13 11:12
  25:4 27:21 28:2
  29:1 31:13 32:4
  36:12 38:12 39:9
  46:9,21 47:24
  49:12 50:7
**needed** 42:15
**needing** 12:18
**needs** 10:18 39:5
**never** 7:15 12:20
  47:21
**new** 1:2,16,16
  3:14,21 15:25
  16:5 19:19 20:7,9
  20:15,15,17 21:5
  21:9 22:10,16
  23:11,21,22 26:9
  26:15 38:19 47:1
**news** 10:6 40:12
**night** 45:13
**nimble** 25:3
**nominates** 8:2
**non** 35:5
**normally** 6:13 8:8
  8:10
**notes** 6:9,9
**notion** 7:13 26:9
  31:19
**november** 1:18
  9:15,17,19 34:13
  49:9 53:15
**novo** 31:21
**number** 5:5 25:18
  26:19 31:6 33:23
  34:12
**numbers** 13:21
  34:9 35:21 38:18
  38:19
**nurse** 33:4
**nuts** 25:22

**ny** 3:14,21 53:24

**o**

**o** 1:21 4:1 53:1
**object** 14:6
**objected** 31:2
**objection** 16:19
  17:1 20:14 21:2
  30:16,16,22 31:19
**objections** 22:18
  41:4
**obligations** 43:7
**observations** 6:19
**obvious** 17:13
**obviously** 6:8 9:10
  10:20 25:7 44:5
  51:24
**occasionally**
  50:19,20
**october** 25:17
  33:2,15 49:18
**offer** 33:1
**offered** 17:10
**oh** 10:4 18:10
**okay** 28:18 33:24
  48:5
**old** 22:16 53:22
**once** 5:21 40:13
  44:14 47:13 48:24
**ones** 16:7 34:25
  41:15
**open** 5:13 47:21
**opportunities** 8:4
**opportunity**
  13:15 52:2
**option** 47:2
**options** 7:5
**order** 15:19 16:16
  31:13,17 32:2,5,9
  39:3,22 41:15
  52:6
**ordered** 15:19
**orders** 23:5 32:12
  39:24

**original** 17:13
**ought** 27:12
**outside** 27:17
  36:24 37:9 41:12
  42:24 44:14
**outweigh** 24:14
**overly** 4:18 6:25
**overoptimistic**
  33:13

**p**

**p** 3:1,1,9 4:1
**p.m.** 13:11 52:12
**packaged** 36:6
**page** 34:4
**pages** 34:2,14,17
**pan** 15:11
**papers** 40:8
**paradigm** 10:16
**parameters** 22:22
**part** 10:19 12:22
  23:23 37:15,15,25
  40:17 44:10
**participate** 47:15
**participating**
  47:25
**participation**
  47:18
**particular** 7:17
  8:16,18 9:1 30:14
  44:19,20
**particularly** 7:4
  7:12 20:6 44:18
  52:6
**particulars** 24:7
**parties** 6:23 11:5
  13:15,22 16:18
  20:6 21:19 22:24
  24:18 28:4 31:18
  36:22 40:7 41:1
**partner** 4:8,14
**party** 5:10 8:2
  14:8 19:7 24:12
  39:15 40:4,6

[party - put]

48:12
**passed** 24:25
**passing** 45:13
**paste** 36:6
**pay** 7:9
**pays** 44:3
**pending** 49:7
50:21
**penultimate** 35:3
**people** 4:22 5:6
6:17 7:9 8:2,9,10
8:13 10:1,3 12:10
14:6 20:12 22:12
24:4 27:20,24
28:24 29:25 30:1
31:15 40:14 45:7
45:7 46:16 47:25
**people's** 31:8
**percolate** 10:8
**perfect** 26:12
45:11
**period** 16:18
**perish** 38:6
**permutation**
20:17
**permutations**
23:21
**person** 7:24 9:9
14:14,17 16:15
30:6 32:4,10
47:24
**personally** 7:22
**peters** 4:10 47:10
**phases** 37:1
**phone** 47:11,16
48:1
**phonetic** 37:14
**phrase** 29:18
**pick** 8:9 14:9 31:7
31:11
**picks** 29:10
**picture** 13:16

**pin** 44:17
**pipeline** 35:1,9
36:2 37:5
**place** 27:14 50:1
**placeholder** 43:21
**places** 42:9
**plans** 34:23
**play** 50:4
**plays** 28:15
**plaza** 3:20
**pleading** 50:2
**please** 13:13
**pleased** 43:15
**plenty** 8:12
**point** 6:24 11:9
17:19 19:3 20:24
21:6,8 22:4,5
28:25 29:6,9
36:23 41:25 42:19
50:3,6
**points** 23:11
30:20
**pop** 26:6
**pose** 6:2
**position** 17:20,20
**possession** 25:19
37:20 39:21 40:1
**possibility** 13:17
**possible** 11:22
28:9 31:17
**potential** 13:23
24:14 42:6
**practical** 27:18
28:22 44:23 45:15
**practice** 27:9
**prefer** 47:7
**prejudice** 38:13
**prepare** 16:15
**prepared** 25:10
**presence** 46:17
**present** 16:4,14
16:16 17:19 18:16

**presented** 15:15
15:17
**presenting** 18:13
**pretty** 5:12 6:22
26:15 39:11
**previously** 29:19
45:22
**print** 36:7
**prior** 5:24 16:9
**privilege** 15:23
16:5 19:3 35:5,5
36:4,10
**probably** 6:21
31:2 32:15
**problem** 13:5
22:4 23:19 28:17
39:6 43:23 44:23
**problems** 11:20
50:16
**procedural** 21:4
**procedure** 6:3,25
16:13,22,25 17:6
**procedures** 9:9
36:7
**proceed** 18:10,19
18:20
**proceeded** 5:10
**proceeding** 17:9
37:14 48:17
**proceedings**
50:16 52:12 53:5
**process** 7:19
10:14 11:8 13:21
15:7 24:8,22 25:2
30:4,16,19 31:15
31:25 33:21 35:3
36:5,11 37:23
39:18 41:21 48:22
48:22
**produce** 18:17
33:25 40:2 41:10
**produced** 29:14
34:14,24,25 35:1

35:8,11 36:15
37:24 40:20 43:16
45:2
**producing** 42:4
**production** 17:16
18:11,14 19:2,2,6
34:13 36:16 38:1
40:17
**productions**
46:18
**productive** 4:20
5:18 7:19
**professional** 43:7
**professionals** 8:15
**progress** 12:8
17:16,17 38:18
40:14
**prolong** 17:6
**promised** 11:1
**prompt** 22:3 24:5
**promptly** 7:14
**proper** 22:19
**proportional**
18:19
**proportionality**
15:24 26:7 44:12
**proposed** 32:3
**protection** 21:4
**protracted** 13:1
**provide** 9:7 12:9
43:8 47:23
**provided** 37:23
**prudent** 14:24
**pulling** 48:22
**purpose** 23:2
**purposes** 42:24
**pursue** 27:9 46:12
**push** 7:6 46:25
47:2 50:16
**put** 5:11 32:8
38:12 43:21 44:17
47:12 48:3,8

putting 41:3

**q**

qced 36:11
qualified 31:10
question 6:3 9:1
 20:8,14 21:3
 32:19 38:3,7
 50:22
questions 23:3
 51:22
queue 34:22
quickly 25:4
 40:23
quite 41:7,13 42:3
 45:19

**r**

r 1:21 3:1 4:1 53:1
raised 5:2 6:20
 32:22
ramifications
 19:25
range 45:5
ranges 44:20
reached 20:12
 41:2
reaching 36:18
readily 9:6
real 22:6 24:5,13
 25:3
realize 10:24
really 7:9 8:13
 11:17 15:3 18:18
 21:7 26:19 29:2
 30:6 31:10 33:16
 40:2
reason 6:14 12:13
 42:17,19 51:25
recall 37:2
receive 4:18 37:7
received 36:22,23
 40:16
recessed 13:11

recognize 9:25
 49:24
recognizing 43:20
recommendation
 16:23
reconcile 38:19
reconvened 13:11
record 9:3 12:14
 12:23 13:14 29:16
 40:24 53:4
redacted 23:1
refer 39:15
referee 13:4
reference 34:20
 49:10
referencing 40:8
reflect 31:18
reflected 43:1
reflection 12:25
refresh 18:5
regard 18:17
 26:18 27:9
related 20:16,17
relates 48:17
relationship
 50:17
relatively 35:1
relevance 34:21
relevant 23:5
 45:22
relief 7:14 25:8
 49:12,13,22 50:23
relitigate 23:3
remains 17:18
remember 6:6
 43:5
remove 20:5
repeating 35:21
report 16:16,22
 37:5 40:15,18
reports 12:8
 38:18

representative
 4:10
request 7:14
 18:17 22:19 40:5
 49:10,13 50:23
requested 14:15
 15:16
requests 17:15
 22:17 25:17 26:18
 27:3,6,8,10 40:13
 45:23
require 4:23
 25:22
required 12:17
research 51:13
reserve 25:8
 28:16
reserving 28:13
resources 1:6 4:3
 6:1 13:14
respect 25:16,18
 26:22 27:15
respected 26:25
respective 24:12
responded 22:19
 40:14
response 5:2,3
 24:5 29:7 32:18
 49:16,17
responsive 22:24
 42:5 43:9 44:6,15
responsiveness
 44:25
returned 35:6
review 17:21
 19:19 33:23,24
 35:2,4,6,10,11
 42:21 45:14
reviewed 34:5,21
 36:4,10,13
reviewers 36:12
rick 4:8

right 4:2,12,17
 8:16 11:3 12:6,13
 14:12,19 15:1,5
 16:10,11 17:25
 18:23 19:8,15
 20:25 21:1,2,15
 21:17,23,24 22:7
 22:11,11,15 23:12
 24:4,10 25:8,25
 26:6,10 28:3,14
 29:20,21 30:12
 32:5 34:11,18
 35:9,23 36:19
 37:11,15,18 38:2
 39:12,13,20 40:12
 41:6 42:2,22
 43:11 44:24 46:1
 46:2,5,8,21 47:12
 47:14,20 48:2,18
 48:23,25 49:14,21
 51:8,12,23 52:4
 52:10
rights 22:14 28:16
ripe 49:20
rise 13:12
risk 29:18
road 53:22
rolling 35:12,14
 36:3 37:25
room 4:4 33:4
rosenthal 3:23
 4:15,16 25:13
 26:1,14 27:6
 28:18 29:9 51:9
 51:13,19
ruled 22:22
rules 44:24
ruling 30:2
rulings 5:14,16
 10:14 18:21 22:18
 22:23 24:24 25:18
 26:19 29:23,23
 30:4 46:1

[rumsfeld - starting]                                                    Page 11

**rumsfeld** 33:12
**run** 20:13 44:4
  48:25 50:8

**s**

**s** 3:1 4:1
**sanctions** 7:9
**satisfied** 17:18
**save** 13:5 43:19
**saw** 23:17
**saying** 18:17 39:5
  40:16
**says** 33:4 39:22
  51:10
**scale** 46:18
**scheduled** 49:8
**schweitzer** 3:24
  4:13,14 9:2,3,18
  12:3,7 13:9 20:2
  21:8,16,18,23
  22:7,15 24:10,17
  25:5 32:1 38:10
  38:15 39:14 40:12
  40:22 43:12 45:17
  46:3,6,13 47:4,9
  48:3,7
**scope** 15:15,20
  19:2 22:19,23
  23:5 25:14 46:3,4
  46:11
**score** 46:20
**scramble** 43:24
  50:7
**scrape** 41:14
**sean** 1:22
**search** 15:24 19:3
  19:13,22 23:18
  25:23,24,25 26:2
  26:4,6 41:10 43:8
  44:1,1 45:12
  48:21
**searched** 37:9
  42:19

**searches** 19:19
  29:13
**searching** 42:13
  42:15
**seated** 13:13
**second** 20:7 34:12
**see** 6:25 7:12,18
  9:1 11:19 25:14
  25:21 26:17 27:18
  28:15,23 34:8,20
  39:24 47:19
**seek** 25:8
**seeking** 49:21
**seen** 38:12 50:25
**select** 8:2
**self** 5:8
**send** 20:22 31:3
  35:10
**senior** 35:6,10
**sense** 10:17 12:2
  14:19 20:19 21:5
  24:15 26:4,12
  34:10 52:1
**sensitive** 23:2
**sent** 40:13
**sequencing** 50:14
**series** 49:15
**seriously** 33:8
**serve** 7:23 13:18
**set** 5:13,15 16:18
  33:8 37:3 41:25
  52:8
**share** 20:7
**shared** 24:17
**ships** 45:13
**shl** 1:9
**shorter** 17:1 37:5
**shut** 43:25
**side** 4:4 8:25 9:25
  19:12 41:17
**similar** 23:13 28:8
  28:12 29:18

**simple** 32:25 36:6
**simply** 34:6
**single** 4:18
**sink** 38:5
**sit** 5:9 17:14
**situation** 41:3
**six** 37:2
**size** 44:12
**slide** 48:10
**slip** 9:22
**slipped** 9:19
**slope** 9:22
**slow** 7:16
**snags** 11:19
**solicitous** 50:11
**solutions** 53:21
**solve** 23:19
**somebody** 10:18
  11:10 12:2 13:3
  13:18 14:21 20:16
  22:23 24:11 26:25
  30:8 31:11 44:21
  47:23
**somebody's** 10:17
**somewhat** 28:12
**sooner** 45:2
**sorry** 36:2
**sort** 5:10 7:7,12
  10:11,15,15 13:2
  15:8 17:24 18:4
  20:17 22:12 24:6
  31:21 32:6,9,9
  34:15,19 35:13
  37:12 39:1,10
  40:7 42:9 44:9,15
  44:24 45:20 46:16
  46:16,17 47:17
  50:13,17
**sorting** 17:24
**sorts** 44:25
**sounds** 11:3 50:10
**sources** 36:24
  37:2,8,16 41:11

  41:12 42:4,9 43:4
  43:8
**southern** 1:2
**space** 4:18
**spared** 38:11
**speak** 9:21
**speaking** 48:11
  50:18
**special** 4:23 5:6
  7:23 13:18,23,24
  15:15,17,22,25
  16:14 17:10,12,19
  17:21 18:10,16
  19:17 20:12,19,20
  20:23 21:12 22:22
  23:2,6,9 25:10,15
  25:23 26:23 27:14
  27:15 28:10 29:12
  30:14,20 31:20
  41:21 42:17 43:19
  48:20
**specific** 40:4
**speed** 30:22 31:4
  48:12,16
**spend** 21:13
**spending** 11:7
  46:14
**spent** 5:6 28:24
**split** 25:10
**splitting** 25:6
**spreadsheet** 17:14
**sprung** 10:11
**stage** 11:3
**stages** 36:3
**stalking** 15:9
**stand** 31:16,22
  32:7
**standard** 31:22
  40:8
**standstill** 33:15
**start** 22:1
**starting** 4:4 15:6

[state - timing]

state 39:22
states 1:1 49:25
status 2:1 34:10
43:14 47:25
statute 7:13
stay 47:17 48:23
50:1,3
steen 3:18
steeped 6:8 23:24
44:21,22
step 21:10 35:4
steps 35:3
steven 4:10
str 24:19
straightened 4:22
straightforward
8:5
street 50:22 51:2
strong 18:20
subject 7:24 14:13
19:13 30:22
submissions 32:11
submit 32:2
submitted 39:5
suddenly 16:5
19:17
sufficient 19:17
suggest 11:9
41:21
suggested 9:8
suggesting 24:22
suggestion 12:2
suggestions 5:13
suitable 31:11,12
suite 3:5 53:23
supervise 4:24
support 21:20
supporting 16:16
suppose 5:21
20:22
supposed 5:12
30:11

sure 4:21 9:8
10:11 12:3 13:21
25:12 30:20 31:9
31:12 35:7,17
36:12 41:7,13
42:3,11 44:18
45:9 48:7
surface 41:14
surprised 4:18
suspense 20:5,6
sustained 25:19
sustaining 25:19
sympathize 28:21

t

t 53:1,1
take 12:3 20:13
22:10 30:8 34:7
38:8 50:2
talk 6:24 8:19
9:10,24 10:12,23
11:12,14,15 31:24
talking 6:7 20:7
23:18 29:16
target 36:18 42:1
technical 36:7
tee 12:14 20:20
28:5
teed 22:20 27:7
tell 10:1 13:19
31:7
tells 34:1
tend 6:17
term 45:12
terms 10:13 15:24
16:13 17:17 19:3
19:13,22 23:18
25:14,18,23,24,25
26:2,4,6 29:5
32:22 34:5 40:19
44:1,1,7,12 45:23
46:3 48:21 51:14
terrible 10:5

testify 47:24
texting 21:11
thank 4:12 9:2
13:9,10 28:19
38:10 39:14 43:12
45:17 48:15 52:4
52:10,11
theme 15:2 17:6
theoretical 46:15
thing 6:10 16:13
21:25 25:11 26:8
29:15,22 32:13
43:19,20,25 44:16
things 4:21 5:19
6:17,19 7:6 9:11
9:15 10:8,21
11:25 12:14,16
13:4 15:16,17
17:6 18:3,8 19:4
20:8,8,16 22:6
23:16 24:7,21
26:3,4,8 27:2,21
28:2,24,25 29:19
29:20 30:11,20,23
32:7,16 34:20,22
37:11,13 38:6,12
41:16 44:8,15,20
44:25 45:2 46:11
46:15,24 47:16
50:14 52:1
think 4:10 5:4,11
6:22 7:6,22 8:3,5
9:7,21 10:7,12,15
10:22,24 11:7,17
11:23 12:4,8,11
13:2 14:3,22
17:23 18:21 19:8
21:17,22,24 22:8
22:21 24:3,17,24
25:1,5,6,14 26:5
26:11,12,14,19
27:4,16,19 28:6,6
28:18,20 29:6,18

29:19,20 30:5,13
31:11,15,17 32:15
34:12,12 35:2
37:12 38:16,20
39:8,10,11,12
40:11 42:5,12
43:18,19 44:14,18
44:23 45:1,8,19
45:21,24 46:19,24
48:10,20,24 49:3
49:20,22 50:25
51:24 52:1,7
thinking 11:4
13:2 26:16 27:1
third 8:3 19:6,7
24:12 36:22 39:15
40:25
thought 7:1 9:13
11:13,24 20:18
24:11 26:10 41:18
41:19 49:6
thoughts 5:20
11:20 32:17
thousand 34:2,18
35:8
three 4:25 16:19
33:25 41:9
throw 7:2,11,18
11:23 45:13
throwing 45:8
thursday 13:22
time 6:1 8:3,12
10:7 11:7 15:9
16:18 21:13 22:6
24:5,15 25:3 33:9
34:6 40:3 43:24
46:15 49:3
timeline 37:9
42:25
timely 8:7
times 8:1 27:24
timing 19:2 49:20

**title** 14:1 28:11
**today** 4:7 5:24
  8:22 9:10,16
  11:12 16:9 24:20
  32:21 41:5 46:21
**today's** 4:19
**told** 34:17 35:2
  50:18
**tomorrow** 24:20
**toolbox** 7:6
**totally** 9:13 30:6
**touch** 52:3
**track** 18:13
**transcribed** 2:25
**transcript** 51:6
  53:4
**transferred** 18:2
**transparency**
  44:2
**treat** 39:2,3,12
**tricky** 44:2
**tried** 46:7
**trip** 47:17
**trouble** 30:7
**true** 53:4
**truth** 38:17
**try** 7:6 8:8 17:7
  28:1,22 44:17
  45:15
**trying** 18:7 22:5,9
  31:16,16 34:10,13
  40:2 44:22
**tuesday** 48:9
**turn** 32:21 33:5
**tweaked** 39:24
**twelve** 36:16
**twenties** 34:16
**twenty** 34:16,18
**two** 4:25 5:3 16:9
  22:1 34:8 45:13
  47:2 50:18
**type** 34:3

**u**

**u.s.** 1:14,23
**ultimate** 21:21
**ultimately** 10:8
  12:23 14:6 16:20
**umbrella** 15:22
  26:18 27:2,17
**unclear** 9:16
**uncomfortable**
  33:7
**uncovered** 41:23
**underestimated**
  34:6
**underlying** 50:21
  51:2
**understand** 11:11
  28:4 34:19 37:21
  38:6,9 39:18 41:3
  49:2,19
**understanding**
  9:18 38:24 42:2
  43:5 50:17
**understood** 5:12
**united** 1:1 49:25
**universe** 37:4,15
  41:13 42:20,24
  43:1
**unknown** 33:12
  33:12
**unnecessary** 18:8
**untenable** 30:7
**update** 17:25
**updated** 47:17
**updates** 34:9
**use** 24:21
**useful** 47:3 52:2
**utility** 29:21
**utter** 6:21

**v**

**vale** 3:19 4:14
  15:16,25 17:10
  18:9 27:10 33:16
  35:11 37:12

**vale's** 14:15 38:3
  49:17
**variations** 5:25
**various** 29:3 34:9
  36:3 43:4
**venue** 49:21
**verbal** 32:18
**veritext** 53:21
**versus** 21:9 22:16
  45:12
**view** 12:15 22:4,5
**views** 30:1
**volume** 40:19,22
**voluntary** 33:15

**w**

**wait** 19:9
**waiting** 33:4
**want** 9:24 10:10
  11:1,5 14:20 15:3
  15:25 18:15 20:2
  20:13,14 21:7,24
  24:7 27:9,10 28:5
  29:5,15 32:8,9,12
  41:16 44:18 46:11
  46:22,22 48:13
**wanted** 16:2 21:9
  26:16
**wants** 8:21 47:15
  51:15
**waters** 48:25
**way** 4:5 5:11,19
  6:18 11:22 12:13
  14:4 21:22 22:13
  22:15,21 24:4
  25:14,21 26:17
  29:21 31:4 39:2
  45:1 47:14 52:5
**ways** 20:1 22:1
  31:15 44:13,23
  45:8,15
**we've** 7:20 18:22
  19:4,12 24:25
  26:21 27:20 29:2

33:20,20 36:14
  37:1,10 38:12,15
  38:17,22 42:8,10
  42:12 44:18
**weeds** 9:6
**week** 22:2 24:20
  49:17
**weekend** 9:19
**weeks** 33:25 36:16
  46:25 47:2 48:10
**weigh** 51:21
**welcome** 9:3
**whack** 26:4
**whoever's** 32:16
  39:8
**william** 1:7 2:25
  53:3,11
**willing** 24:19 30:8
**wilmington** 3:6
**wisdom** 20:23
  42:11
**withhold** 49:7
**wonder** 23:12
**wondering** 20:18
  34:21
**word** 48:21 50:2
**work** 9:10 10:14
  10:24 11:18 18:25
  21:10 30:15 31:3
  32:1,2 47:5 52:5
**working** 4:4 7:3
  28:24 29:3 42:15
**works** 21:4 47:4
**worth** 12:1
**worthwhile** 31:2
**worthy** 20:6
**wound** 5:8
**write** 6:21
**written** 32:11
**wrong** 13:21
  29:19

**[x - zero]**

| x |
|---|
| **x**   1:3,12 |

| y |
|---|
| **yap**   43:25 |
| **yeah**   8:8,20 9:23 |
|    14:5 15:5 17:3 |
|    18:1,21 19:21,24 |
|    21:14 24:17 25:5 |
|    27:4 30:3 35:20 |
|    40:21 |
| **year**   47:1 |
| **yield**   44:11,12 |
|    45:12 |
| **york**   1:2,16,16 |
|    3:14,21 |

| z |
|---|
| **zero**   34:21 |