UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BSG RESOURCES (GUINEA) LIMITED, BSG
RESOURCES (GUINEA) SÀRL, and BSG
RESOURCES LIMITED,

        Plaintiffs,

    v.

GEORGE SOROS, OPEN SOCIETY FOUNDATIONS,
OPEN SOCIETY INSTITUTE, FOUNDATION TO
PROMOTE OPEN SOCIETY, OPEN SOCIETY
FOUNDATION, INC., ALLIANCE FOR OPEN
SOCIETY INTERNATIONAL INC., OPEN SOCIETY
POLICY CENTER, and OPEN SOCIETY FUND,

        Defendants.

**No. 1:17-cv-02726 (JFK) (OTW)**

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL THE DEPOSITIONS OF BENJAMIN (BENY) STEINMETZ AND DAG LARS CRAMER

Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000 (telephone)

1875 K Street, NW
Washington, DC 20006
(202) 303-1000 (telephone)

*Attorneys for Defendants*

## TABLE OF CONTENTS

STATUS OF PROCEEDINGS ................................................................................................ 1

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 3

      A.    Mr. Steinmetz is the Namesake and Beneficial Owner of Plaintiffs. .................... 3

      B.    Mr. Steinmetz Actively Controls Plaintiffs. ........................................................ 4

      C.    Multiple Courts Have Found That Mr. Steinmetz Acts On Behalf Of Plaintiffs. .. 6

      D.    Plaintiffs Have Repeatedly Admitted that Mr. Cramer is an Officer and/or Director of BSGRL. ........................................................................................... 8

      E.    Plaintiffs Refuse to Make Mr. Steinmetz and Mr. Cramer Available for Deposition. ...................................................................................................... 10

ARGUMENT ........................................................................................................................ 12

   I.    Messrs. Steinmetz and Cramer Are Subject to Deposition Under Rule 30(b)(1). ........... 12

      A.    Legal Standard .................................................................................................. 12

      B.    Mr. Steinmetz Is, At Least, a Managing Agent of BSGRL. ................................ 13

      C.    Mr. Cramer Is Subject To Deposition Under Rule 30(b)(1). ............................... 16

  II.    Mr. Steinmetz and Mr. Cramer Should be Compelled to Sit for a Deposition in New York. ..................................................................................................................... 18

CONCLUSION ..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dubai Islamic Bank v. Citibank, N.A.*,
No. 99-cv-1930, 2002 WL 1159699 (S.D.N.Y. May 31, 2002) ..................................... *passim*

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*,
54 F.R.D. 280 (S.D.N.Y. 1971) ...........................................................................................19

*Noval Williams Films LLC v. Branca*,
No. 14-cv-4711, 2018 WL 389092 (S.D.N.Y. Jan. 11, 2018) .................................11

*RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.*,
No. 14-cv-6294, 2015 WL 4865693 (S.D.N.Y. Aug. 13, 2015)............................13

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
343 F. Supp. 2d 208 (S.D.N.Y. 2004)..................................................................................17

*Sugarhill Recs. Ltd. v. Motown Rec. Corp.*,
105 F.R.D. 166 (S.D.N.Y. 1985) .........................................................................................13

*United States v. Afram Lines (USA), Ltd.*,
159 F.R.D. 408 (S.D.N.Y. 1994) .........................................................................................13

*Vale S.A. v. BSG Resources Limited*,
No. 1:19-cv-03619 (S.D.N.Y.)...............................................................................................7

**Other Authorities**

Fed. Prac. & Proc. Civ. § 2103 ....................................................................................................12

Fed. R. Civ. P. 30(b)(1)........................................................................................................ *passim*

Fed. R. Civ. P. 37(d)(1)(A)(i) ...................................................................................................16

Fed. R. Evid. 804(b)(1).................................................................................................................11

Defendants respectfully submit this Memorandum of Law in Support of Defendants'
Motion to Compel the Depositions of Benjamin (Beny) Steinmetz and Dag Lars Cramer pursuant
to Federal Rules of Civil Procedure 37 and 30.

## STATUS OF PROCEEDINGS

On April 22, 2021, the Court granted Defendants' request to file this motion to compel
after the parties' meet and confer efforts failed to resolve the dispute over whether Plaintiffs are
obligated to make Beny Steinmetz and Dag Cramer available for a deposition.  (ECF No. 219.)
On May 5, 2021, two days before this motion was due, Plaintiffs informed Defendants that
Mr. Steinmetz and Mr. Cramer "are agreeable and intend voluntarily to be deposed *in their
individual capacity*," but that "the witnesses do not speak for or bind BSGR" and that "they are
not under Plaintiffs' control."  (Ex. A (emphasis added).)  Although they have indicated they are
currently "agreeable" and "intend" to be deposed, absent a court order, Defendants have no
mechanism to compel their attendance or to seek relief in the event that Mr. Steinmetz or
Mr. Cramer were to change their minds.  Moreover, the proposed agreement is contingent on the
depositions occurring remotely or in-person outside of the United States because, according to
Plaintiffs, "they are outside of the jurisdiction of the Court" and not represented by Plaintiffs'
counsel.  (*Id.*)  Given these limitations, Defendants move to compel Plaintiffs to produce Mr.
Steinmetz and Mr. Cramer in New York as directors, officers and/or managing agents of
Plaintiffs pursuant to Federal Rule of Civil Procedure 30(b)(1).

## PRELIMINARY STATEMENT

Mr. Steinmetz – Plaintiffs' namesake, founder, principal and ultimate beneficiary – is
clearly a managing agent of Plaintiffs.  While Plaintiffs prefer to describe him as a mere
"advisor" to Plaintiffs, Mr. Steinmetz's statements and conduct show that Plaintiffs and
Mr. Steinmetz are one and the same.  Mr. Steinmetz has directed – and, after appointment of the

1

Joint Administrators, at least in certain respects has continued to direct, the business of Plaintiffs for his own financial benefit, including by negotiating significant agreements on their behalf. Among other things, Mr. Steinmetz has reportedly negotiated the settlement-in-principle between Plaintiffs and Guinea to resolve the pending arbitration before the International Centre for Settlement of Investment Disputes (the "ICSID Arbitration").  Moreover, under the terms of that in-principle deal, Plaintiffs would relinquish all of their mining rights in Guinea, while Mr. Steinmetz, with a new group of investors, would retain and develop one of the concessions – the Zogota deposit.  Speaking to Bloomberg regarding the settlement of the ICSID Arbitration, Mr. Steinmetz made clear that there was no distinction between himself and BSGR when it comes to their relationship with Guinea:  "We were enemies. Now we are friends and partners with the Guinean government."  Mr. Steinmetz was also integral to Plaintiffs' scheme to bribe Mamadie Touré in Guinea – as two courts have already found – and Plaintiffs have represented that no current employees or directors have knowledge of the subjects of discovery in this case. As such, he is a critical witness regarding the issues Judge Keenan has ordered for discovery in this case.

Mr. Cramer's status as an officer and director of Plaintiffs is equally clear.  Indeed, Plaintiffs have already admitted to his status as at least an officer of BSG Resources Limited ("BSGRL").  Nevertheless, Plaintiffs have taken the extraordinary position that this Court cannot require them to produce Mr. Cramer because (i) "[he] has no authority, power or control to do anything" while BSGRL is in administration and (ii) the Guernsey-appointed Joint Administrators purportedly have "no control over him."  Neither of these arguments have any bearing on Plaintiffs' obligation to produce Mr. Cramer.  Plaintiffs have purposefully availed themselves of the jurisdiction of this Court to bring claims seeking billions of dollars.  Under the

Federal Rules, Plaintiffs are required to make Mr. Cramer available, regardless of his level of authority under Guernsey law.

Even though Defendants have not had the benefit of discovery regarding the relationship of Mr. Steinmetz or Mr. Cramer to the BSGR entities that are Plaintiffs in this action, the publicly available facts set forth below demonstrate that each is obligated to appear for a deposition under the Federal Rules. Accordingly, this Court should grant Defendants' motion to compel Mr. Steinmetz and Mr. Cramer to appear for depositions in New York, subject to government-issued travel restrictions in light of the COVID-19 pandemic.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Mr. Steinmetz is the Namesake and Beneficial Owner of Plaintiffs.

Mr. Steinmetz is the namesake and ultimate beneficial owner of BSGRL (which is the parent company of the two other Plaintiffs in this action). (*See* ECF No. 172-2 (LCIA Award) ¶ 175.) BSGRL is wholly owned by Nysco Management Corp. ("Nysco"), a British Virgin Islands company, which is in turn wholly owned by the Balda Foundation ("Balda"), a trust established in the Principality of Liechtenstein. (*Id.*) Mr. Steinmetz and his family are the sole beneficiaries of Balda whose board is chaired by Mr. Steinmetz's personal lawyer, Marc Bonnant. (Ex. B (Paula Dupraz-Dobias, *How a Mining Corruption Trial Could Be a Turning Point for Dodgy Offshore Companies*, SWI, Jan. 26, 2021).) This type of foundation is expressly designed to allow the founder to retain the benefit of and the effective control over his assets, while purporting to shield the assets from creditors. (Ex. C (Marxer & Partner Rechtsanwälte, The Liechtenstein Foundation at 5 (2010).)

Mr. Steinmetz has not only given his name to BSGRL, but has also repeatedly referred to the actions of BSGRL in the first person in public statements. (*See, e.g.*, Ex. D (Patrick Radden Keefe, *Buried Secrets*, The New Yorker, July 7, 2013 ("We are the victims. . . . We have done

3

only good things for Guinea, and what we're getting is spit in the face.")); Ex. E (Franz Wild and

Thomas Biesheuvel, *Steinmetz Stages Guinea Comeback in Sarkozy-Brokered Deal*, Bloomberg,

Feb. 25, 2019 ("We were enemies. Now we are friends and partners with the Guinean

government")).)

  **B.**  **Mr. Steinmetz Actively Controls Plaintiffs.**

  Prior to the commencement of the administration in Guernsey, Mr. Steinmetz repeatedly

acted on Plaintiffs' behalf, using Balda to control Plaintiffs' decision-making, and playing a

direct role in their business operations.  For example, Mr. Steinmetz was involved in Plaintiffs'

negotiations to obtain their mining rights in Guinea and – as the London High Court of

Arbitration ("LCIA") tribunal and a Swiss court found – Plaintiffs' bribery scheme.  (*See* ECF

No. 172-2 (LCIA Award) ¶¶ 233, 236, 239, 241; *see also* ECF No. 192 (describing

Mr. Steinmetz's conviction in Switzerland in connection with the bribery of Mamadie Touré).)

  Similarly, Mr. Steinmetz was extensively involved in negotiating BSGRL's joint venture

agreement with Vale S.A. ("Vale") to develop the Simandou mining concession in Guinea.

(Ex. F (Steinmetz Second Witness Statement in ICSID, Jan. 10, 2017) ¶ 36 ("[n]egotiating and

getting deals done is one of the areas where I am able to provide real value for the BSG group

and I accordingly played a role in these negotiations with Vale.").  Mr. Steinmetz personally

represented and warranted to Vale on multiple occasions that BSGRL had lawfully obtained its

mining rights in Guinea, even taking the extraordinary step of providing a personal anti-bribery

certification to Vale prior to the deal's closing.  (Ex. G (Anti-Bribery Certification of Beny

Steinmetz, Apr. 9, 2010).)  In light of these facts, the LCIA tribunal found that Mr. Steinmetz

was not, as he represented, merely an "external advisor" to BSGR, but was instead a "senior

member[] of BSGR's management."  (ECF No. 172-2 (LCIA Award) ¶¶ 700, 712.)  Indeed, in

testimony to Swiss prosecutors in 2013, Mr. Steinmetz admitted that he "control[s] at least

partially," the "Beny Steinmetz Group (BSG) and Onyx Financial Advisors SA," BSGRL's financial management company.  (Ex. H (Procès-verbal of B. Steinmetz, Oct. 18, 2013).)

Mr. Steinmetz has continued to act on behalf of and control BSGRL even after BSGRL entered administration in Guinea.  When the former joint administrators were appointed, Nysco, which is controlled by Mr. Steinmetz through Balda, was the sole source of funding for the former joint administrators.  (*See* Ex. I (Funding Agreement, Dec. 18, 2018).)  Pursuant to a funding agreement, Nysco (and Mr. Steinmetz) maintained significant control over the former joint administrators by requiring detailed budgets and drawdown requests that had to be approved by Nysco.  (*Id.*)

Most notably, Mr. Steinmetz negotiated a settlement in principle on behalf of Plaintiffs with the government of Guinea for resolution of the ICSID Arbitration, from which he personally benefited.  (Ex. J (*When Nicolas Sarkozv Plays a Business Intermediary*, Le Monde, Aug. 23, 2019 (quoting President Condé stating "For several months, Beny Steinmetz insisted I settle the dispute").)  Following the deal, "BSGR relinquishe[d] its claims on blocks 1 and 2 of SIMANDOU and both parties waive[d] all outstanding procedures" and "a new group of investors (presented by and including Mr. Beny Steinmetz) will exploit the ZOGOTA deposit, in order to export iron ore, according to an accelerated timetable."  (Ex. K (BSGRL Press Release, Feb. 25, 2019).)  Although the agreement has not been finalized or approved by the Joint Administrators, the Guinean government nevertheless auctioned the rights to Simandou Blocks 1 and 2 to a new consortium of companies.  (Ex. L (Saliou Samb, *China-backed Consortium Wins $14 Billion Guinea Iron Ore Deal, Pipping Australia's Fortescue*, Reuters, Nov. 13, 2019).)

Mr. Steinmetz also appears to be connected to Litigation Solutions Limited ("LSL"), the entity that has reportedly funded this litigation.[1]  (*See* Ex. M (Decl. of Malcolm Cohen, June 3, 2019) ¶ 31 ("Without the proceeds from LSL, the Debtor would not have the resources to fund the costs necessary to pursue the Soros Claim.").)  Although Defendants do not know the source of LSL's funds or interest in this litigation, there are a limited number of individuals or entities who stand to benefit from this litigation, and Mr. Steinmetz is one of them.  LSL has no record as a litigation funder or online presence.  But it does share two directors with a company called Star West Investments Limited, which happens to be one of BSGRL's secured creditors, (Ex. N (Joint Administrators' Second Progress Report) § 6.3), and which shares directors with other companies associated with Mr. Steinmetz.  (Ex. O (Bermuda Registrar of Companies, LSL); Ex. P (Bermuda Registrar of Companies, Star West Investments Ltd.).)[2]

### C.     Multiple Courts Have Found That Mr. Steinmetz Acts On Behalf Of Plaintiffs.

In the LCIA arbitration, the tribunal considered whether BSGRL should be held liable for statements made by Mr. Steinmetz, who BSGRL alleged was a mere "external advisor" to BSGRL and Balda.  (ECF No. 172-2 (LCIA Award) ¶ 698.)  Although BSGRL maintained that his statements were true, it also argued that it "could not be 'vicariously liable for statements made by external advisors.'"  (*Id.*)  The tribunal concluded that Mr. Steinmetz was a "senior

---

[1]   Although Plaintiffs have told the Court that there have been "certain issues" "concerning the financing of this litigation" (ECF No. 165), the Declaration of Carl Bowles (ECF No. 236) filed with the Court, suggests that until very recently, LSL continued to fund this case.

[2]   Nicholas John Hoskins is a director at Americano Nickel Ltd., Maxwell L.H. Quinn is a director at Americano Nickel Finance Ltd., and Jozef C. Hendricks is a director at both Americano Nickel Ltd. and Global Special Opportunities Limited ("GSOL")  (*See* Ex. Q (Bermuda Registrar of Companies, Americano Nickel Ltd.); Ex. R (Bermuda Registrar of Companies, Americano Nickel Finance Ltd.).)  GSOL is the parent company of Niron Metals plc ("Niron") and the Americano Nickel entities are its subsidiaries.  (*See* Ex. S (*Mick Davis and the Team Ready to Take on Beny Steinmetz's Former Iron Ore Assets*, Africa Intelligence, May 3, 2019).)  Niron is part of a group of investors who, along with Mr. Steinmetz, were granted rights to a mine concession – the Zogota deposit – previously owned by Plaintiffs.  (*Id.*)

member[] of BSGR's management" and that "there is no realistic possibility that those making representations on behalf of BSGR were not aware of all relevant facts."  (*Id.* ¶ 712.)

Issues related to BSGRL's control over Mr. Steinmetz have also arisen in BSGRL's Chapter 15 proceeding in the Bankruptcy Court for the Southern District of New York, pending before the Honorable Sean H. Lane.  In that proceeding, Vale sought an order compelling the former joint administrators to produce documents within the possession, custody, or control of Mr. Steinmetz, which the former joint administrators opposed.  (Ex. T (Chapter 15 Discovery Order, Oct. 21, 2019).)  Judge Lane agreed with Vale, holding that "the Joint Administrators have the 'practical ability' to produce such documents" and made the following factual findings: (i) "Beny Steinmetz holds a financial interest in BSGR;" (ii) "Beny Steinmetz has acted on behalf of BSGR and continues to hold himself out as BSGR in connection with settlement negotiations with the Government of Guinea;" and (iii) "Beny Steinmetz has voluntarily participated in discovery on behalf of BSGR in the past."  (*Id.*; *see also* ECF No. 213-7 (Oct. 3, 2019 Hr'g Tr. at 14:3-11) ("I've yet to hear any dispute of the core facts about him [Steinmetz] being the guy, for lack of a more legal term. And [the Joint Administrators] were appointed and that's nice, but they don't control him, pretty clearly if the allegations in the factual proffers that have been given to me, are evidence in terms of what he's doing or not doing on behalf of BSG, which is, after all, named for him.").).[3]

---

[3]   A similar question is also currently being considered by the Honorable Vernon S. Broderick in *Vale S.A. v. BSG Resources Limited*, No. 1:19-cv-03619 (S.D.N.Y.).  After receiving a judgment by the LCIA tribunal against BSGRL, on April 24, 2019, Vale filed a petition for recognition and enforcement of the arbitration award in the District Court for the Southern District of New York.  On March 5, 2020, Judge Broderick enforced Vale's arbitration award and entered judgment against BSGR in excess of $2 billion. Thereafter, on March 31, 2020, Vale served discovery requests on Mr. Steinmetz in connection with its enforcement proceedings.  (Ex. U (Letter from Vale to Judge Broderick, dated Dec. 8, 2021, Endorsed on Apr. 29, 2021).)  Mr. Steinmetz has refused to respond to Vale's requests and, on December 8, 2020, Vale sought an order either compelling Mr. Steinmetz to respond or granting Vale leave to submit supplemental briefing on why it is entitled to discovery from Mr. Steinmetz as an alter ego of BSGRL.  (*Id.*)  On April 29, 2021, Judge Broderick directed Vale to provide supplemental briefing by May 14, 2021.  (*Id.*)

Most recently, on January 22, 2021, Mr. Steinmetz was convicted of bribery of foreign public officials and forgery of documents in connection with the bribery scheme in Guinea.  (*See* ECF No. 192.)  Specifically, Mr. Steinmetz was indicted on the grounds that, between 2005 and 2010, he paid, or caused to be paid, approximately $10 million in bribes to Mamadie Touré, one of the wives of former Guinean president Lansana Conté, to obtain Plaintiffs' mining rights in Guinea.  (*Id.*)  Prosecutors had alleged that as a result of the bribery scheme perpetrated by Mr. Steinmetz and his two co-defendants, mining rights to Simandou Blocks 1 and 2 were revoked from Rio Tinto in December 2008 and granted to Plaintiffs instead.  (Ex. V (*Swiss Court Jails Israeli Diamond Magnate for 5 Years for Corruption*, Times of Israel, Jan. 22, 2021).)  It has been reported that the Swiss court held that "[i]t is clear from what has been presented...that the [mining] rights were obtained through corruption and that Steinmetz cooperated with others" to obtain those mining rights.  (*Id.*)[4]  Further, public reports indicate the Swiss court found that Mr. Steinmetz was "the main beneficiary of the crime," (*see id.*), "the effective head of the [BSGR] group," (Ex. W (Stephanie Nebehay, *Swiss Court Finds Israeli Businessman Beny Steinmetz Guilty of Corruption*, Reuters, Jan. 22, 2021)) and that "Steinmetz had his hand on the payments and was able to oversee the bribery process."  (Ex. X (Hugo Miller, *Steinmetz Sentenced to 5 Years in Jail in Swiss Bribery Case*, Bloomberg, Jan. 22, 2021).)

### D.  Plaintiffs Have Repeatedly Admitted that Mr. Cramer is an Officer and/or Director of BSGRL.

Mr. Cramer joined the BSG group in September 2003 at which time his "main role was to be responsible for the investment activity of the BSG group, including all trading, liquid instruments and financial markets activity."  (Ex. Y (Cramer First Witness Statement in ICSID,

---

[4]   Defendants have attempted to obtain a copy of the Swiss court's written judgment, but, to Defendants' knowledge, it is not publicly available.

Feb. 29, 2016) ¶ 6.)  This business was consolidated into BSG Capital Markets, and Mr. Cramer was appointed its CEO.  (*Id.*)  Since then, his "role has developed into more of a CEO role for the BSG group generally."  (*Id.* ¶ 9.)  Beginning on May 20, 2005, Mr. Cramer also served as director and Chief Executive Officer of Onyx.  (Ex. Y (Cramer First Witness Statement in ICSID, Feb. 29, 2016) ¶ 1.)  Onyx was initially incorporated as BSG Management Services (London) (Ex. Z (Special Resolution on Name Change, Feb. 22, 2011)), and provided management services and financial advice to Plaintiffs from its inception.  (Ex. Y (Cramer First Witness Statement in ICSID Feb. 29, 2016) ¶ 1.)

Mr. Cramer has also served as a director of BSGRL since at least November 2008 and, to Defendants' knowledge, remains a director today.  (*See* Ex. AA (BSGRL Statement of the Register, Guernsey Registry, Feb. 26, 2018) at 2).); Ex. BB (June 18, 2020 Tr. of Dep. of Peter Driver at 114:12-115:1) (describing Cramer as a "non-executive director")).)  Indeed, after BSGRL filed for administration in Guernsey, Mr. Cramer told Reuters that he "would be staying on as director" and that this "technical procedure would not affect daily operations of subsidiaries." (Ex. CC (Barbara Lewis, *Administrators Seek to Return Steinmetz's Mining Firm BSGR to Solvency*, Reuters, Mar. 8, 2018)).)  Moreover, Plaintiffs have repeatedly admitted that Mr. Cramer is a director, officer, and/or agent of BSGRL.  (*See, e.g.*, Am. Compl. ¶ 137 (describing Mr. Cramer as "an agent of BSGR"); Ex. DD (Letter from the Joint Administrators to Judge Lane, dated Nov. 9, 2020) (acknowledging Mr. Cramer is "a BSGR officer and director").)  Most notably, in the same email to Defendants where Plaintiffs state their refusal to produce Mr. Cramer, they also admit that Mr. Cramer is an officer of BSGRL.  (Ex. EE.)

This is not the first time that Mr. Cramer has resisted his discovery obligations as a director or officer of BSGRL.  In response to Part 71 proceedings in England commenced by

Vale – whereby a judgment creditor is entitled to receive documents from and examine a representative of the debtor – Mr. Cramer spent more than £254,465 attempting to avoid an order requiring he be deposed in his capacity as an officer of BSGRL by Vale.  (Ex. FF (English Court Judgment) ¶ 63.)  On July 3, 2020, the English court denied Mr. Cramer's attempts to avoid the deposition, describing it as "a routine procedure which [Vale] was entitled to follow and to which he could not reasonably object."  (*Id.*)  The court further described the arguments advanced by Mr. Cramer as "all bad" and the language used in his correspondence and submissions as "inappropriate."  (*Id.*)

Relatedly, in 2019, Vale noticed the deposition of Mr. Cramer in BSGRL's Chapter 15 proceedings, and the former joint administrators represented that Mr. Cramer would be made available.  (Ex. GG (Letter from Vale to Judge Lane, Sept. 2, 2020).)  However, in August 2020, Mr. Cramer apparently rescinded his agreement to appear.  (*Id.*)  Soon after, the former joint administrators were replaced by the Guernsey court and the issue was not resolved by Judge Lane.

> **E.    Plaintiffs Refuse to Make Mr. Steinmetz and Mr. Cramer Available for Deposition.**

On June 26, 2017, Plaintiffs served their first set of initial disclosures in this action. (Ex. HH.)  Plaintiffs only identified two individuals affiliated with Plaintiffs who had relevant knowledge of this matter – Mr. Steinmetz and Mr. Cramer – and Plaintiffs directed Defendants to contact both of them through Plaintiffs' counsel.  (*Id.*)

After Judge Keenan partially lifted the stay in this action, the parties exchanged supplemental initial disclosures on February 22, 2021.  This time, Plaintiffs' disclosures identified thirteen individuals who are or were affiliated with Plaintiffs, including Mr. Steinmetz

and Mr. Cramer.[5]  (Ex. II.)  Plaintiffs claimed that they did not control any of those individuals, and for ten of them did not even provide last known contact information.  For Mr. Steinmetz, Plaintiffs claimed that he should be contacted through his personal counsel in Israel.  For Mr. Cramer, Plaintiffs claimed that he could be contacted through the Joint Administrators.  The Joint Administrators had previously made an appearance in this action through their counsel at Katten Muchin Rosenman LLP ("Katten").

On February 23, 2021, Defendants asked Plaintiffs whether Mr. Steinmetz would make himself available for a deposition in this case.  (Ex. JJ.)  Plaintiffs responded that they "do not represent Beny Steinmetz and cannot answer for him."  (*Id.*)  On February 28, 2021, Defendants explained their position that, because Mr. Steinmetz is, at least, a managing agent of Plaintiffs, Plaintiffs are obligated to make him available for deposition under Federal Rule of Civil Procedure 30(b)(1).  (*Id.*)

Given that Plaintiffs had indicated Mr. Cramer should be contacted through the Joint Administrators, on February 26, 2021, Defendants contacted their counsel at Katten to inquire whether Mr. Cramer would make himself available for a deposition.  (Ex. KK.)  Katten, in turn, referred Defendants back to Plaintiffs' counsel at Reed Smith, who then demanded that all future correspondence regarding Mr. Cramer include them, despite having served supplemental

---

[5]    Each of these thirteen individuals submitted witness statements in support of Plaintiffs in the ICSID and LCIA proceedings.  Plaintiffs' sought to rely on three of them in opposing Defendants' motion to dismiss, including one by Mr. Steinmetz, which they offered to Judge Keenan in their "partial offer of proof."  (*See* ECF No. 187 ¶ 10.)  Yet, Plaintiffs claim not to have last known contact information for ten of these witnesses.  Defendants have asked Plaintiffs whether they intend to submit declarations by any of these individuals in opposing Defendants' motion for summary judgment.  Plaintiffs have refused to take a position on whether they will do so.  The prior witness statements are inadmissible hearsay because Defendants had no opportunity to cross-examine the witnesses.  Fed. R. Evid. 804(b)(1) (former testimony is admissible only when it "is now offered against a party who had . . . an opportunity and similar move to develop it by direct, cross-, or redirect examination").  If Plaintiffs intend to submit new declarations from these witnesses in this action, they should tell Defendants of their intention to do so promptly, and need to make the witnesses available for deposition. *See Noval Williams Films LLC v. Branca*, No. 14-cv-4711, 2018 WL 389092, at *3 (S.D.N.Y. Jan. 11, 2018) (striking witness affidavit where the party "treated discovery like a game of hide and seek" and continually failed to produce the affiant for deposition).

disclosures only days before stating they do not represent Mr. Cramer and directing Defendants to contact him through the Joint Administrators.  (*Id.*)  After Defendants requested that *someone* tell them whether Mr. Cramer would be made available for deposition, Plaintiffs took the position that the issue of depositions was "not ripe for discussion," "hypothetical," and "clearly premature," apparently because the Court had not specifically ordered a deadline for depositions. (*Id.*)  Plaintiffs subsequently stated that they were "investigating" Mr. Cramer's "status," (*id.*) and on March 24, 2021, stated that "technically, Mr. Cramer is registered as an officer of BSGR in administration."  (Ex. EE.)  But, under Guernsey law, since the company is in administration, Mr. Cramer has no authority, power or control to do anything and the administrators have no control over him."  (*Id.*)  Thereafter the issue was raised with this Court, which, on April 22, 2021, directed Defendants to file this motion on May 7, 2021.

## ARGUMENT

I.     **Messrs. Steinmetz and Cramer Are Subject to Deposition Under Rule 30(b)(1).**

     A.     **Legal Standard**

Rule 30(b)(1) of the Federal Rules of Civil Procedure permits the deposition on mere notice of a specific officer, director, or managing agent of a corporate party.  *See Dubai Islamic Bank v. Citibank, N.A.*, No. 99-cv-1930, 2002 WL 1159699, at *2 (S.D.N.Y. May 31, 2002). While an individual's status as an officer or director is "not difficult" to determine, the term "managing agent has required definition."  Fed. Prac. & Proc. Civ. § 2103.  The test for determining whether an individual qualifies as a "managing agent" is "not formulaic" and "is answered pragmatically on a fact specific basis."  *Dubai Islamic Bank*, 2002 WL 1159699 at *2 (internal quotations and citations omitted).  The term "managing agent" should "not be given too literal an interpretation, and as in all matters appertaining to discovery, it is the ends of justice that are to be served."  *Id.* (internal quotations and citations omitted).

With these principles in mind, courts in this district have generally considered five factors in determining whether an individual is a managing agent:

> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation.

*Id.* at *3; *see also RCA Trademark Mgmt. S.A.S. v. Voxx Int'l Corp.*, No. 14-cv-6294, 2015 WL 4865693, at *3 (S.D.N.Y. Aug. 13, 2015); *Sugarhill Recs. Ltd. v. Motown Rec. Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y. 1985).

The burden of proof on the moving party is "modest" and "all doubts are to be resolved in favor of the examining party." *Dubai Islamic Bank*, 2002 WL 1159699 at *2. Thus, the burden is satisfied where the examining party produces "enough evidence to show there is at least a close question whether the proposed deponent is the managing agent." *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

**B.   Mr. Steinmetz Is, At Least, a Managing Agent of BSGRL.**

Each of the relevant factors overwhelmingly supports a finding that Mr. Steinmetz is a managing agent of BSGRL, thus easily exceeding Defendants' burden to show only "a close question" that Mr. Steinmetz is a managing agent.

*First*, Mr. Steinmetz is "invested with general powers allowing him to exercise judgment and discretion in corporate matters." Although Plaintiffs have attempted to hold Mr. Steinmetz out as a mere "advisor" of BSGRL (*see, e.g.*, Am. Compl. ¶ 2), that is belied by Mr. Steinmetz's conduct and statements. Mr. Steinmetz has admitted that he "control[s] at least partially," the "Beny Steinmetz Group (BSG)." (Ex. H (Procès-verbal of B. Steinmetz, Oct. 18, 2013).)

13

Moreover, Mr. Steinmetz was extensively involved in negotiating BSGRL's joint venture agreement with Vale S.A. ("Vale") to develop the Simandou mining concession in Guinea. Steinmetz has admitted to being involved in the negotiation, noting that "[n]egotiating and getting deals done is one of the areas where I am able to provide real value for the BSG group and I accordingly played a role in these negotiations with Vale." (Ex. F (Steinmetz Second Witness Statement in ICSID, Jan. 10, 2017) ¶ 36.)

Plaintiffs have claimed that, since the administration commenced, only the Joint Administrators control BSGRL. The evidence suggests otherwise. Even after BSGRL was placed in administration, Mr. Steinmetz maintained significant control over the activities of the former joint administrators, including it appears as their sole source of funding. (*See* Ex. (Funding Agreement).) He has apparently also continued to act on behalf of BSGRL, including by negotiating a settlement in principle with the government of Guinea for resolution of the ICSID Arbitration. (Ex. J (*When Nicolas Sarkozy Plays a Business Intermediary*, Le Monde, Aug. 23, 2019); *see also* Ex. T (Chapter 15 Discovery Order, Oct. 21, 2019) (finding "Beny Steinmetz has acted on behalf of BSGR and continues to hold himself out as BSGR in connection with settlement negotiations with the Government of Guinea").) It is clear that Mr. Steinmetz continues to exercise judgment and discretion in BSGRL's corporate matters.

*Second*, there is no question that Mr. Steinmetz can be relied upon to give testimony on behalf of BSGRL – indeed, Plaintiffs have repeatedly relied on him to do so in the past. Specifically, Plaintiffs attempted to rely on one of Mr. Steinmetz's witness statements from the ICSID proceeding in opposing Defendants' motion to dismiss in this case. (*See* ECF No. 187 ¶ 10; ECF No. 187-4.) Plaintiffs also relied on two witness statements proffered by Mr. Steinmetz in the ICSID Arbitration and two witness statements submitted in the LCIA

arbitration.  (*See* ECF No. 187; ECF No. 172-2 (LCIA Award) ¶ 72.)  This factor cannot credibly be disputed:  Mr. Steinmetz can testify for Plaintiffs now, as he has done before.

*Third*, there are no other directors, officers, or managing agents with higher authority or more knowledge regarding the information sought by examination, namely (1) whether Plaintiffs bribed Mamadie Touré and (2) whether that bribery was connected to Plaintiffs' acquisition of mining rights included in the Convention.  (ECF No. 193 at 25.)  As the Swiss court found in convicting Mr. Steinmetz of bribery, he is "the effective head" of Plaintiffs.  Moreover, if any such officers, directors or managing agents exist, Plaintiffs have not identified them.  In their supplemental disclosures, Plaintiffs identify thirteen witnesses with knowledge of the bribery allegations who are current or former employees, directors, or agents of Plaintiffs.  They claim not to control any of those witnesses – and have provided no contact information for ten of them.  Simply put, there is no one else at Plaintiffs (which at this point seems to have few if any business operations other than pursuing this litigation) with knowledge to speak to these issues.

*Fourth*, Mr. Steinmetz had a high degree of responsibility for, and was integrally involved in, the subjects of limited discovery here.  Specifically, Mr. Steinmetz was integrally involved in Plaintiffs' negotiations to obtain their mining rights in Guinea (*see* ECF No. 172-2 (LCIA Award) ¶¶ 233, 236, 239, 241) as well as the bribery of Mamadie Touré, for which he was convicted in Switzerland.  (Ex. X (Hugo Miller, *Steinmetz Sentenced to 5 Years in Jail in Swiss Bribery Case*, Bloomberg, Jan. 22, 2021) ("Steinmetz had his hand on the payments and was able to oversee the bribery process.").)

*Finally*, there is no question that Beny Steinmetz can be "expected to identify with the interests" of BSGRL, which stands for Beny Steinmetz Group Resources Limited.  Mr. Steinmetz is BSGRL's namesake, beneficial owner, and for all practical purposes the head

of the company.  (*See* Section A *supra*.)  Indeed, in public statements by Mr. Steinmetz, he and Plaintiffs are one and the same.  (*See, e.g.*, Ex. D (Patrick Radden Keefe, *Buried Secrets*, The New Yorker, July 7, 2013 ("We are the victims.  . . . We have done only good things for Guinea, and what we're getting is spit in the face.")); Ex. E (Franz Wild and Thomas Biesheuvel, *Steinmetz Stages Guinea Comeback in Sarkozy-Brokered Deal*, Bloomberg, Feb. 25, 2019 ("We were enemies. Now we are friends and partners with the Guinean government")).)

For the foregoing reasons, Defendants submit that Mr. Steinmetz is, at the very least, a managing agent of BSGRL.  Critically, however, the Court need not conclusively resolve the question of whether Mr. Steinmetz is a managing agent for the purpose of this motion. Defendants' showing herein is more than sufficient to satisfy its modest burden of demonstrating that there is "at least a close question" whether Mr. Steinmetz is a managing agent of BSGRL. Accordingly, the Court should compel the deposition of Mr. Steinmetz under Rule 30(b)(1).

### C.      Mr. Cramer Is Subject To Deposition Under Rule 30(b)(1).

There is no dispute that Mr. Cramer is an officer and director of BSGRL and accordingly is subject to deposition under Rule 30(b)(1).  Plaintiffs have already conceded to Defendants that Mr. Cramer is "technically" an "officer" of BSGRL.  (Ex. EE.)  Mr. Cramer is also a director of BSGRL.  (*See* Ex. AA (BSGRL Statement of the Register, Guernsey Registry, Feb. 26, 2018); Ex. BB (June 18, 2020 Tr. of Dep. of Peter Driver at 114:12-115:1) (describing Cramer as a "non-executive director")).)  Moreover, the Joint Administrators have admitted that Mr. Cramer is both an officer and director of BSGRL in its Chapter 15 proceedings.  (*See, e.g.*, Ex. DD (Letter from Joint Administrators to Judge Lane, Nov. 9, 2020) at 2 (describing Cramer as "a BSGR officer and director").)

Under the rules of this Court, a corporate party is required to produce its officers and directors for examination.  *See* Fed. R. Civ. P. 37(d)(1)(A)(i) (sanctions may be ordered where "a

party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition"); *see also Dubai Islamic Bank*, 2002 WL 1159699 at *2 ("officer [or] director . . . of a corporate party may be compelled to give testimony pursuant to a notice of deposition."). This is an open and shut case: Mr. Cramer is an officer and director, and he should be produced.

Plaintiffs claim that Mr. Cramer is not subject to deposition under Rule 30(b)(1) because "under Guernsey law, since the company is in administration, Mr. Cramer has no authority, power or control to do anything" and the Joint Administrators "have no control over him." (Ex. EE.) These arguments are meritless. First, Second Circuit law, not Guernsey law, governs this issue. *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 343 F. Supp. 2d 208, 217 (S.D.N.Y. 2004) ("Because discovery is unquestionably an issue of federal procedural law, the resolution of discovery issues is governed by the law of the Second Circuit."). Plaintiffs chose to avail themselves of this forum and must abide by its rules. Second, the scope of Mr. Cramer's authority is irrelevant. Rule 30(b)(1) is crystal clear: what matters is whether a party is an officer or director, not whether they have a lot of authority, little or none – in any circumstances, they can be compelled to appear for a deposition. And whether the Joint Administrators control Mr. Cramer under Guernsey law is equally irrelevant. Plaintiffs chose to sue here and they must abide by the laws of this jurisdiction; if they cannot, then they should dismiss their case.

In addition to being an officer and director of BSRGL, Mr. Cramer may alternatively be a managing agent. As with Mr. Steinmetz, there is no reason why Mr. Cramer could not be "expected to identify with the interests" of BSGRL, a company he has been a high-ranking executive and director of for almost two decades, or be "relied upon to give testimony" on behalf of BSGRL, as he has done repeatedly in the past. (*See e.g.*, Ex. Y (Cramer First Witness Statement

17

in ICSID, Feb. 29, 2016); ECF No. 172-2 (LCIA Award) ¶ 72.).  As the effective CEO of the "BSG group generally" during the relevant period, (*see* Ex. Y ¶ 9), Mr. Cramer almost certainly had "responsibilities . . . respecting the matters involved in" this case and was "invested with general powers allowing him to exercise judgment and discretion in corporate matters."

Even if, as Plaintiffs contend, Mr. Cramer does not presently have "authority, power or control" of BSRGL as a result of the administration, that does not preclude a finding that Mr. Cramer is a managing agent.  Even where individuals "no longer h[o]ld any position of authority in a corporation," they will still be accorded managing agents status "so long as those individuals retain[] some role in the corporation or at least maintain[] interests consonant with rather than adverse to its interests."  *See Dubai Islamic Bank*, 2002 WL 1159699, at *4.  And, as Mr. Cramer has admitted, the Guernsey administration is merely a "technical procedure" that does "not affect daily operations of subsidiaries."  (Ex. CC (Barbara Lewis, *Administrators Seek to Return Steinmetz's Mining Firm BSGR to Solvency*, Reuters, Mar. 8, 2018)).)

## II.   Mr. Steinmetz and Mr. Cramer Should be Compelled to Sit for a Deposition in New York.

Plaintiffs have informed Defendants that while Mr. Steinmetz and Mr. Cramer will "voluntarily appear" for a deposition, they will only do so remotely or in-person where they live. Defendants do not know where the witnesses reside, but believe that Mr. Steinmetz is in Israel and Mr. Cramer is in Europe.

Defendants are entitled to conduct these depositions in New York, subject to any applicable government-issued travel restrictions in light of the COVID-19 pandemic.  Plaintiffs have repeatedly availed themselves of the jurisdiction of Courts in this District (and indeed around the world), then sought to shirk their discovery obligations.  This behavior is improper.  Plaintiffs "chose[] this forum, [they] cannot impose upon defendant the extraordinary expense and burden

of traveling to a foreign country to conduct a deposition except on a showing of burden and hardship to the plaintiff." *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 54 F.R.D. 280, 281 (S.D.N.Y. 1971); *see also Dubai Islamic Bank*, 2002 WL 1159699 at *2 (S.D.N.Y. May 31, 2002) ("a plaintiff who brings suit in a particular forum may not avoid appearing for examination in that forum."). Mr. Steinmetz and Mr. Cramer should be ordered to appear for a deposition in New York.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to compel the depositions of Benjamin Steinmetz and Dag Lars Cramer in New York.

Dated: May 7, 2021
      New York, New York

                         Respectfully submitted,

                         WILLKIE FARR & GALLAGHER LLP

                         By:  /s/ Benjamin P. McCallen
                            Joseph T. Baio
                            Benjamin P. McCallen
                            James Fitzmaurice

                         787 Seventh Avenue
                         New York, NY 10019
                         Telephone: (212) 728-8000
                         jbaio@willkie.com

                            Elizabeth J. Bower

                         1875 K Street, N.W.
                         Washington, D.C. 20006
                         Telephone: (202) 303-1000
                         ebower@willkie.com

                         *Attorneys for Defendants*