UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | |
|---|---|
| BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited,<br><br>                    Plaintiffs,<br><br>          -against-<br><br>George Soros, Open Society Foundations, Open Society Institute, Foundation to Promote Open Society, Open Society Foundation, Inc., Alliance for Open Society International, Inc., Open Society Policy Center, and Open Society Fund,<br><br>                    Defendants. | No. 1:17-cv-02726 (JFK) (OTW) |

———————————————————————

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE DEPOSITIONS OF BENJAMIN (BENY) STEINMETZ AND DAG LARS CRAMER**

Louis M. Solomon
Michael S. Lazaroff
REED SMITH, LLP
599 Lexington Avenue
New York, New York 10022
(212) 549-0400
*Attorneys for Plaintiffs BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited*

May 14, 2021

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ......................................................................................... ii

PERTINENT FACTUAL BACKGROUND .................................................................2

      A.      Neither Mr. Steinmetz Nor Mr. Cramer Has Any Authority or Power
             Over BSGR In Administration.................................................................2

      B.      Defendants Sought Commitments Concerning Depositions From the
             Outset of Discovery ...............................................................................4

ARGUMENT .................................................................................................................6

I.       THE LEGAL STANDARD .................................................................................6

II.      BENY STEINMETZ IS NOT SUBJECT TO A DEPOSITION ON NOTICE .................9

      A.      Mr. Steinmetz's Role in BSGR Prior to Administration is Irrelevant ....................9

      B.      Mr. Steinmetz Has Had No Authority, Power, or Role in BSGR in
             Administration ......................................................................................11

      C.      There is No Basis Under the Five Factor Test to Find that Mr. Steinmetz is
             Currently a Managing Agent of BSGR in Administration ...................14

III.    MR. CRAMER IS NOT SUBJECT TO A DEPOSITION ON NOTICE..........................19

IV.    NEITHER MR. STEINMETZ NOR MR. CRAMER SHOULD BE
        COMPELLED TO APPEAR IN PERSON IN NEW YORK...........................................21

CONCLUSION.............................................................................................................24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha Capital Anstalt v. Real Goods Solar, Inc.*,
  323 F.R.D. 177 (S.D.N.Y. 2017) ............................................................................22

*Avalon Holdings Corp. v. Gentile*,
  2019 WL 4640206 (S.D.N.Y. 2019).........................................................................9

*Boss Mfg. Co. v. Hugo Boss AG*,
  1999 WL 20828 (S.D.N.Y. Jan. 13, 1999) ...................................... 6-8, 10, 14, 16, 17, 21, 22

*Campinas Foundation v. Simoni*,
  2005 WL 1006511 (S.D.N.Y. 2005).....................................................................8, 18

*City of Almaty, Kazakhstan v. Sater*,
  2020 WL 2765084 (S.D.N.Y. May 28, 2020) .......................................................23

*Dubai Islamic Bank v. Citibank, N.A.*,
  2002 WL 1159699 (S.D.N.Y. 2002)................................7, 8, 10, 11, 14, 16, 17, 21

*Fashion Exchange LLC v. Hybrid Promotions, LLC*,
  2019 WL 1533212 (S.D.N.Y. Apr. 9, 2019)..............................................................6

*Founding Church of Scientology of Washington, D.C., Inc. v. Webster*,
  802 F.2d 1448 (D.C. Cir.1986) ............................................................................7, 8

*Gen. Tire v. Broad Elm Auto Ctrs.*,
  1997 WL 929823 (W.D.N.Y. 1997) ........................................................................11

*Estate of Gerasimenko v. Cape Wind Trading Co.*,
  272 F.R.D. 385 (S.D.N.Y. 2011) ...........................................................................22

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*,
  54 F.R.D. 280 (S.D.N.Y. 1971) .............................................................................23

*Guillen v. City of New York*,
  2021 U.S. Dist. LEXIS 64015 (S.D.N.Y. Apr. 1, 2021).........................................23

*Holmes v. Gaynor*,
  313 F. Supp. 2d 345 (S.D.N.Y. 2004).......................................................................9

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  2008 WL 350643 (N.D. Cal. Feb. 2, 2008) .......................................................10, 11

*Joffe v. King & Spalding LLP*,
  2020 WL 3453452 (S.D.N.Y. June 24, 2020) ........................................................23

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*,
  220 F.R.D. 235 (S.D.N.Y. 2004) ...................................................................8, 10, 21

*L.A. Limousine, Inc. v. Liberty Mut. Ins. Co.*,
  2007 WL 2746629 (D. Conn. Sept. 19, 2007).....................................................18, 19

*Linde v. Arab Bank, PLC*,
   706 F.3d 92 (2d Cir. 2013)..................................................................20

*Nester v. Textron, Inc.*,
   2015 WL 1020673 (W.D. Tex. Mar. 9, 2015) ..................................10

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. Cie. S.C.A.*,
   2009 WL 1447504 (S.D.N.Y. May 22, 2009) ...............................8, 21

*Outerbridge v. City of New York*,
   2015 WL 5813387 (S.D.N.Y. Sept. 30, 2015)...............................9, 10

*Park W. Radiology v. CareCore Nat'l LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009)................................................10

*Robert Smalls, Inc. v. Hamilton*,
   2010 WL 2541177 (S.D.N.Y. June 10, 2010) ....................................22

*Rouviere v. DePuy Orthopaedics, Inc.*,
   471 F. Supp. 3d 571 (S.D.N.Y. 2020)................................................23

*Saliga v. Chemtura Corp.*,
   2014 WL 12781149 (D. Conn. May 2, 2014) ......................6, 7, 14-18

*Schindler Elevator Corp. v. Otis Elevator Co.*,
   2007 WL 1771509 (S.D.N.Y. June 18, 2007) ...............................7, 22

*SEC v. Aly*,
   320 F.R.D. 116 (S.D.N.Y. 2017)........................................................22

*SEC v. Softpoint, Inc.*,
   958 F. Supp. 846 (S.D.N.Y. 1997).....................................................22

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
   343 F. Supp. 2d 208 (S.D.N.Y. 2004)................................................19

*Stanley Works Isr. Ltd. v. 500 Grp., Inc.*,
   2019 WL 5485266 (D. Conn. 2019) ....................................................7

*Sugarhill Records Ltd. v. Motown Record Corp.*,
   105 F.R.D. 166 (S.D.N.Y.1985) .....................................................6, 8

*Tel. Sys. v. Cecil*,
   2004 WL 48879 (S.D.N.Y. 2004).................................................8, 17

*In re Terrorist Attacks on September 11, 2001*,
   2020 WL 8610894 (S.D.N.Y. Dec. 1, 2020) .....................................22

*United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
   2001 WL 43607 (S.D.N.Y. 2001).........................................................8

*United States v. Afram Lines (USA), Ltd.*,
   159 F.R.D. 408 (S.D.N.Y.1994)............................6, 7, 9, 15, 20, 21

*Ward v. Leclaire*,
   2008 WL 1787753 (N.D.N.Y. Apr. 17, 2008).................................22

**Rules**

Fed. R. Civ. Proc. 30(b)(1) .................................................................................. *passim*

Fed. R. Civ. Proc. 32(a)(3).......................................................................................11

Plaintiffs BSG Resources (Guinea) Limited, BSG Resources (Guinea) Sàrl, and BSG Resources Limited ("BSGR") (collectively "Plaintiffs") respectfully submit this opposition to Defendants' Motion To Compel the Depositions of Benjamin (Beny) Steinmetz and Dag Lars Cramer ("Motion" and "Br." for the brief (ECF 237-238)).  Defendants seek to compel the depositions of Beny Steinmetz and Dag Cramer under Federal Rule of Civil Procedure 30(b)(1) despite the fact that both voluntarily agreed to be deposed.

There is no basis for this motion, particularly since both Mr. Steinmetz and Mr. Cramer have consented to voluntary depositions.  Any argument that Defendants wish to make about the binding nature of the deposition testimony is surely premature.  Nonetheless, since Defendants have insisted on making the motion despite their prior knowledge that it is unnecessary, Plaintiffs have been forced to spend the resources to oppose it.

The evidence is clear that neither Mr. Steinmetz nor Mr. Cramer have any current authority with regard to BSGR (in administration) and have not had any such authority or power since BSGR entered administration.  The evidence from declarations submitted herewith is also clear that BSGR does not currently control either of them.  Defendants' purportedly contrary "evidence" is largely hearsay, unreliable, and does not support Defendants' contentions (particularly about any post-administration activities).  The claims about whatever role either Mr. Steinmetz or Mr. Cramer may have had prior to BSGR entering administration (even if true) are irrelevant.  The Current Joint Administrators control BSGR.  Mr. Steinmetz is not an officer, director, or managing agent of BSGR.  Mr. Cramer has the title of director but has no legal or practical authority given the court-supervised administration in Guernsey.  Neither is under the legal or practical control of the Current Joint Administrators.  Neither has the functional authority to control or exercise judgment and discretion for BSGR.  There is no basis to compel

BSGR under threat of sanction to produce witnesses it does not control, particularly given their voluntary willingness to appear.  There is concern about potential harm to BSGR in such a circumstance.

Even were the Court to direct that any such depositions proceed, the Court should not compel either Mr. Steinmetz or Mr. Cramer to have to travel to New York, especially in the midst of the current pandemic.  Defendants' request for this is just harassment.  There is no reason their depositions cannot occur at their locations of residence or, like virtually all depositions over the past year, remotely.

Finally, in light of Mr. Cramer's and Mr. Steinmetz's agreement to be deposed voluntarily in their individual capacities in their current locations (either in person or remotely), Plaintiffs respectfully suggest that the Parties agree to such an arrangement.  Defendants can reserve the right to claim that either is a managing agent and/or binds the company at trial. Plaintiffs here submit in support of this opposition a declaration of Carl Bowles, a current BSGR Joint Administrator ("CB"), and a declaration of Louis M. Solomon ("LMS" and "Ex." for attached exhibits).

## PERTINENT FACTUAL BACKGROUND

**A.    Neither Mr. Steinmetz Nor Mr. Cramer Has Any Authority or Power  Over BSGR In Administration**

Plaintiffs filed this lawsuit on April 14, 2017.  On November 29, 2017, the Court stayed the action (ECF 136).  While the stay was pending, in March 2018, plaintiff BSGR entered administration under the laws of Guernsey (CB ¶ 5).  Initially, the court in Guernsey appointed Joint Administrators from BDO LLP (the "Former Joint Administrators").  In September 2020, the Guernsey Court discharged the Former Joint Administrators and appointed new joint administrators from Alvarez & Marsal (the "Current Joint Administrators").  Upon entering

administration, BSGR has been managed by the Joint Administrators and not any prior officers or directors (CB ¶ 5).

The Former Joint Administrators submitted a declaration in the Chapter 15 Litigation (*In re: BSG Resources Limited (in administration),* Case No. 19-11845 (SHL)) explaining that, once appointed, the authority to manage the affairs of BSGR was solely with the Former Joint Administrators (Ex. 1, ¶ 8). Both the Current and Former Joint Administrators were independent and did not act in accordance with the instructions of any third party including Nysco (discussed *infra* Point II.B) (Ex. 1, ¶ 9; CB ¶ 10). Mr. Steinmetz was not an officer, director, or employee of BSGR. To the extent that Mr. Steinmetz may have negotiated with the government of Guinea, the Former Joint Administrators made it clear that they were not bound by anything Mr. Steinmetz said or did (Ex. 1 ¶ 18).

Once the Current Joint Administrators were appointed in September 2020, they explained that, during their time as Joint Administrators, Mr. Steinmetz has not had any role whatsoever in BSGR, including the management of this litigation (CB ¶ 6). Mr. Steinmetz is not an officer, director, or employee of BSGR (*id.* ¶ 7). He has no responsibility, power, or authority with regard to BSGR (*id.*).

Mr. Cramer is formally a director of BSGR (*id.* ¶ 8). But, once BSGR entered administration, under Guernsey law, all management powers of BSGR's officers and directors were suspended. Mr. Cramer, therefore, has no responsibilities, power, authority, or function with regard to BSGR. Nor has he exercised any of the foregoing while the Current Joint Administrators have been Joint Administrators (*id.*). Legally and practically, the Current Joint Administrators have no ability or power to compel either Mr. Steinmetz or Mr. Cramer to appear for a deposition (*id.* ¶ 9). Neither Mr. Steinmetz nor Mr. Cramer has been authorized by the

Current Joint Administrators to participate in any negotiations on behalf of BSGR with the government of Guinea.  Any negotiations have been carried out by the Current Joint Administrators (*id.* ¶ 11).

**B.     Defendants Sought Commitments Concerning Depositions From the Outset of Discovery**

On February 18, 2021, the Court entered an order directing the parties "to serve initial document requests by February 22, 2021; responses and objections due by March 15, 2021. Updated initial disclosures shall also be served by February 22, 2021. Parties are directed to meet and confer re: any discovery disputes and submit a joint status letter (3 pg max) by March 24, 2021" (ECF 205).  Defendants raised a potential hypothetical deposition of Mr. Steinmetz in an email dated February 23, 2021, asking "Will Mr. Steinmetz . . . make [himself] available for [a] deposition[] in this matter?"  (Ex. 2, pg. 6).  On February 24, Plaintiffs responded that "as indicated in our supplemental initial disclosures, we do not represent Beny Steinmetz and cannot answer for him" (*id.*).  On February 26, 2021, Defendants emailed co-counsel Katten Muchin (without copying Reed Smith) asking whether Mr. Cramer would make himself available for a deposition.  Katten responded on March 3 indicating that Reed Smith would respond to the request (Ex. 3).

Meanwhile, on February 28, Defendants sent an email claiming that Mr. Steinmetz should be subject to a deposition by notice pursuant to Rule 30(b)(1).  On March 4, Plaintiffs responded by explaining that, with regard to Mr. Steinmetz, "We do not represent him. We provided you with a last known contact information. Any issue as to some potential 30(b)(1) deposition notice remains hypothetical.  However, to the best of our knowledge, Mr. Steinmetz is not an officer or managing agent of BSGR and BSGR has no control over him" (Ex. 2). Plaintiffs also told Defendants they were investigating the status of Mr. Cramer (*id.*).  On March

24, Plaintiffs reported to Defendants that:

> Although we maintain that the issue of any potential deposition of Dag Cramer is premature, we told you at the meet and confer that we were investigating his status. Our client has informed us that, technically, Mr. Cramer is registered as an officer of BSGR in administration. But, under Guernsey law, since the company is in administration, Mr. Cramer has no authority, power or control to do anything and the administrators have no control over him.

(Ex. 4).  Defendants raised the issue of the deposition of Mr. Steinmetz and Mr. Cramer in the

April 14 joint letter to the Court (ECF 210).  In that letter, the parties explained that:

> After offering to do so at the parties' April 9 meet and confer, Plaintiffs contacted Mr. Steinmetz and Mr. Cramer (either directly or through their counsel) to request that they voluntarily agree to be deposed in this action. To the extent they do not agree to do so, Defendants request the opportunity to present the Court with legal authority and argument on why Rule 30(b)(1) requires Plaintiffs to produce these witnesses, and the consequences of their failure to produce witnesses. Plaintiffs maintain their position that Mr. Steinmetz and Mr. Cramer are not subject to deposition under Rule 30(b)(1) and will oppose any such authority and arguments presented by Defendants.

(ECF 210).  On April 22, the Court issued an order permitting Defendants to file a motion to

compel by May 7 (ECF 219).

> Plaintiffs sent Defendants an email on May 5 reporting that:

> As you know, we reached out to nonparties Dag Cramer and Beny Steinmetz to see if they would voluntarily agree to be deposed in this matter. We can now report that we have been advised that they are agreeable and intend voluntarily to be deposed in their individual capacity in this matter at a later date to be agreed upon by each of them and the parties. So that we are clear, their agreement is for them to be deposed in their current locations and not in the U.S. (by video or in-person). As you know, neither of them resides in the United States, and they are outside the jurisdiction of the Court, and nothing they are doing by agreeing to be deposed or being deposed is contrary or prejudicial to these positions or to any position that the witnesses do not speak for or bind BSGR. It is also our position that they are not under Plaintiffs' control, and we do not represent them.

> At our meet and confer, you had indicated that if they consented voluntarily to being deposed, Defendants would not file a motion to compel. Please confirm that, in light of the foregoing, you will not be filing that motion. Plaintiffs reserve all their rights, claims, defenses, and remedies, and do not intend to waive any of them.

(Ex. 5).  On May 6, Defendants responded stating: "Thank you for this information.  After

considering your email and Judge Wang's order, we believe that we still need to file a motion to compel.  We intend to do so on Friday." (*id.*).  Defendants filed the Motion on May 7.

**ARGUMENT**

## I.      THE LEGAL STANDARD

Although Defendants cite various cases that indicate that, under Rule 30(b)(1), a specifically identified officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition, that Rule does not expressly provide for compelling a named officer, director, or managing agent.  Rather, it merely provides that reasonably written notice of a deposition must be given to every party.  Thus, it is not clear how Rule 30(b)(1) authorizes this type of notice discussed in the cases.  *See*, *e.g.*, *Fashion Exchange LLC v. Hybrid Promotions, LLC*, 2019 WL 1533212, at *1 n.1 (S.D.N.Y. Apr. 9, 2019) (Wang, M.J.) (stating, in response to plaintiff's motion to compel depositions of officers of defendant entity, that "[i]t is unclear why Plaintiff invokes Rule 30(b)(1), as 30(b)(1) only pertains to the method of noticing a deposition.").

Nevertheless, there are cases holding that, pursuant to Rule 30(b)(1), a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition.  *See, e.g., United States v. Afram Lines (USA), Ltd.,* 159 F.R.D. 408, 413 (S.D.N.Y. 1994).  "However, a corporate employee or agent who does not qualify as an officer, director or managing agent is not subject to deposition by notice".  *Id.*; *Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 169 (S.D.N.Y. 1985).  "As a general matter, a corporation cannot be required to produce a former officer or agent for deposition since it does not have control over him."  *Boss Mfg. Co. v. Hugo Boss AG,* 1999 WL 20828, *2 n.1 (S.D.N.Y. 1999); *see also Saliga v. Chemtura Corp.,* 2014 WL 12781149, *2 (D. Conn. May 2, 2014);

6

*Dubai Islamic Bank v. Citibank, N.A.,* 2002 WL 1159699, *3 (S.D.N.Y. 2002). In *Afram,* the

Court explained that "the consequence of requiring depositions pursuant to notice here is not

merely the waiver of formal subpoena procedures; rather, Afram could be sanctioned for failing

to produce witnesses who are in fact beyond its control." 159 F.R.D. at 414.

"To determine whether an employee qualifies as a 'managing agent' subject to deposition

by notice, courts in this district generally consider five factors". *Stanley Works Isr. Ltd. v. 500*

*Grp., Inc.,* 2019 WL 5485266, *2 (D. Conn. 2019). The five factors are:

> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters;
>
> 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party;
>
> 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination;
>
> 4) the general responsibilities of the individual respecting the matters involved in the litigation; and
>
> 5) whether the individual can be expected to identify with the interests of the corporation.

*Saliga v. Chemtura Corp.,* 2014 WL 12781149, at *1 (D. Conn. May 2, 2014) (quoting *Schindler*

*Elevator Corp. v. Otis Elevator Co.*, 2007 WL 1771509, *2 (S.D.N.Y. June 18, 2007)). In

considering whether a former officer or agent can be considered a managing agent, courts apply

a "practical" approach that focuses on both the formal and functional relationship of the

individual and the corporation rather than formal titles. *Saliga*, 2014 WL 12781149, at *4

(quoting *Dubai*, 2002 WL 1159699, at *4). Thus, "[t]he test for a managing agent is not

formulaic." *Boss,* 1999 WL 20828, at *3. "Because of the vast variety of factual circumstances

to which the concept must be applied, the standard . . . remains a functional one to be determined

largely on a case-by-case basis." *Afram,* 159 F.R.D. at 413 (quoting *Founding Church of*

*Scientology of Washington, D.C., Inc. v. Webster,* 802 F.2d 1448, 1452 (D.C. Cir.1986)).  Not all of the factors are necessarily given the same weight.  *See, e.g., United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co*., 2001 WL 43607, *6 (S.D.N.Y. Jan. 17, 2001) ("The fourth and fifth factors for determining managing agent status are simply irrelevant unless an agency relationship is first established"); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. Cie. S.C.A.,* 2009 WL 1447504, *1 (S.D.N.Y. May 22, 2009) ("although Mr. Schlath appears to be involved in this litigation, his involvement does not suffice as a basis for deeming him to be a managing agent"); *Tel. Sys. v. Cecil*, 2004 WL 48879, *2 (S.D.N.Y. 2004) (finding that having "significant input into running and making important decisions", attendance and discussion at meeting approving board members, knowledge of the lawsuit, being an "honorary chairman", and having an equity interest in the company were insufficient to make potential deponent a managing agent); *Campinas Foundation v. Simoni*, 2005 WL 1006511, at *1-2 (S.D.N.Y. 2005) (finding individual was not a managing agent under 30(b)(1) even though she played an important role in establishing the entity, would "likely identify very closely" with the entity's interests, and "may issue directives to" the entity).

The examining party bears the burden of establishing the status of the witness.  *See Sugarhill Records*, 105 F.R.D. at 170.  That burden, however, is a "modest" one.  *Boss,* 1999 WL 20828, at *4.  "[T]he examining party satisfies its burden when it produces enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent. This approach permits discovery to proceed, ***while deferring until trial the ultimate question of whether the witness's testimony is binding on the corporation***."  *Dubai,* 2002 WL 1159699 at *4 (emphasis supplied); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs*., 220 F.R.D. 235, 237 (S.D.N.Y. 2004).

## II.     BENY STEINMETZ IS NOT SUBJECT TO A DEPOSITION ON NOTICE

Defendants contend that Beny Steinmetz is at least a "managing agent" of BSGR (Br. 13-16).  Defendants are mistaken.  Defendants make no claim that Mr. Steinmetz is an officer or director or an employee of BSGR.  The Current Joint Administrators have submitted a declaration that (a) Mr. Steinmetz has no responsibilities, power, authority, or function, nor has he exercised any of the foregoing during their tenure; and (b) they have no control over him (CB ¶¶ 6-7, 9).  That should be dispositive of the question at this stage, especially since the issue makes no practical difference since Mr. Steinmetz is voluntarily agreeing to be deposed.  It would be fundamentally unfair to find that a concededly uncontrolled witness is a managing agent, which could result in sanctions for failing to produce this witness who is beyond its control.  *See Afram,* 159 F.R.D. at 414.

Defendants, however, base their claim on (a) indications (mainly from unreliable hearsay) that Mr. Steinmetz had a major role over a decade ago; and (b) indications (again mainly from unreliable hearsay) of some purported connections during administration.  Defendants are wrong.

### A.     Mr. Steinmetz's Role in BSGR Prior to Administration is Irrelevant

Defendants cite to various sources that claim Beny Steinmetz acted on behalf of BSGR at various times prior to BSGR going into administration (*e.g.,* Br. 4, 6-8, 14).  Not one of the sources can bind the Company.  Plaintiffs contest all of these assertions and note that Defendants rely heavily on hearsay from newspaper articles, which Defendant have not shown to be accurate or reliable and are in all events not generally admissible. *See, e.g., Avalon Holdings Corp. v. Gentile*, *11, 2019 WL 4640206, *4 (S.D.N.Y. 2019) ("'The newspaper article, however, is hearsay and inadmissible for proving the truth of the matters asserted therein.'") (quoting *Holmes v. Gaynor,* 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004)); *Outerbridge v. City of New York*,

2015 WL 5813387, at *4 (S.D.N.Y. Sept. 30, 2015).  Defendants also point to the LCIA Award

as a source (Br. 3-4, 6-7, 14-15), but it also does not support the imposition of Rule 30(b)(1) in

this context (where the question is whether to give that award estoppel effect) and it is also

inadmissible.  *See, e.g., Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 329-30

(S.D.N.Y. 2009) ("the Arbitration Decision should be excluded as hearsay. . . The arbitrator will

not be testifying at the trial and Plaintiffs do not seek to use the Arbitration Decision for any

purpose other than . . . for the truth of the matter asserted").  Weak or inadmissible evidence like

this cannot help Defendants meet their burden here.  *See, e.g., Dubai,* 2002 WL 1159699 at *6

(hearsay statements are not "competent evidence" for determining managing agent status); *Boss*,

1999 WL 20828 at *4 (the managing agent analysis requires a party to submit "meaningful

factual support"); *Nester v. Textron, Inc*., 2015 WL 1020673, at *11 (W.D. Tex. Mar. 9, 2015)

(finding proposed deponent was not a managing agent where plaintiff submitted as evidence

"unauthenticated internet 'bios' of their proposed deponents that include hearsay advertising

copy regarding the individuals' roles" with defendant, noting that, "[t]hough not objected to by

Defendants, the evidentiary value of these materials is limited").  Even were the Court to

consider all this information, it does not carry Defendants' burden on this Motion because Mr.

Steinmetz's role in BSGR before it went into administration is not relevant.

The question whether someone is a "managing agent" is largely determined based on

their "status  . . . at the time of the deposition".  *Boss,* 1999 WL 20828, at, *2 n.1; *Dubai,* 2002

WL 1159699, at *3 (same); *JSC Foreign Econ.*, 220 F.R.D.at 238 ("no basis to conclude that the

[defendants had] control" over two officers and directors, who had resigned months before their

depositions were noticed, such "that they could be required, despite their resignations from

official positions, to testify pursuant to Rule 30(b)(1)"); *Hynix Semiconductor Inc. v. Rambus*

*Inc.,* 2008 WL 350643, at *2 (N.D. Cal. Feb. 2, 2008) (former employee was not a managing

agent because he had no authority to act on behalf of the party; "A 'managing agent' must have

some authority to act on behalf of the corporation or answer for it"); *cf.* Fed. R. Civ. Proc.

32(a)(3) (allowing introduction into evidence by an adverse party for any purpose of the

deposition of "anyone who**, when deposed,** was the party's officer, director, managing agent, or

designee under Rule 30(b)(6) or 31(a)(4)") (emphasis added).

### B.   Mr. Steinmetz Has Had No Authority, Power, or Role in BSGR in Administration

Once BSGR entered administration, any role of prior management was suspended and

ceased.  Since then, or for more than three *years*, BSGR has been managed by its Joint

Administrators.  The Current Joint Administrators have submitted a declaration explaining that

Mr. Steinmetz has no power or authority to do anything for BSGR.  Nor has Mr. Steinmetz

directed the Current Joint Administrators to do anything during their tenure (CB ¶¶ 6-7).  Nor do

Defendants even assert that Mr. Steinmetz has done anything for BSGR during their tenure.

Defendants have no evidence, and this should end the discussion as it relates to the deposition.

*See, e.g., Gen. Tire v. Broad Elm Auto Ctrs.,* 1997 WL 929823, *3 (W.D.N.Y. 1997) (holding

that not even a "close question" as to whether potential deponent was a managing agent in the

face of an affidavit specifically showing deponent's limited role); *see also Dubai,* 2002 WL

1159699, at *6 (potential deponent not a managing agent because "[t]here is no evidence that

Mr. Hassan's position gave him any independent discretion").

Defendants point to four separate indicators that purportedly show how Mr. Steinmetz

"actively controls" BSGR even in administration (Br. 5-6, 14-15).  These indicators are

inconsequential because (a) each predate the Current Joint Administrators' control of BSGR; and

(b) they provide no persuasive evidence of any control and are either not relevant or rely on

weak inference, implication, and/or hearsay.  That type of evidence, even if cognizable, cannot overcome the declarations submitted by BSGR.  We consider each of the four below:

**Nysco**:  Defendants claim that Beny Steinmetz controls an entity called Nysco Management Corp. ("Nysco") and further assert that Nysco exerts significant control over the Joint Administrators (Br. 5).  This is wrong in the following two ways.  First, Defendants have no real evidence to support that claim, but merely point to a funding agreement between Nysco and the initial Joint Administrators.  However, both the Current and Former Joint Administrators state that they have never taken any instruction from Nysco (CB ¶ 10; Ex. 1 ¶ 9).  Nor does the Funding Agreement give Nysco any control of the Joint Administrators other than providing funding for certain activities.

Second, Defendants provide no evidence for the claim that Mr. Steinmetz controls Nysco, Defendants argue that (a) Nysco is wholly owned by the Balda Foundation; (b) Mr. Steinmetz and his family are the sole beneficiaries of Balda; and (c) Mr. Steinmetz's personal lawyer is the chairman of the board of Balda (Br. 4).  This shows nothing, either individually or collectively.  The sole cited basis for any of this is the LCIA Award, which itself is inadmissible hearsay and even if credited does not amount to any evidence of control relevant for Rule 30(b)(1) purposes for a deposition now (see *supra* Point II.A).  Even according to the hearsay information Defendants cite, there is no indication that Mr. Steinmetz exerts any control over either Balda or Nysco (and even if he did, Defendants' attenuated theory of concomitant control over the Joint Administrators and BSGR is facially implausible and legally invalid).

**ICSID Negotiations:**  Defendants claim that Mr. Steinmetz "negotiated a settlement in principle on behalf of Plaintiffs with the government of Guinea" once BSGR was in administration (Br. 5).  The sources cited by Defendants—newspaper articles and a press

release—are not only inadmissible, but they do not even say that Mr. Steinmetz negotiated on behalf of BSGR. The press release mentions Mr. Steinmetz only as being involved with a new group of investors (ECF 239, Ex. K). One newspaper article mentions that Mr. Steinmetz urged President Condé to settle but does not say specifically that he negotiated on behalf of BSGR (ECF 239, Ex. J). Nor does the other one (ECF 239, Ex. E). Moreover, newspapers articles are hearsay, unreliable and not substantial evidence (*supra* Point II.A). Thus, there is no valid basis in those articles to say that Mr. Steinmetz negotiated with the government of Guinea on behalf of BSGR in administration.

Importantly, the Current Joint Administrators have declared under oath that (a) in the time they have been Joint Administrators, the Current Joint Administrators have not authorized Mr. Steinmetz to participate in any negotiations on behalf of BSGR; and (b) there is no current settlement of the ICSID arbitration, as the stay has been lifted (CB ¶ 11). Thus, there is no evidence or even rank speculation that Mr. Steinmetz has done anything regarding the ICSID negotiations on behalf of BSGR during the tenure of the Current Joint Administrators. The Former Joint Administrators specifically declared that they had the "sole authority to authorize" any such settlement (Ex. 1 ¶ 18). Thus to the extent that Mr. Steinmetz negotiated anything, it was not on behalf of BSGR (*id.* ¶¶ 18-19). Defendants have no contrary evidence.

**LSL:** Defendants also contend, without any support, that Mr. Steinmetz "appears to be connected" to an entity that used to fund this litigation (Br. 6). This is irresponsible of Defendants. Defendants do not even assert that Mr. Steinmetz ever exercised any control or authority over this funder, and it is thus factually and legally irrelevant. Moreover, the alleged "connection" is that the funder shares two directors with one of BSGR's secured creditors and some of these directors (unnamed) are shared with unnamed "other companies associated with

Mr. Steinmetz." The fact that directors of a secured creditor of BSGR are also directors of the funders and other companies does not show any degree of authority or control. It is pure speculation by the Defendants. The Court should not credit this. Also, the Current Joint Administrators have previously submitted a declaration explaining that this funder is no longer funding this litigation (ECF 236).

**Chapter 15 Litigation:** Defendants cite to an order from Judge Lane in the Chapter 15 litigation involving BSGR in administration (Br. 7, citing ECF 239, Ex. T). However, Defendants do not cite the language from that order. The truth is that Judge Lane simply required the Joint Administrators to produce documents within "*their* possession, custody or control with respect to Beny Steinmetz" (*id.* at ¶ 3). The Court specifically noted that BSGR could have the practical ability or control over documents "regardless of whether or not they have control over the individuals or entities" (*id.* at n.1). Thus, the order on its face has no bearing on whether Mr. Steinmetz is currently a managing agent.

### C.   There is No Basis Under the Five Factor Test to Find that Mr. Steinmetz is Currently a Managing Agent of BSGR in Administration

"'As a general matter, a corporation cannot be required to produce a former officer or agent for deposition since it does not have control over him.'" *Saliga,* 2014 WL 12781149, at *1 (quoting *Boss,* 1999 WL 20828 at *2). In *Boss,* the Court held that the fact that a particular proposed deponent was a *former* employee meant that the deponent was *not* a managing agent. *Boss,* 1999 WL 20828 at *2-3. Similarly, in *Dubai,* the Court found concerning one particular potential deponent that "it is undisputed that he has now left DIB, and thus cannot be deposed as an officer or managing agent". 2002 WL 1159699, *11 ("Although DIB [former employer] has stated that it 'might' be able to produce him in New York, [the deposing party] correctly points out that his testimony would not constitute a party admission"). The court did not apply any

other test to the evaluation of this witness, including the five factor test described above (*supra* Point I).  *See Saliga,* 2014 WL 12781149, at *1.  This is all the more true for someone who was never an officer, director, or employee, like Mr. Steinmetz.  The language of the factors themselves implies employment or some similar present connection (like an independent contractor).

However, Defendants claim that the five factor analysis should be applied here (Br. 13-16).  Defendants have not cited to any case that has applied this five factor test to determine whether an individual with no connection to the company at all is a managing agent, and the Court should not apply it here.  In all the cases Defendants cite, the courts use the five factor test to analyze potential deponents who still have some actual relationship with the company.

However, even if the five factor analysis applies, Mr. Steinmetz would not be considered a managing agent.  The courts have explained that the five factor test focuses on a "functional" analysis allowing the determinations to be made on a "case-by-case basis".  *Afram,* 159 F.R.D. at 413.  A number of these factors assume that the proposed deponent is employed by the company, just not in a position of authority.  Here, with regard to Mr. Steinmetz, that is undisputedly not the case.  But even if the five factor test were considered, no 30(b)(1) deposition should be compelled.

First Factor: The first factor is "whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters".  *Saliga,* 2014 WL 12781149, at *1.  As shown above, Mr. Steinmetz currently is not invested with any such general powers.  The declaration of the Current Joint Administrators conclusively demonstrates that fact (CB ¶¶ 6-7).  This is also supported by the declaration of the Former Joint Administrator (Ex. 1 ¶¶ 12-13).  Defendants cite to various documents concerning Mr. Steinmetz's alleged role or

15

authority prior to administration (Br. 4-8, 14-15).  These are irrelevant to the question of his current power or authority (*see supra* Point II.B).  As described above, the supposed indicators of any current control are based on hearsay or weak and speculative implication at best (*supra* Point II.B).  The first factor clearly shows Mr. Steinmetz is not a managing agent.  Courts have held that this is the most important factor.  *See, e.g., Boss,* 1999 WL 20828 at *4 ("Although this record satisfies two of the key criteria for determining managing agent status, plaintiff has not yet demonstrated that the witnesses possess the requisite status within the company"); *Dubai,* 2002 WL 1159699 at *6 (finding that although a witness's "importance to the events in question appears supported by the record; unfortunately for [the movant], however, this is not the test for managing agent. There is no evidence that [the deponent's] position gave him any independent discretion").

Second Factor: The second factor is "whether the individual can be relied upon to give testimony, at his **employer's request**, in response to the demands of the examining party". *Saliga,* 2014 WL 12781149, at *1 (emphasis added).  By its own terms, this factor depends upon the existence of an employer-employee relationship that does not exist here.  Moreover, Defendants cite to witness statements from Mr. Steinmetz prior to BSGR entering administration (Br. 14).  These do not demonstrate that Mr. Steinmetz can be relied upon now, particularly if Defendants insist (as they have improperly done) that he disrupt his work and life and travel to the United States to convenience Defendants' lawyers in the middle of a pandemic.  In any event, this standing alone would be insufficient.  In *Dubai,* the Court held that the former employee was not a managing agent even though DIB stated that it might be able to produce him.  *See Dubai,* 2002 WL 1159699 at *11; *see also Boss,* 1999 WL 20828 at *2-3 (finding potential deponent was not a managing agent even though deponent was willing to voluntarily be deposed in

Germany).

Third Factor:  The third factor is "whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination".  *Saliga,* 2014 WL 12781149, at *1.  Defendants essentially argue that, since Mr. Steinmetz is the most knowledgeable person about the three issues, he is automatically a managing agent (Br. 15).  That is not the law.  "[T]he test for managing agent does not turn on one's mere possession of relevant information.  Rather, the witness must possess authority to speak and act on behalf of the corporation." *Dubai*, 2002 WL 1159699, at *8; *see also Boss,* 1999 WL 20828 at *4 ("Knowledge of the evidentiary facts alone is not tantamount to possessing the attributes of a managing agent -- particularly the authority to exercise judgment and discretion -- although it may be mildly probative of such a status in appropriate circumstances"); *Tel. Sys. v. Cecil*, 2004 WL 48879, *2 (S.D.N.Y. 2004) (finding that having "significant input into running and making important decisions", attendance and discussion at meeting approving board members, knowledge  of the lawsuit, being an "honorary chairman", and having an equity interest in the company were insufficient to make potential deponent a managing agent).  Moreover, the fact that BSGR is now in administration and no longer employs any witnesses to events from over a decade ago does not automatically make any of those with knowledge but no longer under control of the company a "managing agent".

Fourth Factor:  The fourth factor is "the general responsibilities of the individual respecting the matters involved in the litigation".  *Saliga,* 2014 WL 12781149, at *1.  Defendants claim Mr. Steinmetz was integrally involved in litigation events and then list (a) his alleged negotiation with the government of Guinea; and (b) his alleged involvement with the bribery of

Mamadie Toure (Br. 15).  As explained above, Mr. Steinmetz was not authorized by the Current

Joint Administrators to negotiate on behalf of BSGR with the government of Guinea (CB ¶ 11)

(*see supra* Point II.B).  Similarly, simple involvement in the issues related to the litigation, over a

decade in the past, does not make one a managing agent as described in the preceding paragraph.

Plaintiffs categorically deny any actionable wrongdoing with respect to Mamadie .  Defendants

cannot bootstrap their own unproven and unprovable allegations into a Rule 30(b)(1) managing

agent determination.

        Fifth Factor:  The fifth factor is "whether the individual can be expected to identify with

the interests of the corporation".  *Saliga,* 2014 WL 12781149, at *1.  Defendants assert with no

support that Mr. Steinmetz's interest aligns with that of BSGR because of his purported

historical relationship with it ("for all practical purposes the head of the company"), citing a

newspaper article from 2013 (Br. 15-16).  Defendants simply ignore that BSGR is in

administration.  As the Former Joint Administrator explained: "The authority to manage the

affairs, business and property of BSGR lies solely with the Joint Administrators" (Ex. 1 ¶ 8).

Their duty is to "maximize the assets available to the Debtor and its creditor" (*id.*).  Defendants

provide no basis to think that Mr. Steinmetz's interest is aligned with that of the Joint

Administrators since the company has been in administration.  And, even if aligned, this is not

sufficient to make him a managing agent.  *Campinas,* 2005 WL 1006511 at *1-2 (finding

individual was not a managing agent under 30(b)(1) even though she played an important role in

establishing the entity, would "likely identify very closely" with the entity's interests, and "may

issue directives to" the entity); *see also L.A. Limousine, Inc. v. Liberty Mut. Ins. Co.,* 2007 WL

2746629, at *2 (D. Conn. Sept. 19, 2007) (employee who "would likely identify with the

interests of [company]" is not a managing agent because "her function is not that of a managing

agent").

Thus, even if the Court applies the five factor test (it should not), Mr. Steinmetz is not a managing agent of BSGR and should not be deposed on notice.

### III.   MR. CRAMER IS NOT SUBJECT TO A DEPOSITION ON NOTICE

Defendants argue that Mr. Cramer is subject to a 30(b)(1) deposition on notice because he is nominally an officer and director of BSGR (Br. 16-18). However, Mr. Cramer is not a typical officer or director who would presumptively be subject to a 30(b)(1) deposition. The Current Joint Administrators have declared that, once BSGR entered administration, all management powers of BSGR's officers and directors were suspended (CB ¶ 8). The Current Joint Administrators explain that Mr. Cramer has no responsibilities, power, authority, or function with regard to BSGR. Nor has he exercised any of the foregoing during the tenure of Current Joint Administrators (*id.*). And, the Current Joint Administrators have no authority or power to compel him to appear at a deposition (*id.* ¶ 9). The Former Joint Administrators declared that the authority to manage the affairs, business, and property of BSGR lies solely with the Joint Administrators (Ex. 1 ¶ 8). They further said they did not act in accordance with instructions from any third party (*id.* ¶ 9).

Crucially, Defendants do not dispute that BSGR has no ability under Guernsey law to control Mr. Cramer while it is in administration. Instead, they erroneously claim that Second Circuit law overrides the law of Guernsey (Br. 17). They are wrong. The case they cite, *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 343 F. Supp. 2d 208, 217 (S.D.N.Y. 2004), merely notes in a footnote that Second Circuit law, and not Fifth Circuit law, governed plaintiff's request for jurisdictional discovery where the suit was filed in Texas but transferred to New York. That has nothing to do with the situation here, where Guernsey law freezes Mr. Cramer's title but strips him of any authority or power and does not give the Joint Administrators any

control over him.  Second Circuit law does not and cannot alter that reality, even assuming the

Second Circuit had anything relevant to say on the current subject, which it does not.  *Accord*

*Linde v. Arab Bank, PLC*, 706 F.3d 92, 109 (2d Cir. 2013) (recognizing "the difficulties faced by

parties for whom compliance with a U.S. discovery order would violate foreign law," and setting

out a "particularized analysis" to guide courts in exercising their discretion to order discovery in

such situations).

Defendants claim that BSGR's lack of control over Mr. Cramer is "irrelevant" merely

because "Plaintiffs chose to sue here and they must abide by the laws of this jurisdiction" (Br.

17).  Notwithstanding the disingenuous implication that Mr. Soros would have agreed to

jurisdiction elsewhere, and the fact that this action was filed prior to BSGR entering

administration, Defendants cite no caselaw for the proposition that a nominal officer or director

with no power or authority must sit for a Rule 30(b)(1) deposition on notice in another country

even where the party concededly has no legal control over that person.  Plaintiffs are likewise

unaware of any such caselaw.  Defendants' view of the law would put Plaintiffs in an untenable

situation—forcing them to risk potential sanctions because of a concededly uncontrolled

witness's refusal to be deposed on notice.  Mr. Cramer has no authority or power to act on behalf

of BSGR, and the Joint Administrators have no control over him.  He should not be subject to a

deposition by notice.  Plaintiffs are unaware of any caselaw directly considering this issue.

However, Plaintiffs maintain that, in a situation like this, the functional and case specific

approach used for a managing agent analysis should be used.  Under that approach, since Mr.

Cramer has no authority and cannot be controlled by the Joint Administrators, he cannot be

deposed by notice.  *Accord Afram*, 159 F.R.D. at 414 (refusing to require deposition on notice

where "the proposed deponent is not an employee of the opponent and may, in fact, be beyond

its control," and where allowing deposition by notice would result in "not merely the waiver of formal subpoena procedures," but also sanctions on the opponent "for failing to produce witnesses who are in fact beyond its control"); *JSC Foreign Econ.*, 220 F.R.D. at 238 (finding there was "no basis to conclude that the [defendants had] control" over two officers and directors who had resigned months before their depositions were noticed such "that they could be required, despite their resignations from official positions, to testify pursuant to Rule 30(b)(1)").

As an alternative, Defendants half-heartedly argue that Mr. Cramer "may" be a managing agent (Br. 17-18).  Their argument for Mr. Cramer fails for many of the same reason as did the argument for Mr. Steinmetz under the five factor test (*supra* Point II.C).  The period prior to administration is irrelevant, and Mr. Cramer has no authority or power over BSGR currently (notwithstanding his title).  Functionally, the evidence shows that Mr. Cramer has no independent authority to do anything and BSGR has no control over him.  And, there is no indication that Mr. Cramer's interests are aligned with those of the Joint Administrators.  Thus, he is not a managing agent.

## IV.   NEITHER MR. STEINMETZ NOR MR. CRAMER SHOULD BE COMPELLED TO APPEAR IN PERSON IN NEW YORK

It is clear that if the Court determines that Mr. Steinmetz is not a managing agent and/or Mr. Cramer is not subject to deposition on notice, then, since "both men are overseas," Defendants must "follow the procedures of the Hague Convention or other applicable treaties to secure their testimony".  *JSC*, 220 F.R.D. at 238 (S.D.N.Y. 2004) (citing *Dubai,* 2002 WL 1159699, at *2); *see also Newmarkets,* 2009 WL 1447504, at *1.

But, even if the Court determines that either or both of them are subject to deposition on notice under Rule 30(b)(1), the Court has the discretion to direct that they be deposed in their current locations abroad, either by videoconference or in person.  *See, e.g., Boss,* 1999 WL

20828, at *1-2 (although deponent was a "managing agent", after "weigh[ing] the relative burdens involved," the deposition should take place in Germany where the deponent resided rather than the US); *Schindler Elevator Corp. v. Otis Elevator Co.*, 2007 WL 1771509, at *8 (S.D.N.Y. June 18, 2007) (holding, concerning a 30(b)(1) deposition of a managing agent of plaintiff who was located overseas, that "[i]n the end, however, the decision as to the location of the deposition [of a managing agent] lies within the discretion of the Court.") (citations omitted); *see also SEC v. Softpoint, Inc*., 958 F. Supp. 846, 856 (S.D.N.Y. 1997) ("Courts have broad discretion to control the time and place of discovery . . . ."); *Ward v. Leclaire*, 2008 WL 1787753, at *5 (N.D.N.Y. Apr. 17, 2008) (finding that "the totality of the circumstances and equities in this case" required a compromise and directing that plaintiff be deposed in a location he had voluntarily offered).

Conducting a deposition by videoconference is "frequently a preferred solution to mitigate the burden of a deposition location inconvenient to one or both sides." *Alpha Capital Anstalt v. Real Goods Solar, Inc*., 323 F.R.D. 177, 179 (S.D.N.Y. 2017) (quoting *SEC v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017)). The location and form of the deposition should be set in a manner that balances the prejudice and hardship to the parties, including directing overseas witness to be deposed telephonically or by video. *Estate of Gerasimenko v. Cape Wind Trading Co*., 272 F.R.D. 385, 387-89 (S.D.N.Y. 2011); *see also Robert Smalls, Inc. v. Hamilton*, 2010 WL 2541177, *4 (S.D.N.Y. June 10, 2010) (even a telephonic deposition is a "presumptively valid means of discovery" and plaintiffs' concerns did not rise to the level of a "particularized showing of prejudice" associated with telephonic deposition) (quotations omitted). Moreover, under the Federal Rules of Civil Procedure, remote depositions are "presumptively valid[.]" *In re Terrorist Attacks on September 11, 2001*, 2020 WL 8610894, *4 (S.D.N.Y. Dec. 1, 2020).

Here, where both deponents live overseas, there is no reason why video depositions would not be appropriate.  Counsel would not have to travel and incur those costs.

  This is particularly true in light of the ongoing COVID-19 pandemic.  This Court should follow the overwhelming practice of courts in this district and provide that any deposition of Mr. Cramer or Mr. Steinmetz be by remote videoconference.  *See*, *e.g.*, *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020) ("conducting depositions remotely is becoming the 'new normal.'"); *Joffe v. King & Spalding LLP*, 2020 WL 3453452, *6 n.7 (S.D.N.Y. June 24, 2020) ("Courts in this circuit have been cognizant of the risks of in-person testimony and have encouraged remote depositions as a matter of course.") (citations omitted); *City of Almaty, Kazakhstan v. Sater*, 2020 WL 2765084, *3 (S.D.N.Y. May 28, 2020) ("To the extent there are concerns about safety amid the COVID-19 pandemic, this Court already has encouraged the taking of depositions remotely by video.").  The severe risks posed by COVID-19, and the correspondingly clear interest in mitigating them, continue to be a key concern for litigants; indeed, only a few weeks ago this Court approved remote depositions due to the pandemic's continued presence.  *Guillen v. City of New York*, 2021 U.S. Dist. LEXIS 64015, *1 (S.D.N.Y. Apr. 1, 2021) (Wang, M.J.) ("In light of the ongoing COVID-19 pandemic, depositions shall proceed remotely.").

  Defendants have not provided any reason that would justify compelling BSGR to make either or both of Mr. Steinmetz and Mr. Cramer travel to New York and potentially subject it to sanctions if they do not do so.  Defendants' only argument is "the extraordinary expense and burden of traveling to a foreign country to conduct a deposition" (Br. at 18-19) (quoting *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 54 F.R.D. 280, 281 (S.D.N.Y. 1971)).  But remote deposition, which both Messrs. Cramer and Steinmetz have

already voluntarily offered to participate in, would eliminate any such burden for all parties and witnesses, including Defendants, by obviating the need for expensive and time-consuming international travel.  This is particularly true here where Defendants have told the Court that it does not even need to "conclusively resolve" whether Mr. Steinmetz is a managing agent (Br. 16).  It is particularly unfair in that circumstance to compel BSGR to try to have Mr. Steinmetz and/or Mr. Cramer travel to New York during a pandemic.

Finally, to the extent the Court is inclined to compel either Mr. Cramer or Mr. Steinmetz to appear in person in New York, Plaintiffs reserve their rights to seek a protective order concerning particulars of the deposition in a manner consistent with this Court's orders.

Thus, the Court should deny the part of Defendants' motion seeking to compel either Mr. Cramer and/or Mr. Steinmetz to be deposed in person in New York.

## **CONCLUSION**

For the reasons set forth herein, the Court should deny Defendants' motion.

Dated:  New York, New York
           May 14, 2021                                    Respectfully submitted,

                                                           REED SMITH, LLP
                                                           By: /s/ Louis M. Solomon
                                                                  Louis M. Solomon
                                                                  Michael S. Lazaroff
                                                           599 Lexington Avenue
                                                           New York, New York 10022
                                                           (212) 549-0400
                                                           *Attorneys for Plaintiffs BSG Resources*
                                                           *(Guinea) Limited, BSG Resources (Guinea)*
                                                           *Sàrl, and BSG Resources Limited*