September 3, 2021

**VIA ECF**

Honorable Ona T. Wang
United States Magistrate Judge
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *BSG Resources (Guinea) Limited et al. v. Soros et al.*, 1:17-cv-02726 (JFK) (OTW)

Dear Judge Wang:

The parties submit this joint status letter in advance of the September 9, 2021, status conference pursuant to Section II.e. of the Court's Individual Practices.

**Issue 1:  Guernsey Application**

**Defendants' Position**:  In his August 26, 2021, letter-motion Mr. Steinmetz claims that, if the Guernsey court grants the Joint Administrators' application, "these proceedings will be terminated." (ECF No. 286 at 3.)  Since Plaintiffs first informed the Court of the Guernsey application, Defendants have asked Plaintiffs repeatedly whether this action will be dismissed if the application is granted. Inexplicably, they have refused to answer that question, purportedly on the basis of confidentiality. While willing to consider Plaintiffs' request to stay this action, Defendants will not take that drastic step without further information regarding the Joint Administrators' intent.  Now, Mr. Steinmetz, Plaintiffs' namesake, has represented publicly to the Court and Defendants that this action will be terminated.  Yet the Joint Administrators still claim they "do not know what . . . if the application is granted, [they] will do."  If Plaintiffs intend, as Mr. Steinmetz claims, to dismiss this action, it is patently unfair to require Defendants – the only party who seems to be paying its fees in this case – to continue to expend substantial time and money defending these meritless claims.  Since Plaintiffs' counsel claims to have no information about the Joint Administrators' application and intent, Defendants request that the Court order the Joint Administrators (who control Plaintiffs) or their U.S. or Guernsey counsel to appear telephonically at the September 9 status conference and be prepared to discuss ways to minimize the waste of judicial and party resources until this action is terminated.  If the Joint Administrators' position is that Guernsey confidentiality requirements are so stringent that they cannot even discuss their own intentions or the purpose of their application pending in that court, they should provide legal authority for that proposition, which they have yet to do.

**Plaintiffs' Position**: As Plaintiffs informed the Court on June 22, the Joint Administrators "filed an application under seal with the Guernsey court seeking an order releasing the Joint Administrators from their Guernsey court-imposed obligation to pursue the Soros Litigation" (ECF 256).  On July 22, Plaintiffs further reported that "the Court in Guernsey has set September 6 as the date promptly after which it will decide this application" (July 22 Tr. at 11:4-6).  Plaintiffs do not know what the outcome of the Guernsey hearing will be or what, if the application is granted, the Joint Administrators will do. The Joint Administrators will need to assess the situation that exists at the time of any decision.  They do not know now what decision they will make.  Defendants complain about expending substantial time and money.  But, right after the Guernsey application was made, Plaintiffs asked Defendants to agree to a 60-day stay.  Defendants refused (ECF 260).  On July 22, Plaintiffs again offered a 60-day

Hon. Ona T. Wang
September 3, 2021
Page 2

stay; Defendants again refused (July 22 Tr. at 11:8-10; 12:14-18). Plaintiffs repeat that offer again here. Defendants' decision to expend time and money is their own. Plaintiffs will report to Defendants and the Court when there is more to report on the Guernsey application. Defendants focus on language used by Mr. Steinmetz's counsel about the Guernsey application. But, Mr. Steinmetz does not speak for Plaintiffs and has no role in BSGR (*See* ECF 246 at ¶¶ 6-7 (Steinmetz "has not had any role whatsoever in BSGR" since the Joint Administrators replaced prior administrators, and "has no responsibility, power, or authority with regard to BSGR.")). Finally, there is no basis to require the Joint Administrators, who are located in England and represented in this action by counsel, to appear for the September 9 conference. Nor is there any basis for the Court to compel Chicago co-counsel to appear. Why doesn't Mr. Soros attend the next Court conference?

**Issue 2: Cramer and Steinmetz Depositions**

**Defendants' Position**: The parties have agreed that Mr. Cramer's deposition will proceed on September 30, 2021. As addressed in Defendants' August 30, 2021, letter (ECF No. 288), Mr. Steinmetz appeared for his deposition on August 29, 2021, but invoked the Fifth Amendment in response to nearly every question posed by Defendants. As set forth in ECF No. 288, if Plaintiffs and/or Mr. Steinmetz intend to avoid the consequences of Mr. Steinmetz's unsubstantiated assertion of the Fifth Amendment, Mr. Steinmetz should file a motion for protective order.

**Plaintiffs' Position**: Plaintiffs have agreed to Mr. Cramer's being deposed on September 30. Plaintiffs respect Mr. Steinmetz's right properly to invoke the Fifth Amendment. If Defendants seek to challenge Mr. Steinmetz's use of that right at his deposition, Plaintiffs assume Mr. Steinmetz (a non-party) will respond. Plaintiffs are not clear what "consequences" Mr. Steinmetz's (a non-party) invoking his Fifth Amendment rights could have for Plaintiffs. Mr. Steinmetz has not had any role whatsoever with regard to BSGR during the tenure of the current Joint Administrators, and he has no responsibility, power, or authority with regard to BSGR (ECF 246 at ¶¶ 6-7). Mr. Steinmetz appeared for his deposition on August 29 as he had voluntarily agreed to do and as directed by the Court.

**Issue 3: Legility Subpoena**

Pursuant to this Court's August 5, 2021, order (ECF No. 269), on August 16, Defendants served a subpoena on Legility, LLC ("Legility") seeking the documents identified in Plaintiffs' Revised Log (ECF No. 260-1). Defendants have agreed to a response date of September 16, 2021. Defendants understand that Legility may file a motion for protective order seeking relief in connection with the subpoena. Plaintiffs take no position with respect to Defendants' assertions but note that Defendants could have served this subpoena or sought discovery from Legility months ago and did not do so.

**Issue 4: Plaintiffs' Production**

**Defendants' Position**: Aside from the LCIA and ICSID documents, Plaintiffs concede that they have three collections of data containing potentially responsive material, including a collection undertaken in 2017 for this case, that they have not yet searched or reviewed, let alone produced. (ECF No. 251 at 2.) While Plaintiffs claim "[t]here is no basis to think there is anything else important" in these collections, they cannot know that without reviewing them, which they cannot do because they cannot access the documents. Indeed, the ramifications of Plaintiffs' bribery (including government investigations) continued after documents were produced in the LCIA and ICSID arbitrations, and may have been collected by Plaintiffs in 2017. Plaintiffs should be required to produce these documents within two weeks of the status conference.

**Plaintiffs' Position**: The Court directed Plaintiffs to produce LCIA/ICSID documents not covered by

Hon. Ona T. Wang
September 3, 2021
Page 3

confidentiality (ECF 253).  Plaintiffs have produced all those it can produce, amounting to over 97% of the LCIA/ICSID documents (July 22 Tr. at 7:12-13 (stating that approximately 97% of LCIA/ICSID documents have been produced); *see also* ECF 256 at 2).  As Plaintiffs explained to the Court, the remaining relatively few LCIA/ICSID documents "were set aside in random, sort of, order. So nobody has any basis to say there is anything significant in the documents" (July 22 Tr. at 9:11-22).  Defendants are seeking those documents from Legility.  Defendants now ask about a large number of "potentially responsive" documents that were not produced or used in LCIA/ICSID.  There is no basis to think that there is anything else important relating to the limited issues of this phase of the litigation, namely alleged bribery of Mamadie Touré and the termination of Plaintiffs' mining rights (ECF 193 at 25).  These issues were considered in ICSID and LCIA.  Thus, anything important would be found in the documents used or produced in ICSID/LCIA.  There is no basis to think there is anything else relevant or important in the other "potentially responsive" documents (many from long after the alleged bribery).  Defendants have not offered any concrete, non-speculative reason to believe otherwise.  In any event, as Plaintiffs have previously explained, those collections are also housed with Legility and Plaintiffs cannot access them at this time.

**Issue 5:  Mamadie Touré Subpoenas**

**Defendants' Position:**  On June 23, 2021, Defendants served Mamadie Touré with a subpoena seeking documents relevant to this phase of discovery.  Ms. Touré, who Defendants believe resides in Florida, has not responded to the subpoena or to Defendants' subsequent attempts to contact her.  If Plaintiffs intend to pursue this action, Defendants will serve Ms. Touré with a subpoena seeking her deposition.

**Plaintiffs' Position**: Plaintiffs have no objection to Defendants serving a subpoena on Ms. Touré.  As noted above, Plaintiffs have repeatedly asked Defendants to agree to a 60-day stay.  Defendants have refused to do so.  Thus, Defendants can decide if they want to proceed with the subpoena at this point, seek a stay or wait to see what happens with the Guernsey application.

**Issue 6:  Disclosure of Subject Matter of Expert Testimony**

**Defendants' Position**:  The parties initially contemplated beginning the process of expert discovery in early June.  That process has been hindered and delayed by Plaintiffs' ongoing failure to timely produce documents and comply with court-ordered depositions.  Defendants request that, to the extent this case proceeds beyond the status conference, the Court order the parties to exchange the subject matter of anticipated expert testimony by October 14, 2021 (or three weeks after the deadline for Plaintiffs to produce the remaining responsive and relevant documents in their possession), and set a schedule for the completion of expert discovery over the next three months.

**Plaintiffs' Position**: Defendants' proposed date for an exchange of the expert subject matter is premature, given the current posture of the case.  Plaintiffs propose that the parties exchange subject matter of expert testimony by November 19, 2021.  Moreover, Defendants' suggestion of a three-month schedule to complete expert discovery is half the six-month period Defendants suggested for expert discovery in their original case management plan (ECF 202 at 7).  Plaintiffs propose a four-month period for expert discovery beginning after the exchange of the subject matter for expert testimony.

Respectfully submitted,

/s/ Benjamin P. McCallen
Benjamin P. McCallen