UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BSG RESOURCES (GUINEA) LIMITED, BSG
RESOURCES (GUINEA) SÀRL, and BSG
RESOURCES LIMITED,

              Plaintiffs,

    v.

GEORGE SOROS, OPEN SOCIETY FOUNDATIONS,
OPEN SOCIETY INSTITUTE, FOUNDATION TO
PROMOTE OPEN SOCIETY, OPEN SOCIETY
FOUNDATION, INC., ALLIANCE FOR OPEN
SOCIETY INTERNATIONAL INC., OPEN SOCIETY
POLICY CENTER, and OPEN SOCIETY FUND,

           Defendants.

**No. 1:17-cv-02726 (JFK) (OTW)**

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000 (telephone)

1875 K Street, NW
Washington, DC 20006
(202) 303-1000 (telephone)

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 4

    A. Plaintiffs Have Resisted Their Obligation to Produce the ICSID and LCIA
       Documents Since 2017. ................................................................................................ 4

    B. After the Stay was Partially Lifted, Plaintiffs Continued to Ignore Their Obligations,
       Forcing Defendants to Repeatedly Request Production of the LCIA and ICSID
       Documents. ................................................................................................................... 5

    C. The April 7 Discovery Order Required Plaintiffs to Produce the LCIA and ICSID
       Documents. ................................................................................................................... 7

    D. The June 4 Order Imposed a Deadline on Plaintiffs' Production of the LCIA and
       ICSID Documents, Which They Continue to Defy. ..................................................... 9

    E. Plaintiffs Violated the Court's August 5 Order, Forcing Defendants to Subpoena
       Legility. ...................................................................................................................... 10

ARGUMENT ......................................................................................................................... 12

   I. Fee-Shifting Sanctions Are Warranted Under Rule 37 ................................................... 12

    A. Rule 37(a)(5)(A) Requires Plaintiffs To Pay Defendants' Reasonable Attorneys'
       Fees. ........................................................................................................................... 12

    B. Fee-Shifting Sanctions Are Also Warranted Under Rule 37(b)(2)(C). ...................... 14

    C. There Is No Excuse For Plaintiffs' Violations Of The Court's Orders. ...................... 15

   II. Plaintiffs' Violation Of Multiple Court Orders And Continued Failure To Produce
      Critical Documents Warrants Non-Monetary Sanctions Under Rule 37(b)(2). .............. 17

    A. Plaintiffs' Amended Complaint Should Be Dismissed With Prejudice ...................... 18

    B. In the Alternative, the Court Should Prohibit Plaintiffs From Opposing the
       Preclusive Effect of the LCIA Award. ....................................................................... 22

   III. Defendants Are Entitled To Attorneys' Fees And Costs Incurred In Making This
       Motion. ...................................................................................................................... 23

CONCLUSION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
  555 F.3d 298 (2d Cir. 2009)...............................................................18

*Bobal v. Rensselaer Polytechnic Inst.*,
  916 F.2d 759 (2d Cir. 1990)...............................................................18

*Daval Steel Prods. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991).........................................................17, 18, 22, 23

*Diapulse Corp. of Am. v. Curtis Pub. Co.*,
  374 F.2d 442 (2d Cir. 1967)...............................................................18

*Enmon v. Prospect Capital Corp.*,
  675 F.3d 138 (2d Cir. 2012)...............................................................23

*Floyd v. Mount Sinai Med. Ctr. Pers. Dir. (Linen Dep't)*,
  No. 04-cv-556, 2006 WL 3230276 (S.D.N.Y. Nov. 8, 2006)...............................23

*Handwerker v. AT&T Corp.*,
  211 F.R.D. 203 (S.D.N.Y. 2002) ........................................................19

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  298 F.R.D. 145 (S.D.N.Y. 2014) ........................................................23

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  No. 13-cv-816, 2014 WL 12902178 (S.D.N.Y. June 5, 2014) .............................13

*JSC For. Econ. Assn. Technostroyexport v. Intl. Dev. and Trade Servs., Inc.*,
  No. 03-cv-5562, 2005 WL 1958361 (S.D.N.Y. Aug. 16, 2005)...........................13

*Karim-Rashid v. LaValley*,
  No. 9:18-cv-495, 2018 WL 7982927 (N.D.N.Y. Dec. 20, 2018) ..........................20

*Mahon v. Texaco Inc.*,
  122 Fed. App'x 537 (2d Cir. 2005)......................................................18

*Mantell v. Chassman*,
  512 Fed. App'x 21 (2d Cir. 2013)........................................................13

*McConnell v. Costigan*,
  No. 00-cv-4598, 2001 WL 1456609 (S.D.N.Y. Nov. 16, 2001)...........................23

*New Jersey, Inc. v. Creative Res. Grp., Inc.*,
    212 F.R.D. 94 (E.D.N.Y 2002) ............................................................................24

*Nieves v. City of New York*,
    208 F.R.D. 531 (S.D.N.Y. 2002) .........................................................................19

*Pegoraro v. Marrero*,
    No. 10-cv-00051, 2012 WL 5964395 (S.D.N.Y. Nov. 28, 2012)..........................15

*Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*,
    273 F.R.D. 372 (S.D.N.Y. 2011) .........................................................................16

*Urb. Elec. Supply and Equip. Corp. v. New York Conv. Ctr. Dev. Corp.*,
    105 F.R.D. 92 (E.D.N.Y. 1985)...........................................................................18

*Wager v. G4S Secure Integration, LLC*,
    No. 1:19-cv-3547, 2021 WL 293076 (S.D.N.Y. Jan. 28, 2021)...........................13

**Other Authorities**

Fed. R. Civ. P. 37 ................................................................................... *passim*

Defendants respectfully submit this Memorandum of Law in support of their Motion for

Sanctions pursuant to Federal Rule of Civil Procedure 37 and this Court's August 5, 2021 (ECF

No. 269), and August 17, 2021 (ECF No. 278), orders.

## PRELIMINARY STATEMENT

Since the stay was partially lifted more than seven months ago, Plaintiffs have sought to

evade their obligations and stonewall the discovery process.  As a result of Plaintiffs' conduct,

Defendants have expended substantial time and money litigating disputes related to Plaintiffs'

inadequate document production.  It is not just Defendants' resources that have been wasted by

Plaintiffs' misconduct, Defendants have been forced repeatedly to seek the Court's intervention

to compel Plaintiffs to produce the indisputably relevant LCIA and ICSID documents, resulting

in three court orders requiring the production of such documents.  (*See* ECF Nos. 209, 253, 269.)

Plaintiffs have complied with none of them.

All of these efforts should not have been necessary.  Plaintiffs have known since 2017

that Defendants sought production of all of the documents produced in the LCIA and ICSID

arbitrations, which addressed the same central issue in this case – Plaintiffs' procurement of their

mining rights in Guinea.  Yet, Plaintiffs did little to nothing to produce those documents during

the four months of document discovery in 2017.  When discovery resumed this year, Defendants

immediately renewed their request for the LCIA and ICSID documents given their critical

importance to Defendants' pending collateral estoppel defense.  (*See* ECF No. 196 (Feb. 3, 2021,

Joint Status Letter).)

On April 7, 2021, in response to Defendants' request to compel Plaintiffs' production, the

Court ordered Plaintiffs to produce responsive documents on a rolling basis.  (ECF No. 209.)

Plaintiffs resisted producing the LCIA and ICSID documents purportedly on the basis of

1

confidentiality orders in those proceedings, but made no attempt to resolve those concerns.[1]  As a result, Defendants were forced to file a letter-motion on May 27, 2021, requesting the Court compel Plaintiffs to produce these documents by June 25, 2021.  The Court granted Defendants' motion on June 4, 2021, and ordered Plaintiffs to produce all LCIA and ICSID documents by June 18, 2021.  (ECF No. 253.)  Plaintiffs failed to meet this deadline, requiring Defendants to again seek relief from the Court.  On August 5, 2021, the Court again ordered Plaintiffs to produce all LCIA and ICSID documents by August 13, 2021 or face sanctions.  (ECF No. 269.)  Plaintiffs again failed to comply, leading to this Motion.

Plaintiffs' refusal to comply with these Court orders is willful.  On January 25, 2021, Judge Keenan ordered discovery on the question of whether Plaintiffs' claims are barred based on the judgment against them in the LCIA arbitration.  (ECF No. 193.)  To resolve that question, Judge Keenan ordered discovery, among other things, into the LCIA's consideration of and ruling on Plaintiffs' bribery of Mamadie Touré to procure mining rights in the Simandou region of Guinea.  Plaintiffs' corrupt acquisition of these mining rights is also the subject of the ICSID arbitration with the Government of Guinea.  Documents from the ICSID arbitration are, therefore, also relevant to the core issue of Plaintiffs' bribery of Mamadie Touré.  All of the documents that are the subject of this Motion are from either the LCIA or the ICSID arbitrations.

That is no coincidence.  Indeed, Plaintiffs' counsel has admitted that certain documents from the LCIA arbitration "would clearly be harmful" to Plaintiffs' claims here and tried to keep them confidential to prevent their production in this action.  (*See* ECF No. 230 at 10 (noting that Plaintiffs' counsel advised the former joint administrators not to de-designate confidential LCIA

---

[1]        The issue of Plaintiffs' improper delay in seeking relief from the LCIA confidentiality order and the impact that delay has had on this litigation has been the subject of extensive briefing.  (*See* ECF Nos. 208, 210, 220, 230, 251, 256, 260.)  In addition to the grounds set forth herein, Defendants incorporate their prior briefing on this issue herein by reference.  (ECF No. 230.)

documents for use in other actions because to do so "would clearly be harmful . . . to the Soros Litigation.").)

Moreover, the Joint Administrators appear simply unwilling to prosecute this case.  On May 6, 2021, Plaintiffs were forced to disclose that they cannot access Plaintiffs' documents because they have not paid their document vendor.  (ECF No. 236 (Declaration of C. Bowles ¶ 5) ("The New Joint Administrators do not have, and have not had, ready access to funds to pay for this litigation."); *id.* ¶ 10 ("access to those documents has been suspended again due to lack of funds").)  Then, on June 22, 2021, Plaintiffs revealed that the Joint Administrators "just filed an application under seal with the Guernsey court seeking an order releasing the Joint Administrators from their Guernsey court-imposed obligation to pursue the Soros Litigation." (ECF No. 256 at 3.)  Thus, it appears that the Joint Administrators intend to dismiss this action, but nevertheless continue to string along Defendants and the Court, egregiously forcing Defendants to expend significant time and money on discovery.

Accordingly, Plaintiffs' willful disregard for their discovery obligations warrants monetary and non-monetary sanctions.  Pursuant to Rules 37(a)(5)(A) and 37(b)(2), Defendants are entitled to their reasonable attorneys' fees and expenses incurred in connection with their requests to compel Plaintiffs to produce the LCIA and ICSID documents.  Additionally, pursuant to Rule 37(b)(2), Defendants are entitled to sanctions in the form of an order dismissing the Amended Complaint with prejudice or, in the alternative, precluding Plaintiffs from challenging the preclusive effect of the LCIA decision in this case.

## FACTUAL BACKGROUND

A.   **Plaintiffs Have Resisted Their Obligation to Produce the ICSID and LCIA Documents Since 2017.**

In 2017, Defendants sought from Plaintiffs all documents produced to or by Plaintiffs in the LCIA and ICSID proceedings.  Plaintiffs objected that, among other things, they were precluded from producing certain of the documents based on confidentiality agreements or orders, (Ex. A at Response to Request Nos. 48-55),[2] and specifically refused to produce any documents that were produced to Plaintiffs in the LCIA arbitration based on the LCIA's confidentiality rules and a Procedural Order by the tribunal (*id.* at Response to Request No. 55).

The LCIA and ICSID proceedings involved substantially overlapping issues with this proceeding – namely, the validity of Plaintiffs' iron ore mining rights in Guinea, including whether those rights were procured through bribery and the legitimacy of Guinea's termination of those rights.  Thus, at the time, Defendants took the position that Plaintiffs should be required to produce the entirety of their productions in those proceedings.  The parties submitted the dispute to Judge Peck for consideration on September 1, 2017.  Judge Peck ordered Plaintiffs to produce "what you produced [in the LCIA arbitration] that is otherwise relevant" and to provide a categorical log of the withheld documents.  (ECF No. 97 (Tr. at 32:19-33:2).)  He also concluded that "the overlap is sufficiently significant" to warrant production of all documents Plaintiffs produced in ICSID, but permitted Plaintiffs to withhold and log "sensitive" documents that they believed were not relevant to this action.  (*Id.* at 34:18-25.)  Plaintiffs were also ordered to find out how to obtain a waiver of the LCIA confidentiality order.

---

[2]   References to "Ex. __" are to the exhibits attached to the Declaration of Benjamin P. McCallen, dated September 3, 2021, filed herewith.

Despite Judge Peck's orders, Plaintiffs produced few ICSID documents, and, seemingly, no LCIA documents between September 1 and November 29, 2017, when the action was stayed. They also failed to provide Defendants or the Court any information that would resolve their confidentiality objection.  (*See* ECF No. 230 at 7-8.)  Plaintiffs admit that, during the stay, they made no effort to obtain a waiver so that they would be in a position to produce the LCIA and ICSID documents (ECF No. 225 at 8), should the stay be lifted and discovery resume, as Plaintiffs requested the Court do (*see, e.g.*, ECF Nos. 147, 165).

> ### B.    After the Stay was Partially Lifted, Plaintiffs Continued to Ignore Their Obligations, Forcing Defendants to Repeatedly Request Production of the LCIA and ICSID Documents.

On January 25, 2021, Judge Keenan issued an order converting Defendants' motion to a motion for summary judgment on the issue of whether Plaintiffs were collaterally estopped from arguing that they did not procure the Guinean mining rights through bribery based on the LCIA award and ordered "limited discovery" into three issues (the "Three Issues") relating to such collateral estoppel.  (ECF No. 193.)  Since the stay was partially lifted, Defendants have repeatedly sought production of the LCIA and ICSID documents.  During the parties first meet and confer, on February 1, 2021, Defendants requested that Plaintiffs produce promptly all documents from the LCIA arbitration, the ICSID arbitration, and Swiss criminal proceedings against Beny Steinmetz without awaiting new document requests given that the Three Issues were clearly subsumed within those proceedings, and those documents should be easy for Plaintiffs to produce quickly.  Plaintiffs refused to begin producing those documents, despite knowing they were responsive to the Three Issues, absent an agreement that discovery would be bilateral.  (ECF No. 196 at 1-2.)  In the parties' February 3, 2021, joint status letter, Defendants repeated to the Court the position they had taken days before in the meet and confer with Plaintiffs:  "most of the documents relevant to issues (1) and (2) have been produced or

submitted in the LCIA Arbitration, the ICSID Arbitration and the Swiss criminal prosecution of Beny Steinmetz. Plaintiffs should be able to easily produce all of the documents produced in those proceedings, including all declarations, transcripts, depositions and expert reports." (*Id.* at 4.)

On February 17, 2021, Defendants served their Third Request for Production of Documents to Plaintiffs ("Defendants' RFPs"), which specifically requested (again) the documents produced by and to Plaintiffs in the LCIA and ICSID arbitrations. (Ex. B at Request No. 1(b).) On February 23, 2021, Defendants again asked Plaintiffs when they intended to begin production of documents from the ICSID and LCIA arbitrations given that these clearly relevant documents should be easy to produce. (Ex. C.) Plaintiffs again dragged their feet, refusing to provide a timeline for their production and stating "[p]er the proposed schedules and Judge Wang's order, we are focused now on responding to the requests for production and documents. We will respond/produce in the agreed upon and/or ordered time frame." (*Id.*)

When they did finally serve formal responses, on March 15, 2021, Plaintiffs objected to producing the LCIA and ICSID documents on the grounds of confidentiality and that the request was outside the scope of the Three Issues. (Ex. D at Response to Request 1(b).) On March 18, 2021, the parties met and conferred regarding, among other things, Plaintiffs' document collection efforts and Plaintiffs' objections to Defendants' RFPs. When asked whether Plaintiffs intended to withhold documents based on their confidentiality objection, Plaintiffs said that they would produce their own documents, but that they were "still investigating" whether responsive material was subject to a confidentiality order. Defendants again requested a copy of any orders or agreements that Plaintiffs alleged precluded production, and a log of any documents withheld on this basis. Despite previously agreeing to provide copies of any applicable confidentiality

orders or agreements in August 2017 before the stay (Ex. E), Plaintiffs did not immediately agree

to produce them after the stay was lifted.  On March 22, 2021, Defendants sent a letter to

Plaintiffs reiterating their request for copies of any orders or agreements precluding Plaintiffs'

production, something that Defendants have repeatedly asked for since August 2017.  (Ex. F.)

On March 23, 2021, Plaintiffs finally agreed to produce them.  (Ex. G.)  However, no orders

from LCIA (or ICSID) were produced to Defendants at that point, and Plaintiffs objected to

providing any log of documents – further frustrating Defendants efforts to understand what,

exactly, Plaintiffs were withholding.  (*Id.*)

C. **The April 7 Discovery Order Required Plaintiffs to Produce the LCIA and ICSID Documents.**

On April 2, 2021, the parties filed a joint status letter in which Defendants raised the

LCIA confidentiality issue with the Court, and requested that Plaintiffs be required to produce a

log of documents withheld on the basis of confidentiality.  (ECF No. 208.)  Defendants also

requested that the Court order Plaintiffs to actually produce documents responsive to

Defendants' RFPs, which they had refused to do during the six weeks since Defendants served

the RFPs.

On April 7, 2021, the Court granted Defendants' request and ordered Plaintiffs "to

produce documents on a rolling basis, to begin no later than April 21, 2021."  (ECF No. 209

at 1.)  Defendants' RFPs called for the production of the LCIA and ICSID documents.  (Ex. B at

Request 1(b).)  The Court also ordered Plaintiffs, by April 8, 2021, "to produce or identify to

Defendants any orders, agreements, or laws purportedly barring Plaintiffs from producing

documents" and "the witness statements submitted to the ICSID and LCIA arbitrations."  (*Id.*)

Only after a Court order did Plaintiffs produce the LCIA and ICSID confidentiality orders a day

later.  Contemporaneously, Plaintiffs sent a letter informing Defendants for the first time that

they "faced a series of challenges getting access to documents and information for production"

and said they would supplement their production "if and when" they receive additional

documents.  (Ex. H (April 8, 2021 Letter from L. Solomon).)  At this point, more than two

months had passed since Judge Keenan had issued his order requiring discovery of documents in

Plaintiffs' possession, and Defendants made four requests of Plaintiffs to produce these highly

relevant documents, during which Plaintiffs were silent about their inability to access their own

documents.

On April 14, 2021, in the parties' joint status letter, Defendants again raised Plaintiffs'

continued refusal to produce LCIA and ICSID documents on the basis of confidentiality, and

Plaintiffs' failure to produce certain witness statements in violation of the Court's April 7 order.

(ECF No. 210 at 1-2.)  In the letter, Defendants explained that the LCIA and ICSID arbitrations

dealt with the same core issue at the heart of Judge Keenan's order – Plaintiffs' bribery of

Mamadie Touré – and the particular relevance of the LCIA documents to Defendants' collateral

estoppel argument.  (*Id.*)  Defendants also reiterated their request that Plaintiffs be required to

log any LCIA and ICSID documents withheld on the basis of confidentiality given their highly

relevant nature to this issues in this case.  (*Id.*)

On April 21, 2021, faced with a court order requiring them to do so, Plaintiffs made their

first production since the stay was lifted, containing 1,233 documents.  Notably, every document

in Plaintiffs' first production is publicly available on the ICSID website, and Defendants had

pulled them from the website years prior.  There is no reason Plaintiffs could not have produced

these documents sooner.  Plaintiffs made additional productions consisting of LCIA and ICSID

documents on April 29, May 5, and May 20.  These documents had been produced or filed in the

LCIA and/or ICSID proceedings and, thus, Plaintiffs were able to produce them without

conducting any responsiveness or privilege review.  Despite the ease with which the documents

could be identified and produced, it took Plaintiffs four weeks to make the productions, and

many clearly responsive documents were still missing.  According to Plaintiffs, these delays

were caused by Plaintiffs' inability to access their documents due to a purported lack of funds.

(*See* ECF No. 236 ¶¶ 9-11 (Declaration of C. Bowles, May 6, 2021).)  Plaintiffs subsequently

disclosed that they have failed to pay contractually required fees totaling £47,448.98.  (ECF No.

267 at 11.)  As a result, Plaintiffs claim that were only able to access *their own documents* for a

brief period in April until May 4, 2021.  (*Id.* ¶ 10.)

     During this time, Defendants repeatedly attempted to resolve these issues by meeting and

conferring with Plaintiffs and exchanging multiple letters regarding their failure to produce

documents and other production deficiencies.  Plaintiffs refused to answer even basic questions

about their access to other sources of their documents.  (*See, e.g.*, ECF No. 210 (Apr. 14, 2021,

Joint Status Letter) at 2-3.)

     **D.    The June 4 Order Imposed a Deadline on Plaintiffs' Production of the LCIA
            and ICSID Documents, Which They Continue to Defy.**

     After efforts to resolve these issues failed, on May 27, 2021, Defendants filed a letter-

motion seeking, among other things, an order requiring Plaintiffs to complete their document

production.  (ECF No. 251.)  On June 4, 2021, the Court granted the letter-motion, ordering

Plaintiffs to "produce all remaining LCIA and ICSID documents not covered by a confidentiality

order within 14 days" and "provide a log listing any category of unproduced LCIA and ICSID

documents" within 21 days.  (ECF No. 253 at 2.)  On June 18, 2021, Plaintiffs made a

production of the documents "to which they had access," (Ex. I (June 18, 2021 Email from M.

Lazaroff)), but continued to withhold responsive, non-privileged documents in violation of the

Court's order.  On June 22, 2021, in the parties' joint status letter, Defendants raised Plaintiffs'

failure to comply with the June 4 order.  (ECF No. 256.)

On June 25, 2021, Plaintiffs produced a log identifying the LCIA and ICSID documents

that were withheld, which was subsequently revised on July 7, 2021 (the "Log").  (ECF

No. 260-1.)  The Log identified nearly 800 withheld documents, the majority of which were

withheld, not because of confidentiality or other objection, but simply because Plaintiffs did not

pay their document vendor who was refusing to give them access to their platform from which to

produce them.  Plaintiffs also withheld certain documents produced by Pentler Holdings Limited

in the LCIA proceeding on the basis of confidentiality, despite conceding that the June 4 order

"directed Plaintiffs to make such a production (notwithstanding confidentiality issues for those

documents)."  (ECF No. 256 at 2.)

> ### E.    Plaintiffs Violated the Court's August 5 Order, Forcing Defendants to Subpoena Legility.

On July 7, 2021, the parties filed another joint status letter, in which Defendants raised

Plaintiffs failure to comply with the Court's June 4 order.  (ECF No. 260 at 1-2.)  At the

discovery conference on July 22, 2021, Plaintiffs offered the Court multiple options by which

Defendants could, potentially, obtain the outstanding documents from Plaintiffs' vendor,

Legility, LLC ("Legility") – none which included BSGR complying with its own contractual or

discovery obligations.  At Plaintiffs' suggestion, the Court ordered Plaintiffs to "immediately

request from Legility, LLC ("Legility") (the document vendor storing these documents) that,

notwithstanding any unpaid invoices or amounts claimed past due, Legility promptly (a) permit

Plaintiffs to access those documents identified in ECF 260-1; and (b) facilitate and assist in the

production of those documents identified on ECF 260-1."  (ECF No. 264 at 1.)

On August 3, 2021, Plaintiffs informed the Court that "Legility refus[ed] to provide access and/or assist in production unless BSGR's Joint Administrators agree to make certain payments (and even then, only if the Court directs the Joint Administrators to make those payments)." (ECF No. 267 at 1.) In its response, Legility made clear that the documents at issue are "[BSGR]'s data," and Legility is merely hosting them at the request of BSGR. (ECF No. 267 at 11 (Aug. 2, 2021 Letter from M. Maerz to M. Lazaroff).) Moreover, the Joint Administrators conceded in an April 2021 letter – which was apparently attached to the Legility Letter, but omitted from Plaintiffs' filing – that "[t]he Joint Administrators also confirm that these invoices and any ongoing costs incurred are treated as expenses of the administration." (*Id.* at 12.)

In response, that same day, Defendants filed a letter requesting the Court order Plaintiffs to produce the documents on their log (ECF No. 260-1) by August 10, 2021, on penalty of sanctions. On August 5, 2021, the Court granted Defendants' request, ordered Plaintiffs to produce the documents on their Log by August 13, 2021, and, if Plaintiffs failed to produce the documents, directed Defendants to serve a subpoena on Legility by August 16, 2021. (ECF No. 269.) The order also instructed Defendants to propose a briefing schedule for a motion for sanctions under Federal Rules of Civil Procedure 37(a)(5) and 37(b)(2), "to shift fees and costs of the motion practice related to the production of these documents," which "is not limited to recent events, but may cover all conduct after the first time this Court granted a motion to compel concerning these documents." (*Id.*)

On August 13, 2021, Plaintiffs failed to produce the documents in violation of the August 5, 2021 order, and instead sought an extension of 30 days to comply. (ECF No. 270.) The Court denied Plaintiffs' request. (ECF No. 276.) Pursuant to the August 5 order, on August 16, 2021, Defendants served a subpoena on Legility seeking the documents on the Log, and filed a

11

proposed briefing schedule.  (ECF No. 271.)  Legility's response date for the subpoena is

September 16, 2021.  On August 17, 2021, the Court issued a briefing schedule for "a motion for

sanctions and to shift fees and costs."  (ECF No. 278.)

## ARGUMENT

Plaintiffs have violated multiple orders of this Court and engaged in a persistent pattern

of obstructionism and delay throughout the discovery process.  Their conduct unnecessarily

delayed production of the LCIA and ICSID documents and has prevented Defendants from

accessing the remaining documents identified on Plaintiffs' Log.  Plaintiffs' willful and ongoing

violation of the Court's orders has wasted judicial resources and forced Defendants to incur

significant legal expenses seeking the Court's intervention to obtain these documents.

Accordingly, Defendants are entitled to fee-shifting sanctions pursuant to Rules 37(a)(5)(A) and

37(b)(2), and an order, pursuant to Rule 37(b)(2), dismissing the Amended Complaint with

prejudice or, in the alternative, prohibiting Plaintiffs from challenging the preclusive effect of the

LCIA award in this action.

**I.      Fee-Shifting Sanctions Are Warranted Under Rule 37.**

**A.      Rule 37(a)(5)(A) Requires Plaintiffs To Pay Defendants' Reasonable
Attorneys' Fees.**

An award of attorneys' fees and costs associated with Defendants' motion practice to

obtain the LCIA and ICSID documents is not only warranted, but required by Federal Rule of

Civil Procedure 37(a)(5)(A).  Rule 37(a)(5)(A) expressly provides that the losing party on a

motion for discovery must pay the moving party's reasonable expenses incurred in making the

motion, including attorneys' fees:

> If the motion is granted . . . the court ***must***, after giving an opportunity to be
> heard, require the party or deponent whose conduct necessitated the motion, the
> party or attorney advising that conduct, or both to pay the movant's reasonable
> expenses incurred in making the motion, including attorney's fees.

12

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  To recover attorneys' fees and expenses under

Rule 37(a)(5)(A), "the only requirements are that a party has made a motion for 'an order

compelling disclosure or discovery' and that 'the motion is granted.'"  *John Wiley & Sons, Inc. v.*

*Book Dog Books, LLC*, No. 13-cv-816, 2014 WL 12902178, at *1 (S.D.N.Y. June 5, 2014); *see*

*also Wager v. G4S Secure Integration, LLC*, 1:19-cv-3547, 2021 WL 293076, at *3 (S.D.N.Y.

Jan. 28, 2021) (prevailing party "is presumptively entitled to an award of motion expenses,

including reasonable attorney's fees").  Both elements are satisfied here.

Because of Plaintiffs' failure to timely produce the LCIA and ICSID documents,

Defendants have been forced repeatedly to seek judicial intervention to compel Plaintiffs to

comply with their discovery obligations.  Since the stay was partially lifted, Defendants have

been forced to meet and confer with Plaintiffs on multiple occasions and petitioned the Court

regarding production of the LCIA and ICSID documents six times.  (*See* ECF No. 208 (April 2,

2021, Joint Status Letter); ECF No. 210 (April 14, 2021, Joint Status Letter); ECF No. 251 (May

27, 2021, Letter from B. McCallen); ECF No. 256 (June 22, 2021, Joint Status Letter); ECF No.

260 (July 7, 2021, Joint Status Letter); ECF No. 268 (August 3, 2021, Letter from B.

McCallen).)[3]  Defendants' April 2, April 14, and May 27, 2021 letters explicitly sought to

compel Plaintiffs to produce the LCIA and ICSID documents and/or to produce a log identifying

the LCIA and ICSID documents withheld on the basis of confidentiality.  In its June 4, 2021,

order, the Court granted Defendants' requests, requiring Plaintiffs to produce all LCIA and

---

[3]      That Defendants' requests for relief were made in the form of a letter or letter-motion, rather than a formal motion, makes no difference.  Courts issue sanctions under Rule 37 even when no formal motion to compel has been filed.  *See JSC For. Econ. Assn. Technostroyexport v. Intl. Dev. and Trade Servs., Inc.*, No. 03-cv-5562, 2005 WL 1958361, at *14 (S.D.N.Y. Aug. 16, 2005) ("It would be unfair to [the party] to deprive it of Rule 37's cost shifting protection because of the absence of a formal motion despite extensive judicial proceedings"); *see also Mantell v. Chassman*, 512 Fed. App'x 21, 24 (2d Cir. 2013) (affirming imposition of sanctions under Rule 37(a)(5) based on letter seeking to compel discovery).  Each of the six letters to the Court requested specific relief with respect to the LCIA and ICSID documents, which the Court ultimately granted in the form of the June 4 and August 5 Orders. (ECF Nos. 253 and 269, respectively.)

ICSID documents by June 18, 2021 and a log of withheld documents by June 25, 2021.  (ECF No. 253.)  Additionally, on August 5, 2021, in response to Defendants' subsequent requests to enforce the June 4 order, the Court again ordered Plaintiffs to produce all of the LCIA and ICSID documents.  (ECF No. 269.)  As of the filing of this Motion, Plaintiffs still have not complied with these orders.  Accordingly, Defendants are entitled to their reasonable costs and attorneys' fees in connection with their five petitions to the Court.

**B.      Fee-Shifting Sanctions Are Also Warranted Under Rule 37(b)(2)(C).**

Like Rule 37(a)(5)(A), under Rule 37(b)(2)(C), where a party violates a court order, "the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Plaintiffs have violated three orders in this case:  the April 7 Order (ECF No. 209 ), the June 4 Order (ECF No. 253), and the August 5 Order (ECF No. 269).  Specifically, Plaintiffs violated the April 7 Order by (i) failing to produce all of the witness statements from LCIA and ICSID on April 8, as required; and (ii) failing to timely produce all of the LCIA and ICSID documents.  As a result of Plaintiffs' violations, Defendants were forced to apply to the Court twice to obtain a deadline for Plaintiffs to complete production of these documents.  Even after the Court issued its June 4 Order explicitly requiring Plaintiffs to produce all of the LCIA and ICSID documents not subject to confidentiality by June 18, and log anything withheld on the basis of confidentiality by June 25, Plaintiffs still failed to produce the required documents.  At this time, however, the excuse was not only a purported confidentiality proscription, but their purported inability to pay their document vendor who was holding their documents hostage. (ECF No. 260-1 (Plaintiffs' Revised Log).)  Plaintiffs' noncompliance forced Defendants to

expend additional resources seeking relief from the Court in writing and at the July 22, 2021,

status conference.  After Plaintiffs failed to persuade their vendor to perform its services without

payment, the Court again, on August 5, 2021, ordered them to produce the remaining LCIA and

ICSID documents identified on their Log.  As of the date of this Motion, Plaintiffs have still not

produced any documents in response to the August 5 Order.

Thus, under Rule 37(b)(2), Defendants are independently entitled to their reasonable

attorneys' fees and costs associated with their efforts to obtain these documents from Plaintiffs,

including efforts to secure the April 7, June 4, and August 5 Orders.

## C.    There Is No Excuse For Plaintiffs' Violations Of The Court's Orders.

Plaintiffs can overcome required fee-shifting only if they can establish that one of the

limited exceptions to Rule 37(a)(5)(A) and 37(b)(2)(C) applies.  On a motion for sanctions, "the

burden of persuasion [is] on the losing party to avoid assessment of expenses and fees rather than

... on the winning party to obtain such an award."  *Pegoraro v. Marrero*, No. 10-cv-00051, 2012

WL 5964395, at *4 (S.D.N.Y. Nov. 28, 2012).  Rule 37(a)(5)(A)'s fee-shifting requirement can

be overcome only if the losing party can establish that the moving party filed the motion before a

good faith attempt to obtain the discovery, the opposing party was substantially justified, or other

circumstances make a sanctions award unjust.  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).  Similarly,

fee-shifting under Rule 37(b)(2)(C) must be granted "unless the failure was substantially justified

or other circumstances make an award of expenses unjust."  None of these exceptions apply here.

First, Defendants attempted repeatedly to meet and confer with Plaintiffs regarding these

documents, by phone and through written correspondence, beginning as early as the parties'

February 1, 2021, meet and confer after the stay was lifted.  Despite Defendants' diligent efforts,

Plaintiffs resisted producing the LCIA and ICSID documents for months.  For example, on

February 23, 2021, Defendants asked Plaintiffs when they intended to begin production of the

LCIA and ICSID documents, but Plaintiffs refused to discuss a timeline for their production without an explicit court order to do so: "[p]er the proposed schedules and Judge Wang's order, we are focused now on responding to the requests for production and documents.  We will respond/produce in the agreed upon and/or ordered time frame."  (*Id.*)  Defendants efforts to understand the scope of Plaintiffs' collection, review, and production were met with vague answers that failed to reveal the extent of Plaintiffs' ongoing problems with the vendor storing their documents for this litigation.

Second, Plaintiffs' conduct is not "substantially justified."  Nondisclosure is "substantially justified" if there was a genuine dispute as to the appropriateness of disclosure. *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (finding plaintiff was not "substantially justified" in delaying production of documents "as they were available").  No such dispute exists here.  Given that the LCIA and ICSID proceedings dealt with the same core issue as this case – Plaintiffs' bribery to obtain mining rights in Guinea – documents from the LCIA and ICSID proceedings are indisputably relevant to Defendants' collateral estoppel and merits defenses.  Indeed, Defendants sought these documents at the outset of this case and, thus, Plaintiffs have known that they were obligated to obtain a waiver of any confidentiality requirements that prevented disclosure here.  (*See generally* ECF No. 230 at 1- 15.)  However, when discovery resumed earlier this year, Plaintiffs again asserted a confidentiality objection – an objection they could have easily resolved had they attempted to do so in 2017.  If Plaintiffs had promptly sought and obtained a waiver of the confidentiality orders in LCIA and ICSID in 2017, there would have been no need to litigate the issue in 2021. Moreover, despite Plaintiffs months-long protestations, in the end all it took was an order from this Court to compel Plaintiffs to produce the relevant documents.  If Plaintiffs had sought an

order from this Court at the outset, there would have been no need to waste the Court's or the parties' resources litigating these disputes for months.

Third, no other circumstances exist to make a sanctions award unjust. Plaintiffs have willfully violated three court orders and concealed their vendor dispute that prevented them from accessing their own documents.

Importantly, Plaintiffs' dispute with their document vendor does not "substantially justify" or otherwise excuse their failure to produce the LCIA and ICSID documents. The documents were indisputably relevant and non-privileged, and Plaintiffs were, therefore, obligated to produce them. Thus, sanctions awarding Defendants' reasonable attorneys' fees and costs incurred in connection with production of the LCIA and ICSID documents are mandatory under Rule 37(a)(5)(A) and Rule 37(b)(2)(C).

## II.   Plaintiffs' Violation Of Multiple Court Orders And Continued Failure To Produce Critical Documents Warrants Non-Monetary Sanctions Under Rule 37(b)(2).

When a party fails to obey a discovery order, Rule 37(b)(2) empowers the court to make "further just orders" to maintain fairness of the litigation process. Fed. R. Civ. P. 37(b)(2)(A). The Court "has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2)." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). Among other things, Rule 37(b)(2) permits courts to issue orders "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," (Fed. R. Civ. P. 37(b)(2)(A)(ii)), and "dismissing the action or proceeding in whole or in part" (Fed. R. Civ. P. 37(b)(2)(A)(v)). To determine appropriate sanctions under Rule 37(b)(2), courts consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of

noncompliance, and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009).

Here, Plaintiffs' willful and ongoing violation of the Court's June 4 and August 5 orders warrants sanctions in the form of an order dismissing the Amended Complaint with prejudice or, in the alternative, prohibiting Plaintiffs from challenging the preclusive effect of the LCIA decision.

### A.      Plaintiffs' Amended Complaint Should Be Dismissed With Prejudice.

Rule 37(b)(2) grants the court wide discretion to impose the sanctions. *See Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990); *Daval Steel Prods.*, 951 F.2d at 1365. While a severe sanction, dismissal with prejudice is warranted when there is "willfulness, bad faith, or any fault by the non-compliant litigant." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). In deciding the propriety of dispositive sanctions, the Court may consider "the full record of the case." *Diapulse Corp. of Am. v. Curtis Pub. Co.*, 374 F.2d 442, 447 (2d Cir. 1967). Accordingly, dismissal is both necessary and appropriate in circumstances, like here, where a party has willfully disregarded multiple discovery orders. *See, e.g.*, *Mahon v. Texaco Inc.*, 122 Fed. App'x 537, 539 (2d Cir. 2005) (affirming dismissal where plaintiff failed to produce documents in violation of court order); *Urb. Elec. Supply and Equip. Corp. v. New York Conv. Ctr. Dev. Corp.*, 105 F.R.D. 92 (E.D.N.Y. 1985) (dismissing complaint where plaintiff failed to comply with multiple discovery orders, even though plaintiff produced "90 percent of the relevant documents").

Based on the full record of this case, each of the factors considered by courts weighs in favor of dismissing this action. *First*, Plaintiffs' repeated and ongoing violation of the Court's orders is willful and in bad faith. Noncompliance may be deemed willful "when the court's orders have been clear, when the party has understood them, and when the party's non-

18

compliance is not due to factors beyond the party's control." *Nieves v. City of New York*, 208

F.R.D. 531, 536 (S.D.N.Y. 2002).  "A party's persistent refusal to comply with a discovery order

presents sufficient evidence of willfulness, bad faith or fault." *Handwerker v. AT&T Corp.*, 211

F.R.D. 203 (S.D.N.Y. 2002).

   Here, Plaintiffs were obligated to produce the LCIA and ICSID documents during the

discovery process in 2017.  Moreover, since the stay was lifted, the Court required Plaintiffs to

produce the LCIA and ICSID documents as early as the April 7 Order.  Due to Plaintiffs' failure

to timely produce all of the documents, the Court issued the June 4 and August 5 Orders, again

clearly requiring that all remaining LCIA and ICSID documents be produced.  Despite multiple

orders, Plaintiffs have failed to produce the documents.

   Additionally, Plaintiffs took pains to avoid having to produce these documents by

maintaining meritless confidentiality objections.  Indeed, Plaintiffs finally disclosed on April 26,

2021, that Vale consented to production of its documents in 2017.  (ECF No. 225 at 11.)  There

simply was no basis to object to production of Vale's documents from the LCIA proceeding at

any time in 2021.  Moreover, to the extent that documents not produced by Vale were still

subject to confidentiality, Plaintiffs could (and should) have sought an order from the Court

permitting them to produce the documents, notwithstanding the confidentiality, at the beginning

of discovery.  Instead, Plaintiffs insisted that approval by the LCIA tribunal, which had since

disbanded, was a necessary condition of production.  This either was for the purpose of

preventing the production of documents harmful to Plaintiffs' claims, (*see* ECF No. 230 at 10

(noting that Plaintiffs' counsel advised the former joint administrators not to de-designate

confidential LCIA documents for use in other actions because to do so "would clearly be harmful

. . . to the Soros Litigation.")), or to conceal the fact that the Joint Administrators are not

authorized to use estate funds to pursue these claims (*see* ECF No. 236 ¶ 5 (Decl. of C. Bowles) ("The New Joint Administrators do not have, and have not had, ready access to funds to pay for this litigation.")). Either way, Plaintiffs' confidentiality objection was an obstructionist, stalling tactic.

After their confidentiality objections failed, Plaintiffs sought to shift the burden and costs of their discovery obligations to Defendants. Rather than resolve the dispute with their vendor, Plaintiffs instead proposed having Defendants pay the costs owed to their vendor or subpoena their vendor directly. (July 22, 2021, Tr. at 8:3-9:22.)

Plaintiffs cannot seek refuge in their purported inability to finance this case. A "lack of funding" does not relieve a party of its burden to comply with discovery orders. *See, e.g.*, *Karim-Rashid v. LaValley*, No. 9:18-cv-495, 2018 WL 7982927, at *4 (N.D.N.Y. Dec. 20, 2018), *report and recommendation adopted*, 9:18-cv-495, 2019 WL 1557164 (N.D.N.Y. Apr. 10, 2019) (granting dismissal where *pro se* plaintiff failed to appear for deposition due to lack of funds). Moreover, Plaintiffs' dispute with its discovery vendor, Legility, is a problem of Plaintiffs' own making. BSGR agreed to the terms of its contract with Legility, which appear to allow Legility to cut off access to the documents hosted on the platform for non-payment. (*See* ECF No. 267 at 11 (Legility "had no other choice than to exercise [their] contractually agreed upon right to suspend rendering of services until [they] were made whole").) BSGR chose not to pay the fees owed under that contract. And, it was Plaintiffs who chose to waste time and expense to have this Court attempt to facilitate a détente of the BSGR/Legility dispute to allow for production of the documents from the Legility platform. Having made these choices, Plaintiffs must bear the consequences of their noncompliance.

*Second*, lesser sanctions, alone, are not appropriate in these circumstances. As Plaintiffs have repeatedly informed the Court, they lack financing sufficient to pay the approximately £48,000 owed to their document vendor, let alone the substantial fees Defendants have incurred as a result of Plaintiffs' discovery violations. Based on Plaintiffs' demonstrated track record (*id.* at 12 ("once you received access and what you needed from [Legility], your client did not pay [Legility] as promised")), there is a serious risk that Plaintiffs will simply ignore any cost-shifting imposed by the Court. Therefore, monetary sanctions alone are not sufficient. Moreover, because Defendants do not have any information about the withheld documents, merely preventing Plaintiffs from relying on them in this litigation is not an effective sanction. The documents may well be harmful to Plaintiffs, so excluding them may actually help, rather than punish them. Thus, dismissal is appropriate.

*Third*, the duration of Plaintiffs noncompliance weighs in favor of dismissal. Despite initially suggesting discovery could be completed in as little as three months, Plaintiffs have unnecessarily prolonged this phase of discovery for the past seven months with no end in sight. Had Plaintiffs promptly sought a Court order to produce documents covered by another confidentiality order, they would have been in a position to produce the withheld documents in April, when they still had access to their database. Instead, they maintained their objection and refused to give Defendants straight answers about what documents were in their possession. This unnecessary delay has prejudiced Defendants and caused them to incur significant costs repeatedly litigating the same dispute.

*Finally*, Plaintiffs have been repeatedly warned about the possibility of sanctions for their continued violations of court orders and their discovery obligations. In the initial status conference, on February 5, 2021, the Court warned that "unnecessarily multiplying the

proceedings and litigating over issues that should be fairly clear can result in cost shifting for

discovery motions under Rule 37." (ECF No. 197 (Tr. at 29:17-20).) That is exactly what

Plaintiffs have done – unnecessarily multiply these proceedings by litigating the production of

clearly responsive documents. The Court warned Plaintiffs twice more. During the July 22,

2021, status conference, the Court said that if Defendants "think that there is a motion for either

a cost or sanctions related to [the LCIA and ICSID documents] . . . You can go ahead and make

that motion." (Tr. at 15:11-14.) Additionally, the August 5, 2021, order, provided that, if

Plaintiffs failed to comply, Defendants would be permitted to seek sanctions. (ECF No. 269.)[4]

Thus, the Court's multiple warnings to Plaintiffs weigh in favor of dismissal.

Accordingly, based on Plaintiffs' clear violation of three court orders and pattern of

obstruction and delay, dismissal of this action is appropriate.

**B.      In the Alternative, the Court Should Prohibit Plaintiffs From Opposing the Preclusive Effect of the LCIA Award.**

In the event the Court declines to dismiss this action, the Court should bar Plaintiffs from

challenging the preclusive effect of the LCIA award. As a less severe sanction than dismissal or

default, courts may issue orders "prohibiting the disobedient party from supporting or opposing

designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ.

P. 37(b)(2)(A)(ii); *see also Daval Steel Prods.*, 951 F.2d at 1367 ("Although an order granting a

claim and precluding a party from presenting evidence in opposition to it is strong medicine,

such orders are necessary on appropriate occasion to enforce compliance with the discovery rules

and maintain a credible deterrent to potential violators.").

---

[4]      That the Court did not warn of the possibility of dismissal does not bar the Court from granting this relief.
No formal warning is required to impose any sanctions, even severe ones. *See Daval Steel Prods.*, 951 F.2d at 1365
("this court has never considered warnings an absolute condition precedent" to severe sanctions like dismissal); *see
also id.* ("Parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their
peril.").

Courts routinely prohibit a disobedient party from opposing claims or defenses where, as here, the disobedient party fails to produce documents bearing on that claim or defense. *See, e.g.*, *Daval Steel Prods.*, 951 F.2d at 1362 (affirming order preventing party from introducing evidence to dispute alter ego status of individuals where party failed to comply with court order to provide documents and testimony); *Floyd v. Mount Sinai Med. Ctr. Pers. Dir. (Linen Dep't)*, No. 04-cv-556, 2006 WL 3230276, at *4 (S.D.N.Y. Nov. 8, 2006) (prohibiting plaintiff who failed to produce documents from introducing any documents or other evidence related to a prior proceeding); *McConnell v. Costigan*, No. 00-cv-4598, 2001 WL 1456609, at *5 (S.D.N.Y. Nov. 16, 2001) (prohibiting defendants from opposing, on factual grounds, certain claims for which defendants failed to produce documents). All of the documents on the Log (ECF No. 260-1) were produced in the LCIA or ICSID arbitrations, which form the basis (in part) for Defendants' collateral estoppel defense. Plaintiffs are well aware of the importance of the LCIA and ICSID proceedings to Defendants' defense in this case. Indeed, Judge Keenan lifted the stay solely for the purpose of pursuing discovery on these issues. This sanction is particularly appropriate where, like here, precluding the introduction of the withheld evidence is more likely to help the disobedient party than hurt it.

This sanction is otherwise warranted for the same reasons discussed in Section II.A. Accordingly, if the Court declines to dismiss this case, it is appropriate for the Court to preclude Plaintiffs from challenging the preclusive effect of the LCIA award.

## III.    Defendants Are Entitled To Attorneys' Fees And Costs Incurred In Making This Motion.

Fees and costs incurred in connection with motions for sanctions are routinely granted by courts. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 148 (2d Cir. 2012) (upholding decision to award fees related to a party's sanctions motion); *John Wiley & Sons, Inc. v. Book*

*Dog Books, LLC*, 298 F.R.D. 145, 151 (S.D.N.Y. 2014) (awarding fees incurred in making a Rule 37 sanctions motion); *New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 104 (E.D.N.Y 2002) ("the court finds that the plaintiff is entitled to fees and costs related to the motions to compel and the motions for sanctions").  Accordingly, should Defendants' Motion be granted, it is also appropriate to require Plaintiffs to pay Defendants' attorneys' fees and costs incurred in bringing this Motion.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court issue an order, pursuant to Rules 37(a)(5)(A) and 37(b)(2), (i) awarding Defendants their reasonable attorneys' fees and costs for their successful motions to compel production of the LCIA and ICSID documents; (ii) awarding Defendants monetary sanctions in the form of their fees and expenses associated with their efforts to obtain the LCIA and ICSID documents; (iii) dismissing the Amended Complaint with prejudice or, in the alternative, precluding Plaintiffs from challenging the preclusive effect of the LCIA decision in this action; (iv) awarding Defendants their reasonable attorneys' fees and costs incurred in making this motion; and (v) any other, further relief as the Court deems just and proper.

Dated: September 3, 2021
New York, New York

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: _/s/ Benjamin P. McCallen_____
Joseph T. Baio
Benjamin P. McCallen

787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
jbaio@willkie.com

Elizabeth J. Bower

1875 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
ebower@willkie.com

*Attorneys for Defendants*