**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

**Mark Gimbel**

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1161
mgimbel@cov.com

**By ECF**                                                                                              September 7, 2021

Honorable Ona T. Wang
United States District Court
500 Pearl Street
New York, New York 10007

> Re: *BSG Resources (Guinea) Limited, et al. v. George Soros, et al.*,
> No. 1:17-cv-02726 (JFK) (OTW)

Dear Judge Wang:

      We represent non-party Dag Lars Cramer.  By order dated August 23, 2021, the Court directed that Mr. Cramer be deposed on September 23 or 30 and that his deposition include up to two hours of examination on the issue of the initial scheduling of his deposition, which had been ordered to occur on August 24 before the Court stayed the deposition in response to Mr. Cramer's application.  (ECF 284.)[1]  The order further directed that Mr. Cramer file a letter brief identifying any privilege he may assert during such a deposition with respect to communications with David Barnett or Barnea Jaffa Lande ("Barnea").  (*Id.*)  We respectfully submit this letter in compliance with the Court's order.

      Mr. Cramer does not intend to assert any privilege with respect to communications with Mr. Barnett or Barnea concerning the initial scheduling of his deposition in this action.  Mr. Cramer was ordered to attend that deposition in his individual capacity. (ECF 253.)  Neither Mr. Barnett nor Barnea has ever acted as Mr. Cramer's personal counsel or provided legal advice to him concerning his deposition in this matter, and Mr. Cramer accordingly does not assert privilege over any such communications.

      There are, however, many other categories of communications between Mr. Cramer and Mr. Barnett — given and received in different capacities, and on different subjects — that are privileged or otherwise protected from disclosure.  Since we are not familiar with the parties' claims and defenses or the scope of discovery in these proceedings, and do not know exactly what topics may be explored at Mr. Cramer's deposition beyond the scheduling issue, it is not

---

[1] Although Mr. Cramer has agreed to submit to a voluntary deposition on these dates by remote examination, he has not agreed to participate in any other proceedings in this action and expressly reserves any and all objections and defenses to such proceedings, including that the Court lacks personal jurisdiction over him.

COVINGTON

September 7, 2021
Page 2

possible to anticipate all of the specific claims of privilege that may arise. However, communications falling in the following categories may be privileged:

    1.    *Communications Concerning BSGR, Its Affiliated Entities, and Its Beneficial Owners.* Mr. Barnett has historically acted as in-house counsel to BSGR. Mr. Cramer is a director of BSGR (although his independent management powers as director terminated with the appointment of Joint Administrators over BSGR in 2018) and has communicated with Mr. Barnett in that role. In addition, both Mr. Barnett and Mr. Cramer have worked with other companies affiliated with BSGR, and other companies owned or operated for the benefit of the same ultimate class of beneficiaries (i.e., Mr. Steinmetz and his family), and have engaged in related communications. BSGR and/or the other affiliated entities on whose behalf Mr. Cramer has communicated with Mr. Barnett are entitled to assert privilege over many of these communications.

    Under English law,[2] applicable privileges may include (i) legal advice privilege, which applies to confidential communications between client and counsel for the purpose of enabling the client to seek, or the lawyer to give, legal advice or assistance;[3] (ii) litigation privilege, which covers communications between parties or their solicitors for the dominant purpose of obtaining information or advice in connection with existing or contemplated litigation;[4] and (iii) common interest privilege, which protects communications of parties with a common interest in the subject matter of those communications or in litigation, where those communications are produced by or at the instance of one party for the purpose of obtaining legal advice or to assist in the conduct of litigation.[5] To the extent that New York law or federal common law applies, relevant grounds for asserting privilege may include the attorney-client privilege, which protects confidential communications between counsel and client for the purpose of seeking or providing legal advice,[6] the work product doctrine, which protects

---

[2] Without knowing the specific communications involved, it is not possible to perform a choice of law analysis to determine applicable privilege law. However, as a general matter, where "privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this court defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002)

[3] *See The Civil Aviation Auth'y v. Jet2.Com Ltd, R. (on the Application of)* [2020] EWCA Civ 35.

[4] *See Three Rivers DC v. Bank of England (No. 6)* [2004] UKHL 48, at §102.

[5] *See Winterthur Swiss Insurance Company & Anor v AG (Manchester) Ltd & Ors* [2006] EWHC 839 (Comm), at , at §78.

[6] *See, e.g., HSH Nordbank AG New York Branch v. Swerdlow,* 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (holding that "the attorney-client privilege protects confidential communications between

COVINGTON

September 7, 2021
Page 3

communications and materials prepared in anticipation of litigation,[7] and the common interest privilege, which protects communications between parties in furtherance of a common legal interest.[8]

        2.    *Communications Concerning the English Proceedings.*  Mr. Cramer and Mr. Barnett's client Mr. Steinmetz are both Defendants in English civil proceedings titled *Vale S.A. & Ors v Steinmetz & Ors* (Claim No. 2019-0000723) (the "English Proceedings").  Accordingly, communications that have occurred between Mr. Cramer and Mr. Barnett concerning the English Proceedings may be subject to litigation privilege and common interest privilege under English law.  *See supra* n. 4-5.  To the extent U.S. law applies, the joint defense and common interest privilege may protect these communications.  *See supra* n. 7-8.

        3.    *Communications Concerning Potential Sanctions in this Action.*  By order dated August 17, 2020, this Court stated that, if Mr. Cramer or Mr. Steinmetz failed to appear for a deposition in this action, the Defendants could seek sanctions or other relief.  (ECF 277.)  Under federal common law and New York law, any communications between Mr. Cramer and Mr. Steinmetz's counsel David Barnett concerning potential sanctions would be privileged, in light of their common legal interest in defending any motion for sanctions that may ultimately be filed.  *See supra* n. 8.  To the extent English law applies, litigation privilege would protect such communications.  *See supra* n. 4.

While Mr. Cramer has made a good faith effort to identify the various privileges that may apply to communications with Mr. Barnett or Barnea, this letter is necessarily limited by the fact that Mr. Cramer has not yet been deposed and is unable to identify all of the specific privileged communications he may be asked about at his deposition.  Mr. Cramer thus respectfully reserves the right to advance any other basis for asserting privilege that may become evident in light of the specific questions posed at his deposition.

Respectfully,

Mark P. Gimbel

cc:    Counsel of record (by ECF)

---

client and counsel where such communications are made for the purpose of providing or obtaining legal advice"); *see also* CPLR § 4503.

[7] *See, e.g., Wultz v. Bank of China Ltd.,* 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (holding that work product protection applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative").

[8] *See, e.g., Swerdlow,* 259 F.R.D. at 70-71 (common interest privilege requires a showing of (1) a "common legal interest with the party with whom the information was shared," and (2) that the communications were "designed to further that interest").